COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
TRAVIS LEBLANC (251097)
(tleblanc@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone:  +1 415 693 2000
Facsimile:   +1 415 693 2222

MAX SLADEK DE LA CAL (324961)
(msladekdelacal@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, California 90401
Telephone:  +1 310 883 6527
Facsimile:   +1 310 883 6500

ROBBY L.R. SALDAÑA (admitted *pro hac vice*)
(rsaldana@cooley.com)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone:  +1 202 776 2109
Facsimile:   +1 202 842 7899

*Attorneys for Defendant Kim Kardashian*

[Counsel for moving Defendants listed
on signature pages]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| IN RE ETHEREUMMAX INVESTOR LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS. | Lead Case No. CV 22-163 MWF (SKx)<br><br>**DEFENDANTS' NOTICE OF MOTION AND OMNIBUS MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge:   Hon. Michael W. Fitzgerald<br>Date:    October 17, 2022<br>Time:    10:00 a.m. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Place:      First Street Courthouse,
            Courtroom 5A

Complaint Filed:   January 7, 2022
Trial Date:        Not Scheduled

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 17, 2022, at 10:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of Honorable Michael W. Fitzgerald, United States District Judge, Central District of California, located at 350 West First Street, Los Angeles, California 90012, the undersigned Defendants Russell Davis, Steven Gentile, Kimberly Kardashian, Justin Maher, Giovanni Perone, and Paul Pierce (collectively, "Defendants"), will, and hereby do, move the Court for an order dismissing Plaintiffs' Consolidated Class Action Complaint (ECF No. 41) (the "CCAC").

This Motion is made pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings and evidence on file in this matter, oral argument of counsel, and such other materials and argument as may be presented in connection with the hearing of the Motion.

Pursuant to Civil Local Rule 7-3, on July 21, 2022, counsel for the parties met and conferred regarding this Motion.

## STATEMENT OF RELIEF REQUESTED

Defendants request that the Court dismiss the claims in the CCAC pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).

## ISSUES TO BE DECIDED

Whether the CCAC should be dismissed under Federal Rules of Civil Procedure 9(b) and 12(b)(6) due to Plaintiffs' failure to adequately plead fraud and failure to state any claim against Defendants upon which relief may be granted.

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES............................................1

I.      Introduction ...........................................................................................1

II.     Relevant Background ............................................................................2

    A.  EthereumMAX and the EMAX Token. ......................................2

    B.  The Individual Defendants. ..........................................................3

    C.  The Celebrity Defendants. ............................................................4

    D.  Named Plaintiffs and Putative Class Members............................4

    E.  Plaintiffs' Causes of Action. ........................................................5

III.    Legal Standards ....................................................................................5

IV.     Argument ...............................................................................................6

    A.  Plaintiffs Fail to State a Federal RICO Claim. ...........................6

        1.  Plaintiffs Lack Statutory Standing to Sue Under RICO..............6

            a.  Plaintiffs Lack a Cognizable Property Injury Based on An Expectancy Interest in the EMAX Token's Value......7

            b.  Plaintiffs Fail to Allege that Any Racketeering Activity Proximately Caused Any Alleged Injury. ...........8

        2.  Plaintiffs Fail to Plead a Plausible RICO Claim. ......................10

            a.  Plaintiffs Fail to Allege a RICO Enterprise. ..................10

                (1)  Plaintiffs Do Not Plead a Common Purpose. .......11

                (2)  Plaintiffs Do Not Plead an Ongoing Unit. ............12

                (3)  Plaintiffs Fail to Allege Continuity......................12

            b.  Plaintiffs Fail to Allege that All Defendants Conducted the Affairs of Any Alleged Enterprise..........12

            c.  Plaintiffs Fail to Allege Predicate Acts..........................14

             d.  Plaintiffs Fail to Allege a Pattern of Racketeering. ........15

    B.  Plaintiffs Lack Standing to Assert Claims Under Other States' Laws. .........................................................................................16

    C.  Plaintiffs Fail to Allege Threshold Requirements for the State Consumer Statutory Claims. .....................................................17

         1.  Plaintiffs Lack Standing to Sue Under the UCL, CLRA, or FAL Because They Do Not Plead Actual Reliance on Alleged Misrepresentations or Omissions.................................17

         2.  Plaintiffs Fail to State FDUTPA, N.Y. GBL, or N.J. CFA Claims Because They Fail to Allege Causation. ......................20

    D.  Plaintiffs Fail to State any State Statutory Claim Because None of the Alleged Misrepresentations and Omissions are Actionable. .........22

         1.  Plaintiffs Do Not Allege Misrepresentations Likely to Mislead Reasonable Consumers.................................................22

1

**TABLE OF CONTENTS**
(continued)

2

**Page**

3

        2.    Plaintiffs Do Not Allege Any Material or Otherwise Actionable Omissions by Defendants. .......................................26

4

   E.   Plaintiffs Fail to State Any UCL Claim.................................................30

5

   F.   Plaintiffs Cannot State a CLRA Claim Because the EMAX Token is Not a "Good" or "Service" Subject to the CLRA. ...........................31

6

   G.   Plaintiffs Fail to State an Aiding and Abetting Claim. ........................32

7

   H.   Plaintiffs Fail to State a Common Law Civil Conspiracy Claims. ......34

   I.   Plaintiffs Fail to State Any Claim for Equitable Relief. ......................35

8

V.   Conclusion..................................................................................................36

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

**DEFS.' MOT. TO DISMISS**
**LEAD CASE NO. CV 22-163 MWF (SKx)**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adell v. Macon Cnty. Greyhound Park, Inc.*,
785 F. Supp. 2d 1226 (M.D. Ala. 2011)................................................................7

*Aleksick v. 7-Eleven, Inc.*,
205 Cal. App. 4th 1176 (2012)...........................................................................30

*Allwaste, Inc. v. Hecht*,
65 F.3d (9th Cir. 1995)......................................................................................16

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006) ............................................................................................8

*Apodaca v. Whirlpool Corp.*,
No. SACV 13-00725 JVS (ANx), 2013 WL 6477821 (C.D. Cal.
Nov. 8, 2013)......................................................................................................24

*In re Apple Processor Litig.*,
No. 18-cv-00147-EJD, 2022 WL 2064975 (N.D. Cal. June 8, 2022)..........18, 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................6

*Barrett v. Apple Inc.*,
523 F. Supp. 3d 1132 (N.D. Cal. 2021)...................................................18, 20, 27

*Becerra v. McClatchy Co.*,
69 Cal. App. 5th 913 (2021) ..............................................................................30

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .........................................................................................5, 6

*Berry v. Am. Express Publ'g, Inc.*,
147 Cal. App. 4th 224 (2007).............................................................................32

*Boyle v. United States*,
556 U.S. 938 (2009) ..........................................................................................10

*Broward Motorsports of Palm Beach, LLC v. Polaris Sales, Inc.*,
No. 17-cv-81100, 2018 WL 1072211 (S.D. Fla. Feb. 27, 2018) ......................29

1
2

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

3
4

*Camacho v. Auto. Club of S. California*,
  142 Cal. App. 4th 1394 (2006)................................................................ 30

5
6

*Canyon Cnty. v. Syngenta Seeds, Inc.*,
  519 F.3d 969 (9th Cir. 2008)..................................................................... 6

7
8

*In re Carrier IQ, Inc.*,
  78 F. Supp. 3d 1051 (N.D. Cal. 2015)..................................................... 17

9
10

*Casey v. Florida Coastal Sch. of L., Inc.*,
  No. 3:14-CV-1229-J-39PDB, 2015 WL 10096084
  (M.D. Fla. Aug. 11, 2015)....................................................................... 23

11
12

*Casey v. U.S. Bank Nat'l Ass'n*,
  127 Cal. App. 4th 1138 (2005)................................................................ 33

13
14

*Chapman v. Skype Inc.*,
  220 Cal. App. 4th 217 (2013).................................................................. 19

15
16

*Chaset v. Fleer/Skybox Int'l, LP*,
  300 F.3d 1083 (9th Cir. 2002).............................................................. 7, 8

17
18

*Clegg v. Cult Awareness Network*,
  18 F.3d 752 (9th Cir. 1994)............................................................... 27, 29

19

*Clemens v. DaimlerChrysler Corp.*,
  534 F.3d 1017 (9th Cir. 2008)................................................................. 25

20
21
22

*Club One Casino, Inc. v. Sarantos*,
  No. 1:17-cv-00818-DAD-SAB, 2018 WL 4719112
  (E.D. Cal. Sept. 28, 2018) ........................................................................ 9

23
24

*Cox v. Sears Roebuck & Co.*,
  138 N.J. 2 (1994)..................................................................................... 29

25
26

*Dana v. Hershey Co.*,
  180 F. Supp. 3d 652 (N.D. Cal. 2016)..................................................... 30

27

*Daugherty v. Am. Honda Motor Co.*,
  144 Cal. App. 4th 824 (2006).................................................................. 27

28

1

2

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

3

4

*Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)*,
    924 F. Supp. 449 (S.D.N.Y. 1996) ................................................................. 13

5

6

*Diaz v. Gates*,
    420 F.3d 897 (9th Cir. 2005) ...........................................................................7

7

8

*Dimond v. Darden Rests., Inc.*,
    No. 13-CV-5244 (KPF), 2014 U.S. Dist. LEXIS 94004
    (S.D.N.Y. July 9, 2014) ................................................................................. 28

9

10

*Doe v. Epic Games, Inc*.,
    435 F. Supp. 3d 1024 (N.D. Cal. 2020) ........................................................ 32

11

12

13

*Drake v. Toyota Motor Corp*.,
    No. 2:20-cv-01421-SB-PLA, 2020 WL 7040125
    (C.D. Cal. Nov. 23, 2020) ............................................................................. 17

14

15

*Dugan v. TGI Fridays, Inc.*,
    231 N.J. 24 (2017) ......................................................................................... 29

16

*Eclectic Properties E., LLC v. Marcus & Millichap Co*.,
    751 F.3d 990 (9th Cir. 2014) ........................................................................ 14

17

18

*Eisen v. Porsche Cars N. Am., Inc.*,
    No. CV 11-9405 CAS, 2012 WL 841019 (C.D. Cal. Feb. 22, 2012) ............... 26

19

20

*Falk v. Gen. Motors Corp.*,
    496 F. Supp. 2d 1088 (N.D. Cal. 2007) ....................................................... 27

21

22

*I.B. ex rel. Fife v. Facebook, Inc*.,
    905 F. Supp. 2d 989 (N.D. Cal. 2012) .......................................................... 32

23

24

*Fink v. Time Warner Cable*,
    810 F. Supp. 2d 633 (S.D.N.Y. 2011) ......................................................... 23

25

26

*In re First All. Mortg. Co*.,
    471 F.3d 977 (9th Cir. 2006) ................................................................ 1, 16, 33

27

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) .......................................................................... 22

28

Cooley LLP
Attorneys at Law
San Francisco

vi

Defs.' Mot. to Dismiss
Lead Case No. CV 22-163 MWF (SKx)

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Gale v. Int'l Bus. Machines Corp.*,
   9 A.D.3d 446 (2004) ..................................................................... 20, 21

*Geffner v. Coca-Cola Co.*,
   928 F.3d 198 (2d Cir. 2019) ............................................................. 23

*Glen Holly Ent., Inc. v. Tektronix, Inc.*,
   343 F.3d 1000 (9th Cir. 2003) ......................................................... 23

*Goldsmith v. Allergan, Inc.*,
   No. CV 09-7088 PSG EX, 2011 WL 2909313
   (C.D. Cal. May 25, 2011) ................................................................ 18

*Goldstein v. Gen. Motors LLC*,
   445 F. Supp. 3d 1000 (S.D. Cal. 2020) ........................................... 17

*Gomez v. Guthy-Renker, LLC*,
   No. EDCV 14-01425 JGB (KKx), 2015 WL 4270042
   (C.D. Cal. July 13, 2015) ................................................................. 11

*Gonzales v. Lloyds TSB Bank*,
   532 F. Supp. 2d 1200 (C.D. Cal. 2006) ...................................... 12, 13

*Guthrie v. Transamerica Life Ins. Co.*,
   561 F. Supp. 3d 869 (N.D. Cal. 2021) ............................................. 35

*H.J. Inc. v. Nw. Bell Tel. Co.*,
   492 U.S. 229 (1989) ................................................................... 15, 16

*Hadley v. Kellogg Sales Co.*,
   243 F. Supp. 3d 1074 (N.D. Cal. 2017) ........................................... 31

*Hall v. Sea World Ent., Inc.*,
   No. 3:15-CV-660-CAB-RBB, 2015 WL 9659911
   (S.D. Cal. Dec. 23, 2015) ................................................................ 20

*Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison*,
   955 F. Supp. 248 (S.D.N.Y. 1997) .................................................. 13

*Hemi Grp., LLC v. City of New York, N.Y.*,
   559 U.S. 1 (2010) .............................................................................. 8

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Holmes v. Sec. Inv. Prot. Corp.*,
503 U.S. 258 (1992) ............................................................................ 6, 8

*Howard v. Am. Online, Inc.*,
208 F.3d 741 (9th Cir. 2000) .................................................................. 16

*Hunt Const. Grp., Inc. v. Hun Sch. of Princeton*,
No. 08-3550 (FLW), 2009 WL 1312591 (D.N.J. May 11, 2009) .................... 23

*Huynh v. Quora, Inc.*,
508 F. Supp. 3d 633 (N.D. Cal. 2020) ..................................................... 36

*In re Hydroxycut Mktg. & Sales Pracs. Litig.*,
299 F.R.D. 648 (S.D. Cal. 2014) ............................................................ 33

*Int'l Union of Operating Engineers Loc. No. 68 Welfare Fund v.
Merck & Co.*,
192 N.J. 372 (2007) .............................................................................. 20

*Jeong v. Nexo Fin. LLC*,
No. 21-cv-02392-BLF, 2022 WL 174236 (N.D. Cal. Jan. 19, 2022) ............... 32

*Judge v. Blackfin Yacht Corp.*,
357 N.J. Super. 418 (2003) ............................................................... 29, 30

*Just. v. Rheem Mfg. Co.*,
318 F.R.D. 687 (S.D. Fla. 2016) ............................................................ 20

*In re JUUL Labs, Inc., Mktg., Sales Practices, & Prod. Liab. Litig.*,
497 F. Supp. 3d 552 (N.D. Cal. 2020) ................................................. 14, 15

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ............................................................... 19

*Kidron v. Movie Acquisition Corp*.
40 Cal. App. 4th 1571 (1995) ................................................................ 34

*Knuttel v. Omaze, Inc.*,
No. 2:21-cv-09034-SB-PVC, 2022 WL 1843138 (C.D. Cal. Feb.
22, 2022) ........................................................................................... 31

Cooley LLP
ATTORNEYS AT LAW
SAN FRANCISCO

viii

DEFS.' MOT. TO DISMISS
LEAD CASE NO. CV 22-163 MWF (SKx)

1
2

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

3
4

*Kwikset Corp. v. Superior Ct.*,
    51 Cal. 4th 310 326–27 (2011)....................................................................17

5
6

*Lauter v. Anoufrieva*,
    642 F. Supp. 2d 1060 (C.D. Cal. 2009)......................................................34

7
8

*Lavie v. Procter & Gamble Co.*,
    105 Cal. App. 4th 496 (2003).....................................................................22

9
10

*Lee v. CarMax Auto Superstores California, LLC*,
    No. CV-13-7648-MWF, 2013 WL 12473808
    (C.D. Cal. Dec. 2, 2013).............................................................................31

11
12

*LiMandri v. Judkins*,
    52 Cal. App. 4th 326 (1997).......................................................................27

13
14
15

*MacNaughten v. Young Living Essential Oils, LC*,
    No. 5:21-cv-00071 (BKS/ML), 2021 WL 5965195
    (N.D.N.Y. Dec. 16, 2021) ...........................................................................23

16

*Marcus v. AT&T Corp.*,
    138 F.3d 46 (2d Cir. 1998) .........................................................................22

17
18
19

*Martinez v. Hammer Corp.*,
    No. CV 09-06135 MMM, 2010 WL 11507562
    (C.D. Cal. Jan. 29, 2010) ............................................................................36

20
21

*Matthews v. Am. Honda Motor Co., Inc.*,
    No. 12-60630-CIV, 2012 WL 2520675 (S.D. Fla. June 6, 2012)...............28

22
23

*McKinniss v. Sunny Delight Beverages Co.*,
    No. CV 07-02034-RGK, 2007 WL 4766525
    (C.D. Cal. Sept. 4, 2007)............................................................................22

24
25
26

*Mehta v. Robinhood Fin. LLC*,
    No. 21-cv-01013-SVK, 2021 WL 6882392
    (N.D. Cal. Sept. 8, 2021)............................................................................19

27
28

*Mirkin v. Wasserman*,
    5 Cal. 4th 1082 (1999)...........................................................................18, 19

1

2

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

3

4

*Moore v. Trader Joe's Co.*,
  4 F.4th 874 (9th Cir. 2021)..................................................................22, 25

5

6

*Morris v. ADT Sec. Servs.*,
  580 F. Supp. 2d 1305 (S.D. Fla. 2008)..................................................... 29

7

8

*Neilson v. Union Bank of California, N.A.*,
  290 F. Supp. 2d 1101 (C.D. Cal. 2003)..................................................... 33

9

*New Jersey Citizen Action v. Schering-Plough Corp.*,
  842 A.2d 174 (2003)..............................................................................22, 23

10

11

12

*In re NJOY, Inc. Consumer Class Action Litig.*,
  No. CV 14-00428 MMM, 2014 WL 12586074
  (C.D. Cal. Oct. 20, 2014)........................................................................... 21

13

14

*Odom v. Microsoft Corp.*,
  486 F.3d 541 (9th Cir. 2007)................................................................11, 12

15

16

*Piescik v. CVS Pharmacy, Inc.*,
  No. 21-81298-CV, 2021 WL 5996977 (S.D. Fla. Dec. 15, 2021) ................. 25

17

18

*Price v. Pinnacle Brands, Inc.*,
  138 F.3d 602 (5th Cir. 1998)........................................................................ 7

19

*Reeves v. Niantic, Inc.*,
  No. 21-cv-05883-VC, 2022 WL 1769119 (N.D. Cal. May 31, 2022).............. 32

20

21

*Religious Tech. Ctr. v. Wollersheim*,
  971 F.2d 364 (9th Cir. 1992)....................................................................... 16

22

23

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993) .................................................................................... 12

24

25

*In re Riddell Concussion Reduction Litig.*,
  77 F. Supp. 3d 422 (D.N.J. 2015)................................................................ 21

26

27

*Rusheen v. Cohen*,
  37 Cal. 4th 1048 (2006)............................................................................... 34

28

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*S'holder Representative Servs. LLC v. Hantash*,
   No. CV 19-5248 PSG, 2019 WL 9516299
   (C.D. Cal. Dec. 27, 2019) ................................................................. 13

*S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*,
   84 F.3d 629 (2d Cir. 1996) ............................................................... 28

*Sateriale v. R.J. Reynolds Tobacco Co.*,
   697 F.3d 777 (9th Cir. 2012) ............................................................ 17

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
   806 F.2d 1393 (9th Cir. 1986) .......................................................... 10

*Semegen v. Weidner*,
   780 F.2d 727 (9th Cir. 1985) ............................................................. 6

*Shaw v. Nissan N. Am., Inc.*,
   220 F. Supp. 3d 1046 (C.D. Cal. 2016) ............................................ 11

*Silver v. Countrywide Home Loans, Inc.*,
   760 F. Supp. 2d 1330 (S.D. Fla. 2011) ............................................. 23

*Smith v. Wachovia*,
   No. C 09-01300 SI, 2009 WL 1948829 (N.D. Cal. July 6, 2009) .................... 34

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ....................................................... 35, 36

*Swanson v. USProtect Corp.*,
   No. C 05-602 JF (HRL), 2007 WL 1394485
   (N.D. Cal. May 10, 2007) ................................................................. 36

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ...................................................... 10, 34

*Sybersound Records, Inc. v. UAV Corp.*,
   517 F.3d 1137 (9th Cir. 2008) ........................................................... 9

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ..................................................................... 19

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*United Bhd. of Carpenters & Joiners of Am. Bldg. v. Constr. Trades Dep't, AFL-CIO*,
  770 F.3d 834 (9th Cir. 2014) .............................................................. 10

*United States v. Green*,
  592 F.3d 1057 (9th Cir. 2010) ............................................................ 15

*United States v. Turkette*,
  452 U.S. 576 (1981) ........................................................................... 12

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) .............................................................. 6

*Vitt v. Apple Computer, Inc.*,
  No. CV 06-7152-GW, 2010 WL 11545683 (C.D. Cal. May 21, 2010), *aff'd*, 469 F. App'x 605 (9th Cir. 2012) .............................. 22

*Walker v. Equity 1 Lenders Grp.*,
  No. 09cv325 WQH (AJB), 2009 WL 1364430
  (S.D. Cal. May 14, 2009) .................................................................... 36

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
  865 F. Supp. 2d 1002 (C.D. Cal. 2011) .............................................. 14

*Williams v. Apple, Inc.*,
  No. 19-CV-04700-LHK, 2020 WL 6743911
  (N.D. Cal. Nov. 17, 2020) .................................................................. 35

*Wilson v. Hewlett-Packard Co.*,
  668 F.3d 1136 (9th Cir. 2012) ............................................................ 28

*Woods v. Maytag Co.*,
  No. 10-CV-0559 (ADS) (WDW), 2010 WL 4314313
  (E.D.N.Y. Nov. 2, 2010) ..................................................................... 28

*Zakikhan v. Hyundai Motor Co.*,
  No. 8:20-cv-01584-SB, 2021 WL 4805454
  (C.D. Cal. June 28, 2021) ............................................................. 13, 17

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

xii

DEFS.' MOT. TO DISMISS
LEAD CASE NO. CV 22-163 MWF (SKx)

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*,
   No. LA ML19-02905 JAK (FFMX), 2022 WL 522484
   (C.D. Cal. Feb. 9, 2022) ................................................................... 21

*Zlotnick v. Premier Sales Grp., Inc.*,
   480 F.3d 1281 (11th Cir. 2007) ........................................................ 22

*Zuniga v. Bank of Am. N.A.*,
   No. CV 14-06471 MWF, 2014 WL 7156403
   (C.D. Cal. Dec. 9, 2014) ................................................................... 30

**Statutes**

18 U.S.C.
   § 1961(1) ........................................................................................... 14
   § 1961(5) ........................................................................................... 15
   § 1962 .................................................................................................. 6
   § 1962(c) ........................................................................................... 13
   § 1964 .................................................................................................. 6
   § 1964(c) ............................................................................................. 6

FTC Act § 5 ........................................................................................... 30

Cal. Bus. & Prof. Code
   § 17200, *et seq.* ........................................................................ *passim*
   § 17500, *et seq.* ........................................................................ *passim*

Cal. Civ. Code
   § 1761(a) ........................................................................................... 31
   § 1761(b) ........................................................................................... 31
   § 1770 ........................................................................................... *passim*

Art. 22-A, § 349, *et seq.* ................................................................. *passim*

Ch. 501, § 17200, Fla. Stat. Ann. .................................................... *passim*

NJSA 56:8-1, *et seq.* ...................................................................... *passim*

Cooley LLP
Attorneys at Law
San Francisco

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

**Other Authorities**

Fed. R. Civ. P.
    9(b)................................................................................................*passim*
    12(b)(6)................................................................................................5

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

xiv

DEFS.' MOT. TO DISMISS
LEAD CASE NO. CV 22-163 MWF (SKx)

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This lawsuit is a misguided attempt by Plaintiffs to extract a monetary windfall from the Defendants due to Plaintiffs' decisions to purchase a highly speculative and volatile cryptocurrency. The CCAC must be dismissed for at least nine reasons.

***First***, Plaintiffs fail to state a federal Racketeer Influenced and Corrupt Organizations Act ("RICO") claim. Plaintiffs lack statutory standing to sue under RICO because they have no cognizable property injury and fail to allege racketeering activity that caused any injury. Even assuming Plaintiffs had standing, however, the CCAC plainly fails to allege the necessary elements of a civil RICO claim.

***Second***, the Plaintiffs who do not reside in California lack standing to assert claims under California law precisely because they do not reside in California and they do not allege suffering any injury in California.

***Third***, Plaintiffs fail to state a claim under any of the state consumer statutes because they do not plead threshold requirements necessary to state a claim. Plaintiffs do not allege facts showing that they actually relied on the alleged statements or omissions and thus they lack statutory standing under the Unfair Competition Law ("UCL"), California Consumer Legal Remedies Act ("CLRA"), or False Advertising Law ("FAL"). Plaintiffs otherwise fail to allege facts showing that Defendants' conduct caused their alleged injuries and thus they do not state Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), New York General Business Law ("N.Y. GBL"), or New Jersey Consumer Fraud Act ("N.J. CFA") claims.

***Fourth,*** Plaintiffs fail to state a claim under any of the state consumer statutes because none of the alleged misrepresentations or omissions that Plaintiffs challenge are actionable.

