CRAIG CARPENITO (pro hac vice)
ccarpenito@kslaw.com
ANDREW MICHAELSON (pro hac vice)
amichaelson@kslaw.com
KING & SPALDING LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036
Tel: (212) 556-2100; Fax: (212) 556-2222

DAVID K. WILLINGHAM (CA 198874)
dwillingham@kslaw.com
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Tel: (213) 443-4355; Fax: (213) 443-4310

MEGHAN H. STRONG (CA 324503)
mstrong@kslaw.com
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, CA 94111
Tel: (415) 318-1200; Fax: (415) 318-1300

*Attorneys for Defendant Giovanni Perone*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE ETHEREUMMAX INVESTOR LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Lead Case No. 2:22-cv-00163-MWF-SK<br><br>**DEFENDANT GIOVANNI PERONE'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Date: October 17, 2022<br>Time: 10:00 a.m.<br>Judge: Michael W. Fitzgerald |

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on October 17, 2022 at 10:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Michael W. Fitzgerald, United States District Judge, Central District of California, located at 350 West First Street, Courtroom 5A, Los Angeles, California 90012, Defendant Giovanni Perone will and hereby does move the Court to dismiss all the claims against him in Plaintiffs' Consolidated Class Action Complaint, ECF No. 41.

This Motion is made pursuant to Rules 9(b) and 12(b) of the Federal Rules of Civil Procedure and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, reply briefing in further support of this Motion, the arguments of counsel, and any such other matters as the Court may consider.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on July 21, 2022.


DATED: July 29, 2022          */s/ Andrew Michaelson*

**KING & SPALDING LLP**
CRAIG CARPENITO (pro hac vice)
ccarpenito@kslaw.com
ANDREW MICHAELSON (pro hac vice)
amichaelson@kslaw.com
1185 Avenue of the Americas, 34th Floor
New York, NY 10036
Tel: (212) 556-2100; Fax: (212) 556-2222

DAVID K. WILLINGHAM (CA 198874)
dwillingham@kslaw.com
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Tel: (213) 443-4355; Fax: (213) 443-4310

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEGHAN H. STRONG (CA 324503)
mstrong@kslaw.com
50 California Street, Suite 3300
San Francisco, CA 94111
Tel.: 415-318-1200; Fax: 415-318-1300

*Counsel for Defendant Giovanni Perone*

# **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................... 1

II.  BACKGROUND ............................................................................ 2

III. STANDARD OF REVIEW ............................................................ 3

IV.  PLAINTIFFS' CLAIMS DO NOT SATISFY RULE 9(B) ....................... 4

    A.   Plaintiffs Do Not Identify the Statements On Which Their Claims Against Mr. Perone Are Based ............................................. 5

    B.   Plaintiffs Have Pleaded No False Statement by Mr. Perone ................................................................................................ 6

V.   PLAINTIFFS FAIL TO PLEAD A RICO CLAIM AGAINST DEFENDANT PERONE ................................................................. 10

    A.   Plaintiffs Fail to Allege Mr. Perone Was Part of an Enterprise ................................................................................... 10

    B.   Plaintiffs Fail to Allege Mr. Perone Participated in Racketeering Activity Because They Plead No Specific Predicate Acts by Him .................................................................. 11

VI.  THIS COURT LACKS PERSONAL JURISDICTION OVER MR. PERONE ............................................................................. 12

VII. CONCLUSION ........................................................................... 13

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agric. Water v. Occidental Oil and Gas Corp.*,
   235 F. Supp. 3d 1132 (E.D. Cal. 2017).......................................................... 10, 11

*Anunziato v. eMachines, Inc.*,
   402 F. Supp. 2d 1133 (C.D. Cal. 2005)................................................................ 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................................. 3

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................................... 3, 4

*Bly-Magee v. California*,
   236 F.3d 1014 (9th Cir. 2001)............................................................................. 4

*Boyle v. United States*,
   556 U.S. 938 (2009) .......................................................................................... 10

*Comm. to Protect Our Agric. Water v. Occidental Oil and Gas Corp.*,
   235 F. Supp. 3d 1132 (E.D. Cal. 2017).......................................................... 10, 11

*Cybersell, Inc. v. Cybersell, Inc.*,
   130 F.3d 414 (9th Cir. 1997)............................................................................. 13

*Depot, Inc. v. Caring for Montanans, Inc.*,
   915 F.3d 643 (9th Cir. 2019) ............................................................................... 4

