John T. Jasnoch (CA 281605)
jjasnoch@scott-scott.com
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile: 619-236-0508

*Attorney for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE ETHEREUMMAX INVESTOR LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Lead Case No. 2:22-cv-00163-MWF-SK<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT KARDASHIAN'S MOTION TO DISMISS** |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. STATEMENT OF FACTS .................................................................................. 2

III. LEGAL STANDARD .......................................................................................... 3

IV. ARGUMENT ....................................................................................................... 4

    A. The Exercise of Jurisdiction over Defendant Kardashian Is Consistent with Due Process ....................................................... 4

    B. Plaintiffs Adequately Allege an Actionable Misrepresentation ................................................................................ 6

    C. Plaintiffs Adequately Allege an Actionable Omission .................. 7

    D. Plaintiffs Adequately Allege Consumer Statutory Claims ................................................................................................ 7

    E. Plaintiffs State a Claim for Aiding and Abetting ........................... 9

    F. Plaintiffs State a Claim for Civil Conspiracy as to Defendant Kardashian .................................................................... 11

V. CONCLUSION .................................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*America West Airlines, Inc. v. GPA Group, Ltd.*,
    877 F.2d 793 (9th Cir. 1989) ................................................................................ 6

*As You Sow v. Crawford Labs., Inc.*,
    50 Cal. App. 4th 1859 (1996) ............................................................................... 4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................... 3, 4

*Avoy v. Turtle Mountain, LLC*,
    No. 13-CV-0236-LHK, 2014 WL 587173 (N.D. Cal. Feb. 14,
    2014) .................................................................................................................... 8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 554 (2007) ......................................................................................... 3, 4

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ............................................................................................. 5

*Casey v. U.S. Bank Nat'l Ass'n*,
    127 Cal. App. 4th 1138 (2005) ............................................................................. 9

*Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*,
    332 F. App'x 565 (11th Cir. 2009) ....................................................................... 8

*Davis v. Powertel, Inc.*,
    776 So.2d 971 (Fla. Dist. Ct. App. 2000) ............................................................ 8

*Doe v. Roblox*,
    2022 WL 1459568 (N.D. Cal. May 9, 2022) ....................................................... 9

*Ehrlich v. BMW of N. Am., LLC*,
    801 F. Supp. 2d 908 (C.D. Cal. 2010) ................................................................. 8

*El-Fadl v. Cent. Bank of Jordan*,
    75 F.3d 668 (D.C. Cir. 1996), *abrogated on other grounds by
    Samantar v. Yousuf*, 560 U.S. 305 (2010) ........................................................... 6

*In re Sony Gaming Networks & Customer Data Sec. Breach Lit.*,
  903 F. Supp. 2d 942 (S.D. Cal. 2012) ................................................................... 8

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) .......................................................................................... 8

*Kane v. Chobani*,
  No. 12–2425, 2013 WL 5289253 (N.D. Cal. Sept. 19, 2013) .............................. 7

*Kidron v. Movie Acquisition Corp.*,
  40 Cal. App. 4th 1571 (1995) ............................................................................ 10

*Loomis v. Slenderstone Distribution, Inc.*,
  420 F. Supp. 3d (S.D. Cal. 2019) ......................................................................... 5

*McMahan & Co. v. Wherehouse Entertainment, Inc.*,
  900 F.2d 576 (2d Cir. 1990) ................................................................................. 6

*Miller v. Thane International, Inc.*,
  519 F.3d 879 (9th Cir. 2008) ................................................................................ 6

*Neilson v. Union Bank of California, N.A.*,
  290 F. Supp. 2d 1101 (C.D. Cal. 2003) ................................................................ 9

*Newton v. Am. Debt Servs., Inc.*,
  No. C-11-3228 EMC, 2013 WL 5592620 (N.D. Cal. Oct. 10, 2013) ............ 9, 10

*Okun v. Superior Court*,
  29 Cal. 3d 442 (1981) ........................................................................................ 10

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340 (1978) ............................................................................................. 6

*State, Off. of Att'y Gen. v. Com. Com. Leasing, LLC*,
  946 So.2d 1253 (Fla. Dist. Ct. App. 2007) .......................................................... 8

*Wyatt v. Union Mortgage Co.*,
  24 Cal. 3d 773 (1979) ........................................................................................ 10

