John T. Jasnoch (CA 281605)
jjasnoch@scott-scott.com
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile: 619-236-0508

*Attorney for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE ETHEREUMMAX INVESTOR LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Lead Case No. 2:22-cv-00163-MWF-SK<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT MAYWEATHER'S MOTION TO DISMISS** |

# TABLE OF CONTENTS

I. INTRODUCTION ........................................ 1

II. STATEMENT OF FACTS ........................................ 2

III. LEGAL STANDARD ........................................ 4

IV. ARGUMENT ........................................ 4

A. The Complaint Alleges that Mayweather Misleadingly Promoted EthereumMax ........................................ 4

B. Plaintiffs Adequately Allege Consumer Statutory Claims ........................................ 6

C. Plaintiffs' Remaining Claims Are Alleged with Sufficient Particularity ........................................ 8

V. CONCLUSION ........................................ 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 4

*Avoy v. Turtle Mountain, LLC*,
No. 13-CV-0236, 2014 WL 587173 (N.D. Cal. Feb. 14, 2014) .......... 6, 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 554 (2007) .......... 4

*C.W. v. Epic Games, Inc.*,
No. 19-CV-03629-YGR, 2020 WL 5257572 (N.D. Cal. Sept. 3, 2020) .......... 8

*Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*,
332 F. App'x 565 (11th Cir. 2009) .......... 7

*Davis v. Powertel, Inc.*,
776 So. 2d 971 (Fla. Dist. Ct. App. 2000) .......... 7

*Doe v. Roblox Corp.*,
No. 3:21-CV-03943-WHO, 2022 WL 1459568 (N.D. Cal. May 9, 2022) .......... 8

*Ehrlich v. BMW of N. Am., LLC*,
801 F. Supp. 2d 908 (C.D. Cal. 2010) .......... 6

*FDIC v. Garner*,
126 F.3d 1138 (9th Cir. 1997) .......... 8

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
903 F. Supp. 2d 942 (S.D. Cal. 2012) .......... 6

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) .......... 6

*Kane v. Chobani*,
No. 12-CV-2425, 2013 WL 5289253 (N.D. Cal. Sept. 19, 2013) .......... 6

*McMahan & Co. v. Wherehouse Ent., Inc.*,
900 F.2d 576 (2d Cir. 1990) .......... 5

*Miller v. Thane Int'l, Inc.*,
519 F.3d 879 (9th Cir. 2008) ..... 5

*State, Off. of Att'y Gen. v. Com. Com. Leasing, LLC*,
946 So. 2d 1253 (Fla. Dist. Ct. App. 2007) ..... 7

**Statutes, Rules, and Regulations**

Federal Rules of Civil Procedure
Rule 12(b)(6) ..... 4

## I. INTRODUCTION

Plaintiffs Ryan Huegerich, Jonathan Semerjian, Nabil Nahlah, Till Freeman, Marko Ciklic, Tunisia Brignol, Milan Puda, Neil Shah, and Christopher DeLuca ("Plaintiffs"), individually and on behalf of all other persons similarly situated, hereby submit this memorandum of law in response to the separate motion filed by Defendant Floyd Mayweather, Jr. ("Mayweather"), seeking dismissal of Plaintiffs' Consolidated Complaint against him.

This action seeks redress on behalf of all persons who suffered financial harm due to their investments in EthereumMax ("EthereumMax" or the "Company") tokens from May 14, 2021 through June 21, 2021. The Consolidated Class Action Complaint (ECF No. 41) ("Complaint") alleges a scheme among various individuals in the cryptocurrency sector to misleadingly promote and sell the digital assets associated with EthereumMax (the "EMAX Tokens") to unsuspecting investors. EthereumMax collaborated with several celebrity promotors, including Defendant Mayweather, whose conduct misled investors about EthereumMax while failing to disclose the significant consideration he was given in exchange for his promotions.

Intent on serving his own financial interests as well as those of EthereumMax and the Executive Defendants, Defendant Mayweather actively promoted the EthereumMax enterprise and solicited purchases of EMAX Tokens from the investing public. ¶¶81-85, 90-91.[1] Mayweather's solicitations for purchases of EMAX Tokens were successful and his promotions lead to an explosion in interest in EthereumMax as well as a significant increase in EMAX Token transaction volume. ¶92. Defendant Mayweather was the "marquee" promotor in the overall scheme to create the public market for EMAX Tokens while having actual knowledge of or, at best, having been grossly reckless in disregarding, the fact that

[1] Unless otherwise noted all "¶" references are to the Complaint. Citations are omitted and emphasis is added throughout unless otherwise noted.

the EMAX Tokens had no value and the EthereumMax enterprise was conducting a pump and dump scheme.

