UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 22-00163-MWF (SKx)                **Date:** December 6, 2022
**Title:**        In Re Ethereummax Investor Litigation

Present:   The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

Deputy Clerk:                        Court Reporter:
Rita Sanchez                         Not Reported

Attorneys Present for Plaintiff:     Attorneys Present for Defendant:
None Present                         None Present

**Proceedings (In Chambers):**        ORDER RE: DEFENDANTS' OMNIBUS
                                      MOTION TO DISMISS AND THE
                                      INDIVIDUAL DEFENDANTS' MOTIONS TO
                                      DISMISS [65, 66, 67, 68, 69, 80]

This action demonstrates that just about anyone with the technical skills and/or connections can mint a new currency and create their own digital market overnight. Likewise, the action emphasizes the power of social media in allowing celebrities to directly communicate with their millions of fans with a touch of a button. These two facts, together, have seemingly allowed unvetted and highly volatile investment ventures to go viral based solely on the paid-for word of celebrity promoters. Losses have inevitably followed. The Court acknowledges that this action raises legitimate concerns over celebrities' ability to readily persuade millions of undiscerning followers to buy snake oil with unprecedented ease and reach. But, while the law certainly places limits on those advertisers, it also expects investors to act reasonably before basing their bets on the zeitgeist of the moment.

Regardless of the broader concerns the CCAC may (or may not) ultimately raise, the Court's holdings turn on the fact that the allegations, as currently pled, are insufficient to state a claim for relief, particularly given the heightened pleading standards for claims grounded in fraud.

Before the Court are six motions:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  December 6, 2022
Title:        In Re Ethereummax Investor Litigation

- The Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint (the "CCAC"), filed by Defendants Russell Davis, Steven Gentile, Kimberly Kardashian, Justin Maher, Giovanni Perone, Paul Pierce, and Floyd Mayweather, Jr. (collectively, "Defendants") on July 29, 2022 (the "Omnibus Motion").  (Docket No. 65).  Plaintiffs filed an Opposition on September 16, 2022 (the "Omnibus Opposition").  (Docket No. 75).  Defendants filed a Reply on October 14, 2022 (the "Omnibus Reply").  (Docket No. 86).

- The Motion to Dismiss the CCAC filed individually by Defendant Perone on July 29, 2022 (the "Perone Motion").  (Docket No. 66).  Plaintiffs filed an Opposition on September 16, 2022 (the "Perone Opposition").  (Docket No. 78).  Defendant filed a Reply on October 14, 2022 (the "Perone Reply").  (Docket No. 88).

- The Motion to Dismiss the CCAC filed individually by Defendant Gentile on July 29, 2022 (the "Gentile Motion").  (Docket No. 67).  Plaintiffs filed an Opposition on September 16, 2022 (the "Gentile Opposition").  (Docket No. 76).  Defendant filed a Reply on October 14, 2022 (the "Gentile Reply").  (Docket No. 87).

- The Motion to Dismiss the CCAC filed individually by Defendant Kardashian on July 29, 2022 (the "Kardashian Motion").  (Docket No. 68).  Plaintiffs filed an Opposition on September 16, 2022 (the "Kardashian Opposition").  (Docket No. 77).  Plaintiffs also filed a Request for Judicial Notice ("RJN") on October 5, 2022.  (Docket No. 85).  Defendant filed a Reply and Objections to Plaintiffs' RJN on October 14, 2022 (the "Kardashian Reply" and "RJN Objections").  (Docket Nos. 89 and 90).  Plaintiffs filed a Reply in support of their RJN on October 24, 2022 (the "RJN Reply").  (Docket No. 94).

- The Motion to Dismiss the CCAC filed individually by Defendant Pierce on July 29, 2022 (the "Pierce Motion").  (Docket No. 69).  Plaintiffs filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

Case No.  CV 22-00163-MWF (SKx)                    Date:  December 6, 2022
Title:       In Re Ethereummax Investor Litigation

an Opposition on September 16, 2022 (the "Pierce Opposition").  (Docket
No. 79).  Defendant filed a Reply on October 14, 2022 (the "Pierce
Reply").  (Docket No. 91).  Defendant Pierce also filed an unopposed RJN
concurrently with his Motion.  (Docket No. 70).

- The Motion to Dismiss the CCAC filed individually by Defendant
  Mayweather on September 26, 2022 (the "Mayweather Motion").  (Docket
  No. 80).  Plaintiffs filed an Opposition on October 17, 2022 (the
  "Mayweather Opposition").  (Docket No. 92).  Defendant filed a Reply on
  October 24, 2022 (the "Mayweather Reply").  (Docket No. 93).
  Defendant Mayweather also filed an unopposed RJN concurrently with his
  Motion.  (Docket No. 81).

     The Court has read and considered the papers on the Motions and held a hearing
on November 7, 2022.  In sum, the Omnibus Motion is **GRANTED** *in full* and the
individual Defendants' Motions are **DENIED** *as moot*, with the exception that the
Court decided the personal jurisdiction issues raised in certain individual Defendants'
Motions.  Specifically, the Court rules as follows:

- The Gentile Motion is **GRANTED** *without prejudice* because Plaintiff
  relied on bare allegations in the face of specific denials by Gentile that
  demonstrate that Gentile lacks sufficient minimum contacts with
  California for the Court to exercise specific personal jurisdiction over him.

- The Perone Motion is **DENIED** to the extent it seeks dismissal based on
  lack of personal jurisdiction because, assuming Plaintiffs' uncontroverted
  facts to be true, Perone purposefully directed his activities towards
  California.

- The Kardashian Motion is **DENIED** to the extent it seeks dismissal as to
  the non-California state law claims based on want of personal jurisdiction
  because Kardashian, domiciled in California, is subject to this Court's all-
  purpose general jurisdiction.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                Date:  December 6, 2022
Title:       In Re Ethereummax Investor Litigation

- The Omnibus Motion is **GRANTED** *with leave to amend* as to the RICO claim because Plaintiffs lack standing and fail to plausibly allege a RICO enterprise.

- The Omnibus Motion is **GRANTED** *without leave to amend* to the extent it seeks to dismiss claims brought under state laws by Plaintiffs that do not reside in the respective state due to those Plaintiffs' lack of standing.

- The Omnibus Motion is **GRANTED** *without leave to amend* the Consumer Legal Remedies Act claim because that Act is inapplicable to the sale of intangible goods such as cryptocurrency, and therefore, granting leave to amend would be futile.

- The Omnibus Motion is **GRANTED** *with leave to amend* as to each of the other state consumer protection statutory claims because Plaintiffs fail to adequately plead actual reliance and/or causation.

- The Omnibus Motion is **GRANTED** *with leave to amend* as to the aiding and abetting claim against the Promoter Defendants because the CCAC fails to adequately plead that the Promoter Defendants had actual knowledge of a scheme to defraud EMAX investors.

- The Omnibus Motion is **GRANTED** *with leave to amend* as to the conspiracy claim because the CCAC fails to adequately plead that Defendants ever reached an agreement to defraud EMAX investors or that each Defendant had knowledge of such a scheme.

- The Omnibus Motion is **GRANTED** *with leave to amend* as to the unjust enrichment claim because Plaintiffs have failed to allege that they lack adequate remedies at law.

- The individual Defendants' Motions are **DENIED** *as moot* to the extent they raise arguments that the Court does not reach herein.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)              Date:  December 6, 2022
Title:       In Re Ethereummax Investor Litigation

- The RJNs are **DENIED** *as moot* as the Court did not rely on them to determine its rulings.

## I.    **BACKGROUND**

Below the Court summarizes the allegations in the CCAC, assuming them to be true, for the purpose of deciding these Motions.

EthereumMax ("EMAX") is a cryptocurrency project centered around the EthereumMax tokens ("EMAX Tokens"), a blockchain-based digital asset.  (CCAC ¶¶ 31-32).  EMAX Tokens function like other digital cryptocurrencies; they can be traded, spent, or otherwise transacted between token holders.  (*Id.* ¶ 32).  The EMAX Token launched on May 14, 2022, with a transaction volume of $16.11 million and a price of $0.00000005875 per EMAX Token.  (*Id.* ¶ 40).  At the time of launch, the EMAX Tokens were not sold pursuant to a "whitepaper."  (*Id.* ¶ 41).  Whitepapers in cryptocurrency are documents released by the founders of the project that gives investors technical information about its concept, and a roadmap for how it plans to grow and succeed.  (*Id.* ¶ 42).  Subsequently, however, EMAX did release a whitepaper in October 2021, which explained the business model for EMAX.  (*Id.* ¶ 43).  Plaintiffs allege that the whitepaper reveals that EMAX's "entire business model relies on using constant marketing and promotional activities, often from 'trusted' celebrities, to dupe potential investors into trusting the financial opportunities available with EMAX Tokens."  (*Id.* ¶ 45).

The CCAC refers to Defendants Justin Maher, Steve Gentile, Mike Speer, Justin French, and Giovani Perone as the "Executive Defendants," alleging that these individuals are the co-founders of, or at least consultants for, EMAX.  (*See id.* ¶¶15-19).  The CCAC refers to Kim Kardashian, Floyd Mayweather, Jr., Paul Pierce, Russell Davis, and Antonio Brown as the "Promoter Defendants," who allegedly conspired with the Executive Defendants to artificially inflate the price of the EMAX Tokens. (*Id.* ¶¶ 2, 4).  The nine named Plaintiffs bring a putative class action against Corporate Defendant X (the "corporate entity" behind EMAX that is "currently unknown to Plaintiffs"), the Executive Defendants, and the Promoter Defendants.  (*Id.* ¶¶ 15-26).  Plaintiffs allege that they purchased EMAX Tokens between May 14, 2021, and June

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  December 6, 2022
Title:        In Re Ethereummax Investor Litigation

27, 2021 (the "Relevant Period") and suffered damages as a result.  (CCAC ¶ 5).  Each Plaintiff alleges that they purchased the EMAX Tokens after viewing "numerous celebrity endorsements" and that they would not have purchased and/or retained the EMAX Tokens (or at least not at the price they paid) but for the Defendants' alleged misrepresentations and/or omissions.  (*Id.* 6-14, 135, 141, 151, 224, 230).

