COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
TRAVIS LEBLANC (251097)
(tleblanc@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone:  +1 415 693 2000
Facsimile:   +1 415 693 2222

MAX SLADEK DE LA CAL (324961)
(msladekdelacal@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, California 90401
Telephone:  +1 310 883 6527
Facsimile:   +1 310 883 6500

ROBBY L.R. SALDAÑA (admitted *pro hac vice*)
(rsaldana@cooley.com)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone:  +1 202 776 2109
Facsimile:   +1 202 842 7899

*Attorneys for Defendant Kim Kardashian*

[Counsel for moving Defendants listed
on signature pages]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| IN RE ETHEREUMMAX INVESTOR LITIGATION | Lead Case No. CV 22-163 MWF (SKx) |
| ——————————————————— | **DEFENDANTS' NOTICE OF MOTION AND OMNIBUS MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT'S STATE CONSUMER LAW AND COMMON LAW CLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES** |
| This Document Relates to: | |
| ALL ACTIONS. | |
| | Judge:   Hon. Michael W. Fitzgerald |
| | Date:    May 15, 2023 |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

2

3

4

5

Time:        10:00 a.m.
Place:       First Street Courthouse,
             Courtroom 5A

Complaint Filed:    January 7, 2022
Trial Date:         Not Scheduled

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFS.' OMNIBUS MOT. TO DISMISS STATE
CONSUMER LAW AND COMMON LAW CLAIMS
LEAD CASE NO. CV 22-163 MWF (SKx)

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 15, 2023, at 10:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of Honorable Michael W. Fitzgerald, United States District Judge, Central District of California, located at 350 West First Street, Los Angeles, California 90012, the undersigned Defendants EMAX Holdings, LLC, Kimberly Kardashian, Floyd Mayweather, Jr., Giovanni Perone, Paul Pierce, and Jona Rechnitz (the moving "Defendants"), will, and hereby do, move the Court for an order dismissing certain claims in Plaintiffs' Second Amended Class Action Complaint (ECF No. 102) (the "SAC").

This Motion is made pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6), and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings and evidence on file in this matter, oral argument of counsel, and such other materials and argument as may be presented in connection with the hearing of the Motion.

Pursuant to Civil Local Rule 7-3, on February 13, 2023, counsel for the parties met and conferred regarding this Motion.

**STATEMENT OF RELIEF REQUESTED**

Defendants request that the Court dismiss with prejudice Causes of Action Nos. 1, 2, 3, 4, 5, 6, 7, 9, and 13—the "State Consumer Law" and California common law claims in the SAC—pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6).

**ISSUES TO BE DECIDED**

Whether the State Consumer Law and California common law causes of action should be dismissed under Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6) due to Plaintiffs' failure to plead fraud, failure to plead standing for injunctive relief, and failure to state any claim upon which relief may be granted.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEFS.' OMNIBUS MOT. TO DISMISS STATE
CONSUMER LAW AND COMMON LAW CLAIMS
LEAD CASE NO. CV 22-163 MWF (SKx)

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

I.     INTRODUCTION ...................................................................................... 1

II.    RELEVANT BACKGROUND ................................................................. 2

    A.  The Court Dismisses Plaintiffs' Prior Complaint and Identifies Fundamental Flaws in the Complaint's Theory of Liability. .............. 2

    B.  Plaintiffs' Repackaged Complaint Concerning Alleged Investment Losses. ............................................................................ 3

        1.  Plaintiffs Drop RICO Claims and Add State Securities Claims. ........................................................................... 4

        2.  The SAC Adds a Named Plaintiff, Two Defendants, and a "Confidential Witness." ............................................. 4

        3.  The SAC Adds Irrelevant and Boilerplate Allegations. ............... 4

    C.  The State Consumer Law and California Common Law Claims. ........ 5

III.   LEGAL STANDARDS ............................................................................. 5

IV.    ARGUMENT ............................................................................................ 6

    A.  Plaintiffs' Claims Are Barred Because the State Consumer Laws Do Not Apply to Alleged Securities Transactions. ........................... 6

    B.  Plaintiffs Have Not Alleged that Defendants' Conduct Caused Cognizable Injury Under Any of the State Consumer Laws. ............. 7

        1.  Plaintiffs Cannot Plausibly Allege Injury from Purchasing Tokens at Allegedly Artificially Inflated Prices. ................ 8

        2.  Plaintiffs Cannot Allege Injury from Holding onto Tokens. ...... 9

        3.  Plaintiffs Cannot Plausibly Allege that Defendants Caused Alleged Diminutions in the Token's Value. ................. 10

    C.  The Alleged Misrepresentations and Omissions Are Not Actionable. ................................................................................. 12

        1.  The Alleged Misrepresentations Would Not Plausibly Mislead Reasonable Consumers. ................................... 13

        2.  The Alleged Omissions Are Not Actionable. ...................... 15

    D.  Plaintiffs Fail to State a Claim Under Any UCL Prong. ................. 19

        1.  Plaintiffs Fail to State an Unlawful Prong Claim. ................ 19

        2.  Plaintiffs Fail to State an Unfair Prong Claim. ................. 19

    E.  Plaintiffs Again Fail to State an Aiding and Abetting Claim. ............. 21

    F.  Plaintiffs' Repeated Failure to Allege Inadequate Legal Remedies Requires Dismissal of All Equitable Relief with Prejudice. ............ 22

    G.  Plaintiffs Fail to Plead Any Entitlement to Restitution. ................. 23

    H.  Plaintiffs Fail to Plead Any Entitlement to Injunctive Relief. ............ 24

    I.  Dismissal Should Be with Prejudice. ............................................ 25

V.     CONCLUSION ...................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Actimmune Mktg. Litig.*,
    No. C 08-02376 MHP, 2010 WL 3463491 (N.D. Cal. Sept. 1, 2010)...............11

*Apodaca v. Whirlpool Corp.*,
    No. SACV 13-00725 JVS, 2013 WL 6477821
    (C.D. Cal. Nov. 8, 2013) ...................................................................................15

*Arena Rest. & Lounge LLC v. S. Glazer's Wine & Spirits, LLC*,
    No. 17-CV-03805-LHK, 2018 WL 1805516
    (N.D. Cal. Apr. 16, 2018)..................................................................................19

*Batista v. Irwin Nats.*,
    No. CV 20-10737-DMG (EX), 2021 WL 6618543
    (C.D. Cal. Sept. 27, 2021) ...................................................................................6

*Blank v. TriPoint Global Equities, LLC*,
    338 F. Supp. 3d 194 (S.D.N.Y. 2019) ..................................................................6

*Bowen v. Ziasun Techs., Inc.*,
    116 Cal. App. 4th 777 (2004)...............................................................................6

*Camacho v. Auto. Club of S. California*,
    142 Cal. App. 4th 1394 (2006)...........................................................................20

*Campion v. Old Republic Home Prot. Co.*,
    861 F. Supp. 2d 1139 (S.D. Cal. 2012) ..............................................................24

*Carvalho v. Equifax Info. Servs., LLC*,
    629 F.3d 876 (9th Cir. 2010)..............................................................................25

*Casey v. Fla. Coastal Sch. of L., Inc.*,
    No. 3:14-CV-1229-J-39PDB, 2015 WL 10096084
    (M.D. Fla. Aug. 11, 2015) .................................................................................12

*Casey v. U.S. Bank Nat'l Ass'n*,
    127 Cal. App. 4th 1138 (2005)...........................................................................22

Cooley LLP
Attorneys at Law
San Francisco

iii

Defs.' Omnibus Mot. to Dismiss State
Consumer Law and Common Law Claims
Lead Case No. CV 22-163 MWF (SKx)

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Castillo v. Seagate Tech., LLC*,
No. 16-CV-01958-RS, 2016 WL 9280242
(N.D. Cal. Sept. 14, 2016) ................................................................. 25

*In re Caterpillar*,
2015 WL 4591236 .......................................................................... 9, 11

*In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*,
No. 1:14-CV-3722 ............................................................................... 9

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) ...................................................................... 19

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
631 F.3d 939 (9th Cir. 2011) ............................................................ 24

*City First Mortg. Corp. v. Barton*,
988 So. 2d 82 (Fla. 4th DCA 2008) .................................................... 7

*Clegg v. Cult Awareness Network*,
18 F.3d 752 (9th Cir. 1994) .............................................................. 21

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008) .......................................................... 12

*Colgan v. Leatherman Tool Grp., Inc.*,
135 Cal. App. 4th 663 (2006) ........................................................... 23

*Crowell v. Morgan, Stanley, Dean Witter Servs. Co.*,
87 F. Supp. 2d 1287 (S.D. Fla. 2000) .................................................. 6

*Daugherty v. Am. Honda Motor Co.*,
144 Cal. App. 4th 824 (2006) ........................................................... 18

*Diversified Mgmt. Solutions, Inc. v. Control Sys. Rsch., Inc.*,
No. 15-81062-CIV, 2016 WL 4256916 (S.D. Fla. May 16, 2016) .................... 10

*Downey Surgical Clinic, Inc. v. Ingenix, Inc.*,
No. CV 09-5457 PSG (CTX), 2013 WL 12114070
(C.D. Cal. Dec. 11, 2013) .............................................................. 15, 16

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

DEFS.' OMNIBUS MOT. TO DISMISS STATE
CONSUMER LAW AND COMMON LAW CLAIMS
LEAD CASE NO. CV 22-163 MWF (SKx)

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*Drum v. San Fernando Valley Bar Assn.*,

4

    182 Cal. App. 4th 247 (2010) ................................................................ 19, 20, 21

5

*Dugan v. TGI Fridays, Inc.*,

6

    231 N.J. 24 (2017) ................................................................................................ 18

7

*In re First All. Mortg. Co.*,

    471 F.3d 977 (9th Cir. 2006) ........................................................................ 22, 23

8

9

*Freeman v. Time, Inc.*,

    68 F.3d 285 (9th Cir. 1995) ................................................................................ 12

10

*Friedman v. AARP, Inc.*,

11

    No. 14-00034 DDP (PLA), 2019 WL 5683465

12

    (C.D. Cal. Nov. 1, 2019) ...................................................................................... 9

