MEGHAN H. STRONG (CA 324503)
mstrong@kslaw.com
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, CA 94111
Tel: (415) 318-1200; Fax: (415) 318-1300

CRAIG CARPENITO (pro hac vice)
ccarpenito@kslaw.com
ANDREW MICHAELSON (pro hac vice)
amichaelson@kslaw.com
KING & SPALDING LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036
Tel: (212) 556-2100; Fax: (212) 556-2222

DAVID K. WILLINGHAM (CA 198874)
dwillingham@kslaw.com
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Tel: (213) 443-4355; Fax: (213) 443-4310

*Attorneys for Defendant Giovanni Perone
and EMAX Holdings, LLC*

[Counsel for additional moving Defendants listed on signature page]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| IN RE ETHEREUMMAX INVESTOR LITIGATION | Lead Case No.CV 2:22-163 MWF (SKx) |
| | **DEFENDANTS' NOTICE OF MOTION AND OMNIBUS MOTION TO DISMISS SECURITIES CLAIMS IN THE SECOND AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| This Document Relates to: | Judge: Hon. Michael W. Fitzgerald |
| ALL ACTIONS. | Date: May 15, 2023 |
| | Time: 10:00 a.m. |
| | Place: First Street Courthouse, Courtroom 5A |
| | Complaint Filed: January 7, 2022 |
| | SAC Filed: December 22, 2022 |
| | Trial Date: Not Scheduled |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 15, 2023, at 10:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of Honorable Michael W. Fitzgerald, United States District Judge, Central District of California, located at 350 West First Street, Los Angeles, California 90012, the undersigned Defendants Perone, Rechnitz, Mayweather, and Pierce (the moving "Defendants"), will, and hereby do, move the Court for an order dismissing claims 8, 10, 11, and 12 in Plaintiffs' Second Amended Class Action Complaint (ECF No. 102) (the "SAC"). Defendants also hereby join the separate Omnibus Motion addressing claims 1, 2, 3, 4, 5, 6, 7, 9 and 13, insofar as those claims are made against Defendants, but file this separate notice of motion and memorandum of authority addressing the remainder of the claims that are asserted against only moving Defendants and not all Defendants. The two omnibus briefs together do not exceed 40 pages, consistent with the Court's order, ECF No. 117.

This Motion is made pursuant to Federal Rules of Civil Procedure 8, 9(b) and 12(b)(6), and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings and evidence on file in this matter, oral argument of counsel, and such other materials and argument as may be presented in connection with the hearing of the Motion.

Pursuant to Civil Local Rule 7-3, on February 13, 2023, counsel for the parties met and conferred regarding this motion. Plaintiffs' counsel informed defense counsel that they oppose this motion.

# TABLE OF CONTENTS

I.  INTRODUCTION .................................................................................................. 1

II.  RELEVANT BACKGROUND AND LEGAL STANDARDS ........................................ 1

III.  ARGUMENT ...................................................................................................... 2

    A.  Plaintiffs' Eleventh Cause of Action For Insider Trading Violations Under California Corporations Code Section 25402 Fails Due To Lack Of Privity, Failure to Plead with Particularity, and Failure to Plead "Inside" Information. .......................................................................... 2

    B.  Plaintiffs' Eighth Cause of Action For "Conspiracy" To Commit Insider Trading Under Section 25402 Fails Because No Primary Violation has Been Pled, No Such Cause Of Action Exists, and Plaintiffs Have Failed to Plead Conspiracy with Specificity. ........................................ 6

    C.  Plaintiffs' Tenth Cause of Action Fails to Satisfy Rules 8, 9(b), and 12(b)(6) Under Any Theory of Liability. ............................................... 8

        1.  Sections 25401 and 25110 ............................................................ 9

        2.  Section 25504 ............................................................................... 9

        3.  Sections 25400 and 25500 ......................................................... 11

        4.  Section 25403 ............................................................................. 13

    D.  Plaintiffs' Twelfth Cause of Action Similarly Fails. .............................. 14

IV.  CONCLUSION ................................................................................................. 14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Alfus v. Pyramid Tech. Corp.*,
  745 F. Supp. 1511 (N.D. Cal. 1990)..................................................7

*Dillon v. Axxsys Int'l, Inc.*,
  385 F. Supp. 2d 1307 (M.D. Fla. 2005) ...............................................14

*Facebook, Inc. v. MaxBounty, Inc.*,
  274 F.R.D. 279 (N.D. Cal. 2011) .........................................................7

*Jackson v. Fischer*,
  931 F. Supp. 2d 1049 (N.D. Cal. 2013)................................................10

*Kelsey K. v. NFL Enters., LLC*,
  254 F. Supp. 3d 1140 (N.D. Cal. 2017)................................................7

*Louisiana Pac. Corp. v. Money Market 1 Inst'l Inv. Dealer*,
  No. C 09-03529 JSW, 2011 WL 1152568 (N.D. Cal. Mar. 28, 2011) ...............13

