Joel R. Weiner (SBN 139446)
joel.weiner@katten.com
Mark A. Wooster (SBN 123461)
mark.wooster@katten.com
Sarah J Lee (SBN 335501)
sarah.lee@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone: 310.788.4400
Facsimile: 310.788.4471

Attorneys for Defendant
PAUL PIERCE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| IN RE ETHEREUMMAX INVESTOR LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. CV 22-163 MWF (SKx)<br><br>**DEFENDANT PAUL PIERCE'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>[*Filed in conjunction with Defendants' Reply Memoranda in Support of Omnibus Motions to Dismiss the Second Amended Class Action Complaint*]<br><br>Hearing Date: May 15, 2023<br>Time: 10:00 a.m.<br>Courtroom: 5A – First St. Courthouse<br>Judge: Michael W. Fitzgerald<br><br>Complaint Filed: January 7, 2022<br>SAC Filed: December 22, 2022<br>Trial Date: Not Scheduled |

CV 22-163 MWF (SKx)
**DEFENDANT PAUL PIERCE'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT**

157098872

# TABLE OF CONTENTS

I.   PLAINTIFFS CANNOT, AND IN REALITY DO NOT, RELY ON THE SEC SETTLEMENT AND PRESS RELEASE TO OPPOSE PIERCE'S MOTION TO DISMISS. .................................................................................... 1

II.  PLAINTIFFS DO NOT EVEN ATTEMPT TO ARGUE THEY RELIED ON PIERCE'S TWEETS FOR THEIR PURCHASES. ................................. 1

III. PLAINTIFFS NEVER SHOW WHY PIERCE NOT EXPLICITLY STATING HE WAS BEING PAID FOR PROMOTION HAD AN EFFECT ON THEIR DECISIONS. ............................................................. 2

IV.  PLAINTIFFS STILL DO NOT SHOW ANY OF PIERCE'S TWEETS WERE FALSE OR MISLEADING. ................................................................ 3

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ABC Servs. Grp. v. Health Net of Cal., Inc.*,
   2020 WL 2121372 (C.D. Cal. May 4, 2020) ....................................................................1, 2

*Kwikset Corp. v. Superior Ct.*,
   51 Cal. 4th 310 (2011) .........................................................................................................2

*Louis v. Nailtiques Cosms. Corp.*,
   423 F. App'x 711 (9th Cir. 2011) ........................................................................................2

**DEFENDANT PAUL PIERCE'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT**

157098872

## I. PLAINTIFFS CANNOT, AND IN REALITY DO NOT, RELY ON THE SEC SETTLEMENT AND PRESS RELEASE TO OPPOSE PIERCE'S MOTION TO DISMISS.

As shown in Pierce's Opposition to Plaintiffs' Request for Judicial Notice, the SEC Settlement and Press Release are not proper subjects for judicial notice, at least not as to the truth of the matters asserted therein, which is the purpose for which Plaintiffs are trying to admit them. The SEC's view regarding its regulation of federal securities laws has no relevance in evaluating Plaintiffs' claims which are all under state law, and settlements and the opinions of a third party are not admissible evidence or part of the pleadings.

Further, while Plaintiffs spend half their brief talking about Pierce's settlement with the SEC, when they get around to their actual argument on page 6, the SEC is barely mentioned. Even the Plaintiffs recognize the irrelevance of the SEC Settlement and Press Release, and anything Plaintiffs say regarding them should be disregarded.

## II. PLAINTIFFS DO NOT EVEN ATTEMPT TO ARGUE THEY RELIED ON PIERCE'S TWEETS FOR THEIR PURCHASES.

In its Order, the Court ruled Plaintiffs had not alleged facts to establish reliance (ECF No. 99 ("Order") at 39), and that defect remains in the SAC. Pierce showed in his opening brief that it was not plausible for Plaintiffs to claim they made the decision to enter the risky cryptocurrency market based upon vague tweets from a basketball player, especially since Plaintiffs gave reasons why they would rely upon the opinions of other Defendants. In their Opposition, Plaintiffs make no attempt to refute this argument, and make no attempt to show why they trusted Pierce's opinions in this market. Thus, Plaintiffs should be deemed to have conceded this argument. *ABC Servs. Grp. v. Health Net of Cal., Inc.*, 2020 WL 2121372, at *5 (C.D. Cal. May 4, 2020) ("Courts in this district, and many others, have found that a failure to address an argument in opposition briefing constitutes a concession of that argument."), *rev'd*

