Joel R. Weiner (SBN 139446)
joel.weiner@katten.com
Mark A. Wooster (SBN 123461)
mark.wooster@katten.com
Sarah J Lee (SBN 335501)
sarah.lee@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone: 310.788.4400
Facsimile: 310.788.4471

Attorneys for Defendant
PAUL PIERCE

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| IN RE ETHEREUMMAX INVESTOR LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. CV 22-163 MWF (SKx)<br><br>**DEFENDANT PAUL PIERCE'S NOTICE OF MOTION AND MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date: September 25, 2023<br>Time:         10:00 a.m.<br>Courtroom:    5A – First St. Courthouse<br>Judge:        Michael W. Fitzgerald<br><br>Compl. Filed: January 7, 2022<br>TAC Filed:    June 26, 2023<br>Trial Date:   Not Scheduled |
|---|---|

CV 22-163 MWF (SKx)

**DEFENDANT PAUL PIERCE'S NOTICE OF MOTION AND MOTION TO DISMISS THE THIRD AMENDED CLASS ACTION COMPLAINT**

158410838

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO ALL PARTIES HEREIN AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 25, 2023 at 10:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 5A before the Honorable Michael W. Fitzgerald, located at First Street Courthouse, 350 W. 1st Street, Los Angeles, CA 90012, Defendant Paul Pierce ("Pierce") will and does hereby move this Court ("Motion") for an Order dismissing portions of the Third Amended Class Action Complaint (ECF No. 163) (the "TAC").

Specifically, Pierce moves to dismiss: (1) both securities claims alleged against him (both titled the "Ninth Causes of Action," for Manipulation and Insider Trading, respectively) (TAC ¶¶ 417–31 and 446–61)[1]; (2) the First, Third, Fifth and Sixth Causes of Action for deceptive practices to the extent premised on Pierce's Twitter posts on May 28, 2021 (screen shot) and May 30, 2021 (long haul) (TAC ¶¶ 69, 82, 205, 207, 210, 276, 278, 281, 333, 338, 340, 366); and (3) the claims and prayer for injunctive relief (TAC ¶¶ 229, 266, 301, 355, 378, 430 and Prayer for Relief ¶ F). In light of the Court's Order on the motions to dismiss the Second Amended Complaint, Pierce does not move to dismiss the Second Cause of Action (UCL "unfair" prong) or the First, Third, Fifth and Sixth Causes of Action to the extent premised on Pierce's Twitter post on May 26, 2021 (EthereumMax link) (TAC ¶ 76).

This Motion is made pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6) and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the court filings in this action, such matters of which this Court must or may take judicial notice, the arguments of counsel, and such other materials and arguments as may be presented by the parties or the Court may otherwise properly consider in deciding this Motion.

---

[1] The TAC misnumbers several of the claims, including, relevant to this Motion, the claim for insider trading, which is titled the Ninth Cause of Action but presumably should have been numbered the Eleventh Cause of Action. (TAC at 148.)

CV 22-163 MWF (SKx)

**DEFENDANT PAUL PIERCE'S NOTICE OF MOTION AND MOTION TO DISMISS THE THIRD AMENDED CLASS ACTION COMPLAINT**

158410838

This Motion is filed per the briefing and hearing schedule set forth in this Court's Order on the parties' stipulation issued on July 13, 2023. (ECF No. 168.)

Pursuant to Civil Local Rule 7-3, on July 10, 2023, counsel for the parties met and conferred regarding this Motion.

Dated: August 1, 2023            **KATTEN MUCHIN ROSENMAN LLP**

By: */s/Joel R. Weiner*
Joel R. Weiner
Attorneys for Defendant Paul Pierce

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................1

II.  PLAINTIFFS NO LONGER ALLEGE ANY PURCHASES OR SALES OF EMAX TOKENS BY PIERCE ........................................................................2

III. BOTH SECURITIES CLAIMS ALLEGED AGAINST PIERCE MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM. ....................................4

   A.  The Ninth Cause of Action Fails to State a Manipulation Claim against Pierce ...............................................................................................4

       1.  Pierce Cannot Have Engaged in Manipulation Because He is Not Alleged to Have Bought or Sold Any EMAX Tokens. ........4

