John T. Jasnoch (CA 281605)
jjasnoch@scott-scott.com
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile: 619-236-0508

*Attorney for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE ETHEREUMMAX INVESTOR LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Lead Case No. 2:22-cv-00163-MWF-SK<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS PERONE'S AND EMAX HOLDINGS, LLC'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**<br><br>Judge: Honorable Michael W. Fitzgerald<br>Date: September 25, 2023<br>Time: 10:00 am<br>Place: First Street Court House, Courtroom 5<br><br>Complaint Filed: January 7, 2022<br>Trial Date: Not yet scheduled |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................... 1

II. STATEMENT OF FACTS RELEVANT TO DEFENDANT PERONE AND EMAX HOLDINGS, LLC ........................................... 1

III. ARGUMENT ........................................................................................... 5

    A. False and Misleading Statements can be Attributed to Defendant Perone ............................................................................ 5

    B. Plaintiffs Plausibly Allege that Perone Sold Tokens ..................... 7

    C. The Claims Against EMAX Holdings, LLC Are Adequately Pled ................................................................................ 7

IV. CONCLUSION ....................................................................................... 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Davis v. Metro Prods., Inc.*,
   885 F.2d 515 (9th Cir. 1989) .............................................................................. 6

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
   564 U.S. 135 (2011) ........................................................................................... 5

*Kamal v. Eden Creamery, LLC*,
   No. 18-CV-01298-BAS-AGS, 2019 WL 2617041 (S.D. Cal. June
   26, 2019) ............................................................................................................ 6

*Wolf Designs, Inc. v. DHR & Co.*,
   322 F. Supp. 2d 1065 (C.D. Cal. 2004) .............................................................. 6

*Zakinov v. Ripple Labs*, *Inc.*,
   No. 18-cv-067753-PJH, 2020 WL 922815 (N.D. Cal. Feb. 26,
   2020) ................................................................................................................... 7

## I. INTRODUCTION

Plaintiffs Ryan Huegerich, Jonathan Semerjian, Nabil Nahlah, Till Freeman, Marko Ciklic, Tunisia Brignol, Milan Puda, Neil Shah, Michael Buckley, and Christopher DeLuca ("Plaintiffs"), individually and on behalf of all other persons similarly situated hereby submit this memorandum of law in response to the separate motion ("Motion") filed by Defendant Giovanni Perone ("Perone") and EMAX Holdings, LLC ("EMAX Holdings" or the "Company"), seeking dismissal of Plaintiffs' Third Amended Complaint ("TAC") against Perone and EMAX Holdings.

By his separate motion, Defendant Perone disputes the TAC's factual allegations, which attribute to him the statements made in "company" press releases and social media. Plaintiffs have cured the technical pleading deficiencies that the Court identified in its ruling on the motion to dismiss. The TAC plainly alleges that Defendant Perone, as a founder and creator of EthereumMax, exercised control over EthereumMax and directed the sale and solicitation of EMAX Tokens to the public. The factual challenges raised by Perone are inappropriate on a motion to dismiss and should instead be tested in discovery. The TAC plainly alleges that Perone was a primary architect of the scheme that led to significant financial losses for Plaintiffs and Class members.

## II. STATEMENT OF FACTS RELEVANT TO DEFENDANT PERONE AND EMAX HOLDINGS, LLC

Defendant Perone is the co-founder/creator of EthereumMax and the EMAX Token. ¶17.[1] The control that Perone exercised over his Company included the advertising, messaging, and hiring and managing the promoters that were hired to hype EthereumMax and the EMAX Token. ¶¶62, 108, 123. Perone prominently

---

[1] Unless otherwise noted, all "¶" references refer to the TAC. Capitalized terms not otherwise defined retain the same meaning as in the TAC. Citations are omitted and emphasis is added throughout unless otherwise noted.

