1 John T. Jasnoch (CA 281605)
jjasnoch@scott-scott.com
2 **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
3 San Diego, CA 92101
Telephone: 619-233-4565
4 Facsimile: 619-236-0508

5 *Attorney for Lead Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE ETHEREUMMAX INVESTOR LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Lead Case No. 2:22-cv-00163-MWF-SK<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT MAYWEATHER'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Judge: Honorable Michael W. Fitzgerald<br>Date: September 25, 2023<br>Time: 10:00 am<br>Place: First Street Court House, Courtroom 5<br><br>Complaint Filed: January 7, 2022<br>Trial Date: Not yet scheduled |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. STATEMENT OF FACTS .................................................................................. 2

III. LEGAL STANDARD .......................................................................................... 5

IV. ARGUMENT ........................................................................................................ 6

    A. The TAC Alleges a Fraud-by-Omission Claim Against Defendant Mayweather ................................................................................ 6

    B. Plaintiffs Adequately Allege That Mayweather Is Secondarily Liable Under Cal. Corp. Code §25504 ....................... 7

V. CONCLUSION ..................................................................................................... 8

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................. 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 554 (2007) ............................................................................................. 5

*In re Carrier IQ, Inc.*,
  78 F. Supp. 3d 1051 (N.D. Cal. 2015) ................................................................. 7

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
  613 F. Supp. 3d 1284 (S.D. Cal. 2020) ................................................................ 7

*Rosen v. Urb. Commons, LLC*,
  No. SACV20-01973-JLS-DFMx, 2021 WL 3264147 (C.D. Cal.
  July 23, 2021) ...................................................................................................... 7

**Statutes, Rules, and Regulations**

California Business & Professions Code
  §17200 .................................................................................................................. 1

California Corporations Code
  §25003(a) .............................................................................................................. 7
  §25110 ........................................................................................................... 1, 7, 8
  §25400 .................................................................................................................. 1
  §25401 .................................................................................................................. 1
  §25402 .................................................................................................................. 1
  §25403(b) ....................................................................................................... 1, 7, 8
  §25504 ........................................................................................................... 1, 7, 8

Florida Deceptive & Unfair Trade Practices Act
  §517.07 ................................................................................................................. 1
  §501 ...................................................................................................................... 1

New Jersey Consumer Fraud Act, NJSA
  §56:8-1 to 156 ....................................................................................................... 1

New York General Business Law
 §349 ..................................................................................................................................1

Federal Rules of Civil Procedure
 Rule 12(b)(6) ..................................................................................................... 5

iii

## I. INTRODUCTION

Plaintiffs Ryan Huegerich, Jonathan Semerjian, Nabil Nahlah, Till Freeman, Marko Ciklic, Tunisia Brignol, Milan Puda, Neil Shah, and Christopher DeLuca ("Plaintiffs"), individually and on behalf of all other persons similarly situated, hereby submit this memorandum of law in response to the motion ("Motion") filed by Defendant Floyd Mayweather, Jr. ("Mayweather"), seeking dismissal of Plaintiffs' Third Amended Complaint (the "TAC") against him.

The Court's order dated June 6, 2023 (the "MTD Order") sustained claims in the Second Amended Complaint against Mayweather for violations of Cal. Bus. & Prof. Code §17200 (unfair prong) and Fla. Stat. §517.07 (sale/solicitation of unregistered securities). *See* MTD Order at 29, 75. The Court also directed Plaintiffs to amend the following claims against Mayweather in order for their fraud-by-omission and secondary liability theories to survive dismissal:

- Cal. Bus. & Prof. Code §17200 (unlawful prong);
- Cal. Bus. & Prof. Code §17200 (fraudulent prong);
- Fla. Stat. §501 (deceptive and unfair trade practices);
- N.Y. GBL §349 (deceptive acts and practices);
- N.J. Stat. Ann. §56:8-1 to 156 (unconscionable practices);
- Cal. Corp. Code §25110 (sale/solicitation of unregistered securities);
- Cal. Corp. Code §25400 (manipulation);
- Cal. Corp. Code §25401 (misrepresentation);
- Cal. Corp. Code §25402 (insider trading);
- Cal. Corp. Code §25403(b) (secondary liability for primary Cal. Corp. Code §25402 insider trading violation);
- Cal. Corp. Code §25504 (secondary liability for primary Cal. Corp. Code §25110 qualification violation); and
- Unjust Enrichment.

