UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  October 3, 2023
Title:  In Re Ethereummax Investor Litigation

Present:   The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

            Deputy Clerk:                          Court Reporter:
            Rita Sanchez                           Not Reported

            Attorneys Present for Plaintiffs:      Attorneys Present for Defendants:
            None Present                           None Present

Proceedings (In Chambers):        ORDER RE: DEFENDANTS' MOTIONS TO
                                  DISMISS [171][172][173][174]

    Before the Court are four motions:

- The Motion to Dismiss Plaintiffs' Third Amended Complaint ("TAC")
  filed individually by Defendant Floyd Mayweather Jr. on August 1, 2023
  (the "Mayweather Motion").  (Docket No. 171).

- The Motion to Dismiss the TAC filed by Defendants Giovanni Perone and
  EMAX Holdings LLC ("the Company") on August 1, 2023 (the "Perone
  Motion").  (Docket No. 172).

- The Motion to Dismiss the TAC filed individually by Paul Pierce on
  August 1, 2023 (the "Pierce Motion").  (Docket No. 173).

- The Motion to Dismiss the TAC filed individually by Jona Rechnitz on
  August 1, 2023 (the "Rechnitz Motion").  (Docket No. 174).

    Plaintiffs filed Oppositions to each Motion, and Defendants likewise filed
Replies.

    The Court has read and considered the papers on the Motions and held a video
hearing on **September 25, 2023**.  The Court rules as follows:

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  October 3, 2023
Title:  In Re Ethereummax Investor Litigation

- The Mayweather Motion is **DENIED** to the extent it seeks dismissal of
  Plaintiffs' state consumer law claims (Claims 1, 3, and 5–7) because
  Plaintiffs sufficiently alleged materiality and actual non-disclosure of
  Mayweather's alleged omissions.  The Mayweather Motion is
  **GRANTED** *without leave to amend* to the extent it seeks dismissal of
  Plaintiffs' Secondary Liability claim (Claim 12) under section 25403(c),
  as Plaintiffs do not oppose dismissal.  The Mayweather Motion is
  **DENIED** to the extent it seeks dismissal of Claim 12 under section 25504
  because Plaintiffs sufficiently alleged that Mayweather was acting as an
  agent for EthereumMax ("EMAX").

- The Pierce Motion is **DENIED** to the extent it seeks dismissal of
  Plaintiffs' state consumer law claims (Claims 1, 3, 5, and 7) because
  Plaintiffs sufficiently alleged that Pierce or his agent sold and traded
  EthereumMax tokens ("EMAX Tokens" or "Tokens") for Pierce's benefit.
  The Pierce Motion is also **DENIED** to the extent it seeks dismissal of
  Plaintiffs' Manipulation claim (Claim 9), as Plaintiffs sufficiently alleged
  that Pierce concealed his ownership interest in EMAX Tokens.  The Pierce
  Motion is **GRANTED** *without leave to amend* as to the Insider Trading
  claim (Claim 11) because Plaintiffs did not plead facts regarding Pierce's
  non-public knowledge with sufficient particularity.  And the Pierce
  Motion is **GRANTED** *without leave to amend* to the extent it seeks
  dismissal of Plaintiffs' request for injunctive relief since Plaintiffs do not
  oppose dismissal on those grounds.

- The Perone Motion is **DENIED** to the extent it seeks dismissal of
  Plaintiffs' state consumer law claims (Claims 1, 3, 5–7) because the TAC
  sufficiently alleges that Perone was plausibly a "central figure" behind
  EMAX and therefore responsible for its social media posts.  The Perone
  Motion is **GRANTED** *without leave to amend* as to Plaintiffs' securities
  claims (Claims 9, 10, and 11) since Plaintiffs failed to allege that Perone
  personally sold EMAX Tokens.  The Perone Motion is also **GRANTED**
  *without leave to amend* as to the claims raised against the Company prior

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  October 3, 2023
Title:  In Re Ethereummax Investor Litigation

to the date of its incorporation because the TAC fails to plead an alter ego
theory, de facto corporation theory, or corporation by estoppel theory.

- The Rechnitz Motion is **GRANTED** *without leave to amend* as to the
  Insider Trading claim (Claim 11) because Plaintiffs fail to sufficiently
  allege which false statements and omissions regarding the celebrity
  promotions Rechnitz allegedly knew.  The Rechnitz Motion as to the
  Secondary Liability claim (Claim 12) is also **GRANTED** *without leave to
  amend*.  Plaintiffs failed again to allege facts with requisite specificity.
  However, the Rechnitz Motion is **DENIED** as to Claim 9 because, taking
  all inferences in Plaintiffs' favor, the TAC arguably alleges that Rechnitz
  concealed his ownership interest when making trades to create a false
  appearance of active market activity.

When the Court allowed leave to file the Third Amended Complaint, it explicitly
warned Plaintiffs that they would have only one final chance to plead the various
claims.  Accordingly, as indicated in the summary above, to the extent the Motions are
granted, they are granted without leave to amend.

I.      **BACKGROUND**

The Court previously summarized the central facts of this action in its Order
Granting Defendants' Motion to Dismiss the First Amended Complaint (the "FAC
Order" (Docket No. 99)) and its Order Granting in Part Defendants' Motions to
Dismiss and Strike the Second Amended Complaint (the "SAC Order" (Docket No.
161)).  The Court incorporates by reference the Background Section of the FAC Order
and SAC Order and limits its recitation of the facts to those necessary for context.

EMAX is a cryptocurrency project centered around the EMAX Tokens, a
blockchain-based digital asset.  (TAC ¶¶ 31–32).  EMAX Tokens function like other
digital cryptocurrencies; they can be traded, spent, or otherwise transacted between
token holders.  (*Id.* ¶ 32).  EMAX Tokens were sold on decentralized exchanges, like
Uniswap, that allow anyone to list and sell tokens.  (*Id.* ¶ 33).  Decentralized exchanges
such as Uniswap are known as "automated market makers," which use liquidity pools

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  October 3, 2023
Title:  In Re Ethereummax Investor Litigation

and smart contracts to allow investors to exchange one asset for another without a
direct counterparty.  (*Id.* ¶ 34).  When executing a trade on Uniswap, an investor is
trading against the liquidity in the liquidity pool.  (*Id.*).  In order to execute trades on a
decentralized exchange, users must pay "gas fees" in order to process the transaction
on the Ethereum blockchain.  (*Id.*).  The gas fee can be significant, as it factors in the
amount of computing power needed to process the transaction, as well as the amount of
traffic on the network.  (*Id.*).

Plaintiffs Ryan Huegerich, Jonathan Semerjian, Nabil Nahlah, Till Freeman,
Marko Ciklic, Tunisia Brignol, Milan Puda, Neil Shah, Michael Buckley, and
Christopher DeLuca bring this action on behalf of themselves and a proposed class,
alleging violations of various state consumer laws, state securities laws, and California
common law.  Plaintiffs alleged that they purchased EMAX Tokens between May 14,
2021, and June 27, 2021 (the "Relevant Period") and suffered damages as a result of
Defendants' unlawful acts.

The TAC alleges these claims against three groups of Defendants.  The first
group consists solely of the Company.  The second group consists of Defendants
Giovanni Perone, Mike Speer, Justin Maher, and Jona Rechnitz.  The TAC refers to
this group as the "Executive Defendants" because they are the alleged co-founders
and/or key consultants for EMAX and the Company during the Relevant Period.
Defendants Kimberly Kardashian, Floyd Mayweather, Jr., Paul Pierce, Russell Davis,
and Antonio Brown are collectively referred to as the "Promoter Defendants," as they
allegedly conspired with the Executive Defendants to artificially inflate the price of the
EMAX Tokens.

