John T. Jasnoch (CA 281605)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: 619-233-4565
Fax: 619-233-0508
jjasnoch@scott-scott.com

*Lead Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE ETHEREUMMAX INVESTOR LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Lead Case No. 2:22-cv-00163-MWF-SK<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Judge: Hon. Michael Fitzgerald<br>Date: June 16, 2025<br>Time: 10:00 a.m.<br>Place: First Street Courthouse, Courtroom 5A<br><br>Complaint Filed: January 7, 2022<br>Trial Date: January 27, 2026 |

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................ 1

II.   STATEMENT OF FACTS ........................................................................ 3

    A.    The EthereumMax Project and Token .......................................... 3

    B.    Defendants Orchestrate Widespread Misleading Media Campaign to Promote EthereumMax ............................................................... 3

    C.    Defendants Dump Their EthereumMax Tokens After the Celebrity Promotions ..................................................................................... 4

    D.    Regulatory Response ..................................................................... 5

III.  ARGUMENT ............................................................................................. 5

    A.    The Proposed Classes .................................................................... 5

    B.    The Proposed Trial Plan ................................................................ 8

        1.    Phase I – Proving Liability with Common Evidence ......... 9

        2.    Phase II – Establishing Aggregate Damages ..................... 9

        3.    Phase III – Determination of Damages Allocation for Individual Class Members ................................................ 10

    C.    The Proposed Classes Meet the Requirements of Rule 23(a) ................. 11

        1.    The Proposed Classes/Subclasses Are Sufficiently Numerous ........................................................................ 11

        2.    There Are Questions of Fact and Law Common to the Proposed Classes ............................................................ 12

        3.    Plaintiffs' Claims Are Typical of the Claims of the Proposed Classes ............................................................ 14

        4.    The Representative Plaintiffs Will Fairly and Adequately Protect the Interests of the Proposed Class ..................... 15

        5.    The Proposed Classes Are Ascertainable ........................ 16

    D.    Plaintiffs Satisfy the Requirements of Rule 23(b) ...................... 17

        1.    Common Issues Predominate Over Individual Issues ................. 17

        2.    The Classes' Claims Will Be Resolved Through Common Evidence ........................................................................ 18

        3.    Certification of the Class Is Superior to Other Forms of Litigation ........................................................................ 21

    E.    The Proposed Notice Plan Is Reasonable and Should Be Approved ....... 23

IV.    CONCLUSION ...........................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Hylands, Inc.*,
   300 F.R.D. 643 (C.D. Cal. 2014)...................................................................6

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997).....................................................................................17

*Amgen Inc. v. Ct. Retire. Plans and Trust Funds*,
   133 S. Ct. 1184 (2013).................................................................................17

*AT&T Mobility v. AU Optronics Corp.*,
   707 F.3d 1106 (9th Cir. 2013) .......................................................................6

*Balestra v. Cloud With Me Ltd.*,
   No. 2:18-CV-00804, 2020 WL 4370392 (W.D. Pa. July 2, 2020) ..........13, 22

*Bee, Denning, Inc. v. Capital All. Grp.*,
   310 F.R.D. 614 (S.D. Cal. 2015) .................................................................12

*Broomfield v. Craft Brew Alliance, Inc.*,
   No. 17-cv-01027, 2018 WL 4952519 (N.D. Cal. Sept. 25, 2018) ..........14, 19

*Castro v. Paragon Indus., Inc.*,
   No. 1:19-cv00755, 2020 WL 1984240 (E.D. Cal. Apr. 27, 2020)...............17

*Cervantez v. Celestica Corp.*,
   253 F.R.D. 562 (C.D. Cal. 2008)..................................................................21

*Chavez v. Blue Sky Natural Bev. Co.*,
   268 F.R.D. 365 (N.D. Cal. 2010) .................................................................14

*Crowley v. Peterson*,
   206 F. Supp. 2d 1038 (C.D. Cal. 2002).........................................................21

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 640 (2018) ...................20

*Davy v. Paragon Coin, Inc.*,
   No. 18-CV-00671, 2020 WL 4460446 (N.D. Cal. June 24, 2020) ..........13, 22

*Diamond Multimedia Systems v. Superior Ct.*,
  19 Cal. 4th 1036 (1999) ........................................................................................6

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ...................................................................12, 14, 15

*Ellsworth v. U.S. Bank, N.A.*,
  No. 12-02506, 2014 WL 2734953 (N.D. Cal. June 13, 2014) ...........................16

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp.*,
  326 F.R.D. 592, 601 (N.D. Cal. 2018) ..............................................................19

*Gunaratna v. Dennis Gross Cosmetology LLC*,
  No. CV202311MWFGJSX, 2023 WL 5505052 (C.D. Cal. Apr. 4, 2023)
  (Fitzgerald, J.) ...................................................................................................13

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ..................................................12, 14, 15, 17

*Hanon v. Dataprods. Corp.*,
  976 F.2d 497 (9th Cir. 1992) ..............................................................................14

*Immigrant Assistance Project of L.A. Cnty. Fed'n of Lab. (AFL-CIO) v. I.N.S.*,
  306 F.3d 842 (9th Cir. 2002) ..............................................................................11

*In re Arris Cable Modem Consumer Litig.*,
  327 F.R.D. 334 (N.D. Cal. 2018) .......................................................................20

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  308 F.R.D. 606 (N.D. Cal. 2015) .......................................................................17

*In re Checking Account Overdraft Litig.*,
  275 F.R.D. 666 (S.D. Fla. 2011) ........................................................................18

*In re ConAgra Foods, Inc.*,
  90 F. Supp. 3d 919 (C.D. Cal. 2015) ..................................................................19

*In re Juniper Networks, Inc. Sec. Litig.*,
  264 F.R.D. 584 (N.D. Cal. 2009) .......................................................................14

*In re: Lenovo Adware Litig.*,
  No. 15-md-02624, 2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) .....................20

*In re Lyft Inc. Sec. Litig.*,
  No. 19-CV-02690, 2021 WL 3711470 (N.D. Cal. Aug. 20, 2021).....................22

*In re MyFord Touch Consumer Litig.*,
   291 F. Supp. 3d 936 (N.D. Cal. 2018) ..................................................................19

*In re Nat. W. Life Ins. Deferred Annuities Litig.*,
   268 F.R.D. 652 (S.D. Cal. 2010) .........................................................................19

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   582 F.3d 156 (1st Cir. 2009).................................................................................10

*In re Ripple Labs, Inc.*,
   No. 18-CV-06753, 2024 WL 3074379 (N.D. Cal. June 20, 2024) ......................7

