SPERTUS, LANDES & JOSEPHS, LLP
Samuel A. Josephs (SBN 284035)
sjosephs@spertuslaw.com
Mario Hoang Nguyen (SBN 355543)
mnguyen@spertuslaw.com
617 West 7th Street, Suite 200
Los Angeles, California 90017
Telephone:   (213) 205-6520
Facsimile:   (213) 205-6521

*Attorneys for Defendant Floyd Mayweather, Jr.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE ETHEREUMMAX INVESTOR LITIGATION, <br><br> This Document Relates To: <br><br> ALL ACTIONS | Lead Case No. 2:22-cv-163-MWF-SK <br><br> **DEFENDANT FLOYD MAYWEATHER JR.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** <br><br> Date:   June 16, 2025 <br> Time:   10:00 a.m. <br> Ctrm:   5A <br> Judge:  Hon. Michael Fitzgerald |

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA  90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

*DEFENDANT MAYWEATHER'S OPPOSITION TO CLASS CERTIFICATION*

1

# TABLE OF CONTENTS

2  **INTRODUCTION** ........................................................................................ 1

3  **BACKGROUND** ......................................................................................... 1

4      I.    Factual Allegations ........................................................ 1

5      II.   Procedural Posture ........................................................ 3

6  **LEGAL STANDARD** ................................................................................ 4

7  **DISCUSSION** ............................................................................................. 5

8      I.    Plaintiffs Propose "Fail Safe" Classes That Are Not Ascertainable ..... 5

9      II.   Plaintiffs Do Not Demonstrate Numerosity Under Rule 23(a) ............ 8

10      III.  Plaintiffs Do Not Establish Typicality Under Rule 23(a) ................... 9

11      IV.  Plaintiffs Fail To Establish Predominance Under Rule 23(b)(3) ........ 10

12          A.   Individual Issues Will Predominate The Proposed State Consumer Classes' Claims ...................................... 11

14             1.   No Classwide Evidence of Actual Exposure To The Alleged Misrepresentations........................ 11

15             2.   An "Unfair" UCL Claim Requires Individualized Inquiries ........................................................ 15

17          B.   Individual Issues Will Predominate The Proposed Nationwide Securities Class's Claims .................... 15

18             1.   Individualized Choice of Law Inquiries Preclude A Nationwide Class ...................................... 15

20             2.   No Classwide Evidence To Establish Securities Claims .................................................. 19

21          C.   Plaintiffs Fail To Demonstrate Damages Are Capable of Classwide Calculation ...................... 20

23      V.   A Class Action Is Not Superior Under Rule 23(b)(3) ..................... 21

24  **CONCLUSION** ........................................................................................ **23**

13

16

19

22

25

26

27

28

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

i

*DEFENDANT MAYWEATHER'S OPPOSITION TO CLASS CERTIFICATION*

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. Oakbrook Sec. Corp.*,
  763 So. 2d 1099 (Fla. Dist. Ct. App. 1999)......................................................17

*AREI II Cases*,
  216 Cal. App. 4th 1004 (Cal. Ct. App. 2013) ...................................................20

*Beebe v. Pac. Realty Tr.*,
  99 F.R.D. 60 (D. Or. 1983)...............................................................................21

*Black Lives Matter L.A. v. City of Los Angeles*,
  113 F.4th 1249 (9th Cir. 2024) .........................................................................12

*Cabral v. Supple LLC*,
  608 F. App'x 482 (9th Cir. 2015) .....................................................................14

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) ...........................................................................................10

*In re ConAgra Foods, Inc.*,
  302 F.R.D. 537 (C.D. Cal. 2014) ........................................................................5

*Conde v. Sensa*,
  No. 14-cv-51, 2018 WL 4297056 (S.D. Cal. Sept. 10, 2018)......................18, 22

*Coppel v. SeaWorld Parks & Ent., Inc.*,
  347 F.R.D. 338 (S.D. Cal. 2024) ......................................................................11

*Davy v. Paragon Coin, Inc.*,
  No. 18-cv-671, 2020 WL 4460446 (N.D. Cal. June 24, 2020) .........................18

*Diamond Multimedia Sys., Inc. v. Super. Ct.*,
  19 Cal. 4th 1036 (Cal. 1999) ............................................................................17

*Gardner v. First Am. Title Ins. Co.*,
  No. 00-cv-2176, 2003 WL 221844 (D. Minn. Jan. 27, 2003).........................21

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ..............................................................................9

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

*DEFENDANT MAYWEATHER'S OPPOSITION TO CLASS CERTIFICATION*

*Imber-Gluck v. Google Inc.*,
No. 5:14-cv-1070, 2015 WL 1522076 (N.D. Cal. Apr. 3, 2015) ...................... 22

*Just Film, Inc. v. Buono*,
847 F.3d 1108 (9th Cir. 2017) .................................................................. 20

*Keegan v. Am. Honda Motor Co.*,
284 F.R.D. 504 (C.D. Cal. 2012) ............................................................... 5

*Krueger v. Wyeth, Inc.*,
310 F.R.D. 468 (S.D. Cal. 2015) ............................................................ 7, 8

*LaDuca v. Swirsky*,
No. 02-cv-8597, 2003 WL 23162437 (N.D. Ill. July 24, 2003) ..................... 18

*Lanzarone v. Guardsmark Holdings, Inc.*,
No. 06-cv-1136-RP-LAx, 2006 WL 4393465
(C.D. Cal. Sept. 7, 2006) ...................................................................... 21

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) ................................................... 14, 16, 17

*Menagerie Prods. v. Citysearch*,
No. 08-cv-4263-CAS-FMO, 2009 WL 3770668
(C.D. Cal. Nov. 9, 2009) ...................................................................... 15

*Mirkin v. Wasserman*,
5 Cal. 4th 1082 (Cal. 1993) .............................................................. 12, 17

*Morandi v. Nationstar Mortg., LLC*,
No. 2:19-cv-6334-MCS-MAA, 2021 WL 1398967
(C.D. Cal. Apr. 6, 2021) ...................................................................... 10

*O'Connor v. Boeing N. Am., Inc.*,
184 F.R.D. 311 (C.D. Cal. 1998) ............................................................. 6

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) .............................................. 4, 5, 11, 20

*Ostrof v. State Farm Mut. Auto. Ins. Co.*,
200 F.R.D. 521 (D. Md. 2001) ............................................................... 22

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

iii

*DEFENDANT MAYWEATHER'S OPPOSITION TO CLASS CERTIFICATION*

*Owino v. CoreCivic, Inc.*,
  60 F.4th 437 (9th Cir. 2022) ........................................................................ 4

*Pryor v. Aerotek Sci., LLC*,
  278 F.R.D. 516 (C.D. Cal. 2011) ................................................................. 7

*In re Ripple Labs, Inc. Litig.*,
  No. 18-cv-6753, 2024 WL 3074379 (N.D. Cal. June 20, 2024) ................. 20

