Michael G. Freedman (State Bar No. 281279)
THE FREEDMAN FIRM PC
1801 Century Park East, Suite 450
Los Angeles, California 90067
Telephone: (310) 285-2210
Facsimile: (310) 425-8845
Email: Michael@thefreedmanfirm.com

Attorneys for Defendant
Giovanni Perone and EMAX Holdings, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| IN RE ETHEREUMMAX INVESTOR LITIGATION | Lead Case: 2:22-cv-00163-MWF-SK |
| This Document Relates to: ALL ACTIONS | **DEFENDANTS GIOVANNI PERONE AND EMAX HOLDINGS, LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| | Judge: Hon. Michael Fitzgerald<br>Courtroom: 5A<br>Hearing: June 16, 2025<br>Time: 10:00 a.m. |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................... 6

II.   RELEVANT BACKGROUND .......................................... 9

    A.   Summary of Plaintiffs' Allegations. ........................... 9

    B.   Summary of Plaintiffs' Class Allegations. .................. 10

    C.   The Court's Ruling on Perone's Motion to Dismiss. .......... 10

    D.   The Class Certification Motion.......................... 11

III.  LEGAL STANDARD ................................................... 12

IV.   ARGUMENT........................................................ 13

    A.   Plaintiffs Have Not Established the Predominance and Superiority Requirements of Rule 23(b)(3) Because the EMAX Transactions Are Pseudonymous and Individualized Mini-Trials Would Be Necessary to Ascertain How Many Alleged Transactions Fall Within Each Proposed Class. ........................................... 13

    B.   Plaintiffs' Securities Law Claims Cannot Be Certified on a Nationwide Basis Because Individualized Questions of Each Purchaser's Residence Predominate Over Common Questions. ............................. 17

    C.   Certification of the Nationwide Class Would Violate Perone's Due Process Rights. ................................... 20

    D.   The Proposed Nationwide Class Impermissibly Fails to Include Any Privity Limitation................................. 21

V.    CONCLUSION........................................................ 22

DEFENDANTS PERONE & EMAX'S OPP. TO MOT. FOR CLASS CERT.

# TABLE OF AUTHORITIES

**Cases**

*Boehner v. McDermott*,

　332 F. Supp. 2d 149 (D.D.C. 2004)................................................................17

*Bowden v. Robinson*,

　67 Cal. App. 3d 705 (1977) ..........................................................................22

*Burns v. Rozen*,

　201 So. 2d 629 (Fla. Dist. Ct. App. 1967) ....................................................17

*California Amplifier, Inc. v. RLI Ins. Co.*,

　94 Cal. App. 4th 102 (2001) .....................................................................8, 22

*Campusano v. BAC Home Loans Serv. LP*,

　No. CV 11-4609 PSG (JCx), 2013 WL 2302676 (C.D. Cal. Apr. 29, 2013).....14

*Comcast Corp. v. Behrend*,

　569 U.S. 27 (2013)........................................................................................12

*Davy v. Paragon Coin, Inc.*,

　No. 18-CV-00671-JSW, 2020 WL 4460446 (N.D. Cal. June 24, 2020) ..........19

*Deitz v. Comcast Corp.*,

　No. C 06-06352 WHA, 2007 WL 2015440 (N.D. Cal. July 11, 2007)..............14

*Diamond Multimedia Sys., Inc. v. Superior Court*,

　19 Cal. 4th 1036 (1999) ........................................................................ 7, 18, 20

*Howard v. Kerzner Int'l Ltd.*,

　No. 12-22184-CIV, 2014 WL 714787 (S.D. Fla. Feb. 24, 2014)....................7, 17

*In re Charles Schwab Corp. Sec. Litig.*,

　264 F.R.D. 531 (N.D. Cal. 2009)....................................................................20

*In re Ripple Labs, Inc. Litig.*,

　No. 18-CV-06753-PJH, 2024 WL 3074379 (N.D. Cal. June 20, 2024) . 8, 19, 22

*Miles v. Kirkland's Stores Inc.*,

　89 F.4th 1217 (9th Cir. 2024) ................................................................ 8, 19, 20

DEFENDANTS PERONE & EMAX'S OPP. TO MOT. FOR CLASS CERT.

