Michael V Schafler (Bar No. 212164)
Email: mschafler@cohen-williams.com
Brittany L. Lane (Bar No. 323440)
Email: blane@cohen-williams.com
COHEN WILLIAMS LLP
724 South Spring Street, 9th Floor
Los Angeles, CA 90014
Telephone: (213) 232-5160
Facsimile: (213) 232-5167

Attorneys for Defendant Jona Rechnitz

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE ETHEREUMMAX INVESTOR LITIGATION, | Case No. 2:22-cv-00163-MWF-SK |
| | **DEFENDANT JONA RECHNITZ'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| | Judge:   Michael W. Fitzgerald |
| | Date:    June 16, 2025 |
| | Time:    10:00 a.m. |
| | Place:   First Street Court House, Courtroom 5A |
| | Trial Date: January 27, 2026 |
| | Action Filed: January 7, 2022 |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................... 1

II.   RELEVANT BACKGROUND .................................................................. 2

    A.    Plaintiffs' Allegations.................................................................... 2

    B.    Plaintiffs' Motion ......................................................................... 3

III.  LEGAL STANDARD ............................................................................. 4

IV.   ARGUMENT ........................................................................................... 5

    A.    Plaintiffs Fail to Establish Numerosity (Rule 23(a)(1)).............. 5

    B.    Plaintiffs Fail to Prove Typicality (Rule 23(a)(3))...................... 6

    C.    Plaintiffs' Have Not Proven—and Cannot Prove—that Common Issues Predominate with Respect to Any of Their Proposed Classes (Rule 23(b)(3)) ................................................................. 8

        i.    The Consumer Classes......................................................... 8

            1.    Individualized Issues Predominate ........................... 9

            2.    Plaintiffs Cannot Calculate Damages on a Class-Wide Basis ........................................................................ 10

        ii.   The Nationwide Class ....................................................... 11

            1.    Choice of Law Rules Require that Each Class Member Pursues the Securities Claims Under the Law of Their Home State........................................................ 11

            2.    Regardless of What Law Applies, Predominance Is Not Met Because Individualized Issues Predominate ..................... 16

                a.    Geographic Location ..................................... 16

                b.    Privity .......................................................... 16

    D.    A Class Action Is Not Superior to Individual Adjudication With Respect to Any of Plaintiffs' Claims (Rule 23(b)(3))................... 18

    E.    Plaintiffs Have Not Proven that Any Proposed Class Is Sufficiently Ascertainable .............................................................................. 20

V.    CONCLUSION....................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) .................................................................................. 4

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .................................................................................. 8

*Boyd v. Luna*,
2024 WL 4799127 (C.D. Cal. Oct. 30, 2024) ....................................... 20

*California Amplifier, Inc. v. RLI Ins. Co.*,
94 Cal. App. 4th 102 (2001) ................................................................... 17

*Castillo v. Johnson*,
853 F. App'x 125 (9th Cir. 2021) ........................................................... 10

citing *Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ................................................................ 18

*Colman v. Theranos, Inc.*,
325 F.R.D. 629 (N.D. Cal. 2018) ...................................................... 18, 19

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) .......................................................................... 4, 10, 11

*Davy v. Paragon Coin, Inc.*,
2020 WL 4460446 (N.D. Cal. June 24, 2020) ............................ 12, 13, 15

*Dillon v. Axxsys Int'l, Inc.*,
385 F. Supp. 2d 1307 (M.D. Fla. 2005) ................................................. 13

*Famular v. Whirlpool Corp.*,
2019 WL 1254882 (S.D.N.Y. Mar. 19, 2019) ....................................... 11

*Gen. Tel. Co. of the Nw. v. EEOC*,
446 U.S. 318 (1980) .................................................................................. 6

*Grant v. New York Times Co.*,
329 F.R.D. 27 (S.D.N.Y. 2018) ............................................................... 6

*Hanon v. Dataprods. Corp.*,
976 F.2d 497 (9th Cir. 1992) ................................................................. 6, 7

*Howell v. Ballard*,
801 P.2d 127 (Okla. Civ. App. 1990) ..................................................... 13

*Ikonen v. Hartz Mountain Corp.*,
122 F.R.D. 258 (S.D. Cal. 1988) .............................................................. 7

*In re Am. Principals Holdings, Inc. Sec. Litig.*,
1987 WL 39746 (S.D. Cal. July 9, 1987) .......................................... 13, 16

COHEN **WILLIAMS** LLP

DEFENDANT RECHNITZ'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

*In re NJOY, Inc. Consumer Class Action Litig.*,
   2016 WL 787415 (C.D. Cal. Feb. 2, 2016) ............................................. 11

*Jones v. Allercare, Inc.*,
   203 F.R.D. 290 (N.D. Ohio 2001) ........................................................... 7

*Kassover v. UBS AG*,
   619 F. Supp. 2d 28 (S.D.N.Y. 2008) ..................................................... 13

*Kwikset Corp. v. Super. Ct.*,
   51 Cal. 4th 310 (2011) ............................................................................ 9

*La Mar v. H & B Novelty & Loan Co.*,
   489 F.2d 461 (9th Cir. 1973) .................................................................. 7

*Lucas v. Breg, Inc.*,
   212 F. Supp. 3d 950 (S.D. Cal. 2016) .................................................. 20

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ......................................................*passim*

*Morandi v. Nationstar Mortg., LLC*,
   2021 WL 1398967 (C.D. Cal. Apr. 6, 2021) ........................................... 8

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir. 2022) ............................................................ 5, 10

*Passman v. Peloton Interactive, Inc.*,
   671 F. Supp. 3d 417 (S.D.N.Y. 2023) .................................................. 11

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) .......................................................................... 13, 14

*Pulaski & Middleman, LLC v. Google, Inc.*,
   802 F.3d 979 (9th Cir. 2015) ................................................................ 10

