John T. Jasnoch (CA 281605)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: 619-233-4565
Fax: 619-233-0508
jjasnoch@scott-scott.com

*Lead Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE ETHEREUMMAX INVESTOR LITIGATION<br><br>This Document Relates To:<br><br>     ALL ACTIONS | Lead Case No. 2:22-cv-00163-MWF-SK<br><br>**REPLY IN RESPONSE TO DEFENDANT PIERCE'S OPPOSITION AND IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

1

# **<u>TABLE OF CONTENTS</u>**

2

I.  INTRODUCTION ........................................................................................1

II.  ADDITIONAL RELEVANT FACTS .......................................................2

III. ARGUMENT ...........................................................................................4

   A.  The Predominance and Superiority Requirements of Rule 23(b) Have Been
     Established .......................................................................................4

     1.  Individual Issues Do Not Predominate Over Common Questions ...................4

     2.  Proceeding as a Class Action Is Clearly Superior to Alternative Forms
       of Litigation ...............................................................................8

   B.  The Putative Class Definition is Neither Overbroad Nor "Fail-Safe" ........................10

IV. CONCLUSION........................................................................................13

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Balestra v. Cloud With Me Ltd.*,

5
    2020 WL 4370392 (W.D. Pa. July 2, 2020) ...........................................................10

6

*Davy v. Paragon Coin, Inc.*,
    2020 WL 4460446 (N.D. Cal. June 24, 2020) .......................................................10

7

*Galvan v. KDI Distrib.*,

8
    No. SACV 08-0999, 2011 WL 5116585, at *5 (C.D. Cal. Oct. 25, 2011) .............9

9

*Hillman v. Lexicon Consulting, Inc.*,

10
    No. 16-cv-01186, 2017 WL 10433869 (C.D. Cal. Apr. 27, 2017) .........................8

11

*In re Tobacco II Cases*,

12
    46 Cal. 4th 298 (2009) ...........................................................................................5

13

*Kamar v. RadioShack Corp.*
    375 F. App'x 734, 736 (9th Cir. 2010) ...........................................................6, 11

14

*Makaeff v. Trump Univ., LLC*,

15
    No. 3:10-CV-0940-GPC, 2014 WL 688164 (S.D. Cal. Feb. 21, 2014)..................5

16

*Panacci v. A1 Solar Power, Inc.*
    2015 WL 3750112, at *8–9 (N.D. Cal. June 15, 2015) ........................................13

17

*Ruiz Torres v. Mercer Canyons Inc.*

18
    835 F.3d 1125, 1138 (9th Cir. 2016) ......................................................................6

19

*Waterbury v. A1 Solar Power Inc.*

20
    2016 WL 3166910, at *4–5 (S.D. Cal. June 6, 2016)...........................................13

21

*Williams v. KuCoin*
    2021 WL 5316013, at *15–17 (S.D.N.Y. Oct. 21, 2021) .....................................10

22

*Zakinov v. Ripple Labs, Inc.*

23
    No. 18-CV-06753-PJH, 2023 WL 4303644, at *7-8 (N.D. Cal. June 30, 2023).....6

24

**Other Authorities**

25

Rule 23 ........................................................................................................... *passim*

26

27

28

Plaintiffs Ryan Huegerich, Jonathan Semerjian, Nabil Nahlah, Till Freeman, Marko Ciklic, Tunisia Brignol, Milan Puda, Neil Shah, Michael Buckley, and Christopher DeLuca ("Plaintiffs"), through their undersigned counsel and pursuant to Federal Rules of Civil Procedure 23(a), (b)(3), and (g), respectively submit this reply in further support of Plaintiffs' motion to certify this Action as a class action, appoint Plaintiffs as Class Representatives, and appoint Scott+Scott Attorneys at Law LLP ("Scott+Scott") as Class Counsel.[1]

