John T. Jasnoch (CA 281605)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: 619-233-4565
Fax: 619-233-0508
jjasnoch@scott-scott.com

*Lead Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE ETHEREUMMAX INVESTOR LITIGATION<br><br>This Document Relates To:<br><br>    ALL ACTIONS | Lead Case No. 2:22-cv-00163-MWF-SK<br><br>**REPLY IN RESPONSE TO DEFENDANT KARDASHIAN'S OPPOSITION AND IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................................1

II.  ADDITIONAL RELEVANT FACTS ....................................................................2

III. ARGUMENT .........................................................................................................5

    A.   The Requirements of Rule 23(a) Have Been Established............................6

        1.   Numerosity........................................................................................6

        2.   Commonality......................................................................................8

        3.   Typicality .........................................................................................10

        4.   Adequacy .........................................................................................11

    B.   The Nationwide and State-Specific Class Members Are Ascertainable....................12

    C.   Plaintiffs Satisfy the Requirements of Rule 23(b) ....................................12

        1.   Individual Issues Do Not Predominate .............................................12

        2.   The Proposed Damages Model Is Sufficient ....................................16

        3.   Class Action Litigation Is Obviously Superior to Any Form of Litigation (or Lack Thereof) Suggested by Defendant Kardashian................17

IV.  CONCLUSION.....................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Balestra v. Cloud With Me Ltd.*,
  No. 2:18-CV-00804, 2020 WL 4370392 (W.D. Pa. July 2, 2020) ........................................18

*Cadena v. Am. Honda Motor Co.*,
  No. CV 18-4007-MWF, 2024 WL 4005097 (C.D. Cal. July 2, 2024) (Fitzgerald,
  J.) ...........................................................................................................................................18

*Davy v. Paragon Coin, Inc.*,
  No. 18-CV-00671, 2020 WL 4460446 (N.D. Cal. June 24, 2020) .......................................18

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ...........................................................................................9, 10

*Gunaratna v. Dennis Gross Cosmetology LLC*,
  No. CV202311MWFGJSX, 2023 WL 5505052 (C.D. Cal. Apr. 4, 2023)
  (Fitzgerald, J.) .........................................................................................................................9

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .........................................................................................9, 10

*Immigrant Assistance Project of L.A. Cnty. Fed'n of Lab. (AFL-CIO) v. I.N.S.*,
  306 F.3d 842 (9th Cir. 2002) ..................................................................................................8

*In re Am. Continental Corp./Lincoln Sav. and Loan Sec. Litig.*,
  140 F.R.D. 425 (D.Ariz.1992) ..............................................................................................14

*In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*,
  275 F.R.D. 382 (D. Mass. 2011) .............................................................................................7

*In re First Alliance Mortg. Co.*,
  471 F.3d 977 (9th Cir. 2006) ................................................................................................14

*In re Korean Ramen Antitrust Litig.*,
  2017 WL 235052 ....................................................................................................................6

*In re Lidoderm Antitrust Litig.*,
  No. 14-MD-02521-WHO, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017) ...............................6

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ..........................................................................................................13

*Jimenez v. Allstate Ins. Co.*,
  No. LA CV10-08486 JAK, 2012 WL 1366052 (C.D. Cal. Apr. 18, 2012), aff'd,
  765 F.3d 1161 (9th Cir. 2014) ..............................................................................................17

*Juan Canizales Conde v. City Compassionate Caregivers, Inc.*,
   No. CV205302MWFMRWX, 2020 WL 9259837 (C.D. Cal. Nov. 10, 2020)
   (Fitzgerald, J.) ........................................................................................18

*Kumar v. Salov North America Corp.*,
   No. 14-CV-2411, 2016 WL 3844334 (N.D. Cal. Jul. 15, 2016) ....................13, 14

*Makaeff v. Trump Univ., LLC*,
   No. 3:10-CV-0940-GPC-WVG, 2014 WL 688164 (S.D. Cal. Feb. 21, 2014).....13,
   14, 15

*Martinez v. Blu Prods., Inc.*,
   No. CV 17-2507-GW(AGRx), 2019 WL 12838199 (C.D. Cal. Oct. 3, 2019)......12

*Mazza v. Am. Honda Motor Co., Inc.*,
   666 F.3d 581 (9th Cir.2012) .........................................................................13, 14

