John T. Jasnoch (CA 281605)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: 619-233-4565
Fax: 619-233-0508
jjasnoch@scott-scott.com

*Lead Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE ETHEREUMMAX INVESTOR LITIGATION<br><br>This Document Relates To:<br><br>    ALL ACTIONS | Lead Case No. 2:22-cv-00163-MWF-SK<br><br>**REPLY IN RESPONSE TO DEFENDANT RECHNITZ'S OPPOSITION AND IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

1
2
# **TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................................1

II.   ADDITIONAL RELEVANT FACTS ...................................................................2

III.  ARGUMENT .......................................................................................................2

      A.    The Requirements of Rule 23(a) Have Been Established..........................2

            1.    Numerosity .......................................................................................2

            2.    Typicality .........................................................................................5

      B.    Plaintiffs Satisfy the Requirements of Rule 23(b) ...................................6

            1.    Individual Issues Will Not Predominate the Proposed State
                  Subclasses .......................................................................................6

            2.    Individual Issues Will Not Predominate the Proposed Nationwide
                  Class ..............................................................................................10

            3.    Proceeding as a Class Action Is Clearly Superior to Any
                  Alternative Suggested by Defendant Rechnitz ............................14

      C.    The Putative Class is Ascertainable .......................................................15

IV.   CONCLUSION..................................................................................................19

15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4
5

*Balestra v. Cloud With Me Ltd.*,
No. 2:18-CV-00804, 2020 WL 4370392 (W.D. Pa. July 2, 2020) ........................................15

6

*Castro v. Paragon Indus., Inc.*,
No. 1:19-cv-00755, 2020 WL 1984240 (E.D. Cal. Apr. 27, 2020) ...................................9

7
8

*Coexist Found., Inc. v. Fehrenbacher*,
865 F.3d 901 (7th Cir. 2017) .......................................................................12

9
10

*Davy v. Paragon Coin, Inc.*,
No. 18-CV-00671, 2020 WL 4460446 (N.D. Cal. June 24, 2020)........................................15

11

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) .......................................................................5

12
13

*Fisher v. CRST Van Expedited Inc.*,
No. EDCV 15-878-VAP (SPX), 2016 WL 11523407 (C.D. Cal. May 4, 2016)....................16

14
15

*Galvan v. KDI Distrib.*,
No. SACV 08-0999-JVS, 2011 WL 5116585, 2011 U.S. Dist. LEXIS 127602
(C.D. Cal. Oct. 25, 2011) .........................................................................17

16
17

*Greenbaum v. KC Jewelry, Inc.*,
No. 2:16–cv–06845–SVW–JPR, 2017 WL 5496224 (C.D. Cal. Jan. 25, 2017) ....................17

18
19

*Gunaratna v. Dennis Gross Cosmetology LLC*,
No. CV 20-2311-MWF (GJSx), 2023 WL 5505052 (C.D. Cal. Apr. 4, 2023) ......................15

20

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .....................................................................5

21
22
23

*Hillman v. Lexicon Consulting, Inc.*,
No. EDCV 16-01186-VAP (SPx), 2017 WL 10433869 (C.D. Cal. Apr. 27,
2017) ...........................................................................................14

24

*In re Am. Contintental Corp./Lincoln Sav. and Loan Sec. Litig.*,
140 F.R.D. 425 (D.Ariz.1992) ....................................................................9

25
26

*In re Checking Account Overdraft Litig.*,
275 F.R.D. 666 (S.D. Fla. 2011) .................................................................10

27

*In re Ethereummax Inv.*,
No. CV 22-00163-MWF (SKx), 2023 WL 6787827 (C.D. Cal. June 6, 2023)......................13

28

*In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*,
275 F.R.D. 382 (D. Mass. 2011).................................................................3

*In re First Alliance Mortg. Co.*,
471 F.3d 977 (9th Cir. 2006) ....................................................................9

*In re Honda*,
347 F.R.D. ...............................................................................................17

*In re Korean Ramen Antitrust Litig.*,
2017 WL 235052 ..........................................................................2, 17, 18

*In re Lidoderm Antitrust Litig.*,
No. 14-MD-02521-WHO, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017) .................................2

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) ..............................................................................7

*Kumar v. Salov N. Am. Corp.*,
No. 14-CV-2411-YGR, 2016 WL 3844334 (N.D. Cal. July 15, 2016).............................2, 18

*Makaeff v. Trump Univ., LLC*,
No. 3:10-CV-0940-GPC-WVG, 2014 WL 688164 (S.D. Cal. Feb. 21, 2014).....................7, 9

*Martinez v. Blu Prods. Inc.*,
No. CV 17-2507-GW(AGRX), 2019 WL 12838199 (C.D. Cal. Oct. 3, 2019)......................16

*Mazza v. Am. Honda Motor Co., Inc.*,
666 F.3d 581 (9th Cir.2012) ...................................................................7, 9

*McCrary v. Elations Co., LLC*,
No. EDCV 13-00242 JGB OP, 2014 WL 1779243 (C.D. Cal. Jan. 13, 2014).......................7

*Otto v. Abbott Lab'ys Inc.*,
No. 5:12-cv-01411-SVW-DTB, 2015 WL 9698992 (C.D. Cal. Sept. 29, 2015) ..................16

*People v. Black*,
214 Cal. Rptr. 3d 402 (Ct. App. 2017) .....................................................10

*Rodriguez v. Hayes*,
591 F.3d 1105 (9th Cir. 2010) .................................................................5

