John T. Jasnoch (CA 281605)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: 619-233-4565
Fax: 619-233-0508
jjasnoch@scott-scott.com

*Lead Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE ETHEREUMMAX INVESTOR LITIGATION<br><br>This Document Relates To:<br><br>    ALL ACTIONS | Lead Case No. 2:22-cv-00163-MWF-SK<br><br>**REPLY IN RESPONSE TO DEFENDANT MAYWEATHER'S OPPOSITION AND IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................1

II.     ADDITIONAL RELEVANT FACTS ............................................................2

III.    ARGUMENT ...................................................................................................2

    A.      The Requirements of Rule 23(a) Have Been Established.........................2

        1.      Ascertainability ................................................................................2

        2.      Numerosity.........................................................................................7

        3.      Typicality .........................................................................................11

    B.      Plaintiffs Satisfy the Requirements of Rule 23(b)(3) .............................12

        1.      Common Issues Predominate Over Every Individualized Issue Raised by Defendant Mayweather ...................................................13

        2.      Proceeding as a Class Action Is Clearly Superior to "Wait and See" Approach Proffered by Defendant Mayweather ............................18

IV.     CONCLUSION...............................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Greenbaum v. KC Jewelry, Inc.*,
No. 2:16-cv06845-SVW-JPR, 2017 WL 5496224 (C.D. Cal. Jan. 25, 2017) ..........................5

*Balestra v. Cloud With Me Ltd.*,
No. 2:18-cv-00804, 2020 WL 4370392 (W.D. Pa. July 2, 2020) ......................................5, 19

*Castro v. Paragon Indus., Inc.*,
No. 1:19-cv-00755, 2020 WL 1984240 (E.D. Cal. Apr. 27, 2020) ...................................14

*Davy v. Paragon Coin, Inc.*,
No. 18-cv-00671, 2020 WL 4460446 (N.D. Cal. June 24, 2020)......................................19

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) .................................................................................................12

*Fisher v. CRST Van Expedited Inc*,
No. EDCV-15-878-VAP, 2016 WL 11523407 (C.D. Cal. May 4, 2016) ................................5

*Galvan v. KDI Distribuation Inc.*,
No. SACV 08-0999-JVS, 2011 WL 5116585 (C.D. Cal. Oct. 25, 2011) ................................6

*Gunaratna v. Dennis Gross Cosmetology LLC*,
No. CV 20-2311-MWF, 2023 WL 5505052 (C.D. Cal. Apr. 4, 2023)......................................2

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ...............................................................................................11

*Hillman v. Lexicon Consulting, Inc.*,
No. EDCV 16-01186-VAP, 2017 WL 10433869 (C.D. Cal. Apr. 27, 2017)..........................19

*Immigrant Assistance Project of L.A. Cnty. Fed'n of Lab. (AFL-CIO) v. I.N.S.*,
306 F.3d 842 (9th Cir. 2002) .................................................................................................11

*In re Am. Continental Corp./Lincoln Sav. and Loan Sec. Litig.*,
140 F.R.D. 425 (D. Ariz. 1992) ............................................................................................14

*In re Checking Acct. Overdraft Litig.*,
275 F.R.D. 666 (S.D. Fla. 2011) ............................................................................................16

*In re Ethereummax Inv.*,
No. CV 22-00163-MWF, 2023 WL 6787827 (C.D. Cal. June 6, 2023) ................................17

*In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*,
275 F.R.D. 382 (D. Mass. 2011)..............................................................................................8

*In re First Alliance Mortg. Co.*,
   471 F.3d 977 (9th Cir. 2006) ............................................................................14

*In re Honda Idle Stop Litig.*,
   347 F.R.D. 528 (C.D. Cal. 2024) .................................................................4, 5

*In re Korean Ramen Antitrust Litig.*,
   No. 13-cv-04115-WHO, 2017 WL 235052 (N.D. Cal. Jan. 19, 2017)...............6, 8

*In re Lidoderm Antitrust Litig.*,
   No. 14-md-02521-WHO, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017).................8

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) .................................................................................13

*Jimenez v. Allstate Ins. Co.*,
   No. LA CV10-08486, 2012 WL 1366052, (C.D. Cal. Apr. 18, 2012), *aff'd*, 765
   F.3d 1161 (9th Cir. 2014) ..............................................................................17

*Kamar v. RadioShack Corp.*,
   375 F. App'x 734 (9th Cir. 2010)..................................................................3, 4

*Kumar v. Salov N. Am. Corp.*,
   No. 14-CV-2411-YGR, 2016 WL 3844334 (N.D. Cal. July 15, 2016)...............6, 8

*Makaeff v. Trump Univ., LLC*,
   No. 3:10-cv-0940, 2014 WL 688164 (S.D. Cal. Feb. 21, 2014).....................13, 15

*Martinez v. Blu Prods., Inc.*,
   No. CV 17-2507-GW(AGRx), 2019 WL 12838199 (C.D. Cal. Oct. 3, 2019)........3

*Mazza v. Am. Honda Motor Co., Inc.*,
   666 F.3d 581 (9th Cir.2012) ......................................................................13, 15

*McCrary v. Elations Co., LLC*,
   No. EDCV 13-00242, 2014 WL 1779243, (C.D. Cal. Jan. 13, 2014) ..................13

*Otto v. Abbott Lab'ys Inc.*,
   No. 5:12-cv-01411-SVW-DTB, 2015 WL 9698992 (C.D. Cal. Sept. 29, 2015) ....5

*Panacci v. A1 Solar Power, Inc.*,
   2015 WL 3750112 (N.D. Cal. 2015) ..................................................................6

