COOLEY LLP
TRAVIS LEBLANC (251097)
(tleblanc@cooley.com)
MATTHEW D. CAPLAN (260388)
(mcaplan@cooley.com)
CAROLINE A. LEBEL (340067)
(clebel@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

MAX SLADEK DE LA CAL (324961)
(msladekdelacal@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, California 90401
Telephone: +1 310 883 6527
Facsimile: +1 310 883 6500

ROBBY L.R. SALDAÑA (356226)
(rsaldana@cooley.com)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone: +1 202 776 2109
Facsimile: +1 202 842 7899

Attorneys for Defendant
KIM KARDASHIAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| IN RE ETHEREUMMAX INVESTOR LITIGATION<br><br>_____<br><br>This Document Relates to:<br><br>ALL ACTIONS. | Lead Case No. CV 22-163 MWF (SKx)<br><br>**DEFENDANT KIM KARDASHIAN'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date: June 16, 2025<br>Time: 10:00 a.m.<br>Place: First Street Courthouse<br>Courtroom 5A<br>Judge: Hon. Michael W. Fitzgerald<br><br>Trial Date: January 27, 2026<br>Action Filed: January 07, 2022 |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................................................. 1

II.  BACKGROUND .................................................................................................. 2

    A.  EMAX and Plaintiffs' Contentions About Kardashian. ......................... 2

    B.  Substantial Promotional Activity from Other Defendants and Third Parties. ............................................................................................... 3

    C.  The Substantial Differences Amongst Plaintiffs and EMAX Purchasers. ........................................................................................... 4

    D.  Plaintiffs' Dubious Allegations Regarding Alleged Purchases. ........... 4

    E.  Plaintiffs' Motion for Class Certification. ............................................ 5

III.  LEGAL STANDARD .......................................................................................... 6

IV.  THE COURT SHOULD NOT CERTIFY ANY CLASS AGAINST KARDASHIAN ................................................................................................... 7

    A.  Defects in Plaintiffs' Motion. ................................................................ 7

        1.  Plaintiffs fail to meet their evidentiary burden. .......................... 7

        2.  Plaintiffs' proposed classes are impermissible "fail safe" classes. ......................................................................................... 9

        3.  Plaintiffs fail to distinguish amongst their varying claims. ....... 10

    B.  Plaintiffs Do Not Meet Rule 23(a)'s Requirements. ........................... 10

        1.  Plaintiffs fail to establish numerosity for each class. ............... 11

        2.  Plaintiffs fail to establish commonality. ................................... 12

        3.  Plaintiffs fail to establish typicality. ......................................... 13

        4.  Plaintiffs fail to establish adequacy. ......................................... 15

    C.  Plaintiffs Fail to Satisfy Rule 23(b)'s Requirements. ......................... 15

        1.  Individualized issues predominate. ............................................ 16

        2.  Plaintiffs' proposed damages model is fatally flawed. ............. 17

            a.  Dr. Clark's "simple model" proposes no method to calculate class-wide damages. ....................................... 18

            b.  Dr. Dimofte's "preliminary analysis" is defective. ........ 19

        3.  Plaintiffs fail to show superiority. ............................................. 21

    D.  Plaintiffs' Proposed Trial and Notice Plans Are Irrelevant. ............... 22

V.  CONCLUSION .................................................................................................. 22

CERTIFICATE OF COMPLIANCE .......................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahussain v. GNC Franchising, LLC*,
  2008 WL 11336812 (C.D. Cal. Mar. 19, 2008) ................................... 11

*Angulo v. Providence Health & Servs. – Washington*,
  2024 WL 3744258 (W.D. Wash. Aug. 9, 2024) ..................................... 9

*Berger v. Home Depot USA Inc.*,
  2011 WL 13224881 (C.D. Cal. 2011) ................................................ 13

*Berger v. Home Depot USA, Inc.*,
  741 F.3d 1061 (9th Cir. 2014) ........................................... 7, 10, 17

*Betts v. Reliable Collection Agency, Ltd.*,
  659 F.2d 1000 (9th Cir. 1981) ................................................... 7, 11

*Black Lives Matter Los Angeles v. City of Los Angeles*,
  113 F.4th 1249 (9th Cir. 2024) ............................................. 6, 9, 12

*Cabrera v. Bayer Healthcare LLC*,
  2024 WL 1699357 (C.D. Cal. Feb. 23, 2024) ..................................... 15

*Circle Click Media LLC v. Regus Mgmt. Grp. LLC*,
  2016 WL 2593654 (N.D. Cal. May 5, 2016) ....................................... 16

*In re Clorox Consumer Litig.*,
  301 F.R.D. 436 (N.D. Cal. 2014) ................................................. 22

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) ........................................................... *passim*

*Cunningham v. Vivint, Inc.*,
  2022 WL 2291669 (D. Utah June 24, 2022) ......................................... 8

*Dunn v. Costco Wholesale Corp.*,
  2021 WL 4205620 (C.D. Cal. Jul. 30, 2021) ................................... 12, 14

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) .................................................... 15

*Fagan v. Neutrogena Corp.*,
  2017 WL 11418358 (C.D. Cal. Oct. 24, 2017) ..................................... 18

# TABLE OF AUTHORITIES
### continued

Page(s)

*In re: First Am. Home Buyers Prot. Corp. Class Action Litig.*,
  313 F.R.D. 578 (S.D. Cal. 2016) ........................................................................ 17

*Gaudin v. Saxon Mortg. Servs., Inc.*,
  297 F.R.D. 417 (N.D. Cal. 2013) ...................................................................... 15

*Gomez v. Rossi Concrete, Inc.*,
  270 F.R.D. 579 (S.D. Cal. 2010) ...................................................................... 11

*Hanon v. Dataprods. Corp.*,
  976 F.2d 497 (9th Cir. 1992) ..................................................................13, 14, 15

*Hawkins v. Kroger Co.*,
  906 F.3d 763 (9th Cir. 2018) ............................................................................ 10

*Jones v. ConAgra Foods, Inc.*,
  2014 WL 2702726 (N.D. Cal. Jun. 13, 2014) .................................................. 22

*Kronenberg v. Allstate Ins. Co.*,
  743 F. Supp. 3d 465 (E.D.N.Y. 2024) .............................................................. 16

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) ............................................................................ 17

*Nevarez v. Costco Wholesale Corp.*,
  2019 WL 7421960 (C.D. Cal. Dec. 26, 2019) ................................................... 7

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022) (en banc) .......................................................7, 9, 12

*Otto v. Abbott Lab'ys Inc.*,
  2015 WL 9698992 (C.D. Cal. Sep. 29, 2015) .................................................. 22

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) ............................................................................ 11

*PB Prop. Mgmt., Inc. v. Goodman Mfg. Co., LP*,
  2016 WL 7666179 (M.D. Fla. May 12, 2016) ................................................. 16

*Peterson v. Cellco P'ship*,
  164 Cal. App. 4th 1583 (2008) ......................................................................... 10

COOLEY LLP
ATTORNEYS AT LAW

iii

DEF. KARDASHIAN'S OPP. TO
PLS' MOT. FOR CLASS CERT.
LEAD CASE NO.CV 22-163 MWF (SKx)

# TABLE OF AUTHORITIES
## continued

Page(s)

