John T. Jasnoch (CA 281605)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: 619-233-4565
Fax: 619-233-0508
jjasnoch@scott-scott.com

*Lead Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE ETHEREUMMAX INVESTOR LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Lead Case No. 2:22-cv-00163-MWF-SK<br><br>**REPLY IN RESPONSE TO DEFENDANT PERONE'S OPPOSITION AND IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

ADDITIONAL RELEVANT FACTS ....................................................................... 2

ARGUMENT .............................................................................................................. 2

    I.    The Predominance Requirements of Rule 23(b) Have Been Established ............................................................................................ 5

        A.    Individual Issues of Plaintiff's Identity Do Not Predominate ......... 5

        B.    Individual Issues of Plaintiff's Location Do Not Predominate ................................................................................... 7

    II.    Due Process Is Satisfied ................................................................... 7

    III.    The Proposed Class and Subclass Do Not Require a Privity Limitation ......................................................................................... 10

CONCLUSION ........................................................................................................ 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Greenbaum v. KC Jewelry, Inc.*,
 No. 2:16-cv-06845-SVW-JPR, 2017 WL 5496224 (C.D. Cal. Jan. 25, 2017) ..................................................................................................................5

*California Amplifier, Inc. v. RLI Ins. Co.*,
 94 Cal. App. 4th 102 (2001) ...............................................................................11

*Coexist Found., Inc. v. Fehrenbacher*,
 865 F.3d 901 (7th Cir. 2017) ................................................................................8

*Galvan v. KDI Distrib.*,
 No. SACV 08-0999-JVS, 2011 WL 5116585 (C.D. Cal. Oct. 25, 2011) ..................................................................................................................6

*In re Honda Idle Stop Litig.*,
 347 F.R.D. 528 (C.D. Cal. 2024) ..........................................................................5

*In re Korean Ramen Antitrust Litig.*,
 No. 13-cv-04115, 2017 WL 235052 (N.D. Cal. Jan. 19, 2017) ............................6

*Kumar v. Salov N. Am. Corp.*,
 No. 14-CV-2411, 2016 WL 3844334 (N.D. Cal. July 15, 2016) .........................6

*Panacci v. A1 Solar Power, Inc.*,
 No. 15-cv-0052, 2015 WL 3750112 (N.D. Cal. June 15, 2015) ..........................5

*Pepka v. Kohl's Dep't Stores, Inc.*,
 No. CV-16-4293-MWF, 2016 WL 8919460 (C.D. Cal. Dec. 21, 2016) .............5

*Schoonover, v. Iovate Health Scis. U.S.A. Inc.*,
 No. 2:20-cv-01487-FLA (AGRx), 2023 WL 7107132, at *9 (C.D. Cal. Aug. 21, 2023) ....................................................................................................6

*Waterbury v. A1 Solar Power Inc.*,
 No. 15cv2374, 2016 WL 3166910 (S.D. Cal. June 7, 2016) ...............................5

*Zakinov v. Ripple Labs, Inc.*,
 No. 18-cv-06753, 2020 WL 922815 (N.D. Cal. Feb. 26, 2020) ......................8, 9

*Zaklit v. Nationstar Mortg. LLC*,
   No. 5:15-cv-2190-CAS(KKx), 2017 WL 3174901 (C.D. Cal. July 24, 2017) .... 7

**Statutes**

Cal. Corp. Code 25400 & 25500 ............................................................................. 10

Cal. Corp. Code §25008(a) ....................................................................................... 8

Fla. Stat. Ann. §517.07 .............................................................................................. 8

Fla. Stat. §517.07(1) .................................................................................................. 9

Telephone Consumer Protection Act ........................................................................ 5

**Other Authorities**

Rule 23 ............................................................................................................. *passim*

Plaintiffs Ryan Huegerich, Jonathan Semerjian, Nabil Nahlah, Till Freeman, Marko Ciklic, Tunisia Brignol, Milan Puda, Neil Shah, Michael Buckley, and Christopher DeLuca ("Plaintiffs"), through their undersigned counsel and pursuant to Federal Rules of Civil Procedure 23(a), (b)(3), and (g), respectively submit this reply in further support of Plaintiffs' motion to certify this Action as a class action, appoint Plaintiffs as Class Representatives, and appoint Scott+Scott Attorneys at Law LLP ("Scott+Scott") as Class Counsel.[1]

## INTRODUCTION

Defendant Giovanni Perone, a co-founder of the EthereumMax project, was one of the chief architects of the scheme alleged in this case. Perone played a critical role in the development and dissemination of EMAX tokens, oversaw their launch, and directed their sale through centralized marketing channels, including websites and celebrity promotions. Perone's conduct was designed to target a national audience, including investors in California and Florida, through coordinated offers and solicitations to sell an unregistered security. His uniform conduct created a common set of facts and legal issues appropriate for resolution on a class-wide basis.