***Fifth***, Plaintiffs fail to state a UCL claim. Plaintiffs' unlawful prong claim fails because they have not stated a violation of another law. Plaintiffs' unfair prong

claim fails because their allegations of unfair conduct are wholly conclusory, do not plausibly demonstrate that any Defendant engaged in unfair conduct, and otherwise rely on the same alleged conduct that fails to state an unlawful prong claim.

*Sixth*, Plaintiffs cannot state a CLRA claim because, as other courts have already held, virtual currency like the EMAX Token is not a good or service within the CLRA's meaning.

*Seventh,* Plaintiffs fail to state a common law aiding and abetting claim because they have not plausibly alleged that Defendants committed any civil wrong. Moreover, Plaintiffs fail to allege any non-conclusory factual allegations demonstrating that any Defendant had actual knowledge of the alleged civil wrongs, or substantially assisted the commission of those wrongs.

*Eighth*, Plaintiffs fail to state a common law conspiracy claim because they do not allege that the Defendants committed an independent civil wrong. Moreover, Plaintiffs do not plead specific factual allegations plausibly demonstrating the formation of or agreement to an alleged conspiracy.

*Ninth*, Plaintiffs fail to state a claim for equitable relief. While Plaintiffs purport to assert a standalone claim for unjust enrichment, no such claim exists under California law. Plaintiffs' claims for equitable relief are otherwise insufficient because they do not plead that they lack an adequate remedy at law.

In sum, the CCAC should be dismissed against all moving Defendants.

## II.   RELEVANT BACKGROUND

### A.   EthereumMAX and the EMAX Token.

EthereumMAX ("EMAX") is a cryptocurrency project centered around the EMAX Token, a blockchain-based digital asset. (CCAC ¶¶ 31–32.) EMAX Tokens function like other popular digital cryptocurrencies—they can be traded, spent, or otherwise transacted between token holders. (*Id.* ¶ 32.) The EMAX Token can be

purchased or sold through online exchanges,[1] and is primarily traded against the cryptocurrency "Ether"—the native currency of the Ethereum blockchain network, which has a roughly $190 billion market capitalization at the time of this filing.[2]  (*Id.* ¶¶ 33–35.)  The EMAX Token launched in May 2021.  (*Id*. ¶ 40.)  It was created "with a vision to bridge the gap between the emergence of community-driven tokens and the well-known foundational coins of crypto."  (*Id.* ¶ 44.)  The EMAX Token price has fluctuated since its launch due to Token holders' trading and other external market conditions.  (*See, e.g.*, *id.* ¶¶ 40, 51, 60, 92.)  Plaintiffs allege that the EMAX Token price "artificially increase[d]" because of Defendants' conduct, "causing investors to purchase their losing investments at inflated prices."  (*Id.* ¶ 4.)

## B.    The Individual Defendants.[3]

The CCAC does not name the "corporate entity behind EthereumMAX and the EMAX Tokens" because it is allegedly "unknown to Plaintiffs."  (*Id.* ¶ 25.)  However, "upon information and belief," Plaintiffs allege EthereumMAX's headquarters and principal place of business is in California.  (*Id.* ¶ 128.)  The CCAC identifies five Individual Defendants.  Four individuals—Justin Maher, Steve Gentile, Giovanni Perone, and Mike Speer—are allegedly "co-founder/creator[s]" of EthereumMAX who "exercised control over EthereumMAX and directed and/or authorized, directly or indirectly, the sale and/or solicitations of EMAX Tokens to the public."  (*Id.* ¶¶ 15–18.)   Justin French allegedly "served as a consultant, developer, and

---

[1] Plaintiffs note that EMAX Tokens are not currently traded on certain "popular centralized exchanges," and instead token holders rely on "decentralized exchanges . . . which use liquidity pools and smart contracts to allow investors to exchange one asset for another one without a direct counterparty."  (CCAC ¶ 34.)  Plaintiffs do not explain how these features of different cryptocurrency exchanges are relevant to their claims against Defendants.

[2] *See* https://www.coindesk.com/price/ethereum/ (last visited July 27, 2022).

[3] Defendants use the term "Individual Defendants" instead of the CCAC's reference to the "Executive Defendants."

Cooley LLP
Attorneys at Law
San Francisco

3

Defs.' Mot. to Dismiss
Lead Case No. CV 22-163 MWF (SKx)

1   spokesman for EthereumMAX." (*Id.* ¶ 19.)[4]   Although none of the Individual

2   Defendants allegedly resides in California, Plaintiffs allege that "California is . . . the

3   state from which [these] Defendants' alleged misconduct emanated." (*Id.* ¶ 129.)

4       **C.    The Celebrity Defendants.[5]**

5       Apart from the Individual Defendants, the CCAC names five celebrities—Kim

6   Kardashian, Floyd Mayweather, Jr., Paul Pierce, Russell Davis, and Antonio Brown

7   (the "Celebrity Defendants")—who allegedly promoted the EMAX Token to the

8   public. (*Id.* ¶¶ 20–24.)   Kardashian, Mayweather, Pierce, Davis, and Brown are

9   widely known sports and entertainment figures.   Plaintiffs claim the Individual

10  Defendants "collaborat[ed]" and "conspired" with the Celebrity Defendants "to

11  artificially increase" the price of EMAX Tokens. (*Id.* ¶¶ 2, 4.)  For certain Celebrity

12  Defendants (but not all), the CCAC alleges "[u]pon information and belief" that they

13  received payment for their alleged promotions. (*See id.* ¶¶ 66, 102, 105.)  Plaintiffs

14  also allege that "the [Individual] Defendants were able to and did make similar

15  payments to [five] other celebrity promoters . . . to 'shill' the EMAX Tokens," but

16  those individuals are not named as defendants in this lawsuit. (*Id.* ¶ 82.)

17      **D.    Named Plaintiffs and Putative Class Members.**

18      The nine Named Plaintiffs are "investors" who reside in New York, California,

19  Florida, and New Jersey, and allegedly suffered "investment losses" after purchasing

20  EMAX Tokens. (*Id.* ¶¶ 1, 6–14.)  Plaintiffs make boilerplate and identical allegations

21  that they incurred losses "[a]fter viewing numerous celebrity endorsements of

22  EMAX." (*See id.* ¶¶ 6–14.)  The Named Plaintiffs do not allege which endorsements

23  they saw, when they saw them, which specific Defendants were responsible for the

24  endorsements, or how those endorsements led to their purchases of EMAX Tokens.

25  Plaintiffs do not allege where or when they purchased EMAX Tokens, or the amount

26  _____

[4] The CCAC also purports to name John Doe Defendants based on alleged "clues"
27  derived from deleted online posts and "friend" connections. (CCAC ¶ 26, n. 1.)

[5] Defendants use the term "Celebrity Defendants" instead of the CCAC's reference
28  to "Promotor Defendants."

1  purchased, or whether they even still possess any EMAX Tokens.  Plaintiffs make
2  no concrete factual allegations about the amount of losses they allegedly suffered.

3       Plaintiffs seek to represent a putative nationwide class of "[a]ll persons who,
4  during the Class Period [May 14, 2021 – June 27, 2021, herein the "Relevant
5  Period"], purchased EthereumMAX's EMAX Tokens and were subsequently
6  damaged thereby." (*Id.* ¶¶ 117–118.)  "Plaintiffs believe . . . that the Class consists
7  of at least hundreds of people." (*Id.* ¶ 120.)  Plaintiffs assert that California
8  substantive law "applies to the entire Class." (*See id.* ¶¶ 126–130.)

9       **E.**    **Plaintiffs' Causes of Action.**

10       The CCAC asserts claims for: (1) the California Unfair Competition Law
11  ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.* (all Defendants) (*id.* ¶¶ 131–136);
12  (2) the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1770
13  (all Defendants) (*id.* ¶¶ 137–144); (3) aiding and abetting under California common
14  law (all Celebrity Defendants) (*id.* ¶¶ 145–152); (4) the federal Racketeer Influenced
15  and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* (all Defendants)
16  (*id.* ¶¶ 153–186); (5) common law conspiracy (all Defendants) (*id.* ¶¶ 187–191);
17  (6) the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500,
18  *et seq.* (against Kardashian) (*id.* ¶¶ 192–203); (7) the Florida Deceptive and Unfair
19  Trade Practices Act ("FDUTPA"), Ch. 501, § 17200, Fla. Stat. Ann. (all Defendants)
20  (*id.* ¶¶ 204–220); (8) the New York General Business Law ("N.Y. GBL"), Art. 22-
21  A, § 349, *et seq.* (all Defendants); (9) the New Jersey Consumer Fraud Act ("N.J.
22  CFA"), NJSA 56:8-1, *et seq.* (all Defendants) (*id.* ¶¶ 227–232); and (10) California
23  common law "unjust enrichment/restitution" (all Defendants) (*id.* ¶¶ 233–236).

24  **III.**   **LEGAL STANDARDS**

25       A federal court may dismiss a complaint for failure to state a claim upon which
26  relief may be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion
27  to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is
28  plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action" are insufficient, *id.* at 555, and a complaint must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 9(b) requires a plaintiff alleging fraud to "state with particularity the circumstances constituting the fraud." Fed. R. Civ. P. 9(b). These "circumstances" are the "who, what, when, where, and how" of the alleged fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). "Intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9(b) "protects potential defendants—especially professionals whose reputations in their fields of expertise are most sensitive to slander—from the harm that comes from being charged with the commission of fraudulent acts." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). A court should dismiss "[w]hen an entire complaint, or an entire claim within a complaint, is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b)." *Vess*, 317 F.3d at 1107.

## IV. ARGUMENT

### A. Plaintiffs Fail to State a Federal RICO Claim.

#### 1. Plaintiffs Lack Statutory Standing to Sue Under RICO.

Section 1964 of RICO provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court." 18 U.S.C. § 1964(c). To have standing to sue, "a civil RICO plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was 'by reason of' the RICO violation, which requires the plaintiff to establish proximate causation." *Canyon Cnty. v. Syngenta Seeds, Inc*., 519 F.3d 969, 972 (9th Cir. 2008) (quoting *Holmes v. Sec. Inv. Prot. Corp*., 503 U.S. 258, 268 (1992)). Plaintiffs do not allege injury to business. While any RICO standing in this case is limited to any alleged property injury, Plaintiffs have failed to allege such an injury and thus lack RICO standing.

a.    **Plaintiffs Lack a Cognizable Property Injury Based on An Expectancy Interest in the EMAX Token's Value.**

RICO plaintiffs must allege "harm to a specific business or property interest." *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) (en banc).  They must also plead a "concrete financial loss."  *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086–87 (9th Cir. 2002) (citation and internal quotation marks omitted). "Injury to mere expectancy interests . . . is not sufficient to confer RICO standing." *Price v. Pinnacle Brands, Inc*., 138 F.3d 602, 607 (5th Cir. 1998); *see also Chaset*, 300 F.3d at 1086 (9th Cir. 2002); *Adell v. Macon Cnty. Greyhound Park, Inc*., 785 F. Supp. 2d 1226, 1238 (M.D. Ala. 2011).

Plaintiffs' allegation that they suffered a RICO injury by purchasing EMAX Tokens at an artificially inflated price (CCAC ¶ 182) fails because it is premised on an expectancy interest regarding the EMAX Token's value.  Plaintiffs rely on the alleged value of the EMAX Token **after** the Relevant Period.  While the price experienced various highs and lows during the Relevant Period, Plaintiffs' alleged injury is premised on the value of the token on July 15, 2021, an alleged "all-time low" of $0.000000017 "from which it has not been able to recover."  (*Id.* ¶¶ 109, 111.)  Thus, Plaintiffs claim that "investors were left holding worthless tokens" and allegedly overpaid for their tokens.  (*Id.* ¶ 109.)  The focus on the EMAX Token's alleged value after the Relevant Period can only be explained by Plaintiffs' expectation that the Token would gain value after their alleged purchases.  Indeed, Plaintiffs repeatedly point to alleged endorsements and statements regarding the rise in the EMAX Token's value and the ability to sell EMAX Tokens for a profit.  (*See, e.g.*, *id.* ¶¶ 71, 79.)