*Doan v. Singh*,
   617 F. App'x 684 (9th Cir. 2015)...................................................................... 12

*Eclectic Props. East, LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) ............................................................................ 10

*Everts v. Matteson*,
   21 Cal. 2d 437 (1942)......................................................................................... 8

*Glen Holly Ent., Inc. v. Tektronix, Inc.*,
   343 F.2d 1000 (9th Cir. 2003)............................................................................ 8

*In re Fusion-io, Inc. Sec. Litig.*,
  No. 13-CV-05368-LHK, 2015 WL 661869
  (N.D. Cal. Feb. 12, 2015) ............................................................................. 8

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ...................................................................... 4

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
  903 F. Supp. 2d 880 (C.D. Cal. 2012) ........................................................ 11

*Hadley v. Kellogg Sales Co.*,
  243 F. Supp. 3d 1074 (N.D. Cal. 2017) ........................................................ 5

*In re iPass, Inc. Sec. Litig.*,
  No. C05-00228 MHP, 2006 WL 496046 (N.D. Cal. Feb. 28, 2006) .............. 8, 9

*Louis v. Nailtiques Cosms. Corp.*,
  423 F. App'x 711 (9th Cir. 2011) .................................................................. 8

*Moore v. Kayport Package Exp., Inc.*,
  885 F.2d 531 (9th Cir. 1989) ................................................................ 5, 6, 10

*Mostowfi v. i2 Telecom Intern., Inc.*,
  269 F. App'x 621 (9th Cir. 2008) .................................................................. 4

*Odom v. Microsoft Corp.*,
  486 F.3d 541 (9th Cir. 2007) ...................................................................... 10

*Salameh v. Tarsadia Hotel*,
  726 F.3d 1124 (9th Cir. 2013) ...................................................................... 4

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ...................................................................... 12

*Sedima, S.P.R.L. v. Imrex Co., Inc.*,
  473 U.S. 479 (1985) .................................................................................... 10

*Somers v. Apple, Inc.*,
  729 F.3d 953 (9th Cir. 2013) ........................................................................ 3

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ........................................................................ 4

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ........................................................................ 6

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2002) ............................................................... 4, 5

*Williby v. Hearst Corp.*,
   No. 5:15-cv-02538-EJD, 2017 WL 1210036 (N.D. Cal. Mar. 31,
   2017) ..................................................................................................... 13

**Federal Statutes**

18 U.S.C. § 1965 ........................................................................................ 13

Fed. Rule Civ. P. 9(b) ........................................................................ *passim*

Fed. Rule Civ. P. 12(b) ...................................................................... *passim*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In 2021, Giovanni Perone learned of a new digital asset called EMAX that aimed to be a community-driven token providing lifestyle perks, rewards, and incentives to its holders.  Mr. Perone was excited about it.  Believing EMAX had real promise, Mr. Perone used his own money to buy the token and thereby join the EMAX community.  Now, Plaintiffs seek to implicate him in an allegedly fraudulent pump-and-dump scheme, but they fail to state any viable, plausible claim against Mr. Perone for the most basic of reasons:  Mr. Perone did not dump.

Even taking the facts alleged in the Complaint as true—as is appropriate on a motion to dismiss—the portrait that emerges is of a person who believed in and wanted to be part of the EMAX community for the long-term.  Mr. Perone talked publicly about how he thought EMAX was special and had real sustainability.  He discussed his confidence in EMAX and indicated that he was "here to stay," i.e. part of EMAX for the long-term.  Consolidated Class Action Complaint ("CCAC"), ECF No. 41 ¶¶ 94, 96.  These statements are consistent with Mr. Perone believing in EMAX and the promise of its community.  Rule 9(b) requires Plaintiffs to allege—with specificity—why such statements were false, misleading and/or unfair, yet Plaintiffs make no specific allegations that permit a plausible inference that Mr. Perone secretly thought EMAX would fail or that he dumped his own EMAX to turn a profit.  As to Mr. Perone, Plaintiffs allege a pump with no dump.  Absent such allegations, all of their claims against Mr. Perone fail.

Plaintiffs cannot mask the insufficiency of their pleading as to Mr. Perone by lumping him in with a group of other Defendants.  When the Complaint is stripped of general, conclusory allegations and the limited allegations *against Mr. Perone* are examined—as is appropriate on a motion to dismiss—it becomes clear that Plaintiffs have not pleaded any plausible claim against Mr. Perone.  Plaintiffs fail to allege a single statement *by Mr. Perone* that is false.  They fail to allege with specificity that he sold his EMAX, that he had a common purpose with the other

Defendants in this action, or that he committed even a single predicate act to establish RICO liability.