**Statutes, Rules, and Regulations**

Federal Rules of Civil Procedure
  Rule 9(b) ............................................................................................................ 10
  Rule 12(b)(6) ....................................................................................................... 3

## I. INTRODUCTION

Plaintiffs Ryan Huegerich, Jonathan Semerjian, Nabil Nahlah, Till Freeman, Marko Ciklic, Tunisia Brignol, Milan Puda, Neil Shah, and Christopher DeLuca ("Plaintiffs"), individually and on behalf of all other persons similarly situated hereby submit this memorandum of law in response to the separate motion filed by Defendant Kimberly Kardashian ("Kardashian"), seeking dismissal of Plaintiffs' Consolidated Complaint against her.

This action seeks redress on behalf of all persons who suffered financial harm due to their investments in EthereumMax tokens from May 14, 2021 through June 21, 2021. The Consolidated Complaint ("Complaint") alleges a scheme among various individuals in the cryptocurrency sector to misleadingly promote and sell the digital assets associated with EthereumMax (the EMAX Tokens) to unsuspecting investors. EthereumMax collaborated with several celebrity promotors, including Defendant Kardashian, who made false and misleading statements to investors about EthereumMax while failing to disclose the significant consideration she was given in exchange for her promotions.

Motivated by a desire to serve her own financial interests as well as those of EthereumMax and the Executive Defendants, Defendant Kardashian actively promoted the EthereumMax enterprise and solicited purchases of EMAX Tokens from the investing public. ¶¶87, 97.[1] Kardashian's solicitations for purchases of EMAX Tokens were successful and her promotions lead to an explosion in interest in Ethereum Max as well as a significant increase in EMAX Token transaction volume. ¶99. Defendant Kardashian was a key participant in the overall scheme to create the public market for EMAX tokens while having actual knowledge or, at best, having been grossly reckless in disregarding, the fact that the EMAX tokens

---

[1] Unless otherwise noted all "¶" references refer to the Consolidated Class Action Complaint.

had no value and the EthereumMax enterprise was conducting a pump and dump scheme.

Despite this fact, Kardashian now seeks to minimize her necessary conduct and absolve herself of responsibility for her role in perpetuating the EMAX scam. The statements by Kardashian were false and misleading and omitted material facts and led to the losses suffered by Plaintiffs. ¶¶99, 101. Defendant Kardashian's separate motion should be denied.

## II. STATEMENT OF FACTS

Defendant Kardashian was a promoter for EthereumMax and EMAX Tokens. ¶87. The Executive Defendants actively searched for and recruited promoters for the launch of the EMAX tokens in May 2021. ¶47. The Ethereum Max scam was predicated on the use of celebrities like Defendant Kardashian. Executive Defendants confirm that Ethereum Max's use of "high level" brand ambassadors and promotors "legitimized" the project. ¶79.

Kardashian initially started by promoting EMAX's purported use in clubs in Miami, "LIV," and "STORY" that were owned in part by the Miami-based company Groot Hospitality. Kardashian's promotion noted that the clubs were "NOW ACCEPTING CRYPTOCURRENCY FOR ALL TABLE RESERVATIONS AND BOOKINGS" and that the clubs would be "EXCLUSIVELY ACCEPTING EthereumMax.org" on May 30, 2021. ¶87. Following the promotion for LIV and STORY, the volume of trading of the EMAX Tokens spiked an additional $75.5 million. ¶88. There was no disclosure that she had been compensated for this promotional post. ¶102.

On June 14, 2021, posted on her Instagram account, which had over 250 million followers at the time, and said, "Are you guys into crypto???? . . . A few minutes ago Ethereum Max burned 400 trillion tokens – literally 60% of their admin wallet giving back to the entire E-Max community" and included a "swipe up" feature "to join the E-MAX community." ¶97. The "#AD" that was included in the

post was very small and added at the end of a string of hashtags. ¶101. Kardashian's Instagram post had substantial effect and "19% of respondents who said they heard about the post invested in EthereumMax as a result." ¶99.

The ad that Kardashian shared was false and misleading in that it implied the EMAX Tokens were scarce since the 400 trillion tokens were burned. In fact, two quadrillion tokens had been originally created, thus the burning of 400 trillion tokens did not impact the availability of the EMAX Tokens. ¶101. The Complaint adequately alleges that Kardashian was paid handsomely for this ad. Although Plaintiffs do not know the exact nature of the compensation Defendant Kardashian was paid for her post, the Complaint makes clear that her social media posts garner anywhere between $300,000 and $1 million per promotional post. ¶102.