Nevertheless, Mayweather now seeks to downplay his necessary conduct and absolve himself of responsibility for his role in perpetuating the EthereumMax scam. Mayweather's promotional activities were false and misleading and omitted material facts and led to the losses suffered by Plaintiffs. As such, Defendant Mayweather's separate motion should be denied.

## II. STATEMENT OF FACTS

Defendant Mayweather was a promoter for EthereumMax and EMAX Tokens. ¶81. The Executive Defendants actively searched for and recruited promoters for the launch of the EMAX Tokens in May 2021. ¶47. The EthereumMax scam was predicated on the use of celebrities like Defendant Mayweather. Executive Defendants confirm that EthereumMax's use of "high level" brand ambassadors and promotors "legitimized" the project. ¶79. Mayweather was initially recruited by Individual Defendants Justin Maher, Russell Davis, and Giovanni Perone, to serve as EthereumMax's "marquee" promotor. ¶81.

Mayweather received a fee of $1 million as his first down payment for promoting EthereumMax, followed by a second payment of $1.5 million. *Id*. The Complaint describes the circumstances surrounding Mayweather's payment as follows:

> According to Maher, Mayweather's representatives refused payment in EMAX Tokens and instead received payment in Ethereum, which has significantly more price stability. In order to raise the Ethereum needed for Mayweather's payment, Maher and Davis sought out large holders of Ethereum and offered them a "sweetheart" deal relative to the amount of Ethereum needed for celebrity promotion payments. For example, in exchange for providing $500,000 worth of Ethereum, they would give the Ethereum provider $2,000,000 of EMAX Tokens. As Maher observed, however, most often, the Ethereum provider would then immediately sell the $2,000,000 in EMAX Tokens on the open market. This tremendous downward selling pressure caused the price of the EMAX Tokens to drop.

*Id.*

On May 26, 2021, the Company issued a press release announcing that it had partnered with Defendant Mayweather and claiming that EMAX Tokens were "now the exclusive CryptoCurrency accepted for online ticket purchasing for the highly anticipated pay-per-view boxing event between Mayweather and social media influencer Logan Paul on June 6, 2021 in Miami Gardens, Florida." ¶83. The press release directed investors seeking more information to visit the Company's social media accounts and the "Fight Website" with an included hyperlink. *Id.* The Fight Website itself featured Mayweather and offered various incentives for those purchasing online tickets with EMAX Tokens, including entry in a lottery to attend "the official Mayweather after-party at a private table at LIV."[2] ¶84.

On May 28, 2021, the Company issued another press release entitled "EthereumMax ($eMax) Disrupts Miami Ahead of Mayweather vs. Paul Fight as the First Crypto Currency of Major Nightclubs LIV and Story." The press release highlighted the previous Mayweather v. Paul release. ¶85. Following the promotion for the EthereumMax and Mayweather partnership, the volume of trading of EMAX Tokens spiked from $25 million on May 27, 2021 to $80.9 million on May 28, 2021, after the Mayweather announcement. ¶88.

On June 4, 2021, Defendant Mayweather attended the "Bitcoin 2021" conference and "instead of discussing the cryptocurrency that was the focus of the conference (*i.e.*, Bitcoin), Mayweather promoted EthereumMax." ¶90. Specifically, Mayweather and his entourage wore t-shirts with EthereumMax emblazoned across the chest. At the same time, Mayweather proclaimed during a panel discussion: "I believe there's gonna be another cryptocurrency just as large as Bitcoin some day." ¶90. Two days later, on June 6, 2021, Mayweather similarly promoted EthereumMax during his highly viewed exhibition boxing match with Logan Paul.

---

2 LIV is a nightclub owned by David Grutman. ¶26 n.1. Other celebrity promoters like Defendant Kardashian also promoted EthereumMax in conjunction with LIV. *See* ¶88.

¶91. Mayweather's promotional activities had a substantial effect, causing the trading volume for EMAX Tokens to spike from $15.7 million to $24.5 million. ¶92.

While retail investors rushed in to purchase EMAX Tokens following Defendant Mayweather's promotion, the Executive Defendants began to effectuate their exit scam. Executive Defendants used the promotions with Mayweather to lure in investors to sell their EMAX Token allocations to before the price completely bottomed out. ¶¶211-212. Only a month after Defendant Mayweather's June 2021 promotions, the EMAX Token hit an all-time low at $0.000000017 per unit, a 98% drop, and continues to see low transaction volume to this day. ¶109.