The EMAX Token price has fluctuated since its launch, with price hikes often coinciding with celebrity endorsements.  (*Id.* ¶ 112).  The Court briefly references the various statements made by the moving Promoter Defendants as referenced by the CCAC:

*Mayweather*:  Plaintiffs allege that on or around May 26, 2021, through a partnership with Executive Defendants, Mayweather encouraged individuals to purchase tickets to see the pay-per-view boxing event between Mayweather and Logan Paul using EMAX Tokens by offering various incentives for such purchases, such as signed Mayweather paraphernalia.  Plaintiffs also allege that EMAX released two press releases associating EMAX with Mayweather and the fight.  (*Id.* ¶¶ 83-85).  Further, Mayweather allegedly wore a t-shirt with "EthereumMax emblazoned across the chest" when he attended a Bitcoin conference in Miami.  At the conference, during a panel discussion, he stated:  "I believe there's gonna be another cryptocurrency just as large as Bitcoin someday."  (*Id.* ¶ 90).

*Kardashian*:  Plaintiffs allege that Kardashian made two social media posts that promoted EMAX.  The Court has reposted the alleged endorsements below.  The first post (on the left) was posted to Kardashian's Instagram on May 30, 2021, and the second post (on the right) was posted to Kardashian's Instagram on June 14, 2021.  (*Id.* ¶¶ 87, 97).  Plaintiffs note that the first post does not state it is an advertisement, but that the second post does include a "#AD" disclaimer at the bottom right.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  December 6, 2022
Title:      In Re Ethereummax Investor Litigation

 

*Pierce*:  Plaintiffs allege that Pierce promoted EMAX on Twitter on four occasions (on May 26, 2022, May 28, 2022, May 30, 2022, and June 6, 2022).  (*Id.* ¶¶ 51-69) (describing Pierce's posts and coinciding EMAX trading activity).  The four relevant posts are pasted below in chronological order.



UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                Date:  December 6, 2022
Title:        In Re Ethereummax Investor Litigation





UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.**  CV 22-00163-MWF (SKx)                 **Date:  December 6, 2022**
**Title:**         In Re Ethereummax Investor Litigation



Plaintiffs also include in the CCAC the below chart, originally published in the *London Financial Times*, demonstrating the rise and fall of the EMAX Tokens' price in connection with the Promoter Defendants' endorsements:



(*Id.*)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 22-00163-MWF (SKx)                    Date:  December 6, 2022**
**Title:        In Re Ethereummax Investor Litigation**

As the above chart tends to demonstrate, by May 30, 2022, EMAX had a transaction volume of over $100 million, up 632% in just two weeks after its launch. (*Id.* ¶ 108).  EMAX Tokens reached their maximum price of $0.000000863 on May 29, 2022.  (*Id.*).  However, the price of EMAX Tokens began to deflate immediately after Kardashian's second post.  (*Id.* ¶ 109).  The day after her post, the price of the EMAX Token hit its all-time low: $0.000000017 per unit, a 98% drop from which it has not been able to recover.  (*Id.*).

Plaintiffs emphasize the impact of Kardashian's Instagram post on June 14, 2021, in particular.  Plaintiffs refer to a survey conducted by Morning Consult, a financial services company, which analyzed "the impact of celebrities on crypto investor decisions," and, in particular, the impact of Kardashian's EthereumMax post. (*Id.* ¶ 99).  The survey found that up to 21% of all American adults and nearly half of all cryptocurrency owners had seen Kardashian's second post.  Furthermore, it found that 19% of respondents who said they heard about the post invested in EMAX as a result.  (*Id.* ¶ 99).

The gravamen of the CCAC is that the Executive Defendants conspired (and continue to conspire) with the Promoter Defendants in an ongoing scheme to use celebrity endorsements to periodically pump up the trading volume and price of the EMAX Token to provide exit liquidity for Defendants (i.e., a classic "pump and dump" scheme).  (*See, e.g., id.* ¶ 65).

Plaintiffs allege that at least three primary facts evince such a scheme; (1) the Executive Defendants did not lock their wallets, which allowed those Defendants to immediately sell off their EMAX Tokens when the price hiked, without restriction (*see id.* ¶¶ 96, 110); (2) the Executive Defendants intentionally concealed their identities and failed to disclose their ownership interests in the EMAX Tokens to avoid scrutiny of their sales (*see id.* ¶ 161); and (3) at least some of the Promoter Defendants, such as Pierce, Brown, and Davis, were paid for their endorsements with EMAX Tokens, giving those Defendants a direct financial stake in the price of the EMAX Tokens (*see id.* ¶¶ 66, 68).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  December 6, 2022
Title:        In Re Ethereummax Investor Litigation

However, even viewing the facts in the light most favorable to Plaintiffs, the Court must note some of the CCAC's contrary allegations.  For instance, Plaintiffs allege that certain Executive Defendants did reveal themselves as the EMAX founders in YouTube videos and Defendant Perone specifically told the public that the Executive Defendants had not yet locked their wallets.  (*Id.* ¶¶ 93-96).  Furthermore, the Twitter posts by Pierce make clear to the public the fact that he had invested in the EMAX Tokens and had a financial interest in the price of the Tokens.  (*See e.g., id.* ¶ 51).

Further, Plaintiffs specifically allege that certain Promoter Defendants did not receive EMAX Tokens as compensation for their endorsements.  For example, Mayweather did ***not*** receive compensation for his endorsements in the form of EMAX Tokens.  (*Id.* ¶ 81) ("According to Maher, Mayweather's representatives refused payment in EMAX Tokens and instead received payment in Ethereum, which has significantly more price stability."); (*see also id.* ¶ 102) ("[I]t is unclear what the precise terms are of the financial compensation that Kardashian was given by the Executive Defendants, Kardashian routinely gets paid between $300,000 and $1 million for most promotional posts.").

Based on the above allegations, in addition to numerous other allegedly misleading statements made by the Executive Defendants, Plaintiffs assert ten claims for relief: (1) the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq. (all Defendants) (*id.* ¶¶ 131–136); (2) the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1770 (all Defendants) (*id.* ¶¶ 137–144); (3) aiding and abetting under California common law (all Promoter Defendants) (*id.* ¶¶ 145–152); (4) the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* (all Defendants) (*id.* ¶¶ 153–186); (5) common law conspiracy (all Defendants) (*id.* ¶¶ 187–191); (6) the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.* (against Kardashian) (*id.* ¶¶ 192–203); (7) the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Ch. 501, § 17200, Fla. Stat. Ann. (all Defendants) (*id.* ¶¶ 204–220); (8) the New York General Business Law ("N.Y. GBL"), Art. 22-A, § 349, *et seq.* (all Defendants); (9) the New Jersey Consumer Fraud Act ("N.J. CFA"), NJSA 56:8-1, *et seq.* (all Defendants)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  December 6, 2022
Title:      In Re Ethereummax Investor Litigation

(*id.* ¶¶ 227–232); and (10) California common law "unjust enrichment/restitution" (all Defendants) (*id.* ¶¶ 233–236).

## II.    LEGAL STANDARDS

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests . . . .'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In ruling on the Motion under Rule 12(b)(6), the Court follows *Twombly*, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and their Ninth Circuit progeny.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  The Court must disregard allegations that are legal conclusions, even when disguised as facts.  *See id.* at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014).  "Although 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable,' plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'" *Eclectic Properties*, 751 F.3d at 995 (quoting *Twombly*, 550 U.S. at 556–57) (internal citations omitted).

The Court must then determine whether, based on the allegations that remain and all reasonable inferences that may be drawn therefrom, the complaint alleges a plausible claim for relief.  *See Iqbal*, 556 U.S. at 679; *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011).  "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  December 6, 2022
Title:        In Re Ethereummax Investor Litigation

*Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).  Where the facts as pleaded in the complaint indicate that there are two alternative explanations, only one of which would result in liability, "plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible." *Eclectic Properties*, 751 F.3d at 996–97; *see also Somers*, 729 F.3d at 960.

Fraud-based claims are governed by Rule 9(b).  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (Rule 9(b) standard applies to California consumer protection claims, including under the CLRA and UCL).  "Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge[.]"  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal citations omitted).  Under Rule 9(b), fraud allegations must include the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citing *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)).  In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  *Vess*, 317 F.3d at 1106.  Such averments must be specific enough to "give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong."  *Id*.  (quoting *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

Whereas allegations concerning the circumstances of fraud must include the "who, what, when, where, and how of the misconduct charged," *Id.* (internal quotation marks and citations omitted), issues of "[m]alice intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 22-00163-MWF (SKx)                Date:  December 6, 2022
Title:       In Re Ethereummax Investor Litigation

### III.    DISCUSSION

Three of the individual Defendants (Gentile, Perone, and Kardashian) move to dismiss under Rule 12(b)(2) for lack of personal jurisdiction.  After setting forth the pertinent legal standards, the Court discusses each moving Defendant's arguments in turn.

### A.    Personal Jurisdiction

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction.  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015).  "Where, as here, [] [D]efendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss."  *Id.* (internal quotation marks and citations omitted).  While "conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor," courts "may not assume the truth of allegations in a pleading which are contradicted by affidavit."  *Id.*; *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977) (citing *Taylor v. Portland Paramount Corp.*, 383 F.2d 634, 639 (9th Cir. 1967).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over [non-resident defendants]."  *Daimler AG v. Bauman*, 134 S.Ct. 746, 753 (2014).  "California's long-arm statute," Cal. Civ. Proc. Code § 410.10, "allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution."  *Id.*  Because section 410.10 "is coextensive with federal due process requirements …, the jurisdictional analyses under state law and federal due process are the same."  *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014) (internal citation omitted).

There are two varieties of personal jurisdiction based on a defendant's contacts with the forum: general and specific.  General jurisdiction, which "permits a court to hear any and all claims against a defendant, whether or not the conduct at issue has any

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                  Date:  December 6, 2022
Title:        In Re Ethereummax Investor Litigation

connection to the forum," may only be exercised where a defendant's contacts with the forum are "continuous and systematic." *Ranza*, 793 F.3d at 1069-70 (internal quotation marks and citations omitted).  "Specific jurisdiction exists when a case 'aris[es] out of or relate[s] to the defendant's contacts with the forum.'" *Ranza*, 793 F.3d at 1068 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984)).  In order to be subject to a court's specific jurisdiction, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

The "purposeful direction" test applies to the first prong of the specific jurisdiction test, where, as here, plaintiffs primarily assert statutory and tort claims.  *See Baton v. Ledger SAS*, No. 21-CV-02470-EMC, 2021 WL 5226315, at *5 (N.D. Cal. Nov. 9, 2021).  Purposeful direction occurs where the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017).