13

*Gardiner v. Walmart Inc.*,

14

    No. 20-CV-04618-JSW, 2021 WL 2520103

    (N.D. Cal. Mar. 5, 2021) .................................................................................... 19

15

*Glen Holly Ent., Inc. v. Tektronix, Inc.*,

16

    343 F.3d 1000 (9th Cir. 2003) ............................................................................ 14

17

*Hadley v. Kellogg Sales Co.*,

18

    243 F. Supp. 3d 1074 (N.D. Cal. 2017) .............................................................. 19

19

*Hartmann v. Cal. Dep't. of Corr. & Rehab.*,

20

    707 F.3d 1114 (9th Cir. 2013) ............................................................................ 25

21

*Harvey v. Bank of Am., N.A.*,

22

    906 F. Supp. 2d 982 (N.D. Cal. 2012) ................................................................ 21

23

*Hennegan Co. v. Arriola*,

    855 F. Supp. 2d 1354 (S.D. Fla. 2012) ................................................................. 7

24

25

*HRCC, Ltd. v. Hard Rock Café Int'l (USA), Inc.*,

    302 F. Supp. 3d 1319 (M.D. Fla. 2016) ............................................................. 10

26

*In re Hydroxycut Mktg. & Sales Pracs. Litig.*,

27

    299 F.R.D. 648 (S.D. Cal. 2014) ........................................................................ 22

28

v

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Izquierdo v. Mondelez Int'l, Inc.*,
No. 16-CV-04697 (CM), 2016 WL 6459832
(S.D.N.Y. Oct. 26, 2016) ................................................................. 7, 9

*Knuttel v. Omaze, Inc.*,
No. 2:21-CV-09034-SB-PVC, 2022 WL 1843138
(C.D. Cal. Feb. 22, 2022) .................................................................. 19

*Kwikset Corp. v. Superior Ct.*,
51 Cal. 4th 310 (2011) .................................................................... 7, 8

*Lee v. CarMax Auto Superstores California, LLC*,
No. CV137648MWFVBKX, 2013 WL 12473808
(C.D. Cal. Dec. 2, 2013) .................................................................. 20

*Lee v. First Union Nat'l Bank*,
199 N.J. 251 (2009) ....................................................................... 1, 6

*MacNaughten v. Young Living Essential Oils, LLC*,
575 F. Supp. 3d 315 (N.D.N.Y. 2021) ......................................... 14, 15

*Maniscalco v. Brother Int'l Corp. (USA)*,
No. CIV.A. 06CV4907(FLW), 2008 WL 2559365
(D.N.J. June 26, 2008) .................................................................... 24

*In re Monat Hair Care Prod. Mktg., Sales Pracs., & Prod. Liab. Litig.*,
No. 18-MD-02841, 2019 WL 5423457 (S.D. Fla. Oct. 23, 2019) .................... 24

*Moore v. Trader Joe's Co.*,
4 F.4th 874 (9th Cir. 2021) ......................................................... 12, 13

*Muy v. Int'l Bus. Machines Corp.*,
No. 4:19CV14-MW/CAS, 2020 WL 13470560 (N.D. Fla. Apr. 10,
2020) ............................................................................................ 24

*Naimi v. Starbucks Corp.*,
No. LACV176484VAPGJSX, 2018 WL 11255596
(C.D. Cal. Feb. 28, 2018) ................................................................ 23

*Neilson v. Union Bank of Cal., N.A.*,
290 F. Supp. 2d 1101 (C.D. Cal. 2003) ............................................. 22

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vi

DEFS.' OMNIBUS MOT. TO DISMISS STATE
CONSUMER LAW AND COMMON LAW CLAIMS
LEAD CASE NO. CV 22-163 MWF (SKX)

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*New Jersey Citizen Action v. Schering-Plough Corp.*,
    842 A.2d 174 (N.J. Super. Ct. App. Div. 2003)...................................................12

*In re NJOY Consumer Class Action Litig.*,
    No. CV1400428MMMRZX, 2014 WL 12586074
    (C.D. Cal. Oct. 20, 2014)............................................................................12

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ..................................................................................24

*Parziale v. HP, Inc.*,
    445 F. Supp. 3d 435 (N.D. Cal. 2020).......................................................20

*Peguero v. Toyota Motor Sales, USA, Inc.*,
    No. 2:20-CV-05889-VAP (ADSx), 2020 WL 10354127
    (C.D. Cal. Nov. 18, 2020) .................................................................15, 16

*Piescik v. CVS Pharmacy, Inc.*,
    576 F. Supp. 3d 1125 (S.D. Fla. 2021)................................................13, 15

*Ponzio v. Mercedes-Benz USA, LLC*,
    447 F. Supp. 3d 194 (D.N.J. 2020)......................................7, 10, 11, 12

*Porsche Cars N. Am., Inc. v. Diamond*,
    140 So. 3d 1090 (Fla. 3d DCA 2014)........................................................20

*In re Riddell Concussion Reduction Litig.*,
    77 F. Supp. 3d 422 (D.N.J. 2015)...............................................................9

*Rubio v. Cap. One Bank*,
    613 F.3d 1195 (9th Cir. 2010)...................................................................12

*S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*,
    84 F.3d 629 (2d Cir. 1996)................................................................16, 17

*Saavedra v. Everi Payments, Inc.*,
    No. CV 21-6999 PA (PDX), 2022 WL 17886025
    (C.D. Cal. Apr. 11, 2022) .................................................................19, 21

*San Francisco Residence Club, Inc. v. Amado*,
    773 F. Supp. 2d 822 (N.D. Cal. 2011)........................................................6

Cooley LLP
Attorneys at Law
San Francisco

vii

Defs.' Omnibus Mot. to Dismiss State
Consumer Law and Common Law Claims
Lead Case No. CV 22-163 MWF (SKx)

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Scala v. Citicorp Inc.*,
   No. C 10-03859 CRB, 2011 WL 900297 (N.D. Cal. Mar. 15, 2011) .................. 6

*Silvaco Data Sys. v. Intel Corp.*,
   184 Cal. App. 4th 210 (2010) ............................................................................. 10

*Silver v. Countrywide Home Loans, Inc.*,
   760 F. Supp. 2d 1330 (S.D. Fla. 2011) .............................................................. 14

*Solo v. Bed Bath & Beyond, Inc.*,
   No. CIV. 06-1908 (SRC), 2007 WL 1237825
   (D.N.J. Apr. 26, 2007) ......................................................................................... 9

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ............................................................................. 23

*Tellone Prof. Ctr. LLC v. Allstate Ins. Co.*,
   No. 819CV02479JLSKES, 2021 WL 1254360
   (C.D. Cal. Jan. 26, 2021) ................................................................................... 24

*In re Toshiba Am. HD DVD Mktg. & Sales Pracs. Litig.*,
   No. CIV 08-939 (DRD), 2009 WL 2940081 (D.N.J. Sept. 11, 2009) .............. 13

*Vitiosus v. Alani Nutrition, LLC*,
   No. 21-CV-2048-MMA (MDD), 2022 WL 2441303
   (S.D. Cal. July 5, 2022) ..................................................................................... 24

*Wilkins v. Navy Fed. Credit Union*,
   No. CV222916SDWESK, 2023 WL 239976 (D.N.J. Jan. 18, 2023) ................ 14

*Wofford v. Apple, Inc.*,
   No. 11-cv-0034-AJB (NLS), 2011 WL 5445054
   (S.D. Cal. Nov. 9, 2011) ..................................................................................... 24

*Woods v. Maytag Co.*,
   No. 10-CV-0559 ADS WDW, 2010 WL 4314313
   (E.D.N.Y. Nov. 2, 2010) ..................................................................................... 18

*Yee Ting Lau v. Pret A Manger (USA) Ltd.*,
   No. 17-CV-5775 (LAK), 2018 WL 4682014
   (S.D.N.Y. Sept. 28, 2018) ................................................................................... 25

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

viii

DEFS.' OMNIBUS MOT. TO DISMISS STATE
CONSUMER LAW AND COMMON LAW CLAIMS
LEAD CASE NO. CV 22-163 MWF (SKx)

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Zaback v. Kellogg Sales Co.*,
   No. 3:20-cv-00268-BEN-MSB, 2020 WL 6381987
   (S.D. Cal. Oct. 29, 2020) .................................................................................... 23

*In re ZF-TRW Airbag Control Units Products Liab. Litig.*,
   601 F. Supp. 3d 625 (C.D. Cal. 2022) .............................................................. 16

*Zlotnick v. Premier Sales Grp., Inc.*,
   480 F.3d 1281 (11th Cir. 2007) .......................................................................... 12

*Zuniga v. Bank of Am. N.A.*,
   No. CV 14-06471 MWF, 2014 WL 7156403
   (C.D. Cal. Dec. 9, 2014) ............................................................................. 19, 20

**Statutes**

15 U.S.C. § 45(a) ........................................................................................ 19, 21

18 U.S.C. § 1961 ................................................................................................ 4

Cal. Bus. & Prof. Code
   § 17200 .............................................................................................. *passim*
   § 17500 .............................................................................................. *passim*

Cal. Civ. Code § 1750 ................................................................................ 3, 21, 22

Cal. Corp. Code
   § 25110 ....................................................................................................... 4
   § 25401 ....................................................................................................... 4
   § 25402 ....................................................................................................... 4
   § 25403 ....................................................................................................... 4
   § 25404 ....................................................................................................... 4

Fla. Stat. Ann. § 517.07 ..................................................................................... 4

Florida Deceptive and Unfair Trade Practices Act, Ch. 501, § 17200 ............. *passim*

New Jersey Consumer Fraud Act, NJSA 56:8-1 .......................................... *passim*

New York General Business Law, Art. 22-A, § 349 ...................................... *passim*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ix

DEFS.' OMNIBUS MOT. TO DISMISS STATE
CONSUMER LAW AND COMMON LAW CLAIMS
LEAD CASE NO. CV 22-163 MWF (SKx)

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

**Other Authorities**

Federal Rules of Civil Procedure

9(b) ..............................................................................................................*passim*

12(b)(1) ................................................................................................................. 5, 6

12(b)(6) .................................................................................................................... 5

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Despite filing three complaints in less than a year with nominally different claims and parties with each successive amendment, Plaintiffs have always advanced the same basic theory: Defendants—a cast of Individual Defendants and Celebrity Defendants—allegedly promoted EMAX Tokens (the "Tokens") to "artificially increase" their price, and Plaintiffs "purchase[d] these losing investments at inflated prices." (*See* ECF No. 1 ("CAC") ¶ 4; ECF No. 41 (the "CCAC") ¶ 4; SAC ¶ 4.) The Court previously found this theory implausible because the Tokens have no worth outside of what the market is willing to pay for them in real time. (ECF No. 99 (the "Order") at 25.) The Court otherwise dismissed the prior complaint in full due to fundamental flaws. The addition of new claims, Defendants, and over 100 pages of largely irrelevant allegations does not cure the defects.[1]

*First*, all of Plaintiffs' state consumer law claims are barred because those laws do not apply to alleged securities transactions.[2] The SAC's allegation that EMAX Tokens constitute securities undermines all of Plaintiffs' consumer law claims concerning their alleged purchases of the Tokens.