*In re RasterOps Corp. Sec. Litig.*,
  No. C–92–20349 RMW (EAI), 1993 WL 183510 (N.D. Cal. Jan. 6, 1993) ...........3

*In re Rational Software Sec. Litig.*,
  28 F. Supp. 2d 562 (N.D. Cal. 1998).....................................................3

*Reiger v. Altris Software, Inc.*,
  No. 98-CV-528 TW JFS, 1999 WL 540893 (S.D. Cal. Apr. 30, 1999)..............12

*Siegal v. Gamble*,
  No. 13-cv-03570-RS, 2016 WL 1085787 (N.D. Cal. Mar. 21, 2016) ...............10

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ............................................................12

*Turk v. Pershing LLC*,
  No. 3:09-CV-2199, 2014 WL 12572906 (N.D. Tex. Dec. 8, 2014) .................14

*Turner v. Harvard MedTech of Nev., LLC*,
  No. 2:22-cv-1264 JCM (BNW), 2023 WL 1822436 (D. Nev. Feb. 8, 2023)..........................................................8

- iii -

*United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Constr. Trades Dep't,*
770 F.3d 834 (9th Cir. 2014) ................................................................... 7

*In re VeriSign, Inc., Derivative Litig.,*
531 F. Supp. 2d 1173 (N.D. Cal. 2007) ................................................... 4

*Vess v. Ciba-Geigy Corp. USA,*
317 F.3d 1097 (9th Cir. 2003) ........................................................... 4, 11

*Wright v. Bloom,*
No. C 12-00746 WHA, 2012 WL 6000960 (N.D. Cal. Nov. 30, 2012) ................ 13

**State Cases**

*Allied Equipment Corp. v. Litton Saudi Arabia Ltd,*
7 Cal. 4th 503 (1994) .......................................................................... 6

*Apollo Capital Fund LLC v. Roth Capital Partners, LLC,*
158 Cal. App. 4th 226 (2007) ................................................................ 9

*AREI II Cases,* 216 Cal. App. 4th 1004, 1014 (2013) .................................. 6

*Cal. Amplifier, Inc. v. RLI Ins. Co.,*
94 Cal. App. 4th 102 (2001) ........................................................*passim*

*Diamond Multimedia Sys., Inc. v. Superior Court,*
19 Cal. 4th 1036 (1999) ....................................................................... 8

*Friese v. Superior Court,*
134 Cal. App. 4th 693 (2005) ............................................................... 3

*Moss v. Kroner,*
197 Cal. App. 4th 860 (2011) ............................................................... 9

**State Statutes**

Cal. Corp. Code § 25110 ............................................................... 2, 8, 9

Cal. Corp. Code § 25400 ........................................................... 8, 11, 12

Cal. Corp. Code § 25401 ............................................................... 2, 8, 9

Cal. Corp. Code § 25402 ...............................................................*passim*

Cal. Corp. Code § 25403 ......................................................... 2, 8, 13, 14

- iv -

Cal. Corp. Code § 25404 ..................................................................................... 2, 8

Cal. Corp. Code § 25500 ..................................................................... 8, 11, 12, 13

Cal. Corp. Code § 25501 ..................................................................................... 3, 9

Cal. Corp. Code § 25502 .................................................................................. 3, 4, 5

Cal. Corp. Code § 25503 ........................................................................................... 9

Cal. Corp. Code § 25504 ............................................................................... 9, 10, 11

Cal. Corp. Code § 25510 ..................................................................................... 6, 7

California Corporate Securities Law of 1968 .................................................... 6, 8

Fla. Stat. § 517.07 .................................................................................................... 2

Fla. Stat. § 517.211(1) .......................................................................................... 14

**Rules**

Fed. R. Civ. P. 8 .................................................................................................. 8, 9

Fed. R. Civ. P. 9(b) ........................................................................................ *passim*

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 8, 9

Fed. R. Civ. P. 50(b) .............................................................................................. 14

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

The word "security" did not appear a single time in Plaintiffs' Consolidated Class Action Complaint.  Plaintiffs alleged a number of consumer fraud claims, but did not allege a single claim premised on the EMAX Token's alleged status as a "security." Following the dismissal of their Consolidated Class Action Complaint, and almost a full year after filing their initial complaint, Plaintiffs now claim that purchases of EMAX Tokens are and have always been "investment contracts."[1]  (ECF No. 102, Second Amended Complaint ("SAC"), ¶ 388.)  And along with this wholly new set of allegations come new securities claims, asserted under both California and Florida law. (*Id.* ¶¶ 367-76, 385-489.)  But each of these new securities claims fails.  ***First,*** Plaintiffs do not—and cannot—allege that they purchased EMAX Tokens *from* Defendants, and they therefore lack the requisite privity to plead their claims.  ***Second,*** and to the extent any of their claims do not require privity, Plaintiffs have failed to plead any of their claims with the requisite particularity demanded by Rule 9(b), nor do they sufficiently allege scienter or intent to defraud.  For these reasons, Plaintiffs' Eighth, Tenth, Eleventh, and Twelfth Causes of Action should be dismissed.