1   CV 22-163 MWF (SKx)
**DEFENDANT PAUL PIERCE'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT**

157098872

*in part on other grounds*, 2022 WL 187849 (9th Cir. Jan. 20, 2022). All Plaintiffs allege concerning why they paid attention to Pierce's tweets was that they were basketball fans. This is not a plausible claim for reliance or causation.

Further, even if one accepts for the sake of argument that there was something false or misleading in any of Pierce's tweets, Plaintiffs' allegations make it clear that the parts of the tweets Plaintiffs claim were false had nothing to do with Plaintiffs' EMAX Tokens purchases. Plaintiffs' sole allegation of a connection between Pierce's tweets and Plaintiffs' purchase decisions is their repeated allegation that "[t]hese promotions regarding the growth potential and price increases for EMAX Tokens induced [Plaintiff] to make his first and second purchases of EMAX Tokens on [certain dates]." (ECF No. 102 ("SAC") ¶¶ 195, 197, 200, 228, 230, 233, 254, 256, 259.) But the problem for Plaintiffs is that there was nothing false about any statement or alleged implication made regarding growth potential or price increases. There was potential for growth and the representation regarding the increase in price was true—the Tokens did increase in value. Plaintiffs' complaint is the Tokens did not grow in value for as long as they would have liked but no reasonable person could believe that Pierce or anyone could guarantee EMAX Tokens or indeed that any product would be worth more at all times in the future, and statements about future value are not a proper basis for a claim of misrepresentation. *See Louis v. Nailtiques Cosms. Corp.*, 423 F. App'x 711, 713 (9th Cir. 2011) ("A statement about future value is ordinarily classified as a speculative observation and a mere statement of opinion, and as such, does not constitute a basis for a complaint of fraud."). The lack of allegations showing a plausible causal connection or reliance on a *misrepresentation* dooms the claim. *See Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 326–27 (2011).

### III. PLAINTIFFS NEVER SHOW WHY PIERCE NOT EXPLICITLY STATING HE WAS BEING PAID FOR PROMOTION HAD AN EFFECT ON THEIR DECISIONS.

Plaintiffs allege that Pierce's tweets were false and misleading because he did not explicitly state that he was being paid to endorse EMAX. But as pointed out in Pierce's opening brief, not only was it obvious that Pierce was a paid promoter, Plaintiffs give no reason why the omission of an explicit statement that he was being paid was false or misleading. Plaintiffs simply assert it was so. But if Plaintiffs were indeed going to make cryptocurrency purchasing decisions based on three tweets from a basketball player who clearly was a paid endorser, it defies logic that anything would have been different had he given a more explicit statement to that effect.

In their Opposition, Plaintiffs do not even try to show why Pierce's alleged failure to state he was a paid promoter affected their cryptocurrency decisions, so again, Plaintiffs have conceded this argument.

Plaintiffs keep referring to the SEC's complaint about Pierce not disclosing explicitly his being paid. However, even the SEC did not claim this was false or misleading, but that it violated federal securities disclosure law. Plaintiffs make no plausible argument, indeed, no argument of any kind, that they were misled because Pierce did not explicitly state he was being paid, nor that an explicit statement would have affected their decisions. As shown in Pierce's opening brief, Plaintiffs were aware Mayweather was a paid promoter and that did not stop them from buying EMAX Tokens. They do not explain why Pierce stating he was paid would have made any difference either, because they cannot.

### IV. **PLAINTIFFS STILL DO NOT SHOW ANY OF PIERCE'S TWEETS WERE FALSE OR MISLEADING.**

If the Court were to find for Plaintiffs on reliance/causation and the myriad arguments in the Omnibus Motions, it should nevertheless grant dismissal for the reason that Pierce's tweets were "nonactionable puffery, accurate, or immaterial." (Order at 39.) Plaintiffs have had two opportunities to demonstrate that Pierce's tweets were false and misleading and have failed to do so.