       2.  The Only Manipulation Claim Against Pierce is Alleged Parking, But What is Alleged is Not Parking. ............................6

   B.  The Eleventh (Mislabeled Ninth) Cause of Action Fails to State a Claim for Insider Trading against Pierce. ..............................................7

       1.  Pierce Cannot Have Engaged in Insider Trading Because He is Not Alleged to Have Bought or Sold Any EMAX Tokens. ........7

       2.  Because Plaintiffs Changed Their Allegations so that the Wallet Sales No Longer are Alleged to be Made by Pierce, Plaintiffs Now Lack Privity with Pierce. ......................................8

       3.  Plaintiffs Could Have an Insider Trading Claim Against Pierce Only if They Sold Tokens to Him, but Plaintiffs Allege Only that They Purchased Tokens. ......................................................9

   C.  Plaintiffs Totally Defied this Court's Order that They Not Incorporate Mass Numbers of Previous Paragraphs in Their Causes of Action and that They Cite to the Specific Paragraphs that Detail the Conduct that Forms the Basis for Their Claims. ...........................................................10

IV.  THE CLAIMS MADE AGAINST PIERCE IN THE FIRST, THIRD, FIFTH, AND SIXTH CAUSES OF ACTION BASED ON THE MAY 28 AND MAY 30 TWEETS SHOULD BE DISMISSED BECAUSE, UNDER PLAINTIFFS' NEW ALLEGATIONS, THOSE TWEETS WERE NOT FALSE OR MISLEADING. ..............................................................................................11

V.   THE PRAYER AND CLAIMS FOR INJUNCTIVE RELIEF MUST BE DISMISSED AS THERE IS NO RISK OF FUTURE IMMINENT HARM. ...13

VI.  CONCLUSION ............................................................................................13

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

## Table of Authorities

Page(s)

**Cases**

*Clapper v. Amnesty Int'l USA*
    568 U.S. 398 (2013) .................................................................................................13

*In re Accuray, Inc. Shareholder Derivative Lit.*
    757 F. Supp. 2d 919 (N.D. Cal. 2010) .......................................................................5

*In re McKesson*
    2018 WL 2197548 (N.D. Cal. 2018) .........................................................................5

*In re Verisign, Inc., Derivative Litig.*
    531 F. Supp. 2d 1173 (N.D. Cal. 2007) .....................................................................5

*Yoshikawa v. S.E.C.*
    192 F.3d 1209 (9th Cir. 1999) ...................................................................................8

**Statutes**

Cal. Bus & Prof. Code 17200 ......................................................................................12

Cal. Corp. Code §§ 25000-25707 ..................................................................................5

Cal. Corp. Code §§ 25000-31516 ..................................................................................4

Cal. Corp. Code § 25400 ................................................................................................5

Cal. Corp. Code § 25402 ..........................................................................................6, 10

Cal. Corp. Code § 25500 ................................................................................................5

Fla. Stat. § 501.201 ......................................................................................................12

**Rules**

Fed. R. Civ. P. 9(b) .........................................................................................6, 7, 12, 14

Fed. R. Civ. P. 11 ...........................................................................................................3

## I. INTRODUCTION.

In their Third Amended Class Action Complaint ("TAC"), Plaintiffs significantly changed their allegations against Pierce. Plaintiffs now admit that the wallet which formed the only basis for their claims that Pierce purchased and sold EMAX Tokens did not actually belong to Pierce (*see, e.g.,* TAC ¶ 68)[2], which means that none of those transactions can form the basis for a claim against Pierce. However, Plaintiffs did not, in response to this realization that the wallet did not belong to Pierce, add any allegations of purchases or sales by Pierce himself. Instead, they simply kept in the same allegations of transactions by that wallet, acting as if purchases or sales by someone other than Pierce has relevance with regard to Pierce; but they do not. Plaintiffs do not allege any purchases or sales by Pierce, and thus the securities claims and certain aspects of the consumer law claims against Pierce must be dismissed.