1  displayed his control when he was posted in a YouTube video by Defendant Speer
2  touting EthereumMax's "technological upgrades," incoming "brand ambassadors"
3  and implying the high value of the EMAX Token by proclaiming that he would be
4  meeting retail investors "on the moon." ¶123.
5       Perone's control over EthereumMax and the EMAX Token is further
6  evidenced by his creation of EMAX Holdings. ¶¶17, 25. EMAX Holdings was
7  created in order to hold the EthereumMax intellectual property, and trademark
8  applications were subsequently filed. ¶25. Defendant Perone is the sole director
9  associated with EMAX Holdings, thus it can be strongly inferred that any
10 "company" press release, advertisement, marketing ploy, or major decision was
11 either approved by or perpetuated by Perone.
12      For example, on May 16, 2021, the EthereumMax Instagram account (which
13 was ultimately controlled by Perone via his position as CEO of the de facto
14 corporation, and operated by Perone or an agent working on his behalf) posted a
15 promotion titled the "EthereumMax Pre-launch Kickoff" (the "Pre-launch Kickoff
16 post"), which touted, among other things, how: (1) the EMAX Tokens grew
17 "500,000+% in the first 24 hours"; (2) the Executive Defendants had "locked in
18 partnership with global digital marketing agency" and "lined up a knockout
19 influencer" for a "nationwide campaign"; and (3) "We are 3 days in with ~$100M
20 market cap and the train is just getting rolling." ¶62.
21      Thereafter, on May 26, 2021, EthereumMax's official Twitter page (which
22 Plaintiffs allege was controlled by Executive Defendant Perone) issued a tweet
23 stating: "Our new token to buy $eMax is LIVE! This is our updated and ONLY
24 contract address – 0x15874d65e649880c2614e7a480cb7c9A55787FF6." The
25 Tweet also had a lengthy 'how to buy' picture called the "Beginners Guide to Buying
26 EthereumMax." ¶97.
27      Also on May 26, 2021, the EthereumMax "company" issued a press release
28 announcing that it was "now the exclusive CryptoCurrency accepted for online ticket

1  purchasing for the highly anticipated Floyd Mayweather vs. Logan Paul Pay-
2  PerView event, June 6, 2021 in Miami Gardens, Florida." ¶130. The press release
3  directed investors seeking "more information" to visit the Company's social media
4  accounts and the "Fight Website" with the following hyperlink:
5  https://mayweatherpaultickets.com/.
6    The press release was issued from simply "EthereumMax." Thus, whatever
7  company or organization created EthereumMax was the source of the statements in
8  the press release. And because Defendant Perone is alleged to be the founder of the
9  EMAX Token, and was the sole director of EMAX Holdings, LLC, Plaintiffs
10 directly allege that Perone was responsible for the content and issuance of the May
11 26, 2021 press release.
12    On May 28, 2021, the EthereumMax "company" released another press
13 release entitled: "EthereumMax ($eMax) Disrupts Miami Ahead of Mayweather vs.
14 Paul Fight as the First Crypto Currency of Major Nightclubs LIV and Story" (the
15 "May 28, 2021 Press Release"). The May 28, 2021 Press Release stated: "The
16 upcoming boxing match is the single largest sporting event in history to accept
17 cryptocurrency as payment, making it a huge move for the practical use of $eMax."
18 The May 28, 2021 Press Release touted the EMAX Token as the "fastest-growing
19 Altcoin on the market," bragging that the EMAX Token price "is up over 21,000%
20 with over 32,000 holders since its launch on May 14, 2021." The May 28, 2021
21 Press Release further claimed that the EMAX Token "has been gaining massive
22 moment [sic] and popularity," and quoted Defendant Pierce as an example of this
23 popularity. Finally, the May 28, 2021 Press Release announced that the partnership
24 with Groot Hospitality would "bring eMAX and Cryptocurrency to Miami Nightlife
25 & Entertainment. This is the first of many opportunities where we see EthereumMax
26 as a reliable payment method for real-life usage." ¶134.
27    Once again, the May 28, 2021 Press Release purportedly was from simply
28 "EthereumMax." Thus, that whatever company or organization was behind

EthereumMax was the source of the misleading statements contained in the press release. Because Defendant Perone was the sole director of EMAX Holdings, LLC, Plaintiffs directly allege that Perone was the Executive Defendant primarily responsible for the content and issuance of the May 28, 2021 Press Release.