On June 26, 2023, Plaintiffs filed the TAC. (ECF No. 163), which, among other things, amended the pleadings to include additional factual allegations establishing Mayweather's exclusive knowledge of certain partially disclosed information and to make clear which causes of action were being alleged and the basis for each. The TAC particularly alleges a scheme among various individuals in the cryptocurrency sector to misleadingly promote and sell the digital assets associated with EthereumMax (the "EMAX Tokens") to unsuspecting investors. EthereumMax (or the "Company") collaborated with several celebrity promotors, including Defendant Mayweather, whose conduct misled investors about EthereumMax while failing to disclose the significant consideration he was given in exchange for his promotions. Despite this, Mayweather argues that the newly added allegations in the TAC are still not enough to hold him liable for his role in the misleading promotion of EthereumMax and the solicitation/sale of the EMAX Tokens. *See* Motion at 7-10.

This final round of motion to dismiss briefing from Mayweather focuses exclusively on whether the allegations in the TAC sufficiently allege that: (1) Mayweather had a duty to disclose the true nature of his financial relationship with the other Defendants, thereby subjecting him to a fraud-by-omission claims under the various state consumer protection laws (e.g., the UCL, FDUTPA, N.Y. GBL, and NJCFA); and (2) Mayweather is secondarily liable for the qualification violations of the Company and Executive Defendants. In short, the TAC's allegations establish both.

## II. STATEMENT OF FACTS

The Executive Defendants actively searched for and recruited promoters for the launch of the EMAX Tokens in May 2021. ¶¶59, 65.[1] The entire EthereumMax

---

[1] Unless otherwise noted all "¶" references are to the TAC. Capitalized terms not otherwise defined retain the same meaning as in the TAC. Citations are omitted and emphasis is added throughout unless otherwise noted.

scam was predicated on the use of celebrities like Defendant Mayweather to serve as "high level" brand ambassadors and promotors "legitimized" the project. ¶123. Mayweather was initially recruited by Individual Defendants Justin Maher, Russell Davis, and Giovanni Perone, to serve as EthereumMax's "marquee" promotor. ¶129.

Mayweather received a fee of $1 million as his first down payment for promoting EthereumMax, followed by a second payment of $1.5 million. *Id*. The Complaint describes the circumstances surrounding Mayweather's payment as follows:

> According to Maher, Mayweather's representatives refused payment in EMAX Tokens and instead received payment in Ethereum, which has significantly more price stability. In order to raise the Ethereum needed for Mayweather's payment, Maher and Davis sought out large holders of Ethereum and offered them a "sweetheart" deal relative to the amount of Ethereum needed for celebrity promotion payments. For example, in exchange for providing $500,000 worth of Ethereum, they would give the Ethereum provider $2,000,000 of EMAX Tokens. As Maher observed, however, most often, the Ethereum provider would then immediately sell the $2,000,000 in EMAX Tokens on the open market. This tremendous downward selling pressure caused the price of the EMAX Tokens to drop.

*Id.*

On May 26, 2021, the Company issued a press release announcing that it had partnered with Defendant Mayweather and claiming that EMAX Tokens were "now the exclusive CryptoCurrency accepted for online ticket purchasing for the highly anticipated pay-per-view boxing event Floyd Mayweather vs. [social media influencer] Logan Paul, June 6, 2021 in Miami Gardens, Florida." ¶130. The press release directed investors seeking more information to visit the Company's social media accounts and the "Fight Website" with an included hyperlink. *Id*. The Fight Website itself featured Mayweather and offered various incentives for those