Based on the above allegations, Plaintiffs assert the following claims for relief,
which the Court has renumbered for clarity due to an error in the TAC:

- Unlawful, Unfair, and Fraudulent Acts and Practices under California
  Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200, *et
  seq*.) (against all Defendants) (Claims 1–3);

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  October 3, 2023
Title:  In Re Ethereummax Investor Litigation

- False Advertising under California False Advertising Law ("FAL") (Cal. Bus. & Prof. Code § 17500, *et seq.*) (against Defendant Kardashian) (Claim 4);
- Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Fla. Stat. § 501.211) (against all Defendants) (Claim 5);
- New York General Business Law ("NYGBL") (Art. 22-A, § 349, *et seq.*) (against the Executive Defendants and Pierce, Brown, Mayweather, and Kardashian) (Claim 6);
- New Jersey Consumer Fraud Act ("NJCFA") (N.J. Stat. Ann. § 56:8-1, *et seq.*) (against the Executive Defendants and Mayweather and Kardashian) (Claim 7);
- Failure to Register Securities under California law (Cal. Corp. Code §§ 25110 and 25503) (against the Company and Executive Defendants) (Claim 8);
- Manipulation of Securities under California law (Cal. Corp. Code §§ 25400 and 25500) (against Perone, Rechnitz, Maher, Davis, Pierce, and the Company) (Claim 9);
- Misrepresentation of Securities under California law (Cal. Corp. Code §§ 25401 and 25501) (against Perone, Rechnitz, Maher, and the Company) (Claim 10);
- Insider Trading under California law (Cal. Corp. Code § 25402) (against Perone, Rechnitz, Maher, and Pierce) (Claim 11);
- Secondary Liability under California law (Cal. Corp. Code §§ 25403(b), 25504, and 25504.1) (against Perone, Rechnitz, and Mayweather) (Claim 12);
- Sale of Unregistered Securities under Florida law (Fla. Stat. § 517.07) (against the Company and Executive Defendants) (Claim 13);
- Unjust Enrichment/Restitution under California common law (against all Defendants) (Claim 14).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  October 3, 2023
Title:  In Re Ethereummax Investor Litigation

Defendants Mayweather, Pierce, Rechnitz, Perone, and the Company all move to
dismiss claims against them.  Defendant Kardashian also moved to dismiss certain
claims, which the Court granted.  (Docket No. 187).

## II.    LEGAL STANDARDS

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a
cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable
legal theory."  *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).  "Federal Rule
of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim
showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice
of what the . . . claim is and the grounds upon which it rests . . . ."  *Bell Atl. Corp. v.
Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47
(1957)).

In ruling on the Motion under Rule 12(b)(6), the Court follows *Twombly*,
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and their Ninth Circuit progeny.  "To survive a
motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a
claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,
550 U.S. at 570).  The Court must disregard allegations that are legal conclusions, even
when disguised as facts.  *See id.* at 681 ("It is the conclusory nature of respondent's
allegations, rather than their extravagantly fanciful nature, that disentitles them to the
presumption of truth."); *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d
990, 996 (9th Cir. 2014).  "Although 'a well-pleaded complaint may proceed even if it
strikes a savvy judge that actual proof is improbable,' plaintiffs must include sufficient
'factual enhancement' to cross 'the line between possibility and plausibility.'"  *Eclectic
Props.*, 751 F.3d at 995 (quoting *Twombly*, 550 U.S. at 556–57) (internal citations
omitted).

The Court must then determine whether, based on the allegations that remain and
all reasonable inferences that may be drawn therefrom, the complaint alleges a
plausible claim for relief.  *See Iqbal*, 556 U.S. at 679; *Cafasso, U.S. ex rel. v. Gen.
Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011).  "Determining whether a
complaint states a plausible claim for relief is 'a context-specific task that requires the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  October 3, 2023
Title:  In Re Ethereummax Investor Litigation

reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

Fraud-based claims are governed by Rule 9(b).  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (Rule 9(b) standard applies to California consumer protection claims, including under the CLRA and UCL).  "Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge[.]" *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal citations omitted).  Under Rule 9(b), fraud allegations must include the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citing *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)).  In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106. Such averments must be specific enough to "give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Id.*  (quoting *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

Whereas allegations concerning the circumstances of fraud must include the "the who, what, when, where, and how of the misconduct charged," *Id.* (internal quotation marks and citations omitted), issues of "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

## III.    DISCUSSION

### A.    Mayweather Motion

#### 1.  State Consumer Law Claims (Claims 1, 3, and 5–7)

In its SAC Order, the Court granted Plaintiffs leave to properly articulate Mayweather's duty to disclose to support Plaintiffs' fraud-by-omission claims under California, Florida, New York, and New Jersey state consumer laws.  After Plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  October 3, 2023
Title:  In Re Ethereummax Investor Litigation

amended their pleadings, the TAC now alleges that Mayweather had a duty to disclose based on his "exclusive knowledge that he was simply a paid promoter (as opposed to 'an actual backer/investor in EMAX Tokens . . .')."  (TAC ¶ 217).

Mayweather contends that Plaintiffs' fraud-by-omission claims as alleged under Claims 1, 3, and 5–7 should be dismissed on two grounds:

Mayweather first argues that Plaintiffs have again failed to establish a duty to disclose because the TAC does not allege that the undisclosed fact – that Mayweather was merely a paid promoter as opposed to an actual backer of EMAX Tokens – was material.  (Mayweather Motion at 6–7).  Plaintiffs do not squarely address the issue of materiality but contend that Mayweather had a duty to disclose because he had exclusive knowledge of and the ability to correct his alleged misrepresentations and omissions.  (Opp. to Mayweather Motion at 6).

A failure to disclose a fact can constitute actionable fraud or deceit "when the defendant has *exclusive knowledge* of *material* facts not known or reasonably accessible to the plaintiff."  *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336, 60 Cal. Rptr. 2d 539 (1997) (emphasis added).  "A non-disclosed fact is material if the omitted information would cause a reasonable consumer to behave differently if he or she was aware of it."  *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1112 (N.D. Cal. 2015) (internal quotation marks and citation omitted).

Plaintiffs have sufficiently alleged materiality.  In the TAC, Plaintiffs allege that "[t]he facts that the Executive Defendants and Promoter Defendants Pierce, Mayweather, and Kardashian misrepresented and concealed were material to the decisions of Plaintiffs Semerjian, Buckley, and Shah and the members of the class about whether to pay for or purchase EMAX Tokens (at all or for the price they paid), in that they would not have proceeded with their transactions but for the deceptive, fraudulent and false acts and practices."  (TAC ¶ 255).  The TAC also alleges that "[a]s a direct and proximate result of Defendants' unlawful, unfair, and deceptive practices, Plaintiffs and Class members suffered damages. The Executive Defendants' activities with the Promoter Defendants caused Plaintiffs and the Class members to purchase

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  October 3, 2023
Title:  In Re Ethereummax Investor Litigation

and/or hold the EMAX Tokens when they otherwise would not have done so."  (*Id.*
¶ 221).  Furthermore, Plaintiffs allege that Mayweather's promotions of EMAX
"induced Buckley to continue to hold on to his investment in EMAX Tokens when he
otherwise would not have done so."  (*Id.* ¶ 248; *see also id.* ¶¶ 252).  Based on these
allegations, Plaintiffs sufficiently pled that they would have acted differently had
Mayweather disclosed the omitted information.  *See id.* at 1113 (finding that the
plaintiffs sufficiently alleged materiality by alleging they would not have purchased
their mobile devices had they known about the devices' hidden software).

Moreover, Mayweather does not cite to any cases or otherwise demonstrate that
this sort of allegation (i.e., the distinction between being just a paid promoter and an
actual backer) is categorically immaterial as a matter of law.