*In re Terazosin Hydrochloride*,
   220 F.R.D. 672 (S.D. Fla. 2004)...........................................................................9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   267 F.R.D. 583 (N.D. Cal. 2010) .......................................................................15

*Krueger v. Wyeth, Inc.*,
   310 F.R.D. 468 (S.D. Cal. 2015) ........................................................................17

*LCX AG v. John Doe Nos. 1-25*,
   Index No. 154644/2022 (N.Y. Sup. Ct. June 3, 2022) .......................................23

*MacDougall v. Am. Honda Motor Co.*,
   No. SACV 17-1079 JGB, 2024 WL 3468759 (C.D. Cal. Mar. 8, 2024) ............8

*Navelski v. Int'l Paper Co.*,
   244 F. Supp. 3d 1275 (N.D. Fla. 2017) ..............................................................20

*Nitsch v. Dreamworks Animation SKG Inc.*,
   315 F.R.D. 270 (N.D. Cal. 2016) .......................................................................17

*Noohi v. Johnson & Johnson Consumer, Inc.*,
   No. CV2003575TJHJEMX, 2022 WL 22278783 (C.D. Cal. Nov. 30, 2022) ...20

*Opperman v. Path, Inc.*,
   No. 13-CV-00453, 2016 WL 3844326 (N.D. Cal. July 15, 2016) .....................21

*People v. Black*,
   214 Cal. Rptr. 3d 402 (Ct. App. 2017) ...............................................................18

*Petersen v. Costco Wholesale Co., Inc.*,
   312 F.R.D. 565 (C.D. Cal. 2016)........................................................................16

*Pryor v. Aerotek Scientific, LLC*,
   No. 278 F.R.D. 516 (C.D. Cal. 2011) ................................................................ 17

*Rensel v. Centra Tech, Inc.*,
   2 F.4th 1359 (11th Cir. 2021) ...................................................................... 22

*Reyes v. Carehouse Healthcare Ctr., LLC*,
   No. SACV1601159CJCMRWX, 2018 WL 11356427 (C.D. Cal. Apr. 5, 2018) 22

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2010) ...................................................................... 14

*Silver Hills Country Club v. Sobieski*,
   361 P.2d 906 (Cal. 1961) ............................................................................. 18

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ...................................................................... 14

*Stitt v. San Fran. Muni. Transp. Agency*,
   No. 12-cv-3704, 2014 WL 1760623 (N.D. Cal. May 2, 2014) ....................... 16

*Torres v. Mercer Canyons Inc.*,
   835 F.3d 1125 (9th Cir. 2016) ...................................................................... 20

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) .................................................................................... 12

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) ...................................................................... 22

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ............................................................................. 12, 13

*Williams v. KuCoin*,
   No. 20CV2806, 2021 WL 5316013 (S.D.N.Y. Oct. 21, 2021) .................. 13, 22

*Yokoyama v. Midland Nat. Life Ins. Co.*,
   594 F.3d 1087 (9th Cir. 2010) ...................................................................... 8

*Zakaria v. Gerber Prods. Co.*,
   755 Fed. Appx. 623 (9th Cir. 2018) .............................................................. 19

**Statutes, Rules & Regulations**

Federal Rules of Civil Procedure

Rule 23................................................................................10, 16
Rule 23(a) ....................................................................................11
Rule 23(a)(1)................................................................................11
Rule 23(a)(2)..........................................................................12, 13
Rule 23(a)(3)................................................................................14
Rule 23(a)(4)................................................................................15
Rule 23(a)'s ...................................................................................2
Rule 23(b).....................................................................................17
Rule 23(b)(3)..........................................................................17, 21
Rule 23(b)(3)'s ...............................................................................2
Rule 23(c)(4)(A)...........................................................................21
Rule 23(g)(1)(A)...........................................................................16
Rule 49...........................................................................................8
Rule 53.........................................................................................10

State Statutes

California Corporate Securities Law ............................................18
California Corporate Securities Law of 1968, §§25110, 25503, 25400, 25500, 5402 ........................................................................1
California Corporations Code §§25401, 25501 .............................1
California False Advertising Law Cal. Bus. & Prof. Code §17500...............1
California Unfair Competition Law Cal. Bus. & Prof. Code §17200.............1
Florida's Deceptive and Unfair Trade Practices Act Ch. 501, §211(1) .........1
Florida Securities and Investor Protection Act Fl. Stat. Section 517.07...1, 18
New Jersey Consumer Fraud Act NJSA §§56:8-1 to 156..............................1
New York's General Business Law Art. 22-A, §349......................................1

**Other Authorities**

Manual for Complex Litigation (Fourth) §11.633 (2009) ......................................8

3 Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS §10.5 (4th ed. 2002) ..................................................................................9

*Rubenstein*, 7 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS §22:82 ...............21

Plaintiffs Ryan Huegerich, Jonathan Semerjian, Nabil Nahlah, Till Freeman, Marko Ciklic, Tunisia Brignol, Milan Puda, Neil Shah, Michael Buckley, and Christopher DeLuca ("Plaintiffs"), through their undersigned counsel and pursuant to Federal Rules of Civil Procedure 23(a), (b)(3), and (g), respectively move to certify this Action as a class action, appoint Plaintiffs as Class Representatives, and appoint Scott+Scott Attorneys at Law LLP ("Scott+Scott") as Class Counsel.[1]

## I.    INTRODUCTION

This case arises from a scheme by the Defendants to misleadingly promote and sell the EthereumMax tokens to investors. The EthereumMax project's de facto leaders, Defendants Giovanni Perone and Jona Rechnitz, collaborated with several celebrity promotors (Defendants Kim Kardashian, Floyd Mayweather, and Paul Pierce) to make false or misleading statements to investors about EthereumMax through social media and other promotional activities.

By orders dated June 6, 2023 and October 3, 2023, this Court has found that Plaintiffs, who are all purchasers of the EthereumMax token, plausibly alleged claims for violation of consumer protection laws of the states of California, Florida, New York, and New Jersey as well as the state securities laws of California and Florida.[2] These claims encompass a range of alleged violations of law, reflect the breadth of

---

[1]    Incorporated by reference into the brief are Plaintiffs Class Allegations in the Third Amended Complaint ("TAC") at ¶¶187-195.