*Ruiz Torres v. Mercer Canyons Inc.*,
  835 F.3d 1125 (9th Cir. 2016) ..................................................................... 6

*Schellenbach v. GoDaddy.com, LLC*,
  321 F.R.D. 613 (D. Ariz. 2017) ................................................................. 13

*Scholes v. Tomlinson*,
  145 F.R.D. 485 (N.D. Ill. 1992) ................................................................. 17

*In re SFPP Right-of-Way Claims*,
  No. 15-cv-7492-JVS-DFMx, 2017 WL 2378363
  (C.D. Cal. May 23, 2017) ...................................................................... 15, 16

*Shields v. Walt Disney Parks & Resorts US, Inc.*,
  279 F.R.D. 529 (C.D. Cal. 2011) ................................................................. 9

*Stewart v. Luna*,
  No. 2:23-cv-04641-ODW-PDx, 2025 WL 26792
  (C.D. Cal. Jan. 3, 2025) ............................................................................... 6

*Valentino v. Carter-Wallace, Inc.*,
  97 F.3d 1227 (9th Cir. 1996) ..................................................................... 21

*Van v. LLR, Inc.*,
  61 F.4th 1053 (9th Cir. 2023) ..................................................................... 4

*Ward v. Crow Vote LLC*,
  343 F.R.D. 133 (C.D. Cal. 2022) ................................................................. 8

*Willis v. City of Seattle*,
  943 F.3d 882 (9th Cir. 2019) ..................................................................... 10

*Zakinov v. Ripple Labs, Inc.*,
  369 F. Supp. 3d 950 (N.D. Cal. 2019) ....................................................... 17

iv

*DEFENDANT MAYWEATHER'S OPPOSITION TO CLASS CERTIFICATION*

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

*Zakinov v. Ripple Labs, Inc.*,
   No. 18-cv-6753, 2023 WL 4303644 (N.D. Cal. June 30, 2023) ........................ 16

*Zinser v. Accufix Rsch. Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001) .................................................................. 16

**Statutes**

15 U.S.C. § 7246 ............................................................................................ 22

Cal. Corp. Code § 25110 ........................................................................ 4, 17, 18

Cal. Corp. Code § 25503 .................................................................................. 4

Cal. Corp. Code § 25504 ........................................................................... 3, 20

Cal. Bus. & Prof. Code § 17200 ...................................................................... 3

Fla. Stat. Ann. § 517.07 ............................................................................ 4, 17

Fla. Stat. Ann. § 560.103 .............................................................................. 19

Fla. Stat. Ann. § 501.211 ................................................................................ 3

N.J. Stat. Ann. § 56:8-1 ................................................................................. 3

N.Y. Gen. Bus. Law § Ch. 20, Art. 22-A ........................................................ 3

**Other Authorities**

Fed. R. Civ. P. 23 .................................................................................. *passim*

*In the Matter of Kimberly Kardashian*,
   No. 11116, 2022 WL 4922870 (Oct. 3, 2022) .............................................. 22

*In the Matter of Paul Anthony Pierce*,
   No. 11157, 2023 WL 2069917 (Feb. 17, 2023) ............................................ 22

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

v

*DEFENDANT MAYWEATHER'S OPPOSITION TO CLASS CERTIFICATION*

## **INTRODUCTION**

Defendant Floyd Mayweather Jr. respectfully requests that the Court deny Plaintiffs' Motion for Class Certification because it falls short of Federal Rule of Civil Procedure 23's requirements. First, Plaintiffs' proposed classes are unascertainable "fail safe" classes. Second, Plaintiffs neither establish that the proposed classes are sufficiently numerous, nor demonstrate the class representatives are typical of the proposed classes. Third, and most fatal to Plaintiffs' Motion, individual issues will predominate over any common questions because Plaintiffs lack common evidence to prove all proposed class members were actually exposed to the alleged misrepresentations upon which the claims are based, and cannot demonstrate damages are capable of classwide calculation. Finally, Plaintiffs fail to show a class action is a superior vehicle to handle this controversy.

Rule 23 forbids using class actions to achieve an otherwise impermissible extraterritorial application of state law or to extend liability to individuals who never actually saw or relied on the alleged misrepresentations underlying their claims. Because Plaintiffs' proposal would effectively result in countless unmanageable mini-trials, the Court should deny Plaintiffs' Motion.

## **BACKGROUND**

### I.    **Factual Allegations**

This case is about EthereumMax (**"EMAX"**), an alleged cryptocurrency project centered around the EthereumMax Tokens, which are blockchain-based digital assets. ECF No. 190 ¶¶ 31–32.[1] EMAX launched on May 14, 2021, and was sold on decentralized exchanges, like Uniswap, which use "automated market makers" to exchange one asset for another without a direct counterparty. *Id.* ¶¶ 33–34. Unlike traditional order books used when trading stocks that match bids among

---

[1] Mayweather refers to ECF generated page numbers, unless otherwise noted.

*DEFENDANT MAYWEATHER'S OPPOSITION TO CLASS CERTIFICATION*

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA  90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

traders, automated market makers operate through "liquidity pools," which use a coded algorithm known as a "smart contract" to automatically set prices for exchanging assets based on the ratio between the types of assets in the pool. *Id.* When exchanging through Uniswap, users must pay "gas fees" to process the transaction and a separate 0.3% Uniswap fee. *Id.* ¶¶ 35–36.

Plaintiffs allege they purchased EthereumMax Tokens between May 14 and June 27, 2021, and were harmed by various alleged violations of state laws. Plaintiffs filed a proposed class action lawsuit against three groups of defendants. First, EMAX Holdings LLC (the **"Company"**), the company behind EMAX. Second, the **"Executive Defendants"** Giovanni Perone, Mike Speer, Justin Maher, and Jona Rechnitz, whom Plaintiffs claim were co-founders and/or consultants for EMAX. Third, the **"Promoter Defendants"** Kimberly Kardashian, Floyd Mayweather Jr., Paul Pierce, Russell Davis, and Antonio Brown, whom Plaintiffs allege promoted EMAX.

As to Mayweather specifically, Plaintiffs allege he promoted EMAX twice. First, he allegedly promoted EMAX when attending the Bitcoin 2021 conference on June 4, 2021, while wearing an EthereumMax t-shirt. *Id.* ¶ 143. During an interview with Fox Business at the conference, Plaintiffs allege Mayweather "stated that cryptocurrency investing is 'the new wave'" and "then described how he first made his money through boxing and then with real estate." *Id.* ¶¶ 143–44. Second, Plaintiffs allege Mayweather "again wore a t-shirt with the EthereumMax" logo at the weigh-in before his June 6, 2021, boxing match, and wore trunks with "EthereumMax.org" printed on the waistband during the match. *Id.* ¶¶ 147–48. Based on these facts, Plaintiffs allege Mayweather "falsely gave investors the impression that Mayweather was more than a celebrity endorser but rather that he was an actual backer/investor in EMAX Tokens, and that he was making this particular cryptocurrency a part of his multimillion dollar investment strategy." *Id.* ¶¶ 144, 146.