*Norwest Mortg., Inc. v. Superior Court*,

72 Cal. App. 4th 214 (1999) ........................................................................20

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,

31 F.4th 651 (9th Cir. 2022) .............................................. 12, 11, 19

*Oppenheimer & Co., Inc. v. Young*,

456 So. 2d 1175 (Fla. 1984) ........................................................17

*Otto v. Abbott Lab'ys Inc.*,

No. 5:12-cv-01411-SVW-DTB, 2015 WL 9698992 (C.D. Cal. Sept. 29, 2015)...6, 16

*Phillips Petroleum v. Shutts*,

472 U.S. 797 (1985)................................................................8, 20

*Rensel v. Centra Tech, Inc.*,

2 F.4th 1359 (11th Cir. 2021) ......................................... 12, 14

*Scholes v. Tomlinson*,

145 F.R.D. 485 (N.D. Ill. 1992)..................................................19

*Shepard v. Lowe's HIW, Inc.*,

No. C 12–3893 JSW, 2013 WL 4488802 (N.D. Cal. Aug. 19, 2013)............6, 14

*Sullivan v. Oracle Corp.*,

51 Cal. 4th 1191 (2011) ...........................................................18

*Valentino v. Carter-Wallace, Inc.*,

97 F.3d 1227 (9th Cir. 1996) .....................................................13

*Walker v. Life Ins. Co. of Sw.*,

953 F.3d 624 (9th Cir. 2020) .....................................................12

*Wal-Mart Stores, Inc. v. Dukes*,

564 U.S. 338 (2011)..................................................... 12, 13

*Williams v. Oberon Media, Inc.*,

468 F. App'x 768 (9th Cir. 2012).................................................14

*Zakinov v. Ripple Labs, Inc.*,

No. 18-CV-06753-PJH, 2023 WL 4303644 (N.D. Cal. June 30, 2023) ............19

*Zinser v. Accufix Rsch. Inst., Inc.*,

DEFENDANTS PERONE & EMAX'S OPP. TO MOT. FOR CLASS CERT.

253 F.3d 1180 (9th Cir.) ...................................................................6, 14

**Statutes**

Cal. Corp. C. § 25110 ................................................................. passim

Cal. Corp. C. § 25400 ................................................................. passim

Cal. Corp. C. § 25500 ................................................................. passim

Cal. Corp. C. § 25501 ............................................................. 8, 10, 22

Cal. Corp. C. § 25502 .....................................................................7, 22

Cal. Corp. C. § 25503 .....................................................................7, 22

Fla. Stat. Ann. § 517.07 ....................................................... 7, 11, 17, 18

**Rules**

Fed. R. Civ. P. 23 ........................................................................ passim

**Treatises**

Newberg on Class Actions § 3:3 (5th Ed. 2013) .......................................14

DEFENDANTS PERONE & EMAX'S OPP. TO MOT. FOR CLASS CERT.

**OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

## I.     INTRODUCTION

Several fundamental flaws prevent Plaintiffs from meeting their burden to establish each Rule 23 requirement for class certification.

***First***, Plaintiffs have not satisfied Rule 23(b)(3) because EMAX transactions are pseudonymous and Plaintiffs have failed to describe any methodology to ascertain how many of the alleged 300,000 EMAX purchases fall within the proposed national or statewide classes. Anyone in the world with an internet connection could purchase EMAX tokens. Dkt. 243-8 at p. 6. Plaintiffs describe no methodology for disaggregating international and out-of-state purchases from the classwide calculations of violations. Plaintiffs only describe a process for tracing purchases to specific cryptocurrency wallets—and no methodology for geolocating *any particular wallet* that purchased EMAX. *See id*. at pp. 14-15. All EMAX purchases allegedly occurred over Uniswap—an autonomous exchange with no centralized records of purchasers' identities or geographic location. TAC, ¶¶33-34.

Plaintiffs' motion only hints at one potential method to ascertain which of the 300,000 alleged EMAX purchases belong to each class: an "air drop" request for self-identification to each purchaser over the blockchain. The problem with this approach is it would necessitate hundreds or thousands of individualized mini-trials to ascertain the actual location of each putative class member—and therefore the number of alleged violations in each class. A class cannot be certified when triable individualized issues are likely to overwhelm at trial. *See Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir.), opinion amended on denial of reh'g, 273 F.3d 1266 (9th Cir. 2001). A class must also be "clearly ascertainable" by reference to objective criteria "so that it is administratively feasible [for a court] to determine whether a particular person is a class member." *Shepard v. Lowe's HIW, Inc.*, No. C 12–3893 JSW, 2013 WL 4488802 at *2 (N.D. Cal. Aug. 19, 2013); *see Otto v. Abbott Lab'ys Inc.*, No. 5:12-cv-01411-SVW-DTB, 2015 WL 9698992, at *3 (C.D.

DEFENDANTS PERONE & EMAX'S OPP. TO MOT. FOR CLASS CERT.

Cal. Sept. 29, 2015) (Rule 23 ascertainability requirement not met when fact-intensive inquiries are necessary to determine class membership). The Court should not certify any of the proposed classes based on Plaintiffs' failure to articulate a feasible process for ascertaining the number of transactions that fall within each class.