*Renovitch v. Stewardship Concepts, Inc.*,
   654 F. Supp. 353 (N.D. Ill. 1987) ........................................................ 14

*Smith v. State Farm Mut. Auto. Ins. Co.*,
   93 Cal. App. 4th 700 (2001) ................................................................... 9

*Sprague v. Gen. Motors Corp.*,
   133 F.3d 388 (6th Cir. 1998) .................................................................. 7

*Strombere v. Qualcomm Inc.*,
   14 F.4th 1059 (9th Cir. 2021) ............................................................... 15

*Tyson Foods Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) ................................................................................ 8

*Woodard v. Labrada*,
   2021 WL 4499184 (C.D. Cal. Aug. 31, 2021) ................................ 14, 15

COHEN WILLIAMS LLP

*Zinser v. Accufix Rsch. Inst., Inc.,*
    253 F.3d 1180 (9th Cir. 2001) ................................................................12

**Statutes**

Cal. Bus. & Prof. Code § 17200 ................................................................2

Cal. Corp. Code § 25110 ................................................................*passim*

Cal. Corp. Code § 25400 ................................................................2

Cal. Corp. Code § 25500 ................................................................2

Cal. Corp. Code § 25503 ................................................................2, 13, 14

Fla. Stat. § 516.07 ................................................................2

Fla. Stat. § 517.07 ................................................................15, 16

Fla. Stat. § 517.211 ................................................................13, 14

**Rules**

Fed. R. Civ. P. 23 ................................................................*passim*

COHEN WILLIAMS LLP

## I.    INTRODUCTION

After numerous amendments to their complaint and corresponding motions to dismiss, Plaintiffs filed their Corrected Third Amended Complaint ("TAC"), alleging fourteen claims, in total, against ten defendants based on varying theories of liability and vague allegations of damages.  Now, relying on the untested allegations in the TAC rather than probative, admissible evidence, the ten named Plaintiffs in this action seek to certify at least five separate classes.  But class certification is a mechanism used by the Courts and litigants to streamline litigation only when the heavy burden established by Federal Rule of Civil Procedure 23 is met.  That is not the case here.

At its core, this case is about each Plaintiff's highly individualized decision to purchase EthereumMax tokens ("EMAX"), an alleged cryptocurrency.  Plaintiffs' claims cannot be resolved without delving into plaintiff-specific inquiries, including, but not limited to: when each plaintiff purchased EMAX; what information or collection of information each plaintiff was exposed to prior to their purchase(s); what information or collection of information each Plaintiff relied on in making their purchase(s); from whom did each Plaintiff purchase tokens; where geographically was each Plaintiff at the time of their purchase; whether each Plaintiff sold their tokens, and, if so when; and whether each Plaintiff suffered a loss in fact.  Each of those questions must be answered for each member of the putative class.

Ignoring these overwhelming individualized issues, Plaintiffs nevertheless seek to certify a sweeping nationwide class, along with four state-specific classes, comprised of all persons who purchased EMAX between May 14, 2021, and June 27, 2021.  Plaintiffs' motion cannot succeed unless Plaintiffs affirmatively demonstrate that their proposed classes satisfy each of Rule 23's demanding prerequisites.  They have not even come close.

*First*, Plaintiffs fail to prove that each of their proposed classes is sufficiently numerous to warrant certification.  *Second*, Plaintiffs fail to demonstrate that the proposed representatives of each of the putative classes meets Rule 23's typicality

requirement.  *Third*, Plaintiffs fail to prove that issues of fact or law common to each putative class predominate over individual issues.  *Fourth*, Plaintiffs fail to demonstrate that a class action comprised of the five proposed classes is the superior method for fairly and efficiently adjudicating the claims at issue.  *Fifth*, Plaintiffs fail to propose a sufficiently ascertainable class.  Here, consideration of the class certification requirements establishes that an attempted class-wide resolution of Plaintiffs' numerous claims against each Defendant based on various theories of liability and pervasive individualized inquiries would be a recipe for disaster, not a shortcut to the efficient adjudication of Plaintiffs' questionable claims.

For these reasons, and as discussed more fully below, Plaintiffs' motion for class certification should be denied.

## II.    RELEVANT BACKGROUND

### A.    Plaintiffs' Allegations

Plaintiffs originally filed their complaint on January 7, 2022.  After numerous motions to dismiss and three amendments to the complaint, culminating in the TAC, the Court allowed  only five claims to proceed against Rechnitz:

- **Claim 2** alleging violations of the unfair prong of the UCL (Cal. Bus. & Prof. Code § 17200); or, in the alternative,

- **Claim 8** alleging violations of California state securities laws related to the sale of an unqualified security (Cal. Corp. Code §§ 25110 & 25503);

- **Claim 9**  alleging violations of California state securities laws related to manipulation (Cal. Corp. Code §§ 25400 & 25500); and

- **Claim 13** alleging violations of Florida state  related to the sale of unregistered securities (Fla. Stat. § 516.07); or, in the alternative,

- **Claim 14** alleging unjust enrichment under California common law.

(*See* Dkt. 161, 189 at 25-33, Dkt. 190.)  Additional claims based on violations of state consumer laws and state securities laws were allowed to proceed against others.  (*See generally* Dkt. 161, 189.)

DEFENDANT RECHNITZ'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Plaintiffs' consumer claims rely on broad allegations that Defendants, including Rechnitz, induced Plaintiffs and putative class members to purchase EMAX using a series of celebrity promotions by Defendants Kim Kardashian, Paul Pierce, Antonio Brown, and Floyd Mayweather, Jr., while withholding information about EMAX.  In the case of Rechnitz, Plaintiffs allege his conduct was "unfair" because he "dumped" his coins after these alleged promotions.  The specific celebrity promotions include: three Twitter posts by Pierce on May 26, 28, and 30, 2021 (TAC ¶¶69, 75-76, 82); a since-deleted Instagram story posted by Antonio Brown on May 29, 2021 (TAC ¶136); two Instagram posts by Kardashian on May 30 and June 14, 2021 (*id.* ¶¶137, 156); Mayweather wearing an EMAX t-shirt while at a Bitcoin conference on June 4, 2021 (*id.* ¶¶143); and Mayweather wearing an EMAX shirt and boxing shorts on June 6, 2021 (*id.* ¶¶143, 147-48).