## I.    INTRODUCTION

Defendant Paul Pierce's opposition rests on a series of half-hearted arguments that misapprehend both the nature of this case and the requirements of Rule 23.  Pierce contends that class treatment is not "superior" and that individual issues will predominate because some EthereumMax ("EMAX") token purchasers did not personally see Defendant Pierce's promotional social media posts.  The evidence demonstrates, however, that all Defendants participated in a highly coordinated promotional scheme to scam Plaintiffs and the class members with EMAX tokens that Defendant Pierce was a prominent participant in the scheme.  Defendants' conduct raises common questions that drive the litigation: e.g., whether Defendants' promotional statements (including Pierce's tweets) were false or misleading by failing to disclose the promoters' compensation, and whether that promotional campaign caused class-wide injury.

All class members were subjected to the effects of the same promotional scheme and share the same legal claims arising from that scheme.  Thus, the answers to the central questions of liability will be the same for everyone in the class, even if individual class members were exposed to the promotions in varying ways or degrees.  Courts have repeatedly rejected the notion that such variations in individual exposure

---

[1]    Plaintiffs incorporate by reference all relevant arguments in the Replies to the Oppositions of Defendants Mayweather, Kardashian, Perone, and Rechnitz, concurrently filed herewith.

or reliance defeat class certification where a common course of conduct is alleged. Defendant Pierce's attempt to stave off class certification by pointing to minor differences among class members therefore fails under established law.

Tellingly, Defendant Pierce does not meaningfully dispute that Plaintiffs satisfy Rule 23(a)'s prerequisites of numerosity, commonality, typicality, and adequacy. Nor could he: unrebutted evidence shows that thousands of investors purchased EMAX tokens during the class period (far too many for joinder), that the proposed class representatives and absent class members suffered the same kind of harm when the EMAX token's price crashed, and that Plaintiffs' claims all arise from the same uniform course of conduct and legal theories. Instead, Defendant Pierce focuses on Rule 23(b)(3), arguing (a) that a class action is not the superior method of adjudication and (b) that individual issues—particularly whether each investor saw and relied on Defendant Pierce's statements—will predominate over common issues.

Pierce also asserts that the class definition is an impermissible "fail-safe" and overbroad because it could include persons who were not injured. As shown below, none of these arguments has merit. Common questions far outweigh any individual differences, and a class action is not only superior, but it is likely the only, feasible method for these aggrieved investors to obtain relief. Moreover, the proposed class definition is neither overbroad nor fail-safe: it uses objective criteria to delineate class membership and appropriately encompasses all persons who were impacted by the alleged scheme. Defendant Pierce's opposition ignores on-point Ninth Circuit authority rejecting the same arguments he raises here.

Accordingly, the Court should grant Plaintiffs' motion and certify the Class and Subclasses.

## II.  ADDITIONAL RELEVANT FACTS

Defendant Paul Pierce played a central role in the EthereumMax promotional campaign, using his celebrity and large online platform to boost investor interest and inflate the price of EMAX tokens. Defendant Pierce made a series of widely viewed

and materially misleading posts on Twitter touting the price performance of EMAX and promoting the token to retail investors.  These posts failed to disclose that Pierce had been compensated for his endorsements and omitted the amount and nature of that compensation.

On May 26, 2021, Pierce promoted EthereumMax in a widely discussed post on the social media platform Twitter during an online dispute between Pierce and the television broadcasting network ESPN.  Prior to the May 26 post, Pierce had worked for ESPN as a popular sports analyst and commentator until he was fired for an unrelated video he had previously posted to his social media account.  After his firing, Pierce publicly slammed ESPN while conversely praising EthereumMax's ability to make money for him at the same time.  ¶76.[2]  The tweet coincided with a surge in EMAX trading volume, which spiked to $44.4 million that day—nearly five times the prior day's volume.  ¶78.

Defendant Pierce also posted a screenshot of a wallet displaying over $2.5 million worth of EMAX tokens, showing an 83.34% one-day increase.  The screenshot was accompanied by celebratory emojis and was later revealed by the SEC to depict another person's wallet that was provided to Pierce solely for promotional purposes.  Despite this, Pierce used the screenshot to give the false impression that he personally held that amount of EMAX and had realized those gains.  ¶¶69-70.