*McCrary v. Elations Co.*,
   LLC, No. EDCV 13-00242 JGB OP, 2014 WL 1779243 (C.D. Cal. Jan. 13, 2014)
   ........................................................................................................................13

*Meyer v. Portfolio Recovery Assocs., LLC*,
   707 F.3d 1036 (9th Cir. 2012) ..........................................................................9

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2010) ........................................................................10

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ..........................................................................10

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011)....................................................................................10

*Williams v. KuCoin*,
   No. 20CV2806, 2021 WL 5316013 (S.D.N.Y. Oct. 21, 2021).............................18

*Wolin v. Jaguar Land Rover N. Am.*,
   617 F.3d 1168 (9th Cir. 2010) ........................................................................18

**Other Authorities**

Rule 23 .......................................................................................................2, 7

Rule 23(a).......................................................................................... *passim*

Rule 23(b) ....................................................................................12, 13, 15, 16

Plaintiffs Ryan Huegerich, Jonathan Semerjian, Nabil Nahlah, Till Freeman, Marko Ciklic, Tunisia Brignol, Milan Puda, Neil Shah, Michael Buckley, and Christopher DeLuca ("Plaintiffs"), through their undersigned counsel and pursuant to Federal Rules of Civil Procedure 23(a), (b)(3), and (g), respectively submit this reply in further support of Plaintiffs' motion to certify this Action as a class action, appoint Plaintiffs as Class Representatives, and appoint Scott+Scott Attorneys at Law LLP ("Scott+Scott") as Class Counsel.[1]

# I.    INTRODUCTION

Defendant Kim Kardashian's attempt to avoid Class-wide liability is grounded in mischaracterizations of both the facts and the governing law.  Kardashian's massive Instagram following and her role in publicly endorsing EthereumMax as a celebrity spokesperson made her a uniquely powerful influencer for the promotion of EMAX tokens.  Her social media post reached millions of followers and delivered a singular message of legitimacy and opportunity—without disclosing that she was paid to post it.  Plaintiffs have presented strong evidence, including expert analysis and blockchain transaction data, demonstrating that this coordinated campaign triggered widespread investor activity and artificial inflation of EMAX token prices.  As a result, Plaintiffs and Class members alike suffered the same economic injury from the same misleading conduct.

Class certification is warranted because the legal and factual questions at the heart of this case are common to all purchasers exposed to the EthereumMax campaign. Defendant Kardashian offers no persuasive reason as to why the claims here cannot be adjudicated collectively.  The evidence—including transactional data, damages methodology, and the uniformity of the promotional message—shows that individual issues do not predominate and that damages are capable of Class-wide resolution.

---

[1]    Plaintiffs incorporate by reference all relevant arguments in the Replies to the Oppositions of Defendants Mayweather, Pierce, Rechnitz, and Perone, concurrently filed herewith.

Class treatment is not only appropriate under Rule 23 but necessary to ensure that retail investors, who individually may lack the means to pursue redress, can seek relief for the widespread deception carried out through Kardashian's massive digital platform. For these reasons, and those set forth below, the Court should grant Plaintiffs' Motion.

## II.    ADDITIONAL RELEVANT FACTS

████████████████████████████████████████████████████████████ (*See* Howell Deposition Transcript ("Howell Depo") attached hereto as Ex. H to the Declaration of John T. Jasnoch in support of the Plaintiffs' Class Certification Reply Briefs ("Jasnoch Decl."), 52:19-53:02) █████████████████████████ (*Id.*, 53:4-7). To this point, all the named plaintiffs have been able to identify their own wallet addresses used to purchase EMAX Tokens. (*See* EMXPLS_000001 attached hereto as Ex. F to the Jasnoch Decl., listing Plaintiffs' wallet addresses) and (EXMPLS_000002, attached hereto as Ex. G to the Jasnoch Decl., listing Plaintiffs' wallet addresses). Dr. Howell further opined ███████████████████████ ███████████████████████████████████ *See* Howell Depo, 54:11-15. Dr. Howell also ███████████████████████ ████████████████████ Howell Depo, 61:19-62:8. █████████ ████████████████████████████████████████ ████████████ Howell Depo, 56:9-15. ███████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ███████████████████████ *See* GP-SEC-030508 (attached as Exhibit 5 to the Declaration of John T. Jasnoch in Support of Motion for Class Certification, Feb.



11, 2025, ECF No. 241.)

; GP-SEC-030490

GP-SEC-30512-13

; GP-SEC-030514

; GP-SEC-030493

GP-SEC-030515.