*Schoonover, v. Iovate Health Scis. U.S.A. Inc.*,
No. 2:20-cv-01487-FLA (AGRx), 2023 WL 7107132 (C.D. Cal. Aug. 21,
2023) ....................................................................................................18

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ...................................................................5

*Williams v. KuCoin*,
No. 20-CV-2806, 2021 WL 5316013 (S.D.N.Y. Oct. 21, 2021).............................15

*Zakinov v. Ripple Labs, Inc.*,
    No. 18-CV-06753-PJH, 2020 WL 922815 (N.D. Cal. Feb. 26, 2020) .......................10, 11, 12

*Zaklit v. Nationstar Mortg. LLC*,
    No. 5:15-cv-2190-CAS(KKx), 2017 WL 3174901 (C.D. Cal. July 24, 2017).................14, 18

**Statutes**

California Corporations Code § 25503 ..................................................................................10, 11

Fla. Stat. § 517.07(1)......................................................................................................................12

Florida Securities and Investor Protection Act .........................................................................10

**Other Authorities**

Rule 23(a).......................................................................................................................... *passim*

Rule 23(b) .......................................................................................................................... *passim*

Plaintiffs Ryan Huegerich, Jonathan Semerjian, Nabil Nahlah, Till Freeman, Marko Ciklic, Tunisia Brignol, Milan Puda, Neil Shah, Michael Buckley, and Christopher DeLuca ("Plaintiffs"), through their undersigned counsel and pursuant to Federal Rules of Civil Procedure 23(a), (b)(3), and (g), respectively submit this reply in further support of Plaintiffs' motion to certify this Action as a class action, appoint Plaintiffs as Class Representatives, and appoint Scott+Scott Attorneys at Law LLP ("Scott+Scott") as Class Counsel.[1]

## I.    INTRODUCTION

Defendant Jona Rechnitz played a central and active role in orchestrating the EthereumMax promotional scheme.  As the bridge between the EMAX team and its celebrity promoters, Rechnitz coordinated, timed, and profited from a marketing campaign that misled retail investors about the nature, value, and prospects of the EMAX token.  Plaintiffs have offered detailed evidence—ranging from Rechnitz's own communications and recruiting efforts to witness testimony and expert analysis—showing that this campaign was uniform, deceptive, and aimed at a targeted audience.  Because all Class members were subjected to the same misrepresentations and market manipulation, and because their claims arise from the same course of conduct, the case against Defendant Rechnitz satisfies the core elements of Rule 23.

The record also establishes that common issues predominate and that a class action is the superior method of resolving this dispute.  Plaintiffs have presented a reliable model for class-wide damages, and blockchain data provides a transparent, consistent means of identifying Class members, verifying transactions, and establishing privity.  Whether analyzing consumer protection or securities law claims, the underlying conduct, injury, and legal standards are common across the

---

[1]    Plaintiffs incorporate by reference all relevant arguments in the Replies to the Oppositions of Defendants Mayweather, Kardashian, Pierce, and Perone, concurrently filed herewith.

1    Class. Accordingly, this Court should certify the proposed Class and Subclasses to

2    ensure that victims of the EMAX scheme are afforded a collective path to relief.

3        For these reasons, and those set forth below, the Court should grant Plaintiffs'

4    Motion.

5    **II.    ADDITIONAL RELEVANT FACTS**

6        Plaintiffs incorporate by reference the additional facts section in Plaintiffs'

7    Reply to the Kardashian Opposition, filed concurrently herewith.

8    **III.    ARGUMENT**

9    **A.    The Requirements of Rule 23(a) Have Been Established**

10       In his opposition, Defendant Rechnitz argues that Plaintiffs have not

11   established numerosity and typicality. Defendant Rechnitz does not challenge the

12   adequacy of the Class Representatives or counsel or that the proposed Class and

13   Subclasses are subject to common questions of law or facts.

14       **1.    Numerosity**

15       Defendant Rechnitz disputes that Plaintiffs have established that the

16   proposed Class is sufficiently numerous to warrant treatment as a class action under

17   Rule 23(a)(1). *See* Rechnitz Opp. at 5-6. Specifically, Defendant argues that the

18   number of potential Class members cannot be adequately identified at all, much

19   less by geographical location. *See id*. at 5. But again, this ignores the ability by

20   potential Class members to self-identify. *See, e.g.*, *In re Korean Ramen Antitrust*

21   *Litig.*, 2017 WL 235052, at *21; *Kumar*, 2016 WL 3844334, at *6; *In re Lidoderm*

22   *Antitrust Litig.*, No. 14-MD-02521-WHO, 2017 WL 679367, at *25 (N.D. Cal. Feb.

23   21, 2017) (approving of self-identification as an adequate method to ascertain

24   potential class members).

25       In further support that the putative Class is sufficiently numerous, Plaintiffs'

26   expert, Dr. Clark identified approximately 100,000 transactions that were made by

27   unique Ethereum addresses. *See* Clark Declaration at 14. While an individual can

28   own/transact with multiple wallets for the same cryptocurrency, it is reasonable to

infer that of the 100,000 identified unique wallets transacting in EMAX tokens, at least 40 individuals owned those wallets.  Put another way, Defendants are asking the Court to find that less than 40 individuals were responsible for **all** of the EMAX token trading, and that each of those less than 40 individuals on average owned/controlled around 2,500 unique wallets.  This is unreasonable on its face.  Further, it runs counter to the actual evidence of the EMAX token transaction history submitted by the nine Class Representatives (who are quintessential typical EMAX investors).  All but one of the Class Representatives used a single wallet address for their respective EMAX token transactions. *See* EMXPLS_000001, EMXPLS_000002. The lone outlier used just two wallets. *See* EMXPLS_000001. Given this evidence, it is reasonable to infer that more than 40 individuals were responsible for the 100,000 unique wallet addresses, thereby satisfying the numerosity requirement under Rule 23.  *See In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 275 F.R.D. 382, 388 (D. Mass. 2011) (noting that "[a]lthough the number of class members is still unknown, because there are millions of shares outstanding and were millions of transactions during the class period, the Court can reasonably infer that there are at least hundreds, if not thousands of class members"). And Defendant Rechnitz has offered no evidence other than speculation to rebut this point.