*People v. Black*,
   214 Cal. Rptr. 3d 402 (Cal. Ct. App. 2017)........................................................16

*Pepka v. Kohl's Dep't Stores, Inc.*,
   No. CV-16-4293-MWF, 2016 WL 8919460 (C.D. Cal. Dec. 21, 2016) .................5

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2010) ........................................................................12

*Ruiz Torres v. Mercer Canyons Inc.*,
   835 F.3d 1125 (9th Cir. 2016) .................................................................4

*Schoonover, v. Iovate Health Scis. U.S.A. Inc.*,
   No. 2:20-cv-01487-FLA (AGRx), 2023 WL 7107132, at *9 (C.D. Cal. Aug. 21, 2023) ...................................................................................................7

*Shields v. Walt Disney Parks and Resorts US, Inc.*,
   279 F.R.D. 529 (C.D. Cal. 2011) ............................................................9

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) .................................................................11

*Waterbury v. A1 Solar Power Inc.*,
   2016 WL 3166910 (S.D. Cal. 2016) .......................................................5

*Williams v. KuCoin*,
   No. 20-CV-2806, 2021 WL 5316013 (S.D.N.Y. Oct. 21, 2021) ...........19

*Zakinov v. Ripple Labs, Inc.*,
   No. 18-cv-06753-PJH, 2023 WL 4303644 (N.D. Cal. June 30, 2023).............4, 16

*Zaklit v. Nationstar Mortg. LLC*,
   No. 5:15-cv-2190-CAS(KKx), 2017 WL 3174901 (C.D. Cal. July 24, 2017)........7

**Statutes**

California Corporations Code §25503 ..............................................................16

Florida Securities and Investor Protection Act .................................................16

Telephone Consumer Protection Act ..................................................................5

**Other Authorities**

2 Newberg on Class Actions §4:26 (4th ed.) ...................................................18

Rule 23 .................................................................................................. *passim*

Rule 23(a) ..............................................................................................2, 7, 11, 12

Rule 23(b) ............................................................................................... *passim*

Plaintiffs Ryan Huegerich, Jonathan Semerjian, Nabil Nahlah, Till Freeman, Marko Ciklic, Tunisia Brignol, Milan Puda, Neil Shah, Michael Buckley, and Christopher DeLuca ("Plaintiffs"), through their undersigned counsel and pursuant to Federal Rules of Civil Procedure 23(a), (b)(3), and (g), respectfully submit this reply in further support of Plaintiffs' motion to certify this Action as a class action, appoint Plaintiffs as Class Representatives, and appoint Scott+Scott Attorneys at Law LLP ("Scott+Scott") as Class Counsel.[1]

## I.    INTRODUCTION

Defendant Floyd Mayweather's opposition claims that individualized issues such as ascertainability, numerosity, and typicality render class treatment unworkable, but these objections ignore the robust evidentiary record demonstrating the suitability of this case for resolution under Rule 23.  Defendant Mayweather was a central promotional force behind EthereumMax—endorsing the token at his widely viewed exhibition fight, appearing with the EMAX brand on his trunks, and participating in marketing campaigns that reached millions of consumers.  Plaintiffs' claims arise from a single, coordinated promotional effort that promoted an unregistered security to retail investors without adequate disclosures.  The resulting harm was uniform: purchasers paid inflated prices for a token with no real value, based on misrepresentations disseminated through the celebrity campaigns that Mayweather helped orchestrate.

The issues in this case are ideally suited for classwide resolution.  The relevant transactions are traceable on the Ethereum blockchain, damages are calculable using common methods, and privity can be established across the class through uniform interaction with a liquidity pool seeded by the defendants. Mayweather's suggestion that the SEC—not this Court—should determine whether investors are entitled to

---

[1]    Plaintiffs incorporate by reference all relevant arguments in the Replies to the Oppositions of Defendants Perone, Kardashian, Pierce and Rechnitz, concurrently filed herewith..

relief effectively asks the judiciary to abdicate its role in enforcing state and federal law. Class certification ensures that the thousands of defrauded purchasers can pursue recovery efficiently and collectively, rather than leaving justice to chance or to regulators whose priorities lie elsewhere. The Court should grant the motion in its entirety. For these reasons, and those set forth below, the Court should grant Plaintiffs' Motion.

## II.    ADDITIONAL RELEVANT FACTS

Plaintiffs incorporate by reference the additional facts section in Plaintiffs' Reply to the Kardashian Opposition, filed concurrently herewith.

## III.    ARGUMENT

## A.    The Requirements of Rule 23(a) Have Been Established

In his opposition, Defendant Mayweather does not challenge the commonality or adequacy elements under Rule 23(a) and only argues that Plaintiffs have not established ascertainability, numerosity, and typicality. *See* Mayweather Opp. at 5-10. Regardless, any claim that Plaintiffs' motion does not satisfy all elements required under Rule 23(a) for class certification should be rejected.

### 1.    Ascertainability

To begin, Defendant Mayweather vigorously argues that the proposed Classes cannot be identified and are not ascertainable as a result. Mayweather Opp. at 5-8. In particular, Defendant claims that the so-called "fail safe" Classes proposed in the Motion are overinclusive and vague such that the Court will be unable to determine if a particular individual is a Class member. Mayweather Opp. at 6-7.

But this argument misses the mark. As this Court has previously held: "The Ninth Circuit has explained that ascertainability is not a dispositive requirement under Rule 23. . . . And the fact that data does not exist that might list every customer who ever purchased the Products and when is not a reason to deny certification." *Gunaratna v. Dennis Gross Cosmetology LLC*, No. CV 20-2311-MWF (GJSX), 2023 WL 5505052, at *23 (C.D. Cal. Apr. 4, 2023) (granting class certification). Thus,

Defendant's disputes over ascertainability are not dispositive to the Class certification analysis.