*Pierce-Nunes v. Toshiba Am. Info. Sys., Inc.*,
    2016 WL 5920345 (C.D. Cal. June 23, 2016)......................................................14

*Refuerzo v. Southwest Airlines Co.*,
    2024 WL 4177936 (N.D. Cal. Sep. 12, 2024)......................................................11

*Reitman v. Champion Petfoods USA*,
    2019 WL 7169792 (C.D. Cal. Oct. 30, 2019) .....................................................16

*Robey v. SPARC Group LLC*,
    256 N.J. 541 (2024).............................................................................................10

*Rollins, Inc. v. Heller*,
    454 So. 2d 580 (Fla. 3d DCA 1984)..................................................................10

*Sandoval v. Pharmacare US, Inc.*,
    2016 WL 3554919 (S.D. Cal. June 10, 2016).....................................................17

*Schwartz v. Upper Deck Co.*,
    183 F.R.D. 672 (S.D. Cal. 1999)........................................................................11

*Sirko v. Int'l Bus. Machs. Corp.*,
    2014 WL 4452699 (C.D. Cal. Sept. 3, 2014)........................................................7

*Small v. Lorillard Tobacco Co., Inc.*,
    94 N.Y. 2d 43 (1999)..........................................................................................10

*Stewart v. Luna*,
    2025 WL 26792 (C.D. Cal. Jan. 3, 2025)..............................................................9

*In re Tobacco II Cases*,
    46 Cal.4th 298 (2009).........................................................................................17

*Townsend v. Monster Beverage Corp.*,
    303 F. Supp. 3d 1010 (C.D. Cal. 2018)..............................................................20

*In re Tropicana Orange Juice Mktg. and Sales Practices Litig.*,
    2018 WL 497071 (D.N.J. Jan. 22, 2018) ...........................................................16

*Uschold v. Carriage Servs., Inc.*,
    2020 WL 1466172 (N.D. Cal. Mar. 6, 2020) ........................................................9

Cooley LLP
Attorneys at Law

iv

Def. Kardashian's Opp. to
Pls' Mot. for Class Cert.
Lead Case No.CV 22-163 MWF (SKx)

# TABLE OF AUTHORITIES
### continued

**Page(s)**

*Valentine v. Crocs, Inc.*,
   2024 WL 5339457 (N.D. Cal. Oct. 16, 2024) .................................................. 14

*In re Vaxart, Inc. Securities Litig.*,
   738 F. Supp. 3d 1259 (N.D. Cal. July 2, 2024) ............................................. 8

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ................................................................................ 12, 15

*Woulfe v. Universal City Studios LLC*,
   2023 WL 6376152 (C.D. Cal. Aug. 28, 2023) ............................................. 9

*Yadlosky v. Grant Thorton, LLP*,
   197 F.R.D. 292 (E.D. Mich. 2000) ................................................................ 7

**Statutes**

Cal. Bus. & Prof. Code
   § 17200 ........................................................................................... 1, 2, 5, 10
   § 17500 ........................................................................................... 1, 2, 5, 10

Fla. Stat. Ann. Ch. 501, § 211 ............................................................. 1, 2, 5, 10

N.J.S.A. §§ 56:8-1 to 156 ...................................................................... 1, 2, 5, 10

N.Y. Gen. Bus. L., Art. 22-A, § 349 ...................................................... 1, 2, 5, 10

**Other Authorities**

Fed. R. Civ. P.
   23 ..................................................................................................... *passim*
   23(a) ................................................................................................ *passim*
   23(a)(2) .................................................................................................... 12
   23(b) ........................................................................................... 1, 15, 16
   23(b)(3) ..................................................................................... 2, 5, 7, 15
   23(c)(2) .................................................................................................... 22

COOLEY LLP
ATTORNEYS AT LAW

## I.    INTRODUCTION

Plaintiffs[1] do not meet their burden to certify any class for the remaining claims against Defendant Kim Kardashian ("Kardashian").[2]  Plaintiffs fall short of their evidentiary burden under Rule 23 by relying almost exclusively on unverified allegations in the complaint.  Plaintiffs' proposed classes are impermissible fail-safe classes because membership turns on whether a putative class member was purportedly "damaged" by purchasing EthereumMAX ("EMAX") Tokens.  Moreover, Plaintiffs make no attempt to satisfy Rule 23's requirements for any of their claims against Kardashian.  Even if the Court looks beyond these threshold defects, Plaintiffs' proposed classes for the claims asserted against Kardashian cannot be certified for several reasons.

*First*, Plaintiffs fail to establish numerosity, commonality, typicality, or adequacy under Rule 23(a) for all proposed state-law-claim classes with claims against Kardashian.  Plaintiffs offer no evidence that each proposed class is numerous.  Plaintiffs fail to identify common questions.  They merely rely on unsupported, sweeping assertions that "Defendants made uniform representations" about EMAX to which putative class members were purportedly exposed.  Plaintiffs fail to show their claims are typical of the putative classes.  Several Plaintiffs could not have even purchased EMAX based on Kardashian's posts.

*Second*, Plaintiffs fail to meet Rule 23(b)'s demanding requirement to show that common issues will predominate over individualized issues.  Plaintiffs' survey

---

[1] "Plaintiffs" are Ryan Huegerich, Jonathan Semerjian, Nabil Nahlah, Till Freeman, Marko Ciklic, Tunisia Brignol, Milan Puda, Neil Shah, Michael Buckley, and Christopher DeLuca.

[2] The claims against Kardashian are under the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"); California False Advertising Law, Cal. Bus. & Prof. Code § 17500 ("FAL"); Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. Ch. 501, § 211 ("FDUTPA"); New York's General Business Law, Art. 22-A, § 349 ("GBL"); the New Jersey Consumer Fraud Act, NJSA §§ 56:8-1 to 156 ("NJCFA"); and unjust enrichment/restitution under California law.  (ECF No. 242-1 ("Mot."), 1.)

1    expert shows that individualized issues predominate.  Plaintiffs propose no reliable

2    method to show or calculate damages on a class-wide basis.  The "simple model" and

3    "preliminary analysis" proposed by Plaintiffs' purported experts wholly fail to meet

4    standards of reliability and fit under *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013).

5    Nor do Plaintiffs satisfy the superiority requirement under Rule 23(b)(3).

6         Accordingly, the Court should deny Plaintiffs' Motion with prejudice.[3]

7    **II.    BACKGROUND**

8         **A.    EMAX and Plaintiffs' Contentions About Kardashian.**

9         EMAX is a cryptocurrency project concerning the EMAX Token, a

10   blockchain-based digital asset launched in May 2021.  (¶¶ 31-32, 51.)  EMAX's

11   executive team (not Kardashian) allegedly orchestrated a "pump-and-dump" scheme

12   to promote the EMAX Tokens. (¶¶ 2, 20, 43.)  Most of Plaintiffs' allegations concern

13   Defendants other than Kardashian.  (*E.g.*, ¶¶ 60-64, 114-117, 121-123, 141-145, 147-

14   150, 152-155.)[4]

15        Plaintiffs allege Kardashian promoted EMAX in two Instagram stories posted

16   in May and June 2021.  They assert the following claims against her based on these

17   posts: (1) UCL; (2) FAL; (3) FDUTPA; (4) GBL; (5) NJCFA; and (6) an alternative

18   "unjust enrichment/restitution" claim.  (¶¶ 137, 156, 196-401, 516-521.)[5]

19        Apart from her two alleged Instagram posts (which Plaintiffs' Motion does not

20   describe), Plaintiffs do not allege that Kardashian engaged in any other activity

21

22   [3] Unless otherwise noted, for citations, emphasis is added, and internal citations or
     quotations marks are omitted.  All "¶" references are to ECF No. 190 ("TAC").