Perone now argues that class certification must fail due to purported individualized questions about the location and identity of class members and the privity of their transactions, but these arguments misstate the governing law and mischaracterize the record. Plaintiffs have presented reliable, class-wide methodologies to identify EMAX purchasers, determine their geographic location using IP data and transaction records, and establish privity through blockchain evidence showing that purchases occurred from the liquidity pool that Perone and his Company created. At its core, this case raises a series of legal and factual questions— whether EMAX was a security, whether it was sold unlawfully, and whether investors

---

[1] Plaintiffs incorporate by reference all relevant arguments in the Replies to the Oppositions of Defendants Mayweather, Kardashian, Pierce and Rechnitz, concurrently filed herewith.

1  suffered losses from a common promotional scheme—that can and should be
2  adjudicated collectively under Rule 23.
3      For these reasons, and those set forth below, the Court should grant Plaintiffs'
4  Motion.

## ADDITIONAL RELEVANT FACTS

6      During the deposition of Dr. Sabrina Howell, she admitted that class members
7  would be able to identify their own wallets (*See* Howell Deposition Transcript
8  ("Howell Depo") attached hereto as Ex. H to the Declaration of John T. Jasnoch in
9  support of the Plaintiffs' Class Certification Reply Briefs ("Jasnoch Decl."), 52:19-
10 53:02) even if they have more than one wallet address (*Id.*, 53:4-7). To this point, all
11 the named plaintiffs have been able to identify their own wallet addresses used to
12 purchase EMAX Tokens. (*See* EMXPLS_000001 attached hereto as Ex. F to the
13 Jasnoch Decl., listing wallets addresses of Plaintiffs) and (EXMPLS_000002,
14 attached hereto as Ex. G to the Jasnoch Decl., listing Plaintiffs wallet addresses).  Dr.
15 Howell further opined that anyone who purchased during the relevant period, and was
16 still holding their tokens, would have unrealized trading losses. *See* Howell Depo,
17 54:11-15. Dr. Howell also agreed with Plaintiff Expert Jeremy Clark that the price of
18 the tokens "currently is near zero." Howell Depo, 61:19-62:8. Regarding value, Dr.
19 Howell stated "[i]f the token represents the right to a valuable table, then yes, that
20 would be a form of fundamental value." Howell Depo, 56:9-15.
21     Defendant Perone used Defendant Rechnitz to access the latter's celebrity
22 friends and business associates and to get them to promote the sale of EMAX tokens.
23 According to text messages between Perone and Rechnitz, as part of a threat directed
24 towards Perone, Rechnitz confirmed that he had the ability to coordinate EMAX-
25 related messages coming from Promoter Defendants Mayweather, Kardashian, and
26 Pierce. *See* Exhibit 5, attached to Declaration of John T. Jasnoch in Support of Motion
27 for Class Certification, Feb. 11, 2025, ECF No. 241, at GP-SEC-30508 (Rechnitz
28 confirming that he could get Defendant Kardashian to make a promotional "post in

one phone call."); GP-SEC-030490 (Rechnitz threatening to send text messages to "Floyd and Kim and Grutman and a few others"); GP-SEC-30512-13 (Rechnitz providing Perone with advance notice of what Defendant Mayweather was "about to post" regarding the EthereumMax project); GP-SEC-030514 (Rechnitz discussing how he would get each Promoter Defendant to send a similar message to the Perone-edited message for Mayweather, ultimately distancing themselves from the EMAX project if Perone did not comply with Rechnitz's demands); GP-SEC-030493 ("Floyd and Kim are not happy right now to say the least. They love me and treat me like family as you'll learn."). When discussing a separation from the EMAX project and a dispute between EMAX insiders that occurred in Miami around the time of the Mayweather-Paul fight, Rechnitz confirmed that he was conducting EthereumMax-related business in both California and Florida: "The fun is sucked out of me it was really fun when Kamil and I were working together in Los Angeles from the moment I landed in Miami it wasn't." GP-SEC-030515.