Plaintiffs' expectancy interest is an insufficient injury under RICO.  Akin to the scenario described in *Chaset v. Fleer/Skybox Int'l, LP*, an individual purchasing an EMAX Token enters into a bargain whereby in return for payment the purchaser receives a Token and the chance that the value of the Token will increase, stay the

Cooley LLP
Attorneys at Law
San Francisco

7

Defs.' Mot. to Dismiss
Lead Case No. CV 22-163 MWF (SKx)

same, or even decrease. *See* 300 F.3d at 1086. This bargain delivers actual value to each party because the chance itself has value regardless of whether or not the value of the Token decreases at a later point. Just as a Token purchaser may experience a decrease in the value of the token, the purchaser may also find that the Token has increased in value. Indeed, during the Relevant Period, the EMAX Token allegedly experienced ***increases*** in value. (*See* CCAC ¶ 112.) At the time that Plaintiffs purchased their Tokens, they received exactly what they paid for—the Tokens they received were assets that had the chance of a higher value. Plaintiffs' disappointment with the alleged decrease in the Token's value after their purchase cannot confer standing for a civil RICO claim, particularly since there is no dispute that Plaintiffs actually acquired the EMAX Tokens that they sought to purchase. *See Chaset*, 300 F.3d at 1086–87.

> **b.  Plaintiffs Fail to Allege that Any Racketeering Activity Proximately Caused Any Alleged Injury.**

Causation must be both "but for" and proximate to assert a civil RICO claim. *Holmes*, 503 U.S. at 268. "Proximate cause for RICO purposes . . . requires some direct relation between the injury asserted and the injurious conduct alleged" and a "link that is too remote, purely contingent, or indirect is insufficient." *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010) (internal quotation marks and citations omitted). "When a court evaluates a RICO claim for proximate causation, the central question . . . is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006). A plaintiff injured only "indirectly" by a defendant's conduct, such as through harms passed on by a third party, is "generally said to stand at too remote a distance to recover." *Holmes*, 503 U.S. at 268–69. Three non-exhaustive factors determine whether the RICO proximate causation requirement has been met: (1) whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general; (2) whether it will be difficult to ascertain the

Cooley LLP
Attorneys at Law
San Francisco

8

Defs.' Mot. to Dismiss
Lead Case No. CV 22-163 MWF (SKx)

amount of the plaintiff's damages attributable to defendant's wrongful conduct; and (3) whether the courts will have to adopt complicated rules apportioning damages to obviate the risk of multiple recoveries. *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1148 (9th Cir. 2008). These factors, when applied to the allegations here, weigh against proximate causation.

As discussed *infra* Section IV.A.2.c, Plaintiffs do not plead any predicate acts. Thus, they cannot plead proximate causation between those acts and the alleged injuries.

Plaintiffs' allegations are otherwise insufficient because, for several reasons, it will be difficult for the Court to ascertain whether and to what extent Plaintiffs' alleged damages are attributable to Defendants' conduct, rather than other independent events. First, Plaintiffs' allegations show that the EMAX Token—like other cryptocurrencies—was highly "volatile," "speculative," and "a risky financial instrument." (*See* CCAC ¶¶ 94 (alluding to investor concerns about the volatility of the EMAX Token price), 99, 115.) Second, Plaintiffs' allegations demonstrate that the value of the EMAX Token is highly sensitive to and dependent on trading, *i.e.*, third-party conduct. (*Id.* ¶¶ 108, 110.) Third, and relatedly, Plaintiffs' own allegations suggest that any injury is attributable to the conduct of third parties exercising poor investment judgment, rather than Defendants' alleged conduct. (*See id.* ¶ 115.) All these considerations will make it impossible for the Court to attribute any alleged damages to each of the various Defendants.

Similarly, Plaintiffs cannot demonstrate proximate causation to support their RICO claim because, irrespective of any third-party conduct, it would be far too complex for the Court to apportion damages to each Plaintiff for each Defendant's own alleged misconduct. *See Club One Casino, Inc. v. Sarantos*, No. 1:17-cv-00818-DAD-SAB, 2018 WL 4719112, at *6 (E.D. Cal. Sept. 28, 2018), *aff'd sub nom. Club One Casino, Inc. v. Perry*, 837 F. App'x 459 (9th Cir. 2020). Indeed, the Court would need to engage in a complicated and speculative exercise to apportion damages

1   amongst the Defendants for their alleged role and responsibility, while also
2   attempting to parse other causes of Plaintiffs' alleged losses.

3   Because Plaintiffs cannot demonstrate proximate causation under RICO, the
4   Court should dismiss their RICO claim for lack of statutory standing.

5   **2.    Plaintiffs Fail to Plead a Plausible RICO Claim.**

6   To plead a civil RICO claim based on a pattern of racketeering activity,
7   Plaintiffs must allege: (1) conduct (2) of an enterprise (3) through a pattern (4) of
8   racketeering activity (known as predicate acts) (5) causing injury to plaintiff's
9   business or property. *United Bhd. of Carpenters & Joiners of Am. Bldg. v. Constr.*
10  *Trades Dep't, AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014).

11  Rule 9(b) applies to the fraudulent conduct relevant to the alleged common
12  purpose of the enterprise and the alleged predicate acts, and thus requires a
13  heightened showing of the circumstances of fraudulent acts, including "the time,
14  place, and specific content of the false representations as well as the identities of the
15  parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
16  806 F.2d 1393, 1401 (9th Cir. 1986). Rule 9(b) "does not allow a complaint to merely
17  lump multiple defendants together," but requires plaintiffs to "differentiate" their
18  allegations to "inform" each defendant separately of the allegations particular to that
19  defendant's alleged participation in the fraud. *Swartz v. KPMG LLP*, 476 F.3d 756,
20  764–65 (9th Cir. 2007). When "a fraud suit involv[es] multiple defendants, a plaintiff
21  must . . . identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme."
22  *Id*. at 765 (internal quotation marks and citation omitted). Plaintiffs do not plausibly
23  allege the elements of a civil RICO claim and fail to meet Rule 9(b)'s requirements.

24  **a.    Plaintiffs Fail to Allege a RICO Enterprise.**

25  Plaintiffs claim that the Individual Defendants and the Celebrity Defendants
26  allegedly formed an associated-in-fact enterprise. (CCAC ¶¶ 156–57.) "[A]n
27  association-in-fact enterprise is 'a group of persons associated together for a common
28  purpose of engaging in a course of conduct.'" *Boyle v. United States*, 556 U.S. 938,

Cooley LLP
Attorneys at Law
San Francisco

10

Defs.' Mot. to Dismiss
Lead Case No. CV 22-163 MWF (SKx)

946 (2009) (citation omitted).  In the Ninth Circuit, there are three requirements to plead an associated-in-fact enterprise: (1) a common purpose, (2) an ongoing organization, formal or informal, and (3) a continuing unit.  *Odom v. Microsoft Corp*., 486 F.3d 541, 551 (9th Cir. 2007) (en banc).  Plaintiffs fail to plead any of these three requirements.

### (1)  Plaintiffs Do Not Plead a Common Purpose.

Plaintiffs fail to plausibly allege that the Defendants had a common purpose because their allegations "only demonstrate that the parties are associated in a manner directly related to their own primary business activities."  *Shaw v. Nissan N. Am., Inc*., 220 F. Supp. 3d 1046, 1057 (C.D. Cal. 2016); *see also Gomez v. Guthy-Renker, LLC*, No. EDCV 14-01425 JGB (KKx), 2015 WL 4270042 at *8 (C.D. Cal. July 13, 2015) ("Courts have overwhelmingly rejected attempts to characterize routine commercial relationships as RICO enterprises.").  Plaintiffs claim that the Individual Defendants—Maher, Gentile, Perone, Speer, and French—were one part of the alleged enterprise. (CCAC ¶¶ 2, 15–19, 157.)  But as purported executives allegedly exercising control over Defendant EthereumMax (or rather, unknown "Corporate Defendants X"), their alleged conduct is consistent with ordinary conduct of individuals operating a new company.

Plaintiffs also claim that the Celebrity Defendants—Kardashian, Mayweather, Pierce, Davis, and Brown—were part of the enterprise.  (*Id*. ¶¶ 2, 20–24.)  But Plaintiffs' allegations reflect merely that these Defendants are "public figures" who are "experience[d] with endorsement contracts"; in other words, their alleged conduct is consistent with their own ordinary business activities of using social media as a promotional tool.  (*See, e.g., id*. ¶¶ 51, 57 (pointing to two Twitter posts by Pierce), *id*. ¶¶ 67, 69 (alleging Maher "brought the EthereumMax project to Davis specifically to leverage Davis' cryptocurrency-investing followers on social media" and Davis made one Twitter post), *id*. ¶¶ 81, 83–85, 91 (alleging Mayweather promoted the EMAX Token in his boxing matches), *id*. ¶¶ 87, 97 (alleging Kardashian promoted

Cooley LLP
Attorneys at Law
San Francisco

11

Defs.' Mot. to Dismiss
Lead Case No. CV 22-163 MWF (SKx)

the EMAX Token in two Instagram posts), *id.* ¶ 86 (alleging Brown posted one Instagram story).)

### (2)    Plaintiffs Do Not Plead an Ongoing Unit.

An ongoing organization is "a vehicle for the commission of two or more predicate crimes," which may be either formal or informal. *Odom*, 486 F.3d at 551–52. Although Plaintiffs allege, in a conclusory fashion, that the Defendants formed an ongoing enterprise, they have not sufficiently pleaded the commission of two or more predicate crimes. *See infra* Section IV.A.2.c. Thus, the CCAC also fails to plead this second element of the RICO claim.

### (3)    Plaintiffs Fail to Allege Continuity.

To satisfy the "continuing unit" element, Plaintiffs must "provide sufficient 'evidence that the various associates function as a continuing unit.'" *Odom*, 486 F.3d at 552 (quoting *United States v. Turkette*, 452 U.S. 576, 582 (1981)). The alleged behavior must be more than isolated activity. *Odom*, 486 F.3d at 553. Plaintiffs allege, in a conclusory fashion, that the enterprise consists of continuing business organizations. (CCAC ¶ 158.)[6] But that allegation does not suggest that the ***alleged unlawful enterprise*** is continuing, which defeats Plaintiffs' RICO claim. Moreover, even if the Court construes this threadbare allegation to refer to a continuing enterprise, the CCAC's factual allegations show, at most, isolated activity by the Defendants between May and June 2021. Isolated conduct over an alleged ***six-week*** period (*id.* ¶ 118) does not show a continuing enterprise. *See infra* Section IV.A.2.d.

### b.    Plaintiffs Fail to Allege that All Defendants Conducted the Affairs of Any Alleged Enterprise.

A plausible federal RICO claim requires a "showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their

---

[6] Given Plaintiffs' concession that they do not know the identity of "undisclosed individuals" in the alleged EMAX Token Enterprise (CCAC ¶ 157), and do not know "the corporate entity behind EthereumMax and the EMAX Tokens," (CCAC ¶ 25), Plaintiffs' conclusion that these unknown persons and entities are presently engaged in ongoing unlawful conduct is speculative at best.

*own* affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (emphasis in original); *see also Gonzales v. Lloyds TSB Bank*, 532 F. Supp. 2d 1200, 1210 (C.D. Cal. 2006). A defendant's mere provision to the alleged enterprise of assistance that is useful or important to the alleged enterprise is insufficient. *See Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)*, 924 F. Supp. 449, 466 (S.D.N.Y. 1996) ("Many other courts faced with post-*Reves* § 1962(c) claims against outside professionals have agreed that providing important services to a racketeering enterprise is not the same as directing the affairs of the enterprise.").

Here, Plaintiffs' RICO claim fails because they have not alleged facts showing that all Defendants participated in the alleged enterprise. While claiming that Defendants allegedly engaged in a fraudulent pump-and-dump scheme, Plaintiffs' RICO allegations improperly lump all Defendants together without explaining how each Defendant allegedly conducted the affairs of the alleged enterprise. (*See* CCAC ¶¶ 157–69.) Such allegations fail to satisfy Rule 9(b)'s heightened requirements and thus warrant dismissal. *See Zakikhan v. Hyundai Motor Co*., No. 8:20-cv-01584-SB (JDEx), 2021 WL 4805454, at *8 (C.D. Cal. June 28, 2021) (dismissing under Rule 9(b) fraud allegations that lumped all defendants together); *S'holder Representative Servs. LLC v. Hantash*, No. CV 19-5248 PSG (MAAx), 2019 WL 9516299, at *10 (C.D. Cal. Dec. 27, 2019) (same).