In addition, this Court lacks personal jurisdiction over Mr. Perone, who is not a California resident.  Accordingly, Plaintiffs' claims fail to meet the requirements of Federal Rules of Civil Procedure 9(b) and 12(b) and must be dismissed against Mr. Perone.[1]

## II.    BACKGROUND

According to allegations contained in the Complaint, many of which are wrong but must be taken as true for purposes of this motion, EMAX Tokens are blockchain-based digital assets that were created by the company EthereumMax. CCAC ¶¶ 31–32.  On May 14, 2021, EMAX Tokens ("EMAX") launched with a transaction volume of $16.11 million and a price of $0.00000005875.  *Id.* ¶ 40. Cryptocurrency enthusiasts and other interested buyers could purchase EMAX on decentralized exchanges, such as Uniswap, in exchange for other cryptocurrencies, such as Ether.  *Id.* ¶¶ 33, 41.

EthereumMax launched EMAX with the goal of "creating a unique token that provides lifestyle perks with financial rewards and incentives to its holders with a pathway for practical long-term use in everyday life."  *Id.* ¶ 44.  One early example of a use for EMAX holders was the Floyd Mayweather v. Logan Paul boxing event, for which EMAX was the exclusive cryptocurrency accepted for online purchasing, and those who used EMAX to buy their tickets received special perks and incentives.  *Id.* ¶¶ 83–85.

Defendant Giovanni Perone, who Plaintiffs allege is a Florida resident, became involved with the EMAX project along with several other individuals in

---

[1] In addition to the arguments made herein, Mr. Perone hereby joins in Defendants' Omnibus Motion to Dismiss, which asserts additional and independent bases for the dismissal of the Complaint that are common to all Defendants.

2021.  *Id.* ¶¶ 17, 31.  Believing EMAX was special, Mr. Perone bought EMAX to hold for the long term and joined the community around it.  *Id.* ¶¶ 94, 96.

Plaintiffs seek to represent a class of "[a]ll persons who, during the Class Period, purchased EthereumMax's EMAX Tokens and were subsequently damaged thereby."  *Id.* ¶ 117.  They assert eight causes of action against Mr. Perone, among other Defendants, based on: California's Unfair Competition Law ("UCL"); California's Consumers Legal Remedies Act ("CLRA"); the Racketeer Influenced and Corrupt Organizations Act ("RICO"); common law conspiracy; Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"); New York's General Business Law Article 22-A, Section 349(a); New Jersey's Consumer Fraud Act; and unjust enrichment.[2]  *Id.* ¶¶ 131–236.  They allege that Defendants engaged in a scheme to promote EMAX and artificially raise its price so that Defendants could then sell their EMAX at a higher price.  *Id.* ¶¶ 2–4, 116, 157–58.  Plaintiffs divide Defendants into two groups: "Executive Defendants," (including Mr. Perone) who Plaintiffs allege created and launched EMAX; and the "Promotor Defendants," a group of public figures who Plaintiffs allege the Executive Defendants recruited and retained to promote EMAX.  *Id.* ¶¶ 40, 47–48.

## III.   STANDARD OF REVIEW

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory."  *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Though the Court must accept as true material factual allegations, it need not accept as true "allegations that are merely conclusory, unwarranted deductions

[2] Plaintiffs assert ten causes of action in their Complaint, but their Third and Sixth Causes of Action are not asserted against Mr. Perone and are not discussed herein.

of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

Because Plaintiffs plead claims sounding in fraud, their Complaint must also meet the heightened pleading requirement of Rule 9(b). Rule 9(b) requires plaintiffs alleging fraud to "state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). Under Rule 9(b), allegations of fraud must be "specific enough to give defendants notice of the particular misconduct." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2002) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). "[T]he pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019) (quoting *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013)) (internal quotation marks omitted). But "[a] plaintiff must set forth *more* than the neutral facts necessary to identify the transaction." *Vess*, 317 F.3d at 1106 (quoting *In re GlenFed Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)) (emphasis in original). To plead fraud with particularity, the complaint must also explain "*why* the statement or omission complained of was false and misleading." *Mostowfi v. i2 Telecom Intern., Inc.*, 269 F. App'x 621, 624 (9th Cir. 2008) (internal quotations and citation omitted) (emphasis added). If a plaintiff fails to explain how and why an alleged statement is false, it must be disregarded, and the claims based thereon dismissed. *See Vess*, 317 F.3d at 1107.