As retail investors rushed in to purchase EMAX tokens following Defendant Kardashian's promotion, the exit scam was underway. Only a month after Defendant Kardashian's June 14, 2021 post, the EMAX Token hit an all-time low at $0.000000017 per unit, a 98% drop, and continues to see low transaction volume to this day. ¶109.

These social media posts were misleading and affected the price of the EMAX Tokens so that Defendants could sell their EMAX Tokens before the price completely bottomed out. ¶¶161, 195. As bluntly alleged by the Complaint, if investors "bought EthereumMax after Kardashian pushed it and didn't sell fast enough, all you were left with was a practically worthless digital asset." ¶111.

### III. LEGAL STANDARD

To prevail on a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

1  defendant is liable for the misconduct alleged." *Id*. Further, "once a claim has been
2  stated adequately, it may be supported by showing any set of facts consistent with
3  the allegations in the complaint." *Twombly*, 550 U.S. at 563 (noting that once a
4  claim for relief has been stated, a plaintiff "'receives the benefit of imagination, so
5  long as the hypotheses are consistent with the complaint'").

6  **IV. ARGUMENT**

7      **A. The Exercise of Jurisdiction over Defendant Kardashian Is Consistent with Due Process**
8

9  Defendant Kardashian directed her activities into the State of Florida through
10 her misleading promotions that the LIV Nightclub in Miami would be exclusively
11 accepting EthereumMax. ¶97. This promotion, which did not include a disclaimer
12 that she received compensation, represented a purposeful availment into Florida
13 such that jurisdiction would be proper. This promotion directly targeted investors
14 in the State of Florida and promoted that investors visit these nightclubs and use
15 EthereumMax for reservations and bookings. *Id.*

16 In her Instagram post, Defendant Kardashian included a hashtag
17 "GIOPEMAX" (Gio P. EMAX), a reference to the Florida-based EthereumMax co-
18 founder and Executive Defendant Giovanni Perrone. *Id.* This hashtag reference,
19 combined with the prior promotional references to Miami nightclubs, makes it
20 reasonable to infer the Defendant Kardashian communicated with Defendant Perone
21 regarding Florida-specific promotions in connection with her promotional posts.

22 The test to determine if a defendant have availed himself of forum benefits is
23 satisfied "'if as a matter of commercial reality it has engaged in economic activity
24 within this state.'" *As You Sow v. Crawford Lab'ys., Inc*., 50 Cal. App. 4th 1859,
25 1870 (1996). The purposeful availment standard focuses on the defendant's
26 "intentionality" and is satisfied when a nonresident defendant purposefully directs
27 its activities at the forum's residents; purposefully derives benefit from its activities
28 in the forum; creates a substantial connection with the forum; deliberately engages

in substantial activities in the forum; or creates continuing obligations between itself and forum residents. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985). The question is thus whether one could reasonably expect to be hauled into the forum's courts. *Id*.

    Here, the answer to that question is a resounding yes. Based on her significant Florida based activities, Defendant Kardashian could have reasonable have expected to face claims based on Florida law.

    Moreover, the vast reach of Defendant Kardashian's social media accounts confirms that social media posts would be shared and relied upon in places like Florida, New York, and New Jersey such that the exercise of jurisdiction would not offend due process. ¶¶87, 96, 99. When examining the purposeful availment prong of specific jurisdiction, the courts that considered commercial activity over the internet have "adopted a sliding scale when assessing whether operating a website can give rise to sufficient minimum contacts within the forum state." *Loomis v. Slendertone Distribution, Inc*., 420 F. Supp. 3d at 1058, 1068 (S.D. Cal. 2019). The court in *Loomis* continued to reason that there are "passive" websites, ones that merely display an advertisement, and "interactive" websites, websites that function as a commercial enterprise where users interact with the website. Here, Defendant Kardashian's post was "interactive" as it urged users to "SWIPE UP" to "JOIN THE E-MAX COMMUNITY" learn more and be connected with instructions to buy EMAX tokens.