## III. LEGAL STANDARD

To prevail on a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. Further, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563 (noting that once a claim for relief has been stated, a plaintiff '"receives the benefit of imagination, so long as the hypotheses are consistent with the complaint'").

## IV. ARGUMENT

### A. The Complaint Alleges that Mayweather Misleadingly Promoted EthereumMax

Defendant Mayweather's primary argument for dismissal is that the Complaint did not contain any allegations against him specifically, but rather grouped him together with the conduct of the other Promotor Defendants. *See* ECF No. 80 at 3-4. This argument is without merit. The Complaint has numerous

allegations regarding Mayweather's specific promotional activities. First, Defendant Mayweather's statement at the Bitcoin 2021 conference was actionable in that Defendant Mayweather told investors that he "believe[s] there's gonna be another cryptocurrency just as large as Bitcoin some day" while wearing an EthereumMax shirt. ¶90. This statement was false and misleading because, while the promotion indicated that EthereumMax and its related digital asset were poised for tremendous growth and the value of the EMAX Tokens that investors bought would increase exponentially in price in a similar fashion to the meteoric rise in Bitcoin's price following its launch, Mayweather knew it was not, as evidenced by his refusal to take his own promotional fee payment in EMAX Tokens.

Second, while Defendant Mayweather now tries to distance himself from the promotion of EthereumMax by arguing that he cannot be held accountable for the statements "made by others" (ECF No. 80 at 3), this argument entirely ignores the specific allegations regarding Mayweather's Fight Website and the Mayweather-related incentives available through that website to those that used EMAX Tokens to purchase tickets to Mayweather's June 6th, 2021 boxing match. ¶¶83-84. The Fight Website created a false impression that the EMAX Tokens were a legitimate cryptocurrency with real world usage capabilities. While the offered incentives, *e.g.*, ¶84 ("Orders over $5000 will receive authentic, signed Floyd Mayweather boxing gloves"; "2 front row ringside tickets available exclusively for EthereumMax purchase"; "All EthereumMax purchases receive 10% discount at checkout"; and "Tickets purchased with EthereumMax automatically entered into a lottery drawing to attend the official Mayweather after-party at a private table at LIV"), may in fact have been offered (or even provided), statements that are "literally true on their face may nonetheless be misleading when considered in context." *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 886 (9th Cir. 2008). Circumstance, setting, and even "manner of presentation" all matter. *McMahan & Co. v. Wherehouse Ent., Inc.*, 900 F.2d 576, 579 (2d Cir. 1990). Indeed, the Fight Website was designed to mislead the

public and investors into believing that the EMAX Tokens were a good investment and had the ability to conduct transactions like buying tickets to sporting events. But in reality, the volatility of EMAX Tokens' price make them unsuitable for making such purchases. As proof of this, Mayweather himself refused to accept his promotional fee payments in EMAX Tokens because other cryptocurrencies offered "significantly more price stability." ¶81. When viewed in context, Mayweather's failure to disclose this information while promoting EthereumMax was misleading.

**B. Plaintiffs Adequately Allege Consumer Statutory Claims**

To state a claim under California's False Advertising Law ("FAL") or Unfair Competition Law ("UCL"), a plaintiff must allege facts sufficient to show that they relied on the defendant's alleged misrepresentation. *See Kane v. Chobani*, No. 12-CV-2425, 2013 WL 5289253, at *5-*6 (N.D. Cal. Sept. 19, 2013) (collecting authority). Each named Plaintiff specifically alleges that they made their EMAX Token purchases after viewing "numerous celebrity endorsements of EMAX." ¶¶6-14. Given the reach of Defendant Mayweather's marketing network and his pay-per-view boxing event on June 6, 2021, it is inescapable that Plaintiffs and class members were exposed to the promotions.

Moreover, "actual reliance is presumed, or at least inferred," when a misrepresentation or omission is "material." *See Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 919 (C.D. Cal. 2010); *see also In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 969 (S.D. Cal. 2012) (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009)). A misrepresentation or omission, in this context, would be material if a reasonable person "'would attach importance to [the misrepresentation's] existence or nonexistence in determining his choice of action in the transaction in question.'" *Avoy v. Turtle Mountain, LLC*, No. 13-CV-0236, 2014 WL 587173, at *5 (N.D. Cal. Feb. 14, 2014) (alteration in original). It is reasonable to infer that investors would find it material whether Defendant Mayweather's so-called partnership with EthereumMax was really just a

paid promotion. Investors would also find it material that Mayweather's promotional activity at the Bitcoin 2021 conference was not based on his belief that EMAX Tokens would rival Bitcoin, but rather was due to the payments in cryptocurrency worth millions that Mayweather received from the Company. Likewise, investors would surely find it material that, despite Mayweather's statement suggesting that EMAX Tokens would become "just as large as Bitcoin some day," he thought so little of the supposed growth potential of EMAX Tokens that he explicitly refused to accept his promotional fee payments in EMAX Tokens. ¶¶90-91. These true facts would surely be of importance to an investor's "'choice of action in the transaction in question.'" *Id.*, at *5.