### 1.  Defendant Gentile

Plaintiffs allege that Gentile is a resident and citizen of the State of Connecticut. (CCAC ¶ 16).  Plaintiffs do not argue that Gentile is subject to this Court's general jurisdiction, but rather, they argue he is subject to specific jurisdiction based on his purposeful direction towards the forum.  Specifically, Plaintiffs argue that Gentile purposefully directed the below activities towards California:

- Promoting in-person influencer events in Los Angeles;
- Promoting California business that accept EMAX;
- Engaging California-based ambassadors to promote EMAX;
- Issuing a misleading press release out of Los Angeles;
- Issuing the White Paper that was reviewed by legal counsel in Los Angeles; and
- Creating tokens that were sold to Plaintiffs in California and this District.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  December 6, 2022
Title:        In Re Ethereummax Investor Litigation

(Gentile Opp. at 6) (cleaned up).

Gentile submitted a declaration in support of his Motion regarding his contacts (or lack thereof) with California.  In response, Plaintiffs merely rely on their allegations in the CCAC, which Gentile directly contradicts in his declaration.  This is insufficient.  *See Ranza,* 793 F.3d at 1068 ("A plaintiff may not simply rest on the 'bare allegations of [the] complaint.') (internal citation omitted).

According to Gentile's declaration, Gentile is a resident and citizen of the State of Connecticut.  (Declaration of Stephen Gentile ("Gentile Decl.") ¶ 2).  He does not conduct business in California, does not derive any income in California, and has not set foot in California for at least four years.  (*Id.* ¶¶ 3-8).  Contrary to the allegations in the CCAC, Gentile explains that he is not a "founder" of EMAX — he did not know of the issuance of EMAX Tokens in advance and was not involved in the project launch.  (*Id*. ¶¶ 9-11).  Gentile testifies that he has never been an officer, director, or employee of any corporation that was or is involved in the EMAX project (*id.* ¶¶ 25-26); he never negotiated any EMAX Token promotions (*id.* ¶ 22); he never paid, arranged for the payment of, or even contacted any promoters or influencers (*id.* ¶¶ 22-23); he did not sell, distribute, gift, or otherwise transfer any EMAX Tokens during the Relevant Period (*id.* ¶ 13); and he did not send the EMAX whitepaper to any California law firm or entity (*id.* ¶¶ 11, 24-26).

Nonetheless, in their Gentile Opposition, Plaintiffs attempt to broadly attribute contacts to Gentile that in the CCAC are described as being the actions of the "Executive Defendants" as a group.  (*See e.g.*, Gentile Opp. at 3) ("Simply put, California, and this District in particular, is where much of the Executive Defendants' alleged misconduct emanated."); (*see also id.* at 8) ("[A]s part of his role as an executive with [EMAX], Gentile likely, on some level, approved the publication of the [] whitepaper.").  This line of argument is insufficient to confer personal jurisdiction over Gentile, particularly in the face of his specific denials in a declaration.

"Under the fiduciary shield doctrine, a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that

_____

**CIVIL MINUTES—GENERAL**                                                          **16**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                Date:  December 6, 2022
Title:       In Re Ethereummax Investor Litigation

forum to assert jurisdiction over the person." *Davis v. Metro Prod.*, 885 F.2d 515, 520
(9th Cir. 1989).  In other words, "[t]he fact that a corporation is subject to jurisdiction
in the forum state . . . does not necessarily confer jurisdiction over its individual
officers." *Sihler v. Fulfillment Lab, Inc.*, No. 3:20-CV-01528-H-MSB, 2020 WL
7226436, at *4 (S.D. Cal. Dec. 8, 2020) (citations omitted).  While "a court may assert
personal jurisdiction over an individual based upon 'the individual's control of, and
direct participation in the alleged activities' of the corporation," Gentile has ***explicitly
denied*** having any control over EMAX's activities.  *See Sihler*, 2020 WL 7226436, at
*5 (S.D. Cal. Dec. 8, 2020) (quoting *Wolf Designs, Inc. v. DHR & Co.*, 322 F. Supp. 2d
1065 (C.D. Cal. 2004)).

        However, Plaintiffs do allege two activities that Gentile specifically participated
in, and that Gentile does not specifically deny.  One of those activities is an alleged
social media post from September 2021 promoting EMAX events taking place in
California.  (CCAC ¶ 30).  However, Plaintiffs do not even attempt to explain how
their claims arise out of that activity, particularly given the fact that the September post
was published ***after*** what Plaintiffs themselves define as the Relevant Period (ending in
June 2021).  As such, the Court cannot conclude that Plaintiffs' claims arise out of that
single, attenuated contact with California.

        The second Gentile-specific activity alleged in the CCAC concerns a YouTube
video, in which Gentile appears and discusses EMAX.  (*Id.* ¶¶ 93-96).  Gentile testifies
that he neither uploaded the video nor created the account to which it was posted.
(Gentile Decl. ¶¶ 17-19).  Plaintiffs' Opposition is void of any explanation of how or
why appearing in a YouTube video amounts to "purposeful direction" aimed at
California.  Indeed, Plaintiffs fail entirely to address the contrary case law raised by
Defendant.  *See Werner v. Dowlatsingh*, 818 F. App'x 671, 672 (9th Cir. 2020)
("Dowlatsingh's 'suit related conduct'— allegedly displaying copyright protected
photos via videos uploaded to YouTube from Toronto — did not 'create a substantial
connection' with California") (internal citation omitted); *see also Cont'l Appliances,
Inc. v. Thomas*, No. C-12-1310 EMC, 2012 WL 3646887, at *3 (N.D. Cal. Aug. 23,
2012) (holding that Defendant's statements in a YouTube video did not establish

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  December 6, 2022
Title:        In Re Ethereummax Investor Litigation

specific jurisdiction since Defendant did not create the YouTube account used to post the video, nor did he actually post the video).

Additionally, Plaintiffs do not contend that personal jurisdiction can be established over Gentile pursuant to 18 U.S.C. § 1965(b), which provides for service of process upon RICO defendants residing outside the federal court's district when it is shown that 'the ends of justice' require it." *See Butcher's Union Loc. No. 498, United Food & Com. Workers v. SDC Inv., Inc.*, 788 F.2d 535, 538 (9th Cir. 1986).  As Gentile points out, "[p]laintiffs bear the burden of showing that [a] case is eligible to invoke the nationwide jurisdictional provisions of RICO." *Gutierrez v. Givens*, 989 F. Supp. 1033, 1038 (S.D. Cal. 1997).  This is "a high hurdle," requiring the plaintiff "to affirmatively show that no other district could exercise jurisdiction over all the alleged co-conspirators." *Rupert v. Bond*, 68 F. Supp. 3d 1142, 1162 (N.D. Cal. 2014). Because Plaintiffs have not even attempted to make this showing, the Court will not assess whether personal jurisdiction is proper pursuant to the RICO service provisions.

Accordingly, because the Court lacks personal jurisdiction over Gentile, his Motion is **GRANTED**, and the claims against Gentile in the CCAC are **DISMISSED** ***without prejudice***.

Further, Plaintiffs' request for jurisdictional discovery is **DENIED**.  *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) ("[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery....").

Finally, at the hearing, Plaintiffs' counsel suggested that leave to amend should be granted on this issue.  However, Plaintiffs had every opportunity to support their Gentile Opposition with additional facts via declarations or any other documentary evidence.  They failed to do so.  Therefore, the Court will not grant leave to amend.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  December 6, 2022
Title:        In Re Ethereummax Investor Litigation

## 2. Defendant Perone

Defendant Perone, another Executive Defendant, also moves to dismiss for lack of personal jurisdiction.  The CCAC alleges that Perone is a Florida resident, and the Perone Opposition makes clear that Plaintiffs only rely on specific, not general, personal jurisdiction.  (*See* CCAC ¶ 17; Perone Opp. at 8-10).  Unlike Gentile, Perone did not submit a declaration in support of his Motion, and therefore, the Court will assume the truth of the allegations in the CCAC.  *See Ranza*, 793 F.3d at 1068 (on a motion to dismiss for lack of personal jurisdiction, "uncontroverted allegations must be taken as true.").

Plaintiffs make nearly identical arguments in the Gentile and Perone Oppositions.  On the one hand, Plaintiffs' failure to differentiate the Executive Defendants' actions highlights their improper attempt to establish personal jurisdiction over each individual Defendant through group pleading.  On the other hand, Perone does not make a good-faith effort to rebut Plaintiffs' arguments regarding personal jurisdiction.  Perone did not submit a declaration in support of his Motion, devoted merely two paragraphs to the issue in his Motion, and then failed entirely to address the issue in his Reply brief.  Though the Court will not view the failure to respond to Plaintiffs' arguments regarding personal jurisdiction in the Reply as "consenting" to jurisdiction, the Court will deem the lack of a rebuttal as a concession that Plaintiffs' arguments are persuasive.  *See Conden v. Royal Caribbean Cruises Ltd.*, CASE NO. 20-22956-CIV-ALTONAGA/Goodman, 2021 WL 4973533, *7 (S.D. Fla. June 21, 2021) ("The Court finds Scootaround's failure to meaningfully respond to Plaintiff's counterarguments is a concession by Scootaround of the arguments' persuasiveness and that issues of fact remain.") (citing *Nguyen v. Nissan N. Am., Inc.*, 487 F. Supp. 3d 845, 857 (N.D. Cal. 2020) (concluding that the party's failure to address counterarguments in reply constituted abandonment of position taken in initial brief). Therefore, even though Plaintiffs mostly rely on allegations of the "Executive Defendants" as a group to establish Perone's contacts with California, given Perone's failure to rebut those allegations, the Court will assume that Perone was indeed one of the Executive Defendants involved in or directing the California-related activities raised by Plaintiffs.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  December 6, 2022
Title:       In Re Ethereummax Investor Litigation

Plaintiffs allege that Perone recruited and sent payments to California-based promoters, created the EMAX tokens that were sold into and marketed to California residents, directed the creation of the white paper via a California-based law firm, and directed the publishing of a press release from California.  (*See* CCAC ¶¶ 17, 20, 22, 45, 85 n.22, 93).  And unlike the Gentile Motion, the Perone Motion points out allegations that specifically connect Perone to certain California-based promoters.  For example, Plaintiffs point out that Kardashian's second Instagram post specifically mentions Perone with the hashtag "#GIOPEMAX."  (CCAC ¶ 97).  Plaintiffs argue that this hashtag makes it "reasonable to infer the Defendant Perone communicated with the California-based Defendant Kardashian in connection with her promotional posts." (Perone Opp. at 10).