*Second*, the SAC's state consumer law claims suffer from the same fatal defect the Court identified with the prior complaint: failure to plausibly allege that Defendants' alleged statements or omissions caused any cognizable injury. Plaintiffs' new theory of injury is that they purportedly "held onto" the EMAX Tokens due to Defendants' misrepresentations. But Plaintiffs suffered no injury from merely holding onto Tokens.

---

[1] Certain Defendants are filing a concurrent omnibus motion to dismiss the state securities laws claims (SAC causes of action nos. 8 and 10–12) alleged against them. Consistent with the Court's order (ECF No. 117), the bodies of the two omnibus memoranda together do not exceed 40 pages.

[2] Defendants reserve the right to contest whether the EMAX Tokens constitute securities as Plaintiffs have alleged.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFS.' OMNIBUS MOT. TO DISMISS STATE
CONSUMER LAW AND COMMON LAW CLAIMS
LEAD CASE NO. CV 22-163 MWF (SKx)

***Third***, as to their state consumer law claims, Plaintiffs fail to plead factual allegations showing that a "reasonable consumer" exercising ordinary care would likely be misled by the Individual or Celebrity Defendants' statements.

***Fourth***, the lack of cognizable injury—and Plaintiffs' failure to sufficiently plead they could not have reasonably avoided any purported injury—dooms their UCL claims.

***Fifth***, the aiding and abetting claim again fails to adequately allege knowledge of wrongdoing, especially under the heightened pleading standard that applies to their claims grounded in fraud.

***Sixth***, Plaintiffs fail to state any entitlement to equitable relief due to their failure to allege that legal remedies are inadequate.  Plaintiffs otherwise fail to plead any entitlement to restitution or injunctive relief.

Thus, the Court should dismiss with prejudice the State Consumer Law and California common law claims in the SAC against all Defendants.

## II.   RELEVANT BACKGROUND

### A.   The Court Dismisses Plaintiffs' Prior Complaint and Identifies Fundamental Flaws in the Complaint's Theory of Liability.

The Court's Order granting Defendants' omnibus motion to dismiss the CCAC identified significant flaws in Plaintiffs' theory of liability.[3]  At bottom, the Court held that Plaintiffs "failed to alleged facts supporting the contention that they paid more than fair market value for the EMAX Tokens at the time of their purchase." (Order at 25.)  "Plaintiffs cannot claim that they paid more than fair market value for the EMAX Tokens because the Tokens ***inherently have no value*** outside of what the market is willing to pay in real-time." (*Id.*)  In other words, "based on Plaintiffs' own allegations, . . . Plaintiffs could have received ***far more*** than what they paid for the Tokens had they sold them at the right time." (*Id.*)  "Plaintiffs' disappointment with

---

[3] The Court's Order contains the relevant background concerning Plaintiffs' factual allegations regarding EthereumMAX. (*See* Order at 5–6.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFS.' OMNIBUS MOT. TO DISMISS STATE
CONSUMER LAW AND COMMON LAW CLAIMS
LEAD CASE NO. CV 22-163 MWF (SKx)

the fact that they did not sell their Tokens before the market plummeted was an inherent risk of the bargain." (*Id.* at 26.)  Indeed, as the Court noted, the "inherent volatility in market price is precisely why Plaintiffs likely purchased the Tokens in the first place." (*Id.* at 25.)

The Court further advised that "the law . . . expects investors to act reasonably before basing their bets on the zeitgeist of the moment." (*Id.* at 1.)  But "even viewing the facts in the light most favorable to Plaintiffs," contradictory allegations undermined key aspects of the complaint.  (*See id.* at 11 (noting, for example, that EMAX founders publicly told prospective investors that they had not "locked their [EMAX] wallets").)  The Court dismissed several claims without leave to amend, including state law claims for states where the Named Plaintiffs do not reside and Plaintiffs' California Consumers Legal Remedies Act ("CLRA") claim "because that Act is inapplicable to the sale of intangible goods such as cryptocurrency." (*Id.* at 4.)  As for the state consumer law claims, the Court found that the allegations failed Rule 9(b), including for failure to adequately allege reliance and causation.  (*Id.* at 34.)  During the last round of motion to dismiss briefing, Plaintiffs maintained that these pleading "defects" could be "cured with different phrasing and additional factual information." (ECF No. 75 at 33.)

**B.    Plaintiffs' Repackaged Complaint Concerning Alleged Investment Losses.**

Plaintiffs filed the SAC on December 22, 2022. (SAC at 159.)  The SAC adds over 100 pages, but the underlying theory and factual allegations are the same: "misleading promotions and celebrity endorsements" caused investors to purchase EMAX Tokens at "inflated prices." (*Id.* ¶ 4.)  The putative class remains "all investors who purchased [EMAX Tokens] between May 14, 2021 and June 27, 2021 [the "Relevant Period"]." (*Id.* ¶ 1.)

//

//

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFS.' OMNIBUS MOT. TO DISMISS STATE
CONSUMER LAW AND COMMON LAW CLAIMS
LEAD CASE NO. CV 22-163 MWF (SKx)

### 1. Plaintiffs Drop RICO Claims and Add State Securities Claims.

Plaintiffs' most conspicuous amendment was dropping their federal civil "RICO" claims, 18 U.S.C. § 1961, *et seq.*, and adding California and Florida securities claims. (*See id.* ¶¶ 367–376, 385–489 (securities claims under Cal. Corp. Code §§ 25401, 25402, 25403, 25404, 25110 and Fla. Stat. Ann. § 517.07).)

### 2. The SAC Adds a Named Plaintiff, Two Defendants, and a "Confidential Witness."

In addition to the prior Named Plaintiffs, the SAC adds Michael Buckley, a California resident who allegedly "suffered investment losses as a result of Defendants' conduct." (*Id.* ¶ 14.) The SAC now names EMAX Holdings, LLC ("EMAX Holdings") and Jona Rechnitz, an alleged "consultant, recruiter, and spokesman for EthereumMAX," as Defendants. (*Id.* ¶¶ 19, 25.) The SAC also references for the first time a "Confidential Witness," an alleged "former social acquaintance" of Rechnitz and Mayweather who "frequently socialized" with "those in the Rechnitz orbit." (*Id.* ¶ 91.) This unnamed individual allegedly "conducted or explored business dealings with . . . Kardashian and Mayweather." (*Id.*)

### 3. The SAC Adds Irrelevant and Boilerplate Allegations.

The SAC's 100 new pages of largely irrelevant factual and boilerplate legal allegations cannot hide the SAC's deficiencies. Plaintiffs again advance a guilty-by-social-acquaintance theory. (*See, e.g.*, SAC ¶¶ 55, 56, 101 (alleging based on tabloid news stories that Defendant Rechnitz "has been photographed sitting next to Defendant Mayweather courtside at Los Angeles Lakers games," "recently 'partied the night away' at Art Basel" with Defendant Kardashian, and is "close personal friends" with Defendant Brown and Defendant Pierce).) And Plaintiffs again resort to the same "kitchen sink" group allegations and conclusory language regarding the Celebrity Defendants' knowledge of alleged wrongdoing. (*See* Order at 40–41 (faulting the CCAC's "theory of knowledge"); *compare* CCAC ¶ 149 (alleging

Celebrity Defendants "knew or should have known" EMAX's marketing strategy was unlawful based on their "previous knowledge and experience"), *with* SAC ¶ 381 (same allegation but omitting "should have known").)

### C.    The State Consumer Law and California Common Law Claims.

The SAC asserts the following state consumer protection law claims (the "State Consumer Laws"): (1) the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, against all Defendants (claims 1–3) (SAC ¶¶ 186–211 (unlawful prong), ¶¶ 212–244 (unfair prong), ¶¶ 245–270 (fraudulent prong)); (2) the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*, against Defendant Kardashian (claim 4) (*id.* ¶¶ 271–286); (3) the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Ch. 501, § 17200, Fla. Stat. Ann., against all Defendants (claim 5) (*id.* ¶¶ 287–320); (4) the New York General Business Law ("N.Y. GBL"), Art. 22-A, § 349, *et seq.*, against the Individual Defendants and Pierce, Brown, Mayweather, and Kardashian (claim 6) (*id.* ¶¶ 321–343); and (5) the New Jersey Consumer Fraud Act ("N.J. CFA"), NJSA 56:8-1, *et seq.*, against the Individual Defendants and Mayweather and Kardashian (claim 7) (*id.* ¶¶ 344–366).  Plaintiffs also bring California common law claims for aiding and abetting violations of the State Consumer Laws against Maher and Celebrity Defendants (claim 9) (*id.* ¶¶ 377–384), and California common law claims for "unjust enrichment/restitution" against all Defendants (claim 13) (*id.* ¶¶ 490–493).[4]

### III.    LEGAL STANDARDS

Defendants incorporate the Court's prior discussion of the applicable Rule 9(b) and 12(b)(6) standards.  (*See* Order at 12–13.)  In addition, Rule 12(b)(1) allows a defendant to move for dismissal on grounds that the court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  In a facial jurisdictional challenge, the Court

---

[4] Because the Court's Order on the CCAC dismissed as a matter of law without leave to amend "claims brought under state laws by Named Plaintiffs that do not reside in the respective state" (Order at 32), the SAC's state law claims must be dismissed to the extent they are brought on behalf of Plaintiffs who do not reside in the state.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFS.' OMNIBUS MOT. TO DISMISS STATE
CONSUMER LAW AND COMMON LAW CLAIMS
LEAD CASE NO. CV 22-163 MWF (SKx)

accepts the complaint's factual allegations as true. *See Batista v. Irwin Nats.*, No. CV 20-10737-DMG (EX), 2021 WL 6618543, at *2 (C.D. Cal. Sept. 27, 2021).