### II.   RELEVANT BACKGROUND AND LEGAL STANDARDS

Defendants hereby incorporate by reference the relevant background and legal standards described in the concurrently-filed Omnibus Motion to Dismiss Causes of Action 1 through 7, 9, and 13.  To avoid repetition, Defendants do not set out the same relevant background and legal standards again here.  This omnibus brief addresses

---

[1] Because Plaintiffs' allegations are insufficient to state a claim for other reasons, the Court need not determine whether EMAX Tokens constitute "securities" or "investment contracts" under state or federal law, as Plaintiffs allege.  However, Defendants reserve the right to contest Plaintiffs' allegations that the EMAX Tokens constitute "securities" or "investment contracts."

only Causes of Action 8, 10, 11, and 12, which are pleaded against different groups of Defendants as follows:[2]

- Eighth Cause of Action: Common Law Conspiracy to Violate Cal. Corp. Code § 25402 (Against Perone, Rechnitz, Mayweather, and Pierce);
- Tenth Cause of Action: Violation of Cal. Corp. Code §§ 25110, 25401, 25403, & 25404 (Against the Company and Individual Defendants[3]);
- Eleventh Cause of Action: Violation of Cal. Corp. Code § 25402 (Against Perone, Rechnitz, Maher, Mayweather, and Pierce); and
- Twelfth Cause of Action: Violation of Fla. Stat. § 517.07 (Against the Company and Individual Defendants).

## III. ARGUMENT

### A. Plaintiffs' Eleventh Cause of Action For Insider Trading Violations Under California Corporations Code Section 25402 Fails Due To Lack Of Privity, Failure to Plead with Particularity, and Failure to Plead "Inside" Information.

Plaintiffs bring their Eleventh Cause of Action against Defendants Perone, Rechnitz, Mayweather, and Pierce based on an alleged violation of California Corporations Code Section 25402.[4]  This claim fails due to the absence of privity and failure to plead a claim with particularity under Rule 9(b).

Section 25402, standing alone, is penal in nature.  *Cal. Amplifier, Inc. v. RLI Ins. Co.*, 94 Cal. App. 4th 102, 109 (2001).  A plaintiff is authorized to pursue a civil action

---

[2] Not all causes are asserted against all Defendants.  The arguments on these causes are presented together in this brief for efficiency and ease of the Court's review, but each Defendant joins only the portion of this brief that addresses the claims pleaded against him.

[3] As the term is used in this omnibus motion as well as the other concurrently-filed omnibus motion, "Individual Defendants" refers to and includes Defendants Giovanni Perone, Mike Speer, Justin Maher, and Jona Rechnitz.

[4] Unless otherwise noted, all "Section" references are to the California Corporations Code.

based on a Section 25402 violation only through statutory grant.  *Id.*  As such, Plaintiffs'
standing to pursue a claim based on an alleged violation of Section 25402 for insider
trading is created by—but also cabined by—Section 25502.  Section 25502 provides
that "[a]ny person who violates Section 25402 shall be liable to the person who
purchases a security ***from him*** . . . ."  Therefore, the plain language of the statute
explicitly cabins liability to those who purchased a security from the defendant and are
thus in privity with him.  This has been confirmed repeatedly by both California and
federal courts.  *Friese v. Superior Court*, 134 Cal. App. 4th 693, 705 (2005) ("The
remedy provided by section 25502 is problematic because private plaintiffs must
establish privity between themselves and violators of section 25402."); *Cal. Amplifier*,
94 Cal. App. 4th at 109 ("Sections 25501 and 25502 extend liability to some negligent
conduct, but retain the privity requirement from common law fraud."); *In re Rational
Software Sec. Litig.*, 28 F. Supp. 2d 562, 567 n.4 (N.D. Cal. 1998) (noting that "only
persons who actually bought securities from or sold securities to the wrongdoer may
pursue a claim under [Sections 25402 and 25502]"); *In re RasterOps Corp. Sec. Litig.*,
No. C–92–20349 RMW (EAI), 1993 WL 183510, at *5 (N.D. Cal. Jan. 6, 1993)
("California Corporations Code [§§ 25402 and 25502] provide a remedy only to one in
privity with an insider.").

Plaintiffs generally allege that they purchased EMAX Tokens from "Defendants"
(SAC ¶ 439), but they do not plead any specific facts to support this general conclusory
allegation.  Instead, they plead facts establishing that the *opposite* is true because
Plaintiffs allege that "EMAX Tokens traded exclusively on decentralized exchanges,"
(*id.* ¶ 33), and they concede that, "[w]hen executing a trade on a decentralized exchange,
an investor *does not have a counterparty . . . .*"  (*Id.* ¶ 34 (emphasis added).)[5]  Plaintiffs'

---

[5] Plaintiffs also allege that they bought EMAX Tokens from liquidity pools to which
"[w]allets associated with Defendants" also contributed EMAX Tokens (SAC ¶ 59), but
this does not change the fact that when purchasing from liquidity pools a purchaser has
no specific counterparty.  (*Id.* ¶ 34.)  Because, as Plaintiffs' own allegations establish,
Plaintiffs have no specific counterparty, they necessarily lack privity with Defendants.

own allegations therefore defeat any claim of privity and demonstrate that they cannot allege that they bought EMAX Tokens from any Defendant, let alone the specific Defendants against whom this claim is asserted because Plaintiffs do not—and cannot—know from whom they bought.  Thus Plaintiffs' Eleventh Cause of Action should be dismissed without leave to amend.