In the Opposition, Plaintiffs do make a few small attempts to attack the veracity of Pierce's tweets. They now claim in their brief, but nowhere in the SAC, that the use of "in the past month" in the May 26 tweet was misleading because Pierce had been active for several days, not an entire month, but of course his reference to "in the past month" did not mean he had been active that entire month, just that he had made money within that period of time, which he did. They also now complain about the phrase "my own boss," but that phrase is hardly misleading—Pierce was not an employee and his decisions on trading were his own. It is also too vague a phrase to be anything but puffery. They also now allege in their brief (not the SAC) that because ESPN paid Pierce more in the previous twelve months than he had received from trading EMAX, that his tweet was untrue. But that phrase was also too vague to be actionable, for Pierce had worked only a few months of that calendar year for ESPN before he had been let go. His reference could have been to the calendar year rather than the past twelve months, and in any event was nonspecific "trash talk" directed to ESPN. The gist of the tweet was to bring attention to EMAX so those interested could "check it out for yourself," citing to the EMAX website. (SAC ¶ 82.)

As for the May 28 tweet, Plaintiffs try to claim that was false by completely contradicting what they have been alleging against Pierce since the beginning of this lawsuit. In their original complaint and the SAC, Plaintiffs accused Pierce of trying to conceal that the wallet referred to in the May 28 tweet was his, and boast about their ability to use their forensic skills to prove that the wallet belonged to Pierce. (SAC ¶¶ 76–77.) But now that the SEC states that the wallet did not belong to Pierce, Plaintiffs claim that Pierce misled people by making them think the wallet was his— the complete opposite of what Plaintiffs have been alleging! Plaintiffs cannot claim they were misled into thinking that wallet belonged to Pierce when they claimed his tweet was trying to cover that up. It was Plaintiffs' counsel's machinations, not Pierce's tweet, that led them to conclude the wallet belonged to Pierce, and he cannot

be responsible for Plaintiffs' counsel's flight of fancy. In any event, there is nothing inaccurate about the tweet—a screenshot of an account value with goofy emojis.

Plaintiffs also try to argue that the phrase "n for the long haul" was misleading because Pierce did sell some but not all of his EMAX Tokens, but they completely fail to address Pierce's arguments that that vague statement cannot be considered false, especially when Pierce did not sell all his holdings. They also now try to claim "now is the time to jump aboard" was misleading because the peak price of the EMAX Tokens was "near." (ECF No. 137 ("Plaintiff's Opposition to Pierce's Motion to Dismiss") at 9:3-5.) But such a statement about such a volatile item is clear puffery as no one could believe that anyone knows the exact time an item such as cryptocurrency will rise or fall in price. And even Plaintiffs admit that the Tokens did reach peak price after the tweet; thus, it was a good time to get in, before the peak.

Plaintiffs in their brief also complain about tweets Pierce posted on May 29 and June 6. However, in the SAC, Plaintiffs are quite clear they saw only the tweets on May 26, 28, and 30. (SAC ¶¶ 195, 197, 200, 228, 230, 233, 254, 256, 259, 297, 302 304, 330.) Thus, Plaintiffs cannot rely on the May 29 and June 6 tweets (which includes the "double down" tweet) to try to state a claim against Pierce.

Moreover, none of Pierce's tweets make any specific factual assertions about any characteristics of the Tokens, but merely general statements that no reasonable consumer would base a purchasing decision upon—classic puffery.

Failing to actually show anything false or misleading in Pierce's tweets, Plaintiffs try to argue that somehow when viewed in the whole context, Pierce's tweets are actionable. But Plaintiffs simply make this claim, and do not show how Pierce's true, or at most puffing, tweets became false in the totality. Simply saying they did is insufficient; Plaintiffs must make a coherent argument as to how this occurred, and they fail to do so.

**DEFENDANT PAUL PIERCE'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT**

157098872

| | |
|---|---|
| | Respectfully submitted, |
| Dated: May 1, 2023 | **KATTEN MUCHIN ROSENMAN LLP** |
| | By: */s/Joel R. Weiner* |
| | Joel R. Weiner |
| | Attorneys for Defendant Paul Pierce |