As discussed below, there are two securities claims alleged against Pierce. The newly added Manipulation claim (Ninth Cause of Action)—directed almost entirely at other defendants—barely mentions Pierce in a one-sentence conclusory allegation of "parking" that does not allege any facts at all against Pierce much less a plausible claim against him. (TAC ¶ 424.) The Insider Trading claim (second Ninth Cause of Action) fails not only because Plaintiffs have failed to correct the defects the Court found last round as explained below, but also because under Plaintiffs' changed allegations Pierce is no longer alleged to have purchased or sold any EMAX Tokens.

Portions of the consumer law claims should also be dismissed given the changed allegations. There was nothing misleading in the May 28 tweet—a screen

---

[2] Plaintiffs changed paragraph 68 from "a wallet <u>owned/controlled by</u> Pierce received and sold millions of dollars' worth of EMAX Tokens" (SAC ¶ 75 (emphasis added)) to "a wallet <u>closely connected to</u> Pierce" (TAC ¶ 68 (emphasis added)). Plaintiffs did so with the supposed "connection" being that the wallet traded in tokens of an unrelated company, Ethernity, that sponsored a charity poker tournament Pierce once played in. (TAC ¶ 71.)

**DEFENDANT PAUL PIERCE'S NOTICE OF MOTION AND MOTION TO DISMISS THE THIRD AMENDED CLASS ACTION COMPLAINT**

158410838

shot with emojis added—and Plaintiffs have not alleged otherwise. As to Pierce's May 30 tweet, Plaintiffs claim that it was misleading to state he was "n for the long haul," but their only basis for that is their allegation in paragraph 83 that the owner of the wallet—not Pierce—sold EMAX Tokens three days after that tweet was posted. (TAC ¶ 83.) Clearly, that *someone else* sold EMAX Tokens three days after Pierce said he was "n for the long haul" does not show that Pierce was not in it for the long haul. As such, these two tweets are not deceptive as pled and should be dismissed as a basis for the consumer claims in the First, Third, Fifth, and Sixth Causes of Action, leaving only the May 26 post (EthereumMax link) (*id.* ¶ 76) as a basis for those claims. This motion does not challenge the Second Cause of Action (UCL "unfair" prong).

As the TAC now alleges, Pierce was a paid celebrity promoter and did not trade millions of dollars' worth of tokens on his promotional tweets. The securities claims should be dismissed without leave to amend and the consumer law claims narrowed.

## II. PLAINTIFFS NO LONGER ALLEGE ANY PURCHASES OR SALES OF EMAX TOKENS BY PIERCE.

For more than one year, through two Complaints in this case alone, Plaintiffs have claimed that Pierce attempted to hide that the wallet displayed in Pierce's May 28, 2021 tweet was his, but that Plaintiffs' counsel through their sleuthing determined that it was Pierce's. (Compl. ¶ 52; SAC ¶ 76.) They then claimed that all the transactions they alleged were connected to that wallet were Pierce's transactions. Significantly, they did not allege any sales or purchases by Pierce other than those connected to that wallet.

Because Pierce, at the motion to dismiss stage, had to accept the allegations of the previous complaints as true, he could not bring a motion to dismiss based on the grounds that, in reality, that wallet did not belong to Pierce and that he did not make any of the millions of dollars of purchases or sales alleged against him. But now,

Plaintiffs have finally realized that what Pierce's counsel has been telling them is true—that wallet did not belong to Pierce.[3]

Thus, Plaintiffs have attempted to pivot, but in doing so, have undermined most of their case against Pierce. They now allege that the wallet does not belong to Pierce, but they still spend the bulk of their allegations against Pierce describing sales and purchases by whoever actually owned that wallet, even though that is now irrelevant. Yet incredibly, Plaintiffs have not changed their allegations to claim any purchases and sales by Pierce. They instead continue to list all the same transactions as before, as if nothing had changed in their allegations. The result is that there is not a single allegation in the TAC that Pierce bought or sold even one EMAX Token.[4] Plaintiffs' failure to claim any purchases or sales by Pierce is fatal to most of their claims against Pierce, particularly the securities claims and also some of the consumer law claims.[5]

---

[3] Because all the arguments being brought by this Motion could not have been brought by Pierce against either of the previous Complaints, it is not barred by F.R.C.P. 12(g)(2), which only bars a party from "raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. Proc. 12(g)(2). The arguments raised in this Motion were not available to Pierce until now.