On June 8, 2021, Defendant Perone, along with Steve Gentile and Josh James (the lead developer at EthereumMax), uploaded a video of themselves on Executive Defendant Speer's YouTube channel entitled: "Addressing the $eMax Community – EthereumMax." Gentile and Perone identified themselves as the "creators" of EthereumMax. Perone touted EthereumMax as something "special" with "real sustainability." Perone also stated that they were able to forge a "landmark agreement with the Mayweather team" and reassured investors regarding the "volatility" in the EMAX Token price. ¶152.

During a pseudo question and answer portion of the video, Gentile brought up investors' questions about a "rug pull" of the EMAX Token and asked Perone to "nip it in the bud." Perone stressed that the EthereumMax team was in for the long term, falsely stating, among other things, that the Executive Defendants were "looking to lock the wallets" to show investors that they "were here to stay." ¶155.

Plaintiffs allege they would have found it material to their decisions to purchase EMAX Tokens to know whether or not insiders had significant percentages of the available Float of EMAX Tokens with the ability to freely sell those EMAX Tokens and create massive downward pressure. Likewise, Plaintiffs allege that had they been made aware of that information at the times of their respective purchases, as well as the later revealed fact that the Executive Defendants had chosen not to "lock the wallets" (which gives the ten original founding members the ability to sell off their portions of EMAX Tokens without restriction), it would have altered their decision to both purchase the EMAX Tokens for the price they paid as well and hold on to those EMAX Tokens when they otherwise would not have done so.

## III. ARGUMENT

### A. False and Misleading Statements can be Attributed to Defendant Perone

Perone argues that Plaintiffs have not satisfied the Court's Order (ECF No. 161) by not closely associating him with certain statements. Throughout the TAC, however, false and misleading statements have been directly linked to Perone in his official and de facto capacity as the founder of EthereumMax. ¶¶62, 123, 124, 131. Defendant Perone was the sole director of EMAX Holdings, LLC, thus he was responsible for the content and issuance of many of its early "company" press releases, Instagram content, and other advertisements. ¶¶130, 131. Perone's role as sole director of EthereumMax ensured that he would have control over what was posted and advertised on the official EthereumMax social media.

Indeed, the false and misleading statements coming from the "EthereumMax" organization can be attributed to Perone under binding Supreme Court authority. Indeed, Perone is rightfully considered one of the "makers" of the EthereumMax statements, an issue that the Supreme Court dealt with in its seminal *Janus* decision.

In *Janus*, the Supreme Court was faced with the question of who "made" certain allegedly false statements contained in mutual fund prospectuses for purposes of determining primary securities law liability. *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). The Supreme Court held that "the maker of a statement is the person or entity with ultimate control over the statement, including its content and whether and how to communicate it." *Id.* Here, Perone, by his own admission, was a founder of EthereumMax, and is the only person connected to any business organization related to the EthereumMax scheme (EMAX Holdings, LLC). As a result, Plaintiffs' allegations that Perone had ultimately authority over the statements made by the "EthereumMax" company are

1 plausible. Thus, Perone was a "maker" of EthereumMax's false and misleading
2 statements in "company" press releases.

3       Indeed, Perone was a "guiding spirit" and a "central figure" behind
4 EthereumMax as evidenced by his dealings with the Promoter Defendants and his
5 own promotion of the EMAX Token. *Wolf Designs, Inc. v. DHR & Co.*, 322 F.
6 Supp. 2d 1065, 1072 (C.D. Cal. 2004) (quoting *Davis v. Metro Prods., Inc.*, 885 F.2d
7 515, 524 (9th Cir. 1989)). Perone was responsible for paying some of the Promoter
8 Defendants and was heavily involved in the recruiting and signing of Defendant
9 Mayweather. ¶129. Perone being the "central figure" behind the Company and self-
10 described "creator" of EthereumMax (¶152) strongly infers that he had control over
11 even the seemingly small decisions, such as the content of what was posted on
12 various social media channels.