1  purchasing online tickets with EMAX Tokens, including entry in a lottery to attend
2  "the official Mayweather after-party at a private table at LIV." ¶133.
3       On May 28, 2021, the Company issued another press release entitled
4  "EthereumMax ($eMax) Disrupts Miami Ahead of Mayweather vs. Paul Fight as the
5  First Crypto Currency of Major Nightclubs LIV and Story." The press release
6  highlighted the previous Mayweather v. Paul release. ¶134. Following the
7  promotion for the EthereumMax and Mayweather partnership, the volume of trading
8  of EMAX Tokens spiked from $25 million on May 27, 2021 to $80.9 million on
9  May 28, 2021, after the Mayweather announcement. ¶138.
10      On June 4, 2021, Mayweather attended the "Bitcoin 2021" conference and
11 "instead of discussing the cryptocurrency that was the focus of the conference (*i.e.*,
12 Bitcoin), Mayweather promoted EthereumMax." ¶143. Specifically, Mayweather
13 and his entourage wore t-shirts with EthereumMax emblazoned across the chest.
14 The same day, Defendant Maher posted an interview with Mayweather at the Bitcoin
15 2021 conference on the EthereumMax Facebook page, while Defendant Perone
16 posted it on the EthereumMax Instagram account. ¶144. In the introduction to the
17 video, the reporter observed that the attendees at the Bitcoin 2021 event "were
18 attracted here because of a lot of prime-time stars and that does include Floyd
19 Mayweather." *Id.* During the interview itself, Mayweather, with the EthereumMax
20 name and logo prominently displayed on the front of his shirt, stated that
21 cryptocurrency investing is "the new wave." *Id.* Mayweather then described how he
22 first made his money through boxing and then with real estate. After recounting his
23 previous success at making money, Mayweather reemphasized that investing in
24 cryptocurrency was the next big thing. *Id.*
25      Two days later, on June 6, 2021, Mayweather similarly promoted
26 EthereumMax during his highly viewed exhibition boxing match with Logan Paul.
27 ¶147. That same day, Defendant Davis announced that Mayweather, Ethereum Max,
28 and Davis's cryptocurrency consulting business had entered into a "long term deal,"

which further indicated to investors that Mayweather was a part of the EthereumMax team and not simply a paid promoter. ¶150. Mayweather had exclusive knowledge that he was merely a paid promoter instead of "an actual backer/investor in EMAX Tokens" and that he would not be making EthereumMax a part of his multimillion-dollar investment portfolio. This exclusive information was not known to Plaintiffs or the members of the Class when each was respectively deciding whether or not to purchase EMAX Tokens. ¶¶217, 284, 288. Mayweather's promotional activities had a substantial effect, causing the trading volume for EMAX Tokens to spike from $15.7 million to $24.5 million. ¶151.

While retail investors rushed in to purchase EMAX Tokens following Defendant Mayweather's promotion, the Executive Defendants began to effectuate their exit scam. Executive Defendants used the promotions with Mayweather to lure in investors to sell their EMAX Token allocations to before the price completely bottomed out. *See* ¶171. Only a month after Defendant Mayweather's June 2021 promotions, the EMAX Token hit an all-time low at $0.000000017 per unit, a 98% drop, and continues to see low transaction volume to this day. ¶172.

### III. LEGAL STANDARD

To prevail on a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. Further, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563 (noting that once a claim for relief has been stated, a plaintiff "'receives the benefit of imagination, so long as the hypotheses are consistent with the complaint'").

## IV. ARGUMENT

### A. The TAC Alleges a Fraud-by-Omission Claim Against Defendant Mayweather

Defendant Mayweather argues that the fraud-by-omission claim in the TAC fails to sufficiently establish that Mayweather had a duty to disclose the true nature of his financial relationship with the Company. *See* Motion at 6-8. This argument is without merit. The TAC lays out both the duty to disclose and Mayweather's failure to abide by that duty. First, Defendant Mayweather had the ability to correct particular misstatements and omissions (*see* ¶¶150, 217, 288) when they were made on June 6, 2021, but "failed to do so despite him being tagged in Defendant Davis's posts containing the misleading information about the Mayweather joint venture and, thus, being on notice of the fraudulent omissions regarding his status as a long term partner of Ethereummax and Davis's cryptocurrency investing company InRussWeTrust." ¶¶217, 288. The TAC alleges that "the Company and Defendants Maher and Davis made several representations indicating that Mayweather's involvement was not limited to a one-off promotion related to the Mayweather v. Paul boxing event but rather the beginning of a 'long term' partnership deal that had been reached between Mayweather, Davis, and the Company." *Id*.