Mayweather also contends that information regarding his partnership with
EMAX was disclosed to the public and known by at least some of the Plaintiffs.
(Mayweather Motion at 7–8).  In response, Plaintiffs contend that the fact that
Mayweather was "***just*** a paid promoter (as opposed to "an actual backer/investor in
EMAX Tokens . . .)" was not disclosed to the public.  (Opp. to Mayweather Motion at
6 (emphasis added)).

Plaintiffs have sufficiently alleged that Mayweather had exclusive knowledge of
the fact that he was solely a paid promoter for EMAX.  Mayweather appears to believe
that the omitted information is the fact that Mayweather was a paid celebrity endorser.
(Mayweather Motion at 8).  If that were the case, Mayweather would be correct that the
TAC contradicts Plaintiffs' assertion that Mayweather had exclusive knowledge.  For
example, the TAC alleges that, prior to their first purchase of EMAX Tokens, Plaintiffs
Nahlah, Puda, Freeman, and Brignol each saw a post on EMAX's Instagram page
stating that "the Executive Defendants had 'locked in [a] partnership with [a] global
digital marketing agency' and 'lined up a knockout influencer' for a 'nationwide
campaign.'"  (*Id.* ¶¶ 334, 336, 339, 341).  Plaintiffs were thus on notice that
Mayweather was a paid promoter because the Instagram post "alluded to a relationship
with Defendant Mayweather as [the] 'knockout influencer.'"  (*Id.* ¶¶ 334, 336, 339,
341).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  October 3, 2023
Title:  In Re Ethereummax Investor Litigation

However, the Court understands Plaintiffs' fraud-by-omission theory as alleging that Mayweather omitted the fact that he was not an actual investor in EMAX Tokens. In other words, Plaintiffs believed that Mayweather was a celebrity endorser ***in addition to*** being an actual investor.  For example, the TAC alleges that Plaintiffs Semerjian, Buckley, Shah, Nahlah, Puda, Freeman, and Brignol understood Mayweather to be "***more than*** a celebrity endorser but rather that he was an actual backer/investor in EMAX Tokens."  (*Id.* ¶¶ 146, 246, 248, 251, 333, 336, 340, 389 (emphasis added)).

With this understanding, Mayweather's argument is inapplicable since he does not argue that Plaintiffs knew that he was not an actual investor of EMAX Tokens. Nor does Mayweather contest Plaintiffs' allegations that he had exclusive or superior knowledge of this information.  (*Id.* ¶¶ 285, 287).  *See Daniel v. Ford Motor Co.*, No. 2:11-02890, 2016 WL 2899026, at *4 (E.D. Cal. May 18, 2016) ("Generally, courts have not defined 'exclusive' literally, but have found such claims cognizable if the defendant had 'superior' knowledge of a defect that was not readily apparent and there is no or only a limited publicly available information about the defect.").

Accordingly, the Mayweather Motion as to Claims 1, 3, and 5–7 is **DENIED**.

## 2.  Secondary Liability (Claim 12)

Plaintiffs also allege that Mayweather is secondarily liable under California Corporations Code sections 25403(b), 25504 and 25504.1.  Mayweather argues that the Court should dismiss Claim 12 for two reasons:

Mayweather first contends that section 25403 does not provide a private right of action.  (Mayweather Motion at 8–9).  Because Plaintiffs do not oppose dismissal on this ground (Opp. to Mayweather Motion at 7 n.2), the Mayweather Motion is **GRANTED *without leave to amend*** as to Plaintiffs' secondary liability claim under section 25403(c).

Mayweather next argues that the TAC fails to allege that Mayweather was an employee, broker-dealer, or agent of the primary violator as required by section 25504.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                     Date:  October 3, 2023
Title:  In Re Ethereummax Investor Litigation

(Mayweather Motion at 9–10).  Rather, according to Mayweather, the TAC alleges that Mayweather "was simply a paid promoter" or a "celebrity endorser."  (*Id.*).

In response, Plaintiffs contend that the TAC sufficiently alleges that Mayweather was an agent by claiming that Mayweather received compensation for promoting EMAX Tokens.  (Opp. to Mayweather Motion at 7–8).

Plaintiffs' argument is persuasive.  An "agent" is defined as "any individual, other than a broker-dealer or a partner of a licensed broker-dealer, who for compensation represents an issuer in effecting or attempting to effect purchases or sales of securities in this state."  Cal. Corp. Code § 25003(a).  And here, the TAC alleges that Mayweather, as EMAX's "marquee promoter," received $2.5 million in total compensation.  (TAC ¶ 129 (internal quotation marks omitted)).  The TAC further alleges that "[t]he conduct of . . . Mayweather described above, directly or indirectly, provided substantial assistance to the Company, Maher, and the Promoter Defendants, who issued the false statements and omissions made in connection with the offers or sales of an unregistered security alleged herein.  This aid and assistance provides [*sic*] for secondary liability for the other Defendants' primary violations."  (*Id.* ¶ 470).

The Court also previously determined that Mayweather was "clearly involved" in promoting EMAX Tokens.  (SAC Order at 53).  Therefore, Plaintiffs' allegations are sufficient to allege that Mayweather acted as an agent to effect purchases or sales of EMAX Tokens.  *See Moss v. Kroner*, 197 Cal. App. 4th 860, 871, 129 Cal. Rptr. 3d 220 (2011) (finding that allegations that the defendants "promoted, marketed, and participated in the sales of [] investment products for a commission" was sufficient to show an agency relationship for secondary liability).  Contrary to Mayweather's assertion, this is not an improper attempt to amend the TAC through their Opposition.

Accordingly, the Mayweather Motion is **DENIED** to the extent it seeks dismissal of Claim 12 under section 25504.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV 22-00163-MWF (SKx) | Date:  October 3, 2023 |
| Title:  In Re Ethereummax Investor Litigation | |

### B.    Pierce Motion

Pierce moves to dismiss Claims 1, 3,5, and 7 (the "State Consumer Law Claims"); Claim 9 (the "Manipulation Claim"); and Claim 11 (the "Insider Trading Claim").  The crux of Pierce's argument is that the TAC fails to allege he bought or sold any EMAX Tokens as required for each claim.  (Pierce Motion at 2–3).  Pierce points to the fact that the TAC no longer alleges he owned any EMAX Tokens because it now claims that "a wallet ***closely connected*** to Pierce received and sold millions of dollars worth of EMAX Tokens" (as opposed to "a wallet ***owned/controlled*** by Pierce received and sold millions of dollars' worth of EMAX Tokens").  (*Compare* TAC ¶ 68 *with* SAC ¶ 75).  Moreover, according to Pierce, the TAC no longer alleges he bought or sold EMAX Tokens – only that he received EMAX Tokens as compensation for his promotional tweets.  (Pierce Reply at 3; *see also* TAC ¶ 180).   The Court views this argument as unpersuasive as further discussed in the context of each claim below.

### 1.    State Consumer Law Claims (Claims 1, 3, 5, and 7)

Pierce moves to dismiss Claims 1, 3, 5, and 7 to the extent they are premised on his Twitter posts from May 28, 2021, and May 30, 2021. The Court provides screenshots of the two tweets below:



---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                 Date:  October 3, 2023
Title:  In Re Ethereummax Investor Litigation



(TAC ¶¶ 69, 82).

As to the May 30 tweet, Pierce argues that, because the TAC no longer alleges that Pierce sold EMAX Tokens, Plaintiffs cannot allege that he falsely misrepresented his commitment to EMAX as a long-term investment while selling off large numbers of EMAX Tokens.  (Pierce Motion at 12).  Similarly, as to the May 28 tweet, Pierce argues that Plaintiffs cannot allege that he misrepresented his returns on his investments because the TAC no longer alleges that he actually owned the wallet depicted in the tweet.  (*Id.*).