[2]    Plaintiffs bring claims pursuant to: (i) the California Unfair Competition Law Cal. Bus. & Prof. Code §17200; (ii) the California False Advertising Law Cal. Bus. & Prof. Code §17500; (iii) Florida's Deceptive and Unfair Trade Practices Act Ch. 501, §211(1), Fla. Stat. Ann.; (iv) New York's General Business Law Art. 22-A, §349; New Jersey Consumer Fraud Act NJSA §§56:8-1 to 156; (v) the California Corporate Securities Law of 1968, §§25110, 25503, 25400, 25500, 25402; (vi) the California Corporations Code §§25401, 25501; the Florida Securities and Investor Protection Act Fl. Stat. Section 517.07; and (vii) unjust enrichment/restitution.

the defendants' deceptive practices, and should be certified as limited by the Court's motion to dismiss orders.[3]

Plaintiffs' Proposed Class and Subclasses each satisfy Rule 23(a)'s requirements because, as demonstrated below, the Proposed Classes are each sufficiently numerous, likely consisting of tens of thousands of individual members, and suffered a harm resulting from a common challenged course of conduct – Defendants' promotion and sale of EthereumMax tokens.  Plaintiffs' claims, which arise from the same alleged misconduct, are typical of the claims of the Proposed Class and Subclasses, and Plaintiffs (and their counsel) are adequate representatives of the Proposed Classes who will continue to vigorously prosecute the case as they have been for the last three years.

The Classes are also positioned to meet Rule 23(b)(3)'s requirements given the existence of an overwhelming amount of common evidence – namely transaction and blockchain records on the Ethereum blockchain.  This makes the task of ascertaining class members and proving the substance of the alleged violations a relatively simple data-driven exercise susceptible to common factual inquiries that will predominate over individual issues, making the class action vehicle a far superior method of prosecuting and administrating this litigation compared to the alternative of thousands of individual actions.

Damages can also be calculated on a class-wide basis using common data.  As demonstrated in Plaintiffs' experts' reports (Declaration of Jeremy Clark (Ex. 8)[4] and Declaration of Claudiu Dimofte (Ex. 9)) each Class Member suffered harm in the same manner when they purchased their EthereumMax tokens.  The harm resulting

---

[3]    *See* Order Granting in Part and Denying in Part Defendants' Omnibus Motions to Dismiss and the Individual Defendants' Motions to Dismiss and Strike (ECF No. 161); Order RE: Defendants' Motions to Dismiss (ECF No. 189).

[4]    Unless otherwise indicated, all exhibits are attached to the Declaration of John T. Jasnoch in Support of Plaintiffs' Motion for Class Certification.

from Defendants' misconduct can be easily calculated on a class-wide basis using standard arithmetic methods applied uniformly. Clark Decl. at 14.

For these reasons, and those set forth below, the Court should grant Plaintiffs' Motion.

## II. STATEMENT OF FACTS

### A. The EthereumMax Project and Token

EthereumMax is a cryptocurrency project centered around the EMAX tokens, a blockchain-based digital asset. Discovery has revealed that the EthereumMax project and the token's liquidity pool was continuously used as a piggybank for Defendants and to the detriment of Plaintiffs. As Defendant ███████ ███████████████████████████████████████████████████████████████. Ex. 1 – GP-SEC-024014.

### B. Defendants Orchestrate Widespread Misleading Media Campaign to Promote EthereumMax

The EthereumMax project, helmed by Defendant Perone, reached an agreement with Defendants Rechnitz and Mayweather immediately after launch and they ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████ *Id.* at 752.

Perone likewise ████████████████████████████████████████ promotions for EthereumMax. *See* Ex. 3 – GP-SEC-025003. Project insiders recognized ████████████████████████████████████████████████████ ████████████████████████████████████████████████. *See* Ex. 4 – MAHER-000000177.

In May and June 2021, the celebrity marketing blitz occurred. Promoter Defendants Pierce, Kardashian, and Mayweather each misleadingly promoted

EthereumMax and the EMAX tokens to their respective followers during this time period.

The scheme was so successful that the EthereumMax project's inner circle began infighting.  For example, ████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████ *Id.* at 503. ██████████████████████████████████████████████████, Defendant Kardashian went through with her promotional activities a second time.  Defendant █████████████████████████ promoter Defendants, who were each paid handsomely. *See* Ex. 6, GP-SEC-030806; ¶¶85[5], 163, 181.

C.    **Defendants Dump Their EthereumMax Tokens After the Celebrity Promotions**

Following the widespread promotional scheme, retail investors piled into the token.  Discovery has largely confirmed Plaintiffs' allegations that project insiders dumped their personally held tokens.  For example, █████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████ Ex. 7 – GP-SEC-030895.

---

[5]    Unless otherwise indicated, "¶" and "¶¶" references are to the Corrected Third Amended Class Action Complaint, ECF No. 190 (Oct. 6, 2023)

Former project insiders also lamented that ████████████ ████████████████████████████; and ████████████████ ████████████████ Ex. 4 – MAHER-000000177.

Eventually, the project could not survive with the massive amount of insider sales and the value of EthereumMax tokens fell to near zero. Thereafter, Plaintiffs and other investors were uniformly left holding worthless tokens, with the cost in transaction fees and gas fees to conduct a swap sale far exceeding what investors would actually receive in the swap. *See* Clark Decl. at 13-14.

### D. Regulatory Response

Following the precipitous drop of the EthereumMax Token price in the wake of Kardashian's post, the United Kingdom's FCA chair issued a statement noting that Kardashian's promotion of the EMAX Token could be "fraudulent." Specifically, Charles Randell, director of the FCA, gave a speech about the need for a "permanent and consistent solution to the problem of online fraud from paid-for advertising." ¶¶183.

On October 10, 2022, the SEC issued an Order Instituting Cease-and-Desist Proceedings Pursuant to Section 8A of the Securities Act of 1933, Making Findings, and Imposing a Cease-and-Desist Order ("the SEC Order") against Defendant Kardashian in relation to her promotion of EthereumMax. ¶¶176-178. Likewise, on February 17, 2023, the SEC issued a press release titled "SEC Charges NBA Hall of Famer Paul Pierce for Unlawfully Touting and Making Misleading Statements about Crypto Security" and issued an Order Instituting Cease-and-Desist Proceedings Pursuant to Section 8A of the Securities Act of 1933, Making Findings, and Imposing a Cease-and-Desist Order. ¶¶179-180.

## III. ARGUMENT

### A. The Proposed Classes

Plaintiffs now seek to certify the following Classes (the "Proposed Classes"):

**Nationwide Class:** All persons in the United States who, between May 14, 2021, and June 27, 2021, purchased unregistered EthereumMax tokens and were subsequently damaged thereby.