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

2

## II. **Procedural Posture**

Following the resolution of various motions to dismiss, Plaintiffs filed the corrected Third Amended Class Action Complaint (the **"Operative Complaint"**) on October 6, 2023. ECF No. 190. Operative claims against Mayweather remain under:

- California's Unfair Competition Law (**"UCL"**), Cal. Bus. & Prof. Code § 17200 *et seq.* (**Claims 1–3**);

- Florida's Deceptive and Unfair Trade Practices Act (**"FDUTPA"**), Fla. Stat. § 501.211 (**Claim 5**);

- New York's General Business Law (**"NYGBL"**), Art. 22-A, § 349 *et seq.* (**Claim 6**);

- New Jersey's Consumer Fraud Act (**"NJCFA"**), N.J. Stat. Ann. § 56:8-1 *et seq.* (**Claim 7**);

- Secondary Liability under California's Securities law, Cal. Corp. Code § 25504 (**Claim 12**); and

- California common law Unjust Enrichment and/or Restitution (**Claim 14**).

ECF No. 190 ¶¶ 196–521.

As the Court previously explained, Plaintiffs' consumer claims are premised on the theory that EMAX purchasers exposed to Mayweather's alleged promotions "believed that Mayweather was a celebrity endorser ***in addition to*** being an actual investor" in EMAX, because "Mayweather omitted the fact that he was not an actual investor in EMAX Tokens." ECF No. 189 at 10. Plaintiffs' Secondary Liability securities claim under California law is based on the "alleg[ation] that Mayweather acted as an agent to effect purchases or sales of EMAX Tokens" through his alleged promotion, which Plaintiffs allege are unregistered securities. *Id.* at 11.

On February 11, 2025, Plaintiffs moved for certification of five proposed classes: one Nationwide Securities Class based "only on the California and Florida

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

3

state securities laws" in Claims 8 and 13;[2] and four separate State Consumer Classes "for the California, New York, Florida, and New Jersey consumer protection causes of action" in Claims 1 through 7. ECF No. 242-1 at 14–15.

## LEGAL STANDARD

"Under Rule 23, a class action may be maintained if the four prerequisites of Rule 23(a) are met, and the action meets one of the three kinds of actions listed in Rule 23(b)." *Van v. LLR, Inc.*, 61 F.4th 1053, 1062 (9th Cir. 2023).

Rule 23(a)'s requirements are met "only if: (1) the class is so numerous that joinder of all members is impracticable ['numerosity']; (2) there are questions of law or fact common to the class ['commonality']; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ['typicality']; and (4) the representative parties will fairly and adequately protect the interests of the class ['adequacy']." *Owino v. CoreCivic, Inc.*, 60 F.4th 437, 443 (9th Cir. 2022) (alterations in original) (quoting Fed. R. Civ. P. 23(a)).

In addition to the four Rule 23(a) factors, "plaintiffs must show that the class fits into one of three categories" under Rule 23(b). *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663 (9th Cir. 2022). Plaintiffs here seek class certification under Rule 23(b)(3), which requires "the court find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

---

[2] Claim 8 is brought under California's Securities Registration law, Cal. Corp. Code §§ 25110 and 25503, against the Company and Executive Defendants. ECF No. 190 ¶¶ 402–15. Claim 13 is brought under Florida's Securities and Investor Protection Act (**"FSIPA"**), Fla. Stat. § 517.07, against the Company and Executive Defendants. *Id.* ¶¶ 472–515.

*DEFENDANT MAYWEATHER'S OPPOSITION TO CLASS CERTIFICATION*

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

"'[P]laintiffs wishing to proceed through a class action must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23, including (if applicable) the predominance requirement of Rule 23(b)(3),' and must carry their burden of proof 'before class certification.'" *Olean*, 31 F.4th at 664 (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014)). In doing so, "plaintiffs must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence" with "admissible" evidence. *Id.* at 665.

## DISCUSSION

### I.  Plaintiffs Propose "Fail Safe" Classes That Are Not Ascertainable

"Although not specifically mentioned in Rule 23, there is an additional prerequisite to certification—that the class be ascertainable." *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 521 (C.D. Cal. 2012). "A class is sufficiently defined and ascertainable if it is 'administratively feasible for the court to determine whether a particular individual is a member.'" *Id.* (quoting *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998)). For this reason, "[a] court may not . . . create a 'fail safe' class that is defined to include only those individuals who were injured by the allegedly unlawful conduct." *Olean*, 31 F.4th at 669 n.14 (citation omitted). "A 'fail-safe class' [] ensures that a defendant cannot prevail against the class, because if the defendant prevails, the class will not exist." *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 567 n.102 (C.D. Cal. 2014) (citation omitted).

Here, Plaintiffs undoubtedly propose "fail safe" classes because they include all EMAX tokens purchasers who were "subsequently damaged thereby." ECF No. 190 ¶¶ 187–88; ECF No. 242-1 at 14–15. If the phrase "subsequently damaged thereby" is omitted, the proposed classes encompass *all* purchasers—even those who have not been injured and therefore do not have statutory or Article III standing. By adding the phrase "subsequently damaged thereby," Plaintiffs essentially propose

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

5

*DEFENDANT MAYWEATHER'S OPPOSITION TO CLASS CERTIFICATION*

classes of "all purchasers who are able to assert a valid claim." Defendants, the Court, and even purchasers themselves will not know who is a class member until the case is fully litigated. And if Plaintiffs fail to prove they were damaged, all class members will cease to exist. That is a textbook "fail safe" class.

The Ninth Circuit has cautioned against this very type of proposed class. "[D]efining [a] class to include only those individuals who were 'injured' by non-disclosure threatens to create a 'fail safe' class, one that is defined so narrowly as to 'preclude[] membership unless the liability of the defendant is established.'" *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138 n.7 (9th Cir. 2016) (quoting *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010)). This Court, too, has held "a proposed class is considered impermissibly 'fail safe' because it is 'defined to include only those individuals who were injured by the allegedly unlawful conduct.'" *Stewart v. Luna*, No. 2:23-cv-04641-ODW-PDx, 2025 WL 26792, at *5 (C.D. Cal. Jan. 3, 2025) (quoting *Olean*, 31 F.4th at 669 n.14).