***Second***, at minimum, the Court should not certify the proposed nationwide class because the underlying claims for sales of unregistered securities lack extraterritorial application beyond California and Florida. The issue of each individual class member's residence would therefore predominate over the common issue of whether the EMAX tokens were unregistered securities. Florida's statute makes it "unlawful … for any person to sell or offer to sell a security ***within this state*** unless the security is exempt" from registration. Fla. Stat. Ann. § 517.07. Florida courts apply a general presumption against extraterritorial application of Florida statutes, unless the legislature expressly states otherwise. *Howard v. Kerzner Int'l Ltd.*, No. 12-22184-CIV, 2014 WL 714787, at *5 (S.D. Fla. Feb. 24, 2014). California's statute also applies only to persons who "offer or sell ***in this state***" any unregistered security. Cal. Corp. C. § 25110; *see Diamond Multimedia Sys., Inc. v. Superior Court*, 19 Cal. 4th 1036, 1053 (1999) ("purchase or sale must occur in California" to trigger a violation of section 25110). All of the putative class members allegedly purchased EMAX over the internet from the Uniswap decentralized exchange. Therefore, the only alleged transactions that arguably fall within the Florida and California statutes were purchases by residents of those states. Individualized inquiries of each purchaser's residence would therefore predominate the nationwide class, and it should not be certified.

***Third***, although one of the alleged securities law violations does have extraterritorial application to the other states—Cal. Corp. C. §§ 25400/25500 market manipulation—Plaintiffs' proposed nationwide class does not disaggregate this claim from other claims that indisputably lack extraterritorial application. A

DEFENDANTS PERONE & EMAX'S OPP. TO MOT. FOR CLASS CERT.

class should not be certified where "individualized issues bar recovery **on at least some claims**, thus raising the spectre of class-member-by-class-member adjudication of the issue." *Miles v. Kirkland's Stores Inc.*, 89 F.4th 1217, 1222 (9th Cir. 2024) (quoting *Van v. LLR, Inc.*, 61 F.4th 1053, 1067 (9th Cir. 2023) (emphasis added). Additionally, certification of a nationwide class based solely on the market manipulation claim would violate Perone's due process rights. Perone is a Florida resident. Plaintiffs do not allege he did anything in California. The Court already dismissed Plaintiffs' §§ 25400/25500 claim against him. To certify a nationwide class, California "must have a 'significant contact or significant aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of [California] law is not arbitrary or unfair." *Phillips Petroleum v. Shutts*, 472 U.S. 797, 821–22 (1985). There are no significant contacts linking Perone, California, and the alleged market manipulation, thus preventing certification of the class even if narrowed exclusively to the alleged violations of Corp. C. §§ 25400/25500.

    ***Finally***, the proposed nationwide class of plaintiffs who allegedly purchased unregistered securities also improperly fails to include any privity limitation. Without any limitation to purchases "from Defendants" in the class definition for securities violations, Plaintiffs improperly sweep in class members who did not purchase their tokens from Defendants, lacked privity with Defendants, and therefore lack any claim under the Cal. Corp. C. §§ 25501-03. *See California Amplifier, Inc. v. RLI Ins. Co.*, 94 Cal. App. 4th 102, 109, 113 (2001) (confirming that Corp. C. §§ 25501-03 contain an explicit privity requirement); *In re Ripple Labs, Inc. Litig.*, No. 18-CV-06753-PJH, 2024 WL 3074379, at *5 (N.D. Cal. June 20, 2024) (granting summary judgment against unregistered securities class action claims based on inability to establish any direct purchases from defendants).

## II.        RELEVANT BACKGROUND

### A.    Summary of Plaintiffs' Allegations.

Perone allegedly co-founded a cryptocurrency project called "EthereumMax" which developed the EMAX Token. TAC, ¶31. EMAX Tokens are blockchain-based digital assets creating using the Ethereum blockchain. *Id.*, ¶32. "EMAX Tokens were not sold on popular centralized exchanges like Coinbase or Gemini … . Instead, the EMAX Tokens traded exclusively on decentralized exchanges, like Uniswap, that allow anyone to list and sell their tokens." *Id.*, ¶33.

Defendant Justin Maher, a Connecticut resident, allegedly enlisted a network of unnamed individuals to promote EMAX Tokens through social media channels, including through claims about the profitability of the tokens. TAC, ¶42.

Defendant Jona Rechnitz, a California resident, allegedly enlisted several celebrity promoters and co-defendants (the "Promoter Defendants") to "shill" EMAX Tokens to their social media followers, as well. TAC, ¶45.

The Executive Defendants (Maher, Rechnitz, Perone, and Texas resident Mike Spear) allegedly "launched" the EMAX Token beginning on May 14, 2021 by minting 4 quadrillion EMAX Tokens and supplying some tokens to a liquidity pool on Uniswap over the subsequent days and weeks. TAC, ¶¶52, 124. Members of the public could then deposit Ether (another cryptocurrency token) into the liquidity pool to receive EMAX Tokens in exchange. *Id.*

Over the days following the May 14, 2021 launch, Maher and Rechnitz allegedly transferred EMAX Tokens to the Promoter Defendants in exchange for their public promotions of the token. TAC, ¶¶60-111. Perone allegedly authored or directed a press release and posts on the EthereumMax Twitter and Instagram accounts promoting the EMAX Token. *Id.*, ¶¶62, 97, 121, 121.