Notably, not a single Plaintiff has submitted evidence—even in the form of a self-serving declaration—establishing that they actually viewed or relied on any of these promotions when purchasing EMAX.

Plaintiffs' securities claims allege that Rechnitz sold unqualified or unregistered securities to California and/or Florida residents and engaged in the illicit practice of "parking": "transferring record ownership of securities in order to hide the true identity of the beneficial owner" and create a false appearance of active trading.  (TAC ¶419, 423; Dkt. 189 at 25-26.)  This activity allegedly increased demand and raised the price of EMAX when purchased by Plaintiffs.  (Dkt. 190 at 27.)  Per the TAC, Rechnitz's first sales of EMAX began on May 23, 2021 (TAC ¶95); his last alleged sale occurred "several days" after May 28, 2021, though Plaintiffs allege he continued to receive EMAX until June 18, 2021 (*id.* ¶101-04).

### B.    Plaintiffs' Motion

Plaintiffs seek certification of at least *five* separate classes for litigation of their claims.  Plaintiffs seek a nationwide class comprised of "[a]ll persons in the United States who, between May 14, 2021, and June 27, 2021, purchased unregistered EthereumMax

DEFENDANT RECHNITZ'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

tokens and were subsequently damaged thereby" based solely on violations of California
and Florida state securities laws ("Nationwide Class").  (Mot. at 14.)[1]  In the event the
Court denies Plaintiffs' request to certify a nationwide class for the securities claims,
Plaintiffs seek statewide class certification for California and Florida plaintiffs based on
these same claims.

Plaintiffs also seek four state-wide Consumer Classes comprised of all persons in
each of four states—California, New York, Florida, and New Jersey—who purchased
EthereumMax tokens between May 14, 2021, and June 27, 2021, and were subsequently
damaged thereby (collectively, "Consumer Classes," and individually, "CA Class," "FL
Class," "NY Class," and "NJ Class").  (Mot. at 15.)

Plaintiffs do not pursue class certification for litigation of their market
manipulation or unjust enrichment claims (Claims 9 and 14).

Based on the surviving claims against Rechnitz, only the Nationwide Class and the
CA Class would have claims against Rechnitz.

## III.    LEGAL STANDARD

Rule 23 "imposes stringent requirements for certification that in practice exclude
most claims."  *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013).
Specifically, a class will be certified only if four requirements are met: (1) numerosity;
(2) commonality; (3) typicality; and (4) adequacy of representation.  Fed. R. Civ. P.
23(a).  Additionally, where, as here, Plaintiffs seek class certification under Rule
23(b)(3), Plaintiffs must prove that both "the questions of law or fact common to the class
members predominate over any questions affecting only individual members, and that a
class action is superior to other available methods for fairly and efficiently adjudicating
the controversy."  Fed. R. Civ. P. 23(b)(3).  This "predominance criterion is even more
demanding than Rule 23(a).  *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).

---

[1] This class appears to be limited to Claims 8 and 13 concerning the sale of unregistered
securities.  (Mot. at 14 ("California and Florida laws should be applied to the nationwide
class for these unregistered securities claims.").)

1  Rule 23 requires that Plaintiffs *prove*—not simply plead—by a preponderance of

2  the evidence "that their proposed class satisfies each requirement of Rule 23 …." *Olean*

3  *Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664-65 (9th Cir.

4  2022).

5  **IV.   ARGUMENT**

6  Plaintiffs fail to meet their heavy burden with respect to each proposed class,

7  including their burden to prove that: the proposed classes are sufficiently numerous, Fed.

8  R. Civ. P. 23(a)(1); Plaintiffs' claims are typical of the classes for which they propose to

9  serve as representatives, Fed. R. Civ. P. 23(a)(3); common questions predominate over

10  individual ones, Fed. R. Civ. P. 23(b)(3); and that "a class action is superior to other

11  available methods for fairly and efficiently adjudicating the controversy," Fed. R. Civ. P.

12  23(b)(3).

13  **A.    Plaintiffs Fail to Establish Numerosity (Rule 23(a)(1))**

14  Rule 23(a)(1) requires that Plaintiffs affirmatively establish that each class is so

15  numerous that joinder of all members is impracticable.  Plaintiffs fail to meet this burden.

16  Specifically, Plaintiffs have not submitted any actual evidence demonstrating that

17  any of their five proposed classes are sufficiently numerous.  Instead, Plaintiffs ask the

18  Court to certify a nationwide class and four state-wide classes based on speculation and

19  unsupported logical leaps.  Plaintiffs point to only one piece of evidence to establish

20  numerosity: the observation by Plaintiffs' expert that 100,000 unique Ethereum addresses

21  purportedly transacted in EMAX during the period.  (Mot. at 19-20.)  Plaintiffs

22  summarily conclude from this detail that that each of their five proposed classes "consist

23  of tens of thousands of EthereumMax purchasers," thus satisfying the numerosity

24  requirement.  (*Id.*)

25  But Plaintiffs' expert offers no opinion as to how many unique *purchasers* actually

26  operated the 100,000 unique addresses; in fact, he confirms that a single person could

27  operate an unlimited number of addresses, which is consistent with Plaintiffs' own

28  allegations that Defendants operated numerous digital wallets.  (Dkt. No. 243-8 at 15.)