In his SEC settlement, Pierce agreed that he did not disclose that he was compensated by the issuer for the promotions, nor did he disclose the amount and nature of the compensation.  ¶77.  Pierce's promotional activities were not only false and misleading in their content but timed to coincide with other celebrity endorsements and corporate press releases, helping to fuel a sharp rise in trading volume and price.  His role in this coordinated promotional campaign, and the profits

---

[2] Unless otherwise noted, all ¶ and ¶¶ references are to Plaintiffs' Third Amended Class Action Complaint ("TAC"), ECF No. 190, and all terms and acronyms are defined and used as in the TAC.

he earned from offloading tokens during and immediately after his promotions, form a core part of the common questions surrounding this litigation.

## III.  ARGUMENT

### A.  The Predominance and Superiority Requirements of Rule 23(b) Have Been Established

Defendant Pierce raises three main arguments in opposition to class certification: (1) that individualized issues of reliance and causation will predominate because not every class member saw Defendant Pierce's tweets; (2) that a class action is not a superior method because the class allegedly includes people who were not harmed by Defendant Pierce's conduct; and (3) that the class definition's use of "were subsequently damaged thereby" makes it an impermissible fail-safe.  As demonstrated below, each of these arguments can be dispatched with relative ease. The common questions at the heart of this case overwhelm any individual inquiries, and class treatment is plainly the superior (indeed, the only realistic) means of adjudicating these claims.

#### 1.  Individual Issues Do Not Predominate Over Common Questions

Pierce's primary contention – that each investor's reliance on specific statements will require individualized mini-trials – is both factually overstated and legally incorrect.   The common questions in this litigation are numerous and substantial: Were Defendants' promotional statements about EMAX false or misleading, either by affirmative misrepresentation or by omission of material facts (such as the failure to disclose paid promotion)?  Was EMAX offered or sold as an unregistered security in violation of the law?  Did Defendants engage in a scheme to defraud investors?  What economic impact did Defendants' promotional activities have on the market price of EMAX tokens?  These questions are common to all class members, as their answers do not vary from one investor to the next.  By contrast, the individual differences that Defendant Pierce highlights – chiefly, whether a particular investor personally saw Pierce's own tweets – do not undermine the cohesion of the

class. All class members were affected by the overall rise and fall of EMAX's price that resulted from the promotional campaign, and each class member's claim arises from the same alleged course of conduct by the defendants. Thus, the core liability and damages issues will be resolved with common evidence (e.g. the content and dissemination of the promotions, expert analysis of price inflation, and general causation proof), and not on individualized evidence.

Importantly, Defendant Pierce's argument ignores well-settled law that individualized determinations as to reliance and causation are not required on a class-wide basis so long as certain predicates are met. In California consumer protection actions, for example, a presumption of reliance arises when a defendant has engaged in a material, widespread advertising campaign likely to reach the entire class of purchasers. See *Makaeff v. Trump Univ., LLC*, No. 3:10-CV-0940-GPC, 2014 WL 688164, at *12 (S.D. Cal. Feb. 21, 2014) (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009)) (holding that "individualized determinations as to reliance and causation are not required as long as certain facts exist to trigger the inferences and presumptions" of class-wide reliance). Here, the alleged promotional scheme was pervasive: EMAX was touted by celebrity defendants with massive followings (Defendant Pierce, a famous athlete and ESPN personality), generating a frenzy of attention in mainstream and social media. It is therefore more than reasonable to infer that virtually all EMAX investors were exposed in some way to the hype surrounding the token. At a minimum, all class members are entitled to invoke a class-wide inference that the materially misleading promotions had an impact on their decision to purchase EMAX or on the price they paid. Moreover, for the claims grounded in securities law, courts recognize that reliance can be established class-wide by showing that those misstatements distorted its market price, thereby injuring everyone who purchased at that price. In short, no class member will need to prove individual, eyeball-to-Twitter reliance on Defendant Pierce's posts; rather, Plaintiffs will prove

through common, class-wide evidence that Defendants' promotional conduct was uniformly deceptive and led to a common course of harm.