Defendant Kardashian

(JR000405, attached hereto as Ex. C to the Jasnoch Decl.,).   In
particular,

*Id*.  at JR000406.

*Id.*



1 

2  *Id.*

3 

4  *See* JR000407, attached hereto as Ex. D to the Jasnoch

5  Decl.

6 

7  *Id.*

8 

9  *Id.*

10  *Id.*

11 

12  *Id.*

13 

14  *Id.*

15  *Id.*

16 

17  *Id.* at

18  409.

19 

20 

21 

22 

23  *See* JR000462.

24  *Id.* at JR000463.

25 

26 

27 

28  ² This appears to be reference to Defendant Mayweather wearing the Ethereummax branding on his trunks during the Mayweather-Paul exhibition boxing match held two days earlier on June 4, 2021.



*Id*. at 465 (emphasis added).

Dr. Howell confirmed ███████████████████████ Howell Depo, 35:13-36:2. ██████████████████████████████ (*see* GP-SEC-030503), ██████████████████████████ ██████████████████████████ GP-SEC-030511.

## III.  ARGUMENT

In her opposition, Defendant Kardashian argues that Plaintiffs have not established any of the elements under Rule 23(a) (numerosity, commonality, typicality, and adequacy) or (b) (predominance and superiority). Relatedly, Defendant

disputes that the proposed class and subclasses are ascertainable. Finally, Defendant raises challenges regarding purported "defects" with the Motion and with the proposed damages model as well. For the reasons set forth below, this Court should reject Defendant Kardashian's attempt to avoid collectively facing the group of purchasers that were injured by her misleading promotions and grant the Motion in its entirety.

## A.    The Requirements of Rule 23(a) Have Been Established

To begin, Defendant Kardashian argues that Plaintiffs have not shown that the numerosity, commonality, typicality, and adequacy factors under Rule 23(a) warrant class certification. This wholesale denial is unfounded.

### 1.    Numerosity

Defendant Kardashian first claims that Plaintiffs have failed to establish that the proposed class is sufficiently numerous to warrant treatment as a class action under Rule 23(a)(1). *See* Kardashian Opp. at 11. Specifically, Defendant contends that the number of potential class members cannot be adequately identified either generally or by specific geographical location. *See id.* But this contention overlooks the ability by potential class members to self identify. *See, e.g., In re Korean Ramen Antitrust Litig.*, 2017 WL 235052, at *21; *Kumar v. Salov North America Corp.*, No. 14-CV-2411, 2016 WL 3844334, at *6 (N.D. Cal. Jul. 15, 2016); *In re Lidoderm Antitrust Litig.*, No. 14-MD-02521-WHO, 2017 WL 679367, at *25 (N.D. Cal. Feb. 21, 2017) (approving of self-identification as an adequate method to ascertain potential class members).

In further support that the putative class is sufficiently numerous, Plaintiffs' expert, Dr. Clark identified approximately 100,000 transactions that were made by unique Ethereum addresses. *See* Clark Declaration at 14. To be sure, an individual can own/transact with multiple wallets for the same cryptocurrency. However, it is reasonable to infer that of the 100,000 identified unique wallets transacting in EMAX tokens, at least 40 individuals owned those wallets. Defendants want the Court to

determine otherwise, namely that less than 40 individuals were responsible for all of the EMAX token trading, and that each of those less than 40 individuals on average owned/controlled around 2,500 unique wallets. This is a bridge too far. In fact, it flies in the face of the actual evidence of the EMAX token transaction history submitted by the nine class representatives. All but one of the class representatives used a single wallet address for their respective EMAX token transactions. *See* EMXPLS_000001, EMXPLS_000002. The lone outlier used just two wallets. *See* EMXPLS_000002. Given this evidence, it is reasonable to infer that more than 40 individuals were responsible for the 100,000 unique wallet addresses, thereby satisfying the numerosity requirement under Rule 23. *See In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 275 F.R.D. 382, 388 (D. Mass. 2011) (noting that "[a]lthough the number of class members is still unknown, because there are millions of shares outstanding and were millions of transactions during the class period, the Court can reasonably infer that there are at least hundreds, if not thousands of class members").