Further, with respect to various subclasses Plaintiffs respectfully submit that there is ample evidence supporting numerosity for each of the three states.  It is undisputed that in May and June 2021, cryptocurrency markets were surging, and that California, Florida, and New York were particularly active hubs of crypto activity.  Multiple metrics and indicators show that California, Florida, and New York were among the leading states in crypto interest and usage during the relevant period.  California exhibited the highest level of cryptocurrency interest of any state, scoring a perfect "10/10" on a composite index of search terms (well above the national average score ~6.2 on that scale).  Florida ranked as the 3rd most

crypto-interested state (index score 9.01) and New York 6th (score 7.68) over the same period. In other words, all three states showed 20–60% higher crypto-related search activity than the average state, a strong proxy for above-average user engagement in crypto markets.[2]

Additionally, an industry analysis ranked California as the #1 most "crypto-ready" state in 2021. Florida and New York also scored among the top five states, indicating above-average crypto interest. Class members in California, Florida, and New York almost certainly each comprised a large slice of EthereumMax's holder base given their outsized crypto communities.[3] EthereumMax's marketing also had a notable focus on Florida (Mayweather Fight (¶¶106; 130; 133; 134; 147; 148; 149; 153, bitcoin conference (¶143), Club LIV (¶¶101; 133; 134; 137; 149), and a May 28, 2021 press release[4]) and California (LA press releases (¶¶130; 131; 134; 135), Paul Pierce and ESPN (¶¶76; 77; 130), and Kim Kardashian (¶¶84; 137; 138; 157; 158)).[5] The Company already admitted to the number of holders in their press releases. (See May 28, 2021 LA press release - 32,000 holders[6]; May 30 Miami press release says 50,000 token holders[7]; June 15 Miami press release - 100k

---

[2] Tyler Pathe, California Is the Biggest Crypto Market in the US, Recent Study Reveals, The Fintech Times (May 15, 2024), https://thefintechtimes.com/california-is-the-biggest-crypto-market-in-the-us-recent-study-reveals/#:~:text=The%20data%20showed%20that%20California,10%20across%20all%20search%20terms.

[3] Sam Bourgi, California Named Most Crypto-Ready US State, Cointelegraph (May 15, 2024), https://cointelegraph.com/news/california-named-most-crypto-ready-us-state#:~:text=With%20a%20score%20of%205,higher%20than%20the%20national%20average.

[4] EthereumMax ($eMax) Disrupts Miami Ahead of Mayweather vs. Paul Fight as the First Crypto Currency of Major Nightclubs LIV and Story, PR Newswire (June 4, 2021), https://www.prnewswire.com/news-releases/ethereummax-emax-disrupts-miami-ahead-of-mayweather-vs-paul-fight-as-the-first-crypto-currency-of-major-nightclubs-liv-and-story-301301958.html.

[5] Unless otherwise noted, all ¶ and ¶¶ references are to Plaintiffs' Third Amended Class Action Complaint ("TAC"), ECF No. 190, and all terms and acronyms are defined and used as in the TAC.

[6] eMax Is the #1 Trending Crypto Across All Exchanges Worldwide, PR Newswire (May 28, 2021), https://www.prnewswire.com/news-releases/emax-is-the-1-trending-crypto-across-all-exchanges-worldwide-301301813.html.

[7] eMax Becomes One of the Fastest Growing Tokens in History, PR Newswire (May 30, 2021), https://www.prnewswire.com/news-releases/emax-becomes-one-of-the-fastest-growing-tokens-in-history-301302070.html.

holders in a month[8]).  In sum, Plaintiffs have satisfied the numerosity requirement here.

### 2.    Typicality

Defendant Rechnitz's challenge to typicality under Rule 23(a)(3) (*see* Rechnitz Opp. at 6-8) stands on precarious footing.  Defendant argues that Plaintiffs did not specify which of the many promotions by Defendants the Plaintiffs saw, and if they did not all view the same one that they cannot be typical of the Class.  *See* Rechnitz Opp. at 7.  First, typicality "does not mean that the claims of the class representatives must be identical or substantially identical to those of absent class members.'"  *Staton v. Boeing Co.,* 327 F.3d 938, 957 (9th Cir. 2003). So long as the Class Representative's claims are "reasonably co-extensive with those of absent class members," they are considered typical for Class certification.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  Second, the TAC lays out exactly which of the numerous promotions were seen by which plaintiff.

Here, the Class Representatives and the Class members were subjected to and injured by the same course of conduct by the same defendants, and make similar claims, regardless of which promotion initiated a purchase the EMAX tokens.  This is sufficient to establish typicality under Rule 23(a).  *See  Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) ("Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought . . . .");  *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (typicality satisfied where representatives raise similar constitutionally-based arguments and are alleged victims of the same practice despite that they did not raise identical claims).