More importantly, Defendant is wrong on the merits. "The fail-safe appellation is simply a way of labeling the obvious problems that exist when the class itself is defined in a way that precludes membership unless the liability of the defendant is established." *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010). Like in *Kamar*, here the proposed Class and Subclasses "should be seen as a way of narrowing the class . . . without actually distinguishing between those who may and those who may not ultimately turn out to be entitled to [a recovery]." *See id*. Indeed, "[s]o construed, the class action remains manageable because the definition is not a circular one that determines the scope of the class only once it is decided that a class member was actually wronged." *Id.* (further noting that "if a class member was not legally wronged, [a defendant opposing class certification] will be protected against liability to that person").

Here, despite Defendants' assertions to the contrary (*see* Mayweather Opp. at 6-7), the proposed Class and Subclasses are limited to a definite class of individuals that exist independently of whether or not Defendant was the cause of the alleged injury. There are no merits or individualized issues that require resolution before determining whether someone purchased the EMAX token. ███████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████ *See* Howell Deposition Transcript 54:11-15 (attached hereto as Exhibit A of the concurrently filed Declaration of John T. Jasnoch (the "Jasnoch Declaration")). There are no individualized inquiries into damages needed for those potential Class members, as there are none needed for those individuals that have suffered realized losses. Each are sufficiently identifiable from both the transactional records available on the blockchain and through self-identification. *See Martinez v. Blu Prods., Inc.*, No. CV 17-2507-GW(AGRx), 2019 WL 12838199, at *5 (C.D. Cal.

Oct. 3, 2019) (granting class certification and finding ascertainability satisfied because "class members may self-identify through affidavits or claim forms, and presentation of purchase and service receipts is one way that they can evidence ownership and use of one of the phones in question during the time period in question in order to support such a claim").

Defendant's reliance on *Kamar* and *Ruiz* to dispute the above (*see* Opp. at 6) is misplaced. In both cases, the Ninth Circuit rejected the argument that the proposed classes were impermissible "fail safe" definitions. *See Kamar*; *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136 (9th Cir. 2016) (affirming, as part of its predominance analysis, that the proposed definitions of Class and Subclasses were not overbroad and rejecting the argument that "a class cannot be certified if it contains both injured and non-injured parties").[2] Likewise, the proposed Class and Subclasses here do not constitute an impermissible fail-safe Class. *See Zakinov v. Ripple Labs, Inc.*, No. 18-cv-06753-PJH, 2023 WL 4303644, at *5–6 (N.D. Cal. June 30, 2023) (rejecting similar fail-safe class argument and granting class certification in a strikingly-similar crypto-related matter); *In re Honda Idle Stop Litig.*, 347 F.R.D. 528, 540 (C.D. Cal. 2024) (denying validity of fail-safe class argument and granting class certification).

Further, while more appropriately analyzed under Rule 23(b), individualized issues would not predominate litigation to the point it would render potential Class members unidentifiable. There is no need for any individualized inquiries regarding potential Class members' purchases of EMAX tokens – they either did or did not buy

---

[2] Notably, the footnote in *Ruiz* that Defendant quotes from is taken out of context. *See* Opp. at 6 (quoting Ruiz). Again, the Ninth Circuit rejected the argument that the proposed class was an impermissible fail safe class. In particular, the in-text sentence this footnote is attached to states: "For now, Plaintiffs need not downsize their legal theory that Mercer had a disclosure duty toward all members of the class, in favor of a duty to target only those most likely to be interested." *Ruiz*, 835 F.3d at 1138.

the token during the Class Period.  Similarly, they either did or did not have losses as a result of purchasing the EMAX token.  "As courts in [the Ninth Circuit] have repeatedly found, whether or not someone purchased a product at a specific time is an accessible question that can be determined on an objective basis." *Otto v. Abbott Lab'ys Inc*., No. 5:12-cv-01411-SVW-DTB, 2015 WL 9698992, at *4 (C.D. Cal. Sept. 29, 2015).  Whether or not Defendant is found to be liable at trial for losses under a given theory of liability does not change Plaintiffs' appropriately-narrowed Class definitions.  Indeed, the Class definition "does not define which putative class members are eligible for recovery and, consequently, both those entitled and not entitled to relief will remain in the class." *Fisher v. CRST Van Expedited Inc*, No. EDCV-15-878-VAP (SPx), 2016 WL 11523407, at *11 (C.D. Cal. May 4, 2016) (finding the putative Class sufficiently ascertainable).

Here, the proposed Class members can be identified definitively as opposed to those other specific circumstances where individualized issues predominated. *Compare Pepka v. Kohl's Dep't Stores, Inc.*, No. CV-16-4293-MWF (FFMx), 2016 WL 8919460, at *4 (C.D. Cal. Dec. 21, 2016) (finding proposed class of Telephone Consumer Protection Act claims would involve highly individualized inquiries regarding consent) *with In re Honda*, 347 F.R.D. at 540 ("This is a definite class of people. No liability findings at trial would change who did or did not purchase [an EMAX token].") *and Greenbaum v. KC Jewelry, Inc.*, No. 2:16-cv06845-SVW-JPR, 2017 WL 5496224, at *9 (C.D. Cal. Jan. 25, 2017) (rejecting claim that putative class of purchasers of jewelry "where the weight of diamonds indicated on the product label exceeded the actual weight of the diamonds in the jewelry" constituted a failsafe class because "[t]his is a factual determination and does not require establishing the liability of the Defendants").  Several courts have likewise rejected such "fail safe class" arguments with respect to class definitions. *See, e.g., Waterbury v. A1 Solar Power Inc*., 2016 WL 3166910, *5 (S.D. Cal. 2016) ("Plaintiffs do not use failsafe class definitions. The Court can determine membership in Plaintiffs' putative classes using