23

24   [4] The Executive Defendants are EMAX Holdings, LLC ("EMAX Holdings"),
     Giovanni Perone, Mike Speer, Justin Maher, and Jona Rechnitz.  (TAC at 1.)  The

25   Celebrity Defendants are Kardashian, Floyd Mayweather, Jr., Paul Pierce, Russell
     Davis, and Antonio Brown.  (*Id.*)

26
     [5] The Court dismissed without leave to amend Plaintiffs' UCL, FAL, FDUTPA,
27   GBL, and NJCFA claims ("Consumer Law Claims") against Kardashian to the extent
     they were premised on the phrase "sharing what my friend just told me." (ECF No.
28   161 at 50-51.)

Cooley LLP
Attorneys at Law

2

Def. Kardashian's Opp. to
Pls' Mot. for Class Cert.
Lead Case No.CV 22-163 MWF (SKx)

related to EMAX.  Plaintiffs' allegations fail to explain how Kardashian benefited from the alleged pump-and-dump scheme.  They concede EMAX began to "***deflate*** immediately after Ms. Kardashian's [second] post." (¶ 172.)  Plaintiffs present no evidence that Kardashian used the "token's liquidity pool . . . as a piggybank," "dumped [or even had] EMAX Tokens," or "directed" "marketing and sales efforts." (Mot. 3-4, 19.)

## B.    Substantial Promotional Activity from Other Defendants and Third Parties.

Despite Plaintiffs' attempt to lump all Defendants together, their allegations reveal the ten Defendants engaged in an array of alleged promotional activity between May and June 2021.  For example:

- Plaintiffs allege Maher posted about EMAX on May 14, 15, 17, and June 4 on at least two Facebook pages.  (¶¶ 60-61, 63, 144.)
- Perone allegedly posted on his channels or those belonging to EMAX Holdings on May 16, 19, 23, 26, June 4, and 8.  (¶¶ 62, 121, 123, 130-31, 144, 152.)
- Speer allegedly posted on May 16 and 21.  (¶¶ 114, 122.)
- Pierce allegedly posted on May 26, 28 and 30.  (¶¶ 76, 79, 82.)
- Brown allegedly posted on May 29.  (¶ 136.)
- Davis allegedly posted on May 16, 18, and June 6.  (¶¶ 64, 112, 150.)
- Mayweather allegedly promoted EMAX at a conference on June 4 and a "highly viewed exhibition boxing match" and afterparty on June 6.  (¶¶ 143, 147-149.)
- EMAX Holdings allegedly posted various promotions on May 26, 28, June 3, and 4.  (¶¶ 97, 130, 134, 141, 145.)

Kardashian's two posts on May 30 and June 14 were allegedly published mere days after promotions by other Defendants, making it impossible to isolate the effects of her posts.  (¶¶ 137, 156, 162.)  Plaintiffs allege that Kardashian's first post appeared on the ***same day*** as an EMAX promotion by Pierce, and another by third-

Cooley LLP
Attorneys at Law

3

Def. Kardashian's Opp. to
Pls' Mot. for Class Cert.
Lead Case No.CV 22-163 MWF (SKx)

party David Grutman. (¶¶ 82, 137.) Brown allegedly promoted EMAX on social media just one day prior.  (¶ 136.)

### C.    The Substantial Differences Amongst Plaintiffs and EMAX Purchasers.

Discovery and commonsense show that Plaintiffs and other alleged EMAX purchasers purchased and sold Tokens on *different* days, at *different* price points,[6] motivated by *different* promotional activity and reasons.  (*See* Declaration of Matt Caplan, Ex. A ("Howell Decl.") Table 1; Appendix D.)  For example, six of the ten Plaintiffs first purchased EMAX Tokens *before* Kardashian ever allegedly posted about EMAX, and two Plaintiffs did not make *any* EMAX purchases on or after May 30, 2021.  (*See id.*)  Further, neither the TAC nor their declarations shows that all Plaintiffs followed Kardashian on Instagram, or that her alleged post on May 30, 2021 induced them to purchase EMAX.  (Howell Decl. ¶ 58.)

### D.    Plaintiffs' Dubious Allegations Regarding Alleged Purchases.

Discovery also casts doubt on certain Plaintiffs' allegations of reliance on Kardashian's posts.  For example:

- Semerjian and Puda allegedly relied on Kardashian's second post on June 14, 2021, but discovery shows they purchased EMAX Tokens *before* its alleged publication.[7]  (¶¶ 205, 335; Howell Decl. Appendix D.)
- Although Buckley allegedly relied on Kardashian's May 30, 2021 post, he did not purchase EMAX Tokens on or after that date.  (¶¶ 208; Howell Decl. Appendix D.)
- Ciklic alleges he was induced to make a purchase on June 6, 2021 (¶ 366), Brignol alleges one on June 8, 2021 (¶ 339), and Buckley alleges one on June 18, 2021 (¶ 207), but these transactions are *not* reflected in Plaintiffs'

---

[6] Given significant price fluctuations during the Relevant Period, Plaintiffs and proposed class members acquired EMAX Tokens at vastly different prices.  (Howell Decl. ¶ 34; *see, e.g.*, ¶ 206.)

[7] Plaintiffs *never* allege Semerjian relied on Kardashian's posts in making a purchase, meaning other factors motivated his purchases.

Cooley LLP
Attorneys at Law

4

Def. Kardashian's Opp. to
Pls' Mot. for Class Cert.
Lead Case No.CV 22-163 MWF (SKx)

documents or verifiable in publicly available transaction data from the
Ethereum blockchain.  (Howell Decl. Appendix D.)

These inconsistencies undermine certification of any class against Kardashian.

    **E.**    **Plaintiffs' Motion for Class Certification.**

Plaintiffs move for class certification under Rule 23(b)(3) of five proposed
classes with different proposed representatives and different claims as follows:

- *Nationwide Class*: "All persons in the United States who, between May 14, 2021, and June 27, 2021, *purchased* unregistered EthereumMax tokens and were subsequently damaged thereby." (Mot. 6.) **This class is not asserted against Kardashian.**
- *California Class* (**Semerjian, Shah, and Buckley**): same definition as nationwide class as limited to California residents.  The UCL and FAL are the class claims.
- *New York Class* (**Huegerich and Ciklic**): same definition as nationwide class as limited to New York residents.  The GBL is the class claim.
- *Florida Class* (**Nahlah, Freeman, Brignol, and Puda**): same definition as nationwide class as limited to Florida residents.  The FDUTPA is the class claim.
- *New Jersey Class* (**DeLuca**): same definition as nationwide class as limited to Florida residents.  The NJCFA is the class claim.