In that exchange, Perone also discussed his and the Company's efforts to generate profits for EMAX token holders, stated that he had been "doing everything in our power to roll out next steps and strategy to establish value" for the EMAX token. GP_SEC-030499.

Defendant Kardashian herself repeatedly called the EMAX Tokens a "scam" and told Defendant Rechnitz that she was "not into them" in a text message exchange dated June 6, 2021. (JR000405, attached hereto as Ex. C to the Jasnoch Decl.). Defendant Rechnitz agreed with her and on June 7, 2021, said "it might be a scam either way in [sic] cashing you out tomorrow. My gut isn't sure in this company." (JR000407, attached hereto as Ex. D to the Jasnoch Decl.). Dr. Howell confirmed that these text messages are after Defendant Kardashian's first Instagram post, but before her second. Howell Depo, 35:13-36:2. Rechnitz, in turn, conveyed this information to Perone during the aforementioned text exchange (*see* GP-SEC-030503), yet they all still went ahead with the planned promotion of EMAX token purchases. Rechnitz

also confirmed to Perone that he had "cashed Kim out" for "███" from Rechnitz's own money.  GP-SEC-030511.

## ARGUMENT

Defendant Perone raises four arguments in opposition to Plaintiffs' motion for class certification, both related to the requirements under Rule 23(b)(3): (1) that individualized inquiries into the identity of potential class members will predominate over questions common to the proposed class and subclasses (*see* Perone Opp.[2] at 13-16); (2) that individualized questions of each putative class member's residence will predominate (*see id*. at 16-19); (3) that a nationwide California class would violate Perone's right to due process (*see id*. at 20-21); and (4) that the proposed nationwide class fails to include a "privity limitation" (*see id*. at 21-22).

These arguments can be dispatched with relative ease.  First, the common question that predominates over the California and Florida state law securities clams is straightforward: is this a security?  Any inquiry into an individual's identity will not predominate that question.  Second, individualized inquiries into each potential class member's residence will similarly not predominate over the common question of whether or not EMAX token transactions are investment contracts under the *Howey* test.  Third, Perone tacitly acknowledges that a Florida nationwide class for the unregistered securities claim would not violate due process but challenges a nationwide California class for a California claim that is nearly identical to the Florida claim he concedes is appropriate.  Inconsistency aside, this repackaged version of the personal jurisdiction argument Defendant Perone first raised in his motion to dismiss should be similarly rejected on the grounds that Defendant Perone directed his unregistered securities-selling activities towards California.  Fourth, Plaintiffs have sufficiently addressed the issue of privity, which includes an appropriate limitation.

---

[2]  Defendants Giovanni Perone and Emax Holdings, LLC's Opposition to Plaintiffs' Motion for Class Certification, ECF No. 251 (Apr. 28, 2025) ("Perone Opp.").

Accordingly, Plaintiffs respectfully request that the Court deny Defendant Perone's motion in its entirety.

# I. THE PREDOMINANCE REQUIREMENTS OF RULE 23(B) HAVE BEEN ESTABLISHED

## A. Individual Issues of Plaintiff's Identity Do Not Predominate

Defendant Perone primarily argues that individualized inquiries into the identity of potential class members will predominate over questions common to the proposed class and subclasses. *See* Perone Opp. at 13-16.