Moreover, Plaintiffs' allegations regarding the Celebrity Defendants—stripped of boilerplate conclusions—do not show that the Celebrity Defendants directed or participated in the enterprise's affairs. The CCAC merely alleges that the Celebrity Defendants are "celebrity promotors." (CCAC ¶ 2.) The Celebrity Defendants' alleged conduct is akin to the provision of professional services by outsiders, which is insufficient to satisfy the participation requirement of RICO. *See, e.g.*, *Gonzales v. Lloyds TSB Bank*, 532 F. Supp. 2d 1200, 1210 (C.D. Cal. 2006); *Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison*, 955 F. Supp. 248, 254 (S.D.N.Y. 1997). Indeed, Plaintiffs claim that the Celebrity Defendants participated

in the alleged enterprise because these Defendants used social media to allegedly promote the Tokens.  (*See, e.g.,* CCAC ¶¶ 51, 57 (pointing to two Twitter posts by Pierce), *id.* ¶¶ 67, 69 (alleging Maher "brought the EthereumMax project to Davis specifically to leverage Davis' cryptocurrency-investing followers on social media" and Davis made one Twitter post), *id.* ¶¶ 87, 97 (alleging Kardashian promoted the Tokens through two Instagram posts), *id.* ¶ 86 (alleging Brown posted a single Instagram story).  Plaintiffs' allegations regarding Celebrity Defendant Floyd Mayweather are also largely consistent with conduct by a celebrity promotor, not an individual who directed the affairs of a RICO enterprise.  (*See id.* ¶¶ 81, 83–85, 91 (alleging hiring of Mayweather to promote EMAX who allegedly promoted EMAX token through his boxing fights).)  Because Plaintiffs do not plausibly allege that the Defendants conducted the enterprise's affairs, their RICO claim fails.

### c.      Plaintiffs Fail to Allege Predicate Acts.

"[P]redicate acts alleging fraud must be pleaded with particularity."  *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1036 (C.D. Cal. 2011).  Plaintiffs allege that the Defendants committed wire fraud and mail fraud (CCAC ¶ 170), which may serve as predicate acts for a civil RICO claim, if plausible. 18 U.S.C. § 1961(1).  But Plaintiffs fail to allege such acts.

The elements of mail fraud and wire fraud are "(1) a scheme to defraud, (2) the use of the mails or wires to further that scheme, and (3) the specific intent to defraud."  *In re JUUL Labs, Inc., Mktg., Sales Practices, & Prod. Liab. Litig.*, 497 F. Supp. 3d 552, 595 (N.D. Cal. 2020).  When a civil RICO plaintiff claims predicate acts based on fraud, the plaintiff's "fraud theory requires them to show more than a business deal gone bad for economic and non-fraudulent reasons."  *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (affirming dismissal of RICO complaint that "purported to allege intentional [wire] fraud" in the conduct of sale-leaseback property transactions).  Thus, a civil RICO complainant must establish "specific intent to defraud" by "showing the existence of

a plausible fraudulent scheme." *Id.* "In the absence of direct evidence of intent, the party asserting fraud must first prove the existence of a scheme which was reasonably calculated to deceive persons of ordinary prudence and comprehension, and then, by examining the scheme itself the court may infer a defendant's specific intent to defraud." *Id.*

Plaintiffs make no allegations demonstrating direct evidence of the alleged fraudulent scheme. Thus, they must plausibly plead the existence of a fraudulent scheme from which the Court could infer that all Defendants had the specific intent to defraud. The CCAC's allegations fall far short of that heightened standard. Indeed, Plaintiffs concede that they cannot plead specific factual allegations regarding the predicate acts that form the alleged scheme. (*See* CCAC ¶ 177 (stating that the "corresponding RICO predicate acts of mail and wire fraud . . . cannot be alleged").) Instead, Plaintiffs attempt to "generally describe the occasions on which the RICO predicate acts of mail and wire fraud occurred" by pointing to a laundry list of categories of alleged predicate acts. (*Id.* ¶¶ 177–178.) Plaintiffs' allegations, however, are plainly insufficient under Rule 9(b) because they do not allege with particularity a single act in which specific Defendants were allegedly involved, when the acts were committed, or where they were committed.

Plaintiffs' allegations regarding mail and wire fraud otherwise fail because, as discussed *infra* Section IV.D, Plaintiffs have not plausibly pleaded actionable statements by any Defendant. *See In re JUUL Labs*, 497 F. Supp. 3d at 595 ("The 'scheme to defraud' element" of wire fraud "requires 'an affirmative, material misrepresentation.'" (quoting *United States v. Green*, 592 F.3d 1057, 1064 (9th Cir. 2010))). With no plausible misrepresentations, Plaintiffs cannot plead predicate acts.

### d.    Plaintiffs Fail to Allege a Pattern of Racketeering.

A "pattern of racketeering activity" requires the commission of at least two predicate acts within a ten-year period. 18 U.S.C. § 1961(5). A "pattern" requires that predicate acts be "related" and "continu[ous]." *H.J. Inc. v. Nw. Bell Tel. Co.*,

492 U.S. 229, 239 (1989) (citation and internal quotation marks omitted). A plaintiff must plead either a series of related predicates extending over a substantial period of time (closed-ended continuity), or past conduct that by its nature projects into the future with a threat of repetition (open-ended continuity). *Howard v. Am. Online, Inc.,* 208 F.3d 741, 750 (9th Cir. 2000). Plaintiffs have not pleaded either.

*First*, Plaintiffs do not plead close-ended continuity because any alleged predicate acts are not sufficiently continuous. Alleged predicate acts that extend only a few months are too short lived to satisfy close-ended continuity. *See H.J.*, 492 U.S. at 242 (explaining that "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement."); *Howard*, 208 F.3d at 750 (same). Plaintiffs allege the conduct began on May 11, 2021 and continued until June 27, 2021. (CCAC ¶¶ 40, 173.) Thus, any alleged predicate acts occurred within a period too short to show close-ended continuity.

*Second*, Plaintiffs do not plead open-ended continuity. "Open-ended continuity is shown by 'past conduct that by its nature projects into the future with a threat of repetition,' i.e., predicate acts that specifically threaten repetition or that become a 'regular way of doing business.'" *Allwaste, Inc. v. Hecht*, 65 F.3d, 1523, 1528 (9th Cir. 1995). Acts which relate to a single objective do not constitute a pattern. *See Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 366–67 (9th Cir. 1992). Plaintiffs' theory is that the Defendants engaged in a one-time pump-and-dump scheme to artificially inflate the EMAX Token price and then sold their tokens. (CCAC ¶¶ 110, 172.) This alleged scheme therefore does not plausibly threaten repetition or risk of becoming a regular way of doing business. Thus, the Court should dismiss the civil RICO claim.

## B. Plaintiffs Lack Standing to Assert Claims Under Other States' Laws.

The CCAC asserts numerous claims against Defendants under California law, and avers that California law applies "to every member of the [putative] class

regardless of where they reside." (CCAC ¶ 126.)  District courts in the Ninth Circuit, however, agree that "plaintiffs 'do not have standing to assert claims from states in which they do not reside' and that it is 'appropriate . . . to address standing in advance of class certification.'"  *Drake v. Toyota Motor Corp.*, No. 2:20-cv-01421-SB-PLA, 2020 WL 7040125, at *3 (C.D. Cal. Nov. 23, 2020) (quoting *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1075 (N.D. Cal. 2015)).  With the exception of Plaintiffs Semerjian and Shah, all Named Plaintiffs reside in states other than California.  (*See* CCAC ¶¶ 6–14.)  The non-California Plaintiffs do not allege that they suffered any injury in California.  Thus, they lack standing to sue under California law.  *See Goldstein v. Gen. Motors LLC*, 445 F. Supp. 3d 1000, 1021 (S.D. Cal. 2020).

While Plaintiffs allege that the Individual Defendants' conduct "emanated from California" (CCAC ¶ 129), this conclusory allegation is insufficient.  *See Zakikhan*, 2021 WL 4805454, at *6 (rejecting plaintiffs' contention that the non-California Plaintiffs can show standing for California claims because their claims "emanate from California" as "too conclusory").  None of the Individual Defendants resides in California (*id.* ¶¶ 15–19), and Plaintiffs otherwise make no factual allegations for their conclusory assertion.  Thus, the Court should dismiss any claims that the non-California Plaintiffs purport to raise under California law.  To the extent Plaintiffs Semerjian and Shah purport to assert claims under the non-California state laws raised in the CCAC, such claims should be dismissed for similar reasons.

### C.   Plaintiffs Fail to Allege Threshold Requirements for the State Consumer Statutory Claims.

#### 1.   Plaintiffs Lack Standing to Sue Under the UCL, CLRA, or FAL Because They Do Not Plead Actual Reliance on Alleged Misrepresentations or Omissions.

Plaintiffs asserting UCL, CLRA, and FAL claims sounding in fraud must allege facts showing reliance on the alleged misrepresentations or omissions.  *See Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310 326–27 (2011); *Sateriale v. R.J.*

*Reynolds Tobacco Co.*, 697 F.3d 777, 793–94 (9th Cir. 2012) (dismissing UCL and CLRA claims when plaintiffs failed to allege they "relied on [challenged] representations or, if they did rely, that their reliance caused them harm").  For omission claims, plaintiffs must allege that "had the omitted information been disclosed, [they] would have been aware of it *and* behaved differently."  *In re Apple Processor Litig.*, No. 18-cv-00147-EJD, 2022 WL 2064975, at *10 (N.D. Cal. June 8, 2022) (emphasis in original) (quoting *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1999)) (internal quotation marks omitted).  Plaintiffs' UCL, CLRA, and FAL claims fail because they do not plead actual reliance on any Defendants' alleged misrepresentations or omissions.

While the CCAC is riddled with allegations of purported misrepresentations by Individual Defendants, Plaintiffs do not allege ***even one*** instance in which they viewed the alleged statements by these Defendants.  Thus, Plaintiffs have failed to plead actual reliance on any of these Defendants' alleged statements.  *See Barrett v. Apple Inc.*, 523 F. Supp. 3d 1132, 1150 (N.D. Cal. 2021) (explaining plaintiffs failed to plead reliance where they did "not allege that they visited [Defendant's] website, read the disclaimer, or knew about [Defendant's] communications with news media—either before or after they purchased" the products); *Goldsmith v. Allergan, Inc.*, No. CV 09-7088 PSG EX, 2011 WL 2909313, at *4 (C.D. Cal. May 25, 2011) (finding reliance allegations insufficient where plaintiff failed to show "that he saw any specific ads and relied on them" before purchasing and investing).

Similarly, while Plaintiffs allege in boilerplate fashion that they "view[ed] numerous celebrity endorsements of EMAX" (CCAC ¶¶ 6–14), these allegations are also insufficient to plead actual reliance.  Notably, Plaintiffs do not allege that they viewed purported endorsements by the specific Celebrity Defendants named in the CCAC.  That is problematic because the CCAC refers to numerous other celebrities who are alleged to have promoted EMAX but are ***not*** named as defendants.  (*See id*. ¶ 82.)  To the extent Plaintiffs contend that their generic allegation about "viewing

numerous celebrity endorsements" somehow refers to the Celebrity Defendants, Plaintiffs' allegations improperly lump all Celebrity Defendants together. Plaintiffs fail to allege *which* "celebrity endorsements" they viewed, or even whether any of the "celebrity endorsements" they allegedly viewed contained misrepresentations or omissions. The dearth of factual allegations regarding each Named Plaintiff's experience is fatal to their claims. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126, 1128 (9th Cir. 2009) (affirming dismissal of CLRA and UCL claims where Plaintiff failed to plead "the particular circumstances surrounding" the alleged misrepresentations, "when he was exposed to them or which ones he found material," and "which [ ] material he relied upon in making his" purchasing decision); *Mehta v. Robinhood Fin. LLC*, No. 21-cv-01013-SVK, 2021 WL 6882392, at *4 (N.D. Cal. Sept. 8, 2021) (explaining UCL, CLRA, and FAL claims failed where "Plaintiffs do not allege which documents or statements Plaintiffs may have seen").

The CCAC similarly fails to plead reliance on alleged omissions by any Defendant. Plaintiffs do not allege that they have ever visited the Defendants' social media profiles or platforms where they could have even conceivably viewed the allegedly "omitted information" if it were disclosed. *See Mirkin*, 5 Cal. 4th at 1093; *see also In re Apple Processor Litig.*, 2022 WL 2064975, at *10 (finding plaintiffs failed to plead reliance on omissions where they "d[id] not allege that they regularly view Apple's YouTube videos or follow Apple's press releases, much less relied on any such representations when purchasing their next smartphone or tablet"). Nor do Plaintiffs allege that if they knew the Individual Defendants' "specific roles and ownership interests" or purported "use of the Celebrity Defendants to 'instill trust' . . . to promote the financial benefits" of EMAX, (CCAC ¶ 140), that they would have acted any differently. *See Mirkin*, 5 Cal. 4th at 1093.