## IV.   PLAINTIFFS' CLAIMS DO NOT SATISFY RULE 9(B)

Each of Plaintiffs' claims against Mr. Perone must satisfy the heightened pleading requirements of Rule 9(b). Courts regularly apply Rule 9(b) to Plaintiffs' claims. *See, e.g., Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1094 (N.D. Cal. 2017) (dismissing claims under the UCL, CLRA, and FAL for failure to satisfy Rule 9(b) and holding that claims grounded in fraud are subject to Rule

9(b)); *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989) ("We have applied the particularity requirements of rule 9(b) to RICO claims."). Even where fraud is not a necessary element of a claim, it is well-settled that where a plaintiff alleges "a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim . . . the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess*, 317 F.3d at 1103–04. Such is the case here. Plaintiffs' entire complaint is grounded in fraud, founded entirely on an alleged "scheme" to "misleadingly promote and sell the digital asset associated with EthereumMax (the EMAX Tokens)[.]" CCAC ¶ 2. As alleged, the fraudulent scheme is a classic "pump and dump," wherein perpetrators "pump" up the value of an asset through fraudulent misrepresentation in order to "dump" the asset at an inflated price. *Id.* ¶¶ 114–16, 158–60. Each cause of action against Mr. Perone is based on this alleged fraudulent scheme and refers to some kind of alleged fraud or deception. *Id.* ¶¶ 135–36, 140, 158, 163, 188–89, 211–13, 223–25, 229–31, 234. Each claim must therefore satisfy Rule 9(b) to survive dismissal.

Plaintiffs have failed to meet Rule 9(b) for two reasons. First, they fail to identify which specific statements or acts form the basis of the claim against Mr. Perone. Second, Plaintiffs do not allege a single statement made by Mr. Perone that was false or misleading. Plaintiffs have thus failed to meet the requirements of Rule 9(b), and their claims against Mr. Perone must be dismissed.

## A. Plaintiffs Do Not Identify the Statements On Which Their Claims Against Mr. Perone Are Based

Plaintiffs allege throughout the Complaint that a number of different individuals made a variety of statements regarding EMAX. *E.g.*, CCAC ¶¶ 57, 62, 69, 86–87. They do not, however, identify which of these statements form the basis of their claims against Mr. Perone. This alone justifies dismissal under Rule 9(b): "Rule 9(b) does not allow a complaint to merely lump multiple defendants

together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (internal quotations and citation omitted). "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[] in the alleged fraudulent scheme.'" *Id.* (quoting *Moore*, 885 F.2d at 541).

Plaintiffs have failed to meet this requirement. Plaintiffs allege that there were two separate groups of Defendants, which they name the "Executive Defendants" and the "Promotor Defendants," but they do not identify which allegations and/or statements apply to each group, nor do they identify the role of each individual Defendant within the group in the alleged fraudulent scheme. Mr. Perone thus has insufficient notice of the basis for the fraud claims against him, and these claims must be dismissed. *Swartz*, 476 F.3d at 764–65; *see also Moore*, 885 F.2d at 541–42 (affirming dismissal of RICO claim where plaintiffs "fail[ed] to specify the time, place, and content of the alleged mail and securities fraud" and "none of the RICO allegations identifies the role of the individual defendants in the alleged fraudulent scheme.").

**B. Plaintiffs Have Pleaded No False Statement by Mr. Perone**

While it is unclear which statements *by others* form the basis of Plaintiffs' claims against Mr. Perone (and further unclear why Mr. Perone should be held responsible for such statements), the Complaint is likewise unclear as to why statements attributable to Mr. Perone are actionable.

Plaintiffs' main allegations concerning statements *by Mr. Perone* are drawn from two videos posted on YouTube by Mike Speer. The first was posted on May 23, 2021, and the second on June 7, 2021. Plaintiffs cherry-pick a series of statements made by Mr. Perone from each video and refer to them in their Complaint, CCAC ¶¶ 79, 93–96, but they do not allege *how* or *why* any of these

statements are false, as required by Rule 9(b).

       i.    *May 23, 2021 YouTube Video*

Each of the statements Plaintiffs identify from the May 23, 2021 video fails to meet Rule 9(b):

- "Perone states that EthereumMax's use of 'high level' brand ambassadors and promotors 'legitimized' the project." CCAC ¶ 79.