    Alternatively, should this Court decide that Plaintiffs have not adequately alleged personal jurisdiction over Defendant Kardashian with respect to the non-California statutory claims, Plaintiffs respectfully requests the right to take limited jurisdictional discovery, including the deposition of Defendant Kardashian and written discovery requests, and for the ability to seek leave to amend the Complaint based upon the information obtained through such discovery. "Where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on

such issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978). As stated by the United States Court of Appeals for the D.C. Circuit, "[a] plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum." *El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 676 (D.C. Cir. 1996), *abrogated on other grounds by Samantar v. Yousuf*, 560 U.S. 305 (2010). "[W]here pertinent facts bearing on the question of jurisdiction are in dispute, discovery should be allowed." *Am. W. Airlines, Inc. v. GPA Grp., Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989).

### B. Plaintiffs Adequately Allege an Actionable Misrepresentation

Defendant Kardashian's Instagram promotion was false and misleading in that Defendant Kardashian was purportedly just "sharing what my friends just told me about the Ethereum Max Token!" This statement was false and misleading because, rather than organically sharing what she was told by friends, Defendant Kardashian was being compensated by EthereumMax and/or the Executive Defendants. Moreover, by stating that "Ethereum Max Burned 400 trillion tokens – Literally 50% of their Admin Wallet Giving Back to the Entire E-Max Community" the promotion created a false impression that the EMAX Tokens were scarce and that investors would somehow miss out if they did not immediately purchase. While 400 trillion tokens may in fact have been burned, statements that are "literally true on their face may nonetheless be misleading when considered in context." *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 886 (9th Cir. 2008). Circumstance, setting, and even "manner of presentation" all matter. *McMahan & Co. v. Wherehouse Ent., Inc.*, 900 F.2d 576, 579 (2d Cir. 1990). Indeed, because **two quadrillion tokens** had been originally created, however, the burning of 400 trillion tokens did not meaningfully impact the availability of EMAX Tokens and was designed to mislead the public and investors.

### C. Plaintiffs Adequately Allege an Actionable Omission

Kardashian argues that Plaintiffs failed to plead actionable omissions, but then herself fails to acknowledge the partial representations that she made regarding the burning EMAX Tokens that she just heard about from "a friend" and by initially promoting (without disclosure that it was a paid advertisement) EMAX's purported use in clubs in Miami, "LIV," and "STORY" that were owned in part by Miami-based company Groot Hospitality. Kardashian's promotion noted that the clubs that would be "NOW ACCEPTING CRYPTOCURRENCY FOR ALL TABLE RESERVATIONS AND BOOKINGS" and that the clubs would be "EXCLUSIVELY ACCEPTING EthereumMax.org" on May 30, 2021. ¶87. This promotion omitted the fact that she had been compensated for this post.

### D. Plaintiffs Adequately Allege Consumer Statutory Claims

To state a claim under California's False Advertising Law ("FAL") or Unfair Competition Law ("UCL"), a plaintiff must allege facts sufficient to show that she relied on the defendant's alleged misrepresentation. *See Kane v. Chobani,* No. 12–2425, 2013 WL 5289253, at *5–6 (N.D. Cal. Sept. 19, 2013) (collecting authority). Each named Plaintiff specifically alleges that they made their EMAX purchases after viewing "numerous celebrity endorsements of EMAX." ¶¶6-14. Given the reach of Defendant Kardashian's social media, it is inescapable that Plaintiffs and class members were exposed to the promotions.

Defendant Kardashian fails to acknowledge other allegations in the Complaint that also establish reliance. For example, the Complaint alleges that the financial service company, Morning Consult analyzed "the impact of celebrities on crypto investor decisions," and, in particular, the impact of Defendant Kardashian's EthereumMax post. The survey found that up to 21% of all American adults and nearly half of all cryptocurrency owners had seen this ad for a risky financial instrument. ¶99. As particularly relevant here, the Complaint details that Kardashian's "conversion was also impressive: A striking 19% of respondents who

said they heard about the post invested in EthereumMax as a result." *Id.* Indeed, following the promotion for LIV and STORY, the volume of trading of the EMAX Tokens spiked an additional $75.5 million. ¶88. These allegations, in conjunction with the allegations that each Plaintiff "viewed numerous celebrity endorsements of EMAX," are enough for the Court to plausibly infer actual reliance that is sufficient to state a claim against Defendant Kardashian.