With respect to causation, the Complaint plainly alleges that the "Executive Defendants' activities with the Promoter Defendants caused Plaintiffs and the Class members to purchase and/or hold the EMAX Tokens when they otherwise would not have done so." ¶¶134-135. In any event, Defendant Mayweather's arguments are inapplicable to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim brought by Plaintiffs Nahlah, Freeman, Brignol, and Puda. As Florida courts have long held: "A party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue." *Davis v. Powertel, Inc.*, 776 So. 2d 971, 973 (Fla. Dist. Ct. App. 2000); *see Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 F. App'x 565, 567 (11th Cir. 2009) (citing *State, Off. of Att'y Gen. v. Com. Com. Leasing, LLC*, 946 So. 2d 1253, 1258 (Fla. Dist. Ct. App. 2007)) ("[T]he FDUTPA does not require a plaintiff to prove actual reliance on the alleged conduct.").[3]

With respect to the Consumers Legal Remedies Act ("CLRA"), Defendant Mayweather promoted EMAX Tokens as a virtual currency that could be used for

---

[3] Plaintiffs acknowledge that the Complaint does not contain allegations regarding the other Plaintiffs' actual reliance on specific misrepresentations and omissions by Defendant Mayweather as required by the New York (GBL) and New Jersey (NJCFA) consumer protection statutes. This can be easily remedied should the Court decide to dismiss these claims with leave to amend.

exclusive services on Mayweather's Fight Website. Courts in this district have found that "virtual currency may be a 'service' under the CLRA." *Doe v. Roblox Corp.*, No. 3:21-CV-03943-WHO, 2022 WL 1459568, at *11-*12 (N.D. Cal. May 9, 2022); *C.W. v. Epic Games, Inc.*, No. 19-CV-03629-YGR, 2020 WL 5257572, at *4 (N.D. Cal. Sept. 3, 2020) (refusing to credit argument that virtual currency at issue was not a service under the CLRA and denying dismissal on this ground). Indeed, Defendant Mayweather's Fight Website advertised that the EMAX Token could be used for purchasing exclusive Mayweather boxing memorabilia and tickets, and that all EthereumMax purchases on the Fight Website would "receive 10% discount at checkout." ¶84. By promoting engagement with the EMAX Token for things that are advertised as exclusive to the EMAX Token, the EMAX Tokens are thus subject to the CLRA. *Roblox*, 2022 WL 1459568, at *12 ("When a user purchases Robux (with real money), they are engaging in a transaction with Roblox to make use of a part of that entertainment service.").

### C. Plaintiffs' Remaining Claims Are Alleged with Sufficient Particularity

The arguments that Mayweather now proffers for dismissal of the aiding and abetting, conspiracy, and RICO claims all rise and fall on whether any of the alleged misleading statements or conduct by Mayweather are actionable. *See* ECF No. 80 at 3. For the reasons stated above and in Plaintiffs' omnibus opposition brief (ECF No. 75), Plaintiffs have adequately alleged misleading statements and conduct by Defendant Mayweather. Because Defendant Mayweather does not challenge that any of the other elements for these claims have been insufficiently pled, this Court should allow these claims to proceed to discovery. *See generally FDIC v. Garner*, 126 F.3d 1138, 1145 (9th Cir. 1997) (claim waived when no case law or argument in support is presented).

## V. CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court deny Defendant Mayweather's Motion to Dismiss.[4]

Dated: October 17, 2022

Respectfully submitted,

*/s/ John T. Jasnoch*
John T. Jasnoch (CA 281605)
jjasnoch@scott-scott.com
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile: 619-236-0508

*Attorney for Lead Plaintiff And the Proposed Class*

---

[4] Although Plaintiffs believe that the Complaint sufficiently alleges claims against Defendant Mayweather, if this Court were to find otherwise, Plaintiffs request leave to amend their Complaint to cure any deficiencies as Plaintiffs have not yet had the benefit of a court ruling addressing the sufficiency of their allegations.

**CERTIFICATE OF SERVICE**

I, John T. Jasnoch, hereby certify that on October 17, 2022, I caused the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

Executed on October 17, 2022, at San Diego, California.

*/s/ John T. Jasnoch*
John T. Jasnoch