Although on the thinnest of margins, given Perone dedicates no more than two paragraphs in his briefs to the issue and otherwise fails to rebut Plaintiffs' allegations, the Court concludes that Plaintiffs have satisfied their burden of establishing a prima facie case of specific personal jurisdiction.  *See Calder v. Jones*, 465 U.S. 783 (1984) (holding defendants were subject to specific jurisdiction in California where they authored or edited a news article that they knew would be circulated in California and would cause injury in California); *see also Taubler v. Giraud*, 655 F.2d 991, 994 (9th Cir. 1981) (defendants were subject to specific jurisdiction where they "knew and intended that their wines would be sold" in California and "actively promoted their product in California."

At the hearing, Perone's counsel did not contest the Court's tentative ruling on this issue.

Accordingly, Perone's Motion is **DENIED** to the extent it seeks dismissal based on lack of personal jurisdiction.

### 3.  Defendant Kardashian

The CCAC alleges, and Kardashian does not dispute, that Kardashian is domiciled in California.  (CCAC ¶ 20).  Yet, to this Court's surprise, Kardashian moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                Date:  December 6, 2022
Title:        In Re Ethereummax Investor Litigation

"The primary focus of [the] personal jurisdiction inquiry is the defendant's relationship to the **forum** State."  *See Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 137 S. Ct. 1773, 1779 (2017) (internal citations omitted) (emphasis added).  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile."  *Id.*  "A court with general jurisdiction may hear **any** claim against that defendant, even if all the incidents underlying the claim occurred in a different State."  *Id.* (emphasis in original).

Here, because Kardashian is domiciled in California, she is amenable to suit here regardless of the alleged claims.  Yet, Kardashian nonchalantly advances a novel (if not mistaken) theory of personal jurisdiction.  Kardashian argues that due process limits the exercise of jurisdiction over her as to the non-California Plaintiffs' state law claims. (Kardashian Motion at 4-5).  Specifically, Kardashian contends that because there are "no allegations that Kardashian had minimum contacts with the non-California Plaintiffs' states, she could not have had notice that she could be haled into court to defend against claims raised under those states' laws." (*Id.* at 5).  Surely, Kardashian's competent counsel is well aware that personal jurisdiction is concerned with **where** an action is brought and the convenience of the forum for the defendant; it has little (if anything) to do with **which laws** the action is based on.  Kardashian does not point this Court to a single case that has extended the concept of personal jurisdiction in such a manner.

Oddly enough, this fundamental distinction appears to be lost on Plaintiffs given Plaintiffs have blindly followed Kardashian into this line of reasoning.  Plaintiffs' Opposition brief on this issue is solely focused on establishing that Kardashian has sufficient contacts with the non-California states.  Indeed, Kardashian (through her counsel) claims victory in the fact that Plaintiffs "do not dispute that this requirement applies to their non-California claims." (Kardashian Reply at 1).  Nonetheless, given Kardashian's Motion raises a clear jurisdictional issue, the Court will rely on its own understanding of due process in declining Kardashian's invitation to drastically narrow the scope of general jurisdiction.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                     Date:  December 6, 2022
Title:        In Re Ethereummax Investor Litigation

While in *Bristol-Myers,* the Supreme Court undoubtedly assessed "the connection between the nonresidents' **claims** and the forum," that was in the context of ***specific jurisdiction***, where the Defendant was ***not*** domiciled in the forum where the action was brought.  *See id.* at 1782 (emphasis added).  Indeed, the Court expressly stated that its decision did "not prevent the California and out-of-state plaintiffs from joining together in a consolidated action in the States that have general jurisdiction over BMS."  *Id.* at 1783.  That is precisely what the California and out-of-state Plaintiffs have done in this action by bringing their class action claims in Kardashian's home state.  Further, the Supreme Court has also made clear that "the authority of a State to entertain the claims of nonresident class members is entirely different from its authority to exercise jurisdiction over an out-of-state defendant."  *Id.* (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 808-812 (1985)).

While some other doctrine may theoretically provide a basis for Kardashian to argue that the non-California laws do not apply to her (e.g., choice of law rules), the Court will not dismiss, as a matter of personal jurisdiction, certain claims based on the fact that they are brought under non-California state laws.  This Court has ***all-purpose*** jurisdiction over Kardashian, which allows it to hear ***any*** claim against her.  In short, personal jurisdiction concerns a court's authority to issue a binding judgment against a defendant, not the Court's (or a state legislature's) authority to apply non-forum state laws to forum-resident defendants.

At the hearing, Kardashian's counsel did not contest the Court's tentative ruling on this issue.

Therefore, Kardashian's Motion is **DENIED** to the extent it is based on want of personal jurisdiction.

### B.    Civil RICO Claim

A majority of the briefing in the Omnibus Motion is dedicated to Plaintiffs' RICO claim, so the Court addresses that claim first.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  December 6, 2022
Title:        In Re Ethereummax Investor Litigation
_____

To state a civil claim for a RICO violation under 18 U.S.C. § 1962(c), a plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866, 873 (9th Cir. 2010) (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc*., 473 U.S. 479, 496 (1985)). Additionally, to "have standing under § 1964(c), a civil RICO plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was 'by reason of' the RICO violation, which requires the plaintiff to establish proximate causation. *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (citing *Holmes v. Sec. Investor Prot. Corp.,* 503 U.S. 258, 268 (2008). A civil RICO plaintiff "can only recover to the extent that, he has been injured in his business or property." *Id.* at 975. Rule 9(b) applies to the fraudulent conduct relevant to the alleged common purpose of the enterprise and the alleged predicate acts, and thus requires a heightened showing of the circumstances of fraudulent acts. *See Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Rule 9(b) "does not allow a complaint to merely lump multiple defendants together," but requires plaintiffs to "differentiate" their allegations to "inform" each defendant separately of the allegations particular to that defendant's alleged participation in the fraud. *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007).

Defendants argue that Plaintiffs' RICO claim fails as to each and every element. Plaintiffs, of course, disagree.

As an initial matter, the Court notes that a cursory review of the case law concerning RICO claims and alleged "pump and dump" schemes quickly reveals an issue not briefed by the parties — the Private Securities Litigation Reform Act ("PSLRA") likely bars this claim. *See, e.g.*, *Davies v. GetFugu, Inc.*, No. CV 09-8724-GHK (RCX), 2010 WL 11597458, at *4 (C.D. Cal. Aug. 26, 2010) ("[T]he PSLRA bar has been applied to RICO claims based upon, in whole or in part, alleged 'pump and dump' schemes."); *Bald Eagle Area School Dist. v. Keystone Fin., Inc*., 189 F.3d 321, 327 (3d Cir. 1999) (citing legislative history and noting that the PSLRA was intended not simply "to eliminate securities fraud as a predicate offense in a civil RICO action, but also to prevent a plaintiff from pleading other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct

_____
CIVIL MINUTES—GENERAL                                        23

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                Date:  December 6, 2022
Title:        In Re Ethereummax Investor Litigation

that would have been actionable as securities fraud."); *Trachsel v. Buchholz*, No. C-08-02248-RMW, 2009 WL 86698, at *4 (N.D. Cal. Jan. 9, 2009) (same); *Javitch v. First Montauk Fin. Corp.,* 279 F. Supp. 2d 931, 943 (N.D. Ohio 2003) (same); *ITI Internet Servs., Inc. v. Solana Capital Partners, Inc.*, No. C05-2010Z, 2006 WL 1789029, at *8 (W.D. Wash. June 27, 2006) (holding the plaintiffs' RICO claims were fundamentally based on allegations in the nature of securities fraud claims where complaint referenced issuance of allegedly false press releases to increase the market value of the stock, and the alleged use of a "pump and dump" scheme that harmed unwary and misinformed investors); *see also Digilytic Int'l FZE v. Alchemy Fin., Inc.,* No. 20 CIV. 4650 (ER), 2022 WL 912965, at *11 (S.D.N.Y. Mar. 29, 2022) (collecting cases finding that cryptocurrency tokens are securities).

Because the issue was not briefed, however, the Court will not dismiss the RICO claim based solely on the PSLRA bar.  Nonetheless, the Court concludes that the claim must be dismissed for independent reasons.

## 1. Standing

Defendants argue that Plaintiffs' alleged injury is not an injury to property as required by RICO, but rather, is merely an injury to Plaintiffs' "expectancy interest." (Omnibus Mot. at 7).  Plaintiffs counter that because they allege that they overpaid for the EMAX Tokens at an artificially inflated price, they have sufficiently alleged a well-recognized property injury under RICO.  (Omnibus Opp. at 17).  The Court agrees with Defendants.

To successfully plead a RICO injury, plaintiffs must plausibly allege "a harm to a specific business or property interest."  *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) (en banc).  However, RICO does not provide a cause of action for all types of injury to property interests, but only for injuries resulting in "concrete financial loss." *Id.* at 898.  An out-of-pocket loss is sufficient, but not necessary, to satisfy this requirement.  *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2017 WL 4890594, at *5 (N.D. Cal. Oct. 30, 2017) (discussing Ninth Circuit cases).  The Ninth Circuit has stated that "[i]n the ordinary context of a commercial transaction, a consumer who has been overcharged can claim

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  December 6, 2022
Title:         In Re Ethereummax Investor Litigation

an injury to her property, based on a wrongful deprivation of her money." *Canyon Cty.*, 519 F.3d at 976.  On the other hand, the Ninth Circuit has explained that a "mere expectancy interest" is insufficient to confer RICO standing.  *Chaset v. Fleer/Skybox Int'l,* 300 F.3d 1083, 1087 (9th Cir. 2002).  The value of a plaintiff's purchase is determined at the time of the purchase.  *Id.*

As another district court has reasoned, the critical distinction between the cases finding a plaintiff has adequately pled an injury based on overpayment rather than an injury based on buyers' remorse seem to turn on whether the plaintiff has plausibly alleged that they paid more than the fair market value of the items they purchased.  *See In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 957 (N.D. Cal. 2018) (distinguishing several cases discussing the issue).