## IV.   ARGUMENT

### A.   Plaintiffs' Claims Are Barred Because the State Consumer Laws Do Not Apply to Alleged Securities Transactions.

Plaintiffs' allegations that the Token is a security requires dismissal of the State Consumer Law claims, which do not apply to securities transactions or the purchase of securities.  The UCL does not apply to such claims, requiring dismissal of claims 1, 2, and 3.  *See Bowen v. Ziasun Techs., Inc.*, 116 Cal. App. 4th 777, 788 (2004), *as modified on denial of reh'g* (Apr. 7, 2004); *Scala v. Citicorp Inc.*, No. C 10-03859 CRB, 2011 WL 900297, at *7 n.7 (N.D. Cal. Mar. 15, 2011) (UCL does not reach "misrepresentations and omissions that occurred 'in connection with' the purchase or sale of covered securities"); *San Francisco Residence Club, Inc. v. Amado*, 773 F. Supp. 2d 822, 834 (N.D. Cal. 2011) (dismissing UCL claims because "plaintiffs' theory unavoidably focuses on the purchase of securities, and *Bowen* is determinative").  Nor do the Florida (claim 5), New Jersey (claim 7), or New York laws (claim 6) apply to securities transactions. *See Blank v. TriPoint Global Equities, LLC*, 338 F. Supp. 3d 194, 221 (S.D.N.Y. 2019) ("'[C]laims arising out of securities transactions are not the type of consumer transactions for which General Business Law § 349 was intended to provide a remedy.'"); *Lee v. First Union Nat'l Bank*, 199 N.J. 251, 263 (2009) ("[T]he CFA was not meant to reach the sale of securities."); *Crowell v. Morgan, Stanley, Dean Witter Servs. Co.*, 87 F. Supp. 2d 1287, 1294–95 (S.D. Fla. 2000) ("[T]he Florida Supreme Court, if confronted with the question whether the [FDUTPA] applies to claims arising from securities transactions, would hold that it does not.").

Plaintiffs allege the Tokens are securities (SAC ¶¶ 395, 449, 454), and simultaneously assert claims under the State Consumer Laws concerning their purchases of the Tokens (*see e.g.*, *id.* ¶¶ 204, 207, 237, 240, 261, 273, 289, 295).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFS.' OMNIBUS MOT. TO DISMISS STATE
CONSUMER LAW AND COMMON LAW CLAIMS
LEAD CASE NO. CV 22-163 MWF (SKx)

Because the UCL, FAL, FDUTPA, N.J. CFA, and N.Y. GBL do not apply to securities transactions, the Court should dismiss these claims without leave.

### B.   Plaintiffs Have Not Alleged that Defendants' Conduct Caused Cognizable Injury Under Any of the State Consumer Laws.

Plaintiffs' State Consumer Law claims continue to suffer from the same fatal defect: a failure to plausibly allege that Defendants' alleged statements or omissions caused any cognizable injury.   The UCL and FAL require that a plaintiff "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice." *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 322 (2011).  To raise a FDUTPA damages claim, a plaintiff must establish "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008) (internal quotation marks omitted).  Damages must "directly flow from the alleged deceptive act or unfair practice" and cannot be "remote or speculative." *Hennegan Co. v. Arriola*, 855 F. Supp. 2d 1354, 1361 (S.D. Fla. 2012).  The N.J. CFA requires an "ascertainable loss on the part of the plaintiff," *i.e.*, "an out-of-pocket loss or a demonstration of loss in value that is quantifiable or measurable." *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 242, 244 (D.N.J. 2020) (citation omitted).   Under the N.Y. GBL, "[a]n actual injury claim under [s]ection 349 typically requires a plaintiff to 'allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase.'" *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-04697 (CM), 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016).

Plaintiffs allege three principal injuries: (1) purchasing Tokens at artificially inflated prices, *i.e.*, "investment losses," (2) holding onto Tokens, and (3) an alleged diminution in the value of their Tokens.  Each injury is insufficient to state a claim.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFS.' OMNIBUS MOT. TO DISMISS STATE
CONSUMER LAW AND COMMON LAW CLAIMS
LEAD CASE NO. CV 22-163 MWF (SKx)

**1.     Plaintiffs Cannot Plausibly Allege Injury from Purchasing Tokens at Allegedly Artificially Inflated Prices.**

Nearly all Plaintiffs allege in boilerplate fashion that they "would not have proceeded with their transactions" "at all or for the price they paid" but for the alleged misrepresentations and omissions.[5]  (SAC ¶¶ 204, 237, 261, 335, 357, 360.)  This theory is nothing more than Plaintiffs' attempt to repackage their allegations that allegedly misleading promotions "artificially increase[d] the . . . price of the EMAX Tokens during the Relevant Time Period, causing investors to purchase these losing investments at inflated prices." (*Id.* ¶¶ 4, 6–15, 161, 314.)  The Court previously found these allegations failed to show a concrete financial loss.  (Order at 24.)  The Court explained "Plaintiffs cannot claim that they paid more than fair market value for the EMAX Tokens because the Tokens ***inherently have no value*** outside of what the market is willing to pay in real-time." (*Id.* at 25 (emphasis in original).)  In other words, Plaintiffs paid exactly what the Tokens were worth at the time of their purchases.  That logic requires dismissal of the State Consumer Law claims here.[6]

The California Plaintiffs lack statutory standing under the UCL and FAL for allegedly purchasing Tokens at artificially inflated prices.   While an alleged overpayment may establish standing under the UCL and FAL, *see Kwikset*, 51 Cal. 4th at 324, the Court's prior determination that the Tokens have no value outside of what the market is willing to pay for them in real-time means that Plaintiffs cannot plausibly claim they overpaid for the Tokens, which defeats standing under the UCL

---

[5] Several Plaintiffs point to alleged misrepresentations and omissions that occurred ***after*** an alleged purchase. (*See, e.g.*, SAC ¶¶ 89, 195, 200, 328–30, 353.)  But the Court has also already explained that Plaintiffs cannot plead actual reliance if they "purchased their EMAX Tokens ***prior*** to certain of the statements they allegedly relied on." (Order at 37 (emphasis added).)  Plaintiffs therefore cannot state any claims against the Defendants for post-purchase representations.

[6] The Court's prior Order also requires dismissal of the unjust enrichment/restitution claim (claim 13), which is premised on alleged purchases of Tokens at "artificially inflated prices." (SAC ¶ 491.)

Cooley LLP
Attorneys at Law
San Francisco

8

Defs.' Omnibus Mot. to Dismiss State
Consumer Law and Common Law Claims
Lead Case No. CV 22-163 MWF (SKx)

and FAL premised on alleged overpayments.  *See Friedman v. AARP, Inc*., No. 14-00034 DDP (PLA), 2019 WL 5683465, at *6 (C.D. Cal. Nov. 1, 2019) ("Absent allegations that Plaintiffs paid more than the value of the product, measured by a non-hypothetical theory, Plaintiffs have not plausibly alleged economic harm.  Thus, . . . Plaintiffs lack standing under the UCL.")

The Florida, New Jersey, and New York state law claims fare no better.  Plaintiffs do not and cannot allege—as the Court has already determined—facts showing they paid more for the Tokens than what the Tokens were worth.  *See In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*, No. 1:14-CV-3722 JBS-JS, 2015 WL 4591236, at *38–39 (D. N.J. July 29, 2015) (dismissing FDUTPA and N.J. CFA claims where plaintiffs provided no "reasonable means of quantifying the difference in value between the product promised and the one received"); *In re Riddell Concussion Reduction Litig.*, 77 F. Supp. 3d 422, 438 (D.N.J. 2015) (stating that a N.J. CFA claim requires allegations showing a "difference in value between the product promised and the one received"); *Solo v. Bed Bath & Beyond, Inc.*, No. CIV. 06-1908 (SRC), 2007 WL 1237825, at *3 (D.N.J. Apr. 26, 2007) (dismissing CFA claim where plaintiff did not allege with requisite "specificity" "that what he did receive[ ] was of lesser value than what was promised").  "Simply because Plaintiffs here recite the word[s] [artificially inflated] multiple times in their Complaint does not make Plaintiffs' injury any more cognizable." *Izquierdo*, 2016 WL 6459832, at *7 (dismissing N.Y. GBL § 349 claim concerning alleged payment of a "premium" for candy purchased at a movie theater).

### 2.    Plaintiffs Cannot Allege Injury from Holding onto Tokens.

While all Plaintiffs now allege holding onto Tokens due to alleged misrepresentations, Plaintiffs suffered no injury from merely holding onto Tokens that have no inherent value.  To begin, the California Plaintiffs cannot possess UCL or FAL standing to challenge alleged statements that caused them to hold onto Tokens.  (*See* SAC ¶¶ 195–201.)  Merely holding onto a Token does not result in a

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEFS.' OMNIBUS MOT. TO DISMISS STATE
CONSUMER LAW AND COMMON LAW CLAIMS
LEAD CASE NO. CV 22-163 MWF (SKx)

loss of any money or property because, by definition, a "loss" means to part with money or property. *See Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 244 (2010) ("[W]hen we say someone has 'lost' money we mean that he has parted, deliberately or otherwise, with some identifiable sum formerly belonging to him or subject to his control; it has passed out of his hands."), *abrogated on other grounds by Kwikset*, 51 Cal. 4th 310.

The Florida Plaintiffs' similar "hold[ing]" allegations (SAC ¶¶ 305, 308), which amount to nothing more than conjecture that Plaintiffs suffered by not selling their Tokens during a price spike, are also insufficient because a plaintiff cannot seek lost profits under the FDUTPA. *See HRCC, Ltd. v. Hard Rock Café Int'l (USA), Inc.*, 302 F. Supp. 3d 1319, 1323 (M.D. Fla. 2016) ("[A]ctual damages [under FDUTPA] must be direct damages, not consequential damages in the form of lost profits"); *Diversified Mgmt. Solutions, Inc. v. Control Sys. Rsch., Inc.*, No. 15-81062-CIV, 2016 WL 4256916, at *5 (S.D. Fla. May 16, 2016) ("Lost profits are a 'quintessential example' of consequential damages."). Thus, the Court should dismiss the Florida Plaintiffs' FDUTPA damages claim for allegedly holding onto Tokens.