Although the lack of privity is dispositive, Plaintiffs' claim under Section 25502 should also be dismissed because it is not pled with particularity.  *See In re VeriSign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1221 (N.D. Cal. 2007) (holding that a claim under Section 25402 must be pled with particularity).  Plaintiffs do not plead any specific sales by any specific Defendant that constitute the alleged "inside" trading.  For instance, Plaintiffs do not allege which Defendants sold which Plaintiff EMAX Tokens (and Plaintiffs concede that they cannot amend to allege this since their transactions did not have counterparties).  Nor do Plaintiffs specifically allege what nonpublic, material information any Defendant knew at the time of any (unspecified) sale to that Plaintiff.  Instead, Plaintiffs merely allege that Defendants Rechnitz, Pierce, Mayweather, and Perone had "relationships . . . that gave them direct access to material information about the timing of the marketing activities of the celebrity promoters" and that they "used this information to purchase and sell EMAX Tokens at a time when the value of the EMAX Tokens was artificially inflated from the Promoter Defendants' promotional activities."  (SAC ¶¶ 441-42.)  These allegations come nowhere near meeting the pleading requirements of Rule 9(b) because they fail to describe the "who, what, when, where, and how" of the alleged fraud.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Even if Plaintiffs could plead that they purchased EMAX Tokens from a specific Defendant—which they cannot—and even if they had pleaded their allegations with the requisite specificity, they cannot plead that they purchased any EMAX Tokens from any Defendant who possessed "inside" information unknown to Plaintiffs.  A private litigant's civil claim for an alleged violation of Section 25402 must be tethered to that

- 4 -

plaintiff's alleged securities transactions with the defendant. *See* Cal. Corp. Code § 25502 ("Any person who violates Section 25402 shall be liable to the person who purchases a security *from him* or sells a security to him . . . ." (emphasis added)). Here, Plaintiffs allege that the material "inside information" that Defendants possessed at the time of Plaintiffs' purchases of EMAX Tokens was information about the timing of Defendants' alleged promotions. However, Plaintiffs also allege that: (1) in advance of Plaintiffs' purchases, the fact that there would be upcoming celebrity promotions was publicly available (*see* SAC ¶ 70 (incorporating public post from May 17, 2021 stating that the "marketing team" had confirmed that there were "exciting moves going on behind the scenes" involving "celebrity endorsements")); and (2) Plaintiffs bought EMAX Tokens after viewing the promotions. (*See, e.g.,* SAC ¶ 195 (alleging Plaintiff Semerjian purchased EMAX Tokens after viewing celebrity promotions), ¶ 197 (alleging same re Plaintiff Buckley), and ¶ 200 (alleging same re Plaintiff Shah)). Thus, by Plaintiffs' own admissions, by the time Plaintiffs purchased EMAX Tokens the information about the timing of the promotions was no longer "inside." As Plaintiffs concede, the promotions had already taken place, and information about those promotions was generally available to the public.[6]

        Accordingly, the Eleventh Cause of Action should be dismissed with prejudice.

---

[6] Notably, the damages that Plaintiffs would be entitled to for a violation of Section 25402 would be "the difference between the price at which [the] security was purchased . . . and the market value which such security would have had at the time of the purchase . . . if the information known to the defendant had been publicly disseminated prior to that time and a reasonable time had elapsed for the market to absorb the information." Cal. Corp. Code § 25502. Here, the information concerning celebrity promotions was available at the time of Defendants' alleged sales of EMAX Tokens, as the promotions had already happened. And, as the Court has noted, "Plaintiffs cannot claim that they paid more than fair market value for the EMAX Tokens because the Tokens ***inherently have no value*** outside of what the market is willing to pay in real-time." (ECF No. 99 at 25 (emphasis in original).) Thus, there could be no damages.

1
2
3
4

**B.**    **Plaintiffs' Eighth Cause of Action For "Conspiracy" To Commit Insider Trading Under Section 25402 Fails Because No Primary Violation has Been Pled, No Such Cause Of Action Exists, and Plaintiffs Have Failed to Plead Conspiracy with Specificity.**

5    Plaintiffs' Eighth Cause of Action for "conspiracy" fails because, as described
6  above, Plaintiffs have not adequately alleged that an insider trading violation actually
7  occurred, nor can they.  "Standing alone, a conspiracy does no harm and engenders no
8  tort liability.  It must be activated by the commission of an actual tort.  'A civil
9  conspiracy, however atrocious, does not give rise to a cause of action unless a civil
10 wrong has been committed resulting in damage.'"  *Allied Equipment Corp. v. Litton*
11 *Saudi Arabia Ltd*, 7 Cal. 4th 503, 511 (1994) (quoting *Doctors' Co. v. Superior Court*,
12 49 Cal. 3d 39, 44 (1989)).  Because Plaintiffs' statutory insider trading claim must be
13 dismissed (*supra* Section III.A), so too must their Eighth Cause of Action for conspiracy
14 to violate California's prohibition against insider trading.