[4] There are a few allegations late in the TAC that vaguely refer to Pierce purchases or sales, but they clearly refer back to the wallet transactions and not any transactions by Pierce himself. (*See, e.g,* TAC ¶ 453.)

[5] Plaintiffs' only attempt to connect the wallet to Pierce is an implausible and unsupported claim that the wallet "is controlled by someone either working as an agent on his behalf or close to him personally." (TAC ¶ 71.) Plaintiffs' entire basis for this allegation is that the wallet did some trades in Ethernity tokens and Pierce once played in poker tournament sponsored by Ethernity. (*Id.*) A card game is hardly a sufficient basis for such an allegation. Further, this allegation contradicts the SEC order upon which Plaintiffs heavily rely: Plaintiffs allege "[t]he SEC order states that the [May 28] tweet of the screenshot was of another person's holdings that were provided to him for promotional purposes." (*Id.* ¶ 70.) So this was a wallet provided to him by EMAX for promotional purposes, not a wallet controlled by Pierce. Indeed, Plaintiffs allege that someone else was the "ultimate owner" of the wallet. (*Id.* ¶ 85.) Plaintiffs cannot bootstrap a claim by implying conspiracy; such claims do not exist under California Securities Law, as the Court held in dismissing the conspiracy claim on the prior motion to dismiss. (ECF No. 161, Order at 2.)

**DEFENDANT PAUL PIERCE'S NOTICE OF MOTION AND MOTION TO DISMISS THE THIRD AMENDED CLASS ACTION COMPLAINT**

158410838

## III. BOTH SECURITIES CLAIMS ALLEGED AGAINST PIERCE MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM.

Pierce is named in two securities claims. The first of those, labeled as the Ninth Cause of Action, beginning at paragraph 417 of the TAC, is for alleged violation of the manipulation sections of the California Corporate Securities Law, California Corporations Code sections 25400 and 25500. (TAC ¶ 417–31.) The second securities claim brought against Pierce is also (mis)labeled as the Ninth Cause of Action, beginning at paragraph 446, and is for insider trading, based on California Corporations Code section 25402.[6] (*Id.* ¶ 446–61.)

Both of these securities claims against Pierce require, as an element, that he purchased or sold EMAX Tokens. Thus, Plaintiffs' failure to allege even one purchase or sale by Pierce dooms those claims against Pierce. Furthermore, other required elements of these claims are completely absent or are alleged without the required specificity under Rule 9(b). Neither claim even applies to Pierce, as addressed below. After many attempts at pleading a claim, the securities claims against Pierce should be dismissed without leave to amend.

### A. The Ninth Cause of Action Fails to State a Manipulation Claim against Pierce.

#### 1. Pierce Cannot Have Engaged in Manipulation Because He is Not Alleged to Have Bought or Sold Any EMAX Tokens.

As Plaintiffs themselves allege, in paragraph 419 of the TAC, section 25400 can apply only "in connection with the purchase or sale of any security . . . ." (TAC ¶ 419.) In paragraph 419, Plaintiffs then list the type of transactions which would violate section 25400, all of them involving the defendant purchasing or selling a

---

[6] Pierce's name also appears in the body of the Eighth Cause of Action for "Qualification," but that claim is not alleged against Pierce and it is unclear why his name is mentioned. (*See, e.g,* TAC ¶ 413.)

**DEFENDANT PAUL PIERCE'S NOTICE OF MOTION AND MOTION TO DISMISS THE THIRD AMENDED CLASS ACTION COMPLAINT**

158410838

security. (*Id.*)

However, as detailed above, Plaintiffs never allege Pierce bought or sold even one EMAX Token. Thus, by definition, he could not have committed manipulation or violated section 25400 in any manner alleged by Plaintiffs. That alone calls for dismissal of this cause of action against Pierce.