13       Aside from the EthereumMax "company" statements that can be attributed to
14 him, Perone also made direct misrepresentations. Perone directly misrepresented
15 that the Executive Defendants were going to "lock the wallets," implying that they
16 would not sell their EMAX Tokens. ¶155. The Executive Defendants did not intend
17 to ever "lock" their wallets, as evidenced by all the selling and transfers of EMAX
18 Tokens by the insider wallets. ¶159. Plaintiffs directly allege that such information
19 was material to them and would have affected their decision to purchase and/or hold
20 their EMAX Tokens.

21       Plaintiffs have more than laid out the "who, what, when, where, and how"
22 behind the scheme orchestrated and perpetuated by Perone and the other Executive
23 Defendants. And as discussed in *Kamal v. Eden Creamery, LLC*, No. 18-CV-01298-
24 BAS-AGS, 2019 WL 2617041, at *15 (S.D. Cal. June 26, 2019), proving the
25 allegations is a "matter best resolved through discovery." Plaintiffs have sufficiently
26 alleged that Perone was responsible for the statements described herein and these
27 allegations should be tested in discovery.

28

### B. Plaintiffs Plausibly Allege that Perone Sold Tokens

Although Perone contends that he did not "personally participate" in any sale of EMAX Tokens (Motion at 4), Plaintiffs have plausibly alleged that Perone was responsible for the pump and dump scheme. Perone was personally implicated in selling EMAX Tokens by Defendant Davis when he admitted that the EthereumMax founders were "literally in there to pump and dump" and stated he was referring to someone whose name "rhymes with Gio Perone." ¶43.

In any event, Plaintiffs do not need to demonstrate that Perone personally sold tokens due to his overarching role in directing the sale and solicitation of EMAX Tokens to the public. *Zakinov v. Ripple Labs*, *Inc*., No. 18-cv-067753-PJH, 2020 WL 922815, at *12 (N.D. Cal. Feb. 26, 2020) (The Court determined that "systematic marketing" was "more than sufficient to establish [Defendants'] status as sellers under a solicitation theory.").

### C. The Claims Against EMAX Holdings, LLC Are Adequately Pled

EMAX Holdings, LLC was established by Perone following the introduction of the EMAX Tokens, serving as the business entity to hold the EthereumMax intellectual property. EMAX Holdings, LLC is the only corporate or business entity connected to the pump and dump scheme. Thus, any statements appearing to come from the "EthereumMax" company can therefore be plausibly attributed to EMAX Holdings, LLC. Given that Defendant Perone is alleged to be the sole director of EMAX Holdings, LLC, it's similarly plausible to attribute his actions to the Company. However, without discovery into the EthereumMax organizational structure, it remains ambiguous whether Perone's culpable actions were taken personally or in his role as the sole director of EMAX Holdings, LLC. Deciding on these factual matters would be inappropriate at the motion to dismiss stage and should instead be addressed in discovery.

## IV. CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court deny Defendant Perone's and Defendant EMAX Holdings LLC's Motion to Dismiss.

Dated: August 22, 2023          Respectfully submitted,

                                             s/ *John T. Jasnoch* _____
John T. Jasnoch (CA 281605)
jjasnoch@scott-scott.com
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile: 619-233-0508

## L.R. 11-6.1 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 2,157 words, which complies with the word limit of L.R. 11-6.1.

Dated: August 22, 2023

*s/ John T. Jasnoch*
John T. Jasnoch

## **CERTIFICATE OF SERVICE**

I, John T. Jasnoch, hereby certify that on August 22, 2023, I caused the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

Executed on August 22, 2023, at San Diego, California.

*s/ John T. Jasnoch*
John T. Jasnoch