Significantly, Defendant Mayweather's exclusive knowledge that he was just a paid promoter (as opposed to a "an actual backer/investor in EMAX Tokens, and that he was making EMAX a part of his multimillion-dollar" investment strategy) was not known to Plaintiffs when each was respectively deciding whether or not to purchase EMAX Tokens. *Id*. Mayweather's exclusive knowledge of his financial connections to the Company and other Defendants, coupled with the partial misstatements made about the longevity of Mayweather's association with EthereumMax made with Mayweather's tacit approval, gave rise to Mayweather's duty to disclose that information. But Mayweather did not disclose this information at all, and by failing to disclose that information, Mayweather is liable for a UCL

6

fraud-by-omission claim. *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1113-14 (N.D. Cal. 2015) ("Finally, Plaintiffs have alleged that the information regarding the Carrier IQ Software was in the exclusive knowledge of Defendants. These allegations are sufficient to plausibly allege that Defendants had exclusive knowledge of a material fact that they had a duty to disclose but chose to omit."); *see also In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284, 1303 (S.D. Cal. 2020) (finding that the plaintiffs adequately alleged a fraudulent omission UCL claim where they pled "a duty to disclose based upon [d]efendant's exclusive knowledge of the alleged inadequacy of its security measures").

### B. Plaintiffs Adequately Allege That Mayweather Is Secondarily Liable Under Cal. Corp. Code §25504

To state a claim for secondary liability under California's Corporation Code, a plaintiff must allege facts sufficient to show that the defendant materially assisted and/or aided and abetted a primary violation of Section 25110. *See* Cal. Corp. Code §25504. Despite his protests to the contrary (*see* Motion at 8-10), the TAC sufficiently establishes as a matter of law secondary liability under Section 25504 of the California Corporation Code.[2] Notably, Defendant Mayweather's argument related to Section 25504 fails to recognize that Mayweather is alleged to be an agent of the Company.

An agent is defined by statute as "'any individual, other than a broker-dealer or a partner of a licensed broker-dealer, *who . . . for compensation represents an issuer in effecting or attempting to effect purchases or sales of securities in this state*.'" *Rosen v. Urb. Commons, LLC*, No. SACV20-01973-JLS-DFMx, 2021 WL 3264147, at *3 (C.D. Cal. July 23, 2021) (quoting Cal. Corp. Code §25003(a)).

---

[2] Plaintiffs do not oppose dismissal of the Cal. Corp. Code §25403(b) secondary liability claim against Mayweather.

7

1  Here, the TAC clearly alleges that Mayweather received over a million dollars in
2  compensation for promoting the sale of EMAX Tokens in California. Mayweather's
3  attempt to twist this basic premise (*see* Motion at 9-10) relies entirely on semantics
4  and should be rejected. The TAC clearly outlines the way in which Mayweather is
5  secondarily liable under Section 25504 for the primary violations of Section 25110
6  by the Company and Executive Defendants.

## V. CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court partially grant Defendant Mayweather's Motion to Dismiss the Cal. Corp. Code §25403(b) claim only and otherwise deny it in all other respects.

Dated: August 22, 2023　　　　　　　Respectfully submitted,

*/s/ John T. Jasnoch*
John T. Jasnoch (CA 281605)
jjasnoch@scott-scott.com
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile: 619-236-0508

*Attorney for Lead Plaintiff
And the Proposed Class*

## L.R. 11-6.1 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 2,192 words, which complies with the word limit of L.R. 11-6.1.

Dated: August 22, 2023

*s/ John T. Jasnoch*
John T. Jasnoch

## CERTIFICATE OF SERVICE

I, John T. Jasnoch, hereby certify that on August 22, 2023, I caused the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

Executed on August 22, 2023, at San Diego, California.

*/s/ John T. Jasnoch*
John T. Jasnoch