The Court rejects Pierce's argument as to both tweets.  Pierce is correct that the TAC now alleges that "[a]n examination of the Pierce display wallet's trading activity in conjunction with Pierce's social media activity shows that ***someone closely connected to*** Defendant Pierce made millions of dollars trading (and selling) EMAX Tokens while simultaneously promoting the tokens to investors as sound long-term investments."  (TAC ¶ 68).  But, contrary to Pierce's contention, this slight change in language does not undermine Plaintiffs' allegation that Pierce, or an agent at his instruction, made the alleged transactions.  (*See id.* ¶ 71).  Therefore, drawing all inferences in Plaintiffs' favor, the TAC makes it plausible that Pierce's agent sold and traded Pierce's EMAX Tokens for his benefit.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  October 3, 2023
Title:  In Re Ethereummax Investor Litigation

Moreover, as to the May 28 tweet, it is of no matter that someone closely connected to Pierce (as opposed to Pierce himself) owned the Pierce display wallet. What is important is that, based on the tweets, consumers believed that Pierce held a large stake in EMAX Tokens, that he made substantial profits from his investments, and that he was committed in investing in EMAX as a long-term investment, as the TAC sufficiently alleges.  (*See, e.g.*, TAC ¶¶ 205, 207, 210).

At the hearing, counsel for Pierce argued that Plaintiffs' argument is inconsistent with their theory for their Manipulation Claim.  However, Plaintiffs "may assert inconsistent theories of recovery at the pleading stage." *Saroya v. Univ. of the Pac.*, 503 F. Supp. 3d 986, 998 (N.D. Cal. 2020) (noting that a plaintiff could assert "inconsistent claims alleging both the existence and the absence of an enforceable contract").

Accordingly, the Pierce Motion is **DENIED** as to Claims 1, 3, 5, and 7.

## 2.      Manipulation Claim (Claim 9)

The TAC alleges that Pierce made false and misleading statements designed to manipulate the securities' market in violation of California Corporations Code sections 25400 and 25500 (the "Manipulation Sections").  (TAC ¶ 419).  Plaintiffs allege that Defendants engaged in several different forms of manipulation, but the only theory alleged against Pierce is a "parking" theory.  (*Id.* ¶ 420).  The TAC defines "parking" as the transfer of "record ownership of securities in order to hide the true identity of the beneficial owner."  (*Id.*).

Pierce moves to dismiss Claim 9 on two grounds:

Pierce first argues that Plaintiffs fail to allege a claim because the TAC does not allege that Pierce engaged in a "purchase or sale of any security" as required by section 25400.  (Pierce Motion at 4–5 (citing Cal. Corp. Code § 25400)).  But, as already discussed, the Court does not find this argument persuasive.  The TAC alleges that, at the very least, Pierce's agent made such transactions under his instruction.  This

---

**CIVIL MINUTES—GENERAL**                                    14

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  October 3, 2023
Title:  In Re Ethereummax Investor Litigation

allegation is sufficient to demonstrate that Pierce plausibly purchased or sold EMAX
Tokens, at least at the pleadings stage.

Pierce also contends that Plaintiffs fail to meet the elements required to allege a
"parking" theory.  (*Id.* at 6–7).  In so arguing, Pierce relies on *Yoshikawa v. S.E.C.*, 192
F.3d 1209 (9th Cir. 1999).  In *Yoshikawa*, the Ninth Circuit held that a "parking" claim
requires the following elements:

(1) a pre-arrangement to sell and then buy back securities (to conceal
true ownership);

(2) on the same, or substantially the same, terms (thus keeping the
market risk entirely on the seller);

(3) for a bad-faith purpose, accomplished through a sham transaction in
which nominal title is transferred to the purported buyer while the
economic incidents of ownership are left with the purported seller.

*Id.* at 1214.

But *Yoshikawa* is inapposite.  There, the Ninth Circuit was analyzing a theory of
"parking" in which brokerage firms sell securities to their customers under a secret
agreement, only to repurchase them at a later date to evade certain tax deductions and
manipulate their net capital.  *Id.* at 1212–14.  The various definitions of "parking" on
which the Ninth Circuit relied emphasized that the term referred to a sham sale or
transaction to circumvent certain reporting requirements.  *Id.*

Although both the TAC and *Yoshikawa* refer to "parking," the Court understands
Plaintiffs' use of the word as distinct from the term of art employed by the Ninth
Circuit in *Yoshikawa*.  Here, the TAC explicitly defines "parking" as "transferring
record ownership of EMAX Tokens in order to hide the true identity of the beneficial
owner."  (TAC ¶ 422).  And, in the context of Plaintiffs' Manipulation claim, it is clear
that Plaintiffs are not alleging that Pierce engaged in "parking" for the purposes
discussed in *Yoshikawa*.  Rather, the TAC alleges that Pierce concealed his ownership

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                 Date:  October 3, 2023
Title:  In Re Ethereummax Investor Litigation

interest in EMAX Tokens either to create a false or misleading appearance of active
trading or to induce the purchase or sale of security by others.  (*Id.* ¶ 419).

Accordingly, the Pierce Motion as to Claim 9 is **DENIED**.

### 3.  Insider Trading Claim (Claim 11)

In its SAC Order, the Court previously dismissed the Insider Trading claim as
alleged against Pierce because Plaintiffs failed to connect Pierce's non-public
knowledge of impending celebrity promotions to his alleged purchase and/or sale of
EMAX Tokens.  (SAC Order at 26).

Pierce now moves to dismiss Plaintiffs' most recent iteration of the Insider
Trading claim on several grounds.  However, the Court addresses only his fourth
argument – that Plaintiffs failed to plead with the requisite specificity regarding their
allegations against Pierce – as it is dispositive.

The TAC alleges, in relevant part, as follows:

452.  Insider Trading Defendants separately or collectively had
access to material, non-public information.  In particular, in the
leadup to the celebrity promotions beginning on May 26, 2021,
Insider Trading Defendants had access to information evidencing
the falsity of Executive Defendants' and Promoter Defendants'
statements and omissions made in connection with the
solicitations and sales of EMAX Tokens contemporaneously
with when those statements and omissions were made.

453.  In addition, Defendants Rechnitz and Pierce violated
Section 25402 by purchasing EMAX Tokens (in addition to
those EMAX Tokens they each received from the Company and
Perone as undisclosed payments for the promotional activities of
Mayweather and Pierce) while in possession of material non-
public information about the precise timing of the celebrity

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  October 3, 2023
Title:  In Re Ethereummax Investor Litigation

> promotions.  Rechnitz and Pierce then used that inside information to time the sale of their EMAX Tokens as the price was artificially increased from those celebrity promotions.
>
> 454.  Insider Trading Defendants gained material, non-public information by virtue of their positions within the Company and/or relationship to Company CEO Perone and/or Executive Defendant Rechnitz.

(TAC ¶¶ 452, 453, 454).

Based on the TAC's allegations, the Court understands Plaintiffs as alleging two categories of non-public information: (1) the impending celebrity promotions, and (2) the "falsity of Executive Defendants' and Promoter Defendants' statements and omissions."  (*See id.*).

Regarding the first category of non-public information, even if the Court were to take the allegations in the SEC's Cease-and-Desist Order against Pierce as true and fully incorporated into the TAC, Plaintiffs only allege that Pierce sold large portions of the EMAX tokens that he received as compensation.  (*See* Opp. to Pierce Motion at 7–8).  As the Court previously noted, it is still not clear to the Court whether, as a legal matter, the receipt (as opposed to the purchase) of securities suffices to state an Insider Trading claim.  (*See* SAC Order at 26).  Despite the Court's flagging this issue in its SAC Order, Plaintiffs again fail to cite to any authority to that effect.