Where plaintiffs bring a nationwide class, there is no requirement that there be a class representative in every state. *See, e.g., Allen v. Hylands, Inc.,* 300 F.R.D. 643, 672 (C.D. Cal. 2014) (certifying nationwide consumer class without representatives from each state).  Plaintiffs are pursuing a nationwide class based only on the California and Florida state securities laws, not on the laws of the several states. Standing may be established through the existence of a class representative in California who purchased the EthereumMax tokens in California and was harmed by conduct occurring in California. *AT&T Mobility v. AU Optronics Corp*., 707 F.3d 1106, 1112 (9th Cir. 2013) (permitting application of California state laws to purchasers outside of California for conspiracy that included in-state collusion).  The same is true for a class representative in Florida.  Furthermore, in *Diamond Multimedia Systems v. Superior Ct.,* 19 Cal. 4th 1036 (1999), the California Supreme Court has held that the state's securities laws "reach out-of-state purchasers and sellers of securities" and "are not limited to transactions made in California." *Id.* at 1065.

As set forth herein, California and Florida laws should be applied to the nationwide class for these unregistered securities claims.  Defendants maintained substantial contacts with California and Florida by residing in California and Florida and/or doing significant business in California and Florida.  Due process is thus satisfied. *AT&T Mobility LLC*, 707 F.3d at 1111.  Further, California and Florida have significant contact to the respective claims of each class member (regardless of where those class members reside).  Indeed, many of the misleading promotions emanated from California, namely Defendants Kardashian, Pierce, and Rechnitz.  Defendant Perone and the subsequently created EthereumMax corporate entity operated out of Florida. In such circumstances, California choice-of-law rules favor nationwide class

treatment. As such, Defendants must discharge a "substantial burden" to show that the law of another state should apply to the exclusion of California. It is worth noting that federal courts in California have certified nationwide classes under California law repeatedly in both securities and consumer class actions. *See e.g.*, *In re Ripple Labs, Inc.*, No. 18-CV-06753, 2024 WL 3074379, at *1 (N.D. Cal. June 20, 2024) (certifying a nationwide class action under California state securities laws).

As for the California, New York, Florida, and New Jersey consumer protection causes of action, Plaintiffs propose certification of four separate state classes:

**California:** All persons in California who, between May 14, 2021, and June 27, 2021, purchased EthereumMax tokens and were subsequently damaged thereby.[6]

**New York:** All persons in New York who, between May 14, 2021, and June 27, 2021, purchased EthereumMax tokens and were subsequently damaged thereby.[7]

**Florida:** All persons in Florida who, between May 14, 2021, and June 27, 2021, purchased EthereumMax tokens and were subsequently damaged thereby.[8]

**New Jersey:** All persons in New Jersey who, between May 14, 2021, and June 27, 2021, purchased EthereumMax tokens and were subsequently damaged thereby.[9]

If the Court declines to certify the aforementioned nationwide class for the California and Florida securities claims, Plaintiffs alternatively propose certification of the California and Florida Subclasses described above for these claims.

---

[6]    Plaintiffs Semerjian Shah, and Buckley are proposed class representatives for California.

[7]    Plaintiffs Huegerich, and Ciklic are proposed class representatives for New York.

[8]    Plaintiffs Nahlah, Freeman, Brignol, and Puda are proposed class representatives for Florida.

[9]    Plaintiff DeLuca is the proposed class representative for New Jersey.

## B.     The Proposed Trial Plan

Plaintiffs' Proposed Trial plan contemplates a single trial on all claims. It provides for a trial bifurcated between liability and damages, and a post-trial "prove up" process presided over by a Claims Administrator or, if necessary, a Special Master.

In Phase I, evidence of liability that is common to all class members will be presented to the jury. Expert testimony and data from Plaintiffs as well as members of the Class will be used to demonstrate injury on a class-wide basis. The jury will make its findings by answering questions contained in special verdict forms.[10]

Assuming that Defendants' liability to the Plaintiffs has been established in Phase I, evidence of aggregate damages will be presented to the jury in Phase II. The jury will then answer special verdict questions in order to award aggregate damages for each of the claims.

In post-trial Phase III, Plaintiffs will present a Claims Administration Protocol to the Court setting forth their proposed procedures for the submission, processing and resolution of claims by individual class members. The Court will be asked to authorize the Claims Protocol and then direct entry of a final judgment reflecting the results of all three phases.

Plaintiffs' trial plan is well-grounded in class action jurisprudence. It is common for courts to have follow-on proceedings regarding allocation and/or individual damages claims or "prove up." *See, e.g., Yokoyama v. Midland Nat. Life*

---

[10]     *See* Fed. R. Civ. P. 49; MANUAL FOR COMPLEX LITIGATION (FOURTH) §11.633 (2009) ("Special verdict forms or interrogatories may help the jury focus on the issues, reduce the length and complexity of the instructions, and minimize the need for, or scope of, retrial in the event of reversible error. [They] may also be used in connection with a procedure by which issues are submitted to the jury sequentially. The jury may be asked to consider a threshold or dispositive issue and return its verdict before submission of other issues, which may be rendered moot by the verdict.").

*Ins. Co.*, 594 F.3d 1087, 1089 (9th Cir. 2010) ("Our court long ago observed that the amount of damages is invariably an individual question and does not defeat class action treatment."); *MacDougall v. Am. Honda Motor Co.*, No. SACV 17-1079 JGB (DFMX), 2024 WL 3468759, at *4 (C.D. Cal. Mar. 8, 2024) (an issue related to allocation of individual damages has no bearing on "the action's suitability for class certification" or "class notice").

### 1.    Phase I – Proving Liability with Common Evidence

In Phase I, the jury will be charged with determining whether Plaintiffs have proved the required elements of the laws of each of the states at issue. Plaintiffs will prove their claims with evidence that will come from Defendants' documents and expert testimony and will be common to the Class. A small sample of the evidence of the type Plaintiffs will introduce is described in their Statement of Facts.

### 2.    Phase II – Establishing Aggregate Damages

Based on the special interrogatories answered by the jury in Phase I, the Court will determine in which claims liability has been established. In Phase II, Plaintiffs will then present class-wide proof of aggregate damages for the class members of each such state.[11] The use of aggregate damages calculations is well established in federal court and implied by the very existence of the class action mechanism itself. *See, e.g.*, 3 Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS §10.5, at 483-86 (4th ed. 2002) ("Aggregate computation of class monetary relief is lawful and proper. Courts have not required absolute precision as to damages . . . . Challenges that such aggregate proof affects substantive law and otherwise violates the defendant's due process or jury trial rights to contest each member's claim individually, will not withstand analysis. . . . Just as an adverse decision against the

---

[11]    For the claims at issue brought pursuant to the laws of Florida, for example, Florida recognizes the use of "fluid recovery." *See, e.g., In re Terazosin Hydrochloride,* 220 F.R.D. 672, 699 (S.D. Fla. 2004) (court recognized computation of aggregate damages in class action).

class in the defendant's favor will be binding against the entire class in the aggregate without any rights of individual class members to litigate the common issues individually, so, too, an aggregate monetary liability award for the class will be binding on the defendant without offending due process."). "Thus, to the extent that Defendants argue that the Plaintiffs' damages methodologies violate Rule 23 or their due process rights, any challenge fails in the starting gate." *In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d 156, 198 (1st Cir. 2009).