As a practical matter, Plaintiffs' proposed classes will also pose administrative problems. "[D]ue to notice requirements, class definitions of actions maintained under Rule 23(b)(3) command greater precision than those brought under Rule 23(b)(1) or (b)(2)." *O'Connor*, 184 F.R.D. at 319. But Plaintiffs have not proposed any methodology for identifying the geographic location of an EthereumMax token purchaser. Given that EthereumMax tokens were sold worldwide, Plaintiffs have no way of discerning international purchasers from domestic purchasers, much less California purchasers from New York purchasers. Instead, they propose notifying *all* purchasers *worldwide*. Indeed, Plaintiffs' computer science expert, Dr. Clark, opines that of the "over 300,000 purchases" of EthereumMax tokens, "100,000 were made by unique Ethereum addresses," and then he merely proposes "[a] complete list of such addresses can be precisely determined using blockchain data." ECF No. 243-8

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

6

*DEFENDANT MAYWEATHER'S OPPOSITION TO CLASS CERTIFICATION*

at 15. Plaintiffs' proposed class notice plan is therefore at odds with the classes proposed in their Motion.

But even if Plaintiffs could identify a purchaser's geographic location, the proposed classes are so unascertainable that it will not be administratively feasible for the Court to determine if a particular individual is a member. Plaintiffs' proposed classes do not define "damaged" using objective criteria. And even if they did, Plaintiffs' proposed classes are not limited to members whose alleged injuries were *caused by Defendants*. A purchaser who lost their investment because they locked their digital wallet and forgot their passkey, or a purchaser who lost money without ever seeing Defendants' alleged promotions would both qualify as class members here. These proposed "fail safe" classes are not ascertainable, and they should not be certified.

Finally, the two arguments advanced in Plaintiffs' Motion are inapposite. First, Plaintiffs cite *Pryor v. Aerotek Sci., LLC*, 278 F.R.D. 516 (C.D. Cal. 2011), to argue a proposed class is "clearly ascertainable" when members can be identified through business records, like the "transaction data in the EthereumMax token." ECF No. 242-1 at 25. But business records listing all employees in a specific call center were sufficient in *Pryor* because the class asserted a claim for unpaid overtime wages based on uniform business practices that applied to ***all*** employees assigned to that specific call center. 278 F.R.D. at 520, 523. In contrast, the EMAX transaction data does not indicate whether the purchaser was exposed to any Defendants' alleged representations underlying Plaintiffs' claims, much less to *Mayweather's specifically*.

Second, Plaintiffs cite *Krueger v. Wyeth, Inc.*, 310 F.R.D. 468 (S.D. Cal. 2015), to argue a proposed class is ascertainable through self-identification. ECF No. 242-1 at 25. However, *Krueger* allowed self-identification because the court determined it "need not 'simply assum[e]' that class members were exposed to

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

7

*DEFENDANT MAYWEATHER'S OPPOSITION TO CLASS CERTIFICATION*

defendants' representations" because *all* "the product's packaging contain[ed] defendants' representations." 310 F.R.D. at 475. But Plaintiffs' claims here are not applicable to *all* EMAX purchasers, because not all purchasers were exposed to Defendants' alleged representations, and some purchasers likely made money. Therefore, Plaintiffs' arguments do not cure the unascertainable nature of their proposed classes.

## II.  Plaintiffs Do Not Demonstrate Numerosity Under Rule 23(a)

A class may be certified only if it "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "The numerosity requirement is not tied to any fixed numerical threshold—it 'requires examination of the specific facts of each case and imposes no absolute limitations.'" *Ward v. Crow Vote LLC*, 343 F.R.D. 133, 140 (C.D. Cal. 2022) (quoting *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010)). "The central question is whether Plaintiffs have sufficiently identified and demonstrated the existence of the numbers of persons for whom they speak." *Id.* (quoting *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 680–81 (S.D. Cal. 1999)).

Plaintiffs claim that their proposed classes "consist of tens of thousands" of members because Dr. Clark "estimates that over the relevant period, over 300,000 purchases of EMAX-Pilot or EMAX were made through Uniswap" and "[o]f these, 100,000 were made by unique Ethereum addresses." ECF No. 242-1 at 19–20. However, this is insufficient to establish numerosity because the number of unique Ethereum addresses does not directly translate to potential class members. Plaintiffs notably omit that Dr. Clark clarifies, "Ethereum makes no restriction on how many addresses a single individual may operate[.]" ECF No. 243-8 at 15. Therefore, a single individual may account for numerous unique Ethereum addresses. Indeed, Plaintiffs themselves allege Defendant Davis alone "owned/controlled" 44 different unique addresses. ECF No. 190 ¶ 120. Given the number of alleged insiders, Plaintiffs' blanket assumption that there are sufficient class members is inadequate.

8

*DEFENDANT MAYWEATHER'S OPPOSITION TO CLASS CERTIFICATION*

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

But even if Plaintiffs could identify the true number of people behind the unique addresses, Plaintiffs fail to articulate even an estimate of members in *each* proposed class. Plaintiffs propose five different classes, but "provide no evidence establishing numerosity *in these classes*, as is their burden in seeking certification." *Shields v. Walt Disney Parks & Resorts US, Inc.*, 279 F.R.D. 529, 546 (C.D. Cal. 2011) (emphasis added) (finding insufficient evidence to establish numerosity on a class-by-class basis). Without specifying *which* of the five proposed classes contain the questionable "tens of thousands" of members, the vague statement Plaintiffs proffer could mean there are "tens of thousands" of potential California Consumer Class members, but only four New Jersey Consumer Class members. And "where evidence of numerosity is entirely lacking, the Court cannot substitute its imagination—no matter how commonsensical—in place of facts." *Id.* Accordingly, Plaintiffs fail to carry their burden of demonstrating numerosity.

## III.   Plaintiffs Do Not Establish Typicality Under Rule 23(a)

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Plaintiffs fail to demonstrate typicality here because all Named Plaintiffs allegedly purchased EMAX tokens through Uniswap, but the proposed classes encompass EMAX tokens purchases through *any* exchange. This difference is significant not only because liquidity pools are specific to each decentralized exchange, but also because Plaintiffs allege Uniswap's fees comprise part of their damages. *See* ECF No. ¶¶ 34–36. The Operative Complaint alleges, "Plaintiffs and other buyers also paid a separate fee to the liquidity pool creators and liquidity providers in the form of the 0.3% *Uniswap* fee." *Id.* ¶ 36 (emphasis added). The Operative Complaint continues, "users were told to increase their 'slippage tolerance'

*DEFENDANT MAYWEATHER'S OPPOSITION TO CLASS CERTIFICATION*

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

to 10%. Slippage is the difference between the quoted price for the token transaction
and the actual price at which the swap is executed. The default slippage tolerance for
Uniswap is set at 0.5%." *Id.* ¶ 37. However, Dr. Clark attests that "[o]ver the relevant
period, *different* [decentralized exchanges (DEXs)] were used to trade EMAX . . . ."
ECF No. 243-8 at 13–14 (emphasis added). Plaintiffs do not address any differences
in fees or slippage rates for the other exchanges that purchasers used. Absent such a
showing, Plaintiffs have not established the Named Plaintiffs' claims and injuries are
typical of the proposed class members who used different exchanges and are
therefore not similarly situated.