Perone allegedly formed EMAX Holdings, LLC (the "Company") under the laws of Florida on June 6, 2021, to hold the EthereumMax IP. TAC, ¶25. The Company allegedly dissolved on September 23, 2022. *Id.*

EMAX Tokens allegedly appreciated in value by more than 1,370% by May 30, 2021. TAC, ¶171. The tokens then allegedly suffered a sudden decline and lost nearly all of their value by June 15, 2021, and remain virtually worthless. *Id*., ¶172. By April 1, 2022, transactions in EMAX Tokens had virtually ceased. *Id*.

**B.      Summary of Plaintiffs' Class Allegations.**

Plaintiffs are residents of New York, California, Florida, New Jersey, and Connecticut who allegedly purchased EMAX Tokens between May 14, 2021 and June 27, 2021, and "were damaged thereby." TAC, ¶¶1, 6-15. They seek to represent a class of all persons who, during the period from May 14, 2021 to June 27, 2021 ("Class Period") purchased EMAX Tokens and were subsequently damaged thereby. *Id*., ¶¶187-188.

**C.      The Court's Ruling on Perone's Motion to Dismiss.**

The Court has ruled on several rounds of Rule 12(b)(6) motions to dismiss. As to Perone, the Court most recently dismissed the ninth, tenth, and eleventh claims for violations of California Corp. C. §§ 25400/25500 (market manipulation), 25401/25501 (misrepresentation) and 25402 (insider trading), because the TAC does not sufficiently allege that Perone had any actual knowledge of, or engaged in, any transactions completed by the cryptocurrency wallets that allegedly supplied EMAX tokens to the Uniswap liquidity pool. *See* Dkt. 189.

The Court also dismissed all claims against the Company prior to its date of incorporation on June 6, 2021. *See* Dkt. 189.

As a result, the claims remaining against Perone are:

- <u>Claims 1-3</u>: Unlawful, Unfair, and Fraudulent Acts and Practices under California Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code §§ 17200, et seq.);

- <u>Claim 5</u>: Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.211);

- <u>Claim 6</u>: New York General Business Law (Art. 22-A, § 349, *et seq.*);

10

- <u>Claim 7</u>: New Jersey Consumer Fraud Act (N.J. Stat. Ann. § 56:8-1, *et seq.*);

- <u>Claim 8</u>: Failure to Register Securities under California law (Cal. Corp. Code §§ 25110 and 25503);

- <u>Claim 12</u>: Secondary Liability under California law (Cal. Corp. Code §§ 25403(b), 25504, and 25504.1);

- <u>Claim 13</u>: Sale of Unregistered Securities under Florida law (Fla. Stat. § 517.07); and

- <u>Claim 14</u>: Unjust Enrichment/Restitution under California common law.

### D.    The Class Certification Motion.

***The Nationwide Class***. Plaintiffs seek to certify a Nationwide Class of: "All persons in the United States who, between May 14, 2021, and June 27, 2021, purchased unregistered EthereumMax tokens and were subsequently damaged thereby." Dkt. 242-1 at 6:1-3. "Plaintiffs are pursuing the nationwide class based only on the California and Florida state securities laws… ." *Id*. at 6:7-8.[1]

***The State Classes***. Plaintiffs also seek to certify four statewide classes of: "All persons in California [/New York/Florida/New Jersey] who, between May 14, 2021, and June 27, 2021, purchased EthereumMax tokens and were subsequently damaged thereby." Dkt. 242-1 at 7:7-16. Plaintiffs pursue these four state classes based on the consumer protection claims. *Id*. If the Court declines to certify the Nationwide Class, Plaintiffs alternatively propose certification of the securities law claims as part of the California and Florida state subclasses. *Id*., 7:17-19.

---

[1] The nationwide class *cannot* include alleged violations of California's UCL, because the Ninth Circuit has held it was improper to certify a nationwide class of plaintiffs harmed by alleged violations of California's UCL, on grounds that other states' consumer protection statutes conflicted with the UCL and applied to purchases made in other states. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 591, 594 (9th Cir. 2012), overruled on other grounds by *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022).

DEFENDANTS PERONE & EMAX'S OPP. TO MOT. FOR CLASS CERT.

*Trial Plan.* Plaintiffs propose a trial in three phases: (I) a determination of liability "common to all class members," (II) a determination of "aggregate damages for each of the claims," and (III) post-trial determination of a claims administration protocol. Dkt. 242-1 at 8:2-18.

## III.    LEGAL STANDARD

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (internal quotation marks omitted). "To come within the exception, a party seeking to maintain a class action must affirmatively demonstrate his compliance with Rule 23" of the Federal Rules of Civil Procedure. *Id.*

Rule 23(a) has four threshold requirements: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). Because they seek money damages, Plaintiffs must also establish that the class satisfies Rule 23(b)(3), which requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." As part of the superiority consideration, courts consider factors including whether the class is manageable and whether class members can be identified and given adequate notice. *See also Walker v. Life Ins. Co. of Sw.*, 953 F.3d 624, 632 (9th Cir. 2020) ("the superiority prong might best lend itself to considering" issues of class member identification); *Rensel v. Centra Tech, Inc.*, 2 F.4th 1359, 1361 (11th Cir. 2021) (difficulties identifying potential class members may impact manageability analysis).

"Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Plaintiffs "must actually prove—not simply plead—that their proposed class satisfies each requirement of Rule 23" by a preponderance of the evidence. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664–65 (9th Cir. 2022) (quoting *Haliburton Co. v.*

DEFENDANTS PERONE & EMAX'S OPP. TO MOT. FOR CLASS CERT.

*Erica P. John Fund, Inc.*, 573 U.S 258, 275–76 (2014) (emphasis omitted).
"[C]ertification is proper only if the trial court is satisfied, after a rigorous analysis,
that the prerequisites of Rule 23[] have been satisfied." *Wal-Mart*, 564 U.S. at 350–
51 (internal quotation marks omitted).

## IV.    ARGUMENT

### A.    Plaintiffs Have Not Established the Predominance and Superiority Requirements of Rule 23(b)(3) Because the EMAX Transactions Are Pseudonymous and Individualized Mini-Trials Would Be Necessary to Ascertain How Many Alleged Transactions Fall Within Each Proposed Class.

Plaintiffs have failed to establish the predominance and/or superiority
requirements of Rule 23(b)(3) because cryptocurrency transactions are
pseudonymous and Plaintiffs have failed to describe any methodology to ascertain
how many of the alleged 300,000 EMAX purchases fall within each of the proposed
national or statewide classes.

Anyone in the world with an internet connection can purchase
cryptocurrency. Dkt. 243-8 at p. 6 (Clark Decl.) ("anyone on the internet" can
execute blockchain transactions). What if 90% of the alleged EMAX transactions
were consummated by residents of foreign countries? Those purchasers do not
belong to any proposed class, yet Plaintiffs describe no methodology for
disaggregating them from the classwide calculation of violations and
damages. Plaintiffs' expert only describes a methodology for tracing purchases to
specific cryptocurrency wallets. *See id*. at pp. 14-15. He describes no methodology
for geolocating *any particular wallet* that purchased EMAX. Does the California
subclass involve 10 purchases, 1,000 purchases, or 100,000 purchases of EMAX?
Plaintiffs have not met their burden to articulate any methodology for making this
determination during any of the proposed phases of trial.

To certify a class, the Court must determine that a class action is superior to
individual lawsuits for resolving the dispute. *Valentino v. Carter-Wallace, Inc.*, 97

DEFENDANTS PERONE & EMAX'S OPP. TO MOT. FOR CLASS CERT.

F.3d 1227, 1231–32 (9th Cir. 1996). A class cannot be certified when triable individualized issues are likely to overwhelm at trial. *See Zinser*, 253 F.3d at 1189, opinion amended on denial of reh'g, 273 F.3d 1266 (9th Cir. 2001) (affirming denial of class certification on manageability grounds: where causation and damages issues could raise numerous individualized issues at trial, burden is on plaintiff to present manageable trial plan adequate to deal with individualized issues and variances in state laws); *see also Rensel*, 2 F.4th at 1361 (difficulties identifying class members may impact Rule 23(b)(3) manageability analysis).

To be certified, a class must also be "sufficiently definite" and "clearly ascertainable" by reference to objective criteria "so that it is administratively feasible [for a court] to determine whether a particular person is a class member" and thus bound by the judgment. *Shepard*, No. C 12-3893 JSW, 2013 WL 4488802 at *2; *see Williams v. Oberon Media, Inc.*, 468 F. App'x 768, 770 (9th Cir. 2012) (affirming denial of class certification where plaintiffs had not shown that there was an objective way of determining whether individuals were class members); *Campusano v. BAC Home Loans Serv. LP*, No. CV 11-4609 PSG (JCx), 2013 WL 2302676, at *3 (C.D. Cal. Apr. 29, 2013) ("For a class to be ascertainable, its members must be identifiable 'by reference to objective criteria.'"); *Deitz v. Comcast Corp.*, No. C 06-06352 WHA, 2007 WL 2015440, at *8 (N.D. Cal. July 11, 2007) (proposed class not ascertainable where the defendant did not maintain records to identify those customers, rendering it "impossible to determine without significant inquiry" which customers were parties to unlawful transactions); Newberg on Class Actions § 3:3 (5th Ed. 2013) ("Administrative feasibility means that identifying class members is a manageable process that does not require much, if any, individual factual inquiry").

Here, Plaintiffs have failed to establish any methodology reasonably capable of determining, without extensive individualized factfinding, which EMAX purchases were made by residents of the United States, let alone residents of

DEFENDANTS PERONE & EMAX'S OPP. TO MOT. FOR CLASS CERT.

individual states. Ethereum transactions are pseudonymous; the blockchain ledger doesn't record any location data such as IP addresses or geolocation metadata. As a result, examining only the blockchain ledger cannot pinpoint the physical location of any particular wallet or identify where each token purchaser was located. *See, e.g.*, Statement of U.S. SEC Commissioner Caroline A. Crenshaw (Nov. 9, 2021), *available at* https://www.sec.gov/newsroom/speeches-statements/crenshaw-defi-20211109 ("Because of pseudonymity, the blockchain displays the blockchain address that sent or received assets, but not the identity of the person who controls it. … The use of alphanumeric strings that obscure real world identity was a core feature of Bitcoin and has been present in essentially all blockchains that have followed."); Dkt 243-8 at p. 6 (acknowledging "anyone on the internet with the appropriate technical capabilities" can execute a blockchain transaction) and p. 16 (acknowledging transactions can only be traced to Ethereum wallets of "unknown individuals," and failing to explain any methodology for geolocating Ethereum wallets for each EMAX purchase).