COHEN WILLIAMS LLP

Plaintiffs' expert also offers no guidance on how to determine how many unique
purchasers made purchases within the geographical territories of the putative classes. *Cf.*
*Grant v. New York Times Co.*, 329 F.R.D. 27, 34 (S.D.N.Y. 2018) (finding numerosity
was not satisfied in part because plaintiffs failed to provide "evidence to demonstrate that
the proposed class members are so geographically dispersed as to make joinder
impracticable").

Additionally, evidence demonstrating that Plaintiffs fit within any of the proposed
classes is glaringly absent. Plaintiffs' declarations submitted in support of the motion
state only that they "purchased EthereumMax tokens." (Dkt. 243-12.) They are silent as
to when Plaintiffs purchased EMAX, where they were at the time of the purchase, and
what digital wallet addresses they used. Were the Court to take the allegations of the
TAC as true despite the fact that Plaintiffs' burden on a motion for class certification
requires an affirmative showing as opposed to unproven allegations, it would still be
insufficient. *See Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 330 (1980) (finding
putative classes of 15 fail to meet the numerosity requirement). The Nationwide Class
would consist of only ten Plaintiffs, the CA Class would consist of three Plaintiffs; the FL
Class would consist of four Plaintiffs; the NY Class would consist of two Plaintiffs; and
the NJ Class would consist of one Plaintiff. (*See* TAC ¶¶6-15 (alleging states where
Plaintiffs reside).) Thus, the numerosity requirement is not satisfied.

Plaintiffs have not put any evidence before this Court that would permit the Court
to find that *any* person falls within the putative class definitions, and they have failed to
demonstrate that there are so many putative class members for each class that joinder is
impracticable. Plaintiffs thus have not met their burden of proving numerosity.

**B.    Plaintiffs Fail to Prove Typicality (Rule 23(a)(3))**

Plaintiffs also cannot demonstrate that their claims are typical of the entire class.
Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the
interest of the named representative aligns with the interests of the class." *Hanon v.
Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "Where the substantive claims

depend on individual permutations, [] the claims of the named plaintiffs who have the same general complaint against the defendant as the class are not typical." *Jones v. Allercare, Inc.*, 203 F.R.D. 290, 299 (N.D. Ohio 2001) (citing *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998); *cf. Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 263 (S.D. Cal. 1988) (finding issues as to owners' emotional distress and proximate causation in putative class action involving pet flea and tick spray prevented determination of typicality). The typicality inquiry may focus on considerations such as "whether other members have the same or similar injury…and whether other class members have been injured by the same course of conduct," *Hanon*, 976 F.2d at 508, or whether the representative's cause of action, "although similar to that of other members of the class, is against a defendant with respect to whom the class members have no cause of action," *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 465 (9th Cir. 1973) (noting representative plaintiff injured by one defendant airline could not represent putative plaintiffs whose injuries resulted from similar behavior of other defendant airlines that had not injured the representative).

Here, the substantive claims depend on individual permutations, including with respect to the injuries suffered and the Defendants against whom each class member may have claims. Plaintiffs have made no showing that each of the class members viewed the same promotions by the same Defendants, or that each class member purchased EMAX based on the same promotions, or that each class member suffered alleged harm as result of purchasing EMAX based on such promotions as opposed to alleged harm from market manipulation by other Defendants. Plaintiffs' declarations submitted with their motion each state that they purchased EMAX, but they do not specify when or which Plaintiffs viewed the celebrity promotions, if any. No named Plaintiff claims to have purchased EMAX before May 28, 2021, or after June 18, 2025, leaving significant portions of the proposed classes unrepresented as to time of purchase. (*See* TAC ¶207.) Thus, not all plaintiffs can be relying on the same conduct or theory of liability for their claims as the representative Plaintiffs.

1    For these reasons, Plaintiffs' have not proven their claims are typical of the class.

2    **C.    Plaintiffs' Have Not Proven—and Cannot Prove—that Common Issues**

3    **Predominate with Respect to Any of Their Proposed Classes (Rule**

4    **23(b)(3))**

5    As the proponents of certification under Rule 23(b)(3), Plaintiffs must prove that

6    "questions of law or fact common to class members predominate over any questions

7    affecting only individual members." Fed. R. Civ. P. 23(b)(3). Though often considered

8    together with commonality, "[t]he predominance test is 'far more demanding' than the

9    commonality test." *Morandi v. Nationstar Mortg., LLC*, 2021 WL 1398967, at *2 (C.D.

10   Cal. Apr. 6, 2021) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997)).

11   Predominance relies on the relationship "between common and individual

12   questions in a case." *Tyson Foods Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). "An

13   individual question is one where members of a proposed class will need to present

14   evidence that varies from member to member, while a common question is one where the

15   same evidence will suffice for each member[.]" *Id.* (quotation marks omitted). To

16   establish that common issues predominate, Plaintiffs must first identify common issues

17   on which their claims depend and then prove such issues are "more prevalent or

18   important than" the issues that will be addressed with individualized proof. *Id.*

19   Plaintiffs fail to meet their burden with respect to each of their classes. This alone

20   is sufficient reason to deny Plaintiffs' motion. But as explained herein, the motion should

21   also be denied because individual issues, in fact, predominate.

22   **i.    The Consumer Classes**

23   Plaintiffs fail both (1) to identify common issues on which their consumer claims

24   depend, and (2) to prove such issues are more prevalent or important than any individual

25   issues. They merely suggest the predominance requirement is satisfied as to the

26   Consumer Classes because "Plaintiffs can establish a uniform expectation of consumers

27   regarding the celebrity marketing scheme." (Mot. at 27.) Not only is Plaintiffs' claim

28   dubious, it is insufficient to meet the heightened predominance threshold.