Notably, the Ninth Circuit has squarely rejected the argument that class certification is defeated merely because some class members did not see or rely on the defendant's statements. In *Ruiz Torres v. Mercer Canyons Inc.*, for example, the defendant objected that a proposed class included both injured and uninjured persons, but the Ninth Circuit held that this was not an impediment to certification. The Court affirmed class certification and "rejected the argument that a class cannot be certified if it contains both injured and non-injured parties." 835 F.3d 1125, 1138 (9th Cir. 2016). Likewise, in *Kamar v. RadioShack Corp.* – a case Pierce himself relies on – the Ninth Circuit explained that a class definition should be viewed "as a way of narrowing the class … without actually distinguishing between those who may and those who may not ultimately turn out to be entitled to relief."  375 F. App'x 734, 736 (9th Cir. 2010).  In other words, the mere possibility that some class members might not prevail on the merits of their claims (for example, if a particular investor was not influenced by a particular statement) is not a reason to deny certification.  All class members here share the overarching claim that the defendants' conduct unlawfully inflated the value of EMAX tokens and induced purchases at artificial prices. Whether that claim succeeds or fails will be answered through common proof; any slight differences in individual circumstances can be managed within the class framework, rather than obliterating the efficiency of a class proceeding.

Defendant Pierce's Tenth Circuit and out-of-circuit cases demanding individualized reliance inquiries are inapposite.  Those cases involved situations where each class member's injury hinged on unique representations or interactions (or where no class-wide presumption of reliance was available) – unlike here, where the injury was caused by a publicly-disseminated, uniform marketing push for the same product.  Indeed, the court in *Zakinov v. Ripple Labs, Inc.* certified a class of crypto-asset purchasers in a strikingly similar context, rejecting the argument that

individual issues of reliance or knowledge predominated. *See* No. 18-CV-06753-PJH, 2023 WL 4303644, at \*7-8 (N.D. Cal. June 30, 2023) (finding common issues predominated in class action by token investors despite variations in individuals' exposure to representations). The *Ripple* court reasoned that such individual variations were not sufficient to overcome the many common questions, and it found class treatment appropriate. The same is true here.

Furthermore, to the extent that any individualized inquiries do remain – for example, determining the precise amount of damages each class member incurred, or verifying which specific promotional statements each class member recalls – those issues can be handled in a manageable, phase-two proceeding after the common issues are decided. Courts have wide discretion to structure class action trials to promote efficiency and fairness. Here, Plaintiffs have proposed a trial plan that bifurcates the proceedings: in Phase I, the jury will resolve the core *class-wide* issues (such as whether Defendants violated the law and caused the token's price to be inflated); in Phase II, a claims administrator or Special Master can assist the Court in processing individual class members' proof of purchases and calculating their respective damages. Class members will submit short claim forms and transaction records, which can be cross-checked against the blockchain data to determine eligibility and loss amounts. This phased approach – a common tool in class actions – ensures that no individualized questions will overwhelm the common issues at trial. Rather than holding "individualized mini-trials" for thousands of investors (as Defendant Pierce erroneously suggests), the Court can answer the key liability questions once for all class members, and then handle the relatively ministerial task of allocating damages in an administrative process. This is precisely the kind of sensible case management that Rule 23 is designed to facilitate.

In sum, common questions not only exist – they predominate. Defendant Pierce's liability to the class will rise or fall on issues that are the same for everyone: what he did or failed to do, what a reasonable investor would have understood from

the EMAX promotions, whether EMAX was a security or otherwise covered by the laws invoked, and how the market reacted to Defendants' conduct.  These issues do not vary from investor to investor.  By contrast, the questions that might vary (such as how many promotional posts each person saw) are relatively peripheral and can be managed through class administration or the application of legal presumptions.  The predominance requirement of Rule 23(b)(3) is therefore satisfied.