More granularly, in response to specific criticisms from Defendants claiming that the proffered methodology for class member identification is insufficiently described, Dr. Clark performed an initial analysis of the identification methods previously outlined and the relevant Ethereum blockchain data. By doing so, Dr. Clark identified the unique Ethereum addresses that conducted purchases of EMAX tokens during the relevant period. *See* Clark Reply at 2-3. With respect to the general identification of Class members, Defendant's argument that the anonymous nature of cryptocurrency transactions makes it impossible to identify the number of potential Class members overlooks the reality that transactions to Uniswap are routed through upstream infrastructure that does capture and log personal identifying information. As Dr. Clark explained in his reply, common Ethereum wallet software—such as MetaMask and Coinbase Wallet—routes user transactions through default remote procedure call services (Infura and Coinbase, respectively) that collect users' IP

addresses. These IP addresses are tied to specific individuals in specific geographic regions and could, if subpoenaed or obtained through discovery, be used to reliably determine the location of EMAX purchasers at the time of their transactions. Thus, while Uniswap itself does not maintain centralized records, Defendants' suggestion that purchaser identity or location is unascertainable is overstated and contradicted by the network architecture used to access Uniswap.

In fact, after applying demographic proxies and national-level Ethereum usage data, Dr. Clark was able to conservatively estimate the Class size in the relevant geographies. *See* Clark Reply at 2-5. In particular, the proposed methodology identified the following estimated Class/Subclass sizes by geographic location: Nationwide: 3219-8602; California: 384-1026; Florida: 209-559; New York: 196-524; and New Jersey: 90-241. Clark Reply at 4-5. Each of these proposed Classes satisfies the low bar for numerosity. *See Immigrant Assistance Project of L.A. Cnty. Fed'n of Lab. (AFL-CIO) v. I.N.S.*, 306 F.3d 842, 869 (9th Cir. 2002) (finding that the numerosity requirement was "satisfied solely on the basis of the number of ascertained class members, i.e., 39, 64, and 71," and citing to 13 cases in which district courts certified classes with fewer than 100 members).

Thus, numerosity is satisfied both as the general requirement for a class action to proceed as well as to the geographic locations relevant to the specific state law claims.

### 2. Commonality

Defendant Kardashian next argues there are no questions of law or fact common to the class, and, as a result, Plaintiffs have not satisfied the commonality requirement for certification under Rule 23(a)(2). *See* Kardashian Opp. at 12-13. This is essentially the same argument that Defendant raises with respect to predominance: namely, that individualized questions of fact regarding each potential class members' exposure to Defendant Kardashian's promotions cannot be resolved by common questions. But as discussed in greater detail below (*see, supra*, Section

III.B.1), any such individualized issues will not swallow the common questions shared by all class members.

In brief, the Ninth Circuit has long held that Rule 23(a)(2) is to be "construed permissively," and all "questions of fact and law need not be common to satisfy the rule."[3] *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011); *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012). Indeed, a single common question suffices to satisfy this requirement. *WalMart*, 564 U.S. at 350. More importantly, as relevant here, **"[t]he existence of shared legal issues with divergent factual predicates is sufficient"** to meet that "permissive" standard. *Hanlon,* 150 F.3d at 1019 (emphasis added).

Here, Plaintiffs' and Class Members' claims arise from the common contentions that: (i) Defendants made uniform misleading or untrue representations that were material to Plaintiffs and the Class Members regarding the ability to use the EMAX token, and (ii) this resulted in a common harm Plaintiffs and Class Members who overpaid for the tokens that were unregistered and did not possess their promised attributes. This promotional strategy was not limited to distinct individuals in unique circumstances. Rather, it was commonly disseminated to all potential investors through the Ethereummax public channels and via widespread endorsements by well-known celebrities acting as agents. While some factual predicates in certain instances may differ to an extent, the validity of each potential class member's claim can be determined in one stroke. Indeed, the shared legal issues of whether the promotions would mislead the average consumer, the materiality of the promotions, and damages are all capable of being resolved by common evidence such that class treatment of the claims is appropriate. *See, e.g., Gunaratna v. Dennis Gross Cosmetology LLC,* No. CV202311MWFGJSX, 2023 WL 5505052, at *13 (C.D. Cal. Apr. 4, 2023)

---

[3]    Unless otherwise indicated, citations are omitted.

(Fitzgerald, J.) (confirming that commonality was satisfied for UCL and FAL claims since such claim apply the objective reasonable consumer test, the answers to which will resolve common class questions).  The determination of the truth or falsity of these common contentions will "resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011).  Accordingly, Defendant Kardashian's commonality challenge should be denied.