Further, Plaintiffs have submitted evidence from their expert Dr. Clark that demonstrates that "[o]ver the relevant period, different DEXes were used to trade

---

[8] EthereumMax Catches the Eye of Bigger Exchanges, PR Newswire (May 31, 2021),
https://www.prnewswire.com/news-releases/ethereummax-catches-the-eye-of-bigger-exchanges-301312521.html.

EMAX but Uniswap v2 accounted for the majority" and EMAX tokens transactions on Uniswap were "2 orders of magnitude more than any other [exchange]" (i.e. 100 times greater). Clark Report at 12. Thus, Class Representatives that used Uniswap are very much typical of overwhelming majority of absentee Class members.

## B.    Plaintiffs Satisfy the Requirements of Rule 23(b)

Defendant Rechnitz next argues that the proposed Class and Subclasses do not satisfy either the predominance or superiority requirements for certification under Rule 23(b). Specifically, Defendant contends that, with respect to Claims 8 and 13, individual issues related to each putative Class members' exposure to the alleged misrepresentations predominate. See *Rechnitz Opp.* at 11. Relatedly, Defendant asserts that Claim 2 – unfair practices under the UCL – requires individualized inquiries and cannot, as a matter of law, be certified. *Id.* at 9. Defendant also argues that choice of law inquiries and a purported lack of Class-wide evidence precludes certification of the Securities Claims. *Id.* at 11-12. Defendant further contends that there is nothing to demonstrate damages are capable of Class-wide calculation, and concludes that individual inquiries will predominate over common issues. *Id* at 16. For the reasons below, Defendant is wrong on each point.

### 1.    Individual Issues Will Not Predominate the Proposed State Subclasses

Defendant Rechnitz raises several complaints about how a variety of individualized issues will predominate over any common questions. *See* Rechnitz Opp. at 8-10, 16-17. But these complaints are all based on misapplications of law and a convenient disregard of Plaintiffs' submission for Class certification.

To begin, Defendant argues that Plaintiffs failed to demonstrate Class-wide exposure to the misrepresentation, and then incorrectly concludes that the proposed Class and Subclasses suffer from too many individualized inquiries that will ultimately predominate over common issues. *See Rechnitz Opp.* at 9. This is

incorrect twice over. First, "the class definition presupposes exposure to" the alleged misrepresentations and "[a]ny who did not view the claims is not a class member and cannot raise individualized issues" *McCrary v. Elations Co.*, LLC, No. EDCV 13-00242 JGB OP, 2014 WL 1779243, at *13 (C.D. Cal. Jan. 13, 2014) (distinguishing *Mazza v. Am. Honda Motor Co., Inc*., 666 F.3d 581, 595 (9th Cir.2012) and finding that individualized issues regarding what misrepresentations on package label putative class members were exposed to did not predominate). Additionally, with respect to the state law consumer protection claims, "individualized determinations as to reliance and causation are not required as long as certain facts exist to trigger the inferences and presumptions." *Makaeff v. Trump Univ., LLC*, No. 3:10-CV-0940-GPC-WVG, 2014 WL 688164, at *12 (S.D. Cal. Feb. 21, 2014) (analyzing *In re Tobacco II Cases*, 46 Cal. 4th 298, 305 (2009) and granting class certification of UCL claim even though "the advertising and promotional activities in the instant case were not part of a massive advertising campaign").

Here, there are two possible presumptions about reliance that apply. First, reliance may be presumed where pervasive advertising makes it highly likely that all putative Class members were exposed to a material misrepresentation. Second, reliance is inferred in some securities fraud claims under a "fraud-on-the-market" theory.

Defendant Rechnitz orchestrated a standardized marketing campaign that promoted a single, uniform message to putative Class members: buy the celebrity-backed EMAX tokens. ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████ *See* JR000405; JR000407; JR000462. ████████████████████ ████████████████████████████████████

1    ██████    JR000408.   ████████████████████████████████

2    ████████████████████████████████████████    *See* Englanoff

3    Depo. Transcript at 29:17-30:19; 48:1-12.   Indeed, deposition testimony from Dr.

4    Englanoff (a neighbor of Rechnitz in Los Angeles) █████████████████████

5    ██████████████████████████████████████████████████████

6    ██████████████████████████████████████████████████████

7    ██████████████████████████████████████████████████████

8    ██████████████████████████████████████████████████████

9    ██████████████████████████████████████████████████████

10   ██████████████████████████████████████████████████████

11   ██████████████████████████████████████████████████████

12   ██████████████████████████████████████████████████████

13   ████████████████    *See* Englanoff Depo. Transcript at 29:17-30:19; 48:1-12.   ██

14   ██████████████████████████████████████████████████████

15   ██████████████████████



*See* Englanoff Depo. Transcript at 29:17-30:19

1    Defendant has not (and cannot) proffered any credible, contrary evidence

2    demonstrating that he did not engage in a standardized marketing campaign when

3    he brokered deals on behalf of the EMAX team to have the likes of Kim Kardashian

4    post on her Instagram, or Defendant Mayweather promote the Token during a fight.

5    TAC ⁋45, 49, 109. His orchestrated promotional messages were not diluted by

6    information about other cryptocurrencies or crypto-related ventures being

7    supported or endorsed by any of the Promoter Defendants whose services he

8    procured.