objective criteria[.]"); *Panacci v. A1 Solar Power, Inc.*, 2015 WL 3750112, *8 (N.D. Cal. 2015) ("to determine whether someone is in the class, one simply needs to answer questions such as whether the person is on a DNC registry or whether the person received a certain number of phone calls from Defendants within a certain timeframe"). So, too, should this Court reject the failsafe claim that Defendant Mayweather now contends is dispositive. After all, a lack of total ascertainability alone will generally not undermine class certification. *See Galvan v. KDI Distribution Inc.*, No. SACV 08-0999-JVS (ANx), 2011 WL 5116585, at *5 (C.D. Cal. Oct. 25, 2011) ("the class definition may include individuals who... have inadequate proof to go forward with the class. However... these ascertainability issues are not fatal to class certification and may be addressed later in the litigation").

The ascertainability analysis in *In re Korean Ramen Antitrust Litig.*, No. 13-cv-04115-WHO, 2017 WL 235052 (N.D. Cal. Jan. 19, 2017) is instructive on this point. There, the court addressed similar arguments related to self-identification as a way to satisfy ascertainability under Rule 23. In particular, the court confirmed that:

> Because absent class members can only be identified by uncorroborated self-identification, defendants argue the class is not ascertainable. However, *as the Ninth Circuit recently reaffirmed, concerns about illegitimate claims and manageability—such as those expressed by defendants here—are accounted for by other provisions of Rule 23*; that consumers do not generally save "grocery receipts and are unlikely to remember details about individual purchases of a low-cost product" like ramen, does not mean a class of consumers cannot be certified. . . . *Neither the fact that class members have to "self-identify" nor that they might not have readily available proof of purchase, means that they are not ascertainable sufficient for class certification.... Post-judgment claims forms and other tools can be used to allow defendants to test an absent class member's purported entitlement to damages and to appropriately apportion damages between class members*. . . .

*Korean Ramen*, 2017 WL 235052, at *21 (citations omitted and emphasis added); *see also Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2016 WL 3844334, at *6 (N.D. Cal. July 15, 2016) (finding class members ascertainable despite defendant's arguments that class members would have to self-identify and show "what they paid, where they purchased it, and how many times, plus whether they saw and were

deceived" by a product's label); *Schoonover, v. Iovate Health Scis. U.S.A. Inc.*, No. 2:20-cv-01487-FLA (AGRx), 2023 WL 7107132, at *9 (C.D. Cal. Aug. 21, 2023) (finding that "any difficulties – such as identifying class members [did not] weigh[ ] against certification" because "the fact that consumers may be required to self-identify is not an issue that must be resolved at the class certification stage").

Finally, Defendant Mayweather raises concerns about purported "administrative problems" with identifying Class members by geographic location. First, as discussed in his supplemental report, Dr. Clark was able to conservatively estimate the Class size in the relevant geographies. *See* Clark Reply at 2-5. These are manageable numbers for a class action, particularly one involving securities claims. Further, "the Ninth Circuit has recognized that Rule 23 does not require plaintiffs 'to satisfy an administrative feasibility prerequisite.'" *Zaklit v. Nationstar Mortg. LLC*, No. 5:15-cv-2190-CAS(KKx), 2017 WL 3174901, at *9 (C.D. Cal. July 24, 2017) (quoting *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017) ("The authors of Rule 23 opted not to make the potential administrative burdens of a class action dispositive and instead directed courts to balance the benefits of class adjudication against its costs. We lack authority to substitute our judgment for theirs.")). Plaintiffs can further identify the geographic location of potential Class members through the IP addresses used to transact EMAX tokens and/or self-identification, or a combination of both. "However difficult it may be to obtain cell site location information for each class member," it is enough for Class certification purposes that Plaintiffs "have identified a common method of proof that will allow plaintiffs to identify members of the class." *Id.*

### 2.    Numerosity

Relatedly, Defendant Mayweather also argues that Plaintiffs have failed to establish that the proposed Class is sufficiently numerous to warrant treatment as a class action under Rule 23(a)(1). *See* Mayweather Opp. at 6-7. Specifically, Defendant disputes that the number of potential Class members cannot be adequately

identified at all, much less by geographical location. *See id*. at 7. But again, this ignores the ability by potential Class members to self-identify. *See, e.g.*, *Korean Ramen*, 2017 WL 235052, at \*21; *Kumar*, 2016 WL 3844334, at \*6; *In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2017 WL 679367, at \*25 (N.D. Cal. Feb. 21, 2017) (approving of self-identification as an adequate method to ascertain potential class members).