Plaintiffs assert the proposed classes "consist of tens of thousands of [EMAX]
purchasers" because Dr. Jeremy Clark estimates that "over 300,000 purchases of
EMAX-Pilot or EMAX were made through Uniswap," approximately one-third of
which were "made by unique Ethereum addresses." (*Id.* 11-12.)  Dr. Clark, however,
does not opine on the size of any proposed class or which alleged purchasers would
be members of any class.  Nor do Plaintiffs estimate the number of putative class
members in *any* state.  Plaintiffs further assert that their claims are typical of any
class claims because they purchased EMAX Tokens "during the same time frame"
and were "influenced by the same widespread promotional campaigns."  (*Id.* 14.)

Cooley LLP
ATTORNEYS AT LAW

5

**Def. Kardashian's Opp. to
Pls' Mot. for Class Cert.
Lead Case No.CV 22-163 MWF (SKx)**

Plaintiffs further contend there are common questions that predominate over individualized issues because all Defendants "made uniform representations" about "the EMAX Token," which purportedly caused purchasers to overpay for their Tokens. (Mot. 12-13.)  Plaintiffs' allegations and discovery belie these assertions.

Despite seeking certification of damages classes for alleged overpayment, Plaintiffs propose *no* class-wide means to measure alleged damages from Kardashian's posts, if any, nor do they separate her posts from the other challenged promotional activity for which she cannot be liable. (*See* ¶¶ 205-211, 332-340, 363-365, 388-389.)  Attempting to put some damages-related material before the Court, Plaintiffs rely on a survey designed by Dr. Dimofte to show that individuals would purportedly pay more for a cryptocurrency promoted by a celebrity. (ECF No. 243-9 ("Dimofte Decl.") ¶ 83.)  This survey, however, does *not* measure harm from any alleged misrepresentation, let alone Kardashian's alleged posts.  It also suffers from numerous defects that make it unreliable. (*See infra* Section IV.C.2.b.)  Finally, Plaintiffs provide no evidence showing whether and which of them purchased EMAX because of Kardashian's two posts, much less how much they paid.

Plaintiffs' proposed trial plan and a premature notice plan have no bearing on class certification. (Mot. 9, 23.)

## III.   LEGAL STANDARD

"[P]laintiffs cannot plead their way to class certification through just allegations and assertions.  Rather, [they] must affirmatively demonstrate by a preponderance of *actual evidence* that they satisfy all the Rule 23 prerequisites." *Black Lives Matter Los Angeles v. City of Los Angeles*, 113 F.4th 1249, 1258 (9th Cir. 2024).  Rule 23(a) requires Plaintiffs to show for *each* proposed class numerosity; commonality; typicality; and adequacy of representation. Fed. R. Civ. P. 23(a).  Because Plaintiffs move to certify damages classes, they must also show that "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other

available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

The Court "must conduct a 'rigorous analysis'" "which may require probing behind the pleadings and looking at information that goes to the merits of the underlying claim." *Sirko v. Int'l Bus. Machs. Corp.*, 2014 WL 4452699, at *7 (C.D. Cal. Sept. 3, 2014) (quoting *Comcast*, 569 U.S. at 33-34).  The Court must analyze "[e]ach potential class . . . on its own merits, with consideration given to the elements of the claim[s] at stake." *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014), *abrogated on other grounds by Microsoft Corp. v. Baker*, 582 U.S. 23 (2017).  The requirements under Rule 23 must be satisfied "with respect to each defendant," *Yadlosky v. Grant Thorton, LLP*, 197 F.R.D. 292, 302 (E.D. Mich. 2000), and each subclass, *Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981).

## IV.   THE COURT SHOULD NOT CERTIFY ANY CLASS AGAINST KARDASHIAN

### A.   Defects in Plaintiffs' Motion.

Plaintiffs' Motion suffers from three threshold defects that preclude certification of any class: (1) Plaintiffs fail to meet their evidentiary burden, (2) Plaintiffs' proposed classes are impermissible fail safe classes, and (3) Plaintiffs fail to distinguish amongst the claims for which they seek class certification.

#### 1.   Plaintiffs fail to meet their evidentiary burden.

Plaintiffs fall far short of their evidentiary burden at class certification. "[P]laintiffs wishing to proceed through a class action must actually ***prove***—not simply plead—that their proposed class satisfies each requirement of Rule 23 . . . and must carry their burden of proof before class certification." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (en banc). Plaintiffs' Motion relies heavily on their bare allegations.  That is insufficient. *See, e.g.*, *Nevarez v. Costco Wholesale Corp.*, 2019 WL 7421960, at *2 (C.D. Cal. Dec.

26, 2019); *In re Vaxart, Inc. Securities Litig.*, 738 F. Supp. 3d 1259, 1266-67 (N.D. Cal. July 2, 2024); *Cunningham v. Vivint, Inc.*, 2022 WL 2291669, at *3 (D. Utah June 24, 2022).

The absence of any evidence to support class certification pervades Plaintiffs' Motion, particularly as to Plaintiffs' attempt to seek certification of their claims against Kardashian. Plaintiffs' virtually identical, boilerplate declarations submitted with the Motion simply state: "I purchased EthereumMax tokens via the US-based cryptocurrency exchange Uniswap." (*See* ECF No. 243-12, ¶ 2.)[8] There is ***no*** evidence of when Plaintiffs purchased EMAX Tokens; whether they purchased within the class period; whether they purchased Tokens in the state for which they seek to be a class representative; whether they or any putative class members relied on Kardashian's two alleged Instagram posts to purchase any EMAX Tokens; whether they or any putative class members were misled by both or either of Kardashian's alleged posts; or whether Plaintiffs or putative class members purportedly overpaid for EMAX Tokens because of alleged misrepresentations. Plaintiffs do not explain whether they ***sold*** EMAX Tokens and, if so, when, which makes it impossible to know whether they recouped any purported overpayment for Tokens, which would exclude them from their own proposed classes.

Plaintiffs also improperly lump Kardashian with the other Defendants. For example, Plaintiffs submit ***no evidence about Kardashian*** to support their numerous generic statements about "Defendants," including their assertions that:

- "the EthereumMax project and the token's liquidity pool w[ere] continuously used as a piggybank for Defendants," (Mot. 3);
- "project insiders dumped their . . . tokens," (*id.* 4);

---

[8] Plaintiffs' declarations do ***not*** state Kardashian's posts caused them to ***hold onto*** EMAX Tokens. This departs from their allegations that Defendants' alleged statements, including Kardashian's posts, caused them to hold onto Tokens. (*E.g.*, ¶¶ 205, 207, 211.) It is unsurprising that Plaintiffs do not rely on their holding theory, which would require highly individualized inquiries into each putative class member's reasons for holding.

- "Plaintiffs' and Class Members' claims arise from . . . Defendants [having] made uniform representations to Plaintiffs and the Class members," (*id.* 12);
- "[a]ll Plaintiffs were subject to the same course of conduct by Defendants and suffered the same injury," (*id.* 15); and
- "Defendants directed the marketing and sales efforts and spearheaded the effort to sell the EthereumMax tokens without registering them with the regulatory authorities," (*id.* 19).

Plaintiffs' desire to prove these assertions is not a basis to certify any proposed class, particularly for any claims asserted against Kardashian. *See, e.g.*, *Woulfe v. Universal City Studios LLC*, 2023 WL 6376152, at *1 (C.D. Cal. Aug. 28, 2023) (plaintiffs cannot rely on "promises of what [they] would like to prove"). Plaintiffs' failure to marshal evidence to satisfy Rule 23 warrants denial of certification altogether. *See Black Lives Matter*, 113 F.4th at 1258.