Here, the proposed class members can be identified definitively as opposed to those other specific circumstances where individualized issues predominated. *Compare Pepka v. Kohl's Dep't Stores, Inc.*, No. CV-16-4293-MWF (FFMx), 2016 WL 8919460, at *4 (C.D. Cal. Dec. 21, 2016) (finding proposed class of Telephone Consumer Protection Act claims would involve highly individualized inquiries regarding consent) *with In re Honda Idle Stop Litig.*, 347 F.R.D. 528, 540 (C.D. Cal. 2024) ("This is a definite class of people. No liability findings at trial would change who did or did not purchase [an EMAX token].") *and Greenbaum v. KC Jewelry, Inc.*, No. 2:16-cv-06845-SVW-JPR, 2017 WL 5496224, at *9 (C.D. Cal. Jan. 25, 2017) (rejecting claim that putative class of purchasers of jewelry "'where the weight of diamonds indicated on the product label exceeded the actual weight of the diamonds in the jewelry'" constituted a failsafe class because "[t]his is a factual determination and does not require establishing the liability of the Defendants").[3] Several courts have likewise rejected such "fail safe class" arguments with respect to class definitions. *See, e.g., Waterbury v. A1 Solar Power Inc.*, No. 15cv2374, 2016 WL 3166910, *4-5 (S.D. Cal. June 7, 2016) ("Plaintiffs do not use failsafe class definitions. The Court can determine membership in Plaintiffs' putative classes using objective criteria[.]"); *Panacci v. A1 Solar Power, Inc.*, No. 15-cv-0052, 2015 WL

---

[3] Unless otherwise noted, citations are omitted and emphasis is added.

3750112, *8 (N.D. Cal. June 15, 2015) ("to determine whether someone is in the class, one simply needs to answer questions such as whether the person is on a DNC registry or whether the person received a certain number of phone calls from Defendants within a certain timeframe"). So, too, should this Court reject the failsafe claim that Defendant Perone now contends is dispositive. After all, a lack of total ascertainability alone will generally not undermine class certification. *See Galvan v. KDI Distrib.*, No. SACV 08-0999-JVS (ANx), 2011 WL 5116585, at *5, (C.D. Cal. Oct. 25, 2011) ("the class definition may include individuals who . . . have inadequate proof to go forward with the class. However . . . these ascertainability issues are not fatal to class certification and may be addressed later in the litigation").

The ascertainability analysis in *In re Korean Ramen Antitrust Litig.*, No. 13-cv-04115, 2017 WL 235052 (N.D. Cal. Jan. 19, 2017) is instructive on this point. There, the court addressed similar arguments related to self-identification as a way to satisfy ascertainability under Rule 23. In particular, the court confirmed that:

> Because absent class members can only be identified by uncorroborated self-identification, defendants argue the class is not ascertainable. However, ***as the Ninth Circuit recently reaffirmed, concerns about illegitimate claims and manageability—such as those expressed by defendants here—are accounted for by other provisions of Rule 23***; that consumers do not generally save "grocery receipts and are unlikely to remember details about individual purchases of a low-cost product" like ramen, does not mean a class of consumers cannot be certified. . . ***Neither the fact that class members have to "self-identify" nor that they might not have readily available proof of purchase, means that they are not ascertainable sufficient for class certification. . . . Post-judgment claims forms and other tools can be used to allow defendants to test an absent class member's purported entitlement to damages and to appropriately apportion damages between class members***.

*Korean Ramen*, 2017 WL 235052, at *21; *see also Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411, 2016 WL 3844334, at *6 (N.D. Cal. July 15, 2016) (finding class members ascertainable despite defendant's arguments that class members would have to self-identify and show "what they paid, where they purchased it, and how many times, plus whether they saw and were deceived" by a product's label); *Schoonover, v. Iovate Health Scis. U.S.A. Inc.*, No. 2:20-cv-01487-FLA (AGRx),

2023 WL 7107132, at *9 (C.D. Cal. Aug. 21, 2023) (finding that "any difficulties – such as identifying class members [did not] weigh[ ] against certification" because "the fact that consumers may be required to self-identify is not an issue that must be resolved at the class certification stage").