Although a court may infer actual reliance from a misrepresentation of a material fact, a plaintiff must establish that a reasonable person would "attach importance to [that fact's] existence or nonexistence in determining [their] choice of

action in the transaction in question." *See Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 229 (2013) (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009)) (finding adequate allegations of actual reliance where plaintiff alleged material misrepresentation). But the CCAC fails to allege how the alleged misrepresentations and omissions concerning the roles and ownership interests of the Individual Defendants would have been material to a reasonable consumer.

Critically, there can be no inference of actual reliance when plaintiffs fail to allege *any* personal exposure to the statements or omissions. *See Hall v. Sea World Ent., Inc.*, No. 3:15-CV-660-CAB-RBB, 2015 WL 9659911, at *4 (S.D. Cal. Dec. 23, 2015) (explaining "*Tobacco II*'s much narrower holding is that a plaintiff who viewed numerous statements and advertisements during a decades-long advertising campaign is not required 'to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements'"). As discussed above, Plaintiffs do not allege viewing any statements by the Individual Defendants (or even being aware of the Individual Defendants), nor viewing the Celebrity Defendants' alleged online activity related to EMAX. Thus, Plaintiffs are not entitled to an inference of actual reliance. The Court should therefore dismiss the UCL, CLRA, and FAL claims. *See Barrett*, 523 F. Supp. 3d at 1153 (dismissing CLRA, UCL, and FAL claims for misrepresentations and omissions when plaintiffs failed to plead reliance and causation).

### 2.    Plaintiffs Fail to State FDUTPA, N.Y. GBL, or N.J. CFA Claims Because They Fail to Allege Causation.

To state a claim under the FDUTPA, N.Y. GBL, and N.J. CFA, plaintiffs must plead a causal relationship between their alleged injury and a defendant's actions. *See Just. v. Rheem Mfg. Co.*, 318 F.R.D. 687, 696 (S.D. Fla. 2016) ("In order to state a claim under the [FDUTPA], a Plaintiff must establish: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages."); *Int'l Union of Operating Engineers Loc. No. 68 Welfare Fund v. Merck & Co.*, 192 N.J. 372, 389 (2007) (under

the N.J. CFA, a "plaintiff must allege a causal relationship between the defendant's unlawful conduct and the plaintiff's ascertainable loss" (cleaned up)); *Gale v. Int'l Bus. Machines Corp.*, 9 A.D.3d 446, 447 (2004) ("[N.Y. GBL] plaintiff must show that the defendant's material deceptive act caused the injury.").

Moreover, where a plaintiff alleges that the defendant made purportedly deceptive misrepresentations, Rule 9(b)'s heightened pleading standard requires the plaintiff to plead facts showing "which, if any, of these statements Plaintiffs saw or heard." *See In re Riddell Concussion Reduction Litig.*, 77 F. Supp. 3d 422, 433 (D.N.J. 2015) (citations omitted); *In re NJOY, Inc. Consumer Class Action Litig.*, No. CV 14-00428 MMM (RZx), 2014 WL 12586074, at *14–15 (C.D. Cal. Oct. 20, 2014) (finding Rule 9(b)'s heightened standards applied to Florida and New York claims and required plaintiffs state which misleading statements they had seen); *In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*, No. LA ML19-02905 JAK (FFMx), 2022 WL 522484, at *90–91 (C.D. Cal. Feb. 9, 2022) (dismissing N.J. CFA and N.Y. GBL claims for failure to plead causation with specificity required by Rule 9(b) where no plaintiff alleged they were exposed to any defendant's misrepresentations or omissions); *cf. Gale*, 9 A.D.3d at 473 (dismissing N.Y. GBL claim for failure "to plead causation with sufficient specificity" because plaintiff did not allege "that he saw any of the[] [allegedly misleading] statements before he purchased or came into possession of his hard drive").

As discussed above, Plaintiffs allege merely that they "view[ed] numerous celebrity endorsements of EMAX" and provide no particular allegations regarding the alleged circumstances. (CCAC ¶ 6.) Thus, Plaintiffs' allegations fail under Rule 9(b). *See In re NJOY, Inc.*, 2014 WL 12586074, at *9–15 (dismissing FDUTPA, N.Y. GBL, UCL, and CLRA claims for alleged misrepresentations and omissions when plaintiffs did not plead when they viewed the alleged misrepresentations or materials that should have contained omitted information); *see also In re Riddell*, 77 F. Supp. 3d at 435 (dismissing UCL, FAL, CLRA, FDUTPA, and N.J. CFA claims

because "there is no allegation connecting any of the named Plaintiffs to" the images, which contained alleged misrepresentations, listed in the complaint).

**D.     Plaintiffs Fail to State any State Statutory Claim Because None of the Alleged Misrepresentations and Omissions are Actionable.**

**1.     Plaintiffs Do Not Allege Misrepresentations Likely to Mislead Reasonable Consumers.**

To state a UCL, FAL, or CLRA claim, alleged misrepresentations must be likely to mislead reasonable consumers.  *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881, 886 (9th Cir. 2021) (affirming dismissal because statements would not likely mislead reasonable consumers); *Vitt v. Apple Computer, Inc.*, No. CV 06-7152-GW (FMOX), 2010 WL 11545683, at *2 (C.D. Cal. May 21, 2010), *aff'd*, 469 F. App'x 605 (9th Cir. 2012) (same).  The possibility of deception is insufficient.  *See Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (plaintiffs must show "probable, not possible, deception"); *see also Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508–09 (2003) (explaining that plaintiffs must show that "it is probable that a significant portion of the general consuming public . . . acting reasonably in the circumstances, could be misled").  The FDUTPA, N.Y. GBL, and N.J. CFA impose similar requirements.  *See Zlotnick*, 480 F.3d at 1284; *Marcus v. AT&T Corp.*, 138 F.3d 46, 65–66 (2d Cir. 1998); *New Jersey Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174, 177 (2003).  When a plaintiff fails to plead this requirement, "any cause of action having deception as an element may be addressed, as a matter of law, on a motion to dismiss."  *McKinniss v. Sunny Delight Beverages Co.*, No. CV 07-02034-RGK (JCx), 2007 WL 4766525, at *3 (C.D. Cal. Sept. 4, 2007) (dismissing UCL, FAL, and CLRA claims).

The reasonable consumer is the average person of "ordinary" intelligence, not an "unwary consumer" or an especially vulnerable or uninformed individual.  *See Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (citations omitted).  The circumstances in which consumers encounter the alleged statements, as well as

common sense and common knowledge, are relevant to the inquiry.  *See Moore*, 4 F.4th at 883, 886 (affirming dismissal of claims under California and New York law when a reasonable consumer would not be misled given "three key contextual inferences from the product [sold] itself . . . all of which [were] readily available"); *Geffner v. Coca-Cola Co.*, 928 F.3d 198, 200 (2d Cir. 2019) (explaining "context is crucial" under N.Y. GBL and concluding word was not misleading in context of soft drink marketing); *Casey v. Florida Coastal Sch. of L., Inc.*, No. 3:14-CV-1229-J-39PDB, 2015 WL 10096084, at *15–16 (M.D. Fla. Aug. 11, 2015) (dismissing FDUTPA claim given consumers' "common knowledge").

Here, Plaintiffs claim that Defendants allegedly misrepresented the EMAX Token on social media.  (*See, e.g.,* CCAC ¶¶ 62, 63, 81.)  But Plaintiffs' allegations amount to nonactionable puffery and otherwise concern statements not likely to deceive reasonable consumers given common sense and context.

Generalizations, exaggerations, opinions, and future predictions that should not and would not be taken seriously by a reasonable consumer are puffery and therefore not actionable under state consumer protection statutes.  *See, e.g., Glen Holly Ent., Inc. v. Tektronix, Inc.*, 343 F.3d 1000, 1015 (9th Cir. 2003) (non-actionable puffery includes "statements [that] were generalized, vague and unspecific"); *Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 644 (S.D.N.Y. 2011) (similar); *MacNaughten v. Young Living Essential Oils, LC*, No. 5:21-cv-00071 (BKS/ML), 2021 WL 5965195, at *6 (N.D.N.Y. Dec. 16, 2021) ("To determine whether a statement is puffery, courts can look at a variety of factors, including (i) vagueness; (ii) subjectivity; and (iii) inability to influence the buyers' expectations." (cleaned up)); *Silver v. Countrywide Home Loans, Inc.*, 760 F. Supp. 2d 1330, 1342–43 (S.D. Fla. 2011) (explaining opinions and "projections about future events" are "puffing," and "not to be taken seriously," "not to be relied upon," and "not binding as a legal obligation or promise"); *Hunt Const. Grp., Inc. v. Hun Sch. of Princeton*, No. 08-3550 (FLW), 2009 WL 1312591, at *3 (D.N.J. May 11, 2009) (citation

omitted) (similar).  Statements are non-actionable puffery even where they appear to offer consumers a particular positive outcome.  *See New Jersey Citizen Action*, 842 A.2d at 177 (affirming dismissal of N.J. CFA claim because representations purportedly "guarantee[ing] total and universal [product] effectiveness" were "mere[] expressions in the nature of puffery").

The majority of Defendants' alleged statements are non-actionable because they reflect mere opinions or vague, lofty predictions.  For instance, Defendant Speer's statements that the EMAX Tokens' price had "tons of room to go," as well as Perone's hyperbole about "meeting retail investors 'on the moon'" and comments "that the [Individual] Defendants were 'looking to lock the wallets,'" offer no concrete facts or promises about the EMAX Token on which a reasonable consumer could reasonably rely.  (CCAC ¶¶ 71, 79, 96.)  The various YouTube, Twitter, and Instagram posts Plaintiffs allege are otherwise replete with vagaries, exaggerations, hyperbole, and optimistic future predictions rather than actionable misstatements of fact or specific false promises. (*See, e.g., id.* ¶¶ 57, 62, 71, 86, 95.)  Many also contain humor or playful language and emojis (*see id.* ¶¶ 57, 62), further underscoring that they are non-actionable.  *See Apodaca v. Whirlpool Corp.*, No. SACV 13-00725 JVS (ANx), 2013 WL 6477821, at *6 (C.D. Cal. Nov. 8, 2013) (concluding that some advertising statements were non-actionable puffery considering their humor).

Common sense regarding cryptocurrencies also demonstrates why Plaintiffs cannot plausibly claim that Defendants' purported misrepresentations misled "unsuspecting" consumers to think that they would "make significant returns" by investing in EMAX Tokens. (*See* CCAC ¶¶ 2–3.)  Plaintiffs themselves acknowledge that cryptocurrencies are "volatile," "speculative," and "risky." (*See id.* ¶¶ 98–99.)  A *Slate* article incorporated by reference into the CCAC describes how cryptocurrency is a "wildly anarchic, unregulated form of Wild West financial capitalism." (*See id.* ¶ 98, n. 29.)  The CCAC further alleges that various Defendants discussed openly the volatility and risk of cryptocurrencies.  For instance, Plaintiffs

1   allege that one Individual Defendant urged potential investors to "[t]hink long and
2   hard" whether they could "risk this money and still pay [their] bills," instructing
3   YouTube viewers to "not proceed" with buying tokens "if the answer is no."  (*Id.*
4   ¶ 73.)  Defendant Speer also provided these same admonitions about EMAX Tokens
5   in the captions to his subsequent YouTube videos referenced in the CCAC.  (*See id.*
6   ¶¶ 78–79 (referring to and incorporating by reference Speer's alleged YouTube
7   videos).)

8        The Celebrity Defendants' social media statements also could not plausibly
9   deceive reasonable consumers given the context.  The Celebrity Defendants are
10  socialites, media personalities, and famous athletes—not financial experts or
11  investment advisers.  Plaintiffs do not allege that any of the Celebrity Defendants
12  purported to have specialized knowledge or expertise in cryptocurrency, or to have
13  represented as such.  Their messages frequently contained slang, profanity, emojis,
14  and other imagery indicating they were not to be taken seriously.  (*See, e.g.,* CCAC
15  ¶ 62, 86.)  While Plaintiffs point to Kardashian's June 14, 2021 Instagram story, they
16  also concede that that post had the hashtag "#AD."  (*Id.* ¶¶ 97, 101).  Moreover,
17  platforms like Instagram and Twitter are laden with puffery and exaggeration, such
18  that ordinary consumers should know that they are not trustworthy sources of
19  financial advice.  *See Piescik v. CVS Pharmacy, Inc.*, No. 21-81298-CV, 2021 WL
20  5996977, at *4–5 (S.D. Fla. Dec. 15, 2021) (dismissing FDUTPA claim regarding
21  hand sanitizer label after considering consumers' close familiarity with the product
22  and its functionality after a two-year global pandemic).  The notion that a reasonable
23  consumer would invest their money solely based on a celebrity's social media post
24  strains plausibility.