Plaintiffs do not allege how or why this statement is false.  To the contrary, they plead allegations that support the truth of this statement, alleging that the Promotor Defendants, which include several well-known celebrities, served as promotors and ambassadors for EMAX.  *Id.* ¶¶ 57, 62, 69, 86–87.

- "Perone also touted the 'technological upgrades' that were on the way for the EthereumMax project."  *Id.* ¶ 79.

Plaintiffs do not allege this was not true.  In fact, the second video of Mr. Perone on which Plaintiffs rely (incorporated by reference into the Complaint) and discussed further herein, features a new team member who Mr. Perone and Defendant Gentile explain was brought on to help develop the technological side of EMAX, thus affirming the truth of Mr. Perone's statement.  *Id.* ¶ 93 n.28 (linking to the full YouTube video).

- "Perone repeatedly proclaims that he will be meeting retail investors 'on the moon' when the price of EMAX Tokens rises after the marketing campaign created by the Executive Defendants and executed by the Promotor Defendants was successful."  *Id.* ¶ 79.

It is well established that "[g]eneralized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable."  *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005) (citing *Glen Holly Ent., Inc. v. Tektronix, Inc.*, 343 F.2d 1000, 1005 (9th Cir. 2003)).  Mr. Perone's statement that he would meet investors "on the moon" is a clear example of puffery that is not actionable.  *See In re*

*Fusion-io, Inc. Sec. Litig.*, No. 13-CV-05368-LHK, 2015 WL 661869, at *14 (N.D. Cal. Feb. 12, 2015) (holding that "statements projecting 'excellent results,' a 'blowout winner' product, 'significant sales gains,' and '10% to 30% growth rate over the next several years' have been held not actionable as mere puffery.") (citation omitted).

### ii.   *June 7, 2021 YouTube Video*

Each of the statements Plaintiffs identify from the June 7, 2021 video also fails to meet Rule 9(b):

- "Perone described his prior experience in 'the hedge fund space' and had 'significant experience structuring nuanced securitizations and financing arrangements,' and he touted EthereumMax as something 'special' with 'real sustainability.'" CCAC ¶ 94.

This set of statements fails to meet 9(b) for three reasons.  First, Plaintiffs do not allege Mr. Perone does not in fact have experience in the hedge fund space—he does.  Second, any statements about EMAX being "special" are non-actionable puffery.  *Anunziato*, 402 F. Supp. 2d at 1139.  Third, statements about EMAX's long-term sustainability are unverifiable, forward-looking statements of opinion and therefore not actionable.  *See Louis v. Nailtiques Cosms. Corp.*, 423 F. App'x 711, 713 (9th Cir. 2011) ("A statement about future value is ordinarily classified as 'a speculative observation and a mere statement of opinion, and as such, does not constitute a basis for a complaint of fraud.'") (quoting *Everts v. Matteson*, 21 Cal. 2d 437, 451 (1942)); *In re iPass, Inc. Sec. Litig.*, No. C05-00228 MHP, 2006 WL 496046, at *4 (N.D. Cal. Feb. 28, 2006) (holding that "forward-looking or generalized statements of optimism . . . are not capable of objective verification" and thus "cannot serve as actionable material misstatements of fact") (internal quotations and citations omitted).

- "Perone also stated that they were able to forge a 'landmark agreement with the Mayweather team' and reassured investors

regarding the 'volatility' in the EMAX Token price."  CCAC ¶ 94.

Plaintiffs allege facts elsewhere in their Complaint regarding the partnership between EMAX and Floyd Mayweather, thus affirming the truth of this statement. *Id.* ¶¶ 58, 81.  As for Plaintiffs' allegation that Mr. Perone "reassured investors regarding the 'volatility' in the EMAX Token price," Mr. Perone's full statement in the video, linked to by Plaintiffs and incorporated by reference, was: "Obviously we saw kind of some—a little bit of volatility, which was kind of expected, but we're very happy where we stand and we think there's some great prospects moving forward."  This statement contains no objectively verifiable fact and is also a vague, forward-looking statement of optimism; it is not an actionable statement. *See In re iPass, Inc. Sec. Litig.*, 2006 WL 496046, at *4.