Moreover, "actual reliance is presumed, or at least inferred, when a misrepresentation is material." *See Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 919 (C.D. Cal. 2010); *see also In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 969 (S.D. Cal. 2012) (*citing In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009)).

A misrepresentation or omission, in this context, would be material if a reasonable person "would attach importance to [the misrepresentation's] existence or nonexistence in determining his choice of action in the transaction in question." *Avoy v. Turtle Mountain, LLC*, No. 13-CV-0236, 2014 WL 587173, at *5 (N.D. Cal. Feb. 14, 2014). It is reasonable to infer that investors would find it material whether Defendant Kardashian heard about EthereumMax from "a friend" or from someone that paid her to promote it. Investors would also find it material that the burning of 400 trillion tokens had no material effect on the scarcity or availability of the EMAX token. These true facts would surely be of importance to an investor's "choice of action in the transaction in question." *Avoy*, 2014 WL 587173, at *5.

With respect to causation, the Complaint plainly alleges that the "Executive Defendants' activities with the Promoter Defendants caused Plaintiffs and the Class members to purchase and/or hold the EMAX Tokens when they otherwise would not have done so." ¶¶134-35. In any event, Defendant Kardashian's arguments are inapplicable to Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim that are brought by Plaintiffs' Nahlah, Freeman, Brignol, and Puda. As Florida courts have long held: "A party asserting a deceptive trade practice claim need not

show actual reliance on the representation or omission at issue." *Davis v. Powertel, Inc*., 776 So.2d 971, 973 (Fla. Dist. Ct. App. 2000); *see Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 F. App'x 565, 567 (11th Cir. 2009) (citing *State, Off. of Att'y Gen. v. Com. Com. Leasing, LLC*, 946 So.2d 1253, 1258 (Fla. Dist. Ct. App. 2007)) ("[T]he FDUTPA does not require a plaintiff to prove actual reliance on the alleged conduct.").[2]

With respect to the CLRA, Defendant Kardashian as a virtual currency used for that could be used for exclusive services. Virtual currency has been found to be within the limits of the CLRA, "[the court] has suggested that . . . virtual currency may be a 'service' under the CLRA." *Doe v. Roblox Corp.*, No. 3:21-CV-03943. 2022 WL 1459568, (N.D. Cal. May 9, 2022) at *12. Indeed, Defendant Kardashian advertised that the EMAX token could be used to make table reservations and bookings at the Miami nightclubs. By promoting engagement with the EMAX Token for things that are advertised as exclusive to the EMAX Token, the EMAX Tokens are thus subject to the CLRA. *Doe v. Roblox*, 2022 WL 1459568, at *12 ("When a user purchases Robux (with real money), they are engaging in a transaction with Roblox to make use of a part of that entertainment service.").

### E. Plaintiffs State a Claim for Aiding and Abetting

Under an aiding-and-abetting theory, those like Defendant Kardashian who provide substantial assistance with actual knowledge of the wrongdoing are liable as co-tortfeasors for the wrongs committed by codefendants. *Newton v. Am. Debt Servs., Inc*., No. C-11-3228, 2013 WL 5592620, at *4 (N.D. Cal. Oct. 10, 2013). Unlike civil conspiracy, aiding-and-abetting does not require proof of an agreement to commit the primary wrong. *Neilson v. Union Bank of California, N.A*., 290 F.

---

[2] Plaintiffs acknowledge that the Complaint does not contain allegations regarding the other Plaintiffs' actual reliance on specific misrepresentations and omission by the Defendant Kardashian as required by the New York (GBL) and New Jersey (NJCFA) consumer protection statutes. This can be easily remedied should the Court decide to dismiss these claims with leave to amend.