The Court concludes that Plaintiffs have failed to allege facts supporting the contention that they paid more than fair market value for the EMAX Tokens at the time of their purchase.  As Defendants point out, Plaintiffs do not dispute that they received the corresponding number of Tokens based on the Token's actual and real-time value at the time of purchase.  Indeed, if Plaintiffs had sold their Tokens immediately after purchasing them, they do not allege that they would have received less than what they paid.  Rather, it seems quite plausible, based on Plaintiffs' own allegations, that Plaintiffs could have received ***far more*** than what they paid for the Tokens had they sold them at the right time.  This inherent volatility in market price is precisely why Plaintiffs likely purchased the Tokens in the first place — for the chance to capitalize on the sharp upswings.  Plaintiffs cannot claim that they paid more than fair market value for the EMAX Tokens because the Tokens ***inherently have no value*** outside of what the market is willing to pay in real-time.

Although in their Opposition, Plaintiffs frame their injury of an "artificially high price," it is clear that the essence of Plaintiff's RICO claim is that the Tokens are ***now*** (months after purchasing them) worthless.  (*Compare* Omnibus Opp. at 18 *with* CCAC ¶ 109) ("Investors were left holding worthless [T]okens[.]").  In *Chaset*, the Ninth Circuit addressed whether purchasers of trading cards had suffered a RICO injury because they allegedly purchased packs of trading cards with the hope that the packs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                Date:  December 6, 2022
Title:         In Re Ethereummax Investor Litigation

would contain more valuable "insert" cards in addition to the "base" cards that typically were included in each pack.  300 F.3d at 1085–86.  The Ninth Circuit followed the Fifth Circuit and a New York district court in holding that plaintiffs had failed to state a RICO injury.  The court reasoned:

> At the time the plaintiffs purchased the package of cards, which is the time the value of the package should be determined, they received value—eight or ten cards, one of which might be an insert card—for what they paid as a purchase price. Their disappointment upon not finding an insert card in the package is not an injury to property.

*Id.* at 1087.

The Ninth Circuit found persuasive the reasoning of another court that held that the benefit of the bargain with such trading cards was "the chance itself" to win insert cards and given that chance was real, "having paid for it and received it, the card purchaser has not suffered any financial loss or RICO property injury."  *Id*. (citing *Major League Baseball Props., Inc. v. Price*, 105 F. Supp. 2d 46 (E.D.N.Y. 2000)).

Here too, the most apparent reason a consumer would purchase an inherently volatile and novel cryptocurrency (i.e., to effectively pay mainstream money for another, widely unaccepted, form of money) is because such a consumer hopes that one day those Tokens will be worth more than the price for which the consumer paid for them.  That chance – that the Token may increase in value – is real.  Certainly, based on Plaintiffs' own allegations, it appears that at least some people did sell their EMAX Tokens for a hefty profit, and perhaps, Plaintiffs may still do so in the future.  Plaintiffs' disappointment with the fact that they did not sell their Tokens before the market plummeted was an inherent risk of the bargain.  *See Green v. Aztar Corp.*, No. 02–C–3514, 2003 WL 22012205 (N.D. Ill. Aug. 22, 2003) ("When [the plaintiff] decided to gamble, he paid for (and received) the opportunity to win[;] [w]hen that chance did not pay off, it did not mean that he suffered a RICO property loss however.").  Plaintiffs' "disappointment at not winning [their] bets does not constitute an 'injury to property' sufficient to confer RICO standing."  *See id.*

CIVIL MINUTES—GENERAL                                                                26

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  December 6, 2022
Title:        In Re Ethereummax Investor Litigation

Therefore, the Court concludes that Plaintiffs lack standing to bring their RICO claim because, at bottom, their injury is nothing more than disappointment over what their EMAX Tokens are worth today — not what they were worth at the time of their purchase.

## 2.  RICO Enterprise

Even assuming Plaintiffs have standing, Plaintiffs fail to adequately allege a RICO enterprise.  Plaintiffs ask the Court to make huge leaps of logic to string together disconnected acts that when read together, supposedly evince a premeditated and well-orchestrated pump and dump scheme in violation of the federal RICO statute.  But a hodgepodge of conclusory and disparate allegations does not a RICO claim make.  The allegations more plausibly suggest that each Defendant (especially the Promoter Defendants) acted in furtherance of their own personal advantage, regardless of the interests of the alleged enterprise.

The RICO statute defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  "[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person' [which includes business entities under section 1961(3)]; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name."  *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001).  There must therefore be some "distinctness" between the "enterprise" and the individual defendants that are alleged to be the constituent parts of the enterprise.  *See id.* at 162-63.  Moreover, while the enterprise need not have a "separate structure," it must be alleged separately from the racketeering activities it allegedly engaged in, as the enterprise and the activity are "two separate things."  *Odom v. Microsoft Corp.*, 486 F.3d 543, 551 (9th Cir. 2007) (citing *U.S. v. Turkette*, 452 U.S.  576, 583 (1981)).

An associated-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct."  *U.S. v. Turkette*, 452 U.S.  576, 583 (1981).  "To establish the existence of such an enterprise, a plaintiff must provide

---

**CIVIL MINUTES—GENERAL**                                                    27

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  December 6, 2022
Title:        In Re Ethereummax Investor Litigation

both 'evidence of an ongoing organization, formal or informal,' and 'evidence that the various associates function as a continuing unit.'"  *Odom*, 486 F.3d at 552 (quoting *Turkette*, 452 U.S. at 583).  Moreover, RICO liability may only attach to those who "participate in the operation or management of the enterprise itself."  *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993).  Enterprise liability under the RICO statute "depends on showing that the defendants conducted or participated in the conduct of the '***enterprise's*** affairs,' not just their ***own*** affairs."  *Id.* (emphasis in original).  There are three requirements to plead an associated-in-fact enterprise: (1) a common purpose, (2) an ongoing organization, formal or informal, and (3) a continuing unit.  *Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007) (en banc).

EMAX, the company, is itself a literal enterprise.  But Plaintiffs cannot plead that the founders or creators of EMAX comprise their RICO association-in-fact because, to allege a RICO enterprise, the "enterprise" and the individual defendants that are alleged to be the constituent parts of the enterprise must be distinct.  *See Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003) ("That officers or employees of a corporation, in the course of their employment, associate to commit predicate acts does not establish an association-in-fact enterprise distinct from the corporation."); *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir.1989) ("If the defendant is a legal entity, the plaintiffs must do more than merely establish that the corporation, through its agents, committed the predicate acts in the conduct of its own business.").

In an effort to overcome the distinctness requirement, Plaintiffs have attempted to plead an association between the Executive Defendants and the Promoter Defendants.  Plaintiffs refer to this association as the "EMAX Token Enterprise." (CCAC ¶ 155).  But Plaintiffs fail to plausibly allege that any real enterprise existed between these two disparate groups of Defendants.

Most evidently, Plaintiffs have failed to allege a common purpose.  Plaintiffs allege that the Defendants "shar[ed] the common purpose of inflating the price and trading volume of EMAX Tokens in order to sell their respective portion of the Float for substantial profit."  (*Id.* ¶ 163).  Plaintiffs contend that each person joined in that common purpose "because each person made more money the higher the EMAX

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  December 6, 2022
Title:        In Re Ethereummax Investor Litigation

Token price rose and, as trading volume increased, the RICO Defendants would be able to sell off in the increased liquidity."  (Omnibus Opp. at 10) (citing CCAC ¶ 180).

But Plaintiffs wholly fail to address the contradictory allegations in the CCAC raised by Defendants.  As Defendants note, Plaintiffs concede that at least some of the Promoter Defendants were not paid with EMAX Tokens – and therefore, such Promoters had absolutely no stake in the price of EMAX Tokens as they would be paid a certain sum of money for their celebrity endorsement regardless of how the Tokens performed.

Specifically, the CCAC alleges that Mayweather, the Promoter Defendant who by far had the biggest impact on the price of EMAX Tokens, did not receive any EMAX Tokens in exchange for his alleged endorsements.  And even if some of the Promoter Defendants were paid in EMAX Tokens (*e.g.*, Defendant Pierce), Plaintiffs fail to explain how those Promoter Defendants' individual "pump and dumps" were in furtherance of the ***enterprise's*** affairs, as opposed to furthering the Promoter Defendants' own self-interest.  Likewise, Plaintiffs do not allege that all of the Executive Defendants actually sold off their EMAX Tokens.  (*See e.g*., Perone Mot. at 1) ("As to Mr. Perone, Plaintiffs allege a pump with no dump.").  Therefore, Plaintiffs do not plausibly suggest that the EMAX Token Enterprise collectively shared the common purpose of hiking up the price of EMAX to sell their "respective portion of the Float for substantial profit."  (*See* CCAC ¶ 163).

Rather, the Court tends to agree with Defendants' contention that the allegations "only demonstrate that the parties are associated in a manner directly related to their own primary business activities."  (Omnibus Mot. at 11) (citing *Shaw v. Nissan N. Am., Inc*., 220 F. Supp. 3d 1046, 1057 (C.D. Cal. 2016); *see also Gomez v. Guthy-Renker*, LLC, No. EDCV 14-01425 JGB (KKx), 2015 WL 4270042 at *8 (C.D. Cal. July 13, 2015) ("Courts have overwhelmingly rejected attempts to characterize routine commercial relationships as RICO enterprises.").  When faced with two possible explanations, only one of which can be true and only one of which results in liability, "plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation."  *Shaw v. Nissan N.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  December 6, 2022
Title:        In Re Ethereummax Investor Litigation

*Am., Inc.*, 220 F. Supp. 3d 1046, 1056 (C.D. Cal. 2016) (citing *In re Century Aluminum Co. Secs. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013)) (affirming dismissal because complaint established only a "possible" entitlement to relief). "Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible."  *See id.*

Here, the CCAC does not plausibly suggest that a RICO enterprise existed; but rather, the CCAC more plausibly suggests that each Defendant acted for his or her individual benefit.  *See e.g., In re Jamster Mktg. Litig.,* No. 05CV0819 JM (CAB), 2009 WL 1456632, at *5 (S.D. Cal. May 22, 2009) (finding RICO claims not adequately pleaded because, after Plaintiff's legal conclusions were set aside, all that remained was "conduct consistent with ordinary business conduct and an ordinary business purpose."); *Javitch v. Capwill,* 284 F.Supp.2d 848, 857 (N.D. Ohio 2003) ("An association based upon a business relationship does not constitute an enterprise under § 1962(c) as the enterprise must have an existence apart from its predicate acts in order to establish that the enterprise functioned as a continuing unit.").