The New Jersey Plaintiffs cannot state a N.J. CFA claim for allegedly holding onto the Tokens because they do not plead any facts quantifying an ascertainable loss from an alleged diminution in value. (*See, e.g.*, SAC ¶¶ 344–66); *Ponzio*, 447 F. Supp. 3d at 244 (dismissing CFA claim concerning alleged diminution in vehicle's value due to absence of any information to quantify the loss). Thus, the Court should dismiss any N.J. CFA damages claims premised on holding Tokens.

**3.     Plaintiffs Cannot Plausibly Allege that Defendants Caused Alleged Diminutions in the Token's Value.**

As in the prior complaint, Plaintiffs allege that the Token's value dropped, and they were left holding worthless Tokens. (SAC ¶¶ 160–61, 163.) But this alleged diminution in the value of the Tokens that Plaintiffs purchased is insufficient. The N.J. CFA and FDUTPA claims fail because Plaintiffs again do not allege any specific

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFS.' OMNIBUS MOT. TO DISMISS STATE
CONSUMER LAW AND COMMON LAW CLAIMS
LEAD CASE NO. CV 22-163 MWF (SKx)

facts quantifying a purported injury from any diminution in the value of the Tokens they purchased. *See, e.g.*, *In re Caterpillar*, 2015 WL 4591236, at *38 (dismissing CFA claim where plaintiffs provided no information from which court could calculate "losses stemming from the diminished value of their vehicles"); *id.* (dismissing damages claim under FDUTPA where plaintiffs did not plead "diminished value" of purchased vehicles "with any specificity" and provided no "facts from which such value could be calculated"); *Ponzio*, 447 F. Supp. 3d at 244 (dismissing CFA claim where plaintiff allegedly overpaid for vehicle at time of purchase and vehicle's value later dropped but provided no "information to otherwise quantify his loss").

Even if Plaintiffs had plausibly alleged diminutions in the value of the Tokens they purchased (they have not), Plaintiffs have not plausibly alleged that Defendants' statements **caused** the alleged diminutions. To the contrary, the SAC alleges "exactly the opposite." *See In re Actimmune Mktg. Litig.*, No. C 08-02376 MHP, 2010 WL 3463491, at *10 (N.D. Cal. Sept. 1, 2010) (concluding plaintiffs failed to allege causation where the complaint alleged the opposite of what plaintiffs alleged harmed them), *aff'd,* 464 F. App'x 651 (9th Cir. 2011). Plaintiffs allege that Defendants' statements **increased** the Token's value. (SAC ¶¶ 4, 129, 162 (alleging that the "improper promotional activities generated the trading volume" to increase the value).) Those allegations render implausible the notion that Defendants' alleged statements or misrepresentations caused any alleged diminution in the Token's value.

Moreover, and fatal to all State Consumer Law claims premised on alleged diminutions, the SAC otherwise shows that any alleged diminution in the Token's value was not plausibly the result of Defendants' alleged statements but rather other market factors, specifically, the inherent volatility of a new cryptocurrency and decisions by third party investors. (*See* SAC ¶ 148 (referring to the Token as a "highly volatile, speculative market that's little different than gambling"); *id.* ¶¶ 202, 235, 263, 307, 332 (referring to "a highly speculative and risky investment in EMAX

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEFS.' OMNIBUS MOT. TO DISMISS STATE
CONSUMER LAW AND COMMON LAW CLAIMS
LEAD CASE NO. CV 22-163 MWF (SKx)

Tokens").)  Plaintiffs' inability to plausibly claim that Defendants' alleged statements caused any diminutions in value defeats UCL and FAL standing, as well as the other State Consumer Law claims.  *See Rubio v. Cap. One Bank*, 613 F.3d 1195, 1203–04 (9th Cir. 2010) (a plaintiff must show a "'causal connection' between [the] alleged UCL violation and [the] injury"); *Ponzio*, 447 F. Supp. 3d at 242 (N.J. CFA requires a "causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss"); *In re NJOY Consumer Class Action Litig.*, No. CV1400428MMMRZX, 2014 WL 12586074, at *15 (C.D. Cal. Oct. 20, 2014) (causation required for FDUTPA and N.Y. GBL).

**C.     The Alleged Misrepresentations and Omissions Are Not Actionable.**

Plaintiffs fail to state any UCL, FDUTPA, N.Y. GBL, or N.J. CFA claims for alleged misrepresentations and omissions.  "[T]he law . . . expects investors to act reasonably before basing their bets on the zeitgeist of the moment."  (Order at 1.)  But Plaintiffs fail to plead factual allegations showing that a "reasonable consumer" exercising ordinary care would likely be misled.  *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881, 886 (9th Cir. 2021) (standard under California and New York law); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026 (9th Cir. 2008) (California law); *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (similar for Florida law); *New Jersey Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174, 177 (N.J. Super. Ct. App. Div. 2003) (similar for New Jersey law).

The reasonable consumer is the average person of "ordinary" intelligence, not an "unwary consumer" or an especially vulnerable or uninformed individual. *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (citations omitted).  Context, common sense, and common knowledge are relevant factors.  *See Moore*, 4 F.4th at 883, 886 (affirming dismissal of California and New York law claims because a reasonable consumer would not be misled given "three key contextual inferences from the product [sold]. . . which [were] readily available"); *Casey v. Fla. Coastal Sch. of L., Inc.*, No. 3:14-CV-1229-J-39PDB, 2015 WL 10096084, at *15–16 (M.D.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFS.' OMNIBUS MOT. TO DISMISS STATE
CONSUMER LAW AND COMMON LAW CLAIMS
LEAD CASE NO. CV 22-163 MWF (SKx)

Fla. Aug. 11, 2015) (dismissing FDUTPA claim by graduates of for-profit law school given "common knowledge that law-school rankings correlate with legal-job prospects, law graduates do not necessarily work as lawyers, and the downturn in the economy meant fewer jobs"), *report and recommendation adopted,* 2015 WL 10818746 (M.D. Fla. Sept. 29, 2015).

### 1. The Alleged Misrepresentations Would Not Plausibly Mislead Reasonable Consumers.

Plaintiffs allege two broad categories of misrepresentations—statements allegedly concerning (i) the ability to make money from investing in the Token (*e.g.*, SAC ¶¶ 3, 88, 110) and (ii) the ability to use EMAX Tokens as barter payment at certain venues or events (*e.g.*, *id.* ¶¶ 124, 126)—but neither states a plausible claim.

Common sense and common knowledge regarding the volatility and riskiness of cryptocurrency markets, including that of the Token, render implausible the notion that Defendants' alleged statements (particularly celebrity endorsements on social media) regarding the ability to make money from purchasing the Token would likely mislead reasonable consumers. *See Piescik v. CVS Pharmacy, Inc.*, 576 F. Supp. 3d 1125, 1133–34 (S.D. Fla. 2021) (dismissing FDUTPA claim regarding hand sanitizer label due to consumers' close familiarity with the product and its functionality after a two-year global pandemic); *Moore*, 4 F.4th at 882, 885 (affirming dismissal of UCL, FAL, and N.Y. GBL claims premised on allegedly deceptive advertising after considering "all information available to consumers and the context in which that information is provided and used" (citation omitted)); *In re Toshiba Am. HD DVD Mktg. & Sales Pracs. Litig.*, No. CIV 08-939 (DRD), 2009 WL 2940081, at *12–13 (D.N.J. Sept. 11, 2009) (considering public knowledge of well-publicized "format war" between HD DVD and Blu-ray in determining alleged representations were not actionable under CFA). The Token's riskiness was not a secret. Plaintiffs repeatedly acknowledge that cryptocurrencies and the Token are "volatile," "speculative," and "risky." (*See, e.g.*, SAC ¶¶ 148 & n.77, 175, 202, 221, 235, 307).) Plaintiffs also

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFS.' OMNIBUS MOT. TO DISMISS STATE
CONSUMER LAW AND COMMON LAW CLAIMS
LEAD CASE NO. CV 22-163 MWF (SKx)

allege various Defendants publicly addressed the riskiness of the Token (*see id.* ¶¶ 114–115 (warning the public to "[t]hink long and hard" about whether they could "risk this money and still pay [their] bills")), and the "drastic price fluctuation" that the Token experienced (*id.* ¶ 131). This well-known "inherent volatility" was why the Token appealed to consumers; it offered the chance of a financial windfall. (*See* Order at 25.) Thus, alleged representations concerning the ability to earn returns from investing in EMAX (*e.g.*, SAC ¶¶ 82 (Pierce's alleged post regarding his EMAX returns outpacing his ESPN salary), 147 (Kardashian's alleged post about the EMAX team burning Tokens)), would not mislead reasonable consumers to believe the Token was a risk-free or low-risk opportunity.