15    The Eighth Cause of Action also fails for the fundamental reason that *no such*
16 *claim exists*.  Section 25510 provides that "[e]xcept as explicitly provided in this
17 chapter, no civil liability in favor of any private party shall arise against any person by
18 implication from or as a result of the violation of any provision of this law or any rule
19 or order hereunder."  In other words, Plaintiffs cannot sue under the California
20 Corporate Securities Law of 1968 unless the statute expressly enumerates a cause of
21 action that allows them to do so.  "Conspiracy" to commit a violation of Section 25402
22 *is not* a cause of action expressly enumerated in the California Corporate Securities
23 Law.

24    As explained by the California Court of Appeal, the purpose of Section 25510 "is
25 to prevent the courts from using other provisions of the statute to create implied causes
26 of action, as has happened in the federal courts in connection with the developments
27 under Rule 10b-5. . . ."  *AREI II Cases*, 216 Cal. App. 4th 1004, 1014 (2013).  To that
28 end, "the drafters of the Act were also cognizant of the dangers of casting the net of

- 6 -

civil liability too broadly" and for that reason "the Legislature chose to specify the elements of a statutory cause of action in detail and decided to make it clear that the judiciary is not authorized to invent causes of action inconsistent with or additional to those provided in the statute." *Id.* at 1013-14 (cleaned up).

Here, the statute *does not* expressly provide for secondary liability for violations of Section 25402, such as a claim for civil conspiracy. And Section 25510 precludes Plaintiffs from inventing such a cause of action. *See id.* at 1014 ("Except as explicitly provided in this chapter, no civil liability in favor of any private party shall arise against any person by implication from or as a result of the violation of any provision of this law or any rule or order hereunder.").

In addition, Plaintiffs' conspiracy claim for insider trading violations must be dismissed for the independent reason that it is not pleaded with sufficient particularity. "[A] conspiracy to commit fraud must satisfy the particularity requirement of Rule 9(b)." *Facebook, Inc. v. MaxBounty, Inc.*, 274 F.R.D. 279, 286 (N.D. Cal. 2011); *see also Alfus v. Pyramid Tech. Corp.*, 745 F. Supp. 1511, 1521 (N.D. Cal. 1990) ("In civil conspiracy actions, courts insist upon a higher level of specificity than is usually demanded of other pleadings."). Plaintiffs' generalized, boilerplate allegations that Defendants "did engage in the formation and operation of a conspiracy" (SAC ¶ 368), that "Rechnitz, Mayweather, and Pierce are close friends and business partners" (*id.* ¶ 371), and that Defendants engaged in wrongful conduct (*id.* ¶ 368) are insufficient to meet the pleading requirements of Rule 9(b). *See Alfus*, 764 F. Supp. at 607 (N.D. Cal. 1991) ("Claims that each defendant performed a wrongful act cannot, by itself, create an inference of a conspiratorial agreement."); *Kelsey K. v. NFL Enters., LLC*, 254 F. Supp. 3d 1140, 1145-46 (N.D. Cal. 2017) ("parallel conduct alone does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality"); *United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Constr. Trades Dep't*, 770 F.3d 834, 842 (9th Cir. 2014) ("formulaic recitations and 'conclusory statement[s]' will not suffice to allege conspiracy plausibly.

- 7 -

A complaint must 'answer the basic questions: who, did what, to whom (or with whom), where, and when?' Bare assertions of 'agreement,' or identifications of particular persons as 'coconspirators,' will not suffice.").

For all these reasons, the Eighth Cause of Action should be dismissed.