In addition, the allegations of the manipulation cause of action make it clear that Pierce does not belong in that cause of action. In their allegations, Plaintiffs lay out different ways a party could be liable for manipulation, such as wash sales, matched orders, parking, etc., and allege how different defendants allegedly engaged in such activities. (TAC ¶¶ 420–23.) But Pierce is never even mentioned in any of those paragraphs—there are no claims in those paragraphs that he engaged in wash sales, or parking, or matched sales, or anything else. (*Id.*) Pierce's name does not even appear in this cause of action until paragraph 424, which is a one-sentence paragraph that only says, in its entirety: "Likewise, Defendants Perone, Maher, Davis, Rechnitz, and Pierce, each engaged in improper parking by their use of various pass-through wallet addresses to obscure their respective ownership and control over the wallets and the digital assets within." (*Id.* ¶ 424.) Inserting Pierce's name into this sentence without any other factual allegations as to what he supposedly did does not state a plausible claim and falls far short of the requirements of Rule 9(b). *See, e.g.*, *In re McKesson*, 2018 WL 2197548 at *15-16 (N.D. Cal. 2018) (fraud based securities claims must comply with Rule 9(b)); *In re Accuray, Inc. Shareholder Derivative Lit.*, 757 F. Supp. 2d 919 (N.D. Cal. 2010); *In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173 (N.D. Cal. 2007).

That conclusory statement is not only insufficient to support a claim, but is contrary to the allegations of the TAC. The only transactions Plaintiffs allege are tied to Pierce are ones connected to a wallet whose address was given to Pierce to publicize for promotional purposes. Pierce could not have "obscur[ed]" his

**DEFENDANT PAUL PIERCE'S NOTICE OF MOTION AND MOTION TO DISMISS THE THIRD AMENDED CLASS ACTION COMPLAINT**

158410838

"ownership and control" over that wallet because he did not have any ownership or control over that wallet.[7] (TAC ¶ 424.) Pierce does not belong in the manipulation cause of action and it should be dismissed against him.

### 2. The Only Manipulation Claim Against Pierce is Alleged Parking, But What is Alleged is Not Parking.

"Parking," in short, is a sham transaction typically used to circumvent regulatory requirements. As an example, a broker-dealer sells shares to a third party with the understanding that the third party will repurchase the shares at a later date in a maneuver that allows a firm to reduce their position for disclosure deadlines. Courts have variously referred to parking as "contrived transactions designed to remove securities from the firm's inventory in order to avoid the required haircuts," […] "a purported transfer of ownership in securities combined with a secret [repurchase] agreement," […] "sham transactions," […] "not in fact bona fide purchases," […] a "deceptive device to overstate [a] firm's net capital position," […] or a "scheme," […] used "to circumvent net capital requirements." *Yoshikawa v. S.E.C.*, 192 F.3d 1209, 1213 (9th Cir. 1999) (citations omitted).

In *Yoshikawa*, the Ninth Circuit extensively examined what constitutes "parking" of securities, and concluded the following:

> Based on our review and analysis of the "parking" case law, we conclude that securities "parking" is, at a minimum, comprised of the following elements:
> (1) a pre-arrangement to sell and then buy back securities (to conceal true ownership);
> (2) on the same, or substantially the same, terms (thus keeping the market risk entirely on the seller);
> (3) for a bad-faith purpose, accomplished through a sham transaction in which nominal title is transferred to the purported buyer while the

---

[7] Plaintiffs also give no indication how this supposed "parking" damaged Plaintiffs in any manner. Plaintiffs do not allege that they made any purchase or sale decision based on what wallets Pierce supposedly owned or controlled.

economic incidents of ownership are left with the purported seller.

*Id.*

Plaintiffs do not even come close to alleging that Pierce did anything like parking. They do not claim that Pierce arranged for someone else to buy his EMAX Tokens with the agreement that he later buy them back at the same or any price. As best as Pierce can tell, all Plaintiffs allege is a conclusory claim that Pierce supposedly obscured the ownership and control of unspecified wallet addresses. That is not parking or any kind of market manipulation claim.