As to the second category of non-public information, the TAC fails to sufficiently allege which false statements and omissions regarding the celebrity promotions Pierce allegedly knew.  Merely stating that Pierce had knowledge of "information evidencing the falsity of Executive Defendants' and Promoter Defendants' statements and omissions" is not enough.  *See In re VeriSign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1221 (N.D. Cal. 2007) (finding allegations insufficient under Rule 9(b) because the plaintiffs failed to explain "which 'true adverse facts' each of the selling defendants knew).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  October 3, 2023
Title:  In Re Ethereummax Investor Litigation

Accordingly, the Pierce Motion as to Claim 11 is **GRANTED** *without leave to amend*.

### 4.  Injunctive Relief

Pierce also moves to dismiss Plaintiffs' request for injunctive relief against him. (Pierce Motion at 13).  Because Plaintiffs do not oppose this request, the Pierce Motion is **GRANTED**.  Accordingly, Plaintiffs' request for injunctive relief against Pierce is **DISMISSED** *with prejudice*.

### C.    Perone Motion

Perone and the Company seek to dismiss Claims 1, 3, 5–7, and 9–11.  (Perone Motion at 1–2).

### 1.    State Consumer Law Claims (Claims 1, 3, and 5–7)

Previously, the Court dismissed with leave to amend Plaintiffs' state consumer law claims against Perone and/or the Company based on their false advertising claims. (SAC Order at 65).

Perone again seeks to dismiss Claims 1, 3, and 5–7.  (Perone Motion at 1–2).

First, Perone argues that Plaintiffs' "bare" allegations that Perone "controlled" the Company's social media accounts are insufficient to show that he was responsible for posting the allegedly false statements.  (*Id.* at 2–3).  Moreover, according to Perone, the TAC is internally inconsistent because it alleges that co-Defendant Justin Maher – not Perone – had control over the Company's social media accounts because he "served as the administrator/moderator" of the Company's Facebook page.  (*Id.* at 3; *see also* TAC ¶ 42).

In response, Plaintiffs argue that Perone, as the sole director of and the only person connected to the Company, had control over all social media accounts.  (Opp. to Pierce Motion at 5–6).  Moreover, according to Plaintiffs, Perone was the "guiding

---

**CIVIL MINUTES—GENERAL**                                          **18**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  October 3, 2023
Title:  In Re Ethereummax Investor Litigation

spirit" and "central figure" behind the Company prior to and after the date of its
incorporation.  (*Id.* at 6 (quoting *Wolf Designs, Inc. v. DHR & Co.*, 322 F. Supp. 2d
1065, 1072 (C.D. Cal. 2004)).

The TAC makes the following allegations regarding Perone's involvement in the
Company's social media accounts:

- "On May 16, 2021, the EthereumMax Instagram account (which was
  ultimately controlled by Perone via his position as CEO of the de facto
  corporation, and operated by Perone or an agent working on his behalf)
  posted the following promotion titled the 'EthereumMax Pre-launch
  Kickoff[.]'"  (TAC ¶ 62).

- "Thereafter, on May 26, 2021, EthereumMax's official Twitter page
  (which, upon information and belief, is controlled by Executive Defendant
  Perone) issued a tweet stating 'Our new token to buy $eMax is LIVE! . . .'
  The Tweet also had a lengthy how to buy picture called the 'Beginners
  Guide to Buying EthereumMax.'"  (*Id.* ¶ 97).

- "On May 19, 2021, Executive Defendant Perone (or an agent of his)
  posted a message to investors on the EthereumMax Instagram account[.]"
  (*Id.* ¶ 121).

- "[O]n May 23, 2021, Speer uploaded an audio recording from Perone to
  Speer's YouTube channel, wherein Perone states that EthereumMax's use
  of 'high level' brand ambassadors and promotors 'legitimized' the project.
  Perone also touted the 'technological upgrades' that were on the way for
  the EthereumMax project.  Perone repeatedly proclaimed that he will be
  meeting retail investors 'on the moon' when the price of EMAX Tokens
  rose from the efforts of the Executive Defendants and Promotor
  Defendants."  (*Id.* ¶ 123).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  October 3, 2023
Title:  In Re Ethereummax Investor Litigation

- "Because the press release purportedly was from simply 'EthereumMax,' it can be inferred that whatever company or entity behind EthereumMax is the source.  Because Defendant Perone was the sole director of EMAX Holdings, LLC, Perone was the Executive Defendant that was primarily responsible for the content and issuance of the May 26, 2021 press release."  (*Id.* ¶ 131).

As an initial matter, the Court has already determined that allegations of statements regarding "technological upgrades" and future intentions to "lock their wallets" are too vague to support a false advertising claim.  (SAC Order at 64).  The Court will not disturb that prior finding here.

However, as to the remainder of the allegations, the Court determines that the TAC sufficiently alleges that Perone wrote the social media posts.

"California law does not impose liability on corporate officers merely for their role in the corporation, but only for wrongful acts in which they have been personally involved."  *O'Connor v. Uber Techs., Inc.*, No. 13-3826, 2013 WL 6354534, at *18 (N.D. Cal. Dec. 5, 2013).  Rather, "an owner or officer of a corporation may be individually liable under the UCL if he or she ***actively and directly participates in*** the unfair business practice."  *Id.* (citation omitted) (emphasis added).  "The Ninth Circuit has also noted that cases which have found personal liability on the part of corporate officers have typically involved instances where the defendant was the 'guiding spirit' behind the wrongful conduct, . . . or the 'central figure' in the challenged corporate activity."  *Bangkok Broad. & T.V. Co. v. IPTV Corp.*, 742 F. Supp. 2d 1101, 1114 (C.D. Cal. 2010) (internal quotation marks and citation omitted).

To the extent that Plaintiffs' argument is that Perone controlled the Company's social media accounts by virtue of his position as CEO, the Court rejects that argument as other courts have consistently held.  *See, e.g.*, *O'Connor*, 2013 WL 6354534, at *18 (holding that pointing to the defendants' "roles in the corporation and alleging that they were 'responsible' for pay practices and employment policies does not make it

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  October 3, 2023
Title:  In Re Ethereummax Investor Litigation

plausible that they were personally liable, any more so than it would make any officer responsible for the torts allegedly committed by their corporation").

However, the Court agrees with Plaintiffs that the TAC sufficiently alleges that Perone was a "central figure" behind the Company and its dealings, both before and after its incorporation.  For example, the TAC alleges that Perone was the creator of both EMAX and the Company and the *sole* director of the Company after its incorporation.  (TAC ¶¶ 17, 25, 514).  Based on these allegations, it is plausible that Perone actively and directly participated in the social media posts.  *See Aardwolf Indus., LLC v. Abaco Machs. USA, Inc.*, No. 16-1968, 2016 WL 11497538, at *5 (C.D. Cal. Aug. 11, 2016) (denying a motion to dismiss, in part, because the complaint sufficiently supported the claim that the defendant "was an active force behind the alleged infringement" because she was the *sole* owner of the purportedly infringing company); *Bangkok Broad.*, 742 F. Supp. 2d at 1115 (finding the CEO liable for the company's copyright infringement because he was the "guiding spirit" behind the company's activities).

Accordingly, the Perone Motion is **DENIED** as to Claims 1, 3, and 5–7.

## 2.  California Securities Claims (Claims 9–11)

Perone contends that the Court should dismiss the Manipulation, Misrepresentation, and Insider Trading claims (Claims 9, 10, and 11) because the TAC does not sufficiently allege that Perone had any actual knowledge of or engaged in any transactions completed by the "0xc46 wallet" and "Dev Wallet."  (Perone Motion at 4).