Accordingly, Phase II will include expert testimony demonstrating that: (1) Defendants engaged in conduct that affected all members of the Class; (2) Plaintiffs paid monies, fees, and overcharges that they would not have paid had Defendants not engaged in their conduct in promoting the EthereumMax token; and (3) what Plaintiffs would have paid for the EthereumMax had Defendants not engaged in their brazenly tortious conduct with the false and misleading statements. Expert analysis and testimony establishing the aggregate amount of class damage (and, if necessary, on a state-by-state basis) leaving to the "prove up" phase proof of the amount of damages for each class member. The jury will return special verdict forms that provide actual damages in which the jury previously found liability.

### 3.    Phase III – Determination of Damages Allocation for Individual Class Members

The Claims Administration Protocol to be proposed after trial by Plaintiffs will provide an administrative procedure for the allocation of damages to individual class members upon submission of claims. This post-trial administrative process would commence after the conclusion of the Phase II damages trial and the jury's determination of aggregate damages awards. Accordingly, Phase III does not involve any claims or issues relating to Defendants but provides a means for fairly and equitably allocating class-wide damage awards among the members of each affected state law damages classes.

To accomplish allocation, Plaintiffs propose that the Court appoint a Claims Administrator or, if necessary, a Special Master pursuant to Fed. R. Civ. P. 53. Special masters have been used for this purpose in class actions. The Claims Administrator would determine individual damages based on proofs of claim and data provided, under oath, by class members. The Administrator or Special Master would evaluate each damage claim pursuant to a formula proposed by Plaintiffs' experts and approved by the Court and then issue an itemized report to the Court as to damage allocation. Defendants would have an opportunity to contest the calculations, and individual class members would have the right to object as well. The Court would then review the Claims Administrator or Special Master's report, make any changes it believes are necessary, and issue a final judgment.

First, there would be notice of the liability determination in Phase I. Class members will then complete a short form designed to determine whether they are indeed class members. Class members will then submit documentation showing that they purchased EthereumMax tokens during the class period. The Claims Administrator or Special Master then reviews both the Initial Form as well as the Claims Data to ensure that a class member has submitted sufficient proof. The Claims Administrator or Special Master will then, based on the number of claims submitted, determine allocation amounts and make a recommendation to the Court.

## C. The Proposed Classes Meet the Requirements of Rule 23(a)

As shown below, Plaintiffs meet each element of Rule 23(a) for each class and subclass.

### 1. The Proposed Classes/Subclasses Are Sufficiently Numerous

Rule 23(a)(1) is satisfied if the "class is so numerous the joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Evidence in this case demonstrates that the Proposed Classes and Subclasses consist of tens of thousands of EthereumMax purchasers. Plaintiffs' expert estimates that over the relevant period, over 300,000 purchases of EMAX-Pilot or EMAX were made through Uniswap. Of these, 100,000

were made by unique Ethereum addresses.  Clark Declaration at 14.  As a result, numerosity is met.  *See Immigrant Assistance Project of L.A. Cnty. Fed'n of Lab. (AFL-CIO) v. I.N.S.*, 306 F.3d 842, 869 (9th Cir. 2002).

### 2.    There Are Questions of Fact and Law Common to the Proposed Classes

Rule 23(a)(2) requires there to be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). As the Supreme Court has explained, commonality requires that the class's claims "depend upon a common contention" which "must be of such a nature that it is capable of classwide resolution[.]" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).  In other words, there must be questions common to the class that will generate answers common to the class.  *Id.*  ("What matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common answers").  Accordingly, commonality requires the putative class's claims to present an "issue [that] is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). In the Ninth Circuit, Rule 23(a)(2) has been "construed permissively, [such that] [a]ll questions of fact and law need not be common to satisfy the rule."[12] *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (*quoting Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)).  Instead, a single common question suffices to satisfy this requirement.  *WalMart*, 564 U.S. at 350.  Common exposure to the same violations creates a "common nucleus of operative facts" sufficient to find commonality.  *Bee, Denning, Inc. v. Capital All. Grp.,* 310 F.R.D. 614, 626 (S.D. Cal. 2015).

Here, Plaintiffs' and Class Members' claims arise from the common contentions that: (i) Defendants made uniform representations to Plaintiffs and the Class Members regarding the EMAX token, and (ii) this resulted in a common harm

---

[12]    Unless otherwise indicated, citations are omitted.

Plaintiffs and Class Members who overpaid for the tokens that were unregistered and did not possess their promised attributes. This promotional strategy was not targeted to isolated individuals in unique circumstances but was broadly applied to all potential investors through public channels and endorsements by well-known celebrities. As such, the validity of each Class Member's claim can be determined in one stroke, (*Wal-Mart*, 564 U.S. at 341), by resolving these common questions. *See, e.g., Gunaratna v. Dennis Gross Cosmetology LLC,* No. CV202311MWFGJSX, 2023 WL 5505052, at *13 (C.D. Cal. Apr. 4, 2023) (Fitzgerald, J.) (confirming that commonality was satisfied for UCL and FAL claims since such claim apply the objective reasonable consumer test, the answers to which will resolve common class questions). Moreover, evidence of Defendants' bad faith and wrongful motive in promoting the EthereumMax token will not depend on individualized inquiries to the Class members.

The same is true for the state securities claims, all of which arise from a common core set of facts, including the sale and promotion of the EthereumMax token. The proof of each of these elements focuses on the conduct of the Defendants and accordingly, proof for one will be proof for all. EMAX tokens were either registered as securities or they were not. Of course, district courts addressing similar unregistered securities class actions have likewise found these issues sufficient to satisfy the commonality requirement. *See, e.g., Williams v. KuCoin,* No. 20CV2806, 2021 WL 5316013, at *11 (S.D.N.Y. Oct. 21, 2021) (partially certifying class and holding that "questions common to members of the class" include "whether the TOMO Tokens are securities"); *Balestra v. Cloud With Me Ltd.*, No. 2:18-CV-00804, 2020 WL 4370392, at *3 (W.D. Pa. July 2, 2020) (certifying class and finding common questions include whether "Defendants offered and sold unregistered securities in violation of the federal securities laws"); *Davy v. Paragon Coin, Inc.*, No. 18-CV-00671, 2020 WL 4460446, at *6 (N.D. Cal. June 24, 2020) ("whether the PRG Tokens qualify as 'securities'" is a common question).