## IV.    Plaintiffs Fail To Establish Predominance Under Rule 23(b)(3)

When analyzing a motion to certify a Rule 23(b)(3) class, courts often consider
commonality and predominance together[.]" *Morandi v. Nationstar Mortg., LLC*, No.
2:19-cv-6334-MCS-MAA, 2021 WL 1398967, at *2 (C.D. Cal. Apr. 6, 2021). To
achieve commonality under Rule 23(a), a plaintiff must "demonstrate that they and
the proposed class members have suffered the same injury and have claims that
depend on a common contention capable of classwide resolution." *Willis v. City of
Seattle*, 943 F.3d 882, 885 (9th Cir. 2019).

"The predominance test is 'far more demanding' than the commonality test."
*Morandi*, 2021 WL 1398967, at *2 (quoting *Amchem Prods., Inc. v. Windsor*, 521
U.S. 591, 624 (1997)). Rule 23(b)(3)'s predominance test has two parts: (1) a plaintiff
must show common questions of law and fact predominate over individual questions;
and (2) a plaintiff must present a damages model that identifies damages stemming
from the defendant's alleged wrongdoing, and is "susceptible of measurement across
the entire class." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34–38 (2013). To
demonstrate predominance, Plaintiffs "must establish that essential elements of the
cause of action . . . are capable of being established through a common body of

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

10

*DEFENDANT MAYWEATHER'S OPPOSITION TO CLASS CERTIFICATION*

evidence, applicable to the whole class." *Olean*, 31 F.4th at 666 (internal citations omitted). Plaintiffs fail to establish predominance here.[3]

**A.    Individual Issues Will Predominate The Proposed State Consumer Classes' Claims**

1.    No Classwide Evidence of Actual Exposure To The Alleged Misrepresentations

As this Court previously noted, "Plaintiffs allege that various different Defendants made or failed to make very different statements that Plaintiffs allege were misleading for vastly different reasons." ECF No. 99 at 39. Therefore, Plaintiffs' claims under "the State Consumer Laws do not seek to hold Defendants liable as one collective enterprise, but rather allege *different* theories of liability as to *each* Defendant." ECF No. 161 at 40 (emphases added). However, this Court also noted "[e]ach of the state statutory claims require that Plaintiffs plead with specificity actual reliance or causation. The elements of actual reliance and causation both necessarily demand that Plaintiffs plead actual exposure to the allegedly fraudulent statements to impose liability." ECF No. 99 at 34; ECF No. 161 at 40–42 ("Plaintiffs will bear the burden of demonstrating the alleged unfair conduct caused their losses."). Because the proposed classes' claims here are premised on alleged non-uniform representations by multiple Defendants, the essential elements of reliance and causation cannot be proven through classwide evidence. As such, this Court should deny certification.

Plaintiffs' liability theory clearly requires that any plaintiff prove actual exposure to Mayweather's alleged affirmative representations *before* his alleged

---

[3] Plaintiffs reference seeking certification under Rule 23(c)(4)(A) in passing. ECF No. 242-1 at 29. Because Plaintiffs neither move for certification nor attempt to carry their burden under this provision, the Court should decline to consider it. *See Coppel v. SeaWorld Parks & Ent., Inc.*, 347 F.R.D. 338, 368 (S.D. Cal. 2024) (declining same).

*DEFENDANT MAYWEATHER'S OPPOSITION TO CLASS CERTIFICATION*

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

omission can be misleading. Plaintiffs allege Mayweather's alleged promotions caused them to "believe[] that Mayweather was a celebrity endorser *in addition to* being an actual investor" in EMAX, but "Mayweather omitted the fact that he was not an actual investor in EMAX Tokens." ECF No. 189 at 10. As a result, Plaintiffs allege "[t]he combination of Mayweather's statements on investing and promotion of EthereumMax falsely gave investors the impression that Mayweather was more than a celebrity endorser but rather that he was an actual backer/investor in EMAX Tokens, and that he was making this particular cryptocurrency a part of his multimillion dollar investment strategy." *Id.* ¶ 146. Therefore, if a purchaser never saw Mayweather's alleged affirmative representations, then Mayweather's alleged omission about his non-investor status necessarily could not have misled the purchaser.[4]

Plaintiffs were able to adequately plead that the Named Plaintiffs were exposed to Mayweather's alleged representations to survive Rule 12(b)(6), but only through highly individualized allegations by each Named Plaintiff. *See* ECF No. 161 at 40. Plaintiffs cannot rely on those same highly individualized allegations to establish predominance under Rule 23(b)(3). "Rule 23 does not impose a mere pleading standard; plaintiffs cannot plead their way to class certification through just allegations and assertions." *Black Lives Matter L.A. v. City of Los Angeles*, 113 F.4th 1249, 1258 (9th Cir. 2024) (citation omitted). "Rather, the plaintiffs must 'affirmatively demonstrate' by a preponderance of actual evidence that they satisfy all the Rule 23 prerequisites." *Id.* (quoting *White v. Symetra Assigned Benefits Serv. Co.*, 104 F.4th 1182, 1192 (9th Cir. 2024)). As an initial matter, the declarations

---

[4] A fraud-by-omission claim also requires a plaintiff prove "had the omitted information been disclosed one would have been aware of it and behaved differently." *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (Cal. 1993). "Without [] each Plaintiff actually s[eeing] or hear[ing] the allegedly deceptive statements, Plaintiffs [can]not [establish] that they would have been aware of the omitted information had it been disclosed." ECF No. 99 at 37.

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

*DEFENDANT MAYWEATHER'S OPPOSITION TO CLASS CERTIFICATION*

attached to Plaintiffs' Motion do not attest to whether the Named Plaintiffs were exposed to *any* Defendants' representations—much less to Mayweather's specifically. *See* ECF No. 243-12. Plaintiffs fail to meet their burden for class certification on this basis alone.

Plaintiffs also fail to demonstrate that actual exposure can be established through classwide evidence to prove the essential elements of reliance and causation. Plaintiffs rely on case law involving classwide misrepresentations and a consumer expectations survey to argue that "whether the class members were reasonably misled by defendants' misrepresentations can be determined on a classwide basis by reference to the common expectations of reasonable individuals." ECF No. 242-1 at 27. However, Plaintiffs' survey does not establish reliance and causation classwide. Plaintiffs' survey does not demonstrate that all putative class members—or even the Named Plaintiffs—were exposed to *any* Defendants' alleged representations, much less to Mayweather's specifically. Indeed, the survey participants were neither required to be social media followers of the Promoter Defendants, nor actually exposed to the Promoter Defendants' alleged representations during the survey. *See* ECF No. 243-9 at 8, 34–59.