Plaintiffs cannot obtain purchaser identifying information from centralized exchanges because, according to the TAC, EMAX Tokens "were not sold on popular centralized exchanges like Coinbase or Gemini … [but rather] traded exclusively on decentralized exchanges, like Uniswap, that allow anyone to list and sell their tokens." TAC, ¶33. Decentralized exchanges are "automated market makers" that link purchasers to sellers using automated "smart contracts." *Id.,* ¶34. Unlike centralized exchanges, Uniswap does not collect personal data about trade counterparties or comply with "know your customer" rules. *See* Uniswap Docs, "The Uniswap Protocol," available at https://docs.uniswap.org/concepts/uniswap-protocol ("Permissionless design means that the protocol's services are entirely open for public use, with no ability to selectively restrict who can or cannot use them. Anyone can swap, provide liquidity, or create new markets at will. This is a

departure from traditional financial services, which typically restrict access based on geography, wealth status, and age.").

Plaintiffs make vague reference to some kind of self-identification process, such as be distributing an "airdrop" notice to all Ethereum wallets that purchased EMAX tokens according to the blockchain ledger. *See* Dkt. 242-1 at 31:16-32:2. Plaintiffs might argue this "airdrop" procedure could ask each recipient to self-identify their geographic location and residence when they purchased EMAX, thus providing some indicia of the location of each alleged violation. Even so, and assuming a significant proportion of the wallets respond to this inquiry, this procedure would necessitate individualized mini-trials to calculate the total number of violations, as Defendants would need an opportunity to test each claimant's self-identification of residence to determine whether a violation occurred. *See Otto*, No. 5:12-cv-01411-SVW-DTB, 2015 WL 9698992, at *3 ("A survey of cases within our circuit show that two key factors regarding ascertainability are whether the class (1) requires fact-intensive inquiries to determine class membership, or (2) requires self-identification as to subjective factors, which are prone to subjective memory problems.").

In sum, individualized litigation of each proposed class member's residence at the time of purchasing EMAX Tokens would overwhelm the trial and render the proposed class action unmanageable. Plaintiffs have proposed no feasible methodology for ascertaining which of the alleged 300,000 EMAX transactions fall within each of the proposed classes. The blockchain is pseudonymous and there are no centralized records capable of establishing the location of each transaction—and therefore the total number of alleged violations—without individualized inquiries. The Court should deny class certification under Rule 23(b)(3).

DEFENDANTS PERONE & EMAX'S OPP. TO MOT. FOR CLASS CERT.

**B.    Plaintiffs' Securities Law Claims Cannot Be Certified on a Nationwide Basis Because Individualized Questions of Each Purchaser's Residence Predominate Over Common Questions.**

Plaintiffs' proposed nationwide class of EMAX purchasers is "based only on [alleged violations of] the California and Florida state securities laws" alleged in the complaint. Dkt. 242-1 at 6:7-8. Plaintiffs' motion suggests the nationwide class will only include the "unregistered securities claims" under California Corp. C. §§ 25110 and 25503 and Florida Stat. Ann. § 517.07—and not the manipulation and misrepresentation claims under California law. *See id.* at 6:19-20, 13:14-28 (arguing that commonality is satisfied because securities claims all involve common question of whether "EMAX tokens were … registered as securities or they were not"), 18:13-19:8 (arguing for predominance of "common issue" whether EMAX tokens were unregistered securities). Indeed, Plaintiffs' proposed class definition is limited to purchasers of "unregistered" EMAX tokens. *Id.* at 6:1-3.

Neither of the statutes at issue have extraterritorial application to purchases or sales of unregistered securities outside of Florida or California. Florida's statute makes it "unlawful … for any person to sell or offer to sell a security ***within this state*** unless the security is exempt" from registration. Fla. Stat. Ann. § 517.07 (emphasis added). Plaintiffs cite no authority for applying this statute to transactions of unregistered securities outside of Florida. Florida courts apply a general presumption against extraterritorial application of Florida statutes, unless the legislature expressly states otherwise. *Howard*, No. 12-22184-CIV, 2014 WL 714787, at *5 ("Florida law cannot be applied extraterritorially unless the statute contains an 'express intention that its provisions are to be given extraterritorial effect.'"); *Boehner v. McDermott*, 332 F. Supp. 2d 149, 155 (D.D.C. 2004) (reaching same conclusion); *Burns v. Rozen*, 201 So. 2d 629, 631 (Fla. Dist. Ct. App. 1967) ("Extraterritorial effect of an enactment is not to be found by implication."); *see also Oppenheimer & Co., Inc. v. Young*, 456 So. 2d 1175, 1178

DEFENDANTS PERONE & EMAX'S OPP. TO MOT. FOR CLASS CERT.