COHEN **WILLIAMS** LLP

### 1.    Individualized Issues Predominate

First, Plaintiffs do not explain how establishing this supposed "uniform expectation" will resolve issues critical to each of its consumer claims, let alone that this issue is more important or prevalent than individualized issues.  With respect to Claim 2 alone, Plaintiffs have seemingly alleged three separate theories of liability with respect to what unfair business practice each of the defendants engaged in, including that: (1) certain Defendants allegedly released celebrity promotions without vetting the tokens or disclosing compensation for the promotions; (2) certain Defendants used an alleged "pump-and-dump" scheme to profit from the tokens; and (3) certain Defendants allegedly solicited investor funds by posting about the validity and strength of EMAX with no legitimate business plan for sustainable returns.  (Dkt. No. 161 at 68-69.)  It is entirely unclear what role Plaintiffs' "uniform expectation…regarding the celebrity marketing scheme" plays in the class-wide resolution of claims pursued on the second and third theories of liability.

This Court has previously held that the *South Bay* balancing test should apply to determine whether Rechnitz's alleged conduct was "unfair" under the UCL.  (Dkt. No. 161 at 68.)  The *South Bay* balancing test is inherently a highly individualized test that examines the alleged impact on the victim against the motives of the wrongdoer.  *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 718 (2001), *as modified* (Nov. 20, 2001).  Whether Rechnitz's conduct was "unfair" could vary from class member to class member, hinging on his conduct's "impact on [the] alleged victim." *Id.*  This type of inquiry is too individualized for class treatment, and Plaintiffs have not shown otherwise.

Another crucial element of Plaintiffs' consumer claims is actual reliance or causation.  *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322, 326-27 (2011) (noting the UCL requires that the unfair practice *caused* the economic injury and, where misrepresentations are involved, plaintiffs must prove "actual reliance" on the statements).  The Ninth Circuit has held that "common questions of fact do not predominate where an individualized case must be made for each member showing

DEFENDANT RECHNITZ'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

COHEN WILLIAMS LLP

reliance." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012) (vacating class certification where it was unlikely all class members viewed advertising at issue), *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022).

Here, proving reliance will require an individualized analysis as to each putative class member regarding which promotions they actually saw, when they saw those promotions, whether they saw other promotions, and when they purchased EMAX. (*Id.*) These individual issues go to the heart of Plaintiffs' claims, and Plaintiffs have not demonstrated that there are common issues that are more prevalent or important.

For these reasons, Plaintiffs fail to prove the Consumer Classes meet the predominance requirement and their motion should be denied.

### 2.     Plaintiffs Cannot Calculate Damages on a Class-Wide Basis

In order to satisfy the predominance test, Plaintiffs "must develop a method for calculating damages on a class-wide basis that is reasonably administrable and 'consistent with its liability case.'" *Castillo v. Johnson*, 853 F. App'x 125, 126 (9th Cir. 2021) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013)); *see also Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 987-88 (9th Cir. 2015). But Plaintiffs have not proposed a theory of damages that aligns with their legal theory of causation.

Plaintiffs' experts opine that class member loss can be calculated through subtracting either (1) the value of each EMAX token sale or (2) the present value of currently-held tokens from the purchase price of the token. (*Id.* at 27-28.) But this measurement of damages is disconnected from Plaintiffs' theory of liability under the UCL; it makes no effort to isolate the impact of Mr. Rechnitz's allegedly unfair business practices on the price of EMAX tokens. Instead, "the proper measure of damages… is the difference between the market price actually paid by [purchasers of EMAX] and the true market price that reflects the impact of the [allegedly] unlawful, unfair, or fraudulent business practices." *In re NJOY, Inc. Consumer Class Action Litig.*, 2016 WL 787415, at *5 (C.D. Cal. Feb. 2, 2016). Neither expert opinion offers any methodology that

COHEN WILLIAMS LLP

calculates the true market price of EMAX tokens absent the allegedly unfair practices at issue, which likely differed depending on the time of purchase. "Courts routinely reject price premium methodologies under *Comcast* when the proposed methodologies do not attempt to isolate the premium due only to the allegedly misleading marketing statement [or unfair practice]." *Famular v. Whirlpool Corp.*, 2019 WL 1254882, at *11 (S.D.N.Y. Mar. 19, 2019) (collecting cases). Plaintiffs' failure to provide a logical theory of damages connected to their theory of UCL liability warrants denial of the Motion. *See Passman v. Peloton Interactive, Inc.*, 671 F. Supp. 3d 417, 464 (S.D.N.Y. 2023) (denying certification because "[plaintiffs'] model has not isolated the premium [and plaintiffs] have not presented a model that suggests doing so is possible").

### ii.    The Nationwide Class

Plaintiffs purport to certify a nationwide class for its claims that certain Defendants violated California and Florida laws by selling unregistered securities (Claims 8 and 13).[2] But Plaintiffs have not met—and cannot meet—their burden of establishing that common issues predominate as to the Nationwide Class.

### 1.    Choice of Law Rules Require that Each Class Member Pursues the Securities Claims Under the Law of Their Home State

The putative class members from across the nation are not entitled to pursue claims against Rechnitz under the law of whatever jurisdiction they choose. To determine the controlling substantive law that applies to a class member's claim, "[a] federal court sitting in diversity must look to the forum state's choice of law rules" to determine what state's laws applies. *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001). "Understanding which law will apply before making a predominance

_____

[2] This Nationwide Class is an expansion of the class on whose behalf Plaintiffs filed suit. (*See, e.g.*, TAC ¶¶403, 417 (bringing Claims 8 and 9 on behalf of "California Subclass").)

DEFENDANT RECHNITZ'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

COHEN WILLIAMS LLP

1  determination is important" because "differences in state law will compound the

2  disparities among class members." *Id.* at 1189 (cleaned up).

3      "Under California choice of law rules, the class action proponent bears the initial

4  burden to show that California [or Florida] has 'significant contact or significant

5  aggregation of contacts' to the claims of each class member." *Davy v. Paragon Coin,*

6  *Inc.*, 2020 WL 4460446, at *3 (N.D. Cal. June 24, 2020) (citing *Mazza*, 666 F.3d at 589-

7  90). Additionally, Plaintiffs must demonstrate that there is a "a suitable and realistic plan

8  for trial of the class claims." *Zinser*, 253 F.3d at 1189.