    2.      **Proceeding as a Class Action Is Clearly Superior to Alternative Forms of Litigation**

Defendant Class treatment is not only manageable; it is far and away the superior method of adjudicating this controversy. Rule 23(b)(3) directs the Court to consider whether a class action is the best way to fairly and efficiently resolve the dispute, compared to other methods like individual suits. Here, there is no serious doubt on that score.  The alternative to a class action would be hundreds or thousands of individual investors each attempting to litigate complex securities and consumer-fraud claims against a phalanx of well-funded defendants – an approach that would be wasteful, burdensome, and, in reality, *impossible*.  Given the relatively modest dollar amounts of most class members' losses, few (if any) investors would have the incentive or resources to pursue individual actions on their own. As one court observed in a comparable context, "it is unlikely that these claims would be litigated at all" if class certification were denied, which is a strong indication that a class action is the superior method. *Hillman v. Lexicon Consulting, Inc.*, No. 16-cv-01186, 2017 WL 10433869, at *5 (C.D. Cal. Apr. 27, 2017) (finding Rule 23(b)(3) superiority satisfied where individual low-value claims would not be brought or effectively adjudicated absent class treatment). A class action aggregates the claims so that common issues can be decided one time, and it allows victims of the scheme who would otherwise go uncompensated to obtain relief through a collective proceeding. This is exactly the scenario for which Rule 23(b)(3) was designed.

Defendant Pierce offers no viable alternative that would be superior.  Pierce implies that persons who did not directly rely on his statements have no valid claims and thus shouldn't be part of any case at all – but that is a merits argument, not a practical alternative method of adjudication.  Similarly, to the extent he suggests that regulators like the SEC provide a better avenue, the record disagrees: the SEC's enforcement action against Pierce (resulting in a settlement for his failure to disclose payments for promoting EMAX) has not yielded a penny for defrauded investors. There is no government restitution program or other mechanism that will make the class whole.  In contrast, a certified class action in this Court can deliver actual compensation to those who were harmed by the scheme, and can do so in one efficient proceeding rather than clogging the courts with numerous individual suits or leaving the vast majority of victims without any remedy.

In evaluating superiority, courts also consider manageability – whether the class action can be tried in a fair and efficient manner. As discussed, this class is eminently manageable: class members and transactions are identifiable through objective data, California and other state laws can be applied to defined subclasses of investors from those states (importantly, Pierce does not contest the subclass structure in the Motion), and any minor individualized issues can be addressed via the claims process. The Ninth Circuit does not require absolute perfection in identifying class members at the certification stage; ascertainability is not a standalone requirement under Rule 23. What matters is that there is an administratively feasible way to determine class membership as the case proceeds, and Plaintiffs here have demonstrated exactly that (through blockchain records and claims forms).  The absence of a pre-existing list of all investors is not a reason to deny certification; courts routinely certify classes even if some inquiry is needed to identify class members.  *See, e.g.*, *Galvan v. KDI Distrib.*, No. SACV 08-0999 JVS(ANx), 2011 WL 5116585, at *5 (C.D. Cal. Oct. 25, 2011) (holding that a "lack of total ascertainability" will not alone undermine class certification).

Here, given the availability of blockchain data, the class is actually more ascertainable than many other consumer classes where records may be scant – every single EMAX purchase is recorded indelibly on the blockchain ledger. In short, there are no manageability problems that outweigh the tremendous benefits of resolving these claims on a class-wide basis. On the contrary, concentrating the litigation in one class proceeding is the most manageable and just approach.