### 3.    Typicality

Next, Defendant Kardashian challenges typicality under Rule 23(a)(3) (*see* Kardashian Opp. at 13-15).  In particular, Defendant argues that Plaintiffs did not specify which of the Defendants' promotions the Plaintiffs saw, and if they did not all view the same one that they cannot be typical of the class.  *See Kardashian Opp.* at 14. First, typicality "does not mean that the claims of the class representatives must be identical or substantially identical to those of absent class members.'"  *Staton v. Boeing Co*., 327 F.3d 938, 957 (9th Cir. 2003). So long as the class representative's claims are "reasonably co-extensive with those of absent class members," they are considered typical for class certification. *Hanlon*, 150 F.3d at 1020.

Here, the class representatives and putative class members were all subjected to and injured by the same course of conduct by the same defendants, and make similar claims, regardless of which promotion initiated a purchase the EMAX tokens. This is sufficient to establish typicality under Rule 23(a).  *See  Ellis*, 657 F.3d at 984 ("Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought . . . ."); *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (typicality satisfied where representatives raise similar constitutionally-based arguments and are alleged victims of the same practice despite that they did not raise identical claims).

Further, Plaintiffs have submitted evidence from their expert Dr. Clark that demonstrates that "[o]ver the relevant period, different DEXes were used to trade

EMAX but Uniswap v2 accounted for the majority" and EMAX tokens transactions on Uniswap were "2 orders of magnitude more than any other [exchange]" (i.e. 100 times greater). Clark Report at 12. Thus, class representatives that used Uniswap are very much typical of overwhelming majority of absentee class members.

Thus, Plaintiffs' allegations are typical of the claims asserted by members of the Classes and Subclasses.

### 4.    Adequacy

Defendant Kardashian only challenges adequacy in passing, arguing that the adequacy analysis "tend[s] to merge" with the commonality and typicality analysis and that Plaintiffs' purported "failings" on these elements likewise renders the class representatives as inadequate. *See* Kardashian Opp. at 15. This throw away argument should be rejected for two reasons. First, as discussed above, the commonality and typical elements under Rule 23(a) have, in fact, been established. Thus, Defendants' sole challenge on adequacy fails. Second, Defendant refuses to articulate any actual conflict of interest between the class representatives and potential class members that would render them inadequate. The entirety of her argument is premised on supposed differences in exposure to the EMAX promotional campaign (*i.e.* this is a repackaged version of Defendant's commonality argument, which, in turn, is a repackaged version of her predominance argument). Defendant cannot, however, show that the class representatives or their chosen counsel suffer from an unqualifying conflict of interest.

Every class representative and putative class member were subject to the same course of conduct by Defendants and suffered the same injury in the form and overpayment and trading losses. Plaintiffs and absent class members share the common goal of seeking redress for the financial losses suffered due to Defendant Kardashians' deceptive marketing practices. There is no antagonism, but rather alignment between the interests of the proposed class representatives and those of the class.

**B.    The Nationwide and State-Specific Class Members Are Ascertainable**

Defendant Kardashian raises several complaints about ascertainability that overlap with numerosity and predominance. *See, e.g.*, Kardashian Opp. at 7-12.  For the reasons set forth throughout in the respective responses to those arguments, Defendant Kardashian is also wrong that the putative Class members are not ascertainable. *See Martinez v. Blu Prods., Inc.*, No. CV 17-2507-GW(AGRx), 2019 WL 12838199, at *5 (C.D. Cal. Oct. 3, 2019) (granting class certification and finding ascertainability satisfied because "class members may self-identify through affidavits or claim forms, and presentation of purchase and service receipts is one way that they can evidence ownership and use of one of the phones in question during the time period in question in order to support such a claim").

Furthermore, Defendant Kardashian's reliance on Dr. Howell's opinions on "bot trading and wash trading" to support the argument that Class members are not identifiable is misguided.  Notably, Howell relies on an academic paper, "Crypto Wash-Trading," for her conclusion, but this paper is not applicable to EMAX tokens. That paper did not address transactions from Uniswap or other decentralized exchanges. *See* Clark Reply at 14 (noting that the "Crypto Wash-Trading" paper focused only on centralized exchanges like Binance and Coinbase and did not address the use of bots or wash trading with EMAX tokens).  More importantly, to the extent there was any bot or wash trading related to EMAX tokens on Uniswap, Dr. Clark confirmed that the methodology set for in the academic paper "Exposing Stealthy Wash Trading on Automated Market Maker Exchanges" could be used to account for those kinds of transactions.  *See* Clark Reply at 14.