9    The Ninth Circuit has long held that class treatment has been permitted where

10   there is evidence that a "standardized sales pitch is employed." *See, e.g.*, *In re First*

11   *Alliance Mortg. Co.*, 471 F.3d 977, 991 (9th Cir. 2006); *In re Am. Contintental*

12   *Corp./Lincoln Sav. and Loan Sec. Litig.*, 140 F.R.D. 425, 430 (D.Ariz.1992) ("Class

13   actions are appropriately utilized in situations where a 'standardized sales pitch' is

14   employed."); *see also Castro v. Paragon Indus., Inc.,* No. 1:19-cv-00755, 2020 WL

15   1984240, at *10 (E.D. Cal. Apr. 27, 2020) ("Class actions in which a defendant's

16   uniform policies are challenged generally satisfy the predominance requirement of

17   Rule 23(b)(3)."). Further, "unlike the limited advertising" in *Mazza v. Am. Honda*

18   *Motor Co., Inc*., 666 F.3d 581, 595 (9th Cir.2012) (upon which Defendant heavily

19   relies (*see* Rechnitz Opp. at 14-15)), there is evidence that Defendant Rechnitz's

20   promotional campaign for Ethereummax was "uniform, highly orchestrated,

21   concentrated and focused on its intended audience." *See Makaeff*, 2014 WL 688164,

22   at *13. As described above, evidence shows that Defendant Rechnitz's promotional

23   campaign was "highly orchestrated" by himself. Further, Rechnitz's campaign was

24   concentrated and focused on its intended audience, namely fans of Pierce,

25   Kardashian, and Mayweather who were also crypto enthusiasts and investors.

26   Like in *Makaeff*, "the effect of [Defendant Rechnitz's promotional] campaign

27   was to make it highly likely that each member of the putative class was exposed to

28   the same misrepresentations." *Id*.  There is substantial evidence that Class members

purchased EMAX tokens for reasons that track the advertising and promotional information provided in the highly orchestrated EMAX token campaign surrounding the Mayweather-Paul boxing exhibition match, or the multiple Kardashian and Pierce Instagram posts. Because individualized issues do not and cannot predominate over common issues, predominance under Rule 23(b) is satisfied. *See id*.

### 2.    Individual Issues Will Not Predominate the Proposed Nationwide Class

#### a.    Choice of law

Defendant Rechnitz argues that Plaintiffs' choice of law and a purported lack of Class-wide evidence will predominate the securities claims. *See Rechnitz Opp.* at 11-12. But, as previously discussed, both the California Corporate Securities Law and Florida Securities and Investor Protection Act are fully capable of Class-wide adjudication on the common issue of whether the EMAX token qualified as a security requiring government registration prior to a public sale. *See People v. Black*, 214 Cal. Rptr. 3d 402, 411–12 (Ct. App. 2017) (noting that a transaction constitutes a security under both California and Florida law if it satisfies the Howey test or the functionally equivalent "risk capital" test). Thus, "irrespective of the individual issues which may arise, the focus of the litigation concerns the alleged common course of unfair conduct embodied in [EthereumMax's] scheme" to market and sell unregistered securities. *See In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 676 (S.D. Fla. 2011).

Further, the court in *Ripple* squarely addressed the same argument raised here and provided reasoned analysis of why such an argument was insufficient to demonstrate that individualized issues will predominate over common ones. *See* 2023 WL 4303644, at *7-8 (N.D. Cal. June 30, 2023) (granting certification of a state securities claims class for alleged violations of California Corporations Code § 25503 against defendants for a primary violation of § 25110's restriction on the offer or sale of unregistered securities). Plaintiffs respectfully submit that the class

1    certification decision in *Ripple* is the most on-point analysis on the relevant issues,

2    and this Court should adopt its reasoning and reach a similar conclusion here.

3        Nevertheless, Defendant Rechnitz insists that choice of law precludes

4    certification of a nationwide Class. *See* Rechnitz Opp. at 11-15. Specifically,

5    Defendant contends that choice of law rules require each potential Class member

6    to pursue securities under the law of their own state. *Id*. at 11. Defendant then goes

7    on at great length to argue that Plaintiffs have not established that California and

8    Florida and sufficient contacts to the claims alleged. Id. at 11-13. This challenge is

9    flawed as it ignores the text of the California and Florida statutes.

10        Specifically, Defendant ignores that it is both the "offer" or "sale" of

11    unregistered securities within the respective states that constitutes the violation. The

12    motion to dismiss decision in the *Ripple* matter analyzes this issue directly. *See*

13    *Zakinov v. Ripple Labs, Inc.*, No. 18-CV-06753-PJH, 2020 WL 922815, at \*16

14    (N.D. Cal. Feb. 26, 2020). There, the court notes that "an offer or sale of a security

15    is made in California under any of the following conditions: When an offer to sell

16    is made in this state; When an offer to buy is accepted in this state; or If both the

17    seller and purchaser are domiciled in this state, the security is delivered to the

18    purchaser in this state." *Id*. (citing Cal. Corp. Code § 25008(a)). The court then

19    found that allegations that defendant had offered to sell a cryptocurrency on a

20    company website qualified as an offer via advertisement, which allowed for the

21    reasonable inference that such information was accessible to individuals within

22    California. *See id*. (concluding that these facts were sufficient to allege that

23    "defendants offered the subject unregistered securities 'in this state' for purpose of

24    his § 25503 claim").