In further support that the putative Class is sufficiently numerous, Plaintiffs' expert, Dr. Clark, identified approximately 100,000 transactions that were made by unique Ethereum addresses. *See* Clark Declaration at 14. While an individual can own/transact with multiple wallets for the same cryptocurrency, it is reasonable to infer that of the 100,000 identified unique wallets transacting in EMAX tokens, at least 40 individuals owned those wallets. Put another way, Defendants are asking the Court to find that less than 40 individuals were responsible for ***all*** of the EMAX token trading, and that each of those less than 40 individuals on average owned/controlled around 2,500 unique wallets. This is unreasonable on its face. Further, it runs counter to the actual evidence of the EMAX token transaction history submitted by the nine Class representatives (who are quintessential typical EMAX investors). All but one of the Class representatives used a single wallet address for their respective EMAX token transactions. (*See* EMXPLS_000001 attached hereto as Ex. F to the Jasnoch Decl., listing wallets addresses of Plaintiffs) and (EXMPLS_000002, attached hereto as Ex. G to the Jasnoch Decl., listing Plaintiffs wallet addresses). The lone outlier used just two wallets. *See* EMXPLS_000001. Given this evidence, it is reasonable to infer that more than 40 individuals were responsible for the 100,000 unique wallet addresses, thereby satisfying the numerosity requirement under Rule 23. *See In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 275 F.R.D. 382, 388 (D. Mass. 2011) (noting that "[a]lthough the number of class members is still unknown, because there are millions of shares outstanding and were millions of transactions during the class period, the Court can reasonably infer that there are at least hundreds, if not

thousands of class members"). Defendant Mayweather has offered no evidence other than speculation to rebut this point.

Finally, Defendant argues as a fallback that "even if Plaintiffs could identify the true number of people behind the unique addresses, Plaintiffs fail to articulate even an estimate of members in each proposed class." Mayweather Opp. at 9 (citing *Shields v. Walt Disney Parks and Resorts US, Inc*., 279 F.R.D. 529, 546 (C.D. Cal. 2011) in support). This fallback is also inaccurate. Most notably, in *Shields*, this District found that numerosity had been established generally via proffered evidence and reasonable inferences drawn therefrom. *See id*. at 545. Further, with respect to various subclasses Plaintiffs respectfully submit that there is ample evidence supporting numerosity for each of the three states. It is undisputed that in May and June 2021, cryptocurrency markets were surging, and that California, Florida, and New York were particularly active hubs of crypto activity. Multiple metrics and indicators show that California, Florida, and New York were among the leading states in crypto interest and usage during the relevant period. California exhibited the highest level of cryptocurrency interest of any state, scoring a perfect "10/10" on a composite index of search terms (well above the national average score ~6.2 on that scale). Florida ranked as the 3rd most crypto-interested state (index score 9.01) and New York 6th (score 7.68) over the same period. In other words, all three states showed 20–60% higher crypto-related search activity than the average state, a strong proxy for above-average user engagement in crypto markets.[3]

Additionally, an industry analysis ranked California as the #1 most "crypto-ready" state in 2021. Florida and New York also scored among the top five states, indicating above-average crypto interest. Class members in California, Florida, and

---

[3] https://thefintechtimes.com/california-is-the-biggest-crypto-market-in-the-us-recent-study-reveals/#:~:text=The%20data%20showed%20that%20California,10%20across%20all%20search%20terms

New York almost certainly each comprised a large slice of EthereumMax's holder base given their outsized crypto communities.[4] EthereumMax's marketing also had a notable focus on Florida (Mayweather Fight (¶¶106; 130;  133; 134; 147; 148; 149; 153, bitcoin conference (¶143), Club LIV (¶¶101; 133; 134; 137; 149), and a May 28, 2021 press release[5]) and California (LA press releases (¶¶130; 131; 134; 135), Paul Pierce and ESPN (¶¶76; 77; 130), and Kim Kardashian (¶¶84; 137; 138; 157; 158)). And the Company already admitted to the number of holders in their press releases. (*see* May 28, 2021 LA press release - 32,000 holders[6]; May 30 Miami press release says 50,000 token holders[7]; June 15 Miami press release - 100k holders in a month[8]).

Further, in response to specific criticisms from Defendants claiming that the proffered methodology for Class member identification is insufficiently described, Dr. Clark performed an initial analysis of the identification methods previously outlined and the relevant Ethereum blockchain data.  Dr. Clark first identified the unique Ethereum addresses that conducted purchases of EMAX tokens during the relevant period. *See* Clark Reply at 2-3.  With respect to the general identification of Class members, transactions to Uniswap are routed through upstream infrastructure that does capture and log personal identifying information.  As Dr. Clark explained in his reply, common Ethereum wallet software—such as MetaMask and Coinbase

---

[4] https://cointelegraph.com/news/california-named-most-crypto-ready-us-state#:~:text=With%20a%20score%20of%205,higher%20than%20the%20national%20average

[5] https://www.prnewswire.com/news-releases/ethereummax-emax-disrupts-miami-ahead-of-mayweather-vs-paul-fight-as-the-first-crypto-currency-of-major-nightclubs-liv-and-story-301301958.html

[6] https://www.prnewswire.com/news-releases/emax-is-the-1-trending-crypto-across-all-exchanges-worldwide-301301813.html

[7] https://www.prnewswire.com/news-releases/emax-becomes-one-of-the-fastest-growing-tokens-in-history-301302070.html

[8] https://www.prnewswire.com/news-releases/ethereummax-catches-the-eye-of-bigger-exchanges-301312521.html

Wallet—routes user transactions through default remote procedure call services (Infura and Coinbase, respectively) that collect users' IP addresses.  These IP addresses are tied to specific individuals in specific geographic regions and could be used to reliably determine the location of EMAX purchasers at the time of their transactions.

In fact, after applying demographic proxies and national-level Ethereum usage data, Dr. Clark was able to conservatively estimate the class size in the relevant geographies.  *See* Clark Reply at 2-5.  Notably, the proposed methodology identified the following estimated Class/Subclass sizes by geographic location: Nationwide: 3219-8602; California: 384-1026; Florida: 209-559; New York: 196-524; and New Jersey: 90-241.  Clark Reply at 4-5.  Each of these proposed Classes satisfies the low bar for numerosity. *See Immigrant Assistance Project of L.A. Cnty. Fed'n of Lab. (AFL-CIO) v. I.N.S.*, 306 F.3d 842, 869 (9th Cir. 2002).