### 2. Plaintiffs' proposed classes are impermissible "fail safe" classes.

Plaintiffs' proposed class definitions are classic fail safe classes that cannot be certified. "A court may not . . . create a 'fail safe' class that is defined to include only those individuals who were injured." *Olean*, 31 F.4th at 669 n.14. The proposed class definitions are limited to those who: "purchased EthereumMax tokens and were **subsequently damaged**." (Mot. 6-7.) These definitions "improperly require[]" the Court to determine a core merits issue "to solidify class membership," specifically, whether individuals were damaged by the challenged conduct. *See Uschold v. Carriage Servs., Inc.*, 2020 WL 1466172, at *11 (N.D. Cal. Mar. 6, 2020). Courts routinely deny certification of classes with similar definitions on this basis. *See, e.g.*, *id.*; *see also Stewart v. Luna*, 2025 WL 26792, at *4, *6 (C.D. Cal. Jan. 3, 2025); *Angulo v. Providence Health & Servs. – Washington*, 2024 WL 3744258, at *7 (W.D. Wash. Aug. 9, 2024). Plaintiffs cannot cure this defect because their proposed classes do not otherwise satisfy Rule 23(a). *See, e.g.*, *Uschold*, 2021 WL 1466172, at *11 ("Ordinarily, the Court would alter the definition to address this deficiency, but given

Cooley LLP
Attorneys at Law

9

Def. Kardashian's Opp. to
Pls' Mot. for Class Cert.
Lead Case No.CV 22-163 MWF (SKx)

Plaintiffs' failure to satisfy other requirements of Rule 23(a), the Court will refrain.").

### 3.    Plaintiffs fail to distinguish amongst their varying claims.

Plaintiffs' failure to make a claim-by-claim showing further dooms their Motion. *See Berger*, 741 F.3d at 1068 (courts "must analyze each of the plaintiff's claims separately" at class certification).  There are eight claims against Kardashian.  Plaintiffs do not explain what these claims are, their elements, or how their arguments and purported evidence allow for class-wide resolution of them.  A review of the claims reveals critical defects in Plaintiffs' Motion.

The California Plaintiffs muster no class-wide evidence for the FAL and UCL claims, which require they show they "lost money or property" "as a result of [their] transactions with the defendant." *Hawkins v. Kroger Co.*, 906 F.3d 763, 768 (9th Cir. 2018).  The New York, New Jersey, and Florida Plaintiffs have similar defects.  For example, the GBL claim requires Plaintiffs show "actual . . . harm." *Small v. Lorillard Tobacco Co., Inc.*, 94 N.Y. 2d 43, 56 (1999).  Likewise, the FDUTPA claim requires a showing of actual damages, *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984), and the NJCFA claim requires "ascertainable loss," *Robey v. SPARC Group LLC*, 256 N.J. 541, 566 (2024).  Plaintiffs' attempt to fall back on nominal damages does not square with these elements.  (Mot. 21.)

Finally, the California unjust enrichment/restitution claim requires Plaintiffs show Kardashian received a "benefit" at their "expense."[9]  *See Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008).  Plaintiffs offer no evidence of this.  Plaintiffs' failure to offer any class-wide evidence specific to their Motion is fatal.

### B.    Plaintiffs Do Not Meet Rule 23(a)'s Requirements.

Rule 23(a) requires that "a party seeking certification of a class or subclass must satisfy four requirements: (1) numerosity; (2) commonality; (3) typicality; and

---

[9] It is unclear, given the Motion's failure to discuss the specific claims asserted against Kardashian, but Plaintiffs appear to have abandoned this claim for certification purposes, referring only to the "consumer protection causes of action." (Mot. 7.)

Cooley LLP
Attorneys at Law

10

Def. Kardashian's Opp. to
Pls' Mot. for Class Cert.
Lead Case No.CV 22-163 MWF (SKx)

(4) adequacy of representation." *Parsons v. Ryan*, 754 F.3d 657, 674 (9th Cir. 2014). Each proposed class and subclass "must independently meet the requirements of Rule 23." *Betts*, 659 F.2d at 1005. Plaintiffs' proposed classes do not.

### 1.    Plaintiffs fail to establish numerosity for each class.

Plaintiffs fail to show that ***each*** proposed class "meet[s] the numerosity requirement." *Gomez v. Rossi Concrete, Inc.*, 270 F.R.D. 579, 588 (S.D. Cal. 2010). "[T]he central question is whether Plaintiffs have sufficiently identified and demonstrated the existence of the number of persons for whom they speak." *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 680-81 (S.D. Cal. 1999). Plaintiffs provide ***no*** evidence, or even an estimate, showing that each state class is sufficiently numerous. *See Refuerzo v. Southwest Airlines Co.*, 2024 WL 4177936, at *6 (N.D. Cal. Sep. 12, 2024) (numerosity not met for subclass where plaintiffs "[did] not provide an estimate of the number of" individuals in the subclass).

Plaintiffs' bare assertion that their proposed classes "are each sufficiently numerous, likely consisting of tens of thousands of individual members," (Mot. 2), is insufficient. *See Ahussain v. GNC Franchising, LLC*, 2008 WL 11336812, at *6 (C.D. Cal. Mar. 19, 2008). Nor can Plaintiffs show numerosity by relying on Dr. Clark's contention that 100,000 EMAX-Pilot or EMAX transactions were made through Uniswap by unique Ethereum addresses. (Mot. 11-12; ECF No. 243-8 at 14.) Dr. Clark provides ***no*** opinion on the number of EMAX purchasers in the United States, let alone in California, Florida, New Jersey, or New York. Nor would the number of unique Ethereum addresses show the number of unique individuals who purchased EMAX Tokens because multiple addresses can belong to the same individual. (Howell Decl. ¶¶ 46-47.) Even if his assertions could show numerosity of the proposed nationwide class (they do not), that would not satisfy Plaintiffs' burden as to each proposed state class. *See Refuerzo*, 2024 WL 4177936, at *6.

### 2.    Plaintiffs fail to establish commonality.

Plaintiffs fail to show "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  It is "not enough to merely raise common questions or issues"—"[r]ather, plaintiffs must 'be prepared to prove' that there are critical questions or issues that can be resolved on a class-wide basis." *Black Lives Matter*, 113 F.4th at 1260 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  "What matters … is not raising of common questions—even in droves— but rather, the capacity of a class-wide proceeding to generate common answers." *Wal-Mart*, 564 U.S. at 350.  "A common question must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Olean*, 31 F.4th at 663.  By contrast, "an individual question" is one "where members of a proposed class will need to present evidence that varies from member to member." *Id.*; *see Wal-Mart*, 564 U.S. at 349.

Plaintiffs assert that the proposed classes' claims "arise from the common contentions that: (i) Defendants made uniform representations to Plaintiffs and the Class Members regarding the EMAX token, and (ii) this resulted in a common harm to Plaintiffs and Class Members who overpaid for the tokens that were unregistered and did not possess their promised attributes."  (Mot. 12-13.)  These contentions cannot be common because ***none*** of the proposed classes is limited to purchasers who saw any representation by Kardashian or any Defendant.  (*Id.* 6-7.)  By definition, the proposed classes include individuals who purchased EMAX Tokens during the class period but did ***not*** see an alleged representation.  That is fatal to commonality. *See Dunn v. Costco Wholesale Corp.*, 2021 WL 4205620, at *5 (C.D. Cal. Jul. 30, 2021) (commonality not satisfied where "the proposed class include[d] members who did not see or rely on the [alleged misrepresentation]").