### B. Individual Issues of Plaintiff's Location Do Not Predominate

Defendant Perone raises similar concerns about supposedly overwhelming challenges with identifying class members by geographic location. *See* Perone Opp. at pg. 13, 15. And for the same reason discussed above, this argument fails. Furthermore, Defendant Perone acknowledges, albeit mockingly, that Plaintiffs have demonstrated a method by which potential class members can be identified and located. *See* Perone Opp. at 16. This undercuts any argument he raises about a lack of showing by Plaintiffs or that individual inquiries into identity and residence will predominate. Indeed, "the Ninth Circuit has recognized that Rule 23 does not require plaintiffs 'to satisfy an administrative feasibility prerequisite.'" *Zaklit v. Nationstar Mortg. LLC*, No. 5:15-cv-2190-CAS(KKx), 2017 WL 3174901, at *9 (C.D. Cal. July 24, 2017) quoting Briseno v. ConAgra Foods, Inc., 844 F.3d 1121, 1128 (9th Cir. 2017) ("The authors of Rule 23 opted not to make the potential administrative burdens of a class action dispositive and instead directed courts to balance the benefits of class adjudication against its costs. We lack authority to substitute our judgment for theirs."). Plaintiffs have proffered a method by which the geographic location of potential class members can be identified through the IP addresses used to transact EMAX tokens and/or self-identification, or a combination of both. Thus, even accounting for any challenges with the proposed method, it is enough for class certification purposes that Plaintiffs "have identified a common method of proof that will allow plaintiffs to identify members of the class." *Id*.

## II. DUE PROCESS IS SATISFIED

Next Defendant Perone raises a due process argument with respect to the proposed nationwide California securities class. *See* Perone Opp. at 20-21. This

1  challenge has several weaknesses.  At the outset, it should be noted that Defendant
2  Perone does not levy this challenge with respect to certification of two separate state-
3  only classes: (1) a California state law class for the sales of unregistered securities
4  within California, and (2) a Florida state law class for the sales of unregistered
5  securities within Florida.  This is telling and underscores the lack of merit to
6  Defendants' claims.
7  In particular, Defendant Perone insists that the proposed nationwide class for
8  the state law claims lack extraterritorial application beyond California and Florida.
9  Perone Opp. at 7, 17-19.  He is mistaken.  For example, while not a class action, in
10 *Coexist Found., Inc. v. Fehrenbacher*, 865 F.3d 901, 909 (7th Cir. 2017), the Seventh
11 Circuit affirmed the district court's finding following a bench trial that a defendant in
12 Illinois could be liable for the sale of unregistered securities under Fla. Stat. Ann.
13 §517.07.  *See id*. at 904.
14 More importantly, Defendant glosses over the actual text of both the Florida
15 and California statutes to summarily conclude that they do not apply extraterritorially.
16 Specifically, Defendant ignores that it is both the "offer" or "sale" of unregistered
17 securities within the respective states that constitutes the violation.  The motion to
18 dismiss decision in the *Ripple* matter analyzes this issue directly.  *See Zakinov v.*
19 *Ripple Labs, Inc.*, No. 18-cv-06753, 2020 WL 922815, at *16 (N.D. Cal. Feb. 26,
20 2020).  There, the court notes that "an offer or sale of a security is made in California
21 under any of the following conditions:  When an offer to sell is made in this state;
22 When an offer to buy is accepted in this state; or If both the seller and purchaser are
23 domiciled in this state, the security is delivered to the purchaser in this state."  *Id*.
24 (citing Cal. Corp. Code §25008(a)).  The court then found that allegations that the
25 defendant had offered to sell a cryptocurrency on a company website qualified as an
26 offer via advertisement, which allowed for the reasonable inference that such
27 information was accessible to individuals within California.  *See id*. (concluding that
28

these facts were sufficient to allege that "defendants offered the subject unregistered securities 'in this state' for purpose of his § 25503 claim").

Here, the evidence proffered on this issue is even more than in *Ripple*. Defendant Perone made an offer to sell EMAX tokens via the Ethereummax website, as well as the website associated with the Mayweather-Logan Paul fight. ¶¶130-131, 133-134.[4] It is reasonable to infer that this information – which invited performance of a specific act (*i.e.*, purchasing EMAX tokens) without any further communication – was accessible to individuals within California. This "inference is further supported by the 'fungible' . . . nature of each [EMAX token] unit exchanged" (*see Zakinov*, 2020 WL 922815, at *16) and the allegations that the putative class representatives from California did, in fact, access this information. ¶¶245, 250, 247. Accordingly, this satisfies the "in this state" requirement for the California unregistered securities claim.