25       Considering common sense and context, this Court cannot credit allegations
26  that Defendants' statements were likely to mislead reasonable consumers.  *See*
27  *Moore*, 4 F.4th at 883.  Plaintiffs fail to establish that the Celebrity Defendants'
28  statements show "a likelihood of confounding an appreciable number of reasonably

1    prudent purchasers exercising ordinary care." *See Clemens v. DaimlerChrysler*

2    *Corp.*, 534 F.3d 1017, 1026 (9th Cir. 2008) (citation omitted).  Thus, the Court should

3    dismiss these claims.

4                    **2.    Plaintiffs Do Not Allege Any Material or Otherwise**

5                    **Actionable Omissions by Defendants.**

6        Plaintiffs' claims are also insufficient to the extent they are premised on

7    alleged omissions.  Plaintiffs identify purported omissions falling into three broad

8    categories: (1) failure to disclose the "[Individual] Defendants' specific roles and

9    ownership interests in EthereumMax"; (2) "fail[ure] to disclose the use of the

10   Celebrity Defendants to 'instill trust' in uninformed investors to promote the

11   financial benefits of a highly speculative and risky investment"; and (3) failure to

12   disclose that the EMAX Tokens were a risky investment.  (*See, e.g.,* CCAC ¶¶ 2–3,

13   140.)   However, Plaintiffs do not "plead the circumstances of omission with

14   specificity," and thus dismissal is warranted.  *See Eisen v. Porsche Cars N. Am., Inc.*,

15   No. CV 11-9405 CAS (FEMx), 2012 WL 841019, at *3 (C.D. Cal. Feb. 22, 2012)

16   (citation omitted) (dismissing California state law claims for alleged fraudulent

17   omissions).

18       Plaintiffs otherwise fail to adequately plead how the purportedly omitted

19   information violates any of the state consumer statutes on which they rely.

20       As an initial matter, Plaintiffs fall short of California's heightened requirement

21   for materiality.   Plaintiffs make the conclusory allegation that absent the

22   "[Individual] Defendants' activities with the [Celebrity] Defendants," they would not

23   have purchased or held onto EMAX Tokens.  (CCAC ¶ 135.)  But Plaintiffs do not

24   allege why reasonable consumers would care about the "specific roles and ownership

25   interests" that Individual Defendants had.  (*Id.* ¶ 211(a).)  As for alleged omissions

26   regarding alleged collaboration with the Celebrity Defendants, the EMAX celebrity

27   influencer marketing strategy was no secret according to Plaintiffs' own allegations.

28   (*See, e.g., id.* ¶ 79 (describing Mr. Perone's May 23, 2021 statements about the "use

of 'high level' brand ambassadors and promoters [to] 'legitimiz[e]' the project"), ¶ 94 (describing Mr. Gentile's public statements on June 8, 2021 about "launching ambassadorships and working with influencers" as a "'launch point'").)  Likewise, the risks inherent in investing in cryptocurrencies like the EMAX Token were and are common knowledge, including according to Plaintiffs' own allegations.  (CCAC ¶¶ 98–99.)  Thus, the Court should not credit Plaintiffs' legal conclusions about alleged omissions.  *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994) (explaining that courts need not credit legal conclusions cast as factual allegations).

Nor do Plaintiffs allege that they would have acted differently had they seen the allegedly omitted information.  *See Barrett v. Apple Inc.*, 523 F. Supp. 3d 1132, 1149–50 (N.D. Cal. 2021) (explaining that under California law, a plaintiff must plead "that if the omitted information had been available, the plaintiff would have been aware of it and behaved differently").  Plaintiffs do not allege that they viewed any particular Defendants' alleged posts and thus cannot plausibly allege they would have behaved differently without the alleged omissions.  *See id.* at 1151 (rejecting fraudulent omission claim when plaintiffs failed to allege that "they read the webpage or . . . were aware of any specific news reports regarding iTunes gift card scams" because omitted information, if available, still would not have altered their behavior).

Moreover, to state an omission claim under the UCL, CLRA, or FAL, a plaintiff must plausibly plead either that the omitted information is "contrary to a representation actually made by the defendant," or that the defendant had an affirmative duty to disclose the information.  *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006).  A duty to disclose may arise when: (1) a fiduciary relationship exists between plaintiff and defendant; (2) defendant holds "exclusive knowledge of material facts not known to the plaintiff"; (3) defendant "actively conceals a material fact from plaintiff"; or (4) "defendant makes partial representations but also suppresses some material facts." *Falk v. Gen. Motors Corp.*,

496 F. Supp. 2d 1088, 1094–95 (N.D. Cal. 2007) (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997)).  The majority of California state and federal courts reject a "broad obligation to disclose." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012).  Here, Plaintiffs plead no fiduciary relationship between them and any Defendant, nor have they plausibly alleged how the allegedly omitted information was material.  Thus, their California claims for alleged omissions fail.

Plaintiffs' New York claims fail for similar reasons.  To plead a deceptive act based on an omission, a plaintiff "must show why the omission was deceptive by alleging that the information was solely within the defendant's possession or that a consumer could not reasonably obtain such information." *Dimond v. Darden Rests., Inc.*, No. 13-CV-5244 (KPF), 2014 U.S. Dist. LEXIS 94004, at *44–45 (S.D.N.Y. July 9, 2014) (internal quotation marks removed).  A plaintiff must provide more than vague allegations that a defendant knew of the allegedly omitted information.  *See Woods v. Maytag Co.*, No. 10-CV-0559 (ADS) (WDW), 2010 WL 4314313, at *16 (E.D.N.Y. Nov. 2, 2010) (dismissing N.Y. GBL claim where plaintiff had "not provided enough factual information to plausibly suggest that the Maytag Defendants had knowledge of the defect").  Plaintiffs' allegations do not show that information about Defendants' roles or ownership interests in EthereumMax, the use of influencer marketing, or the risks of cryptocurrency was exclusively known to Defendants (or even known by most Defendants).  The CCAC's allegations also fail to show that a reasonable consumer had no means of learning about this allegedly omitted information.  Thus, Plaintiffs fail to show material omissions, as required to state a N.Y. GBL claim.  *See S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 636–37 (2d Cir. 1996) (affirming dismissal of N.Y. GBL claim where "a reasonable consumer would not have been misled by [defendant's] conduct").

Likewise, because Florida law typically only permits liability for omissions where a defendant fails to disclose a material defect that diminishes a product's value, the Court should dismiss Plaintiffs' FDUTPA claims associated with alleged

omissions. *See Matthews v. Am. Honda Motor Co., Inc.*, No. 12-60630-CIV, 2012 WL 2520675, at *3 (S.D. Fla. June 6, 2012) ("Florida courts have recognized that a FDUTPA claim is stated where the defendant knowingly fails to disclose a ***material defect that diminishes a product's value***." (emphasis added)); *see also Morris v. ADT Sec. Servs.*, 580 F. Supp. 2d 1305, 1309–10 (S.D. Fla. 2008) (finding plaintiffs adequately pleaded FDUTPA claim where they "allege[d] that ADT sold a security system from 2002 through 2006, that it knew would stop working properly in 2008, without disclosing this fact to customers, and then decided to charge customers to upgrade the system so that it would work as originally promised"). Here, Plaintiffs fail to establish any material defect with the EMAX Tokens, and any reasonable consumer would understand that the Tokens' value could vary widely over time for a multitude of reasons. Plaintiffs thus fail to plead that a reasonable consumer would be misled by such an "omission," as required under the FDUTPA. *See Broward Motorsports of Palm Beach, LLC v. Polaris Sales, Inc.*, No. 17-cv-81100, 2018 WL 1072211, at *7–8 (S.D. Fla. Feb. 27, 2018) (dismissing FDUTPA claim where "a consumer acting reasonably under the circumstances would not have been misled by the omission").

Finally, Plaintiffs have failed to plead knowledge of and intent to conceal material information, as required to maintain N.J. CFA omission claims. *See Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 16 (1994); *Dugan v. TGI Fridays, Inc.*, 231 N.J. 24, 51 (2017) (citations omitted) (explaining CFA claim can arise from "a knowing omission," but "a showing [of intent] is necessary"); *Judge v. Blackfin Yacht Corp.*, 357 N.J. Super. 418, 426 (2003) (same). Plaintiffs allege, in a conclusory fashion, a plot to deceive consumers rather than pleading exclusive knowledge on the part of Defendants, consumers' inability to procure information, or each Defendant's intent and knowledge of deception. Merely alleging that Defendants acted "knowingly and intentionally" (*see* CCAC ¶ 229), without factual support, is insufficient. *See Clegg*, 18 F.3d at 754–55. And again, the CCAC fails to establish how any allegedly omitted

Cooley LLP
Attorneys at Law
San Francisco

29

Defs.' Mot. to Dismiss
Lead Case No. CV 22-163 MWF (SKx)

information—pertaining to the Individual Defendants' roles in EMAX or the use of influencers—was "material" to consumers. *See, e.g., Blackfin*, 357 N.J. Super. at 425 (explaining plaintiff must allege knowing concealment of "material fact" under CFA). Thus, Plaintiffs' state consumer statute claims for alleged omissions should be dismissed.

### E. Plaintiffs Fail to State Any UCL Claim.

To the extent Plaintiffs rely on the other causes of action addressed in this Motion to support their claim under the unlawful prong of the UCL, their claim under that prong necessarily fails. *See Aleksick v. 7-Eleven, Inc.*, 205 Cal. App. 4th 1176, 1185 (2012) ("When a statutory claim fails, a derivative UCL claim also fails."); *Becerra v. McClatchy Co.*, 69 Cal. App. 5th 913, 941 (2021) (same).

To the extent Plaintiffs purport to assert a claim under the unfairness prong, such a claim also fails because Plaintiffs rely on a conclusory recitation of legal standards without pleading facts showing how these standards are satisfied. (*See* CCAC ¶ 134 (reciting three unfair prong balancing tests and claiming, "Defendants' conduct is unfair under each").) For instance, under the "tethering" test, a plaintiff must identify the "specific constitutional, statutory, or regulatory provisions" to which their UCL claim is tethered. *See, e.g., Dana v. Hershey Co.*, 180 F. Supp. 3d 652, 666–67 (N.D. Cal. 2016), *aff'd*, 730 F. App'x 460 (9th Cir. 2018) (concluding plaintiff failed under the tethering test because she did not identify specific legislative policies or laws directly implicated by defendants' failure to make certain disclosures on its products' packaging).

In any event, to state a claim under the unfair prong in the consumer context, this Court has determined that the test articulated in Section 5 of the FTC Act governs, requiring plaintiffs to show (1) consumer injury was substantial; (2) the injury is not outweighed by countervailing benefits to consumers or competition; and (3) the injury could not have reasonably been avoided by consumers. *See Zuniga v. Bank of Am. N.A.*, No. CV 14-06471 MWF (MRWx), 2014 WL 7156403, at *6–7

(C.D. Cal. Dec. 9, 2014) (Fitzgerald, J.) (citing *Camacho v. Auto. Club of S. California*, 142 Cal. App. 4th 1394, 1403 (2006)).  Plaintiffs do not state a claim under this test because they do not allege that Plaintiffs could not have reasonably avoided the injury.  *See Lee v. CarMax Auto Superstores California, LLC*, No. CV-13-7648-MWF (VBKx), 2013 WL 12473808, at *5 (C.D. Cal. Dec. 2, 2013) (Fitzgerald, J.) (finding "unfair" prong inapplicable where Plaintiff did not "allege that the injury was substantial or that Plaintiff could not have reasonably avoided the injury").  Plaintiffs could have avoided alleged injury by not investing in a risky cryptocurrency.

Moreover, UCL unfair prong claims fail when the alleged business practices at issue are the same as those undergirding claims that fail under the other prongs. *See Knuttel v. Omaze, Inc.*, No. 2:21-cv-09034-SB-PVC, 2022 WL 1843138, at *13 (C.D. Cal. Feb. 22, 2022) ("[W]here the practice alleged to be unfair overlaps entirely with the practices addressed under the fraudulent and unlawful prongs of the UCL, the former may be dismissed when the latter prong do[es] not survive."); *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104–05 (N.D. Cal. 2017) (collecting N.D. Cal. cases).  Because Plaintiffs' unfair prong claim relies on the same allegations as their unlawful and fraudulent prong claims, the Court should dismiss the claim.[7]

### F.   Plaintiffs Cannot State a CLRA Claim Because the EMAX Token is Not a "Good" or "Service" Subject to the CLRA.

Plaintiffs' CLRA claim fails because EMAX Tokens are not "goods" or "services."  Under the CLRA, "goods" means tangible chattels bought or leased for use primarily for personal, family, or household purposes, including certificates or coupons exchangeable for these goods, and including goods that, at the time of the sale or subsequently, are to be so affixed to real property as to become a part of real property, whether or not they are severable from the real property."  Cal. Civ. Code

---

[7] To the extent Plaintiffs claim to assert a UCL violation under the fraudulent prong, it fails for all the reasons described *supra* Sections IV. C–D.