- "During a pseudo question and answer portion of the video, Gentile brought up investors' questions about a 'rug pull' of the EMAX Token and asked Perone to 'nip it in the bud.'  Perone stressed that the EthereumMax team was in for the long term, stating, among other things, that the Executive Defendants were 'looking to lock the wallets' to show investors they 'were here to stay.'"  CCAC ¶ 96.

Plaintiffs do not allege how and why this statement is false.  They do not allege that Mr. Perone was not in fact holding EMAX for the long term—he is. And they allege elsewhere that "the Executive Defendants did not 'lock' their EMAX Token wallet addresses until after the Relevant Period."  *Id.* ¶ 110.  This confirms that Mr. Perone's prior statement about individuals seeking to lock their wallets was true.  That they locked them at a time different from a "relevant period" arbitrarily selected by Plaintiffs is immaterial to the truth of this statement.

Because Plaintiffs have failed to allege how or why any actionable statement by Mr. Perone is false, their allegations against him fail to satisfy Rule 9(b), and any and all claims based on these statements must be dismissed.  These defects are incurable because Plaintiffs' allegations are at odds with themselves; they claim

fraud while alleging facts that show Mr. Perone's statements are actually true. Dismissal should therefore be with prejudice.

## V.   PLAINTIFFS FAIL TO PLEAD A RICO CLAIM AGAINST DEFENDANT PERONE

Plaintiffs' RICO claim is subject to the requirements of Rule 9(b) and thus must be dismissed for the reasons already stated. *Moore*, 885 F.2d at 541–42. In addition to this failure, Plaintiffs' RICO claim should also be dismissed for the independent reason that they have not pleaded facts sufficient to establish the elements of a RICO claim. To state a RICO claim, Plaintiffs must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)). Plaintiffs have failed to establish these elements as to Mr. Perone.

### A. Plaintiffs Fail to Allege Mr. Perone Was Part of an Enterprise

To show the existence of an enterprise, as required by the second element of a RICO claim, "plaintiffs must plead that the enterprise has (A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish the purpose." *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (citing *Boyle v. United States*, 556 U.S. 938, 946 (2009)). Where a plaintiff "fails to allege facts indicating that all the named defendants acted with the same purpose in mind" and instead "allege[s] only a series of disconnected incidents, each involving a subset of the overall group of defendants, with no clear indication of a unified agenda," they fail to establish a common purpose. *Comm. to Protect Our Agric. Water v. Occidental Oil and Gas Corp.*, 235 F. Supp. 3d 1132, 1175 (E.D. Cal. 2017).

Here, Plaintiffs allege Defendants' common purpose was "to increase the price and trading volume for the EMAX Tokens so that they could sell off their portion of the Float for grossly inflated prices," but they fail to plead specific facts

to support this general allegation as to Mr. Perone.  CCAC ¶ 180.  Mr. Perone did not share this common purpose because he was not at that time and has not to this day sold off his EMAX, and Plaintiffs do not allege he did.  Plaintiffs allege generally that Defendants were selling their EMAX, but while they allege specific facts regarding the EMAX sales of some Defendants, they are notably silent on Mr. Perone's sales.  Where Rule 9(b) requires specificity, Plaintiffs offer vagueness and generality.  It makes no sense—it is implausible—that Mr. Perone would share a common purpose with other Defendants to inflate the price in order to sell . . . but then not sell.  Accordingly, Plaintiffs have failed to plausibly allege that Mr. Perone was part of an enterprise with the specificity required by Rule 9(b).

### B. Plaintiffs Fail to Allege Mr. Perone Participated in Racketeering Activity Because They Plead No Specific Predicate Acts by Him

To establish the element of racketeering activity, Plaintiffs must plead predicate acts.  Where the claim is "asserted against multiple defendants, a plaintiff must allege at least two predicate acts by each defendant."  *Comm. to Protect Our Agric. Water*, 235 F. Supp. 3d at 1177 (citing *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 914 (C.D. Cal. 2012)).  In addition, where, as here, a plaintiff pleads predicate acts of mail or wire fraud, such allegations must satisfy the requirements of Rule 9(b).  Plaintiffs' allegations fail on both fronts.