Supp. 2d 1101, 1134 (C.D. Cal. 2003). Accordingly, a party alleging aiding-and-abetting need only establish: (1) defendant's actual knowledge of the specific primary wrong, and (2) defendant's substantial assistance in its commission. *Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138, 1145 (2005). While the aiding and abetting claim is grounded in fraud, Rule 9(b) allows for general pleading of "[m]alice, intent, knowledge, and other conditions of a person's mind." Accordingly, the substantial assistance element must be pleaded with particularity and the knowledge element can be pleaded generally. *Newton*, 2013 WL 5592620, at *4. Here, Defendant Kardashian is alleged to have been instrumental in assisting the Executive Defendants in carrying out the scheme to defraud investors, thereby satisfying the substantial assistance element. Further, as Defendant Kardashian's requisite knowledge can be inferred by her failure to disclose that the first promotional post was an ad. In the same vein, by virtue of Kardashian's admission that one of her promotions was an advertisement, it can be reasonably inferred that there exists an actual agreement that lays out the terms of the paid promotion. C-11-3228 EMC, 2013 WL 5592620, at *4 (N.D. Cal. Oct. 10, 2013). Unlike civil conspiracy, aiding-and-abetting does not require proof of an agreement to commit the primary wrong. *Neilson v. Union Bank of California, N.A*., 290 F. Supp. 2d 1101, 1134 (C.D. Cal. 2003). Accordingly, a party alleging aiding-and-abetting need only establish: (1) defendant's actual knowledge of the specific primary wrong, and (2) defendant's substantial assistance in its commission. *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1145 (2005). While the aiding and abetting claim is grounded in fraud, Rule 9(b) allows for general pleading of "[m]alice, intent, knowledge, and other conditions of a person's mind." Accordingly, the substantial assistance element must be pleaded with particularity and the knowledge element can be pleaded generally. *Newton*, 2013 WL 5592620, at *4. Here, Defendant Kardashian is alleged to have been instrumental in assisting the Executive Defendants in carrying out the scheme to defraud investors, thereby satisfying the

1  substantial assistance element. Further, as Defendant Kardashian's requisite
2  knowledge can be inferred by her failure to disclose that he first promotional post
3  was an ad. Moreover, knowledge can be inferred by Defendant Kardashian's falsely
4  organic reference that she was simply "sharing what my friends just told me about
5  the Ethereum Max Token!" when instead she was being compensated by
6  EthereumMax itself. This is enough to plead a claim for aiding and abetting.

### F. Plaintiffs State a Claim for Civil Conspiracy as to Defendant Kardashian

For the reasons stated in Plaintiffs omnibus opposition brief, Plaintiffs have adequately alleged a common law civil conspiracy claim against all of the Defendants, including Kardashian. Nevertheless, Kardashian insists that this claim fails against her in particular because the Complaint does not allege that she had ever communicated with any other Defendant. *See* Kardashian MTD at 12. This attempt at distancing herself from acts of the conspiracy she willingly joined should be rejected. Kardashian claims there is nothing to support the claim that she knew her promotions would artificially increase the EMAX Token price. However, the class action consolidated complaint ("CACC") in this matter alleges more than just a business relationship between Kardashian and the EthereumMax team such that it would not be unreasonable to infer that Kardashian had actual knowledge of the conspiracy alleged. For example, the CACC notes that: "While the identities of John Does 1-7 cannot yet be confirmed, there are clues. For example, as a now-deleted telegram post from the EMAX official account admitted: "Kim Kardashian is a family member of someone on the team." In addition, one of Kardashian's EthereumMax promotions is made in conjunction with a nightclub, LIV, and Groot Hospitality, both of which are partially owned by David Grutman. Since at least 2017, Grutman has been friends with Scott Disick, who also happens to be the father of Kardashian's niece and nephews." ¶26 n.1. This piece of factual information, coupled with the allegations that Defendant Mayweather was promoting EMAX at

LIV nightclub and Kardashian's own EMAX promotions with Perone and LIV nightclub owner, David Grutman, all demonstrates that the CACC provides sufficient support for the Court to reasonably infer that Kardashian was in communication with the other members of the EMAX Token scheme.

## V. CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court deny Defendant Kardashian's Motion to Dismiss.[3]

Dated: September 16, 2022                    Respectfully submitted,

s/ *John T. Jasnoch*
John T. Jasnoch (CA 281605)
jjasnoch@scott-scott.com
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile:  619-236-0508

*Attorney for Lead Plaintiff And the Proposed Class*

---

[3] Although Plaintiffs believe that the Complaint sufficiently alleges claims against defendant Kardashian, if this Court were to find otherwise, Plaintiffs request leave to amend their complaint to cure any deficiencies as Plaintiffs have not yet had the benefit of a court ruling addressing the sufficiency of their allegations.

## CERTIFICATE OF SERVICE

I, John T. Jasnoch, hereby certify that on September 16, 2022, I caused the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

Executed on September 16, 2022, at San Diego, California.

*s/ John T. Jasnoch*
John T. Jasnoch