Plaintiffs' citation to *Tan v. Quick Box, LLC*, No. 3:20-CV-01082-H-DEB, 2021 WL 1293862, at *17 (S.D. Cal. Apr. 7, 2021) only serves to underscore this deficiency. There, the court found that the plaintiff had adequately alleged an enterprise because Plaintiff "set forth numerous examples of instruments and conduct ***that plausibly ha[d] only a deceitful purpose*** and thus likely were not developed by accident or as part of routine business dealings."  *Id.* (emphasis added).  For instance, one of the defendants that was part of the enterprise was said to have provided a software that "spread[] consumer purchases across dozens of merchant accounts in order to prevent any one merchant account from being shut down due to excessive chargebacks and/or fraud claims."  *Id.* at *3.  There was both no obvious proper purpose for such software and use of such software by the other defendants necessitated the knowledge of the entire scheme.  *Id.* at *17.

By contrast, here, there is certainly a plausible non-deceitful purpose for a new venture to use celebrity endorsements to generate public interest.  Indeed, if the Court were to find an enterprise was sufficiently pled in this action, it is quite unsure where

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  December 6, 2022
Title:        In Re Ethereummax Investor Litigation

any sensible line could be drawn to distinguish lawful paid advertising from potentially criminal racketeering.  Further, unlike the defendants' use of an inherently nefarious software in *Quick Box*, the Promoter Defendants' provision of paid endorsements does not necessitate their knowledge of an underlying pump and dump scheme.  Though the Plaintiffs make the conclusory assertion in each of their individual Oppositions that the Promoter Defendants knew or were "grossly reckless in disregarding the fact that the EMAX Tokens had no value," (*see e.g.*, Kardashian Opp. at 1-2), Plaintiffs fail to illuminate for the Court why posting an endorsement necessitates knowledge of a pump and dump scheme.  Presumably, by stating the Promoters were at best "reckless," Plaintiffs are suggesting that the Promoters should have more sufficiently vetted the product before endorsing it.  While the Court does not disagree with that proposition (and perhaps such reckless endorsements will undermine their credibility going forward), a celebrity's self-interested recklessness does not evince a common scheme or purpose sufficient to establish a RICO claim.

In sum, the Court determines that the RICO claim is deficient because Plaintiffs lack standing and fail to plausibly allege a RICO enterprise.

At the hearing, the Court expressed skepticism that Plaintiffs could cure the standing deficiency given the Court's holding turns on a question of law.  However, unlike other rulings within this Order, to which Plaintiffs' counsel acknowledged that amendment would be futile, Plaintiffs' counsel insisted that the CCAC could be amended to cure the standing deficiency.  Although the Court is doubtful, the Court will give Plaintiffs one, and ***only one***, chance to amend the RICO claim to adequately allege standing and an enterprise.  Any future amended complaint and subsequent motion to dismiss should also address why the PSLRA is not a bar to the RICO claim.

Accordingly, the Omnibus Motion is **GRANTED *with leave to amend*** as to the RICO claim.

## C.   <u>Standing to Assert Claims Under Other States' Laws</u>

The CCAC avers that California law applies "to every member of the [putative] class regardless of where they reside." (CCAC ¶ 126).  Defendants argue that Plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  December 6, 2022
Title:        In Re Ethereummax Investor Litigation

do not have standing to assert claims from states in which they do not reside. (Omnibus Motion at 16-17) (citing *Drake v. Toyota Motor Corp.*, No. 2:20-cv-01421-SB-PLA, 2020 WL 7040125, at *3 (C.D. Cal. Nov. 23, 2020) (quoting *In re Carrier IQ, Inc.*,78 F. Supp. 3d 1051, 1075 (N.D. Cal. 2015); *see also Zakikhan v. Hyundai Motor Co.*, No. CV 20-01584-SB (JDEx), 2021 WL 4805454, at *6 (C.D. Cal. June 28, 2021) (rejecting plaintiffs' contention that the non-California Plaintiffs can show standing for California claims because their claims "emanate from California" as "too conclusory").

      In their Opposition, Plaintiffs fail entirely to address this argument.  Given Defendants' standing argument appears well supported with analogous case law, the Court will not independently assess the issue.  *See Shorter v. Los Angeles Unified Sch. Dist.*, No. CV 13-3198 ABC AJW, 2013 WL 6331204, at *5 (C.D. Cal. Dec. 4, 2013) (collecting cases holding that a plaintiff waived claims by failing to address arguments raised in the defendant's motion to dismiss).

      Accordingly, the Omnibus Motion is **GRANTED** ***without leave to amend***, to the extent it seeks to dismiss claims brought under state laws by named Plaintiffs that do not reside in the respective state.  At the hearing, Plaintiffs' counsel acknowledged that this holding turned on a question of law, and that amendment would be futile if the Court adhered to its tentative ruling.

## D.    Consumer Legal Remedies Act ("CLRA")

      The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of ***goods or services*** to any consumer."  Cal. Civ. Code § 1770(a).  The CLRA defines "goods" as "tangible chattels."  *See id.* § 1761(a); *Fairbanks v. Superior Ct.*, 46 Cal. 4th 56, 60, 92 Cal. Rptr. 3d 279 (2009).  The EMAX Tokens at issue here (i.e., cryptocurrency) cannot be described as anything but ***intangible*** goods, most akin to investment securities, and therefore, the CLRA does not apply to Plaintiffs' claim.  *Cf. Fairbanks*, 46 Cal. 4th at 65 (referring to investment securities as intangible goods to which the CLRA does not apply); *see also Suski v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                Date:  December 6, 2022
Title:        In Re Ethereummax Investor Litigation

*Marden-Kane, Inc.*, No. 21-CV-04539-SK, 2022 WL 3974259, at *7 (N.D. Cal. Aug. 31, 2022) (holding that cryptocurrency "is an intangible good outside the purview of the CLRA").

In their brief and at the hearing, Plaintiffs analogized this action to *Doe v. Roblox Corp.*, 2022 WL 1459568, at *11–12 (N.D. Cal. May 9, 2022).  There, the district court concluded that when the plaintiffs purchased "in-game currency" to be used within the defendant's video game, the plaintiffs were "engaging in a transaction" ***with the defendant*** "to make use of a part of that entertainment service," and therefore, the court held that the CLRA applied.  *Id.* at *11.  Here, Plaintiffs try to argue that their CLRA claim is viable because it does not concern the sale of an intangible good, but rather, involves the sale of a "service" because certain businesses have accepted EMAX Tokens as currency to purchase tickets for events and other goods.  (Omnibus Opp. at 27).  However, Plaintiffs are not suing the alleged businesses that have accepted EMAX Tokens as currency, they are suing the sellers and promoters of the ***EMAX Tokens themselves***.  In other words, this case undeniably involves the sale of intangible goods.

Moreover, the Court is not inclined to agree with the conclusion in *Roblox* that selling intangible goods for in-product game use amounts to a CLRA "service."  For "services" to be "in connection with" the sale of goods to qualify under the CLRA, the "goods" must themselves be covered by the CLRA.  *See Suski,* 2022 WL 3974259*, * 8 (citing *Meyer v. Cap. All. Grp.*, 2017 WL 5138316, at *6 (S.D. Cal. Nov. 6, 2017); *see also Reeves v. Niantic, Inc.*, No. 21-CV-05883-VC, 2022 WL 1769119, at *2 (N.D. Cal. May 31, 2022) (disagreeing with *Roblox* and noting "[p]erhaps the California Legislature should amend the CLRA to remove the word 'tangible' from the definition of 'goods' but reasoning that "until that happens, courts should not shoehorn transactions involving the purchase of intangible goods into the definition of 'services'").

Accordingly, the Omnibus Motion is **GRANTED** ***without leave to amend*** as to the CLRA claim because it is inapplicable to the sale of intangible goods such as cryptocurrency, and therefore, granting leave to amend would be futile.  At the hearing,

---

**CIVIL MINUTES—GENERAL**                                                    33

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  December 6, 2022
Title:      In Re Ethereummax Investor Litigation

Plaintiffs' counsel did not contest the Court's tentative view that this issue turned on a question of law that could not be cured through additional factual allegations.

## E.    Sufficiency of State Consumer Protection Statutory Claims

In addressing the claims brought under the consumer protection statutes in California, Florida, New York, and New Jersey, the Court notes as an initial matter, that although each state law claim is substantively governed by state law, Rule 9(b)'s heightened pleading standard applies to each of Plaintiffs' claims because they are grounded in fraud and have been brought in federal court.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (quoting *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003) ("'[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule.'"); *see also In re NJOY, Inc. Consumer Class Action Litig.*, No. CV 14-00428 MMM (RZx), 2014 WL 12586074, at *14–15 (C.D. Cal. Oct. 20, 2014) (finding Rule 9(b)'s heightened standards applied to Florida and New York claims); *Hodges v. Vitamin Shoppe, Inc.*, No. CIV.A. 13-3381 SRC, 2014 WL 200270, at *3 (D.N.J. Jan. 15, 2014) (applying Rule 9(b) to New Jersey's Consumer Fraud Act claim and noting the plaintiff must "inject precision or some measure of substantiation into a fraud allegation" to satisfy Rule 9(b)'s stringent pleading requirements).

Fatal to each of Plaintiffs' state statutory claims is the fact that Plaintiffs neither allege which statements they viewed nor precisely when each Plaintiff purchased EMAX Tokens.  Each of the state statutory claims require that Plaintiffs plead with specificity actual reliance or causation.  The elements of actual reliance and causation both necessarily demand that Plaintiffs plead actual exposure to the allegedly fraudulent statements to impose liability.