Moreover, the puffery, optimistic future predictions, exaggerations, and opinions in the alleged posts are not actionable. *See, e.g.*, *Glen Holly Ent., Inc. v. Tektronix, Inc.*, 343 F.3d 1000, 1015 (9th Cir. 2003) (affirming dismissal of claims premised on statements "describing the 'high priority' [defendant] placed on product development and alluding to marketing efforts" as "generalized, vague and unspecific assertions, constituting mere 'puffery' upon which a reasonable consumer could not rely"), *opinion amended on denial of reh'g*, 352 F.3d 367 (9th Cir. 2003); *Wilkins v. Navy Fed. Credit Union*, No. CV222916SDWESK, 2023 WL 239976, at *16 (D.N.J. Jan. 18, 2023) (statements that mobile payment application was "safe" and "secure" were puffery because they were "not concrete or measurable"); *Silver v. Countrywide Home Loans, Inc.*, 760 F. Supp. 2d 1330, 1342–43 (S.D. Fla. 2011) (explaining opinions and "projections about future events" are "puffing," and "not to be taken seriously," "not to be relied upon," and "not binding as a legal obligation or promise"); *MacNaughten v. Young Living Essential Oils, LLC*, 575 F. Supp. 3d 315, 327 (N.D.N.Y. 2021) (statement on product labels reading "100% Pure, Therapeutic-Grade" was puffery because it lacks a "concrete discernable meaning"). Numerous alleged representations are puffery. (*See, e.g.*, SAC ¶ 132 (Maher's alleged statement that "The EMax team is trying to make radical moves"), *id.* (Davis's alleged

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFS.' OMNIBUS MOT. TO DISMISS STATE
CONSUMER LAW AND COMMON LAW CLAIMS
LEAD CASE NO. CV 22-163 MWF (SKx)

statements that "[the Token price] is a rock bottom right now" and "This is a Solid BUYING OPPORTUNITY in my mind!!").)   Various alleged posts also had contextual clues—jokes, slang, and/or emojis (*see, e.g.*, *id.* ¶¶ 76, 82, 87, 127)— showing the posts were not to be taken literally and were not reliable facts.  *See Apodaca v. Whirlpool Corp.*, No. SACV 13-00725 JVS, 2013 WL 6477821, at *6 (C.D. Cal. Nov. 8, 2013) (advertising statements were non-actionable given their humor).

As for alleged representations regarding the ability to use the Token at certain events or venues, Plaintiffs fail to plead how such statements were false when made or would likely mislead reasonable consumers.  A reasonable consumer would not expect to use the Token as a form of payment in most transactions because it is common sense and common knowledge that cryptocurrencies are not a widely accepted form of payment.  (Order at 26 (referring to the Token as "another, widely unaccepted, form of money"); *see also Piescik*, 576 F. Supp. 3d at 1133–34 .  While Plaintiffs point to Club LIV and Story's inability to accept the Tokens, Plaintiffs provide no factual allegations showing that Defendants knew of this inability at the time of the alleged representations.   Plaintiffs' allegations otherwise show that consumers could use Tokens as a form of payment in limited circumstances, such as for the Mayweather vs. Paul fight on June 6, 2021.  (SAC ¶¶ 131, 147.)  In short, the misrepresentation allegations are insufficient to state a claim.

## 2.   The Alleged Omissions Are Not Actionable.

Plaintiffs' boilerplate omission claims fail because they constitute improper group pleading in violation of Rule 9(b)'s requirement to plead with particularity each Defendant's purported omission.[7]  *See Downey Surgical Clinic, Inc. v. Ingenix,*

---

[7] The SAC cites Second Circuit case law to ***plead*** that the N.Y. GBL claim is not subject to Rule 9(b).  (SAC ¶ 325.)  But this Court "is bound to follow Ninth Circuit precedent," which requires the application of Rule 9(b) to claims grounded in fraud.  *See Peguero v. Toyota Motor Sales, USA, Inc*., No. 2:20-cv-05889-VAP (ADSx),

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEFS.' OMNIBUS MOT. TO DISMISS STATE
CONSUMER LAW AND COMMON LAW CLAIMS
LEAD CASE NO. CV 22-163 MWF (SKX)

*Inc.*, No. CV 09-5457 PSG (CTX), 2013 WL 12114070, at *9 (C.D. Cal. Dec. 11, 2013) ("Lumping defendants [alleged to have committed fraudulent acts under the UCL] together will simply not do, for each and every [ ] Defendant in this action is entitled to fair notice of the fraud claims alleged against it."); *In re ZF-TRW Airbag Control Units Products Liab. Litig.*, 601 F. Supp. 3d 625, 773 (C.D. Cal. 2022) (dismissing FDUTPA claim where complaint "lump[ed]" defendants together while alleging they had failed to disclose information).  Plaintiffs allege in conclusory fashion that "Defendants" withheld or concealed information but do not explain why each Defendant had to disclose that information.  (*See, e.g.*, SAC ¶ 333 (failing to identify who "knowingly and intentionally conceal[ed] the Executive Defendants' specific roles and ownership interests," who "fail[ed] to disclose the use of the Promotor Defendants to 'instill trust,'" etc.).)

Even if the Court considers the omission claims further, Plaintiffs fail to allege facts showing why reasonable consumers would find the alleged omissions deceptive.  *See Downey*, 2013 WL 12114070, at *9 (explaining that under Rule 9(b), a plaintiff must explain "why [the alleged] omission complained of [is] false and misleading"); *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 636–37 (2d Cir. 1996) (affirming dismissal of N.Y. GBL claim where "a reasonable consumer would not have been misled by [defendant's] conduct").  Plaintiffs complain of four broad types of alleged omissions, but each is insufficient.

First, while Plaintiffs allege a failure to disclose the Individual Defendants' specific roles and ownership interests (*e.g.*, SAC ¶ 263(a)), Plaintiffs do not allege why these specific roles and ownership interests, or knowledge of them by any Defendant, would be material to a reasonable consumer.  For example, their theory that reasonable consumers would have made different investing decisions if the

_____

2020 WL 10354127, at *9 (C.D. Cal. Nov. 18, 2020) (rejecting reliance on Second Circuit case law and applying Rule 9(b) to N.Y. GBL claims grounded in fraud). Indeed, the Court has already held that Rule 9(b) applies to the N.Y. GBL claim. (Order at 34.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

DEFS.' OMNIBUS MOT. TO DISMISS STATE
CONSUMER LAW AND COMMON LAW CLAIMS
LEAD CASE NO. CV 22-163 MWF (SKx)

Individual Defendants had, for example, publicly indicated that they held a "significant percentage[ ] of the available Float" requires leaps of logic. (*Id.* ¶ 264.) Plaintiffs do not allege they ever sought out such information. Even if they had, a reasonable consumer would easily conclude that the Individual Defendants likely held a significant portion of available Tokens because they were confident in the Token's growth potential. Plaintiffs' allegation that they would have acted differently had they known that the Individual Defendants had not "lock[ed] the[ir] wallets" (*id.*) is implausible. As the Court has already noted, Plaintiffs allege "Defendant Perone specifically told the public that the Executive Defendants" had not yet done so. (Order at 11; *see* SAC ¶ 146.)

Second, Plaintiffs allege a failure to disclose that the increase in the Token's price right after its launch "w[as] caused by manipulation by the Executive Defendants" rather than an "organic increase in interest from investors." (*E.g.*, SAC ¶ 263(b).) However, Plaintiffs do not allege why a reasonable consumer would care about "organic" price increases. Nor can Plaintiffs state a claim grounded in fraud by relying on an inference that a consumer investing in a highly volatile cryptocurrency would care about organic price increases. As this Court already explained: "[T]here is certainly a plausible non-deceitful purpose for a new venture to use celebrity endorsements to generate public interest." (Order at 30.)

Third, Plaintiffs allege a failure to disclose that the Tokens were not acceptable forms of payment and "would not be at any point in the foreseeable future." (*E.g.*, SAC ¶ 202(c).) But Plaintiffs do not allege that the Tokens were not accepted at the Mayweather vs. Paul fight (*id.* ¶ 126), which indicates that the Tokens were accepted at certain venues. To the extent Plaintiffs imply they should have been able to use EMAX Tokens to pay for goods and services **everywhere**, that theory is implausible because **no** cryptocurrency is widely accepted as a form of payment. (*See* Order at 26.)

Fourth, Plaintiffs allege a failure to disclose the use of Celebrity Defendants

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

DEFS.' OMNIBUS MOT. TO DISMISS STATE
CONSUMER LAW AND COMMON LAW CLAIMS
LEAD CASE NO. CV 22-163 MWF (SKx)

1  "to 'instill trust'" in a "highly speculative and risky investment." (*See, e.g.*, SAC
2  ¶ 235.)  But the SAC shows that the use of celebrities to promote the Token was no
3  secret.  The Individual Defendants publicly disclosed this strategy, and it was self-
4  evident from alleged social media posts and other conduct that Celebrity Defendants
5  were promoting the new cryptocurrency.  (*Id.* ¶¶ 69, 119, 144 (alleged public
6  representations by EthereumMax, Individual Defendants, and Gentile about use of
7  celebrity influencers); *see also, e.g.*, *id.* ¶¶ 128, 133, 141 (example allegations of
8  posts and other alleged promotional activities).)

9      The alleged omissions are also not actionable because Plaintiffs fail to allege
10  Defendants' knowledge of the omitted information.  *See Woods v. Maytag Co.*, No.
11  10-CV-0559 ADS WDW, 2010 WL 4314313, at *16 (E.D.N.Y. Nov. 2, 2010)
12  (dismissing N.Y. GBL omission claim where plaintiff's allegations did not show
13  defendants "had knowledge of the defect"); *Dugan v. TGI Fridays, Inc.*, 231 N.J. 24,
14  51 (2017) (N.J. CFA claim requires a plaintiff to show that the defendant had
15  knowledge of the omitted information and the defendant intended for others to rely
16  on the omission); *see also Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th
17  824, 835 (2006) (UCL and FAL claims require an omission "contrary to a
18  representation actually made by [a] defendant," or a defendant must have an
19  affirmative duty to disclose), *as modified* (Nov. 8, 2006.  For example, Plaintiffs fail
20  to allege facts showing that any Defendant knew all allegedly omitted information
21  (*e.g.*, the Individual Defendants' respective ownership interests), and certainly do not
22  plead that each Defendant had complete or "exclusive knowledge" of such
23  information.  (*See* Order at 31 (describing allegations of Celebrity Defendants'
24  knowledge regarding alleged pump and dump scheme as "conclusory," and
25  explaining "Plaintiffs fail to illuminate . . . why posting an endorsement necessitates
26  knowledge").)
27  //
28  //

Cooley LLP
Attorneys at Law
San Francisco

18

Defs.' Omnibus Mot. to Dismiss State
Consumer Law and Common Law Claims
Lead Case No. CV 22-163 MWF (SKx)

**D.      Plaintiffs Fail to State a Claim Under Any UCL Prong.**[8]

**1.      Plaintiffs Fail to State an Unlawful Prong Claim.**

Plaintiffs fail to state an unlawful prong claim because they do not and cannot plead violations of the State Consumer Laws underlying this claim.  (SAC ¶ 192.) The unlawful prong allows a plaintiff to "borrow" other laws and make them actionable under the UCL.  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180, (1999).   Where a plaintiff fails to allege predicate violations, "the UCL unlawful claim must also be dismissed." *Gardiner v. Walmart Inc.*, No. 20-CV-04618-JSW, 2021 WL 2520103, at *8 (N.D. Cal. Mar. 5, 2021); *Arena Rest. & Lounge LLC v. S. Glazer's Wine & Spirits, LLC*, No. 17-CV-03805-LHK, 2018 WL 1805516, at *13 (N.D. Cal. Apr. 16, 2018).  Plaintiffs' failure to state FAL, N.Y. G.B.L., N.J. CFA, and FDUTPA claims requires dismissal of the unlawful prong claim.