**C.    Plaintiffs' Tenth Cause of Action Fails to Satisfy Rules 8, 9(b), and 12(b)(6) Under Any Theory of Liability.**

Plaintiffs assert a Tenth Cause of Action for violations of California's Corporate Securities Law based on the alleged sale of unregistered securities.  As an initial matter, this claim fails to set out a short and plain statement of the claim or provide Defendants with adequate notice of the claim.  *See* Fed. R. Civ. P. 8; *see also Turner v. Harvard MedTech of Nev., LLC*, No. 2:22-cv-1264 JCM (BNW), 2023 WL 1822436, at *2-4 (D. Nev. Feb. 8, 2023) (stating that "[w]hile Rule 8 does not require detailed factual allegations, it demands 'more than labels and conclusions' or a 'formulaic recitation'" and dismissing complaint for failure to provide adequate notice of a plausible cause of action) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In the heading for this cause of action, Plaintiffs allege that this claim is pleaded under Sections 25110, 25401, 25403, and 25404.  (SAC at 135.)  But they then rely on Sections 25400 and 25500 in describing the cause, and finally plead that the Individual Defendants are liable under all Sections—25400(b)-(e), 25401, and 25404—without differentiating among them.  (SAC ¶¶ 392, 429, 432.)  Each of these statutes bars different activity and has different requirements to plead a claim.  *Cal. Amplifier*, 94 Cal. App. 4th at 108-09 ("Section 25400 prohibits false and misleading statements designed to manipulate the securities markets . . . Section 25401 is a broader statute that prohibits misrepresentations in connection with the purchase or sale of securities in general.  Section 25402 prohibits insider trading."); *see also Diamond Multimedia Sys., Inc. v. Superior Court*, 19 Cal. 4th 1036, 1056 (1999) (distinguishing between the requirements of Sections 25400 and 25500 versus 25401 and 25501).

- 8 -

Plaintiffs do not plead how or to what extent the disparate requirements of each of these separate potential claims is met, and Defendants cannot determine from the Second Amended Complaint which type of claim Plaintiffs are attempting to plead, the theory of liability, or how Plaintiffs allege Defendants violated the statute—let alone which one. Defendants therefore lack sufficient notice of the claim, Plaintiffs have failed to satisfy Rule 8.

Further, regardless of what type of claim or theory of liability Plaintiffs are pursuing under these sections, they have failed to allege a sufficient cause of action under Rules 9(b) and 12(b)(6).

### 1. Sections 25401 and 25110

To the extent Plaintiffs assert a claim for primary liability under Sections 25401 or 25110 (for which Sections 25501 and 25503, respectively, provide a civil right of action), privity is required to pursue such a claim. *See Moss v. Kroner*, 197 Cal. App. 4th 860, 874 (2011) ("strict privity is required [] for claims of primary liability under Sections 25401 and 25501"); *Apollo Capital Fund LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 252-53 (2007); Cal. Corp. Code § 25503 ("Any person who violates Section 25110 . . . shall be liable to any person acquiring *from them* the security sold in violation of that section" (emphasis added)). But Plaintiffs have not alleged they are in privity with any Defendant, let alone the specific Defendants against whom this claim is asserted. For the reasons already discussed, *supra* Section III.A., Plaintiffs' claim fails to the extent it requires privity.

### 2. Section 25504

To the extent Plaintiffs are pursuing a claim of secondary liability of violations of Sections 25401 or 25110 under Section 25504 (*see* SAC ¶ 394), they have also failed to plead this claim. Section 25504 extends liability to "[e]very person who directly or indirectly controls a person liable under Section 25501 or 25503." This section thus requires pleading a primary violation by the controlled entity, which for the reasons already stated Plaintiffs have failed to do. More specifically, to establish

- 9 -

secondary control person liability here, Plaintiffs would need to plead a primary violation by the Company. *See Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1064 (N.D. Cal. 2013) ("in the absence of a viable claim of primary liability, plaintiff cannot state a claim against the [control person] defendants for control person liability under § 25504"). But Plaintiffs plead next to no conduct by the Company, let alone sufficient facts to establish a primary violation. Beyond generalized, group pleading allegations, Plaintiffs never specifically allege that the Company sold—or even owned—EMAX Tokens. Indeed, they admit that the Company was not incorporated until June 6, 2021, *after* the start of the relevant time period in which Plaintiffs bought their EMAX Tokens, and they further plead that the Company was created for the purpose of holding intellectual property—not to make sales. (SAC ¶¶ 1, 25.) They do not identify a single specific EMAX Token transaction to which the Company was party. And the only statement Plaintiffs attribute to the Company is a whitepaper that was released *after* the end of the relevant period and thus cannot form the basis for any violation. (SAC ¶¶ 1, 61-62.) These allegations are not sufficient to establish a primary violation against the Company, and without a primary violation, Plaintiffs' control person claim must also fail.

Further, even if Plaintiffs could establish a primary violation on which to predicate a 25504 claim, they would still be required to allege how Defendants had materially aided or otherwise assisted the Company in the primary violation. *Siegal v. Gamble*, No. 13-cv-03570-RS, 2016 WL 1085787, at *6 (N.D. Cal. Mar. 21, 2016) ("When Plaintiffs seek to impose secondary liability 'for selling or offering to sell a security by means of false and misleading statements . . . the complaint must include allegations demonstrating how the defendant assisted in the act of selling or offering to sell securities by means of false and misleading statements.'") (quoting *AREI Cases*, 216 Cal. App. 4th at 1014-15). But Plaintiffs have not alleged how each Individual Defendant aided the Company in any alleged primary violation. A claim under Section 25504 would thus fail for this additional reason.