### B. The Eleventh (Mislabeled Ninth) Cause of Action Fails to State a Claim for Insider Trading against Pierce.

#### 1. Pierce Cannot Have Engaged in Insider Trading Because He is Not Alleged to Have Bought or Sold Any EMAX Tokens.

As Plaintiffs themselves allege in their insider trading cause of action, section 25402 makes it illegal "to purchase or sell any security of the issuer in California at a time when that person knows" certain material information. (TAC ¶ 451.) Indeed, when ruling on the motions to dismiss the SAC, this Court dismissed the insider trading claim against defendant Perone because "Plaintiffs do not allege even a single sale of EMAX Tokens by Defendant Perone." (ECF No. 161, Order at 25.) The Court allowed the insider trading claim against Pierce to remain because of the allegations in the SAC alleging transactions by the wallet, and the SAC's claim that such wallet transactions were by Pierce. (*Id.*)

However, since Plaintiffs have been forced to concede that Pierce was not the owner of the wallet, and Plaintiffs have not in the TAC specified any purchases or sales made by Pierce himself but only wallet purchases, Plaintiffs have no claim against Pierce for violation of section 25402, just like they did not have a claim against defendant Perone.

## 2. Because Plaintiffs Changed Their Allegations so that the Wallet Sales No Longer are Alleged to be Made by Pierce, Plaintiffs Now Lack Privity with Pierce.

Due to the fact that Pierce did not sell any EMAX Tokens, Plaintiffs lack privity with Pierce, which is required under this cause of action. The Court previously decided that there was possible privity between Plaintiffs and Pierce because "there could be a plausible argument that the Tokens Plaintiffs purchased were the same Tokens Pierce sold off given the massive number of Tokens he is alleged to have sold on dates in which certain Plaintiffs purchased Tokens." (ECF No. 161, Order at 23-24.) But now, Plaintiffs no longer allege that Pierce sold off a massive number, or any number, of Tokens. Pierce clearly cannot have privity with any Plaintiff when he did not sell any Tokens.

Indeed, when one eliminates the wallet transactions, Plaintiffs' claims against Pierce are even weaker than those that were made in the SAC against Mayweather, which this Court found insufficient:

> Plaintiffs contend that, although Mayweather's representatives refused payment for his promotions in EMAX Tokens, Defendant Davis "later clarified" during a podcast that Mayweather did get paid in EMAX Tokens and then sold them off. (SAC ¶ 123). This allegation is far too vague to raise an inference of privity, as it does not specify how many Tokens Mayweather supposedly received or when he sold them off.

(ECF No. 161, Order at 24.)

Having abandoned claiming that Pierce sold a massive number of Tokens, Plaintiffs now lack privity and are without a cause of action for insider trading.[8]

---

[8] Once again, though the Court previously made certain rulings on privity, Pierce could not have raised the defense as discussed above until Plaintiffs materially changed their allegations in the TAC, and therefore Pierce's arguments comply with F.R.C.P. 12(g)(2).

### 3.   Plaintiffs Could Have an Insider Trading Claim Against Pierce Only if They Sold Tokens to Him, but Plaintiffs Allege Only that They Purchased Tokens.

In addition, even if there were sufficient allegations that Pierce purchased and sold Tokens, Plaintiffs do not have standing to bring a claim for insider trading. First, as the Court noted, "It is not clear to the Court that the sale of the Tokens, after the celebrity promotions were publicized, can be regarded as improper given the sales occurred once the relevant information became public." (ECF No. 161, Order at 26.) So any sales by Pierce are not relevant.[9]

Second, while the Court stated that it is possible that purchases made before the celebrity promotions could be problematic (*id.*), none of the Plaintiffs could have a claim based on such purchases. If a defendant purchased Tokens based on insider information that there was about to be a celebrity promotion that would increase the stock price, the persons damaged by that would be those who sold their Tokens to the insider at the artificially low price before the promotions occurred. Those who bought the stock before the information came out would not be damaged—indeed, they could have benefited.

Not surprisingly, Pierce has not located any case in which a *purchaser* of a security was able to bring a claim regarding a defendant purchasing stock using insider information that good news was about to be announced that would boost the stock price. That is a claim brought by sellers. But none of the Plaintiffs has alleged that they sold any Tokens to anyone, much less to Pierce. They allege only that they purchased Tokens. (TAC ¶¶ 448, 457, 459.) Plaintiffs cannot state any claim for insider trading based on their purchases of Tokens.

---

[9] Indeed, section 25402 applies only to information "which is not generally available to the public," and does not apply where defendant "has reason to believe that the person selling to or buying from him is also in possession of the information." Cal. Corp. Code § 25402.