Plaintiffs makes two arguments in response.  Plaintiffs first argue that the TAC plausibly alleges Perone participated in the "pump and dump" scheme based on a statement made to a co-Defendant.  (Opp. to Perone Motion at 7; *see also* TAC ¶ 43).  However, the Court has already rejected this allegation as insufficient under Rule 9(b).  (SAC Order at 25–26).

Plaintiffs next argue that they need not show that Perone personally sold EMAX Tokens due to his role in directing the sale and solicitation of EMAX Tokens to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                 Date:  October 3, 2023
Title:  In Re Ethereummax Investor Litigation

public.  This argument contradicts case law and directly contravenes the Court's SAC
Order, which specifically noted that Plaintiffs failed to allege "even a ***single sale*** of
EMAX Tokens by Defendant Perone" when dismissing the Insider Trading claim
against Perone.  (*Id.* at 25).  *See In re VeriSign*, 531 F. Supp. at 1221 (holding that the
plaintiffs failed to allege a section 25402 claim with sufficient particularity because, in
part, they did not include information on "which sales were made when defendants
were in possession of which inside information").

Plaintiffs' reliance on *Zakinov v. Ripple Labs*, *Inc*., No. 18-067753, 2020 WL
922815 (N.D. Cal. Feb. 26, 2020), is also unpersuasive.  In *Zakinov*, the complaint
specifically alleged that the defendants "systematically marked XRP and financially
benefited from such efforts" by "earn[ing] over $1.1 billion through the sale of XRP.'"
*Id.* at *12.  The court found these allegations "more than sufficient to establish their
status as sellers" for a federal securities claim.  *Id.*  Plaintiffs make no such allegations
here.

Accordingly, the Perone Motion is **GRANTED** ***without leave to amend*** as to
Claims 9, 10, and 11.

### 3.  Claims Against the Company

In the SAC Order, the Court rejected Perone's argument that allegations against
the Company prior to its incorporation fail as a matter of law.  (SAC Order at 28).  But
in doing so, Plaintiffs were told to "specifically plead that [they are] seeking to hold
Perone and the Company liable under an alter ego theory in the amended Complaint."
(*Id.* at 6).

Now, Perone contends that Plaintiffs failed to heed the Court's instruction and
plead an alter ego theory, de facto corporation theory, or corporation by estoppel theory
to hold the Company liable for Claims 1, 3, 5, 6, and 9–11.  (Perone Motion at 4).

Without identifying a specific theory in their Opposition, Plaintiffs argue that
they have sufficiently pled allegations to attribute Perone's actions to the Company.
(Opp. to Perone Motion at 7).  According to Plaintiffs, it is plausible to attribute

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  October 3, 2023
Title:  In Re Ethereummax Investor Litigation

Perone's actions to the Company since he was the sole director of EMAX Holdings, LLC.  (*Id.*).  Plaintiffs also argue that, at this stage, it is unclear without discovery whether Perone acted on his own behalf or on behalf of the Company.  (*Id.*).

Here, the TAC alleges that the Corporation was incorporated on June 6, 2021. (TAC ¶ 25).  The TAC also makes several allegations that Perone created and served as the "sole director" of the Company.  (*Id.* ¶¶ 17, 25).  Notably, the TAC alleges that the Company "operated as the ***de facto corporate entity*** and Defendant Perone [was] the sole executive and director of this holding company." (*Id.* ¶ 514).  Therefore, according to the TAC, Perone was primarily responsible for issuing several press releases and controlling the EMAX public wallet.  (*Id.* ¶¶ 124, 131, 135).

Because Plaintiffs do not specify a theory under which they are asserting claims against the Company, the Court examines each in turn:

***Alter Ego***: "To satisfy the alter ego test, a plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (internal quotation marks and citation omitted).

To satisfy the first prong, Plaintiffs must show "that the [one entity] controls [the other] to such a degree as to render the latter the mere instrumentality of the former." *Id.*  "This test envisions pervasive control over [the controlled entity], such as when [the controlling entity] 'dictates every facet of the [controlled entity's] business — from broad policy decisions to routine matters of day-to-day operation." *Id.* at 1073–74.  Courts have considered a number of factors in determining whether there is a unity of interest and ownership, such as the "commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other." *Wady v. Provident Life & Accident Ins. Co. of Am.*, 216 F. Supp. 2d 1060, 1066 (C.D. Cal. 2002) (citation omitted).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  October 3, 2023
Title:  In Re Ethereummax Investor Litigation

Here, Plaintiffs have not sufficiently pled an alter ego theory.  Plaintiffs do not even provide conclusory allegations of an alter ego theory.  *See Gerritsen v. Warner Bros. Ent. Inc.*, 116 F.Supp.3d 1104, 1136 (C.D. Cal. June 12, 2015) ("Conclusory allegations of 'alter ego' status are insufficient to state a claim.  Rather a plaintiff must allege specific facts supporting both of the necessary elements.").  Nor do Plaintiffs argue that any of the "unity of interest" factors apply here, beyond the mere fact that Perone had total ownership over the Company.  Such an allegation, on its own, is insufficient.  *See Ranza*, 793 F.3d at 1073–74 ("Total ownership and shared management personnel are alone insufficient to establish the requisite level of control." (citation omitted)).

*De Facto Corporation*:  To argue that a company is a de facto corporation, Plaintiffs must show (1) the existence of a charter or general law under which an entity may be formed; (2) good faith attempted compliance with the statute; (3) colorable compliance with the statutory requirements; and (4) an assumption of the corporate powers.  *Global BTG LLC v. Nat'l Air Cargo, Inc.*, No. 11-01657, 2011 WL 2672337, at *2 (C.D. Cal. June 29, 2011) (citing *Cooper v. Leslie Salt Co.*, 70 Cal. 2d 627, 634, 75 Cal. Rptr. 766 (1969)).

The Court determines that Plaintiffs have not pled any facts or made any arguments in their Opposition to demonstrate that the Company was acting as a de facto corporation.  Conclusory allegations that the Company was acting as a "de facto corporation" or that Perone exercised primarily responsibility over the Company are insufficient.  (*See* Opp. to Perone Motion at 7; *see also* TAC ¶ 514).  While Plaintiffs argue that the Company did ultimately assume a corporate form as of June 6, 2021, such allegations fall short.  (*See* TAC ¶ 25).  *See Global BTG LLC v. Nat'l Air Cargo, Inc.*, No. 11-01657, 2013 WL 12121983, at *9 (C.D. Cal. Jan. 7, 2013) (rejecting the argument that "complying with the requirements for formation of an LLC" after the wrongful act is sufficient to invoke the de facto doctrine).

*Corporation by Estoppel*:  Under the doctrine of corporation by estoppel, an association representing itself to be a corporation cannot avoid liability by denying its own corporate existence.  *See Charles Ehrlich & Co. v. J. Ellis Slater Co.*, 183 Cal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  October 3, 2023
Title:  In Re Ethereummax Investor Litigation

709, 712, 192 P. 526 (1920); *see also* 8 Witkin, Summary of Cal. Law (11th),
Corporations § 24.

Here, the Court concludes that, even after drawing all inferences in Plaintiffs'
favor, the TAC fails to plausibly allege that the Company was holding itself out as a
corporation prior to its date of incorporation.  While the TAC raises several allegations
that EMAX was conducting business, advertising EMAX Tokens, and entering
promotional relationships before June 6, 2021, it at no point alleges that anyone
represented EMAX and/or the Company as an incorporated entity in these dealings.

Accordingly, the Perone Motion is **GRANTED** *without leave to amend* as to the
claims raised against the Company prior to the date of its incorporation.