Thus, there are plenty of common questions capable of generating common answers to the Classes, any one of which alone satisfies Rule 23(a)(2).

### 3.    Plaintiffs' Claims Are Typical of the Claims of the Proposed Classes

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."   Fed. R. Civ. P. 23(a)(3). "Typicality 'does not mean that the claims of the class representatives must be identical or substantially identical to those of absent class members.'"   *Staton v. Boeing Co.,* 327 F.3d 938, 957 (9th Cir. 2003).   Rather, they only need to be "reasonably co-extensive with those of absent class members."   *Hanlon, supra* at 1020. *See also In re Juniper Networks, Inc. Sec. Litig.,* 264 F.R.D. 584, 589 (N.D. Cal. 2009).  This requirement is satisfied when the class representatives and the class members are subjected to and injured by the same course of conduct by the same defendants, and make similar claims.   *Ellis,* 657 F.3d at 984 ("Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought . . . .") (*quoting Hanon v. Dataprods. Corp.,* 976 F.2d 497, 508 (9th Cir. 1992); *Rodriguez v. Hayes,* 591 F.3d 1105, 1124 (9th Cir. 2010) (typicality satisfied where representatives raise similar constitutionally-based arguments and are alleged victims of the same practice despite that they did not raise identical claims).

Plaintiffs' claims here are typical of those of absent Class Members as they arise out of the same common set of facts.  For example, Plaintiffs, like all class members, purchased the unregistered EthereumMax tokens during the same time frame, influenced by the same widespread promotional campaigns that allegedly misrepresented key aspects of the token and project.  These promotional activities, and related securities violations, backed by celebrities and widely disseminated through various media platforms, form the basis of Plaintiffs' claims.  As a result, Plaintiffs' claims arise from the same alleged deception and harm suffered by the

absent Class Members.  *See, e.g., Chavez v. Blue Sky Natural Bev. Co.*, 268 F.R.D. 365, 378 (N.D. Cal. 2010) (finding typicality where claims arose out of the same misrepresentation); *Broomfield v. Craft Brew Alliance, Inc.*, No. 17-cv-01027, 2018 WL 4952519, at *5 (N.D. Cal. Sept. 25, 2018) (finding allegations of deception, materiality, and harm typical of the class as a whole where plaintiffs were exposed to uniform misleading statement and purchased product at premium on basis of that statement).

Thus, Plaintiffs' allegations are typical of the claims asserted by members of the Classes and Subclasses.

### 4.     The Representative Plaintiffs Will Fairly and Adequately Protect the Interests of the Proposed Class

Rule 23(a)(4) adequacy requirement is met where the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy analysis has two components: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis*, 657 F.3d at 985 (*quoting Hanlon*, 150 F.3d at 1020).

Here, no Plaintiffs have any conflicts of interest with other class members.  All Plaintiffs were subject to the same course of conduct by Defendants and suffered the same injury in the form and overpayment and trading losses.  Plaintiffs and absent class members share the common goal of seeking redress for the financial losses suffered due to the defendants' deceptive practices and the sale of unregistered securities.  This alignment guarantees that the proposed class representatives will vigorously advocate for the class's best interests.  Plaintiffs also have demonstrated their commitment to vigorously prosecuting the action.  Each Plaintiff has monitored the case, remained in regular contact with counsel, and responded to discovery requests.  *See* Plaintiff Declarations, attached as Exhibit 12; *See also In re TFT-LCD (Flat Panel) Antitrust Litig.,* 267 F.R.D. 583, 595 (N.D. Cal. 2010).

Rule 23(a)(4) also requires that Proposed Class Counsel be adequate to represent the proposed class. *Hanlon*, 150 F.3d at 1021. In considering the adequacy of plaintiffs' counsel, the court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Plaintiffs have retained counsel with no conflicts and with significant experience prosecuting consumer and securities class actions, including several related to cryptocurrency. *See* Ex. 10 (Firm Resume). "To be adequate, plaintiffs' counsel must be qualified, experienced, and generally able to conduct the proposed litigation." *See Petersen v. Costco Wholesale Co., Inc.*, 312 F.R.D. 565, 578 (C.D. Cal. 2016). The Proposed Class Counsel have vigorously advocated for the Proposed Class, bringing their wealth of talent, knowledge, and experience to bear on this case to: (i) investigate the Proposed Classes' claims; (ii) develop and draft three amended complaints; (iii) successfully oppose Defendants' three rounds of motions to dismiss; (iv) manage discovery, including reviewing and analyzing documents and data from Defendants and third parties; and (v) work extensively with Plaintiffs' experts.

Proposed Class Counsel is prepared to continue to zealously represent Plaintiffs and the putative Classes and Subclasses throughout all stages of this litigation through trial. *See Stitt v. San Fran. Muni. Transp. Agency*, No. 12-cv-3704, 2014 WL 1760623, at *7 (N.D. Cal. May 2, 2014) (adequacy "generally met with members of the bar in good standing typically deemed qualified and competent to represent a class absent evidence to the contrary").

### 5.    The Proposed Classes Are Ascertainable

Although not required by Rule 23, courts also consider whether the class is "sufficiently definite and 'clearly ascertainable' by refence to objective criteria 'so that it is administratively feasible [for a court] to determine whether a particular

person is a class member' and thus 'bound by the judgment.'" *Ellsworth v. U.S. Bank, N.A.,* No. 12-02506, 2014 WL 2734953, at *12 (N.D. Cal. June 13, 2014). Here, the Proposed Classes and Subclasses are "clearly ascertainable" as they are defined by objective criteria derived from transaction data in the EthereumMax token. *See, e.g., Pryor v. Aerotek Scientific, LLC*, No. 278 F.R.D. 516, 523 (C.D. Cal. 2011) (finding class ascertainable where members were ascertainable through business records).

Moreover, much (if not all) of this information is also available to individuals through their Ethereum wallet, making it possible for Class Members who purchased EthereumMax tokens to identify themselves. *See Krueger v. Wyeth, Inc.,* 310 F.R.D. 468, 476 (S.D. Cal. 2015) (recognizing ascertainability met "even when the only way to determine class membership is with self-identification"). Thus, there will be no mystery as to who is bound by any judgment or issues administering these Proposed Classes.