Plaintiffs' reliance on their survey is also based on Plaintiffs' misapplication of case law involving classwide, uniform misrepresentations. Plaintiffs mistakenly rely on cases that stand for the proposition that "'a presumption, or at least an inference, of reliance arises whenever there is a showing that a misrepresentation was material[,]' ***[b]ut*** '[a]n inference of classwide reliance cannot be made where there is no evidence that the allegedly false representations were uniformly made to all members of the proposed class.'" *Schellenbach v. GoDaddy.com, LLC*, 321 F.R.D. 613, 622 (D. Ariz. 2017) (citations omitted) (emphasis added); *see* ECF No. 99 at 36. Thus, "if the issue of materiality or reliance is a matter that would vary from consumer to consumer, the issue is not subject to common proof, and the action is

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

*DEFENDANT MAYWEATHER'S OPPOSITION TO CLASS CERTIFICATION*

1   properly not certified as a class action." *Id.* at 623 (quoting *In re Vioxx Class Cases*,
2   180 Cal. App. 4th 116, 129 (Cal. Ct. App. 2009)).

3       Here, reliance cannot be inferred because Plaintiffs allege non-uniform
4   representations. As this Court previously noted, "Plaintiffs allege that various
5   different Defendants made or failed to make very different statements that Plaintiffs
6   allege were misleading for vastly different reasons." ECF No. 99 at 39. Plaintiffs
7   further allege "a network of 20 traders" assisted in the "promotion" of EMAX using
8   their collective "400,000 followers across their various social media accounts." ECF
9   No. 190 ¶ 41. It is also certain that some portion of Plaintiffs' proposed classes were
10  not exposed to Defendants' alleged representations before purchasing EthereumMax
11  tokens because "at least some of the Plaintiffs purchased their EMAX Tokens **prior**
12  **to** certain of the statements they allegedly relied on." ECF No. 99 at 37. Accordingly,
13  Plaintiffs are not entitled to an inference of reliance here.

14      In circumstances involving non-uniform representations, the Ninth Circuit
15  instructs a "class must be defined in such a way as to include only members who
16  were exposed to advertising that is alleged to be materially misleading." *Mazza v.*
17  *Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012); *see, e.g.*, *Cabral v. Supple*
18  *LLC*, 608 F. App'x 482, 483 (9th Cir. 2015). Here, the proposed classes include
19  members who were never exposed to Defendants' alleged representations, and
20  Plaintiffs have not come forward with any methodology to determine if a member
21  was actually exposed to Defendants' alleged representations. Even if Plaintiffs could
22  develop a methodology, Plaintiffs would need to go one step further and discern
23  whether members were exposed to Mayweather's alleged representations
24  specifically. Absent such a showing, individualized issues would predominate the
25  proposed classes.

26      Certification of Plaintiffs' proposed classes would also result in individualized
27  defenses asserted by Mayweather. "[A] class cannot be certified on the premise that

28

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

14

*DEFENDANT MAYWEATHER'S OPPOSITION TO CLASS CERTIFICATION*

[Defendants] will not be entitled to litigate [their] statutory defenses to individual claims." *In re SFPP Right-of-Way Claims*, No. 15-cv-7492-JVS-DFMx, 2017 WL 2378363, at *16 (C.D. Cal. May 23, 2017) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011)). Therefore, individual issues would predominate because Mayweather would need to challenge whether each member was actually exposed to his alleged representations, and whether such representation was material to that member.

### 2. An "Unfair" UCL Claim Requires Individualized Inquiries

Plaintiffs bring Claim 2 against Mayweather under the "unfair" prong of the UCL. However, common issues cannot predominate when asserting an "unfair" UCL claim because "[t]he test of whether a business practice is unfair involves an examination of that practice's impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer." *Menagerie Prods. v. Citysearch*, No. 08-cv-4263-CAS-FMO, 2009 WL 3770668, at *14 (C.D. Cal. Nov. 9, 2009) (quoting *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886 (Cal. Ct. App. 1999)). "Under this test, a plaintiff's individual expectations about the business practice are relevant to determining the extent of its harm." *Id.* Thus, Plaintiffs cannot prove this claim classwide as a matter of law, and individualized inquiries will predominate.

### B. Individual Issues Will Predominate The Proposed Nationwide Securities Class's Claims

#### 1. Individualized Choice of Law Inquiries Preclude A Nationwide Class

Plaintiffs argue "California and Florida laws should be applied to the nationwide class for these unregistered securities claims." ECF No. 242-1 at 14.[5]

---

[5] Defendant Mayweather reads Plaintiffs' Motion as seeking certification solely for their sale of unregistered securities claims—not any other securities claims.

*DEFENDANT MAYWEATHER'S OPPOSITION TO CLASS CERTIFICATION*

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA  90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

However, "[a] federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law." *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001). "Under California's choice of law rules, the class action proponent bears the initial burden to show that California has 'significant contact or significant aggregation of contacts' to the claims of each class member." *Mazza*, 666 F.3d at 589 (quoting *Wash. Mut. Bank v. Super. Ct.*, 24 Cal. 4th 906, 921 (Cal. 2001)). "Such a showing is necessary to ensure that application of California law is constitutional." *Id.*

Rather than provide any factual showing, Plaintiffs merely argue: (1) "Defendants maintained substantial contacts with California and Florida by residing in California and Florida and/or doing significant business in California and Florida"; (2) "[M]any of the misleading promotions emanated from California, namely Defendants Kardashian, Pierce, and Rechnitz"; and (3) "Defendant Perone and the subsequently created EthereumMax corporate entity operated out of Florida." ECF No. 242-1 at 14. These conclusory arguments are insufficient to carry Plaintiffs' burden. Where certain unnamed Defendants live does not establish California had "significant contact" with each member's *claims*. Indeed, Mayweather "is a resident and citizen of Nevada, living in Las Vegas, Nevada." ECF No. 190 ¶ 21. Plaintiffs also notably omit Mayweather from their list of Defendants who issued promotions "emanat[ing] from California." Furthermore, the fact that the Company operated out

---

Given the brief argument in Plaintiffs' Motion focuses on California, it is also unclear if Plaintiffs seek to certify a separate nationwide class under Florida's unregistered securities law, if Plaintiffs argue Florida law applies nationwide in the alternative to California law, or if Plaintiffs believe they can certify a single nationwide class to pursue claims under the laws of both states. In any event, Mayweather is not a defendant to the FSIPA claim and Plaintiffs fail to meet their burden for certifying a nationwide class asserting either securities claims under Florida law or securities claims other than for the sale of unregistered securities, because Plaintiffs offer no substantive choice of law, commonality, or predominance analysis regarding such claims.

*DEFENDANT MAYWEATHER'S OPPOSITION TO CLASS CERTIFICATION*

of Florida establishes no significant contacts with California.[6] Accordingly, Plaintiffs fail to meet their initial burden of showing each member's claims have significant contacts with California such that a nationwide class would not violate Mayweather's due process rights.