(Fla. 1984), vacated on other grounds and remanded (1985) 470 U.S. 1078 ("It is clear from the above that the legislature intended that … *Florida purchasers of securities* be granted the full range of civil remedies offered by both Florida and federal securities laws.") (emphasis added).

California Corp. C. § 25110 also makes it unlawful "for any person to offer or sell *in this state* any security in an issuer transaction … unless such sale has been qualified … or unless such security or transaction is exempted or not subject to qualification…" (emphasis added). The California legislature was "quite specific" in noting that a "purchase or sale must occur in California" to trigger a violation of section 25110. *Diamond Multimedia Sys.*, 19 Cal. 4th at 1053. And like Florida, California courts generally apply a presumption against extraterritorial application of California law. *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011).

The alleged issuer of EMAX tokens (the Company) is a Florida company that "operated out of Florida." Dkt. 242-1 at 6:27; *see* TAC, ¶25 (alleging the Company is a Florida LLC). Plaintiffs' alleged EMAX purchases were made from a liquidity pool on a decentralized exchange via the internet, with no "single traditional counterparty." *Id.*, ¶34. The only EMAX purchases or sales that arguably occurred "within/in this state," as required by the statutes at issue, were the purchases by residents of Florida and California. There is no reasonable basis to argue that a resident of (e.g.) North Dakota who purchases EMAX tokens from the Uniswap liquidity pool has purchased a security within/in Florida or California.

The individualized question of each purchaser's state of residence will therefore predominate over the question of whether the EMAX Token is a "security" that Defendants sold without registration/qualification. Residents of 48 states lack any claims under California Corp. C. §§ 25110 and 25503 or Florida Stat. Ann. § 517.07. "When individualized questions relate to the injury status of class members, Rule 23(b)(3) requires that the court determine whether individualized inquiries about such matters would predominate over common

DEFENDANTS PERONE & EMAX'S OPP. TO MOT. FOR CLASS CERT.

questions." *Olean*, 31 F. 4th at 668. This fundamental flaw dooms the nationwide class even if other alleged securities law violations (e.g., market manipulation) have extraterritorial application: a party can oppose class certification by showing "that the individualized issues bar recovery ***on at least some claims***, thus raising the spectre of class-member-by-class-member adjudication of the issue." *Miles*, 89 F.4th at 1222 (emphasis added).

Here, the unregistered securities claims of members of the putative nationwide class will depend upon the residence of each individual plaintiff. Residents of 48 states lack any claim under California or Florida law for purchase of an unregistered security. As a result, individualized inquiries will predominate and the Court should decline certification of the proposed nationwide class. *See, e.g., Davy v. Paragon Coin, Inc.*, No. 18-CV-00671-JSW, 2020 WL 4460446, at *4 (N.D. Cal. June 24, 2020) (declining to certify nationwide class of purchasers of alleged unregistered securities under Corp. C. § 25110, despite presence of seller's headquarters within California); *Scholes v. Tomlinson*, 145 F.R.D. 485, 493 (N.D. Ill. 1992) (declining to certify nationwide class of purchasers under Corp. C. § 25110 where "it is not clear which members, if any, of the class bought securities from the [defendants] in California").[2]

---

[2] Plaintiffs cite the case *Zakinov v. Ripple Labs, Inc.*, No. 18-CV-06753-PJH, 2023 WL 4303644, at *7–*8 (N.D. Cal. June 30, 2023), which certified a nationwide class based on California securities laws. The district court noted the plaintiffs' showing that "California has significant contact . . . to the claims of each class member." *Id.* That case is distinguishable because the issuers were headquartered in California and allegedly sold XRP tokens directly to purchasers. *See In re Ripple Labs Inc. Litig.*, No. 18-cv-06753-PJH (N.D. Cal. Mar. 25, 2020) (Dkt. 87) (Consolidated Complaint), at ¶¶14-16, 30-39.

DEFENDANTS PERONE & EMAX'S OPP. TO MOT. FOR CLASS CERT.

### C. Certification of the Nationwide Class Would Violate Perone's Due Process Rights.

The California and Florida statutes prohibiting the sale of unregistered securities lack extraterritorial application, as shown above. Plaintiffs also assert a statutory claim that may apply to purchases outside of California: market manipulation, Corp. C. §§ 25400 and 25500. When conduct amounting to market manipulation occurs inside of California, out-of-state purchasers of securities whose price has been affected by the manipulation occurring in California can sue for relief. *See Diamond Multimedia Sys.*, 19 Cal. 4th at 1065.

The Court already dismissed Plaintiffs' § 25400 market manipulation claim against Perone. *See* Dkt. 189. As discussed above, Plaintiffs' motion papers also suggest that the nationwide class will proceed only on the unregistered securities claims. *See* Dkt. 242-1 at 6:1-6, 6:19-20, 13:14-28. And even if the market manipulation claims are included in the nationwide class, predominant individualized inquiries involving the unregistered securities claims thwart certification of the entire proposed class. *Miles*, 89 F.4th at 1222.