9      To determine if Plaintiffs have established that the interests of other states do not

10  outweigh California or Florida's interest in having their laws applied, the Court must

11  apply a three-step governmental interest test assessing: (1) whether there are material

12  differences in the laws of each potentially affected jurisdiction; (2) whether there is a

13  conflict of laws by assessing what interests each jurisdiction has in applying its own law

14  under the circumstances; and (3) if there is a conflict of laws, which state's interest would

15  be more impaired if its policy were subordinated to the policy of the other state. *Id.* at

16  590.

17      Applying these principles to this case, the Court should decline to certify a

18  nationwide class to which California and Florida securities laws would apply.

19      *First*, Plaintiffs have failed to meet their burden of demonstrating that California

20  and Florida have significant contacts to the claims of each putative class member against

21  Rechnitz. Indeed, the ten named Plaintiffs reside in four separate states: California,

22  Florida, New York, and New Jersey. (TAC ¶¶6-15.) While Plaintiffs allege that

23  Rechnitz resides in California and that EMAX Holdings, LLC (which was not

24  incorporated until June 6, 2021—the tail-end of the proposed class periods) is a Florida

25  company (TAC ¶¶19-25), such facts alone fail to establish that the claims of all putative

26  class members spread across the country have the necessary significant contacts with

27  California and/or Florida. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 819-22

28  (1985) (discussing fact that petitioner owned property and conducted business in Kansas

but ultimately finding such contacts insufficient to demonstrate interest in claims of out-of-state class members).  That is especially true where, as here, the underlying conduct primarily occurred over online social medial platforms and digital exchanges.  *Cf. Davy*, 2020 WL 4460446, at *3 (noting nature of online conduct when analyzing whether plaintiffs met their initial burden).

  *Second*, assuming Plaintiffs had met their threshold burden—they have not and that should be the end—the governmental interest test establishes that there are material differences in state securities laws nationwide, and each state has an overriding interest in applying their own laws over California's or Florida's.

  The material differences between the securities laws of California, Florida, and other jurisdictions, extend to issues of standing, elements of the claims, and available remedies.

- *Standing*.  California and Florida both provide a private right of action for such conduct.  Cal. Corp. Code § 25503; Fla. Stat. § 517.211.  New York, on the other hand, provides no private right of action.  *Kassover v. UBS AG*, 619 F. Supp. 2d 28, 36 (S.D.N.Y. 2008) (collecting cases and noting that "no private right of action exists under the Martin Act").

- *Elements*.  For claimants to prevail on claims regarding the unregistered sale of securities in Florida, a claimant can prevail by either showing privity with the seller or that the seller actively and directly induced the investor to buy.  *Dillon v. Axxsys Int'l, Inc.*, 385 F. Supp. 2d 1307, 1311 (M.D. Fla. 2005), *aff'd*, 185 F App'x 823 (11th Cir. 2006); *see also Howell v. Ballard*, 801 P.2d 127, 129 (Okla. Civ. App. 1990) (requiring material participation in a sale in Oklahoma).  But in California, claimants must establish privity with the seller.  *In re Am. Principals Holdings, Inc. Sec. Litig.*, 1987 WL 39746, at *10 (S.D. Cal. July 9, 1987) ("Pursuant to Section 25503 [and 25510] … [s]trict privity is required.").

- *Remedies*.  California and New York both provide for rescission and interest,[3] as well as damages if rescission is impossible.  Cal. Corp. Code § 25503; Fla. Stat. § 517.211(3)(a).  Illinois offers only rescission, not damages as a remedy, and plaintiffs must first provide pre-suit notice. *Renovitch v. Stewardship Concepts, Inc.*, 654 F. Supp. 353, 359 (N.D. Ill. 1987).

Having identified the above differences between California, Florida, and other states' securities laws, the burden falls on Plaintiffs to explain why these differences are not material.  *Woodard v. Labrada*, 2021 WL 4499184, at *39 (C.D. Cal. Aug. 31, 2021). Nonetheless, the materiality of the differences in state law cited above are self-evident. Class members from New York would not be able to file a claim against Rechnitz at all under the laws of their state.  Class members in Illinois would not be able to recover damages.  Class members in Idaho would have to show that they purchased EMAX relying on the celebrity promotions at issue; class members from California would not. Likewise, class members from California *must* establish privity with Rechnitz, while class members from Florida or Oklahoma could also establish liability by proving that Rechnitz personally or materially participated or aided the sale.  These types of fundamental differences are functionally identical to, if not more substantial than, the differences *Mazza* held were material.  *Mazza*, 666 F.3d at 591 (holding differences between state consumer law with respect to scienter and reliance requirements, as well as available remedies, were material under the governmental interest test).

Having identified material differences in state securities laws, the governmental interest test requires that the Court weigh the interests each jurisdiction has in applying its own law under the circumstances.  "California recognizes that with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant

---

[3] Interest rate calculations can and do vary across states, with significant impact. *See Shutts*, 472 U.S. at 818, 105.

COHEN WILLIAMS LLP

interest." *Mazza*, 666 F.3d at 593 (citations omitted).  In this case, the place of the alleged wrong occurred in each state where proposed class members were when they purchased EMAX tokens—which is not necessarily California or Florida.

In addition to having a superior interest as the place of the alleged wrong, the states identified above have distinct interests in applying their own laws to entities or individuals offering securities within the state.  *Cf. Mazza*, 666 F.3d at 593 (recognizing courts might err by "making judgments that impose their view of the law on other States").  For example, New York, which has no private right of action for the sale of unregistered securities, has an interest in consolidating securities suits under a single public agency.  *Cf. Stromberg v. Qualcomm Inc*., 14 F.4th 1059, 1072 (9th Cir. 2021) ("The decision to bar indirect purchaser damages recovery is a policy choice regarding how a state wants antitrust laws to be enforced….").