Courts across jurisdictions have found class actions to be the superior method of adjudicating similar claims involving crypto-assets or other dispersed investments. For example, in *Williams v. KuCoin*, a federal court noted in a digital asset case that a class action was the superior method for resolving investors' claims arising out of a token sale. See 2021 WL 5316013, at *15–17 (S.D.N.Y. Oct. 21, 2021) (finding class treatment superior in cryptocurrency investor class action). Other courts have reached the same conclusion in comparable cases. *See, e.g.*, *Balestra v. Cloud With Me Ltd.*, 2020 WL 4370392, at *4 (W.D. Pa. July 2, 2020) (class action superior for claims involving crypto-token promotional scheme); *Davy v. Paragon Coin, Inc.*, 2020 WL 4460446, at *7 (N.D. Cal. June 24, 2020) (same). In this case, as in those, a class action will achieve economies of scale, conserve judicial resources, and ensure uniform adjudication of common issues – outcomes that individual actions could never hope to achieve. Rule 23(b)(3) is therefore satisfied because common issues predominate and a class action is clearly the superior method of resolving Plaintiffs' claims.

**B.    The Putative Class Definition is Neither Overbroad Nor "Fail-Safe"**

Defendant Pierce's final argument is to attack the class definition itself, labeling it "overbroad" and "fail-safe." Neither label is warranted. The class is defined as all persons in the relevant jurisdictions who purchased EMAX tokens during the class period and were subsequently damaged thereby (i.e., were harmed by the decline in the token's value). This definition uses objective criteria – purchase of a specific asset in a defined time frame – to determine who is in the class. It is not

contingent on any finding of liability or wrongdoing; it simply requires that the person suffered a loss related to their EMAX purchase. Courts have repeatedly upheld class definitions that, like this one, include an element of harm or damage as a way of excluding individuals who have no stake in the outcome. Such a definition does not make the class "fail-safe." A fail-safe class is one that is defined in terms of the defendant's liability, such that a class member either wins or, if the claim fails, is not bound by the judgment. The *Olean* case cited by Pierce (Opp. at 16-17) gives a classic example: a class defined as all persons who were "injured by" the defendant's illegal conduct. By stark contrast, Plaintiffs' class is defined by purchase and economic loss – criteria that do not assume or require a legal violation, only that the investor suffered trading losses. If Plaintiffs ultimately do not prove any unlawful conduct by Defendant Pierce, then all class members will lose on the merits and be bound by that judgment (despite being "damaged" in the colloquial sense by their investment's decline). There is no danger that an adverse judgment will let class members escape its binding effect; the class is not defined to include only those who win. Thus, the "fail-safe" concern is misplaced.

Moreover, even if the Court were to find some technical issue with the wording of the class definition, the remedy would be refinement not a wholesale denial of certification. Rule 23 provides the Court authority to amend class definitions or create subclasses as needed. For instance, if the inclusion of class members who "were subsequently damaged" is a concern, the Court could modify the class definition to all persons who purchased EMAX tokens in the period (regardless of profit or loss) and then address at a later stage which of those purchasers have provable damages. The Ninth Circuit has expressly approved this flexible approach, emphasizing that class definitions can be drawn broadly to encompass all those who may have been harmed, without prejudging the merits for each individual. *See Kamar*, 375 F. App'x at 736 (class definition including persons who may not ultimately prevail should be seen "as a way of narrowing the class … without … distinguishing between"

meritorious and non-meritorious claims at the certification stage).  In short, any theoretical overbreadth in the class can be cured by later case management; it is not a reason to refuse certification now.

Nor is the class improperly overbroad in the sense of including people with no connection to Defendant Pierce or no plausible injury from his conduct.  Defendant Pierce argues the class includes individuals who "were not harmed by" his actions, pointing out that a few named Plaintiffs did not see his Twitter posts and that some investors might have profited by selling before the crash.  These are red herrings. First, any investor who bought during the class period and sold at a profit (thus not suffering "damage") would, by the class definition, not be included as a class member in the first place (because they weren't "damaged thereby").  Conversely, any investor who did suffer a loss has, by definition, a colorable injury caused by the scheme – even if the investor did not see Defendant Pierce's individual posts, the overall promotional campaign inflated the token's price and thereby caused their loss.