**C.    Plaintiffs Satisfy the Requirements of Rule 23(b)**

**1.    Individual Issues Do Not Predominate**

Defendant Kardashian raises several complaints about how a variety of individualized issues will predominate over any common questions.   But these

complaints are all based on misapplications of law and a complete ignoring of Plaintiffs' submission for class certification.

To begin, Defendant argues that Plaintiffs failed to demonstrate class-wide exposure to the misrepresentation, and then incorrectly concludes that the proposed class and subclasses suffer from too many individualized inquiries that will ultimately predominate over common issues. *See* Kardashian Opp. at 16. This is incorrect twice over.

First, "the class definition presupposes exposure to" the alleged misrepresentations and "[a]ny who did not view the claims is not a class member and cannot raise individualized issues" *McCrary v. Elations Co.*, LLC, No. EDCV 13-00242 JGB OP, 2014 WL 1779243, at *13 (C.D. Cal. Jan. 13, 2014) (distinguishing *Mazza v. Am. Honda Motor Co., Inc*., 666 F.3d 581, 595 (9th Cir.2012) and finding that individualized issues regarding what misrepresentations on package label putative class members were exposed to did not predominate). Second, "individualized determinations as to reliance and causation are not required as long as certain facts exist to trigger the inferences and presumptions." *Makaeff v. Trump Univ., LLC*, No. 3:10-CV-0940-GPC-WVG, 2014 WL 688164, at *12 (S.D. Cal. Feb. 21, 2014) (analyzing *In re Tobacco II Cases*, 46 Cal. 4th 298, 305 (2009) and granting class certification of UCL claim even though "the advertising and promotional activities in the instant case were not part of a massive advertising campaign").

Here, there are two possible presumptions about reliance (and its impact on the predominance inquiry under Rule 23(b)) that apply. First, reliance may be presumed where pervasive advertising makes it highly likely that all putative class members were exposed to a material misrepresentation. Second, reliance can be inferred under a "fraud-on-the-market" theory.

First, Defendant Kardashian made a standardized marketing campaign that promoted a single, uniform message to putative class members: Kardashian had put her reputation behind the EthereumMax project and promoted the purchase of the

EMAX token for use at certain events and as an investment. Defendant has failed to produce any credible, contrary evidence demonstrating that she did not engage in a standardized marketing campaign when she posted stories on her Instagram account that reached 250 million followers. Nor was this single promotional message diluted by information about other cryptocurrencies or crypto-related ventures being supported or endorsed by Defendant Kardashian.

Even more troubling, ███████████████████████████████████ ████████████████████████████████████████████████████ *See* Ex. C and D to the Jasnoch Decl., JR000405, JR000407.

The Ninth Circuit has long held that class treatment is appropriate where there is evidence that a "standardized sales pitch is employed." *See, e.g.*, *In re First Alliance Mortg. Co.*, 471 F.3d 977, 991 (9th Cir. 2006); *In re Am. Continental Corp./Lincoln Sav. and Loan Sec. Litig.*, 140 F.R.D. 425, 430 (D.Ariz.1992) ("Class actions are appropriately utilized in situations where a 'standardized sales pitch' is employed."). Further, "unlike the limited advertising" in *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 595 (9th Cir.2012) (upon which Defendant heavily relies (*see* Kardashian Opp. at 17)), there is evidence that Defendant Kardashian's promotional campaign for EthereumMax was "uniform, highly orchestrated, concentrated and focused on its intended audience." *See Makaeff*, 2014 WL 688164, at *13.

For example, as discussed above, evidence obtained in discovery shows that Defendant Kardashian's promotional campaign was "highly orchestrated" by herself, along with Defendants Rechnitz and Perone. ████████████████████████ ███████████████████ In fact, the EMAX promotion scheme was so organized that Defendant Rechnitz used this as a sales pitch to others. According to deposition testimony from Dr. Joseph Englanoff (a neighbor of Rechnitz in Los Angeles), ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████



Englanoff Depo 29:11-30:19.

*See* Ex. D to the Jasnoch Decl., JR000407.    Finally,

TAC ¶¶137-8; ¶161;[4] JR000465.