25        Here, the evidence proffered on this issue is even more than in *Ripple*.

26    Executive Defendants, including Rechnitz, made an offer to sell EMAX tokens via

27    the Ethereummax website, as well as the website associated with the Mayweather-

28    Logan Paul fight. ¶¶130, 133. Rechnitz also resided in California during the

1    relevant time period, conducted Ethereummax-related business within California,

2    and recruited other California-based celebrities to promote the sale of the

3    unregistered EMAX token within California and nationwide. It is reasonable to

4    infer that this information – which invited performance of a specific act (*i.e.*

5    purchasing EMAX tokens) without any further communication – was accessible to

6    individuals within California, Florida and nationwide. This "inference is further

7    supported by the 'fungible nature of each [EMAX token] unit exchanged" (*see*

8    *Zakinov*, 2020 WL 922815, at *16) and the allegations that the putative Class

9    Representatives from California and Florida did, in fact, access this information.

10   Accordingly, this satisfies the "in this state" requirement for the California

11   unregistered securities claim.

12       The same holds true under the related Florida statute.  *See, e.g.*, Fla. Stat.  §

13   517.07(1) ("It is unlawful and a violation of this chapter for any person to sell or

14   offer to sell a security within this state unless the security is exempt . . . .") & (2)

15   ("No securities that are required to be registered under this chapter shall be sold or

16   offered for sale within this state unless such securities have been registered . . . .").

17   While it is a violation for someone within Florida to offer or sell unregistered

18   securities, it is also a violation for someone outside Florida to offer or sell

19   unregistered securities to someone within Florida.  Defendant Perone admits that

20   both he and the Company resided and operated within Florida during the Class

21   Period. *See* Defendants Giovanni Perone and Emax Holdings, LLC's Answer to

22   Corrected Third Amended Class Action Complaint (ECF No. 197) at ¶¶ 17, 25.

23   Like in California, under the relevant Florida law, disseminating an offer to sell the

24   unregistered EMAX tokens while in the state creates liability for sales that took

25   place anywhere nationwide. *See Coexist Found., Inc. v. Fehrenbacher*, 865 F.3d

26   901, 909 (7th Cir. 2017) (affirmed the district court's finding following a bench trial

27   that a defendant in Illinois could be liable for the sale of unregistered securities

28   under Fla. Stat. Ann. § 517.07).  Thus, Defendant Rechnitz is wrong that California

and Florida have "no conceivable interest in extending their securities laws to benefit out of state investors." *See* Rechnitz Opp. at 15. Both statutes themselves and courts interpreting those statutes have indicated otherwise.

Defendant further argues that there is a lack of Class-wide evidence of reliance for the securities claims. *See Rechnitz Opp.* at 19. But for the reasons stated above, the satisfaction of the reliance element for the consumer protection claims is equally applicable to the securities claims. As such, the Court should reject this argument as applied to both groups of claims.

### b.    Geographic Location and Privity

Defendant Rechnitz also contends that Plaintiffs failed to demonstrate that geographic location and privity is provable, and thus cannot satisfy predominance under Rule 23(b). *See Rechnitz Opp.* at 13. But Plaintiffs have already proffered a method by which privity can be established via the EMAX token liquidity pool. In fact, the Court even acknowledged this in a previous order: "[i]n the absence of expert analysis describing the intricacies of the relevant trading platform, the Court is unwilling to conclude, as a matter of law, that Plaintiffs will be unable to prove some form of "privity." *In re Ethereummax Inv.*, No. CV 22-00163-MWF (SKx), 2023 WL 6787827, at *1 (C.D. Cal. June 6, 2023). Individual privity issues will not predominate over common issues because all Class members will be subject to the same pervading common question: did the putative Class member purchase EMAX tokens during the relevant time period when the EMAX liquidity pool was funded by the Executive Defendants?

In his reply, Dr. Clark confirmed that virtually all EMAX token transactions during the Class Period occurred on Uniswap. *See* Clark Reply at 9-10. Because these pools were, at the relevant time, funded by wallets associated with the Defendants, each EMAX purchase by a Class member can be traced as a direct transaction against tokens offered by the Defendants. Thus, the privity analysis is identical for Plaintiffs and absent Class members alike. Similarly, Plaintiffs have

1    proffered a method by which the geographic location of potential Class members

2    can be identified through the IP addresses used to transact EMAX tokens and/or

3    self-identification, or a combination of both. *See* Clark Reply at 5-6. This is enough

4    to satisfy predominance. *Zaklit v. Nationstar Mortg. LLC*, No. 5:15-cv-2190-

5    CAS(KKx), 2017 WL 3174901, at *9 (C.D. Cal. July 24, 2017)

6         Finally, Defendant Rechnitz wrongly argues Plaintiffs failed to demonstrate

7    damages are capable of Class-wide calculation. *See* Rechnitz Opp. at 10. In the

8    present Motion, Plaintiffs provided three different methods capable of proving

9    damages: overpayment due to inaccurate promotions; (2) using profit and loss

10   metrics for all EMAX token transactions taken from publicly-available information

11   on the Ethereum blockchain; and (3) a nominal damages method of calculation.

12   Further, Dr. Clark's reply makes clear how these calculations can be done, even

13   using the example provided for in Dr. Howell's report and calculating the damages

14   in such a hypothetical. *See* Clark Reply at 7.

15       **3.     Proceeding as a Class Action Is Clearly Superior to Any**

16          **Alternative Suggested by Defendant Rechnitz**

17        Defendant Rechnitz suggests that the superior method to resolve the issues

18   raised by this Action would be to allow the Court to hear multiple cases about nearly

19   the same set of facts. *See* Rechnitz Opp. at 18-20. This is hardly a superior method

20   of adjudicating the dispute. In fact, this approach could result in no resolution at

21   all for plaintiffs. As stated above, there are likely thousands of Class members, and

22   trying all of their cases individually is a foolhardy task.