In short, Plaintiffs satisfy the numerosity requirement here.

### 3.    Typicality

Defendant Mayweather's challenge to typicality under Rule 23(a)(3) (*see* Mayweather Opp. at 9-10) rests on the thinnest of reeds.  In particular, Defendant argues that because the Class representatives purchased their EMAX tokens through the Uniswap cryptocurrency exchange and the Class definitions include individuals that purchases on other exchanges, this renders the Class representatives atypical because the putative Class definition does not "address any differences in fees or slippage rates for the other exchanges that purchasers used."  *See* Mayweather Opp. at 9.  First, typicality "does not mean that claims of class representatives must be identical or substantially identical to those of absent class members." *Staton v. Boeing Co.,* 327 F.3d 938, 957 n.6 (9th Cir. 2003). So long as the class representative's claims are "reasonably co-extensive with those of absent class members," they are considered typical for class certification. *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1020 (9th Cir. 1998).

Here, the Class representatives and the Class members were subjected to and injured by the same course of conduct by the same Defendants and make similar claims, regardless of which particular exchange was used to purchase the EMAX tokens. This is sufficient to establish typicality under Rule 23(a). *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) ("Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought . . . ."); *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (typicality satisfied where representatives raise similar constitutionally-based arguments and are alleged victims of the same practice despite not having raised identical claims).

Further, Plaintiffs have submitted evidence from their expert Dr. Clark that demonstrates that "[o]ver the relevant period, different DEXes were used to trade EMAX but Uniswap v2 accounted for the majority" and EMAX tokens transactions on Uniswap were "2 orders of magnitude more than any other [exchange]" (i.e. 100 times greater). Clark Report at 12. Thus, Class representatives that used Uniswap are very much typical of the overwhelming majority of absentee Class members.

**B.  Plaintiffs Satisfy the Requirements of Rule 23(b)(3)**

Defendant Mayweather next argues that the proposed Class and Subclasses do not satisfy either the predominance or superiority requirements for certification under Rule 23(b). Specifically, Defendant contends that, with respect to Claims 8 and 13 individual issues related to each putative Class members' exposure to the alleged misrepresentations predominate. *See* Mayweather Opp. at 11-15. Relatedly, Defendant asserts that Claim 2—unfair practices under the UCL—requires individualized inquiries and cannot, as a matter of law, be certified. *Id.* at 15. Defendant also argues that choice of law inquiries and a purported lack of Class-wide evidence precludes certification of the Securities Claims. *Id.* at 15-20. Defendant further contends that there is nothing to demonstrate that damages are capable of Class-wide calculation and concludes that individual inquiries will predominate over

common issues.  Mayweather Opp. at 20-21.  Turning to the superiority prong of Rule 23(b), Defendant simply argues that allowing the Securities and Exchange Commission ("SEC") to regulate crypto-related issues raised by this Action is superior to class action litigation.  *Id*. at 21-23.  For the reasons below, Defendant is wrong on each point.

### 1. Common Issues Predominate Over Every Individualized Issue Raised by Defendant Mayweather

Defendant Mayweather raises several complaints about how a variety of individualized issues will predominate over any common questions.  But these complaints are all based on misapplications of law and a studious ignorance of Plaintiffs' showing for Class certification.

To begin, Defendant argues that Plaintiffs failed to demonstrate Class-wide exposure to the misrepresentation and then incorrectly concludes that the proposed Class and Subclasses suffer from too many individualized inquiries that will ultimately predominate over common issues.  See Mayweather Opp. at 15-19.  This is incorrect twice over.

First, "the class definition presupposes exposure to" the alleged misrepresentations and "[a]ny person who did not view the claims is not a class member and cannot raise any individualized issues" *McCrary v. Elations Co., LLC*, No. EDCV 13-00242 JGB (OPx), 2014 WL 1779243, at *13 (C.D. Cal. Jan. 13, 2014) (distinguishing *Mazza v. Am. Honda Motor Co., Inc*., 666 F.3d 581, 595 (9th Cir.2012) and finding that individualized issues regarding what misrepresentations on package label putative class members were exposed to did not predominate).

Additionally, with respect to the state law consumer protection claims, "individualized determinations as to reliance and causation are not required as long as certain facts exist to trigger the inferences and presumptions." *Makaeff v. Trump Univ., LLC*, No. 3:10-cv-0940, 2014 WL 688164, at *12 (S.D. Cal. Feb. 21, 2014) (analyzing *In re Tobacco II Cases*, 46 Cal. 4th 298, 305 (2009) and granting class

certification of UCL claim even though "the advertising and promotional activities in the instant case were not part of a massive advertising campaign").

Here, there are two possible presumptions about reliance that apply. First, reliance may be presumed where pervasive advertising makes it highly likely that all putative Class members were exposed to a material misrepresentation. Second, reliance is inferred in some securities fraud claims under a "fraud-on-the-market" theory.

Defendant Mayweather made a standardized marketing campaign that promoted a single, uniform message to putative Class members: Mayweather had put his reputation behind the EthereumMax project and promoted the purchase of the token for use at his events. Defendant has failed to produce any credible, contrary evidence demonstrating that he did not engage in a standardized marketing campaign when he advertised EMAX on his shorts during a fight, on a t-shirt during the fight weigh-in, advertised the after party at Club LIV, and repeatedly posted about EMAX on his social media and fight website. ¶¶ 89, 133, 134, 147, 149.[9] This single promotional message was not diluted by information about other cryptocurrencies or crypto-related ventures being supported or endorsed by Defendant Mayweather.