Even if the proposed class definitions were limited to individuals who saw a representation from any Defendant, Plaintiffs have not shown that answers to the

Cooley LLP
Attorneys at Law

12

Def. Kardashian's Opp. to
Pls' Mot. for Class Cert.
Lead Case No. CV 22-163 MWF (SKx)

purported "common questions" would drive case resolution.

*First*, Plaintiffs cannot show commonality on the basis of their contention that "Defendants made uniform representations to Plaintiffs" about EMAX.  (Mot 12.) Plaintiffs provide *no* evidence showing how many members of the proposed classes saw any representation from Kardashian or any other Defendant, nor do they propose any method to show on a class-wide basis for *each* proposed state class whether each class member saw such a representation.  The claims in this case concern at least *30 materially different* representations from over 10 different sources.  (Howell Decl. Appendix C.)  The alleged representations include (1) a whitepaper by EMAX founders encouraging investment (¶ 53); (2) Mayweather's numerous alleged activities (¶¶ 143-144); (3) Pierce's numerous alleged promotional activities (¶¶ 147-149); (4) an EMAX press release (¶ 134); and (5) Kardashian's two posts (¶¶ 137, 156).  Commonality cannot exist because the proposed classes "necessarily include members who received *different* representations." *Berger v. Home Depot USA Inc.*, 2011 WL 13224881, at *7 (C.D. Cal. 2011).

*Second*, Plaintiffs offer no evidence that Defendants' disparate representations resulted "in a common harm." (Mot. 12–13.)  Each claim against Kardashian has specific injury requirements.  (*See supra* Section IV.A.3.)  Plaintiffs do not propose *any* method to show on a class-wide basis whether each class member suffered cognizable harm under the applicable claim.  Plaintiffs' proposal to prove liability with unspecified "common evidence" is not enough.  Plaintiffs' allusions to a post-trial procedure, (*see* Mot. 12-13), elides their burden to show common evidence of "harm" now.

### 3.    Plaintiffs fail to establish typicality.

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  Typicality

is not met "where a putative class representative is subject to unique defenses." *Id*. Plaintiffs cannot show typicality for numerous reasons.

*First*, Plaintiffs' assertion they and putative class members were "subjected to and injured by the same course of conduct," (Mot. 14), suffers from a threshold defect. Plaintiffs' proposed classes include ***anyone*** who purchased EMAX tokens and suffered damages thereby. By definition, the classes include individuals who ***never*** saw alleged representations, let alone Kardashian's. Plaintiffs cannot credibly contend that their claims are typical of absent class members who ***never*** saw any representation. *See Dunn*, 2021 WL 4205620, at *5.

*Second*, Plaintiffs' argument concerning the purported "same widespread promotional campaigns that allegedly misrepresented key aspects of the token and project," (Mot. 14), does not show typicality. Plaintiffs' claims concern over 30 alleged representations by different Defendants at different times, with only two alleged representations by Kardashian. (Howell Decl. Appendix C.) Plaintiffs cannot show, nor can the Court infer, typicality, given the disparate and varied statements underlying the claims of each proposed state class. *See Pierce-Nunes v. Toshiba Am. Info. Sys., Inc.*, 2016 WL 5920345, at *5 (C.D. Cal. June 23, 2016).

*Third*, Plaintiffs' EMAX purchases cast doubt on whether they relied on Kardashian's posts to make purchases, subjecting them to unique defenses. *See Valentine v. Crocs, Inc.*, 2024 WL 5339457, at *12 (N.D. Cal. Oct. 16, 2024). All Plaintiffs alleged in unison that they saw and/or relied on Kardashian's alleged EMAX-related posts made on May 30, 2021 and June 14, 2021. (*See* ¶¶ 137, 156.) Discovery disproves those allegations. California Plaintiffs Semerjian and Shah purchased EMAX tokens before Kardashian's June 14, 2021 post, while California Plaintiff Buckley's purchases pre-date both of Kardashian's posts. (Howell Decl. Appendix D.) Most of New York Plaintiff Ciklic's and Florida Plaintiff Brignol's EMAX transactions pre-date both Kardashian posts. (*Id.*, Table 1) Florida Plaintiff Nahlah also engaged in most of her EMAX trading activity before Kardashian's

Cooley LLP
Attorneys at Law

14

Def. Kardashian's Opp. to
Pls' Mot. for Class Cert.
Lead Case No.CV 22-163 MWF (SKx)

alleged posts.    (*Id.*, Appendix D)    Furthermore, neither Plaintiffs' document production nor public blockchain data corroborate the allegations by Plaintiffs Freeman, Ciklic, Brignol, and Buckley that they bought EMAX Tokens on particular days because of viewing Kardashian's posts.  (*See id.*, Table 2.)  Discovery therefore demonstrates that multiple Plaintiffs are likely to be "preoccupied with defenses unique to [them]" for their claims against Kardashian.  *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011).

**Fourth**, Plaintiffs' EMAX trading behavior shows their claims are atypical of the potential claims of the proposed classes due to their "unique background[s] and factual situation[s]."  *See Hanon*, 976 F.2d at 508.  Some bought and held EMAX for months while others engaged in shorter, high-frequency trading. (Howell Decl., ¶ 21 & Table 1.)  Additionally, some investors who bought before Kardashian's posts would have benefited if they sold during the allegedly inflated price period, raising unique defenses as to those absent class members.  (*Id.* ¶¶ 60-61.)

### 4.    Plaintiffs fail to establish adequacy.

Adequacy, commonality, and typicality "tend to merge."  *Wal-Mart*, 564 U.S. at 350 n.5; *see, e.g.*, *Cabrera v. Bayer Healthcare LLC*, 2024 WL 1699357, at *6-7 (C.D. Cal. Feb. 23, 2024).  Plaintiffs summarily state that "no Plaintiffs have any conflicts of interest with other class members," and that "[a]ll Plaintiffs were subject to the same course of conduct by Defendants and suffered the same injury in the form and overpayment and trading losses." (Mot. 15.)  Plaintiffs' failings on commonality and typicality, (*see supra* Section IV.B.2-3), however, render them inadequate.

### C.    Plaintiffs Fail to Satisfy Rule 23(b)'s Requirements.

Plaintiffs do not satisfy Rule 23(b)(3) because they have not demonstrated that (1) common questions "predominate over any questions affecting only individual members," or that (2) class resolution is "superior."  Fed. R. Civ. P. 23(b)(3).  Rule  23(b)(3) also requires the Court to "consider[] the proof necessary to establish each element of the claim or defense."  *Gaudin v. Saxon Mortg. Servs., Inc.*, 297

F.R.D. 417, 426 (N.D. Cal. 2013). Plaintiffs cannot meet their burden to show predominance because they do not meet Rule 23(a)'s less demanding commonality requirement.  *See Comcast*, 569 U.S. at 34 (predominance is an "even more demanding" burden).  Even if the Court considers Rule 23(b), Plaintiffs cannot mask the numerous individualized issues that preclude class certification, nor do they propose a viable damages model or show that a class action would be superior.