The same reasoning applies to the sister law in Florida. *See, e.g.*, Fla. Stat. §517.07(1) ("It is unlawful and a violation of this chapter for any person to sell or offer to sell a security within this state unless the security is exempt . . . .") and (2) ("No securities that are required to be registered under this chapter shall be sold or offered for sale within this state unless such securities have been registered . . . ."). Under the Florida statute, it is a violation for someone within Florida to (offer or) sell unregistered securities, but it is also a violation for someone outside Florida to offer (or sell) unregistered securities to someone within Florida. Defendant Perone admits that both he and EMAX Holdings, LLC (the "Company") resided and operated within Florida for the duration of the class period. By offering to sell the unregistered EMAX tokens while in Florida, Perone is liable for sales that took place anywhere nationwide.

---

[4] Unless otherwise noted, all ¶ and ¶¶ references are to Plaintiffs' Third Amended Class Action Complaint ("TAC"), ECF No. 190, and all terms and acronyms are defined and used as in the TAC.

Moreover, despite his arguments to the contrary (Perone Opp, pg. 20), Defendant Perone did, in fact, direct sufficient actions toward the State of California to satisfy due process. Beyond the Ethereummax-related websites, Defendant Perone is alleged to have orchestrated a promotional scheme with multiple individuals that undisputably reside in California, and who operated on his and the Company's behalf while in California. Specifically, Perone, along with Defendant Rechnitz, devised and orchestrated the plan to recruit famous celebrities to promote the purchase of EMAX tokens. *See, e.g.*, GP-SEC-030490, 492-493, 499, 503 (Exhibit 5, attached to Declaration of John T. Jasnoch in Support of Motion for Class Certification, Feb. 11, 2025, ECF No. 241.)

### III. THE PROPOSED CLASS AND SUBCLASS DO NOT REQUIRE A PRIVITY LIMITATION

Finally, Defendant Perone asserts that the class definition fails to include a privity limitation and the motion for class certification should be denied as a result. This is unnecessary for two reasons. First, Dr. Clark confirms that virtually all EMAX token transactions during the class period occurred on Uniswap, a decentralized exchange where users transact directly against liquidity pools. *See* Clark Reply at 9-10. Because these pools were supplied, at least in part, by wallets associated with the Defendants, each EMAX purchase by a class member—whether a named Plaintiff or an absent class member—can be traced as a direct transaction against tokens offered by the Defendants. This structure means that the evidence establishing privity is uniform across the class: blockchain records will show that both Plaintiffs and absent class members purchased tokens from the same liquidity pool, in which Defendants deposited their EMAX holdings. Thus, the privity analysis for class certification is identical for Plaintiffs and absent class members alike, and the class definition does not require modification. Only those purchasers who bought from the Defendant-funded liquidity pool during the relevant time period are included in the class definition for the state law sale of unregistered securities claims. And the manipulation claim under Cal. Corp. Code 25400 & 25500 do not have a privity

requirement (*see California Amplifier, Inc. v. RLI Ins. Co.*, 94 Cal. App. 4th 102, 109, (2001)), therefore modifying the proposed definitions to include a privity limitation in the class definition for this claim is inappropriate.

## CONCLUSION

For the foregoing reasons and those set forth in the Motion, Plaintiffs respectfully request that the Court: (a) certify the Class and Subclasses; (b) appoint Plaintiffs to serve as Class Representatives for the Class and Subclasses; and (c) appoint Scott+Scott to serve as Class Counsel.[5]

Dated: May 27, 2025                     Respectfully submitted,

                                        *s/ John T. Jasnoch*
John T. Jasnoch (CA 281605)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile:  619-233-0508
jjasnoch@scott-scott.com

*Lead Counsel for Plaintiffs and the Proposed Class*

---

[5] To the extent that the Court rules that the proposed Class or Subclasses do not fully satisfy the requirements of Rule 23(a) or (b), Plaintiffs respectfully request that the Court deny the Motion without prejudice to re-filing.

# CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Plaintiffs certifies that this brief contains 3,314 words, which complies with the word limit of L.R. 11-6.1.

Dated:   May 27, 2025        */s/ John T. Jasnoch*
                             John T. Jasnoch

# CERTIFICATE OF SERVICE

I, John T. Jasnoch, hereby certify that on May 27, 2025, I caused the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

Executed on May 27, 2025, at San Diego, California.

*/s/ John T. Jasnoch*
John T. Jasnoch

- 13 -
Plaintiffs' Reply to Defendant Perone's Opposition to Motion for Class Certification
CASE NO. 2:22-cv-00163-MWF-SK