Cooley LLP
Attorneys at Law
San Francisco

31

Defs.' Mot. to Dismiss
Lead Case No. CV 22-163 MWF (SKx)

§ 1761(a) (emphasis added).  "Services" means work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods.  *Id.* § 1761(b).

Virtual currency does not satisfy either definition.  *See Reeves v. Niantic, Inc.*, No. 21-cv-05883-VC, 2022 WL 1769119, at *2 (N.D. Cal. May 31, 2022) (finding video game currencies are not goods because they "are not tangible" and explaining "courts should not shoehorn transactions involving the purchase of intangible goods into the [CLRA's] definition of 'services'"); *Jeong v. Nexo Fin. LLC*, No. 21-cv-02392-BLF, 2022 WL 174236, at *23 (N.D. Cal. Jan. 19, 2022) (explaining "the underlying 'good' in a cryptocurrency exchange is not a 'tangible chattel'"); *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1045–46 (N.D. Cal. 2020) (finding video game currency is not a "good or service" because it was "digital," not tangible; explaining that the virtual currency "exist only as an indicia of the credit extended to the [Fortnite player]"); *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 996 (N.D. Cal. 2012) (holding "Facebook Credits, 'separate and apart from a specific purchase or lease of a good or service,' are not covered by the CLRA"); *Berry v. Am. Express Publ'g, Inc.*, 147 Cal. App. 4th 224, 228–29 (2007) (finding the issuance of credit is not a good or service under the CLRA because while "a plastic credit card is tangible . . . the card has no intrinsic value and exists only as indicia of the credit extended to the card holder").  Thus, the Court should dismiss the CLRA claim with prejudice.

### G.   Plaintiffs Fail to State an Aiding and Abetting Claim.

Plaintiffs assert a California common law claim against the Celebrity Defendants for purportedly aiding and abetting violations of the state consumer protection statutes by the Individual Defendants.  (CCAC ¶¶ 145–52.)  This claim fails because, as discussed *supra* Sections IV.B–F, Plaintiffs lack standing to assert and do not otherwise plausibly allege violations of those statutes.  This alone warrants dismissal.

Even if the Court considers the aiding and abetting claim further, however, Plaintiffs cannot state a claim unless they plausibly allege that the Celebrity Defendants: (1) had actual knowledge of the primary wrong and (2) gave substantial assistance or encouragement to the principal wrongdoer. *See In re First All. Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006); *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1152–53 (2005). Plaintiffs have failed to plead either.

"Knowledge is the crucial element" of an aiding and abetting claim. *Casey*, 127 Cal. App. 4th at 1145. "[T]he defendant must have 'actual knowledge of the specific primary wrong the defendant substantially assisted.'" *In re First All. Mortg. Co.*, 471 F.3d at 993. A defendant's "vague suspicion of wrongdoing" or knowledge of "wrongful or illegal conduct" in the abstract does not suffice. *See id.* at 993 n.4 (citation and quotation marks omitted).

Plaintiffs allege the Celebrity Defendants "knew or should have known that the marketing strategy employed by the Individual Defendants for the EMAX Tokens was unlawful, deceitful, fraudulent, and/or violated the terms of the California, Florida, and New York state statutes." (CCAC ¶ 149.) But "the phrase 'knew or should have known' does not plead actual knowledge." *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1118–19 (C.D. Cal. 2003). Plaintiffs otherwise allege "[n]o facts are alleged supporting an inference that the . . . Defendants knew" of the alleged violations. *In re Hydroxycut Mktg. & Sales Pracs. Litig.*, 299 F.R.D. 648, 657 (S.D. Cal. 2014). For example, Plaintiffs' allegation about Mayweather's "experience" with "previous fraudulent cryptocurrency" (CCAC ¶ 149), does not show knowledge by any Celebrity Defendant of the specific violations alleged here.

Plaintiffs also fail to plausibly allege that the Celebrity Defendants substantially assisted the alleged wrongdoing. Substantial assistance means that a defendant's actions were a "substantial factor" in causing the plaintiff's alleged injury. *Neilson*, 290 F.Supp.2d at 1118. Plaintiffs allege that these Defendants gave

substantial assistance by promoting the EMAX token on their social media platforms, which purportedly caused Plaintiffs to purchase or hold onto their EMAX tokens and thereby suffer damages.  (CCAC ¶¶ 150–51.)  As explained *supra* Section II.D, Plaintiffs do not allege that they saw specific endorsements by the Celebrity Defendants named in the CCAC, which endorsement they saw or when they saw, or even when they purchased EMAX Tokens.   Their allegations are therefore insufficient to state an aiding and abetting claim against the Celebrity Defendants.

### H.    Plaintiffs Fail to State a Common Law Civil Conspiracy Claims.

Plaintiffs' common law conspiracy claim against all Defendants fails at the outset because Plaintiffs fail to plead an underlying civil wrong.   "[A] civil conspiracy does not give rise to a cause of action unless an independent civil wrong has been committed."  *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1062 (2006).  Plaintiffs do not allege which civil wrongs underlie their conspiracy claim.  (*See* CCAC ¶¶ 187–91.)  But even if the Court construes the claim to refer to Plaintiffs' substantive claims, the conspiracy claim fails because Plaintiffs have failed to state such claims, as discussed above.  *See Smith v. Wachovia*, No. C 09-01300 SI, 2009 WL 1948829, at *1 (N.D. Cal. July 6, 2009).

Plaintiffs otherwise fail to plead the elements of a conspiracy claim.  To state a conspiracy claim, "a plaintiff must allege the formation of the conspiracy (an agreement to commit wrongful acts), the operation of the conspiracy (commission of the wrong acts), and the damage resulting from such acts."  *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1097 (C.D. Cal. 2009) (citations omitted).  To plead formation and operation, Plaintiffs must show that "the formation of a group of two or more persons who have agreed to a common plan or design to commit a tortious act."  *Kidron v. Movie Acquisition Corp*. 40 Cal. App. 4th 1571, 1582 (1995) (citations and internal quotation marks omitted).  Furthermore, "[t]he conspiring defendants must also have actual knowledge that a tort is planned and concur in the tortious scheme with knowledge of its unlawful purpose."  *Id.*  Plaintiffs' allegations additionally must

1   satisfy Rule 9(b) because the underlying claims are grounded in fraud. *See Swartz v.*
2   *KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) (applying Rule 9(b) to a conspiracy
3   claim premised on common law fraud). But Plaintiffs' conspiracy claim does not
4   satisfy Rule 9(b).

5   As discussed *supra* Section IV.A.2, Plaintiffs' allegations do not plausibly
6   demonstrate a common plan or design among the Defendants to commit tortious acts
7   underlying Plaintiffs' substantive claims. While Plaintiffs attempt to allege the
8   existence of a conspiracy, they do not plead facts plausibly showing that the
9   Defendants had actual knowledge of the alleged scheme. Furthermore, Plaintiffs
10  make virtually no mention of Defendants having knowledge of the alleged illegality
11  of any of the actions that other Defendants allegedly took. Constructive knowledge
12  cannot establish actual knowledge of illegality in promoting EMAX Tokens. Thus,
13  the Court should dismiss Plaintiffs' conspiracy claim.

14  **I.      Plaintiffs Fail to State Any Claim for Equitable Relief.**

15  Plaintiffs seek equitable relief, including under the UCL, FAL, FDUTPA, N.J.
16  CFA, N.Y. GBL, and a standalone "unjust enrichment/restitution" claim. To plead
17  entitlement to equitable relief in federal court, a plaintiff "must establish that she
18  lacks an adequate remedy at law." *Sonner v. Premier Nutrition Corp*., 971 F.3d 834,
19  844 (9th Cir. 2020). "[A] plaintiff must, at a minimum, plead that she lacks adequate
20  remedies at law if she seeks equitable relief." *Guthrie v. Transamerica Life Ins. Co*.,
21  561 F. Supp. 3d 869, 875 (N.D. Cal. 2021) (collecting cases). Plaintiffs fail to allege
22  that they lack an adequate remedy at law, which alone requires dismissal of all claims
23  for equitable relief and the causes of action allowing only such relief.

24  Plaintiffs' claims for equitable relief also fail because their claims are
25  duplicative of claims that provide adequate remedies at law. With respect to the
26  RICO claim, Plaintiffs seek various forms of damages for Defendants' alleged
27  conduct. The conduct at issue in the RICO claim underlies their claims for equitable
28  relief under the UCL, FAL, FDUTPA, N.J. CFA, N.Y. GBL, and "unjust

1    enrichment/restitution."   Thus, dismissal of the claims for equitable relief is

2    warranted.  *See, e.g., Williams v. Apple, Inc.*, No. 19-CV-04700-LHK, 2020 WL

3    6743911, at *10 (N.D. Cal. Nov. 17, 2020) (dismissing with prejudice UCL claim as

4    duplicative of contract claims that provided adequate legal remedies); *Huynh v.*

5    *Quora, Inc.*, 508 F. Supp. 3d 633, 662 (N.D. Cal. 2020) (collecting cases applying

6    *Sonner* to bar requests for injunctive relief under the UCL).

7         Plaintiffs also assert a standalone unjust enrichment claim under California

8    law.  (CCAC ¶¶ 233–236.)  But "California law does not recognize a cause of action

9    for unjust enrichment, so long as another cause of action is available that permits

10   restitutionary damages."  *Martinez v. Hammer Corp*., No. CV 09-06135 MMM

11   (AGRx), 2010 WL 11507562, at *6 (C.D. Cal. Jan. 29, 2010); *see also Walker v.*

12   *Equity 1 Lenders Grp.*, No. 09cv325 WQH (AJB), 2009 WL 1364430, at *9 (S.D.

13   Cal. May 14, 2009) (similar); *Swanson v. USProtect Corp*., No. C 05-602 JF (HRL),

14   2007 WL 1394485, at *5 (N.D. Cal. May 10, 2007) (same).  Because Plaintiffs assert

15   multiple other claims that provide restitution, the Court should dismiss Plaintiffs'

16   unjust enrichment claim with prejudice as a matter of law.

17   **V.    CONCLUSION**

18        For the foregoing reasons, Defendants request that the Court dismiss the

19   CCAC in its entirety.

20

21   Dated:  July 29, 2022                COOLEY LLP

22

23                                       By:  */s/ Michael G. Rhodes*

24                                            Michael G. Rhodes

25                                       *Attorneys for Defendant*
                                         *Kim Kardashian*

26

27

28

| | |
|---|---|
| 1 | Dated:  July 29, 2022 |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |

Dated:  July 29, 2022         KING & SPALDING LLP

*/s/ Andrew Michaelson*

ANDREW MICHAELSON (*pro hac vice*)
1185 Avenue of the Americas, 34th Floor
New York, NY 10036
Tel.: 212-556-2100
Fax: 212-556-2222
amichaelson@kslaw.com

*Counsel for Defendant Giovanni Perone*

Dated:  July 29, 2022         KATTEN MUCHIN ROSENMAN LLP

*/s/ Joel R. Weiner*

JOEL R. WEINER (CA 139446)
2029 Century Park East, Suite 2600
Los Angeles, CA 90067
Tel.: 310-788-4522
Fax: 310-712-8414
joel.weiner@katten.com

*Counsel for Defendant Paul Pierce*

Dated:  July 29, 2022         KENDALL BRILL & KELLY LLP

*/s/ Corey E. Klein*

COREY E. KLEIN (CA 130070)
10100 Santa Monica Blvd., Suite 1725
Los Angeles, CA 90067
Tel.: 310-556-2700
Fax: 310-556-2705
cklein@kbkfirm.com

*Counsel for Defendant Steve Gentile*

Dated:  July 29, 2022         Defendant Justin Maher

*/s/ Justin Maher*

49 Munson Street
Milford, CT 06461
justinmaher83@gmail.com

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

37

DEFS.' MOT. TO DISMISS
LEAD CASE NO. CV 22-163 MWF (SKx)

1

Dated:  July 29, 2022                    Defendant Russell Davis

2

 */s/ Russell Davis*

3

24 Anderson Avenue
Milford, CT 06460

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTESTATION**

I, Michael G. Rhodes, hereby attest that all other signatories listed above and on whose behalf this filing is submitted concur in this filing's content and have authorized me to file on their behalf.

/s/ Michael G. Rhodes
Michael G. Rhodes