To establish the required predicate acts, Plaintiffs plead generally that Defendants' "use of the U.S. Mail and interstate wire facilities to perpetrate the fraudulent promotion scheme involved thousands of communications throughout the class period."  CCAC ¶¶ 174–79.  But despite this allegation of "thousands of communications," Plaintiffs fail to identify even a single specific instance of mail or wire fraud by Mr. Perone, let alone two.  It is not enough to allege conduct by other Defendants and allege generally that Mr. Perone "conspired" or "assisted" in such conduct.  Plaintiffs must allege specific acts *by Mr. Perone* to establish he

participated in the alleged scheme.  *See Doan v. Singh*, 617 F. App'x 684, 686 (9th Cir. 2015) ("[T]he other defendants are variously alleged to have 'conspired,' 'assisted,' 'colluded,' or 'help[ed].' Still, it is not clear what exactly each individual did, when they did it, or how they functioned together as a continuing unit.  These bare assertions of a pattern of racketeering activity do not establish an enterprise and they do not, therefore, satisfy Plaintiffs' burden.").  Plaintiffs have not done so, and their RICO claim therefore fails under Rule 12(b)(6).

## VI.   THIS COURT LACKS PERSONAL JURISDICTION OVER MR. PERONE

Plaintiffs' claims against Mr. Perone also fail for lack of personal jurisdiction.  Plaintiffs allege that Mr. Perone is a resident of Florida.[3]  CCAC ¶ 17.  Therefore, for this Court to exercise personal jurisdiction over Mr. Perone, a nonresident defendant, he must have sufficient "minimum contacts" with California.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801–02 (9th Cir. 2004).  The minimum contacts test requires: (1) the nonresident defendant "must purposefully direct his activities or consummate some transaction with the forum or resident thereof"; (2) the plaintiff's claim must arise from or relate to the defendant's forum-related activities; and (3) the exercise of personal jurisdiction must be reasonable.  *Id.* at 802.

As discussed above, Plaintiffs have not pleaded a single act by Mr. Perone, and they therefore have not pleaded facts sufficient to establish that Mr. Perone has had "minimum contacts" with California or its residents.  At most, Plaintiffs have pleaded that Mr. Perone appeared in a YouTube video that he did not even upload.  This is insufficient to meet the minimum contacts test.  *See Williby v. Hearst Corp.*, No. 5:15-cv-02538-EJD, 2017 WL 1210036, at *6–7 (N.D. Cal. Mar. 31,

---

[3] Though Mr. Perone at one point had a residence in Florida, he is in fact a resident of New Jersey.  But whether he is a resident of Florida or New Jersey does not change the fact that this Court has no personal jurisdiction over him.  He is not a resident of California and has no minimum contacts there.

2017) (finding no personal jurisdiction based solely on defendant posting a comment on YouTube) (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418–20 (9th Cir. 1997)).  Because Plaintiffs cannot establish this Court has personal jurisdiction over Mr. Perone, the claims against him must be dismissed.[4]

## VII.   CONCLUSION

Because Plaintiffs have failed to plead any claim against Mr. Perone with sufficient particularity to satisfy Rule 9(b), Defendants respectfully request that the Court dismiss all claims against Mr. Perone.  Further, and as an independent basis for dismissal of the RICO claim, because Plaintiffs have not sufficiently alleged that Mr. Perone was part of an enterprise, nor that he engaged in racketeering activity, the RICO claim should also be dismissed as to Mr. Perone.  And finally, the Court should dismiss all claims against Mr. Perone because it lacks personal jurisdiction over him.  Mr. Perone respectfully requests that the Court dismiss the claims against him with prejudice.

DATED: July 29, 2022          Respectfully submitted,


                              */s/ Andrew Michaelson*
                              ANDREW MICHAELSON

                              **KING & SPALDING LLP**
                              CRAIG CARPENITO (pro hac vice)
                              ccarpenito@kslaw.com
                              ANDREW MICHAELSON (pro hac vice)
                              amichaelson@kslaw.com
                              1185 Avenue of the Americas, 34th Floor
                              New York, NY 10036
                              Tel: (212) 556-2100; Fax: (212) 556-2222

---

[4] While 18 U.S.C. § 1965 authorizes nationwide service in RICO suits, the RICO claim cannot be used to establish personal jurisdiction if it is dismissed for the reasons stated above.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DAVID K. WILLINGHAM (CA 198874)
dwillingham@kslaw.com
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Tel: (213) 443-4355; Fax: (213) 443-4310

MEGHAN H. STRONG (CA 324503)
mstrong@kslaw.com
50 California Street, Suite 3300
San Francisco, CA 94111
Tel.: 415-318-1200; Fax: 415-318-1300

*Counsel for Defendant Giovanni Perone*