Instead, each Plaintiff broadly alleges that he or she "view[ed] numerous celebrity endorsements."  (CCAC ¶¶ 6-14).  This is insufficient.  For one, as Defendants point out, the CCAC refers to numerous other celebrities that promoted

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                     Date:  December 6, 2022
Title:        In Re Ethereummax Investor Litigation

EMAX but are not named as defendants, so Plaintiffs may have viewed (and relied on) those celebrities' endorsements rather than those of the named Promoter Defendants. (Omnibus Mot. at 18) (citing CCAC ¶ 82) (naming five non-party celebrity promoters). Further, some of Plaintiffs' allegations suggest that there is a fairly high probability that Plaintiffs *did not* see each of the statements that they allegedly relied on.  For example, Plaintiffs suggest that it is inescapable that Plaintiffs saw Kardashian's second post on June 14, 2021, and stake this allegation on the Morning Consult consumer survey that concluded that up to 21% of all U.S. adults viewed that post. (*See* Kardashian Opp. at 7-8).  But that same statistic inevitably reveals that 79% of U.S. adults *did not* view the post.  (*See* Kardashian Reply at 6).  In other words, the survey does not allow the Court to merely assume that Plaintiffs actually saw (and therefore relied on or were led to purchase EMAX Tokens as a result of) Kardashian's second post.

While Plaintiffs concede that they have failed to sufficiently allege actual reliance as required by New York's and New Jersey's consumer protection statutes, Plaintiffs insist that their California and Florida statutory claims are sufficiently pled because those laws do not require Plaintiffs to plead exposure to each of Defendants' statements.  (*Compare* Omnibus Opp. at 28 n.4 *with id.* at 24).  Plaintiffs are mistaken.

As for *California* law, to have standing to bring a UCL, FAL, or CLRA claim, "Plaintiffs must plead that they relied on the misleading materials."  *Bronson v. Johnson & Johnson, Inc.,* No. C 12–04184 CRB, 2013 WL 1629191, at *2 (N.D. Cal. Apr. 16, 2013); *see also Davidson v. Kimberly–Clark Corp.,* No. C 14–1783 PJH, 2014 WL 3919857, at *9 (N.D. Cal. Aug. 8, 2014) ("[T]o maintain a claim under the FAL and CLRA, as well as under any UCL claim premised on fraud or misrepresentation, a plaintiff must plead facts showing that she relied on the defendant's alleged misrepresentation."); *see also Cohen v. DIRECTV, Inc.,* 178 Cal. App. 4th 966, 979, 101 Cal. Rptr. 3d 37 (2009) ("[W]e do not understand the UCL to authorize an award for injunctive relief and/or restitution on behalf of a consumer who was never exposed in any way to an allegedly wrongful business practice.").  This requirement of actual reliance stems from the California voters' 2004 enactment of Proposition 64, which curtailed "the prior practice of filing suits on behalf of clients who have not used the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  December 6, 2022
Title:       In Re Ethereummax Investor Litigation

defendant's product or service, ***viewed the defendant's advertising***, or had any other business dealing with the defendant." *Hall v. Sea World Ent., Inc.*, No. 3:15-CV-660-CAB-RBB, 2015 WL 9659911, at *3 (S.D. Cal. Dec. 23, 2015) (citing *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 321, 120 Cal. Rptr. 3d 741 (2011)) (emphasis added).

Plaintiffs contend that "actual reliance is presumed (or at least inferred) when the misrepresentation is material."  (Omnibus Opp. at 24) (citing *See Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 919 (C.D. Cal. 2010); *see also In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 969 (S.D. Cal. 2012)).

The Court notes that both cases cited by Plaintiffs actually held that the plaintiffs had ***failed*** to sufficiently plead actual reliance.  Nonetheless, the cases that do suggest that reliance may be inferred when the statement or omission is material "do[] not stand for the proposition that a consumer who was never exposed to an alleged false or misleading advertising or promotional campaign is entitled to restitution."  *Sea World*, 2015 WL 9659911, at *3 (citing *Pfizer Inc. v. Superior Court*, 182 Cal. App. 4th 622, 632, 105 Cal. Rptr. 3d 795 (2010); *see also In re 5–hour ENERGY Mktg. & Sales Prac. Litig.*, No. MDL 13–2438 PSG PLAX, 2014 WL 5311272, at *16 (C.D. Cal. Sept. 4, 2014) ("The existence of a prolonged marketing and advertising strategy does not relieve Plaintiffs of the need to allege exposure to the marketing strategy and particular misrepresentations relied upon.") (citation omitted)).

The Court finds the discussion in *Sea World* particularly instructive.  There too, the class plaintiffs effectively conceded that the plaintiffs had not alleged reliance as to each plaintiff on particular statements but instead insisted that the Court could presume reliance based on materiality.  *Sea World*, 2015 WL 9659911, at *3.  The court extensively reviewed the relevant case law and concluded that while California appellate court cases do carve out a narrow exception to the requirement that a plaintiff plead with specificity the particular advertisements or statements relied upon, it only applies where a plaintiff pleads that they "viewed numerous statements and advertisements during a decades-long advertising campaign."  *Id.* at *4.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                Date:  December 6, 2022
Title:        In Re Ethereummax Investor Litigation

Here, Plaintiffs' allegations that they each "viewed numerous celebrity endorsements" over the span of almost two months (the Relevant Period extending from May 14, 2021, to June 27, 2021), are insufficient to rely on the "decades-long advertising campaign" exception to pleading actual reliance.  *See id.*  Indeed, the allegations themselves make clear that at least some of the Plaintiffs purchased their EMAX Tokens ***prior to*** certain of the statements they allegedly relied on.  For example, Plaintiffs repeatedly emphasize the impact of Kardashian's second post, which was published on June 14, 2021, but clearly Plaintiffs who purchased their EMAX Tokens on the front-end of the Relevant Period did not actually rely on her then non-existent post to make those purchases.  *See id.* at *5 ("If the named plaintiffs did not see (and could not have seen) the alleged false advertising before purchasing their tickets, the alleged misrepresentations could not have been 'an immediate cause' of the Plaintiffs' decision to make their purchase.").

And to plead actual reliance on omissions under California law, Plaintiff must allege that "had the omitted information been disclosed one would have been aware of it and behaved differently."  *See Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993).  Plaintiffs acknowledge the applicable standard but insist that they have satisfied it based on the following allegation in the CCAC: "The Executive Defendants' activities with the Promoter Defendants caused Plaintiffs and the Class members to purchase and/or hold the EMAX Tokens when they otherwise would not have done so."  (CCAC ¶¶ 134-35).  However, Plaintiffs fail to address the glaring hole in their argument – that nowhere in the CCAC do they plausibly allege that had each individual Defendant disclosed the allegedly omitted information, each Plaintiff ***would have been aware of it***.  Without allegations that each Plaintiff actually saw or heard the allegedly deceptive statements, Plaintiffs have not plausibly alleged that they would have been aware of the omitted information had it been disclosed.  *See Ehrlich*, 801 F. Supp. 2d 908, 920 (C.D. Cal. 2010) ("[T]he [c]ourt agrees with BMW that the FAC is devoid of allegations that Plaintiff would have plausibly been aware of the cracking defect before he purchased his MINI had BMW publicized this information."); *Sanchez v. Wal Mart Stores,* No. 06–CV–2573 JAM–KJM, 2009 WL 2971553, at *2–3, 2009 U.S. Dist. LEXIS 89057, at *6–7 (E.D. Cal. Sept. 11, 2009) (holding no materiality because, *inter alia,* plaintiff did not establish she would have been aware of any missing warning that might have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                Date:  December 6, 2022
Title:        In Re Ethereummax Investor Litigation

been placed on product).  Therefore, the Court concludes that the CCAC does not
sufficiently allege actual reliance under California law as to either the alleged
misrepresentations or omissions.

        Moreover, to the extent that Plaintiffs' UCL claim is based on the "unfair" or
"unlawful" prongs, the claim nonetheless fails.  Because Plaintiffs have not sufficiently
pled any other claim, the unlawful claim necessarily fails.  *Clay v. Pac. Bell Tel. Co.*,
639 F. App'x 420, 422 (9th Cir. 2016) (citing *Aleksick v. 7–Eleven, Inc.,* 205 Cal. App.
4th 1176, 1185, 140 Cal. Rptr. 3d 796 (2012) ("When a statutory claim fails, a
derivative UCL claim also fails.").  As for the "unfair" prong, the CCAC's single
sentence stating "Defendants' conduct is unfair under each of the[] tests" is wholly
insufficient.  (*See* CCAC ¶ 134).  While Plaintiffs attempt to establish this claim more
fully in their Omnibus Opposition, Plaintiffs may not amend their pleading through
their brief.  *See Hatter v. Dyer*, 154 F. Supp. 3d 940, 943 n.2 (C.D. Cal. 2015) (courts
cannot consider additional allegations in an opposition to a motion to dismiss).

        As for ***Florida*** law, Plaintiffs contend (in their briefs and again at the hearing)
that actual reliance is not a required element of a claim under the FDUTPA.  (Omnibus
Opp. at 28).  But as Defendants' correctly point out, under the FDUTPA, plaintiffs
must plead, with specificity, how the alleged misrepresentations or omissions ***caused***
their damages.  *See Helpling v. Rheem Mfg. Co.*, No. 1:15-CV-2247-WSD, 2016 WL
1222264, at *15 (N.D. Ga. Mar. 23, 2016) ("[C]ausation is a necessary element of the
FDUTPA claim, and causation must be direct, rather than remote or speculative.").
Here, Plaintiffs do not allege that members of the class "were exposed to the same
misrepresentations or any omissions, for example, through a long-term advertising
campaign or where the misrepresentations or nondisclosures were included (or would
have been included) on the product itself."  *See Just. v. Rheem Mfg. Co.*, 318 F.R.D.
687, 696–97 (S.D. Fla. 2016) (citing *McVicar v. Goodman Glob., Inc*., No. SA CV 13-
1223-DOC (RNBx), 2015 WL 4945730, at *11 (C.D. Cal. Aug. 20, 2015)).  Like in
*Rheem*, the Court finds this case is unlike those "involving, for instance, automobile
safety, where it is fair to assume that all of the purchasers of automobiles read some
marketing materials regarding the product."  *Id.* (internal citations omitted); *see also In
re NJOY, Inc. Consumer Class Action Litig.*, No. CV1400428MMMRZX, 2014 WL

---

**CIVIL MINUTES—GENERAL**                                          **38**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  December 6, 2022
Title:        In Re Ethereummax Investor Litigation

12586074, at *15 (C.D. Cal. Oct. 20, 2014) (dismissing the plaintiffs' consumer protection claims on behalf of putative Florida and New York classes because the plaintiffs had not alleged that they were exposed to the advertisements, and therefore, had not sufficiently pled causation).  But rather, here, Plaintiffs allege that various different Defendants made or failed to make very different statements that Plaintiffs allege were misleading for vastly different reasons.