**2.      Plaintiffs Fail to State an Unfair Prong Claim.**

Plaintiffs' unfair prong claim concerns the same factual allegations that fail to state a claim under the unlawful and fraudulent prongs.  *See Knuttel v. Omaze, Inc.*, No. 2:21-CV-09034-SB-PVC, 2022 WL 1843138, at *13 (C.D. Cal. Feb. 22, 2022) ("[W]here the practice alleged to be unfair overlaps entirely with the practices addressed under the fraudulent and unlawful prongs of the UCL, the former may be dismissed when the latter prong do[es] not survive."); *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104–05 (N.D. Cal. 2017) (collecting cases); *Saavedra v. Everi Payments, Inc.*, No. CV 21-6999 PA (PDX), 2022 WL 17886025, at *5 (C.D. Cal. Apr. 11, 2022).  Even if the Court considers the claim further, dismissal is appropriate because Plaintiffs do not satisfy the FTC, tethering, or balancing tests.  *See, e.g.*, *Drum v. San Fernando Valley Bar Assn.*, 182 Cal. App. 4th 247, 256–57 (2010) (affirming demurrer because complaint failed all three tests).

---

[8] Defendants' arguments *supra* Section IV.C (the SAC alleges no actionable misrepresentations or omissions) dispose of Plaintiffs' UCL fraudulent prong claim.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

DEFS.' OMNIBUS MOT. TO DISMISS STATE
CONSUMER LAW AND COMMON LAW CLAIMS
LEAD CASE NO. CV 22-163 MWF (SKx)

To start, Plaintiffs fail to state a claim under the test derived from Section 5 of the FTC Act. *See Zuniga v. Bank of Am. N.A.*, No. CV 14-06471 MWF, 2014 WL 7156403, at *6–7 (C.D. Cal. Dec. 9, 2014) (Fitzgerald, J.) (concluding that the FTC test applies to consumer class actions). Plaintiffs fail to plead a substantial consumer injury or that they could not reasonably have avoided the purported injury.[9] *Id.* at *7 (citing *Camacho v. Auto. Club of S. California*, 142 Cal. App. 4th 1394, 1403 (2006)). First, Plaintiffs do not plead substantial injury because they fail to allege ***any*** cognizable injury. *See supra* Section IV.B. While Plaintiffs point to an FTC report regarding a purported reported "median individual loss" from "scams" in a "crypto craze" (SAC ¶¶ 220–21), those allegations say nothing about Plaintiffs' alleged losses here. Moreover, Plaintiffs cannot plausibly allege that the Defendants acted unfairly by pointing to the alleged conduct of ***other*** individuals or entities outside of EMAX. *See Drum*, 182 Cal. App. 4th at 257 (plaintiff failed to assert claim under FTC test because complaint lacked allegations showing "consumers have been substantially injured by the [***defendant's***] conduct" (emphasis added)); *Camacho*, 142 Cal. App. 4th at 1405 (similar).

Second, Plaintiffs fail to plausibly allege they could not have reasonably avoided any purported injury. *See Lee v. CarMax Auto Superstores California, LLC*, No. CV137648MWFVBKX, 2013 WL 12473808, at *5 (C.D. Cal. Dec. 2, 2013) (Fitzgerald, J.) (dismissing "unfair" prong claim where plaintiff did not "allege that the injury was substantial or that Plaintiff could not have reasonably avoided the injury"). Plaintiffs' conclusory allegation that "consumers could not have reasonably avoided" injury is insufficient. (SAC ¶ 222.) As this Court has explained, "the law

---

[9] The FDUTPA claims for unfair conduct (SAC ¶ 306, 309), are also governed by this test. *See Porsche Cars N. Am., Inc. v. Diamond*, 140 So. 3d 1090, 1096–97 (Fla. 3d DCA 2014) (explaining that the unfair test under the FDUTPA was replaced when the FTC "updated its definition of unfair trade practice[s]" in 1980). The claims fail for the same reasons discussed here. *See Parziale v. HP, Inc.*, 445 F. Supp. 3d 435, 447 (N.D. Cal. 2020) (dismissing FDUTPA claim because consumers could have "b[ought] a different printer" and thus reasonably avoided injury).

Cooley LLP
Attorneys at Law
San Francisco

20

DEFS.' OMNIBUS MOT. TO DISMISS STATE
CONSUMER LAW AND COMMON LAW CLAIMS
LEAD CASE NO. CV 22-163 MWF (SKx)

1   . . . expects investors to act reasonably before basing their bets on the zeitgeist of the
2   moment." (Order at 1.) Plaintiffs could have reasonably avoided injury by not
3   purchasing Tokens that were known to be risky investments. (*See* SAC ¶¶ 114, 202.)

4   Plaintiffs also fail to allege a claim under the tethering test. (*See id.* ¶ 218.)
5   Plaintiffs do not "show that the public policy which is a predicate to [the] UCL
6   unfairness claim is 'tethered' to a specific constitutional, statutory, or regulatory
7   provision." *Harvey v. Bank of Am., N.A.*, 906 F. Supp. 2d 982, 995–96 (N.D. Cal.
8   2012). Plaintiffs' cursory and group allegations that certain Defendants violated the
9   FTC Act, 15 U.S.C. § 45(a)(1), and various California statutes concerning fraud and
10  deceit—including the CLRA—are legal conclusions. (*See* SAC ¶ 218); *Clegg v. Cult
11  Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994). Moreover, Plaintiffs'
12  reliance on the FTC Act is implausible because Plaintiffs do not state any claim under
13  the FTC test. Nor can Plaintiffs resurrect a CLRA claim through the unfair prong
14  because the Court dismissed the CLRA claim without leave to amend. (Order at 33.)

15  Last, the balancing test requires allegations showing that a business practice
16  "is immoral, unethical, oppressive, unscrupulous or substantially injurious to
17  consumers and requires the court to weigh the utility of the defendant's conduct
18  against the gravity of the harm to the alleged victims." *Drum*, 182 Cal. App. 4th at
19  257. Plaintiffs merely intone this legal standard (*see* SAC ¶ 219), and point to alleged
20  harm to consumers from third-party crypto "scams" (*id.* ¶ 220). These allegations
21  are insufficient. *See Saavedra*, 2022 WL 17886025, at *5 (dismissing claim under
22  balancing test where plaintiff "provide[d] little more than lip service" and "cit[ed]
23  the general legal rules" without analyzing "under the present facts").

24  **E.    Plaintiffs Again Fail to State an Aiding and Abetting Claim.**

25  Plaintiffs allege that the Celebrity Defendants and Defendant Maher
26  purportedly aided and abetted violations of "the California, Florida, New York, and
27  New Jersey state statutes described in the Complaint." (SAC ¶ 381.) But the Court's
28  prior Order dismissing without leave to amend Plaintiffs' claims under the laws of

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

DEFS.' OMNIBUS MOT. TO DISMISS STATE
CONSUMER LAW AND COMMON LAW CLAIMS
LEAD CASE NO. CV 22-163 MWF (SKx)

the states in which they do not reside (Order at 31–32), requires dismissal of all Non-California Plaintiffs' claims here and dismissal of the California Plaintiffs' claims concerning alleged aiding and abetting violations of non-California laws.

Despite the Court's prior dismissal (*id.* at 39–41), Plaintiffs again fail to show that Defendants (1) had actual knowledge of the specific primary wrong, and (2) gave substantial assistance to the principal wrongdoer.[10]  *See In re First All. Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006); *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1152–53 (2005).  Plaintiffs again make the conclusory and group allegation that the Celebrity Defendants "knew that the marketing strategy employed by the Executive Defendants" violated the state laws due to the Celebrity Defendants' alleged "previous knowledge and experience with making misleading promotional statements." (*Compare* CCAC ¶ 149, *with* SAC ¶ 381.)  But the Court rejected materially identical allegations as insufficient to show actual knowledge.  (Order at 40–41.)  Plaintiffs' mere deletion of the allegation that Defendants "should have known" does not make this claim any less implausible than before given the absence of any factual allegations demonstrating actual knowledge.  *See In re Hydroxycut Mktg. & Sales Pracs. Litig.,* 299 F.R.D. 648, 657 (S.D. Cal. 2014) (dismissing claim because "[n]o facts are alleged supporting an inference that the . . . Defendants knew" of the alleged violations).  Moreover, Plaintiffs fail to plausibly allege substantial assistance of the alleged wrongdoing because they do not plead that Defendants' alleged conduct caused any harm cognizable under the state laws at issue.  *See supra* Section IV.B; *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1135 (C.D. Cal. 2003) (endorsing proximate cause test for substantial assistance prong).

## F.    Plaintiffs' Repeated Failure to Allege Inadequate Legal Remedies Requires Dismissal of All Equitable Relief with Prejudice.