- 10 -

### 3.      Sections 25400 and 25500

To the extent Plaintiffs are pursuing a claim under Section 25400, for which Section 25500 provides a private right of action, this claim fails because the allegations do not satisfy Rule 9(b).  "Section 25400 prohibits false and misleading statements designed to manipulate the securities markets." *Cal. Amplifier*, 94 Cal. App. 4th at 108.[7]  Because this claim is premised on fraud, it must be pleaded with particularity under Rule 9(b) and allege the "who, what, when, where, and how" of each statement that serves as the basis for the claim.  *Vess*, 317 F.3d at 1106-07. Plaintiffs have not identified a single allegedly false or misleading statement that Defendants knew was false on which to predicate this claim, nor have they identified which allegations or statements in the complaint establish a claim against which Defendant.  Plaintiffs simply lump four defendants into a group of "Executive Defendants" without identifying a single specific act or statement by any individual Defendant that establishes liability as to him.  (*See* SAC ¶¶ 385-433.)[8]

"Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more

---

[7] To the extent the alleged violation of Section 25400 is premised on a violation of subsection (b), which prohibits "a series of transactions in any security creating actual or apparent active trading in such security or raising or depressing the price of such security, for the purpose of inducing the purchase or sale of such security by others," Cal. Corp. Code § 25400, Plaintiffs have insufficiently alleged such a series of transactions or any specific intent to induce a purchase by Plaintiffs.  They assert only the conclusory allegations that "Defendant Maher, in conjunction with the other Executive Defendants, manipulated the price of EMAX Tokens by effectively engaging in wash trading . . . ." (SAC ¶ 430.)

[8] The sole potential exception to this is the general reference in paragraph 430 to alleged "wash trading" by Maher and alleged misleading statements by him (and Davis and Speer) regarding the exponential increase in the price of EMAX Tokens.  These general allegations are still insufficient, but even if they were sufficient to establish a claim against Maher and Speer (which is questionable given the allegations' lack of specificity), the claim would still fail as to the remaining Individual Defendants (Perone and Rechnitz) and the Company.

- 11 -

than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (internal quotation marks omitted).  "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[] in the alleged fraudulent scheme.'"  *Id.* (quoting *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989)).  Plaintiffs have not done so, and Defendants cannot be expected to parse the *162 pages and nearly 500 paragraphs* of the Second Amended Complaint and guess at which allegations might form the basis for this claim against each of them.  For this reason alone, the claim should be dismissed.

Additionally, Plaintiffs' claim fails, to the extent it is made pursuant to Sections 25400 and 25500, because Plaintiffs have not alleged a "specific intent to affect the price of a security in order to induce its purchase or sale."  *Cal. Amplifier*, 94 Cal. App. 4th at 110 (requiring such specific intent for a claim under Section 25400(d) which requires that a statement be made for the "purpose of inducing the purchase or sale"); *see also* Cal. Corp. Code § 25400 (providing in subdivisions (b), (c), and (e) that the conduct at issue must be "for the purpose of inducing" or "to induce" the purchase or sale).

A claim under Section 25500 fails for the additional reason that Plaintiffs have failed to allege participation in an unlawful transaction, let alone the requisite *willful* participation by each Individual Defendant and the Company.  Section 25500 does not "reach defendants who did not *directly* participate in the sale of securities or some other 'market activity.'"  *Reiger v. Altris Software, Inc.*, No. 98-CV-528 TW JFS, 1999 WL 540893, at *10 (S.D. Cal. Apr. 30, 1999) (emphasis in original); *Cal Amplifier*, 94 Cal. App. 4th at 111 ("To be liable under section 25500, a person must participate in market manipulation that violates section 25400.").  The direct participation must also be willful.  *See Louisiana Pac. Corp. v. Money Market 1 Inst'l Inv. Dealer*, No. C 09-03529 JSW, 2011 WL 1152568, at *9 (N.D. Cal. Mar. 28, 2011) (dismissing claim

- 12 -

1  under Cal. Corp. Code § 25500 because "Plaintiff fails to allege facts sufficient to

2  demonstrate willful participation").  "[T]he purpose and intent of the willful

3  participation requirement is to clarify and underscore the high level of scienter

4  required for a violation of section 25500." *Cal. Amplifier*, 94 Cal. App. 4th at 112.

5  The requirement thus limits "section 25500 liability to situations where there is an

6  intent to defraud through a knowingly false statement." *Id.*  Plaintiffs have not alleged

7  that any Defendant directly participated in the sale of securities or otherwise engaged

8  in market activity with the requisite intent to defraud.[9]  Indeed, because they have not

9  pleaded any knowingly false statement, they cannot plead any intent to defraud

10  through such statement.

### 4.    Section 25403

12      Plaintiffs reference Section 25403 as a basis for holding persons who provide

13  "substantial assistance" to a "primary violator" liable for a violation of California

14  securities laws.  (SAC ¶ 393.)  It is unclear whether Plaintiffs are pursuing such a

15  theory of liability and against which Defendant, as they have not pled sufficient facts

16  demonstrating a primary violation of any law or that any Defendant provided a

17  primary violator substantial assistance.  Regardless, such a theory of liability is barred,

18  as no private cause of action exists under Section 25403.  *See Wright v. Bloom*, No. C

19  12-00746 WHA, 2012 WL 6000960, at *2 (N.D. Cal. Nov. 30, 2012) ("[T]he civil

20  liability provisions do not expressly provide a private right of action for a violation of

21  Section 25403.  Consequently, as held by the California court of appeal, no private

22  right of action exists under Section 25403.") (citing *Apollo*, 158 Cal. App. 4th at 255).