**DEFENDANT PAUL PIERCE'S NOTICE OF MOTION AND MOTION TO DISMISS THE THIRD AMENDED CLASS ACTION COMPLAINT**

158410838

Likewise, Plaintiffs cannot make a claim based on Pierce's receiving Tokens from the Executive Defendants. Such Tokens clearly were not purchased from any Plaintiff; thus, no Plaintiff could have been damaged by Pierce receiving such Tokens.

### C. Plaintiffs Totally Defied this Court's Order that They Not Incorporate Mass Numbers of Previous Paragraphs in Their Causes of Action and that They Cite to the Specific Paragraphs that Detail the Conduct that Forms the Basis for Their Claims.

In its ruling regarding the SAC, the Court specifically admonished the Plaintiffs for "shotgun pleading," and specifically for mass incorporation of previous paragraphs without giving the reader a clue as to which incorporated paragraphs apply to which claim or which defendant. The Court held:

> While Plaintiffs may incorporate by reference previous paragraphs of the Complaint into each claim, they may not incorporate each and every factual allegation into each claim. Plaintiffs should cite to the specific paragraph(s) that detail the conduct they believe renders that specific Defendant liable for a specific securities violation.

(ECF No. 161, Order at 28.)

Plaintiffs blithely ignored the Court's Order. The manipulation claim starts with paragraph 417, which indiscriminately incorporates paragraphs 1-434, going even beyond the beginning of the cause of action. (TAC ¶ 417.) It incorporates every cause of action previous to it, even though many of those causes of action are not even against the defendants named in the manipulation claim. It incorporates dozens of paragraphs in which Pierce is not named. It gives no clue whatsoever which incorporated paragraphs in which Pierce is mentioned actually apply to the manipulation claim. Plaintiffs' approach is particularly egregious as to Pierce, given that he is barely mentioned in the cause of action for manipulation, with his name seemingly randomly jammed in a list of defendants in a one-sentence conclusory allegation. (*Id.* ¶ 424.)

The insider trading claim has the same defect. It starts at paragraph 446 and incorporates paragraphs 1-185, again bringing into the claim dozens of paragraphs that never mention Pierce. (TAC ¶ 446.) This cause of action never states which of those 185 paragraphs actually are part of the insider trading claim against Pierce.

Thus, the TAC gives no indication, and no specification under Rule 9(b) or just the basic rules of pleading, of the actual actions by Pierce or Plaintiffs that constitute the securities causes of action. Plaintiffs do not specify which specific purchases or sales by Pierce are the bases for their claims. They do not specify which purchases by Plaintiffs are the purchases on which they base their standing or damages. They just make a series of broad, vague allegations and leave it to Pierce and the Court to guess at what Plaintiffs' claims truly are.

The Court made clear in its Order, "[t]his will be Plaintiffs' final opportunity to amend. Any future successful motions to dismiss will be granted <u>without leave to amend.</u>" (ECF No. 161, Order at 23-24 (emphasis in original).) Plaintiffs' blatant defiance of this Court's ruling alone calls for the dismissal of the securities causes of action.

## IV. THE CLAIMS MADE AGAINST PIERCE IN THE FIRST, THIRD, FIFTH, AND SIXTH CAUSES OF ACTION BASED ON THE MAY 28 AND MAY 30 TWEETS SHOULD BE DISMISSED BECAUSE, UNDER PLAINTIFFS' NEW ALLEGATIONS, THOSE TWEETS WERE NOT FALSE OR MISLEADING.

Pierce is a defendant in the First and Third Causes of Action, alleging violations of California Business and Professions Code section 17200; the Fifth Cause of Action, alleging violations of Florida's Deceptive and Unfair Trade Practices Act; and the Sixth Cause of Action, alleging violations of New York's General Business Law.

Plaintiffs' claims against Pierce in those causes of action rely entirely on three tweets posted by Pierce—one on May 26, 2021; one on May 28, 2021; and one on

May 30, 2021. As the Court noted in its ruling regarding the SAC, Plaintiffs alleged two theories of deception against Pierce: one based on the May 26 tweet, which Pierce is not challenging in this Motion, and one based on the May 30 tweet. (ECF No. 161, Order at 60–61.) The Court summarized the claim regarding the May 30 tweet as follows: "Plaintiffs allege that Pierce falsely represented that he was invested in EMAX as a long-term investment, despite the fact that he was simultaneously selling off large amounts of Tokens." (*Id.* at 61.)