### D.    Rechnitz Motion

Rechnitz moves to dismiss Claims 1, 3, 5–7, and 9–12.  (Rechnitz Motion at i–
ii).  Plaintiffs do not oppose dismissal of Claims 1, 3, 5–7, and 10.  They also do not
oppose dismissal of Claim 12 to the extent that it alleges secondary liability under
section 25403(b).  (Opp. to Rechnitz Motion at 2).  The Court therefore only addresses
the Rechnitz Motion as to Claims 9, 11, and 12 (to the extent Claim 12 alleges a claim
under section 25504.1).

#### 1.    Manipulation Claim (Claim 9)

Plaintiffs allege that Rechnitz also violated the Manipulation Sections.  Section
25400(a) prohibits "*[f]or the purpose of creating a false or misleading appearance of
active trading* in any security or a false or misleading appearance with respect to the
market for any security . . . to effect any transaction in a security which involves no
change in the beneficial ownership thereof."  Cal. Corp. Code § 25400(a) (emphasis
added).  Section 25400(b) also prohibits "a series of transactions in any security
creating actual or apparent active trading in such security or raising or depressing the
price of such security, *for the purpose of inducing the purchase or sale of such
security* by others."  *Id.* § 25400(b) (emphasis added).

---

**CIVIL MINUTES—GENERAL**                                                  25

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  October 3, 2023
Title:  In Re Ethereummax Investor Litigation

Rechnitz argues that Plaintiffs insufficiently pled a violation of the Manipulation Sections on two grounds.

***First***, Rechnitz contends that the TAC fails to allege that he obscured his ownership interest in EMAX Tokens – a practice called "parking" as discussed above – with the requisite intent as defined by the Manipulation Sections.  (Rechnitz Motion at 15).  In so arguing, Rechnitz points to the fact that the TAC alleges that Rechnitz and others "engaged in improper parking by their use of various pass-through wallet addresses ***to obscure their respective ownership and control*** over the wallets and the digital assets within."  (TAC ¶ 424 (emphasis added)).

In response, Plaintiffs argue that Rechnitz "participated in the acts by the Company and Executive Defendants Perone and Maher that violated Section 25400 . . . by amplifying the efforts to artificially raise the price, and induce further sales, of EMAX Tokens by engaging with Pierce in a series of EMAX Token transactions and related promotions by Pierce for the purpose of manipulating the price of EMAX Tokens."  (Opp. to Rechnitz Motion at 7).

To the extent that Plaintiffs are alleging a theory of secondary liability for the Manipulation Sections, the Court has already said that such a claim is unavailable to Plaintiffs because it is not explicitly provided by statute.  (*See* SAC Order at 17 (citing Cal. Corp. Code § 25510)).

However, the TAC does allege that Rechnitz directly participated in "parking" for the unlawful purpose discussed in section 25400(a).  Taking all inferences in Plaintiffs' favor, the TAC alleges that Rechnitz plausibly concealed his ownership interest when making transactions to create a false appearance of active and organic market activity.  *See* Fed. R. Civ. Rule 9(b) ("Malice, ***intent***, knowledge, and other conditions of a person's mind may be alleged generally. (emphasis added)).  In turn, this subterfuge could have induced Plaintiffs to purchase EMAX Tokens, as prohibited under section 25400(b).

At the hearing, counsel for Rechnitz reiterated the argument that his alleged activity could not possibly have created an appearance of market activity because all

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  October 3, 2023
Title:  In Re Ethereummax Investor Litigation

the transactions described in the TAC were non-public, wallet-to-wallet transfers.
(Rechnitz Motion at 15).  Therefore, according to Rechnitz's counsel, Plaintiffs cannot
and have not pled that they saw these transactions.  As an initial matter, this argument
relies on facts regarding whether the transactions were public or private that appear to
contradict the allegations in the TAC.  Rechnitz thus raises a factual dispute that is
inappropriate to resolve at this stage.

More fundamentally, this argument is inapt because section 25500, while limited
to intentional misrepresentations, "creates the private remedy for violations of section
25400 and extends liability to all persons affected by market manipulation ***without
requiring reliance*** or privity."  *Cal. Amplifier, Inc. v. RLI Ins. Co.*, 94 Cal. App. 4th
102, 109, 113 Cal. Rptr. 2d 915 (2001) (emphasis added).  It is sufficient here that
Plaintiffs alleged they were "damaged by relying on an assumption of an honest and
fair market, free of manipulation, when buying and selling EMAX Tokens in the
marketplace." (TAC ¶ 427).  *See id.* at 110 (noting that liability "extends to everyone
whose market trades are affected by the manipulation").

***Second***, Rechnitz contends that Plaintiffs failed to allege any damages as a result
of his alleged parking.  (Rechnitz Motion at 16).  In response, Plaintiffs contend that
their price premium theory of damages, which is sufficient for their state consumer law
claims (*see* SAC Order at 38) also applies here.

Applying this price premium theory to the Manipulation claim, the Court
understands Plaintiffs as arguing that Rechnitz's parking created the appearance of
active trading activity that artificially increased demand and raised the price of EMAX
Tokens when purchased by Plaintiffs.  (Opp. to Rechnitz Motion at 7–8; *see also* TAC
¶ 426).  Under this theory, the TAC alleges that Rechnitz was able to sell his EMAX
Tokens during the Relevant Period at a peak price for substantial profits before the
price plummeted.  (TAC ¶¶ 171–174).  Based on these allegations, the Court
determines that Plaintiffs have sufficiently articulated a theory of loss causation.

Accordingly, the Rechnitz Motion is **DENIED** as to Claim 9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  October 3, 2023
Title:  In Re Ethereummax Investor Litigation

### 2.    Insider Trading Claim (Claim 11)

The Court previously dismissed the Insider Trading claim as alleged against Rechnitz because Plaintiffs failed to connect Rechnitz's knowledge of impending celebrity promotions to his purchase and/or sale of EMAX Tokens.  (SAC Order at 26).  Rechnitz argues that the TAC failed to add allegations regarding this nexus issue previously identified by the Court.  (Rechnitz Motion at 8).  Moreover, according to Rechnitz, Plaintiffs added a second category of non-public information – "information evidencing the falsity of Executive Defendants' and Promoter Defendants' statements and omissions made in connection with the solicitations and sales of EMAX Tokens contemporaneously with when those statements and omissions were made" – that also falls short of the Rule 9(b) pleading requirements.  (*Id.* at 8–9; *see also* TAC ¶ 452).

Regarding Rechnitz's alleged knowledge of the celebrity endorsements, Plaintiffs have failed to sufficiently allege facts connecting the non-public knowledge to the purchase and/or sale of EMAX Tokens as previously instructed.  In fact, Plaintiffs now appear to concede that information of the celebrity endorsements was publicly known when Rechnitz allegedly sold his EMAX Tokens.  (Opp. to Rechnitz Motion at 10 ("[T]he information that a celebrity promotion of EMAX Tokens has occurred was publicly known while Rechnitz was selling off . . .")).

Plaintiffs (and in turn, the Court) now focus on a new category of non-public information: the falsity of the Executive Defendants' and Promoter Defendants' statements and omissions.  (*Id.*).  According to Plaintiffs, Rechnitz used this insider knowledge to "optimally time his sales of EMAX Tokens to coincide with the artificial pump in the EMAX Token's price and volume that was created by those same misleading promotions."  (*Id.* at 8–9).

The TAC alleges, in relevant part, as follows:

> 90.  Defendant Rechnitz confirmed to CW1 that EthereumMax was a scam and that his celebrity promoter cohorts were aware that they were shilling the dubious EMAX Tokens for his (and their collective) benefit.  CW1 inquired as to why the celebrity

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  October 3, 2023
Title:  In Re Ethereummax Investor Litigation

promotors would engage with these solicitations, Rechnitz
revealed that the Executive Defendants give the Promotor
Defendants millions of tokens.  Rechnitz further disclosed that
he knew exactly when these promotions would occur and used
this knowledge to front run the posts and sell tokens into the
market in the aftermath.  According to CW1, Defendant Rechnitz
was constantly in touch with the Promotor Defendants, including
Defendant Kardashian, who Rechnitz would speak with at least
every few days.