### D.    Plaintiffs Satisfy the Requirements of Rule 23(b)

#### 1.    Common Issues Predominate Over Individual Issues

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623 (1997). Predominance is satisfied where, as here, "[a] common nucleus of facts and potential legal remedies dominate [the] litigation." *Hanlon*, at 1022. The predominance inquiry "begins [, of course,] with the elements of the underlying cause of action." *Nitsch v. Dreamworks Animation SKG Inc*., 315 F.R.D. 270, 288 (N.D. Cal. 2016). Notably, "proving predominance does not require plaintiffs to prove that every element of a claim is subject to classwide proof: they need only show that common questions predominate over questions affecting only individual class members." *In re Cathode Ray Tube (CRT) Antitrust Litig*., 308 F.R.D. 606, 612 (N.D. Cal. 2015) (*citing Amgen Inc. v. Ct. Retire. Plans and Trust Funds*, 133 S. Ct. 1184, 1196 (2013)). "Class actions in which a defendant's uniform policies are challenged generally satisfy the predominance requirement of Rule 23(b)(3)."

*Castro v. Paragon Indus., Inc.,* No. 1:19-cv00755, 2020 WL 1984240, at *10 (E.D. Cal. Apr. 27, 2020).

### 2. The Classes' Claims Will Be Resolved Through Common Evidence

This case turns on a common set of representations and actions by Defendants and is particularly well suited for class certification. Likewise, the case will heavily depend on a set of common proof, namely, transactional data regarding EthereumMax token purchases and sales. *See* Clark Decl. at 13 ("the data is widely available") and 14 ("A complete list of such addresses can be determined using blockchain data. For each address, a complete set of EMAX activities can be determined, including purchases, sales, and transfers for EMAX tokens, and including transaction time (as finalized by Ethereum) and price.").

Common issues predominate with respect to the causes of action Plaintiffs seek to certify. Both the California Corporate Securities Law and the FSIPA [Section 517.07] impose liability for the offer or sale of an unregistered security. First, the key question of whether EthereumMax is a security is clearly capable of class-wide adjudication. A transaction is a security under both California and Florida law if it satisfies the *Howey* test or the "risk capital" test. *See People v. Black*, 214 Cal. Rptr. 3d 402, 411–12 (Ct. App. 2017). The same is true for the risk capital test, which describes "[1] an attempt by an issuer to raise funds for a business venture or enterprise; [2] an indiscriminate offering to the public at large where the persons solicited are selected at random; [3] a passive position on the part of the investor; and [4] the conduct of the enterprise by the issuer with other people's money." *Id.* at 411 (*quoting Silver Hills Country Club v. Sobieski*, 361 P.2d 906 (Cal. 1961). Thus, "irrespective of the individual issues which may arise, the focus of the litigation concerns the alleged common course of unfair conduct embodied in [EthereumMax's] scheme" to market and sell unregistered securities. *See. In re Checking Account Overdraft Litig.,* 275 F.R.D. 666, 676 (S.D. Fla. 2011).

Defendants' participation in this scheme will be substantiated by common evidence which shows that Defendants directed the marketing and sales efforts and spearheaded the effort to sell the EthereumMax tokens without registering them with the regulatory authorities despite knowing that they were securities which were required to be registered. This evidence would remain the same regardless of class size or composition. Further, each EthereumMax token is materially identical (Clark Decl. at 8), and a Court could easily conclude that they are all securities. Accordingly, the predominance requirement is met with respect to this claim.

With respect to the Consumer Protection Claims, Plaintiffs can establish a uniform expectation of consumers regarding the celebrity marketing scheme. Thus, the question whether the class members were reasonably misled by defendants' misrepresentations can be determined on a class-wide basis by reference to the common expectations of reasonable individuals. *See* Dimofte Decl. at 18; *In re ConAgra Foods, Inc.,* 90 F. Supp. 3d 919, 1018 (C.D. Cal. 2015) (certifying class where plaintiffs had "submitted substantial evidence demonstrating that the materiality of ConAgra's misrepresentation can be established by common survey proof"); *In re Nat. W. Life Ins. Deferred Annuities Litig.*, 268 F.R.D. 652, 669 (S.D. Cal. 2010) ("On the unfair prong, the Court must come to the same conclusion. The evidence to date shows class-wide practices by Defendant. There is no indication that the 'unfairness' of those practices differs from individual to individual.").

Plaintiffs assert that they vastly overpaid for their EthereumMax tokens as a result of Defendants' misrepresentations and manipulative activities. The Ninth Circuit has confirmed that "plaintiffs can measure classwide damages using methods that evaluate what a consumer would have been willing to pay for the product had it been labeled accurately." *Zakaria v. Gerber Prods. Co.*, 755 Fed. Appx. 623, 624 (9th Cir. 2018). Here Plaintiffs' expert Claudiu Dimofte's preliminary analysis demonstrates that Plaintiffs were reasonably misled based on the celebrity promotions. Several courts in this state have recently approved similar analyses in

certifying consumer fraud claims. *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 969 (N.D. Cal. 2018); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp.*, Inc., 326 F.R.D. 592, 601, 603-06 (N.D. Cal. 2018); *Broomfield v. Craft Brew All, Inc.*, No. 17-CV-01027, 2018 WL 4952519, at *13-20 (N.D. Cal. Sept. 25, 2018); *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 366-73 (N.D. Cal. 2018); *In re: Lenovo Adware Litig.*, No. 15-md-02624, 2016 WL 6277245, at *21 (N.D. Cal. Oct. 27, 2016).

Further, Plaintiffs' expert Jeremy Clark offers a simple model by which Plaintiffs' damages can be calculated on a class-wide basis. Because a complete list of addresses purchasing the EthereumMax token can be determined using blockchain data, a complete set of EthereumMax activities can be determined. Clark Decl. at 14. This data is sufficient to compute the profit and loss of any address by summing the value of each of the purchase transactions and subtracting out the value from any sales. The final step would be to subtract the value of any unsold tokens currently held, which likely have zero *de minimus* value. *Id.*

By this simple method, Plaintiffs can demonstrate that each member of the Classes were injured in the same manner and establish that damages can be calculated on a class-wide basis for the consumer fraud claims. *See, e.g., Noohi v. Johnson & Johnson Consumer, Inc.*, No. CV2003575TJHJEMX, 2022 WL 22278783, at *5 (C.D. Cal. Nov. 30, 2022) (granting class certification where plaintiffs provided "a valid method" for calculating damages without a showing of the actual amount of damages). The same calculations will satisfy Plaintiffs' damages model for the UCL claim, as overpayment constitutes an economic injury under the UCL. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 966 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 640 (2018).

That some EthereumMax purchasers ultimately may not be successful on their damage claims does not defeat certification where common issues otherwise predominate. *Navelski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275, 1309 (N.D. Fla.

2017) (*citing Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136 (9th Cir. 2016) ("[E]ven a well-defined class may inevitably contain some individuals who have suffered no harm as a result of a defendant's unlawful conduct.")). Here, the monetary damages of every token purchaser - even if $0 - can be determined using the common methodology.