Even if Plaintiffs demonstrated significant California contacts, "California law may only be used on a classwide basis if 'the interests of other states are not found to outweigh California's interest in having its law applied.'" *Mazza*, 666 F.3d at 589 (quoting *Wash. Mut. Bank*, 24 Cal. 4th at 921). To determine if other states' interests outweigh California's interest, a court: (1) determines if the relevant law of each state is different; (2) discerns whether a true conflict exists; and (3) evaluates each state's interest in applying its own law and applies the law of the state whose interest would be more impaired if not applied. *Id.* (citation omitted).

Here, California's unregistered securities law varies from, and conflicts with, the laws of other states. For example, FSIPA makes it unlawful for "any person to sell or offer to sell a security within this state" unless the security is registered. Fla. Stat. Ann. § 517.07(1). In contrast, California's law is limited to the sale of "unqualified securities made as part of an '*issuer transaction*'" and not "aftermarket transactions." *Mirkin*, 5 Cal. 4th at 1104 (citing Cal. Corp. Code § 25110). Relatedly, the states' securities laws conflict in their territorial reach. A security's "purchase or sale must occur in California" to violate California law. *Diamond Multimedia Sys., Inc. v. Super. Ct.*, 19 Cal. 4th 1036, 1053 (Cal. 1999); *Scholes v. Tomlinson*, 145 F.R.D. 485, 493 (N.D. Ill. 1992) ("[T]he court will not, and can not, certify the class as proposed under" Section 25110 because "it is not clear which members, if any, of

---

[6] This fact distinguishes the sole case Plaintiffs cite that certified a nationwide class under California securities law. *Zakinov v. Ripple Labs, Inc.,* No. 18-cv-6753, 2023 WL 4303644, at *7–8 (N.D. Cal. June 30, 2023). There, the company, "Ripple," was a "citizen[] of California." *Zakinov v. Ripple Labs, Inc.*, 369 F. Supp. 3d 950, 954 (N.D. Cal. 2019).

*DEFENDANT MAYWEATHER'S OPPOSITION TO CLASS CERTIFICATION*

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

the class bought securities from the [defendants] in California."). But FSIPA does not apply to securities sold outside of Florida either. *See Allen v. Oakbrook Sec. Corp.*, 763 So. 2d 1099, 1101 (Fla. Dist. Ct. App. 1999) (per curiam) ("[B]ecause it is undisputed that the securities sales occurred entirely in other states, and because plaintiffs seek only to allege blue sky violations under Chapter 517, Florida Statutes, those claims should have been dismissed for failure to state a cause of action."); *see LaDuca v. Swirsky*, No. 02-cv-8597, 2003 WL 23162437, at *5 (N.D. Ill. July 24, 2003). Thus, the states' securities laws conflict because each applies only within its state's borders. The other conflicts among the securities laws of all fifty states weigh in favor of applying the law of each member's respective home state here. *See Davy v. Paragon Coin, Inc.*, No. 18-cv-671, 2020 WL 4460446, at *4 (N.D. Cal. June 24, 2020) (declining to certify nationwide class applying Section 25110 after "acknowledge[ing] there are differences between California law and the laws of other jurisdictions").

Furthermore, the securities laws of each class member's respective state will be impaired if it is not applied here. "[E]very state has an interest in having its law applied to its resident claimants." *Conde v. Sensa*, No. 14-cv-51, 2018 WL 4297056, at *13 (S.D. Cal. Sept. 10, 2018) (quoting *Mazza*, 666 F.3d at 592–93). But "both California courts and the Ninth Circuit have held that 'the place of the wrong' has the predominant interest in regulating the conduct at issue." *Id.* "[T]he 'place of the wrong' occurs where the potential class members sustains their loss." *Id.* Here, "the place of the wrong" would be a member's resident state, which is "where the members saw the advertisements and subsequently purchased the product, regardless of where the company selling the product was located at the time." *Id.* Plaintiffs themselves allege each Named Plaintiffs' purchase occurred in their state of residence. ECF No. 190 ¶¶ 198 ("Plaintiffs Semerjian, Buckley, and Shah paid for or purchased EMAX Tokens in California and thus the deceptive transactions alleged

18

*DEFENDANT MAYWEATHER'S OPPOSITION TO CLASS CERTIFICATION*

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

herein occurred in California."), 234 (alleging Plaintiffs Nahlah, Freeman, Puda, and Brignol's transactions "occurred in Florida"), 358 (alleging Plaintiffs Huegerich and Ciklic's transactions "occurred in New York"), 381 (alleging Plaintiff DeLuca's transaction "occurred in New Jersey"). Each member's respective home state therefore has the predominant interest here, because it is "the place of the wrong" according to Plaintiffs' own allegations.

Each member's respective state also maintains a policy interest favoring application of its laws. The nature of emerging technologies like cryptocurrencies and the state-by-state variance in securities laws support applying a members' home state law over nationwide application of California's laws. For instance, Florida recently passed legislation for "virtual currency." Fla. Stat. Ann. § 560.103(36). Applying California law nationwide would unnecessarily subordinate the interests of states like Florida. Accordingly, California's choice of law rules counsel against applying California law nationwide.

### 2. No Classwide Evidence To Establish Securities Claims

Certification of Plaintiffs' Secondary Liability claim against Mayweather is not appropriate due to the same lack of common evidence that plagues Plaintiffs' consumer claims. Plaintiffs' securities claim is based on the "alleg[ation] that Mayweather acted as an agent to effect purchases or sales of EMAX Tokens" through his alleged representations. ECF No. 189 at 11. Indeed, the Operative Complaint bases Mayweather's Secondary Liability exclusively on the allegation that he "issued the false statements and omissions made in connection with the offers or sales of an unregistered security alleged herein." ECF No. 190 ¶ 469. Plaintiffs' securities claim therefore raises the same concern as their consumer claims.

If Plaintiffs' Secondary Liability claim is solely premised on Mayweather's alleged representations, then he can be held secondarily liable only for unregistered securities sold in reliance on, and caused by, his alleged representations. Indeed,

*DEFENDANT MAYWEATHER'S OPPOSITION TO CLASS CERTIFICATION*

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

California's securities law attaches secondary liability only when an agent "materially aid[s] in the act or transaction constituting the violation"—"merely playing an active role in a securities offering [i]s insufficient for purposes of the material aid requirement of section 25504." *AREI II Cases*, 216 Cal. App. 4th 1004, 1015 (Cal. Ct. App. 2013) (quoting Cal. Corp. Code § 25504). As such, Mayweather cannot be secondarily liable for materially aiding the sale of unregistered securities under Plaintiffs' theory if the member was not exposed to Mayweather's alleged representations. For the same reasons discussed in Section IV(A)(1) above, Plaintiffs have not demonstrated common evidence exists to prove actual exposure to Mayweather's alleged representations classwide. Accordingly, individualized issues would predominate Plaintiffs' proposed securities class.