That said, to the extent Plaintiffs request certification of a nationwide class premised *solely* on violations of the market manipulation claim, certification of that class would impermissibly violate Perone's due process rights.

For California law to be applied to the claims of the proposed nationwide class against Perone, due process requires that California "must have a 'significant contact or significant aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of [California] law is not arbitrary or unfair." *Phillips Petroleum v. Shutts*, 472 U.S. at 821-22. "California courts interpret *Shutts* to be satisfied where the defendant is headquartered in-state and the challenged conduct occurred within the state." *In re Charles Schwab Corp. Sec. Litig.*, 264 F.R.D. 531, 538 (N.D. Cal. 2009); *see Norwest Mortg., Inc. v. Superior Court*, 72 Cal. App. 4th 214, 224–25

DEFENDANTS PERONE & EMAX'S OPP. TO MOT. FOR CLASS CERT.

(1999) (denying certification of nationwide class because application of UCL to claims of non-state residents would violate due process when defendant's headquarters and injury-producing conduct occurred outside California). "Under California's choice of law rules, the class action proponent bears the initial burden to show that California has 'significant contact or significant aggregation of contacts' to the claims of each class member. ... Such a showing is necessary to ensure that application of California law is constitutional." *Mazza*, 666 F.3d at 590 (quoting *Wash. Mut. Bank v. Superior Court*, 24 Cal. 4th 906, 921 (2001)).

Here, the alleged issuer of EMAX tokens (the Company) is a Florida company that "operated out of Florida." Dkt. 242-1 at 6:27; *see* TAC, ¶25. Perone is allegedly a resident of Florida. TAC, ¶17. Plaintiffs failed to allege Perone sold any EMAX tokens to anyone. *See* Dkt. 189 at pp. 21-22. Plaintiffs do not allege that Perone did anything in California. The only connection to California is the fortuitous residence of Rechnitz and two of the Promoter Defendants. *See* TAC, ¶¶19, 22-23, 47. Certification of a nationwide class premised on violations of Corp. C. §§ 25400 and 25500 for alleged market manipulation that occurred inside of California would violate Perone's due process rights because he did not allegedly commit or direct any material acts of market manipulation in California.

## D. The Proposed Nationwide Class Impermissibly Fails to Include Any Privity Limitation.

Finally, the proposed nationwide class of plaintiffs who allegedly purchased unregistered securities also improperly fails to include any privity limitation. The nationwide class is "[a]ll persons in the United States who, between May 14, 2021, and June 27, 2021, purchased unregistered EthereumMax tokens and were subsequently damaged thereby." That class definition would sweep in plaintiffs who purchased EMAX from third-parties and not the named defendants.

To state a claim for sale of an unregistered security, the plaintiff must establish privity with the issuer, i.e., that the plaintiff purchased the EMAX token

DEFENDANTS PERONE & EMAX'S OPP. TO MOT. FOR CLASS CERT.

from the defendant. *See Bowden v. Robinson*, 67 Cal. App. 3d 705, 711–12 (1977); *In re Ripple Labs, Inc. Litig.*, No. 18-CV-06753-PJH, 2024 WL 3074379, at *5 (granting summary judgment against sale of unregistered securities claims in XRP class action based on inability to establish any direct purchases from defendants, and noting that plaintiffs' class definition was limited to purchasers who bought directly from defendants or their agents).

Without any limitation to purchases "from Defendants" in the class definition for securities violations, Plaintiffs improperly sweep in class members who did not purchase their tokens from Defendants, lacked privity with Defendants, and therefore lack any claim under the California Corp. C. §§ 25501-03. *See California Amplifier*, 94 Cal. App. 4th at 109, 113 (2001) (confirming that §§ 25501-03 contain an explicit privity requirement); Corp. C. § 25503 (seller of unregistered security liable to "any person acquiring ***from them*** the security") (emphasis added).

## V.    CONCLUSION

The Court should deny the motion for class certification in full. At minimum, the Court should decline to certify the proposed nationwide class.

Respectfully submitted,

DATED: April 28, 2025                THE FREEDMAN FIRM PC

By:    _____

Michael G. Freedman
Attorneys for Defendants
Giovanni Perone and EMAX
Holdings, LLC

DEFENDANTS PERONE & EMAX'S OPP. TO MOT. FOR CLASS CERT.

Case 2:22-cv-00163-MWF-SK    Document 251    Filed 04/28/25    Page 23 of 23    Page ID
#:3592

# CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Defendant Giovanni Perone and

EMAX Holdings, LLC certifies that this brief contains 5,113 words, which

<u>X</u>      complies with the word limit of L.R. 11-6.1.


DATED: April 28, 2025              By:  _____

                                        Michael G. Freedman

DEFENDANTS PERONE & EMAX'S OPP. TO MOT. FOR CLASS CERT.