Lastly, states like California and Florida have no conceivable interest in extending their securities laws to benefit out-of-state investors.  *See Woodard*, 2021 WL 4499184, at *17 ("California has little interest in applying its law to…consumers allegedly victimized by misrepresentations in New York [and vice-versa.]"); *see also* Cal. Corp. Code § 25110 (limiting applicability to securities sales within California); Fla. Stat. § 517.07 (same but within Florida).

"Plaintiffs have not met their burden to show that California's [and Florida's] interests would be most impaired" in the present action.  *Davy*, 2020 WL 4460446, at *4 (declining to certify nationwide class with respect to Cal. Corp. Code § 25110 claim). Conversely, Rechnitz has identified specific material differences in the laws of various states that relate directly to the proposed Nationwide Class's claims.  These differences demonstrate that the states have an interest in choosing their own regulatory framework, and that should be respected here.  *See Mazza*, 666 F.3d at 593.  Thus, the governmental interest test demands that the laws of the different states—not California and/or Florida law—apply to the claims of absent class members.

COHEN WILLIAMS LLP

### 2. Regardless of What Law Applies, Predominance Is Not Met Because Individualized Issues Predominate

Plaintiffs' claims simply fail to satisfy Rule 23(b)(3). Plaintiffs suggest the unregistered securities claims are susceptible to class-wide adjudication for two reasons: (1) whether or not EMAX is a security is susceptible to class-wide adjudication; and (2) the evidence purportedly proving Defendants' alleged scheme to sell unregistered securities would be the same regardless of class size or composition. (Mot. at 18-19.) But Plaintiffs' arguments are untethered to the elements of their claims and ignore that predominance requires more than commonality.

#### a. Geographic Location

As a threshold matter, both the California and Florida laws relevant here limit liability to those persons who sell unregistered securities in their respective states. *See* Cal. Corp. Code § 25110 (limiting liability to those who "offer or sell in this state"); Fla. Stat. § 517.07 (limiting liability to those who "sell or offer to sell a security within this state"). Thus, issues concerning the location of the Defendants at the times they sold EMAX and/or the location of Plaintiffs at the times they purchased EMAX will predominate the litigation of these claims, as each Defendant's liability with respect to any putative plaintiff will hinge on those facts.

For example, Plaintiffs allege that Rechnitz was in Las Vegas for a Mayweather boxing match on June 6, 2021. (TAC ¶¶107, 150.) At least four Plaintiffs also allege they purchased EMAX on June 6. (*Id.* ¶¶332 (Nahlah), 337 (Freeman), 363(Huegerich), 366 (Ciklic).) None of those Plaintiffs reside in California. Thus, California law could not apply to their claims with respect to these June 6 purchases.

#### b. Privity

In order to recover against Rechnitz on the claim alleging a sale of unregistered securities, each individual will need to establish privity with Rechnitz. *Principals Holdings*, 1987 WL 39746, at *10. And while at the motion to dismiss stage it may have been sufficient for Plaintiffs to merely allege privity, Plaintiffs have not made a showing

COHEN WILLIAMS LLP

here, as they are required to do, that privity can be established on a class-wide basis.[4] The privity inquiry involves inherently fact and context-dependent evidence, including as to when a purchase was made, from what wallet address, on what exchange, etc.

To the extent any EMAX purchaser could claim privity with any individual, each putative plaintiff may be in privity with a different individual. Indeed, because Rechnitz is not alleged to have sold EMAX until May 23, 2021—nine days after the proposed class period begins—he could not have been in privity with any class members that purchased before that time. (TAC ¶95.) Thus, what wallets belonged to which defendants, when they participated in transactions, and what the nature of those transactions were (*e.g.*, private swaps or deposits into a liquidity pool), will also permeate the liability analysis for the securities claims.

Plaintiffs' motion makes no attempt to prove that such issues can be determined on a class-wide basis.[5]

_____

[4] Far from it. To succeed on this claim, each class member would need to submit individual transaction data to show when their purchase occurred relative to when a Defendant was selling EMAX. One would then have to weigh on a case-by-case basis whether the timing of the purchase was sufficient to establish privity. That is plainly not the kind of collective determination Rule 23(b) demands.

[5] Though Plaintiffs do not appear to seek to certify a class as to their market manipulation claim (Claim 9), they would fail to meet the predominance prong if they had. To prevail on their claims, class members will have to show that they *actually suffered harm* because of this practice. *See California Amplifier, Inc. v. RLI Ins. Co.,* 94 Cal. App. 4th 102, 110 (2001) (noting that a private right of action under the manipulation sections "extends to everyone whose market trades *are affected* by the manipulation") (emphasis added).

This poses a massive issue for Plaintiffs' efforts to obtain class certification because, by the allegations in Plaintiffs' own complaint, the value of EMAX fluctuated widely during the class period at issue. (TAC ¶182.) Problematically, Plaintiffs' proposed class is defined to include weeks of time where the value of EMAX actually *increased*. (*Id.*) This creates a significant possibility that, as Plaintiffs' proposed class is currently defined, class members may have purchased and/or sold their EMAX tokens before Rechnitz's alleged "parking" diminished the value of the tokens. To determine whether a class member was detrimentally affected by Rechnitz's alleged "parking," the fact finder

COHEN WILLIAMS LLP

### D.    A Class Action Is Not Superior to Individual Adjudication With Respect to Any of Plaintiffs' Claims (Rule 23(b)(3))

Even if Plaintiffs had demonstrated that common issues predominate over individual issues, Plaintiffs have failed to carry their burden of demonstrating that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  "The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case."  *Colman v. Theranos, Inc.,* 325 F.R.D. 629, 650 (N.D. Cal. 2018) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998)).  "Making this determination involves a comparative analysis of alternatives and consideration of the nonexhaustive factors enumerated in Rule 23(b)", including: "(1) 'the class members' interests in individually controlling the prosecution or defense of separate actions'; (2) 'the extent and nature of any litigation concerning the controversy already begun by or against class members'; (3) 'the desirability or undesirability of concentrating the litigation of the claims in the particular forum'; and (4) 'the likely difficulties in managing a class action.'"  *Id.* (citing Fed. R. Civ. P. 23(b)(3)(A)–(D)).