While Defendant Pierce's liability may ultimately depend on legal principles of causation (for example, whether his role in the scheme was a substantial factor in plaintiffs' losses), those causation questions are common across the class and can be litigated on the merits. The presence of some class members who received the promotional message indirectly or who were influenced by the market effects rather than direct reliance does not render the class overly broad.  All class members assert the same basic injury (overpayment for a token whose price was artificially inflated by Defendants' collective promotion), and each class member's claim will rise or fall on the same central issues (e.g., whether the promotions were deceptive and inflated the price). This is an appropriate class. As the Ninth Circuit has noted, the possibility that a class "contains some individuals who have suffered no harm" does not bar certification outright; rather, the district court should consider mechanisms to handle that issue if it arises. Here, no such mechanism is even needed – the class is already

tailored to those who were harmed, and any remaining variations in degree of harm or exposure can be dealt with in the damages phase.

Finally, numerous courts have rejected nearly identical "fail-safe" and overbreadth arguments in class actions, confirming that Plaintiffs' class definition is sound. For example, in *Waterbury v. A1 Solar Power Inc.*, the court upheld a class definition against a fail-safe challenge, explaining that the class was defined with objective criteria and "Plaintiffs do not use fail-safe class definitions. The Court can determine membership in Plaintiffs' putative classes using objective criteria." 2016 WL 3166910, at *4–5 (S.D. Cal. June 6, 2016). Similarly, in *Panacci v. A1 Solar Power, Inc.*, the court found the proposed class "not fail-safe" even though it was limited to individuals who received unauthorized calls, because membership could be ascertained without deciding the ultimate liability question. 2015 WL 3750112, at *8–9 (N.D. Cal. June 15, 2015). The lesson from these cases is clear: class definitions that include an injury or damage element, or that require some self-identification of class members, are permissible so long as they rely on objective events (a purchase, a loss) rather than a legal determination of wrongdoing. Plaintiffs' class here meets that test. And as noted, *even if* the class did include a handful of uninjured persons, the Court could refine the definition or create a mechanism to exclude them – it is not a basis to refuse certification. The proposed class and subclasses are neither overbroad nor fail-safe; they are defined in a principled manner that aligns with the alleged wrongdoing and harm.

Accordingly, Defendant Pierce's attacks on the class definition provide no reason to deny certification.

## IV.   CONCLUSION

For the foregoing reasons and those set forth in the opening Motion, Plaintiffs respectfully request that the Court: (a) certify the Class and Subclasses; (b) appoint

1    Plaintiffs to serve as Class Representatives for the Class and Subclasses; and (c)

2    appoint Scott+Scott to serve as Class Counsel.[3]

3

4    Dated: May 27, 2025                      Respectfully submitted,

5

6                                             *s/ John T. Jasnoch*
                                             John T. Jasnoch (CA 281605)
7                                            **SCOTT+SCOTT ATTORNEYS**
                                             **AT LAW LLP**
8                                            600 W. Broadway, Suite 3300
9                                            San Diego, CA 92101
                                             Telephone: 619-233-4565
10                                           Facsimile:  619-233-0508
11                                           jjasnoch@scott-scott.com

12                                           *Lead Counsel for Plaintiffs*
13                                           *and the Proposed Class*

14

15

16

17

18

19

20

21

22

23

24

25

26

27   _____

28   [3] To the extent that the Court rules that the proposed Class or Subclasses do not
     fully satisfy the requirements of Rule 23(a) or (b), Plaintiffs respectfully request that
     the Court deny the Motion without prejudice to re-filing.

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Plaintiffs certifies that this brief contains 4,280 words, which complies with the word limit of L.R. 11-6.1.

Dated:        May 27, 2025                    */s/ John T. Jasnoch*
                                                   John T. Jasnoch

**CERTIFICATE OF SERVICE**

I, John T. Jasnoch, hereby certify that on May 27, 2025, I caused the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

Executed on May 27, 2025, at San Diego, California.

*/s/ John T. Jasnoch*
John T. Jasnoch