Like in *Makaeff*, "the effect of [Defendant Kardashian's promotional] campaign was to make it highly likely that each member of the putative class was exposed to the same misrepresentations." *Id.*  There is substantial evidence that class members purchased EMAX tokens because of the advertising and promotional information provided in the highly orchestrated EMAX token campaign. Because individualized issues do not and cannot predominate over the aforemention common issues, predominance under Rule 23(b) is satisfied. *See id.*

Second, the application of the "fraud-on-the-market" presumption of reliance is warranted here, and it further confirms that individualized issues will not predominate.  As Dr. Clark explained, there is a method that can be used to show the impact and materiality of the promotions by Defendant Kardashian.[5]  *See* Clark Reply at 11-13.  Most notably, Dr. Clark rebuts the erroneous contention from Dr. Howell that the market for EMAX tokens is inefficient because the price of EMAX tokens

---

[4] Unless otherwise noted, all ¶ and ¶¶ references are to Plaintiffs' Third Amended Class Action Complaint ("TAC"), ECF No. 190, and all terms and acronyms are defined and used as in the TAC.
[5] This same method is equally applicable to show the impact of each promotion by the Promoter Defendants on sales of the EMAX token.

did not rise dramatically following Defendant Kardashian's second promotion. As Dr. Clark explained, in the cryptocurrency context, "[a] promotion's success is a function of how many new purchases it induces not whether it increases the price." Clark Reply at 11-12 (noting "[w]hether the promotion increases the price is instead a function of how much liquidation the insiders do over the same period of time. If insiders liquidate more volume than the volume of new purchases, the price can go down even though the promotion was successful at bringing in new purchasers"). Dr. Clark then analyzed the number of purchases before and after Defendant Kardashian's second EMAX token promotion (the same promotion analyzed by Dr. Howell (*see* Howell report at 32-39)). Clark Reply at 12-13. Transaction data shows, and historical trends corroborate, that the total number of EMAX token purchases had a massive spike following Defendant Kardashian's second EMAX promotion. *See* Clark Reply at 13. Indisputably, there was a large volume of EMAX token purchases directly following Defendant Kardashian's promotion. According to Dr. Clark, these "[l]arge purchases are generally offset by large liquidations which demonstrates why price impacts will offset." Clark Reply at 13. Because individualized issues do not and cannot predominate over the aforementioned common issues, predominance under Rule 23(b) is satisfied. *See id*.

### 2.    The Proposed Damages Model Is Sufficient

Defendant Kardashian wrongly argues Plaintiffs failed to demonstrate damages are capable of class-wide calculation. *See* Kardashian Opp. at 17-21. Plaintiffs provide three different methods capable of proving damages: overpayment due to inaccurate promotions; (2) using profit and loss metrics for all EMAX token transactions taken from publicly-available information on the Ethereum blockchain; and (3) a nominal damages method of calculation.

Nevertheless, Defendant Kardashian insists that Plaintiff made no damages showing at all and then argues that individualized inquiries into class member damages defeats predominance. *See* Kardashian Opp. at 18. But as this District has

previously stated, such damages inquiries "can be addressed in the future, and is not a sufficient basis to find a lack of superiority at the class certification stage." *Jimenez v. Allstate Ins. Co.*, No. LA CV10-08486 JAK, 2012 WL 1366052, at *21 (C.D. Cal. Apr. 18, 2012), aff'd, 765 F.3d 1161 (9th Cir. 2014); *see also* 2 Newberg on Class Actions § 4:26 (4th ed.) ("The 'risk [that individual damage calculations will be unmanageable] is better addressed down the road, if necessary' by altering or amending the class, not by denying certification at the outset.").

More directly in response to Defendant Kardashian's arguments about Plaintiffs' supposed lack of a Class-wide damages model, Dr. Clark confirms that damages for all EMAX purchasers can be calculated on a Class-wide basis using publicly available Ethereum blockchain data. Specifically, as Dr. Clark further explained in his reply, the proposed methodology tracks profit and loss on a wallet-by-wallet basis by computing the net inflow and outflow of Ether (ETH or WETH) used to purchase or redeem EMAX tokens. Clark Reply at 7. The methodology takes into account circumstances where an individual transacted with multiple wallets by offsetting trades via the aggregation of wallet-level profits and losses into a single net outcome. Clark Reply at 7-8. Dr. Clark also confirmed that the methodology likewise accounts for any EMAX token purchasers who realized profits or suffered no losses. *See* Clark Reply at 9 (disputing Dr. Howell's contention that the proposed damages model may include purchasers that made profits). The proposed wallet-level analysis applies uniformly across the Class and can be implementable on a mass scale. Thus, any individualized damages issues do not predominate.

### 3. Class Action Litigation Is Obviously Superior to Any Form of Litigation (or Lack Thereof) Suggested by Defendant Kardashian

Defendant Kardashian appears to suggest that the superior method to resolve the issues raised by this Action would be to allow the Court to hear multiple cases about nearly the same set of facts. *See* Kardashian Opp. at 21-22. This is hardly a superior method of adjudicating the putative class members' claims. In fact, this

approach could result in no resolution at all for plaintiffs. There are likely thousands of class members, and "it is unlikely that the vast majority of individual members are interested in prosecuting separate actions. Each putative class member's claim is likely too small to justify the cost or risk of litigation. Thus, a class action is a more efficient means for each individual class member to pursue his or her claims." *See Cadena v. Am. Honda Motor Co.*, No. CV 18-4007-MWF, 2024 WL 4005097, at \*15 (C.D. Cal. July 2, 2024) (Fitzgerald, J.); *Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."); *see also Williams v. KuCoin*, No. 20CV2806, 2021 WL 5316013, at \*15-17 (S.D.N.Y. Oct. 21, 2021) (finding a class action to be superior in a similar digital asset class action); *Balestra v. Cloud With Me Ltd.*, No. 2:18-CV-00804, 2020 WL 4370392 (W.D. Pa. July 2, 2020)*Cloud With Me*, 2020 WL 4370392, at \*4 (same); *Davy v. Paragon Coin, Inc*., No. 18-CV-00671, 2020 WL 4460446 (N.D. Cal. June 24, 2020).

This putative class action also satisfies the four factors that together indicate that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Namely, (1) there is no other litigation currently or previously pending concerning similar claims to those at issue in this action; (2) concentrating the litigation in this Court would eliminate the risk of inconsistent adjudication and promote the fair and efficient use of the judicial system; and (3) there are no management difficulties that would preclude this action from being maintained as a class action. *Juan Canizales Conde v. City Compassionate Caregivers, Inc.*, No. CV205302MWFMRWX, 2020 WL 9259837, at \*5 (C.D. Cal. Nov. 10, 2020) (Fitzgerald, J.) (citing *Whitaker v. Bennett L.*, PLLC, No. 13-CV-3145-L NLS, 2014 WL 5454398, at \*7 (S.D. Cal. Oct. 27, 2014) for the proposition that "[a] class action is the most efficient vehicle to achieve an opportunity for classwide recovery while minimizing the economic burden on [the]

putative class and promoting judicial economy.").  Thus, the superiority requirement
under Rule 23(b)(3) is satisfied.

## IV.  CONCLUSION

For the foregoing reasons and those set forth in the Motion, Plaintiffs
respectfully request that the Court: (a) certify the Class and Subclasses; (b) appoint
Plaintiffs to serve as Class Representatives for the Class and Subclasses; and (c)
appoint Scott+Scott to serve as Class Counsel.[6]


Dated: May 27, 2025                    Respectfully submitted,


                                        *s/ John T. Jasnoch*
                                       John T. Jasnoch (CA 281605)
                                       **SCOTT+SCOTT ATTORNEYS
                                       AT LAW LLP**
                                       600 W. Broadway, Suite 3300
                                       San Diego, CA 92101
                                       Telephone: 619-233-4565
                                       Facsimile:  619-233-0508
                                       jjasnoch@scott-scott.com

                                       *Lead Counsel for Plaintiffs
                                       and the Proposed Class*

---

[6] To the extent that the Court rules that the proposed Class or Subclasses do not
fully satisfy the requirements of Rule 23(a) or (b), Plaintiffs respectfully request that
the Court deny the Motion without prejudice to re-filing.

# CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Plaintiffs certifies that this brief contains 5,856 words, which complies with the word limit of L.R. 11-6.1.

Dated:        May 27, 2025                 */s/ John T. Jasnoch*
                                                       John T. Jasnoch

**CERTIFICATE OF SERVICE**

I, John T. Jasnoch, hereby certify that on May 27, 2025, I caused the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

Executed on May 27, 2025, at San Diego, California.

*/s/ John T. Jasnoch*
John T. Jasnoch