23       Defendants' method of separating everyone out is costly, ineffective, and

24   unwise. Should Class certification be denied in favor of numerous high-risk, low-

25   reward individual actions, "it is unlikely that these claims would be litigated at all"

26   should this Court agree that Defendant's idea of complete reliance on the SEC is

27   superior method to "adjudicate" the controversies raised here. *Hillman v. Lexicon*

28   *Consulting, Inc.*, No. EDCV 16-01186-VAP (SPx), 2017 WL 10433869, at *5

1   (C.D. Cal. Apr. 27, 2017) (finding superiority satisfied under Rule 23(b)(3)); *see*

2   *also Williams v. KuCoin*, No. 20-CV-2806, 2021 WL 5316013, at *15-17 (S.D.N.Y.

3   Oct. 21, 2021) (finding a class action to be superior in a similar digital asset class

4   action); *Balestra v. Cloud With Me Ltd.*, No. 2:18-CV-00804, 2020 WL 4370392

5   (W.D. Pa. July 2, 2020)*Cloud With Me*, 2020 WL 4370392, at *4 (same); *Davy v.*

6   *Paragon Coin, Inc*., No. 18-CV-00671, 2020 WL 4460446 (N.D. Cal. June 24,

7   2020)*Davy*, 2020 WL 4460446, at *7 (same). A class action is clearly the superior

8   method of adjudication here.

9   **C.    The Putative Class is Ascertainable**

10      Defendant Rechnitz argues that the proposed Classes cannot be identified

11  and are not ascertainable as a result. *Rechnitz Opp*. at 20. In particular, Defendant

12  claims that the proffered self-identification methods of ascertaining Class members

13  will cause fraudulent claiming of ownership and that the Class Period is longer than

14  the promotional activity of defendants. *Id*. But this argument misses the mark. As

15  this Court has previously held: "The Ninth Circuit has explained that

16  ascertainability is not a dispositive requirement under Rule 23. . . . And the fact

17  that data does not exist that might list every customer who ever purchased the

18  Products and when is not a reason to deny certification." *Gunaratna v. Dennis*

19  *Gross Cosmetology LLC*, No. CV 20-2311-MWF (GJSx), 2023 WL 5505052, at

20  *23 (C.D. Cal. Apr. 4, 2023) (granting Class certification). Thus, Defendant's

21  speculative disputes over the identity of potential Class members is not dispositive

22  to the Class certification analysis.

23      Moreover, despite Defendants' assertions to the contrary (*see* Rechnitz Opp.

24  at 20), the proposed Class and Subclasses are limited to a definite class of

25  individuals that exist independently of whether or not Defendant was the cause of

26  the alleged injury.   There are no merits or individualized issues that require

27  resolution before determining whether someone purchased the EMAX token.

28

██████████████████████████████████████████████████████████████

████████████████████████████████████████████  *See* Howell Deposition Transcript
54:11-15 (attached hereto as Exhibit F of the concurrently filed Declaration of John
T. Jasnoch). There are no individualized inquiries into damages needed for those
potential Class members, as there are none needed for those individuals that have
suffered realized losses.    Each are sufficiently identifiable from both the
transactional records available on the blockchain and through self-identification.
*See Martinez v. Blu Prods. Inc.*, No. CV 17-2507-GW(AGRX), 2019 WL
12838199, at *5 (C.D. Cal. Oct. 3, 2019) (granting class certification and finding
ascertainability satisfied because "class members may self-identify through
affidavits or claim forms, and presentation of purchase and service receipts is one
way that they can evidence ownership and use of one of the phones in question
during the time period in question in order to support such a claim").

        Further, individualized issues would not predominate litigation to the point
it rendered potential Class members unidentifiable. There is no need for any
individualized inquiries regarding potential Class members purchases of EMAX
tokens—they either did or did not buy the token during the Class Period. Similarly,
they either did or did not have losses as a result of purchasing the EMAX token
during the Class period. "As courts in [the Ninth Circuit] have repeatedly found,
whether or not someone purchased a product at a specific time is an accessible
question that can be determined on an objective basis." *Otto v. Abbott Lab'ys Inc.*,
No. 5:12-cv-01411-SVW-DTB, 2015 WL 9698992, at *4 (C.D. Cal. Sept. 29,
2015). If Defendant Rechnitz is found to be liable on the merits at trial for losses
under a given theory of liability, this will not have any impact on Plaintiffs' Class
definitions. Indeed, the Class definition "does not define which putative class
members are eligible for recovery and, consequently, both those entitled and not
entitled to relief will remain in the class." *Fisher v. CRST Van Expedited Inc.*, No.

1    EDCV 15-878-VAP (SPX), 2016 WL 11523407, at *11 (C.D. Cal. May 4, 2016)

2    (finding the putative class sufficiently ascertainable).

3         Put simply, the proposed Class members can be identified definitively

4    without a finding of liability. *See In re Honda*, 347 F.R.D. at 540 ("This is a definite

5    class of people. No liability findings at trial would change who did or did not

6    purchase [an EMAX token]."); *Greenbaum v. KC Jewelry, Inc.*, No. 2:16–cv–

7    06845–SVW–JPR, 2017 WL 5496224, at *9 (C.D. Cal. Jan. 25, 2017) (rejecting

8    claim that putative class of purchasers of jewelry "where the weight of diamonds

9    indicated on the product label exceeded the actual weight of the diamonds in the

10   jewelry" constituted a failsafe class because "[t]his is a factual determination and

11   does not require establishing the liability of the Defendants"). Any lack of complete

12   ascertainability at this stage will generally not undermine class certification. *See*

13   *Galvan v. KDI Distrib.*, No. SACV 08-0999-JVS (ANx), 2011 WL 5116585, at *5,

14   2011 U.S. Dist. LEXIS 127602, 15-16 (C.D. Cal. Oct. 25, 2011) ("the class

15   definition may include individuals who ... have inadequate proof to go forward with

16   the class. However, these ascertainability issues are not fatal to class certification

17   and may be addressed later in the litigation").

18        The ascertainability analysis in *In re Korean Ramen Antitrust Litig.*, No. 13-

19   CV-04115-WHO, 2017 WL 235052 (N.D. Cal. Jan. 19, 2017) addresses similar

20   arguments related to self identification as a way to satisfy ascertainability under

21   Rule 23 and rejects the arguments raised by Defendant Rechnitz here regarding

22   concerns about illegitimate claims and manageability.  In particular, the court

23   stated:

24        Because absent class members can only be identified by
         uncorroborated self-identification, defendants argue the class is not
25       ascertainable. However, ***as the Ninth Circuit recently reaffirmed,***
         ***concerns about illegitimate claims and manageability—such as***
26       ***those expressed by defendants here—are accounted for by other***
         ***provisions of Rule 23***; that consumers do not generally save
27       "grocery receipts and are unlikely to remember details about

28

individual purchases of a low-cost product" like ramen, does not mean a class of consumers cannot be certified. . . . ***Neither the fact that class members have to "self-identify" nor that they might not have readily available proof of purchase, means that they are not ascertainable sufficient for class certification…. Post-judgment claims forms and other tools can be used to allow defendants to test an absent class member's purported entitlement to damages and to appropriately apportion damages between class members***. . . .

*Id.* at *21 (citations omitted and emphasis added); *see also Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2016 WL 3844334, at *6 (N.D. Cal. July 15, 2016) (finding class members ascertainable despite defendant's arguments that class members would have to self-identify and show "what they paid, where they purchased it, and how many times, plus whether they saw and were deceived" by a product's label); *Schoonover, v. Iovate Health Scis. U.S.A. Inc.*, No. 2:20-cv-01487-FLA (AGRx), 2023 WL 7107132, at *9 (C.D. Cal. Aug. 21, 2023) (finding that "any difficulties – such as identifying class members [did not] weigh[ ] against certification" because "the fact that consumers may be required to self-identify is not an issue that must be resolved at the class certification stage").

Finally, Defendant Rechnitz raises concerns about purported administrative problems with identifying Class members by an "overbroad" Class Period.  But "the Ninth Circuit has recognized that Rule 23 does not require plaintiffs 'to satisfy an administrative feasibility prerequisite.'" *Zaklit*, 2017 WL 3174901, at *9 (quoting *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017) ("The authors of Rule 23 opted not to make the potential administrative burdens of a class action dispositive and instead directed courts to balance the benefits of class adjudication against its costs. We lack authority to substitute our judgment for theirs.").  Plaintiffs can identify the time of purchase of potential Class members through data available on the Ethereum blockchain and/or self-identification, or a combination of both. "However difficult it may be to obtain [identifying] information for each class member," it is enough for Class certification purposes

1  that Plaintiffs "have identified a common method of proof that will allow plaintiffs

2  to identify members of the class." *Id.*

3  **IV.   CONCLUSION**

4        For the foregoing reasons and those set forth in the Motion, Plaintiffs

5  respectfully request that the Court: (a) certify the Class and Subclasses; (b) appoint

6  Plaintiffs to serve as Class Representatives for the Class and Subclasses; and (c)

7  appoint Scott+Scott to serve as Class Counsel.[9]

8

9  Dated: May 27, 2025                      Respectfully submitted,

10

11                                           *s/ John T. Jasnoch*
                                            John T. Jasnoch (CA 281605)
12                                          **SCOTT+SCOTT ATTORNEYS**
                                            **AT LAW LLP**
13                                          600 W. Broadway, Suite 3300
14                                          San Diego, CA 92101
                                            Telephone: 619-233-4565
15                                          Facsimile:  619-233-0508
16                                          jjasnoch@scott-scott.com

17                                          *Lead Counsel for Plaintiffs*
18                                          *and the Proposed Class*

19

20

21

22

23

24

25

26

27

28
_____
[9] To the extent that the Court rules that the proposed Class or Subclasses do not fully satisfy the requirements of
Rule 23(a) or (b), Plaintiffs respectfully request that the Court deny the Motion without prejudice to re-filing.

1

**CERTIFICATE OF COMPLIANCE**

2
    The undersigned counsel of record for Plaintiffs certifies that this brief

3
contains 5,983 words, which complies with the word limit of L.R. 11-6.1.

4

5
Dated:      May 27, 2025          */s/ John T. Jasnoch*
                                  _____
6                                 John T. Jasnoch

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I, John T. Jasnoch, hereby certify that on May 27, 2025, I caused the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

Executed on May 27, 2025, at San Diego, California.

*/s/ John T. Jasnoch*
John T. Jasnoch

Plaintiffs' Reply to Defendant Rechnitz's Opposition to Motion for Class Certification
CASE NO. 2:22-cv-00163-MWF-SK