The Ninth Circuit has long held that class treatment has been permitted where there is evidence that a "standardized sales pitch is employed." *See, e.g.*, *In re First Alliance Mortg. Co.*, 471 F.3d 977, 991 (9th Cir. 2006); *In re Am. Continental Corp./Lincoln Sav. and Loan Sec. Litig.*, 140 F.R.D. 425, 430 (D. Ariz. 1992) ("Class actions are appropriately utilized in situations where a 'standardized sales pitch' is employed."); *see also Castro v. Paragon Indus., Inc.*, No. 1:19-cv-00755, 2020 WL 1984240, at *10 (E.D. Cal. Apr. 27, 2020) ("Class actions in which a defendant's uniform policies are challenged generally satisfy the predominance requirement of

---

[9] Unless otherwise noted, all ¶ and ¶¶ references are to Plaintiffs' Third Amended Class Action Complaint ("TAC"), ECF No. 190, and all terms and acronyms are defined and used as in the TAC.

Rule 23(b)(3).").  Further, "unlike the limited advertising" in *Mazza v. Am. Honda Motor Co., Inc*., 666 F.3d 581, 595 (9th Cir. 2012) (upon which Defendant heavily relies (*see* Mayweather Opp. at 14, 16-17)), there is evidence that Defendant Mayweather's promotional campaign for Ethereummax was "uniform, highly orchestrated, concentrated and focused on its intended audience." *See Makaeff*, 2014 WL 688164, at *13.  For example, evidence shows that Defendant Mayweather's promotional campaign was "highly orchestrated" by Defendants Mayweather, Rechnitz, and Perone.  ¶129-134.  Further, Mayweather's campaign was concentrated and focused on its intended audience, namely fans of Mayweather who were also crypto enthusiasts and investors.  ¶¶ 143-149.

Like in *Makaeff*, "the effect of [Defendant Mayweather's promotional] campaign was to make it highly likely that each member of the putative class was exposed to the same misrepresentations." *Id.*  There is substantial evidence that Class members purchased EMAX tokens for reasons that track the advertising and promotional information provided in the highly orchestrated EMAX token campaign surrounding the Mayweather-Paul boxing exhibition match.  Because individualized issues do not and cannot predominate over common issues, predominance under Rule 23(b) is satisfied.  *See id*.

Second, the application of the "fraud-on-the-market" presumption of reliance is warranted here, and it further confirms that individualized issues will not predominate.  As Dr. Clark explained, there is a method that can be used to show the impact and materiality of the promotions by the Promoter Defendants.[10]  *See* Clark Reply at 11-13.  Because individualized issues do not and cannot predominate over the aforementioned common issues, predominance under Rule 23(b) is satisfied.  *See id*.

---

[10] This same method is equally applicable to show the impact of each promotion by the Promoter Defendants on sales of the EMAX token.

Turning to the Securities Claims, Defendant Mayweather argues that Plaintiffs' choice of law and a purported lack of Class-wide evidence will predominate the securities claims. *See* Mayweather Opp. at 16-17. But, as discussed in greater detail in Plaintiffs' opening brief (ECF No. 242, pg. 6-7), both the California Corporate Securities Law and Florida Securities and Investor Protection Act are fully capable of Class-wide adjudication on the common issue of whether the EMAX token qualified as a security requiring government registration prior to a public sale. *See People v. Black*, 214 Cal. Rptr. 3d 402, 411–12 (Cal. Ct. App. 2017) (noting that a transaction constitutes a security under both California and Florida law if it satisfies the *Howey* test or the functionally equivalent "risk capital" test). Thus, "irrespective of the individual issues which may arise, the focus of the litigation concerns the alleged common course of unfair conduct embodied in [EthereumMax's] scheme" to market and sell unregistered securities. *See In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 666, 676 (S.D. Fla. 2011).

Further, the court in *Ripple* squarely addressed the same argument raised here and provided reasoned analysis of why such an argument was insufficient to demonstrate that individualized issues will predominate over common ones. *See* 2023 WL 4303644, at *7-8 (N.D. Cal. June 30, 2023) (granting certification of a state securities claims class for alleged violations of California Corporations Code §25503 against defendants for a primary violation of §25110's restriction on the offer or sale of unregistered securities). Plaintiffs respectfully submit that the class certification decision in *Ripple* is the most on-point analysis on the relevant issues, and this Court should adopt its reasoning and reach a similar conclusion here.

Defendant further argues that there is a lack of Class-wide evidence of reliance for the securities claims. *See* Mayweather Opp. at 19-20. But for the reasons stated above, the satisfaction of the reliance element for the consumer protection claims is equally applicable to the securities claims. As such, the Court should reject this argument as applied to both groups of claims.

Defendant Mayweather also contends that Plaintiffs failed to demonstrate that privity is provable and thus cannot satisfy predominance under Rule 23(b). *See* Mayweather Opp. at 20.  As previously explained , Plaintiffs have proffered a method by which privity can be established via the EMAX token liquidity pool.  In fact, the Court even acknowledged this in a previous order: "[i]n the absence of expert analysis describing the intricacies of the relevant trading platform, the Court is unwilling to conclude, as a matter of law, that Plaintiffs will be unable to prove some form of 'privity.'" *In re Ethereummax Inv.*, No. CV 22-00163-MWF (SKx), 2023 WL 6787827, at *1 (C.D. Cal. June 6, 2023).  Individual privity issues will not predominate over common issues because all Class members will be subject to the same pervading common question: did the putative Class member purchase EMAX tokens during the relevant time period when the EMAX liquidity pool was funded by the Executive Defendants?

Finally, Defendant Mayweather wrongly argues that Plaintiffs failed to demonstrate that the damages are capable of Class-wide calculation. *See* Mayweather Opp. at 20.  In the present Motion, Plaintiffs provided three different methods capable of proving damages: (1) overpayment due to inaccurate promotions; (2) using profit and loss metrics for all EMAX token transactions taken from publicly-available information on the Ethereum blockchain; and (3) a nominal damages method of calculation.

Nevertheless, Defendant Mayweather insists that Plaintiffs made no damages showing at all and then argues that individualized inquiries into Class member damages defeat predominance. *See* Mayweather Opp. at 20-21.  But as this District has previously stated, such damages inquiries "can be addressed in the future, and is not a sufficient basis to find a lack of superiority at the class certification stage." *Jimenez v. Allstate Ins. Co.*, No. LA CV10-08486 JAK (FFMx), 2012 WL 1366052, at *21 (C.D. Cal. Apr. 18, 2012), *aff'd*, 765 F.3d 1161 (9th Cir. 2014); *see also* 2 NEWBERG ON CLASS ACTIONS §4:26 (4th ed.) ("The 'risk [that individual damage

calculations will be unmanageable] is better addressed down the road, if necessary'
by altering or amending the class, not by denying certification at the outset.").

### 2. Proceeding as a Class Action Is Clearly Superior to "Wait and See" Approach Proffered by Defendant Mayweather

Defendant Mayweather insists that the superior method to resolve the issues raised by this Action would be to defer entirely to the SEC on all matters involving cryptocurrencies, and then presumably "wait and see" what action the SEC takes (if any). *See* Mayweather Opp. at 21-22. This is hardly a superior method of adjudicating the putative Class members' claims. In fact, this approach could result in no resolution at all for Plaintiffs should the SEC focus its attention elsewhere, leaving individuals with no recourse to have their securities claims adjudicated. Alternatively, the SEC could ultimately determine that a given digital asset is not subject to securities laws, but in the interim, similarly-situated individuals would be barred from seeking Class recovery under non-securities theories of liability and may see the statute of limitations run on those consumer protection claims while the SEC makes its own determinations. Equally bad, even if the SEC did take action—as it did with the Consent Orders against Defendants Kardashian and Pierce for violations of securities laws in conjunction with the promotion of EMAX tokens (ECF Nos. 85, 140)—there is no guarantee that any recovery from the fines or monetary penalties collected as a result of a SEC action would actually make it back to investors. In fact, as of the filing of this reply, the SEC's website still does not list EthereumMax as one of the SEC actions where the government makes distributions to harmed investors[11]—despite having entered into the relevant consent orders over 2 years earlier.

Defendant's method of SEC deference does not give individuals any realistic form of resolving their claims, and as such, it cannot be considered superior to Class action litigation. As is the case should Class certification be denied in favor of

---

[11] https://www.sec.gov/enforcement-litigation/distributions-harmed-investors (last visited May 27, 2025).

numerous high-risk, low-reward individual actions, "it is unlikely that these claims would be litigated at all" should this Court agree that Defendant's idea of complete reliance on the SEC is superior method to "adjudicate" the controversies raised here. *Hillman v. Lexicon Consulting, Inc.*, No. EDCV 16-01186-VAP (SPx), 2017 WL 10433869, at *5 (C.D. Cal. Apr. 27, 2017) (finding superiority satisfied under Rule 23(b)(3)); *see also Williams v. KuCoin*, No. 20-CV-2806, 2021 WL 5316013, at *15-17 (S.D.N.Y. Oct. 21, 2021) (finding a class action to be superior in a similar digital asset class action); *Balestra v. Cloud With Me Ltd.*, No. 2:18-cv-00804, 2020 WL 4370392 (W.D. Pa. July 2, 2020); *Davy v. Paragon Coin, Inc.*, No. 18-cv-00671, 2020 WL 4460446 (N.D. Cal. June 24, 2020). A class action is clearly the superior method of adjudication here.

## IV. CONCLUSION

For the foregoing reasons and those set forth in the Motion, Plaintiffs respectfully request that the Court: (a) certify the Class and Subclasses; (b) appoint Plaintiffs to serve as Class Representatives for the Class and Subclasses; and (c) appoint Scott+Scott to serve as Class Counsel.[12]

Dated: May 27, 2025                     Respectfully submitted,


                                         *s/ John T. Jasnoch*
                                        John T. Jasnoch (CA 281605)
                                        **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
                                        600 W. Broadway, Suite 3300
                                        San Diego, CA 92101
                                        Telephone: 619-233-4565
                                        Facsimile: 619-233-0508
                                        jjasnoch@scott-scott.com

                                        *Lead Counsel for Plaintiffs and the Proposed Class*

---

[12] To the extent that the Court rules that the proposed Class or Subclasses do not fully satisfy the requirements of Rule 23(a) or (b), Plaintiffs respectfully request that the Court deny the Motion without prejudice to re-filing.

1

## CERTIFICATE OF COMPLIANCE

2   The undersigned counsel of record for Plaintiffs certifies that this brief

3 contains 5,775 words, which complies with the word limit of L.R. 11-6.1.

4

5 Dated:  May 27, 2025   */s/ John T. Jasnoch*

6             John T. Jasnoch

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I, John T. Jasnoch, hereby certify that on May 27, 2025, I caused the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

Executed on May 27, 2025, at San Diego, California.

*/s/ John T. Jasnoch*
John T. Jasnoch