### 1.    Individualized issues predominate.

Plaintiffs argue they "can establish a uniform expectation of consumers regarding the celebrity marketing scheme" to prove the Consumer Law Claims and thus "the question whether the class members were reasonably misled by defendants' misrepresentations can be determined on a class-wide basis." (Mot. 19.)  This argument is belied and dispelled by the disparate representations at issue and Plaintiffs' failure to adduce class-wide evidence of reliance on Kardashian's statements.

***First***, Plaintiffs cannot meet predominance for any claim against Kardashian because they have not shown that proposed class members were exposed to the same alleged misrepresentations, nor have they provided any means to separate Kardashian's posts from other alleged EMAX representations by other Defendants. Plaintiffs do not describe the various challenged statements or how they were purportedly uniform, nor can they.  What Plaintiffs frame as "uniform representations to Plaintiffs," (Mot. 12), are actually more than 30 disparate statements from over 10 different sources.  (Howell Decl. Appendix C.)  The substantial variation in the statements make class certification inappropriate.  *See Kronenberg v. Allstate Ins. Co.*, 743 F. Supp. 3d 465, 497-98 (E.D.N.Y. 2024); *Reitman v. Champion Petfoods USA*, 2019 WL 7169792, at *9 (C.D. Cal. Oct. 30, 2019); *In re Tropicana Orange Juice Mktg. and Sales Practices Litig.*, 2018 WL 497071, at *7-8 (D.N.J. Jan. 22, 2018); *PB Prop. Mgmt., Inc. v. Goodman Mfg. Co., LP*, 2016 WL 7666179, at *27 (M.D. Fla. May 12, 2016); *Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, 2016

WL 2593654, at *3 (N.D. Cal. May 5, 2016).

*Second*, the variations in the challenged statements preclude Plaintiffs from relying on a presumption of reliance to satisfy predominance. "A presumption of reliance does not arise when class members were exposed to *quite disparate information* from various [sources]." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012). Moreover, even assuming the challenged statements, or some of them, were uniform, Plaintiffs still could not rely on a presumption of reliance to meet their burden. Plaintiffs do not allege, nor have they shown, an "extensive and long-term advertising campaign," under which "almost every class member had been exposed to defendants' misleading statements." *Id.* (citing *In re Tobacco II Cases*, 46 Cal.4th 298, 324-28 (2009)). "In the absence of the kind of massive advertising campaign at issue in *Tobacco II*, the relevant class must be defined in such a way as to include only members who were exposed to advertising that is alleged to be materially misleading." *Mazza*, 666 F.3d at 596. Plaintiffs offer *no* evidence that putative class members were uniformly exposed to Kardashian's purported statements before purchasing EMAX. *See Sandoval v. Pharmacare US, Inc.*, 2016 WL 3554919, at *4 (S.D. Cal. June 10, 2016); *In re: First Am. Home Buyers Prot. Corp. Class Action Litig.*, 313 F.R.D. 578, 587 (S.D. Cal. 2016).

*Third*, Plaintiffs' claims suffer from other defects that defeat predominance. Plaintiffs' claims that require "actual damage" will present individualized inquiries that vary from class member to member based on their EMAX transaction patterns. (*See* Howell Decl. ¶¶ 55–64.) To the extent Plaintiffs seek certification of their unjust enrichment/restitution claim, such equitable claims are not suitable for certification where disparate challenged practices are at issue. *See Berger*, 741 F.3d at 1070.

## 2.    Plaintiffs' proposed damages model is fatally flawed.

Plaintiffs cannot meet predominance because they do not propose a reliable damages model that can be applied on a class-wide basis that is "consistent with [Plaintiffs'] liability case." *Comcast*, 569 U.S. at 35-38.

### a.  Dr. Clark's "simple model" proposes no method to calculate class-wide damages.

Plaintiffs rely on Dr. Clark to "offer[] a simple model by which Plaintiffs' damages can be calculated." (Mot. 20.)  Dr. Clark does no such thing.  As explained by Dr. Sabrina Howell, a Professor of Finance at New York University Stern School of Business and leading expert on the economics of cryptocurrency: "Plaintiffs do not offer a methodology that can establish the presence or amount of damages resulting from Ms. Kardashian's posts on a class-wide basis."  (Howell Decl. ¶ 10.)

*First*, Dr. Clark proposes no method to calculate the potential *damages* for any of the claims in this case, nor does he attempt to "measure *only* those damages attributable to [a] theory" of liability.  *Comcast*, 569 U.S. at 35.  Dr. Clark's declaration does not even use the word "damage."  Dr. Clark merely explains how it is possible to "compute the profit and loss of any address" purchasing EMAX Tokens using blockchain data.  Such a computation does not estimate "alleged damages on a class-wide basis" or any "price premium," let alone a premium allegedly caused by Kardashian's posts, or one that fits the relief available on the claims asserted against Kardashian.  (*See* Howell Decl. ¶¶ 39-45); *see Fagan v. Neutrogena Corp.*, 2017 WL 11418358, at *3 (C.D. Cal. Oct. 24, 2017).

*Second*, Dr. Clark makes no attempt to model a "but-for" world that would be necessary to estimate damages both individually and on a class-wide basis.  Because the price of EMAX, like other "meme coins," is "determined on a speculative basis," "the traditional drivers of price fluctuations in financial economics . . . do not apply." (Howell Decl. ¶¶ 75-76.)  To isolate the alleged damages in the form of a price premium that might potentially be attributable to a challenged statement, Dr. Clark would need to compare the alleged price of EMAX Tokens with and without the challenged statements.  Dr. Clark, however, conducts *no* financial or economic modeling analyses; he does not conduct any empirical analysis to estimate a counterfactual EMAX Token price without Kardashian's challenged statements; and

he does not account for the various promotional activities by Defendants that occurred before Kardashian's first post. (*Id.* ¶¶ 44-45.)  Dr. Clark does nothing to measure any damages specifically attributable to Kardashian's posts.  Additionally, Dr. Howell shows "EMAX price movements following Ms. Kardashian's two posts contradict a 'price premium' theory." (*Id.* ¶ 70-73 (EMAX *declined* in price immediately following Kardashian's second post).)

**Third**, even if Dr. Clark were to do such an analysis, there are still defects. Dr. Clark does not analyze Plaintiffs' EMAX transactions or the Token's price over the class period and he ignores substantial heterogeneity in the proposed classes. Further, some portion of the putative classes may have benefitted from an alleged price premium caused by Kardashian's posts assuming Plaintiffs' theory of liability, and thus would have suffered no "damage." (*Id.* ¶¶ 60-62.)  Dr. Clark offers no method to identify and exclude those individuals, who would not be class members.

### b. Dr. Dimofte's "preliminary analysis" is defective.

Plaintiffs claim their proffered survey expert, Dr. Dimofte, shows through a "preliminary analysis" that "Plaintiffs were reasonably misled based on the celebrity promotions." (Mot. 19.)  The survey does not establish predominance: it does not measure damages consistent with Plaintiffs' liability theory; it fails every measure of methodological reliability; and its results confirm that individualized inquiries about whether Kardashian's alleged posts "misled" consumers predominate.

**First**, Dr. Dimofte's survey is not "consistent with [Plaintiffs'] liability case." *Comcast*, 569 U.S. at 35-38.  Plaintiffs' claims hinge on the theory that they and proposed class members purportedly overpaid for EMAX Tokens because of misrepresentations about EMAX.  Dr. Dimofte did **not** address this theory.  His survey sought to address whether a portion of Plaintiffs' proposed classes would be prospectively likely to heed a celebrity endorsement of cryptocurrency and pay more for it.  Merely saying that one would pay more for a product because of a celebrity endorsement is **not** a basis for liability under any of Plaintiffs' claims.  Dr. Dimofte

Cooley LLP
Attorneys at Law

19

Def. Kardashian's Opp. to
Pls' Mot. for Class Cert.
Lead Case No.CV 22-163 MWF (SKx)

did not measure whether any individual would have been misled by any of the statements at issue and thereby paid more. *See Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1020-21, 1048 (C.D. Cal. 2018) (predominance not met where expert's survey did not use "exact wording of each [allegedly misleading] statement"). Nor did Dr. Dimofte correctly measure the amount investors "would have been willing to pay" for Tokens despite Kardashian and other Defendants' alleged statements about EMAX. The survey is nothing like the conjoint survey analyses that some courts have accepted at class certification to support an alleged class-wide price premium.[10] (*See* Mot. 19-20 (citing, *e.g.*, *Zakaria v. Gerber Prods. Co.*, 755 Fed. App'x. 623, 624 (9th Cir. 2018)).)

**Second**, as explained in detail by Harvard University behavioral economics professor and consumer design survey expert Dr. Michael Hiscox, Plaintiffs' survey "suffers from serious methodological problems that render its results unreliable and therefore unusable for evaluating any of the Plaintiffs' allegations around Ms. Kardashian's purported influence on the EMAX trading behavior of members of the proposed classes." (Caplan Decl., Ex. B ("Hiscox Decl."), ¶ 11.) Dr. Hiscox identifies fundamental flaws in the survey methods at each step: the sampling methods are inappropriate and biased, even "by the Plaintiffs' own definitions of the proposed classes"[11] (*id.* ¶¶ 22-38); the survey is not designed to infer the causal impact of endorsements on consumer behavior (*id.* ¶¶ 39-49); the survey questions and response options "are biased and poorly designed" (*id.* ¶¶ 50-72); the "survey does not adhere to standard best practices in survey research design and execution," and Dr. Dimofte presents his results "without critical sample statistics necessary for

---

[10] Dr. Dimofte's survey also offers no method for addressing liability under Plaintiffs' unjust enrichment/restitution claim, which requires a separate equitable showing to award relief.

[11] As one example of his flawed sampling, Dr. Dimofte excluded individuals who may have experience trading cryptocurrencies—the very group of individuals that would be expected to invest in EMAX Tokens. (*See* Hiscox Decl. ¶¶ 25-27.)

Cooley LLP
Attorneys at Law

20

Def. Kardashian's Opp. to
Pls' Mot. for Class Cert.
Lead Case No.CV 22-163 MWF (SKx)

the accurate interpretation of results" (*id.* ¶¶ 73-92).  Dr. Dimofte failed to adhere to the ***very same standards*** he purported to follow from the *Manual for Complex Litigation* and *Reference Guide on Survey Research*, which themselves are outdated. (*Id.* ¶¶ 74-79.)

***Third***, a significant portion of Dr. Dimofte's results undermine class certification.  The responses indicate wide variation among respondents about what constitutes "good" and "bad" news about EMAX.  (Howell Decl. ¶¶ 77-82.)  As one example, the survey asked respondents to "assume that [they] purchased a cryptocurrency that was advertised as being the exclusive payment method accepted at specific venues and events [] only to later find out that was not the case (i.e., those venues and events did not in fact accept that token…)."  They were then asked whether they "would [] have still purchased the cryptocurrency if [they] knew those [exclusive payment method] claims were false?"  Dr. Dimofte reports that "false exclusive acceptance claims" would have "a very mild negative effect on their decision to have purchased that cryptocurrency," which is not statistically significant at conventional levels.  The effect is "mild" because of considerable heterogeneity: ***45.8 % of respondents*** reported they ***possibly would have still purchased*** the cryptocurrency despite knowing the "claims were false." (Howell Decl. ¶ 86.)  These and similar results lead Dr. Howell to conclude that "Plaintiffs' own survey demonstrate[s] that members of the proposed class likely differ widely in their assessment of new information about EMAX," and therefore it is not evident how "to construct a common methodology with which to establish class-wide damages." (*Id.* ¶ 87.)

### 3.    Plaintiffs fail to show superiority.

To evaluate superiority, courts must consider: "(a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the

Cooley LLP
Attorneys at Law

21

Def. Kardashian's Opp. to
Pls' Mot. for Class Cert.
Lead Case No. CV 22-163 MWF (SKx)

litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action." *In re Clorox Consumer Litig.*, 301 F.R.D. 436, 449 (N.D. Cal. 2014). Plaintiffs fail to establish superiority for similar reasons that Plaintiffs do not satisfy predominance. Individualized inquiries exist as to class members' exposure to and reliance on alleged misrepresentations. *See, e.g.*, *Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, at *24 (N.D. Cal. Jun. 13, 2014) (class unmanageable where alleged misrepresentations "differed during the class period among products and over time," and "there [was] no way to test [consumers'] recollections"); *Otto v. Abbott Lab'ys Inc.*, 2015 WL 9698992, at *10 (C.D. Cal. Sep. 29, 2015). Plaintiffs' cases do not show otherwise because, *inter alia*, they concern securities claims ***not*** asserted against Kardashian. (Mot. 21.)

### D.      Plaintiffs' Proposed Trial and Notice Plans Are Irrelevant.

Plaintiffs' proposed "trial plan," (Mot. 8-11), does not help them satisfy Rule 23. It only underscores Plaintiffs' failure to identify common, class-wide evidence. Despite over a year-long discovery period, Plaintiffs make bare assertions that they will "prove their claims with evidence that will come from Defendants' documents and expert testimony," pointing only to the insufficient "sample" of evidence in their "Statement of Facts." (*Id.* 9.) Nor does Plaintiffs' "notice plan" move the needle. (*Id.* 23.) The time for debating notice procedures is ***after*** certification. *See* Fed. R. Civ. P. 23(c)(2). But no class should be certified against Kardashian.

## V.      CONCLUSION

Plaintiffs' Motion should be denied.

Cooley LLP
Attorneys at Law

22

Def. Kardashian's Opp. to
Pls' Mot. for Class Cert.
Lead Case No.CV 22-163 MWF (SKx)

1    Dated:  April 28, 2025                    COOLEY LLP

2

3

4    By: /s/ Matthew D. Caplan
         Matthew D. Caplan

5    Attorneys for Defendant
6    KIM KARDASHIAN

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF COMPLIANCE**

2      The undersigned counsel of record for Defendant Kim Kardashian certifies

3  that the foregoing brief contains 6,997 words, which complies with the word limit of

4  Local Rule 11-6.1.

5

6  Dated:  April 28, 2025                         /s/ Matthew D. Caplan

7                                                 Matthew D. Caplan

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28