Under Rule 9(b), Plaintiffs have not plausibly alleged that each of Defendants' statements caused their damages because, as noted, they have not alleged which statements Plaintiffs actually saw or heard, or even whether they made their purchases of EMAX Tokens prior to each of the alleged misrepresentations/omissions.

While the Omnibus Motion and the individual Defendants' Motions argue that the CCAC should be dismissed for the additional reason that each specific misrepresentation or omission was nonactionable puffery, accurate, or immaterial, the Court declines to reach those issues given the lack of allegations regarding reliance.  If Plaintiffs cannot amend the complaint to establish reliance, any ruling on the actionability of the alleged misrepresentations or omissions would merely be advisory.

In sum, given the lack of allegations surrounding which Plaintiff saw which advertisements, and when each Plaintiff purchased their EMAX Tokens, the CCAC fails to meet the heightened pleading standard under Rule 9(b).  For that reason alone, the Omnibus Motion is **GRANTED** *with leave to amend* as to the UCL, FAL, GBL, NJCFA, and FDUTPA claims.

## F.     Aiding and Abetting (Against Promoter Defendants)

Plaintiffs aiding and abetting common law claim against the Promoter Defendants fares no better than their statutory claims.  California recognizes liability for aiding and abetting an intentional tort where a defendant has knowledge of a specific primary wrong and provides substantial assistance in its completion.  *See Casey v. United States Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1145 (2005).  Because the aiding and abetting claim is grounded in fraud, the claim must meet the pleading requirements of Rule 9(b).  However, Rule 9(b) allows for general pleading of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  CV 22-00163-MWF (SKx)               **Date:  December 6, 2022**
**Title:**       In Re Ethereummax Investor Litigation

"[m]alice, intent, knowledge, and other conditions of a person's mind."  *See* Fed. R. Civ. P. 9(b).  Nonetheless, a plaintiff must still allege more than conclusory statements of knowledge.  *See Ashcroft*, 556 U.S. at 686-87; *Twombly*, 550 U.S. at 555.

In the Omnibus Opposition, Plaintiffs allege that the Promoter Defendants' knowledge can be "inferred by their repeated efforts to conceal their identities and wallet address information in order to effectuate the sale of the pre-mint EMAX Tokens without restriction or scrutiny."  (Omnibus Opp. at 32).  However, the CCAC consistently explains that it was the ***Executive Defendants***, not the Promoter Defendants, who concealed their identities.  (CCAC ¶ 162) ("[T]he Executive Defendants concealed the identities of the EthereumMax founders and insiders in order to escape detection and punishment for their participation in the EMAX Token Enterprise.").  In other words, Plaintiffs' argument is circular – they ask the Court to infer that the Promoter Defendants had knowledge of the Executive Defendants' activities by pointing to the Executive Defendants' activities.  Clearly, that logic makes no sense.

Moreover, the CCAC relies on an entirely different theory of knowledge.  To establish knowledge, the CCAC instead alleges that the "Promoter Defendants have previous knowledge and experience with making misleading promotional statements (with Mayweather having nearly an identical experience with a previous fraudulent cryptocurrency promotion), and, as such, knew or should have known that the marketing strategy employed by the Executive Defendants for the EMAX Tokens was unlawful, deceitful, fraudulent, and/or violated the terms of the California, Florida, and New York state statutes."  (CCAC ¶ 149).  However, "the actual knowledge standard [] require[s] more than a vague suspicion of wrongdoing."  *In re First All. Mortg. Co.*, 471 F.3d 977, 993 n. (9th Cir. 2006) (citing *Casey v. U.S. Bank Nat. Assn*., 127 Cal. App. 4th 1138, 1153, 26 Cal. Rptr. 3d 401, 412 (2005)).  In *Casey*, for example, trustee plaintiffs alleged that certain banks knew that fiduciary defendants were making "unauthorized cash withdrawals" in breach of their fiduciary duties and that the fiduciaries were "involved in a criminal or dishonest and wrongful enterprise and were, at the very least, laundering money."  *Casey*, 26 Cal. App. 4th at 1153-54.  But the California appellate court held that such a "kitchen sink" allegation was insufficient

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  December 6, 2022
Title:        In Re Ethereummax Investor Litigation

because it "failed to identify the primary wrong" and was "not otherwise supported by
the rest of the complaint."  *Id.* at 1153.  Here too, the very concession in the CCAC that
the Promoter Defendants at least ***"should have known"*** dooms Plaintiffs' claim
because the standard requires pleading ***actual*** knowledge of "the primary wrong."  (*See*
CCAC ¶ 149).

Accordingly, because the CCAC fails to adequately plead that the Promoter
Defendants had actual knowledge of a scheme to defraud EMAX investors, the
Omnibus Motion is **GRANTED** *with leave to amend* as to the aiding and abetting
claim.

## G.   Conspiracy

Plaintiffs' conspiracy claim fails for much of the same reasons that their RICO
and aiding and abetting claims fail.  Plaintiffs have not plausibly alleged that the
Defendants came to any mutual agreement to defraud investors.  Rather the allegations
are equally, if not more, consistent with allegations that Defendants were each acting in
their own self-interest.  *See Twombly*, 550 U.S. at 552 ("[P]laintiffs must allege
additional facts that "ten[d] to exclude independent self-interested conduct as an
explanation for defendants' parallel behavior.").

Again, Plaintiffs unpersuasively rely on their allegations regarding the alleged
concealment of the identity and ownership interests of the EMAX leadership team to
establish knowledge by each of the Defendants.  Plaintiffs cite to *United States v.
Moreland*, 622 F.3d 1147, 1169 (9th Cir. 2010) for the proposition that knowledge of a
conspiracy is sufficiently pled where there are allegations that defendants "worked with
individuals who took steps to hide their ill-gotten millions."  (*See* Omnibus Opp. at 30-
31).  This argument is feckless.

First off, *Moreland* — a criminal conspiracy case in which the defendant
appealed his conviction for conspiracy to commit money laundering under federal law
— says precisely nothing about the adequacy of a complaint alleging civil conspiracy
under California law.  And even if it did, the facts in *Moreland* only serve to
underscore the inadequacy of the facts alleged here.  There, the Ninth Circuit found

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  December 6, 2022
Title:        In Re Ethereummax Investor Litigation

that the "government introduced an overwhelming amount of evidence demonstrating Moreland's knowledge of the existence of the conspiracy" including, for example, that the defendant knew that co-conspirators were sending fraudulently obtained money to the defendant's offshore accounts, which the defendant then used to pay off other investors.  *Id.*  Therefore, the transfer of ill-gotten gains ***from one conspirator to Moreland***, which was then ***used by Moreland to further the fraud***, was of course sufficient to establish knowledge of the scheme.  *See id.*  By contrast, here, the CCAC merely alleges that certain of the Defendants hid their identities and ownership interests in EMAX from the public; unlike *Moreland*, the bare fact of concealment does not in any way connect one Defendant to any other Defendant.

Tellingly, essentially every other relevant case cited by Plaintiffs in their Opposition held that the complaint ***insufficiently pled conspiracy***.  *See Shubin v. Farinelli Fine Antiques Corp.,* No. C 15-01401 LB, 2015, WL 3464443, at *3 (N.D. Cal. May 29, 2015); *Shubin v. Farinelli Fine Antiques Corp.*, No. C 15-01401 LB, 2015 WL 3464443, at *3 (N.D. Cal. May 29, 2015); *Rocawear Licensing LLC v. Pacesetter Apparel Grp.*, No. CV 06-3093 CJC (CWx), 2007 WL 5289737, at *5 (C.D. Cal. Sept. 12, 2007).

At the hearing, Plaintiffs' counsel reiterated various different facts about various Defendants but none of those facts plausibly established that the Defendants had come to any mutual agreement.

Because the CCAC fails to adequately allege an agreement and/or knowledge by each of the Defendants, the Motion is **GRANTED** ***with leave to amend*** as to the claim for civil conspiracy.

## H.    Unjust Enrichment

Finally, the CCAC fails to adequately plead unjust enrichment.  Even without considering Defendants' arguments that the claim is duplicative of other claims, Plaintiffs have not even attempted to allege that equitable relief is warranted because they lack an adequate remedy at law.  *See Sonner v. Premier Nutrition Corp.*, 971 F.3d

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 22-00163-MWF (SKx)                    **Date:** **December 6, 2022**

Title:        In Re Ethereummax Investor Litigation

834, 844 (9th Cir. 2020); *Guthrie v. Transamerica Life Ins. Co*., 561 F. Supp. 3d 869, 875 (N.D. Cal. 2021) (collecting cases) ("[A] plaintiff must, at a minimum, plead that she lacks adequate remedies at law if she seeks equitable relief.").

Accordingly, the Omnibus Motion is **GRANTED** *with leave to amend* as to the unjust enrichment claim.

## IV.    **CONCLUSION**

In sum, Plaintiffs fail to sufficiently state a claim for relief and the Omnibus Motion is **GRANTED** *in full*, and *with leave to amend all claims except the CLRA claim*, which is **DISMISSED** *with prejudice*.

Additionally, all claims against Defendant Gentile are **DISMISSED** *without prejudice* as this court lacks personal jurisdiction over him.

Plaintiffs may file an amended complaint, if any, by no later than **December 22, 2022**.  Defendants must respond to any amended complaint by no later than **January 13, 2023**.

IT IS SO ORDERED.