Plaintiffs again seek equitable relief, yet fail to plead inadequate legal

---

[10] To the extent Plaintiffs are again trying to resurrect the CLRA claim here, the Court should reject that attempt.  (Order at 32–34 (dismissing CLRA claim without leave).)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

DEFS.' OMNIBUS MOT. TO DISMISS STATE
CONSUMER LAW AND COMMON LAW CLAIMS
LEAD CASE NO. CV 22-163 MWF (SKx)

remedies.  (*See* SAC ¶¶ 185, 211, 244, 270, 281, 285, 319, 342, 365, 376, 384, 490–93; *id.* at 158 ("Prayer for Relief").)  A plaintiff must plead the inadequacy of legal remedies to seek equitable relief in federal court.  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 843–44 (9th Cir. 2020).  This Court dismissed Plaintiffs' prior unjust enrichment claim because "Plaintiffs have not even attempted to allege that equitable relief is warranted because they lack an adequate remedy at law."  (Order at 42–43 (citing *Sonner*, 971 F.3d at 844).)  But the Court's reasoning, like *Sonner*, applies to ***all*** equitable relief sought.  Plaintiffs violate the Court's order to comply with *Sonner* by again failing to allege inadequate legal remedies not only for their unjust enrichment claim but also for all equitable relief.  (*See* SAC ¶¶ 490–93.)  Plaintiffs' failure requires dismissal without leave to amend of all requests for equitable relief.  *See Sonner*, 971 F.3d at 843–44; *Zaback v. Kellogg Sales Co.*, No. 3:20-cv-00268-BEN-MSB, 2020 WL 6381987, *4 (S.D. Cal. Oct. 29, 2020) (dismissing UCL claim seeking injunctive relief because plaintiff failed to allege inadequate legal remedy).

### G.  Plaintiffs Fail to Plead Any Entitlement to Restitution.

Plaintiffs' requests for restitution (*see* SAC ¶¶ 211, 244, 270, 285, 319, 349, 365, 384, 490–493) are insufficient because Plaintiffs do not allege any injury or that Defendants made actionable misrepresentations or omissions.  *See, e.g.*, *Naimi v. Starbucks Corp.*, No. LACV176484VAPGJSX, 2018 WL 11255596, at *11 (C.D. Cal. Feb. 28, 2018) (dismissing request for restitution under California and New York law because plaintiffs failed to plead a misrepresentation).

Plaintiffs' restitution requests fail for other reasons.  Under California law, a plaintiff can seek restitution only when the "money or property identified as belonging in good conscience to the plaintiff [can] clearly be traced to particular funds or property in the defendant's possession."  *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 699 (2006), *as modified on denial of reh'g* (Jan. 31, 2006).  But Plaintiffs fail to allege any money or property that can be clearly traced to particular money or property in any Defendant's possession.  Plaintiffs do not even

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

DEFS.' OMNIBUS MOT. TO DISMISS STATE
CONSUMER LAW AND COMMON LAW CLAIMS
LEAD CASE NO. CV 22-163 MWF (SKx)

allege transacting with any Defendant.  And while Plaintiffs allege diminutions in the Token's value, they cannot seek restitution on this basis because a loss of value "provide[s] no corresponding gain to a defendant." *Wofford v. Apple, Inc*., No. 11-cv-0034-AJB (NLS), 2011 WL 5445054 at *3 (S.D. Cal. Nov. 9, 2011).  Plaintiffs also cannot seek restitution under the FDUTPA because the statute requires actual damages.  *Muy v. Int'l Bus. Machines Corp*., No. 4:19CV14-MW/CAS, 2020 WL 13470560, at *4 (N.D. Fla. Apr. 10, 2020).  As discussed *supra* Section IV.B, Plaintiffs cannot plead actual damages.

### H.    Plaintiffs Fail to Plead Any Entitlement to Injunctive Relief.

Plaintiffs similarly fail to plead any entitlement to injunctive relief against the Defendants.  Under Article III, "to establish standing to pursue injunctive relief . . . [plaintiff] must demonstrate a 'real and immediate threat of repeated injury' in the future." *Chapman v. Pier 1 Imports (U.S.) Inc*., 631 F.3d 939, 946 (9th Cir. 2011).  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974); *see also Tellone Prof. Ctr. LLC v. Allstate Ins. Co*., No. 819CV02479JLSKES, 2021 WL 1254360, at *7 (C.D. Cal. Jan. 26, 2021) (dismissing UCL injunctive relief claim because plaintiffs "failed to sufficiently plead facts in support of the proposition that the alleged harm is ongoing"); *In re Monat Hair Care Prod. Mktg., Sales Pracs., & Prod. Liab. Litig*., No. 18-MD-02841, 2019 WL 5423457, at *5 (S.D. Fla. Oct. 23, 2019) (same for FDUTPA injunctive relief claim); *Maniscalco v. Brother Int'l Corp. (USA)*, No. CIV.A. 06CV4907(FLW), 2008 WL 2559365, at *9–10 (D.N.J. June 26, 2008) (same for N.J. CFA injunctive relief claim).

Plaintiffs allege past harm from purchases between May and June 2021 and no threat of imminent harm.  This is insufficient for injunctive relief.  *See, e.g.*, *Campion v. Old Republic Home Prot. Co*., 861 F. Supp. 2d 1139, 1149–50 (S.D. Cal. 2012) (no UCL injunctive relief where "claim is based entirely on a past transaction").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24

DEFS.' OMNIBUS MOT. TO DISMISS STATE
CONSUMER LAW AND COMMON LAW CLAIMS
LEAD CASE NO. CV 22-163 MWF (SKx)

1    Moreover, Plaintiffs do not allege any intent to purchase Tokens in the future.  *See*

2    *Vitiosus v. Alani Nutrition, LLC*, No. 21-CV-2048-MMA (MDD), 2022 WL

3    2441303, at *7 (S.D. Cal. July 5, 2022) ("Plaintiffs fail to specifically allege an intent

4    to ever purchase one of Defendant's FIT Bars again.  Such an explicitly stated

5    intention or desire to purchase in the future is required to demonstrate a concrete

6    injury for standing to seek injunctive relief at the dismissal stage. . . ."); *Yee Ting Lau*

7    *v. Pret A Manger (USA) Ltd*., No. 17-CV-5775 (LAK), 2018 WL 4682014, at *7

8    (S.D.N.Y. Sept. 28, 2018) (no standing for injunctive relief under the GBL because

9    they did not allege an intent to purchase the offending product in the future).[11]

10       **I.       Dismissal Should Be with Prejudice.**

11          Despite previously asserting that "[a]ll . . . defects" in the pleadings could "be

12   cured with different phrasing and additional factual information currently available

13   to Plaintiffs" (ECF No. 75 at 33), Plaintiffs' voluminous SAC fails to cure previous

14   deficiencies and introduces new ones.  The amount of irrelevant matter in this latest

15   complaint underscores that Plaintiffs are desperately trying to mask insufficient

16   claims with shotgun pleading.  Further amendment to the State Consumer Law and

17   California common law claims—which have already been dismissed once—is futile

18   and dismissal with prejudice is warranted.  *See Carvalho v. Equifax Info. Servs., LLC*,

19   629 F.3d 876, 893 (9th Cir. 2010) (denying leave to amend); *Hartmann v. Cal. Dep't.*

20   *of Corr. & Rehab.*, 707 F.3d 1114, 1130 (9th Cir. 2013) (same).

21   **V.    CONCLUSION**

22          Defendants respectfully request that the Court dismiss the State Consumer

23   Law and California common law causes of action in the SAC with prejudice.

24

25
     _____

26   [11] Because Plaintiffs do not plead any entitlement to restitution or injunctive relief,
     the Court should also dismiss Plaintiffs' UCL and FAL claims on that basis.  *See*
27   *Castillo v. Seagate Tech., LLC*, No. 16-CV-01958-RS, 2016 WL 9280242, at *8
     (N.D. Cal. Sept. 14, 2016) ("Because plaintiffs have not adequately pleaded standing
28   to seek restitution or injunctive relief, their UCL claim is dismissed.").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25

DEFS.' OMNIBUS MOT. TO DISMISS STATE
CONSUMER LAW AND COMMON LAW CLAIMS
LEAD CASE NO. CV 22-163 MWF (SKx)

1

2

Dated:  February 21, 2023

COOLEY LLP

3

4

By:  */s/ Michael G. Rhodes*
      Michael G. Rhodes

5

6

*Attorneys for Defendant*
*Kim Kardashian*

7

8

9

Dated:  February 21, 2023

KING & SPALDING LLP
*/s/ Meghan Strong*
MEGHAN STRONG (CA 324503)

10

50 California Street, Suite 3300

11

San Francisco, CA 94111
Tel.: 415-318-1200

12

Fax: 415-318-1300
amichaelson@kslaw.com

13

14

15

*Counsel for Defendants*
*EMAX Holdings, LLC and Giovanni Perone*

16

17

18

Dated:  February 21, 2023

KATTEN MUCHIN ROSENMAN LLP
*/s/ Joel R. Weiner*

19

JOEL R. WEINER (CA 139446)

20

2029 Century Park East, Suite 2600
Los Angeles, CA 90067

21

Tel.: 310-788-4522

22

Fax: 310-712-8414
joel.weiner@katten.com

23

24

*Counsel for Defendant Paul Pierce*

25

26

Dated:  February 21, 2023

REED SMITH LLP
*/s/ James L. Sanders*

27

JAMES L. SANDERS (CA 126291)

28

1901 Avenue of the Stars, Suite 700

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

26

DEFS.' OMNIBUS MOT. TO DISMISS STATE
CONSUMER LAW AND COMMON LAW CLAIMS
LEAD CASE NO. CV 22-163 MWF (SKx)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Los Angeles, CA 90067-6078
Tel.: 310-734-5200
Fax: 310-712-8414
jsanders@reedsmith.com

*Counsel for Defendant*
*Floyd Mayweather Jr.*

Dated:  February 21, 2023

COHEN WILLIAMS LLP
*/s/ Michael V Shafler*
MICHAEL V SCHAFLER (CA 212164)
724 South Spring Street, 9th Floor
Los Angeles, CA 90014
Tel.: 213-232-5160
Fax: 213-232-5167
mschafler@cohen-williams.com

*Counsel for Defendant Jona Rechnitz*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

27

DEFS.' OMNIBUS MOT. TO DISMISS STATE
CONSUMER LAW AND COMMON LAW CLAIMS
LEAD CASE NO. CV 22-163 MWF (SKx)

1

## ATTESTATION

2      I, Michael G. Rhodes, hereby attest that all other signatories listed above and

3  on whose behalf this filing is submitted concur in this filing's content and have

4  authorized me to file on their behalf.

5                                                              */s/ Michael G. Rhodes*

6                                                              Michael G. Rhodes

7  280910683

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Cooley LLP
Attorneys at Law
San Francisco

28

**Defs.' Omnibus Mot. to Dismiss State Consumer Law and Common Law Claims Lead Case No. CV 22-163 MWF (SKx)**