23  Thus, to the extent Plaintiffs' Tenth Cause of Action is premised on vicarious liability

24  under Section 25403, it must be dismissed with prejudice.

25

26

27  [9] Nor can Plaintiffs establish other Defendants are liable by merely alleging generally,
28  without more, that Maher's alleged "wash trading" was made "in conjunction with the
other Executive Defendants."  (SAC ¶ 430.)

- 13 -

### D.     Plaintiffs' Twelfth Cause of Action Similarly Fails.

Plaintiffs' Twelfth Cause of Action under the Florida Securities and Investor Protection Act ("FSIPA") fails for similar reasons as the Tenth Cause of Action. FSIPA either requires privity—which the Florida Plaintiffs do not and cannot allege they have with Defendants (*see* SAC ¶¶ 448, 461; Section III.A, *supra*)—or alternatively imposes liability on directors, officers, partners, or agents of the seller if such person "personally participated or aided in making the sale."  Fla. Stat. § 517.211(1).  This latter requirement "implies some activity in inducing the purchaser to invest" and requires actively and directly inducing the investor to buy, rather than passive influence.  *Dillon v. Axxsys Int'l, Inc.*, 385 F. Supp. 2d 1307, 1311 (M.D. Fla. 2005) (citing *Nichols v. Yandre*, 9 So.2d 157, 160 (1942)).  Plaintiffs have not alleged personal participation on behalf of each—or any—Defendant, and conclusory statements, absent any specific factual allegations, are not enough.  *Id.* at 1313 (granting Rule 50(b) motion dismissing FSIPA claim where plaintiffs offered evidence only of defendant's involvement in furtherance of seller's business but not in the sale of securities by the seller); *see also Turk v. Pershing LLC*, No. 3:09-CV-2199, 2014 WL 12572906, at *4 (N.D. Tex. Dec. 8, 2014) (dismissing FSIPA claim where plaintiffs failed to allege defendant had any meaningful interfacing with seller's investors or that it was active at the point of purchase of CDs).

Accordingly, Plaintiffs' Twelfth Cause of Action should be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, Defendants request the Court dismiss Plaintiffs' Eighth, Tenth, Eleventh, and Twelfth Causes of Action.

- 14 -

1

2  Dated:  February 21, 2023

3

4

5

6

7

8

9

10

11

12

13

14

15

16  Dated:  February 21, 2023

17

18

19

20

21

22

23

24

25

26

27

28

KING & SPALDING LLP
*/s/ Meghan H. Strong*
MEGHAN H. STRONG (CA 324503)
50 California Street, Suite 3300
San Francisco, CA 94111
Tel.: 415-318-1200
Fax: 415-318-1300
mstrong@kslaw.com

ANDREW MICHAELSON (pro hac vice)
1185 Avenue of the Americas, 34th Floor
New York, NY 10036
Tel.: 212-556-2100
Fax: 212-556-2222
amichaelson@kslaw.com

*Counsel for Defendants Giovanni Perone
and EMAX Holdings, LLC*

COHEN WILLIAMS LLP
*/s/ Michael V Schafler*
MICHAEL V SCHAFLER (CA 212164)
724 South Spring Street, 9th Floor
Los Angeles, CA 90014
Tel.: 213-232-5160
Fax: 213-232-5167
mschafler@cohen-williams.com

*Counsel for Defendant Jona Rechnitz*

[additional counsel on following page]

- 15 -

1

2  Dated: February 21, 2023          KATTEN MUCHIN ROSENMAN LLP

3                                    */s/ Joel R. Weiner*
                                     JOEL R. WEINER (CA 139446)
4                                    2029 Century Park East, Suite 2600
                                     Los Angeles, CA 90067
5                                    Tel.: 310-788-4522
6                                    Fax: 310-712-8414
                                     joel.weiner@katten.com
7

8                                    *Counsel for Defendant Paul Pierce*
9

10  Dated: February 21, 2023         REED SMITH LLP

11                                   */s/ James L. Sanders*
                                     JAMES L. SANDERS (CA 126291)
12                                   1901 Avenue of the Stars, Suite 700
                                     Los Angeles, CA 90067-6078
13                                   Tel.: 310-734-5200
14                                   Fax: 310-712-8414
                                     jsanders@reedsmith.com
15

16                                   *Counsel for Defendant Floyd Mayweather Jr.*
17

18

19

20

21

22

23

24

25

26

27

28

- 16 -

**ATTESTATION**

I, Meghan H. Strong, hereby attest that all other signatories listed above and on whose behalf this filing is submitted concur in this filing's content and have authorized me to file on their behalf.

/s/ Meghan H. Strong
Meghan H. Strong