However, Plaintiffs' TAC no longer alleges that Pierce was "simultaneously selling off large amounts of Tokens" after posting the May 30 tweet. (SAC ¶ 78.) Plaintiffs' sole claim of sales of Tokens occurring after that tweet were sales by the wallet that was not owned by Pierce. (TAC ¶ 83 ("Three days after falsely telling investors he was in it "for the long haul" with EthereumMax, the Pierce display wallet sold approximately 9.7 trillion EMAX Tokens worth approximately $1,300,000.").)

Thus, Plaintiffs no longer allege that Pierce claimed he was in it for the long haul and then soon thereafter sold EMAX Tokens. Indeed, they do not allege that Pierce ever sold even a single Token after saying he was in it for the long haul. Their only claim is that Pierce said he was in it for the long haul, and then someone else sold their EMAX Tokens. Without an allegation that Pierce sold Tokens after posting the May 30 tweet, there is nothing false or misleading about that tweet, and the First, Third, Fifth, and Sixth Causes of Action premised on the May 30 tweet must be dismissed.

Regarding the May 28 tweet, the focus of Plaintiffs' allegations about that tweet in their first two complaints was their claim that Pierce was trying to conceal that he owned the wallet referenced in that tweet. Plaintiffs claimed that the careful forensic examination by their lawyers (which of course occurred long after Plaintiffs had purchased EMAX Tokens) determined this was indeed Pierce's wallet. (Compl. ¶ 52; SAC ¶ 77.) However, Plaintiffs have now been forced to concede that, actually, that

wallet was not Pierce's wallet. (TAC ¶ 68.) Thus, they cannot claim they were in any way misled by this tweet—when they read it, they did not think it was Pierce's wallet, and in reality, it was not Pierce's wallet. And indeed, Plaintiffs never allege they were misled by that tweet.

Further, Plaintiffs' only purpose in alleging that tweet is to set up their allegations about the transactions they attribute to the wallet referenced in that tweet—transactions which are now irrelevant to this action. Thus, the First, Third, Fifth, and Sixth Causes of Action premised on the May 28 tweet should be dismissed as well.

## V. THE PRAYER AND CLAIMS FOR INJUNCTIVE RELIEF MUST BE DISMISSED AS THERE IS NO RISK OF FUTURE IMMINENT HARM.

Finally, the allegations and Prayer for Relief against Pierce for injunctive relief should also be dismissed. The TAC fails to allege any ongoing conduct by Pierce that could plausibly put Plaintiffs at risk of imminent future injury, and, thus, the Court lacks subject matter jurisdiction to consider claims for injunctive relief against him.

The Court previously dismissed Plaintiffs' request for injunctive relief because Plaintiffs provided no allegations of an "imminent or actual [ ] threat of future harm." (ECF No. 161, Order at 61.) Plaintiffs have not alleged, and cannot allege, any such threat of imminent future harm from Pierce, whose involvement related to several promotional Twitter posts in May and June 2021. Accordingly, the Court should dismiss without leave to amend Plaintiffs' request for injunctive relief for lack of Article III standing. *See, e.g.*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (allegations of possible future injury are not sufficient).

## VI. CONCLUSION.

According, the Court should grant the Motion and dismiss the securities claims and portions of the consumer law claims against Pierce, as detailed above.

Respectfully submitted,

Dated: August 1, 2023                **KATTEN MUCHIN ROSENMAN LLP**


By: */s/Joel R. Weiner*
       Joel R. Weiner
       Attorneys for Defendant Paul Pierce

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for defendant Paul Pierce, certifies that this brief contains 4,862 words, which complies with the word limit of L.R. 11-6.1.

Dated: August 1, 2023               **KATTEN MUCHIN ROSENMAN LLP**

By: */s/Joel R. Weiner*
    Joel R. Weiner
    Attorneys for Defendant Paul Pierce