91.  On one occasion taking place on or around the same time as
Pierce's promotions, Rechnitz again tried to convince CW1 to
get in on the scheme to front run investors.  Because CW1 was
not crypto-savvy, Rechnitz once pulled out his phone and
demonstrated how he made trades on his trading app
immediately following a celebrity promotion.  As Rechnitz was
demonstrating his illicit trading strategy, CW1 observed
Rechnitz jump out of his seat, point his fingers in the air and
proclaim that it was "so easy."  CW1 then saw Rechnitz dancing
in a circle and chanting "pump and dump . . . pump and dump"
in an apparent victory dance for successfully capitalizing on his
inside information regarding Pierce's promotions.

. . .

452.  Insider Trading Defendants separately or collectively had
access to material, non-public information.  In particular, in the
leadup to the celebrity promotions beginning on May 26, 2021,
Insider Trading Defendants *had access to* information
evidencing the falsity of Executive Defendants' and Promoter
Defendants' statements and omissions made in connection with
the solicitations and sales of EMAX Tokens contemporaneously
with when those statements and omissions were made.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                Date:  October 3, 2023
Title:  In Re Ethereummax Investor Litigation

. . .

> 454.  Insider Trading Defendants gained material, non-public information by virtue of their positions within the Company and/or relationship to Company CEO Perone and/or Executive Defendant Rechnitz.

(TAC ¶¶ 90–91, 452, 454 (emphasis added)).

Like the Insider Trading claim alleged against Pierce, the TAC fails to sufficiently allege which false statements and omissions regarding the celebrity promotions Rechnitz allegedly knew.  Merely stating that Rechnitz had knowledge of "information evidencing the falsity of Executive Defendants' and Promoter Defendants' statements and omissions" is not enough.  *See In re VeriSign*, 531 F. Supp. at 1221 (finding allegations insufficient under Rule 9(b) because the plaintiffs failed to explain "which 'true adverse facts' each of the selling defendants knew).

In their Opposition, Plaintiffs attempt to add further specificity to their allegations by arguing that Rechnitz had knowledge of the following non-public information: (1) that Pierce's promotions concerning ESPN were false; (2) that Pierce's promoted wallet transactions were false; (3) that Mayweather had not made EMAX a part of his multimillion dollar investment strategy but was rather a paid promoter; and (4) that the steep increase in the price and trading activity for EMAX Tokens were the result of wash trading.  (Opp. to Rechnitz Motion at 10).  Notably, Plaintiffs do not point to any part of the TAC in which these specific allegations appear.  As the Court has previously noted in its FAC Order, Plaintiffs may not amend their pleading through their brief.  (FAC Order at 38).  *See Hatter v. Dyer*, 154 F. Supp. 3d 940, 943 n.2 (C.D. Cal. 2015) (noting that courts cannot consider additional allegations in an opposition to a motion to dismiss).

Accordingly, the Rechnitz Motion is **GRANTED *without leave to amend*** as to the Insider Trading Claim (Claim 11).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                 Date:  October 3, 2023
Title:  In Re Ethereummax Investor Litigation

### 3.      Secondary Liability (Claim 12)

The TAC also alleges that Rechnitz is secondarily liable in violation of
sections 25403(b) and 25504.1.  (TAC ¶ 465).  Because Plaintiffs do not oppose
dismissal of secondary liability claim under section 25403(b), the Court only addresses
Rechnitz's arguments as to section 25504.1.  (*See* Opp. to Rechnitz Motion at 2).

Regarding section 25504.1, Rechnitz argues that Plaintiffs have not sufficiently
pled a secondary liability claim as required by Rule 9(b).  (Rechnitz Motion at 18).
Specifically, Rechnitz argues that the TAC fails to identify (1) which primary violation
he is accused of materially assisting, or (2) what he did to materially assist the primary
violators.  (*Id.* at 19).

In response, Plaintiffs argue that the TAC sufficiently pleads a secondary
liability claim against Rechnitz for the primary violations of section 25401 committed
by Perone and Maher under an agency theory.  (Opp. to Rechnitz Motion at 10).

Based on the Court's reading of the TAC, the only allegations relevant to
Rechnitz under Claim 12 are as follows:

462.   Plaintiffs, on behalf of themselves and all others similarly
situated, reallege and incorporate herein by reference paragraphs 477,
and further alleges as follows:

463.  This Count is asserted against Defendants Perone, Rechnitz, and
Mayweather for violations of Sections 25403(b), 25504 and 25504.1 of
the California Corporations Code.

. . .

465.  This Count is asserted against Defendant Rechnitz because he is
secondarily liable under . . . Section 25504.1 for materially assisting the
violations of Section 25401 (misrepresentations) by primary
perpetrators Executive Defendants Perone and Maher.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                Date:  October 3, 2023
Title:  In Re Ethereummax Investor Litigation

. . .

470.   The conduct of Perone, Rechnitz, and Mayweather described
above, directly or indirectly, provided substantial assistance to the
Company, Maher, and the Promoter Defendants, who issued the false
statements and omissions made in connection with the offers or sales
of an unregistered security alleged herein. This aid and assistance
provides for secondary liability for the other Defendants' primary
violations.

471.   Perone, Rechnitz, and Mayweather, upon information and belief,
had knowledge of the falsity or misleading nature of the statements or
omissions made in connection with the offers or sales of the
unregistered EMAX Tokens.

(TAC ¶¶ 465, 470–472).  The sole allegations incorporated by reference provides that
"Defendants, and each of them, by engaging in the conduct described above within
California, directly or indirectly, sold and offered to sell securities."  (*Id.* ¶ 477).

Based on these allegations, Plaintiffs argue that Rechnitz was an agent of both
the Company and Mayweather.  (*Id.*).  Even ignoring the fact that the TAC erroneously
incorporates only a single paragraph by reference, Plaintiffs' agency theory does not
hold water.  Plaintiffs' secondary liability claim under section 25504.1 relies on
primary violations committed by ***Perone and Maher***.  However, Plaintiffs allege that
Rechnitz was an agent of the ***Company and Mayweather***.

Moreover, the TAC does not identify the specific conduct that renders Rechnitz
secondarily liable.  Plaintiffs fail to do so even after the Court's explicit instructions to
"specify whether each Defendant is alleged to be a primary violator or secondarily
liable (***and why***)."  (SAC Order at 28 (emphasis added)).  The Court also instructed
Plaintiffs to "cite to the ***specific paragraph(s)*** that detail the conduct they believe
renders that specific Defendant liable for a specific securities violation."  (*Id.*).
Incorporating by reference paragraph 477, which provides no specific factual details of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  October 3, 2023
Title:  In Re Ethereummax Investor Litigation

Rechnitz's conduct, does not even come close to complying with Rule 8 and the SAC Order.

Accordingly, the Rechnitz Motion as to Claim 12 is **GRANTED** *without leave to amend*.

## IV.   **CONCLUSION**

Plaintiffs have repeatedly failed to cure the deficiencies identified by the Court and were explicitly warned that this would be their last opportunity to amend.  The SAC specifically stated as follows: "***This will be Plaintiffs' final opportunity to amend.  Any future successful motion to dismiss will be granted <u>without leave to amend</u>.***"  (SAC Order at 84).  The Court will therefore not grant leave for Plaintiffs to file a ***Fourth*** Amended Complaint.

Plaintiffs will re-file their TAC with the correct numbering of their claims by **October 6, 2023**.  Defendants will file their Answers to the remaining claims by **October 24, 2023**.

As to the dismissed claims, a final judgment will be entered after the conclusion of the action.

IT IS SO ORDERED.