In the alternative to the damages models Plaintiffs present above, Plaintiffs also offer a damages model based on nominal damages. "Nominal damages are awarded for the infraction of a legal right, where the extent of loss is not shown, or where the right is one not dependent upon loss or damage." *Crowley v. Peterson*, 206 F. Supp. 2d 1038, 1045 n.4 (C.D. Cal. 2002). In determining the amount of nominal damages to be awarded, the Court need not weigh any individualized matters, as all members of the proposed classes will be entitled to the same nominal damage award. Indeed, "several district courts in the Ninth Circuit have certified classes involving claims for nominal damages." *Opperman v. Path, Inc.,* No. 13-CV-00453, 2016 WL 3844326, at *16 (N.D. Cal. July 15, 2016) (citing cases and concluding plaintiffs demonstrated that nominal damages could be shown on a class-wide basis).

Finally, the Court could also certify the Class and Subclasses on the issues of Defendants' liability pursuant to Rule 23(c)(4)(A). Indeed, this Court has confirmed that the "commonality requirement is interpreted to require very little" since the presence of only a single common issue to the proposed class is all that is required for certification. *See Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 570 (C.D. Cal. 2008) As described above in the Proposed Trial Plan, class-wide damages would then be assessed in the second phase of the trial after Defendants' liability has been established.

### 3. Certification of the Class Is Superior to Other Forms of Litigation

Rule 23(b)(3) superiority requires the court to analyze "the relative advantages of a class action suit over whatever other forms of litigation might be realistically

available to the plaintiffs."  "[S]ecurities class actions rarely fail the superiority test." *Rubenstein*, 7 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS §22:82 (securities cases are "well-suited" to class actions "in that they tend to encompass the claims of a large class of geographically dispersed, small stakeholders who, absent a class suit, would be without recompense").  A class action is clearly the superior method of adjudication here. *See, e.g., Williams*, 2021 WL 5316013, at *15–17 (finding a class action to be superior in a similar digital asset class action); *Cloud With Me*, 2020 WL 4370392, at *4 (same); *Davy*, 2020 WL 4460446, at *7 (same).

Here, there can be little doubt as to the judicial efficiency in litigating the claims of thousands of EthereumMax token holders claims on a class-side basis rather than through individual lawsuits.  There are thousands of potential Class members whose claims are based on an alleged common course of conduct, rendering the litigation more manageable as a class action than as thousands of individual suits.  Even if the Class members were able individually to prosecute their claims, "[g]iven the size of this class, adjudicating the claims at issue here on an individual basis would be highly inefficient."  *Reyes v. Carehouse Healthcare Ctr., LLC*, No. SACV1601159CJCMRWX, 2018 WL 11356427, at *4 (C.D. Cal. Apr. 5, 2018) (finding class action treatment superior since it would "reduce litigation costs and promote greater efficiency" and noting interested parties could still pursue opt-out litigation).

The class can be efficiently administered through any class notice and claims administration processes using the notice plan described below.  This is certainly more manageable than "the filing of possibly thousands of individual claims."  *Cloud With Me*, 2020 WL 4370392, at *4. Thus, a class action here is superior because it will "reduce litigation costs and promote greater efficiency."  *In re Lyft Inc. Sec. Litig.*, No. 19-CV-02690, 2021 WL 3711470, at *7 (N.D. Cal. Aug. 20, 2021) (*quoting Valentino v. Carter-Wallace, Inc.*, 97 F.3d. 1227, 1234–35 (9th Cir. 1996)).  There is no other practical method of adjudicating these claims.

### E.    The Proposed Notice Plan Is Reasonable and Should Be Approved

Although, "the party seeking certification need not establish its ability to identify class members in a convenient or administratively feasible manner," *Rensel v. Centra Tech, Inc.*, 2 F.4th 1359, 1361 (11th Cir. 2021), here it will not be a difficult task.  Plaintiffs propose a traditional media plan and press release to provide initial notice.  A class list can also be constructed for notice purposes from transactional records available from third-party exchanges like Coinbase and Metamask.  These exchanges are required to maintain KYC ("Know Your Customer") and AML ("Anti Money Laundering") information containing personal identifiers such as name and address.[13]

In addition to traditional means of notice above, which would be comprehensive, notice can also be delivered alternatively from publicly accessible blockchain ledger information, and other public sources.  As Plaintiffs' expert explains, purchasers of EthereumMax can be identified by accessing the transaction history on the blockchain and filtering it by those that show a swap or purchase of EthereumMax.  Clark Decl. at 14-15.  Notice can be provided via "airdrop" to all such wallets that purchased EthereumMax tokens.  Indeed, service of documents by airdrop was permitted by the Supreme Court of New York.  There, the court allowed the plaintiff to serve a copy of the court's order, including the complaint, upon the unknown defendant via airdrop of a "special purpose token."  *See* Ex. 11 Order to Show Cause and Temporary Restraining Order, *LCX AG v. John Doe Nos. 1-25*, Index No. 154644/2022 (N.Y. Sup. Ct. June 3, 2022).  The token itself included a hyperlink with access to the complaint and court's order.  A similar "Notice Token" in this

---

[13]    *See* Information on Complying with the Customer Due Diligence (CDD) Final Rule*, Financial Crimes Enforcement Network, FINANCIAL CRIMES ENFORCEMENT NETWORK, U.S. TREASURY, https://www.fincen.gov/resources/statutes-and-regulations/cdd-final-rule (last visited Feb 11, 2025).

action could be created and airdropped to all wallets that purchased EthereumMax tokens.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (a) certify the Class and Subclasses as set forth herein; (b) appoint Plaintiffs to serve as Class Representatives for the Class and Subclasses; and (c) appoint Scott+Scott to serve as Class Counsel.

Dated: February 11, 2025                    Respectfully submitted,

                                             *s/ John T. Jasnoch*
                                            John T. Jasnoch (CA 281605)
                                            **SCOTT+SCOTT ATTORNEYS
                                            AT LAW LLP**
                                            600 W. Broadway, Suite 3300
                                            San Diego, CA 92101
                                            Telephone: 619-233-4565
                                            Facsimile:  619-233-0508
                                            jjasnoch@scott-scott.com

                                            *Lead Counsel for Plaintiffs
                                            and the Proposed Class*

# CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Plaintiffs certifies that this brief contains 6,990 words, which

    <u>X</u>    complies with the word limit of L.R. 11-6.1.

Dated:    February 11, 2025    */s/ John T. Jasnoch*
    John T. Jasnoch

**CERTIFICATE OF SERVICE**

I, John T. Jasnoch, hereby certify that on February 11, 2025, I caused the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

Executed on February 11, 2025, at San Diego, California.

*/s/ John T. Jasnoch*
John T. Jasnoch