Plaintiffs also fail to demonstrate privity is provable classwide. The Court previously explained California's unregistered securities law and Secondary Liability law both require privity, and "Plaintiffs will certainly have to prove privity at some point." ECF No. 161 at 18, 23. Given that Plaintiffs "must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23," this is the point at which Plaintiffs must demonstrate privity is provable classwide. *Olean*, 31 F.4th at 664. Plaintiffs' Motion completely ignores privity. Plaintiffs have therefore not met their burden for certification. *See In re Ripple Labs, Inc. Litig.*, No. 18-cv-6753, 2024 WL 3074379, at *5 (N.D. Cal. June 20, 2024) (granting defendants summary judgment on unregistered securities class claims for lack of privity).

### C.    Plaintiffs Fail To Demonstrate Damages Are Capable of Classwide Calculation

Rule 23(b)(3)'s predominance factor additionally requires Plaintiffs present a damages model. *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017). "To satisfy this requirement, plaintiffs must show that 'damages are capable of measurement on a classwide basis,' in the sense that the whole class suffered

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

20

*DEFENDANT MAYWEATHER'S OPPOSITION TO CLASS CERTIFICATION*

damages traceable to the same injurious course of conduct underlying the plaintiffs' legal theory." *Id.* (quoting *Comcast Corp.*, 569 U.S. at 34).

Plaintiffs fail to show that damages are capable of classwide calculation. Despite Plaintiffs proposed classes including all EthereumMax token purchasers, their proposed damages model includes only those who purchased via Uniswap. Plaintiffs' computer science expert attests that "[o]ver the relevant period, *different* [decentralized exchanges (DEXs)] were used to trade EMAX but Uniswap v2 accounted for the majority, around 300K transfers of the upgraded token were initiated on Uniswap, which is 2 orders of magnitude more than any other DEX." ECF No. 243-8 at 13–14 (emphasis added). But Plaintiffs have not proposed any model for calculating the alleged damages of any member who purchased through means other than Uniswap. Because Plaintiffs cannot discern the geographic location of a purchaser as explained in Section I above, their proposed damages model also fails to disaggregate international purchasers from domestic purchasers, and California purchasers from those of any other state. Accordingly, Plaintiffs fail to present a damage model consistent with their liability case.

## V.    A Class Action Is Not Superior Under Rule 23(b)(3)

Rule 23(b)(3) further requires a court to find a "class action is superior to, and not just as good as, other available methods for handling the controversy." *Beebe v. Pac. Realty Tr.*, 99 F.R.D. 60, 73 (D. Or. 1983). The superiority requirement tests whether "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). "Where Congress has charged an administrative agency with global oversight and provided attorneys' fees for individual enforcement, Plaintiffs must climb a steep hill to prove that a class action is superior to another method of adjudication." *Gardner v. First Am. Title Ins. Co.*, No. 00-cv-2176, 2003 WL 221844, at *8 (D. Minn. Jan. 27, 2003). Therefore, "[a] district court does not abuse its

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

21

discretion in denying certification when existing administrative proceedings are superior to a class action." *Lanzarone v. Guardsmark Holdings, Inc.*, No. 06-cv-1136-RP-LAx, 2006 WL 4393465, at *5 (C.D. Cal. Sept. 7, 2006) (citing *Pattillo v. Schlesinger*, 625 F.2d 262, 265 (9th Cir. 1980)).

A class action is not the superior vehicle for handling this controversy because Congress has charged the U.S. Securities and Exchange Commission ("SEC") with oversight and the respective state legislatures provided attorneys' fees for individual enforcement of the claims asserted here, which Plaintiffs are availing themselves of. *See* ECF No. 190 ¶¶ 378, 401, 408–09. Indeed, the SEC has already undertaken that oversight here and settled enforcement actions against two Defendants, which Plaintiffs reference in the Operative Complaint. *See id.* ¶¶ 176–80. In those settlements, the SEC collected a total $2,669,980.35 and ordered that it "may distribute the funds paid pursuant to this paragraph if, in its discretion, the Commission orders the establishment of a Fair Fund pursuant to 15 U.S.C. § 7246, Section 308(a) of the Sarbanes-Oxley Act of 2002." *In the Matter of Paul Anthony Pierce*, SEC Release No. 11157, 2023 WL 2069917, at *5 (Feb. 17, 2023); *In the Matter of Kimberly Kardashian*, SEC Release No. 11116, 2022 WL 4922870, at *4 (Oct. 3, 2022). In such circumstances, "allowing for pursuit of claims in the administrative forum is often deemed superior to aggregating all the claims into a class action suit." *Ostrof v. State Farm Mut. Auto. Ins. Co.*, 200 F.R.D. 521, 532 (D. Md. 2001). This is particularly true when a class action will expend judicial resources to duplicate the work an administrative agency has already done. *See Conde*, 2018 WL 4297056, at *15–16 (finding "although the FTC settlement did not provide as much money as Plaintiff and the class members seek," plaintiffs "failed to establish that the proposed class action is superior to other methods for adjudication of the controversy" because "the class action would 'require a substantial expenditure of judicial time which would largely duplicate' the work of the FTC investigation and

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

22

*DEFENDANT MAYWEATHER'S OPPOSITION TO CLASS CERTIFICATION*

resulting settlement."); *Imber-Gluck v. Google Inc.*, No. 5:14-cv-1070, 2015 WL 1522076, at *3 (N.D. Cal. Apr. 3, 2015) (finding superiority factor not met where "class action would 'require a substantial expenditure of judicial time which would largely duplicate' the work of the 18 month FTC investigation."). Given that a class action would largely duplicate the SEC's work here, it is not the superior vehicle for handling this controversy.

## **CONCLUSION**

Plaintiffs have failed to demonstrate that their proposed classes warrant class certification under Rule 23 for the reasons articulated above. Accordingly, this Court should deny Plaintiffs' Motion and decline to certify Plaintiffs' proposed classes.


Dated:  April 25, 2025                          Respectfully submitted,

                                               SPERTUS, LANDES & JOSEPHS, LLP


                                               By: _____
                                                    Samuel A. Josephs
                                                    Mario Hoang Nguyen

                                                    *Attorneys for Defendant*
                                                    *Floyd Mayweather Jr.*

1

## **Certificate of Compliance**

2

3        The undersigned, counsel for Defendant Floyd Mayweather Jr., certifies this

4    Opposition contains 6,995 words, which complies with the word limit of L.R. 11-

5    6.1.

6

7    Dated:  April 25, 2025                                    _____

Samuel A. Josephs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Spertus, Landes & Josephs, LLP
617 West 7th Street, Suite 200
Los Angeles, CA  90017
Telephone (213) 205-6520; Facsimile (213) 205-6521

*DEFENDANT MAYWEATHER'S OPPOSITION TO CLASS CERTIFICATION*