Plaintiffs have failed to make any showing that a class action is the superior method of litigation.  Plaintiffs merely make vague references to the "thousands of potential Class members" and then baselessly conclude that a class action will "reduce litigation costs and promote greater efficiency." (Mot. at 30.)  But Plaintiff has introduced no evidence demonstrating that there are thousands of putative class members in any of its five proposed classes.  There is no basis for Plaintiffs' contention that a class action will reduce litigation.

---

will need to assess individualized proof as to the purchase date, purchase value, sale date, and sale value of each class member's EMAX transactions, and any other market events that may have occurred around the time of the purchase or in the intervening period where Plaintiffs held EMAX.  There is no one way to collectively resolve such a highly-individualized inquiry on a  class-wide basis.

DEFENDANT RECHNITZ'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

COHEN **WILLIAMS** LLP

The numerous individual issues that will need to be addressed with respect to each plaintiff, for each claim, as against each separate defendant, based on each theory of liability, guarantee that there will be significant "difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(D). Specifically, with respect to the Nationwide Class, the management of the various claims considering choice of law rules and the individualized nature of the privity inquiry render class-wide resolution an inferior method of resolving putative plaintiffs' claims. With respect to the Consumer Classes, class member claims would require individualized determinations of various considerations including which plaintiffs were relying on which theory of damages as to which defendants; which plaintiffs were exposed to which promotions; did they rely on those promotions; did their reliance cause their damages; and other individual inquiries. Class action litigation of these issues would be unmanageable and inefficient.[6]

Plaintiffs' own proposed trial plan demonstrates that common issues do not predominate. (*See* Mot. at 16-19 (proposed trial plan).) Plaintiffs claim there will be a single trial on all claims, though there is no proposed class for their unjust enrichment and market manipulation claims. But the "single trial" only purports to resolve liability and will involve, at a minimum, five different classes of plaintiffs. Plaintiffs expect it will be so complex that there will need to be a special verdict form. That verdict form will require findings as to each class member's purchase with respect to each Defendant, including what promotions were viewed, whether there was actual reliance, who they purchased EMAX from, and what caused any losses they incurred. Plaintiffs then propose presenting "aggregate damages" in a phase II damages trial. It is unclear what

---

[6] But even if the Court finds that some of Plaintiffs' claims are amenable to class-wide resolution but most are not, a class action lawsuit would not be the superior method of resolving Plaintiffs' remaining claims, because certifying a narrow class would still require the Court to inefficiently resolve most claims individually. *See Colman*, 325 F.R.D. at 644 (finding reliance-based fraud claims required individual litigation and thus sole remaining securities claim did not meet superiority requirement because trying one claim through a class action did not increase efficiency).

COHEN WILLIAMS LLP

1  this information would include or how this would work in practice.  Plaintiffs then intend

2  to submit an undrafted Claims Administration Protocol whereby Plaintiffs will

3  supposedly need to prove up damages.

4      **E.      Plaintiffs Have Not Proven that Any Proposed Class Is Sufficiently**

5              **Ascertainable**

6          Plaintiffs have not established that the proposed class is ascertainable.  "A class is

7  sufficiently defined and ascertainable if it is administratively feasible for the court to

8  determine whether a particular individual is a member."  *Boyd v. Luna*, 2024 WL

9  4799127, at *2 (C.D. Cal. Oct. 30, 2024).  In contrast, "a class is not ascertainable where

10  a court must investigate the merits of individual claims to determine class membership, or

11  if membership depends upon subjective factors[.]"  *Id.*

12          Plaintiffs propose that self-identification and wallet addresses are sufficient to

13  identify the relevant class members.  (Mot. at 25.)  But given the inability to limit one

14  person to one wallet address, Plaintiffs do not explain how relying on self-identification

15  as a means of identifying the class will prevent individual class members from

16  fraudulently claiming ownership of multiple Ethereum addresses.  *See Lucas v. Breg,*

17  *Inc.*, 212 F. Supp. 3d 950, 973 (S.D. Cal. 2016) (finding class not ascertainable where

18  court was required to conduct fact-finding inquiry into each individual's class

19  membership).

20          Moreover, the class is overbroad.  For example, as defined, the class would include

21  individuals who purchased EMAX "and were subsequently damaged thereby," regardless

22  of whether they saw and relied on a celebrity promotion—indeed, the class period begins

23  before any celebrity promotions occurred—or otherwise would have a claim equivalent

24  to any of the Plaintiffs.  Thus, the Court would have to investigate the merits of the

25  claims to determine whether any given individual was a member of the class.

26          Plaintiffs' failure to define or identify its class in a more precise manner fails to

27  satisfy the ascertainability requirements.

28

# V.    CONCLUSION

For the foregoing reasons, Rechnitz respectfully requests that the Court deny Plaintiffs' Motion for Class Certification.

Dated:  April 28, 2025                          **COHEN WILLIAMS LLP**


                                        By: _____/s/ Brittany L. Lane_____
                                                Michael V Schafler
                                                Brittany L. Lane
                                                *Attorneys for Defendant Jona Rechnitz*

DEFENDANT RECHNITZ'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Jona Rechnitz, certifies that this brief contains 6,761 words, which complies with the word limit of L.R. 11-6.1

DATED: April 28, 2025

_/s/ Brittany L. Lane_
Brittany L. Lane

DEFENDANT RECHNITZ'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION