UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  August 6, 2025
Title:    In re EthereumMax Investor Litigation

Present:  The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

          Deputy Clerk:                     Court Reporter:
          Rita Sanchez                      Not Reported

          Attorneys Present for Plaintiffs:  Attorneys Present for Defendant:
          None Present                       None Present

**Proceedings (In Chambers):**   ORDER RE: MOTION TO CERTIFY CLASS [242]

        Before the Court is the Motion to Certify Class (the "Motion"), filed by
Plaintiffs Christopher DeLuca et al. on February 11, 2025.  (Docket No. 242).
Defendant Floyd Mayweather, Jr. filed an Opposition on April 25, 2025.  (Docket No.
250).  Defendants EMAX Holdings, LLC and Giovanni Perone filed an Opposition on
April 28, 2025.  (Docket No. 251).  Defendant Paul Pierce filed an Opposition on April
28, 2025.  (Docket No. 252).  Defendant Kimberly Kardashian filed an Opposition on
April 28, 2025.  (Docket No. 253).  Defendant Jona Rechnitz filed an Opposition on
April 28, 2025.  (Docket No. 256).  Plaintiffs filed a Reply to Pierce's Opposition on
May 27, 2025.  (Docket No. 257).  Plaintiffs filed Replies to all of the other
Oppositions on May 28, 2025.  (Docket Nos. 258-61).  Kardashian filed an Objection
to Plaintiffs' Reply to her Opposition on June 9, 2025.  (Docket No. 266).

        The Court has read and considered the papers on the motions and held a hearing
on **June 24, 2025**.

        The Motion is **GRANTED *in part***.  Plaintiffs have demonstrated that the
proposed state classes comport with the requirements of Federal Rules of Civil
Procedure 23(a) and 23(b)(3).  However, the risk of inappropriate extraterritorial
application of California and Florida law is simply too high with regard to the
proposed Nationwide Class, as is the risk of individuated questions not amenable to
common proof at trial.  As a result, even though the state subclasses may be certified,
the nationwide class cannot be.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  August 6, 2025
Title:      In re EthereumMax Investor Litigation

## I.    BACKGROUND

This putative class action concerns "a scheme among various individuals in the cryptocurrency sector to misleadingly promote and sell the digital asset associated with EthereumMax (the EMAX Tokens) to unsuspecting investors."  (Third Amended Complaint ("TAC") (Docket No. 190) ¶ 2).  The Court previously summarized the facts of this action in its Order: Re Defendants' Motions to Dismiss (Docket No. 189), the Order Granting in Part Defendants' Motions to Dismiss and Strike the Second Amended Complaint (Docket No. 161), and the Order Granting Defendants' Motion to Dismiss the First Amended Complaint (Docket No. 99).  The Court therefore will not repeat those facts and incorporates the factual background from those prior orders.

## II.    LEGAL STANDARD

"Federal Rule of Civil Procedure 23 governs the maintenance of class actions in federal court."  *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 (9th Cir. 2017).  To obtain class certification, the putative lead plaintiffs must "satisfy each of the four requirements of Rule 23(a) — numerosity, commonality, typicality, and adequacy — and at least one of the requirements of Rule 23(b)."  *Id.* (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011)).  The party seeking class certification bears the burden of establishing by a preponderance of the evidence that the requirements of Rules 23(a) and 23(b) have been met.  *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022).  "Courts must perform a 'rigorous analysis'" of Rule 23(a)'s requirements before concluding that class certification is appropriate.  *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1052 (9th Cir. 2015) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011)).

## III.    ANALYSIS

Plaintiffs request to be tried on a class-wide basis on their fourteen claims for violation of four states' laws (California, Florida, New York, and New Jersey).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 22-00163-MWF (SKx)                    **Date:** August 6, 2025
**Title:**       In re EthereumMax Investor Litigation

Plaintiffs seek to certify the following five proposed classes (the "Proposed Classes") under Rule 23(b)(3):

1. **Nationwide Class**: All persons in the United States who, between May 14, 2021, and June 27, 2021, purchased unregistered EthereumMax tokens and were subsequently damaged thereby.

Plaintiffs seek to certify this class "based only on the California and Florida state securities laws, not on the laws of the several states." (Motion at 6). As for the consumer protection causes of action under California, New York, Florida, and New Jersey law, Plaintiffs seek to certify the following four classes under Rule 23(b)(3):

2. **California Class**: All persons in California who, between May 14, 2021, and June 27, 2021, purchased EthereumMax tokens and were subsequently damaged thereby.

3. **New York Class**: All persons in New York who, between May 14, 2021, and June 27, 2021, purchased EthereumMax tokens and were subsequently damaged thereby.

4. **Florida Class**: All persons in Florida who, between May 14, 2021, and June 27, 2021, purchased EthereumMax tokens and were subsequently damaged thereby.

5. **New Jersey Class**: All persons in New Jersey who, between May 14, 2021, and June 27, 2021, purchased EthereumMax tokens and were subsequently damaged thereby.

(*Id.* at 7).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  August 6, 2025

Title:      In re EthereumMax Investor Litigation

### A.    Rule 23(a) Factors

Defendants do not dispute that the named Plaintiffs and their counsel are adequate representatives of Plaintiffs' interests.  The Court therefore analyzes the disputed factors.

### 1.  Numerosity

Under Rule 23(a)(1), a class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Plaintiffs present an estimation by their expert that during the class period, "over 300,000 unique purchases of EMAX-Pilot or EMAX were made through Uniswap," a trading platform. (Motion at 11).  "Of these, 100,000 were made by unique Ethereum addresses." (*Id.* at 11-12 (citing Declaration of Jeremy Clark (Docket No. 243-8) at 14)).

In their Oppositions, Defendants Mayweather, Kardashian, and Rechnitz argue that while blockchain technology allows for the total number of transactions to be documented, there is no limitation on the number of wallets an individual purchaser may maintain, and that therefore the class size is likely smaller than the total number of documented addresses. (*See, e.g.*, Mayweather Opposition (Docket No. 250) at 8).

But as Plaintiffs explain in their Replies, this is unlikely to be a substantively meaningful point.  "Courts generally find that numerosity is satisfied if the class includes forty or more members." *Maldonado v. Apple, Inc.*, 333 F.R.D. 175, 186 (N.D. Cal. 2019).  "The party seeking certification 'do[es] not need to state the exact number of potential class members, nor is a specific number of class members required for numerosity,'" so long as there are sufficient class members that joinder is impracticable. *Id.* (quoting *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D. Cal. 2005)).

Taking seriously Defendants' argument that it is unlikely that the 100,000 unique EMAX addresses in the class period were maintained by 100,000 unique individuals (as opposed to unique wallets), it is an extreme and unsupported leap to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                              Date:  August 6, 2025
Title:      In re EthereumMax Investor Litigation

find that this poses a serious numerosity issue.  If there were in reality only 40 class members, a generally accepted figure to establish numerosity, those 40 individuals would need to operate 2,500 wallets on average to account for the 100,000 unique EMAX purchases made through Uniswap.  The Court believes Plaintiffs have established by a preponderance of the evidence—and common sense—that the more likely explanation is that some number less than 100,000 but more than 40 made those purchases.  Although the Court does not certify the Nationwide Class for the reasons explored below, the Court believes this hypothetical is a useful way to approach the numerosity issue.  The Court also refers the parties to the Dr. Clark's state-level analysis, discussed below.

Defendants' second argument regarding numerosity is more persuasive, although ultimately unsuccessful.  Defendants argue that regardless of the number of *overall* EMAX purchases during the class period, Plaintiffs have failed to demonstrate that each of the individual state subclasses are sufficiently numerous for certification.  (*See, e.g.*, Kardashian Opposition at 11 ("Plaintiffs provide *no* evidence, or even an estimate, showing that each state class is sufficiently numerous.") (emphasis in original)).  This argument is compounded by the fact that although blockchain data is capable of tracking the fact of individual purchases, it does not track the location from which the purchases are made.

However, the Court is persuaded by Dr. Jeremy Clark's class size estimates in his Reply Declaration:

> [A]fter applying demographic proxies and national-level Ethereum usage data, Dr. Clark was able to conservatively estimate the Class size in the relevant geographies. . . . In particular, the proposed methodology identified the following estimated Class/Subclass sizes by geographic location: Nationwide: 3219-8602; California: 384-1026; Florida: 209-559; New York: 196-524; and New Jersey: 90-241.

(Reply to Kardashian Opposition (Docket No. 264-1) at 8 (citing Reply Declaration of Jeremy Clark (Docket No. 264-5) at 6)).  Kardashian has filed evidentiary objections to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 22-00163-MWF (SKx)                              **Date:** August 6, 2025
**Title:**      In re EthereumMax Investor Litigation

Clark's Reply Declaration (Docket No. 266), but those objections are overruled to the extent the Court relies on Clark's Reply Declaration, and denied as moot to the extent the Court does not. While Clark could have provided these figures in the first instance, they are also proper for being directly responsive to arguments raised by Defendants in their Oppositions.

More fundamentally, Defendants have not responded by providing any competing estimation of the sizes of the Proposed Classes. Moreover, it is not at all unusual in a class action, particularly one involving consumers, that the precise number of Plaintiffs in a location cannot be estimated with confidence. Accordingly, Plaintiffs have demonstrated numerosity by the preponderance of the evidence. *Olean Wholesale*, 31 F.4th at 665.

### 2. Commonality

Rule 23(a)(2) requires that the case present "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court's decision in *Dukes* clarified that to demonstrate commonality, the putative class must show that their claims "depend upon a common contention . . . that it is capable of class[-]wide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." 564 U.S. at 350. "[F]or purposes of Rule 23(a)(2), even a single common question will do." *Id.* at 359 (cleaned up).

Plaintiffs describe their rationale for commonality as such:

Here, Plaintiffs' and Class Members' claims arise from the common contentions that: (i) Defendants made uniform representations to Plaintiffs and the Class Members regarding the EMAX token, and (ii) this resulted in a common harm [to] Plaintiffs and Class Members who overpaid for the tokens that were unregistered and did not possess their promised attributes.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  August 6, 2025

Title:      In re EthereumMax Investor Litigation

(Motion at 12-13).  Of the Defendants, only Kardashian appears to raise a commonality
argument, and the Court finds it to be misplaced.  Kardashian argues that commonality
depends on the ability of the litigation to generate common answers, rather than
common questions, and the fact that the allegedly false representations made by the
different Defendants are disparate means that Plaintiffs have not established that
common answers will be produced if the Proposed Classes are certified.  (Kardashian
Opposition at 12 (citing *Dukes*, 564 U.S. at 350)).  Whatever the merits of this
argument, which the Court explores below, the Court does not believe it poses a
serious obstacle to commonality.  As set forth by Plaintiffs, one of the "common
answers" that they seek to generate in this litigation is whether Defendants—albeit
through disparate platforms—engaged in uniform representations regarding EMAX.  If
Kardashian is correct that the Defendants ***did not*** engage in such a scheme then, in the
Court's estimation, this provides a "common answer" that a jury may ultimately find.
Therefore, if anything, Kardashian's Opposition seeks to provide a general shield to
liability and illustrates why the questions put forward by Plaintiffs are in fact amenable
to class-wide resolution.

        And although the representations that are the subject of this litigation were made
through a variety of platforms by a variety of individuals, Plaintiffs have put forth
compelling evidence that those representations were part of an orchestrated
promotional scheme that was meant to secure value for Defendants at the expense of
Plaintiffs and the Proposed Class members.  Evidence that a "multi-media promotional
campaign [is] uniform, highly orchestrated, concentrated and focused on its intended
audience" has been found compelling, even where there was little evidence that the
putative class members were exposed to ***the exact same*** alleged misrepresentations.
*Makaeff v. Trump Univ., LLC*, No. 3:10-cv-0940-GPC-WVG, 2014 WL 688164, at *13
(S.D. Cal. Feb. 21, 2014).  Similarly, Plaintiffs have put forward compelling evidence
that Defendants Rechnitz and Perone worked with the Defendant company and the
celebrity Defendants to produce a highly orchestrated and methodical advertising
campaign though the celebrity Defendants' social media channels and public
appearances.  (*See, e.g.*, Reply to Mayweather Opposition at 14-15).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                          Date:  August 6, 2025

Title:      In re EthereumMax Investor Litigation

At the hearing, Defendants argued that the various Defendants did not have knowledge of, and did not direct, the representations made by one another, so there can be no "uniform" advertising campaign.  As a factual matter, the Court disagrees with this argument to the extent brought by Rechnitz, for the reasons described below—he was a unique conduit point in the alleged scheme and expressed an ability to get the celebrity Defendants to post advertisements to promote the EMAX tokens.

As a legal matter, the Court understands the merits of Defendants' arguments— it is a close call.  Authority in this Circuit, even in this District, points in conflicting directions regarding just how "uniform" or "highly orchestrated" a campaign must be to meet this standard.  So, for instance, in *Mickelonis v. Aspyr Media, Inc.*, No. SDCV 23-01220-MWC (ADSx), 2025 WL 1605332, at *10-*11 (C.D. Cal. May 16, 2025), the court found that an advertising campaign promoting a video game was not uniform or highly orchestrated in large part because the advertising campaign lasted for only about one year, and because there was no indication that all of the class members saw the advertisements.

The Court believes that an interpretation of *Makaeff* that focuses excessively on the temporal aspect of the marketing scheme risks missing the central holding in that case.  That the advertisements in *Makaeff* were long running was less important than the consideration that the advertisements were part of a "highly targeted advertising campaign."  *dotStrategy, Co. v. Facebook, Inc.*, No. 20-00170-WHA, 2021 WL 2550391, 2021 WL 2550391, at *8 (N.D. Cal. June 22, 2021) (interpreting *Makaeff*). Here, the Court finds that Plaintiffs have put forward considerable allegations and evidence that the advertising campaign was "highly targeted" such that many members of the proposed classes would have seen the advertisements.  For instance, the EMAX insiders sought to secure a promotion from Kardashian because "[e]veryone knows Kim [K] followers invest in crypto[currency]."  (Docket No. 241-5 at 2).  As another example, Mayweather's promotions were highly targeted at consumers prone to invest in cryptocurrency: He promoted EMAX at the Bitcoin 2021 conference, including in an interview with Fox Business.  (TAC ⁋ 143).  Perone reposted the interview to the EMAX Instagram account.  (*Id.* ⁋ 144).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  August 6, 2025
Title:       In re EthereumMax Investor Litigation

Although Defendants claim that the inconsistency of the promotional messages'
content weighs against a finding of a coordinated effort like the one in *Makaeff*, it is
unsurprising that a speculative cryptocurrency like EMAX would not be marketed by
reference to any inherent property—instead, the celebrity promoters conveyed a
universal message that EMAX tokens were growing in popularity and, as a result,
would be a valuable investment (the clear implication being that the tokens would
appreciate in value).  (*See, e.g.*, TAC ¶ 76 (reproducing a tweet from Pierce in which
he states "I made more money with this crypto in the past month than I did with
[ESPN] in a year"); *id.* ¶ 82 (reproducing a tweet from Pierce in which he states
"[p]eople [are] asking if they should jump on the [EMAX] train I'm [i]n for the long
haul . . . now is the time to jump on board"); *id.* ¶ 156 (reproducing an Instagram story
post from Kardashian in which she states "a few minutes ago [EMAX] burned 400
trillion tokens—literally 50% of their admin wallet giving back to the entire [EMAX]
community")).  (Relatedly, at the hearing, Kardashian argued that the representation
that EMAX was burning tokens did not relate to whether buying EMAX tokens was a
good investment opportunity.  However, as with more traditional reverse stock splits,
"burning" crypto is simply a mechanism of reducing supply to produce an increase in
price.  *See, e.g.*, Nathan Reiff, *What Does It Mean to Burn Crypto?  Practical
Applications*, Investopedia (Feb. 12, 2025),
https://www.investopedia.com/tech/cryptocurrency-burning-can-it-manage-
inflation/#:~:text=Cryptocurrency%20is%20%E2%80%9Cburned%E2%80%9D%20w
hen%20a,the%20tokens%20are%20gone%20forever ("Burning removes coins from
circulation, reducing that cryptocurrency's circulating supply.  The hope is to increase
demand, causing a value increase.")).

At this point in their development, excluding limited examples like Bitcoin
which are more widely accepted, cryptocurrency can only have speculative value, and
Defendants' promotional activity here propagated the general notion that EMAX was a
safe, worthwhile, and advantageous investment.  *See, e.g.*, Annie Lowrey, *The Great
Crypto Crash*, The Atlantic (Jan. 7, 2025),
https://www.theatlantic.com/ideas/archive/2025/01/cryptocurrency-deregulation-
future-crash/681202 ("Crypto coins, tokens, and currencies are 'purely speculative,'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  August 6, 2025
Title:        In re EthereumMax Investor Litigation

Prasad emphasized.  'The only thing anchoring the value is investor sentiment.'")
(quoting Eswar Prasad, Senior Professor of Trade Policy at Cornell University).

    Mayweather relies on *Schellenbach v. GoDaddy.com, LLC*, 321 F.R.D. 613 (D.
Ariz. 2017), for the proposition that "[a]n inference of classwide reliance cannot be
made where there is no evidence that the allegedly false representations were
uniformly made to all members of the proposed class."  *Id.* at 623 (quoting *Davis-
Miller v. Auto. Club of S. Cal.*, 201 Cal. App. 4th 106, 125, 134 Cal. Rptr. 3d 551
(2011)).  For the reasons expressed throughout this Order, the Court views this case as
being irreconcilable with that California case law which establishes that a presumption
of reliance is warranted where advertisements were pervasive (*Tobacco II* and related
cases) or highly targeted (*Makaeff* and related cases).  As a practical matter, the Court
also does not believe that Rule 23 serves to exempt companies and individuals from
proof of liability on a classwide basis if they promote via social media influencers
rather than via "legacy" media.  The Court is cognizant that, in contrast to the time at
which *Tobacco II* (and even *Makaeff*) were decided, consumers may in fact ***be more
likely*** to be exposed to a promotional campaign centered representations via social
media platforms than via magazines, television, or even websites hosted by the
company defendant.  It would be unreasonable to functionally apply a rule that
*Tobacco II* reliance could be proven only through widespread legacy media
representations.  Promotion through third-party influencers on social media is as much
a fact of contemporary advertising culture as magazine and television advertisements
were then.

    Moreover, although the parties largely frame the issue as one of typicality, the
Court believes the fraud on the market analysis below is also of relevance to
commonality.  That is, for the reasons described below, the Court finds that Plaintiffs
can prove reliance through a fraud on the market theory, at least to certain of their
claims, and a fraud on the market results in a common effect on the market (even if
purchasers held tokens in different quantities, leading to different economic outcomes).

    Accordingly, the Court concludes that the commonality requirement is met.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                          Date:  August 6, 2025
Title:      In re EthereumMax Investor Litigation

### 3.  Typicality

Rule 23(a)(3) requires the putative class to show that "the claims or defenses of
the representative parties are typical of the claims or defenses of the class."  Fed. R.
Civ. P. 23(a)(3).  "The test of typicality is 'whether other members [of the class] have
the same or similar injury, whether the action is based on conduct which is not unique
to the named plaintiffs, and whether other class members have been injured by the
same course of conduct.'"  *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014)
(citation omitted).  Typicality is satisfied "when each class member's claim arises from
the same course of events, and each class member makes similar legal arguments to
prove the defendant's liability."  *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir.
2010) (citation omitted).  "Typicality 'does not mean that the claims of the class
representatives must be identical or substantially identical to those of absent class
members.'"  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (quoting 5
Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 24.25 at 24–105 (3d
ed. 1992)).

"The commonality and typicality requirements of Rule 23(a) tend to merge," and
for this reason, much of the above analysis is applicable here as well.  *Gen. Tel. Co. of
Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Mayweather argues that the Proposed
Classes include purchasers who bought EMAX tokens through any exchange
(Mayweather Opposition at 9), but the Court believes that this is essentially a damages
issue that is efficiently resolved by Plaintiffs' proposed trial structure.

In Plaintiffs' proposed trial plan, liability will be established in Phase I,
aggregate damages will be established in Phase II, and in post-trial Phase III,
"Plaintiffs will present a Claims Administration Protocol to the Court setting forth their
proposed procedures for the submission, processing and resolution of claims by
individual class members."  (Motion at 8).  The difference in fees and slippage rates for
different exchanges may result in different recoveries for different class members.  But
the Court sees no reason why this would not be addressed in Phase III as to individual
Plaintiffs or—if the issue is widespread enough—would not be articulated as a reason
for the jury to reduce the aggregate damages in Phase II.  That is, Mayweather's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 22-00163-MWF (SKx)                    **Date:** **August 6, 2025**

**Title:**      In re EthereumMax Investor Litigation

argument, whatever its merit, can be tested within the procedures articulated by
Plaintiffs for class-wide resolution.  Regardless, the underlying injuries allegedly
caused to members of the Proposed Classes would nonetheless have been caused by
the same course of alleged conduct; namely, Defendants' misrepresentations and
fraudulent "pump-and-dump" scheme.

Kardashian raises another argument, one that is fundamental to resolution of the
Motion.  Kardashian argues that because the Defendants engaged in different
promotional efforts (there were "30 alleged representations by different Defendants at
different times"), it is unclear ***which*** representations the putative class members would
have relied on (if any) in making their EMAX token purchases.  (Kardashian
Opposition at 14).  That is, some putative class members may have relied on Pierce's
statements, some may have relied on Mayweather's statements, and others may have
relied on Kardashian's statements, and so on, and therefore there can be no typicality,
where the underlying claims are so disparate.  Kardashian argues that "Plaintiffs offer
***no*** evidence that putative class members were uniformly exposed to Kardashian's
purported statements before purchasing EMAX."  (*Id.* at 17) (emphasis in original).

But the Court is persuaded that "individualized determinations as to reliance and
causation are not required as long as certain facts exist to trigger [certain] inferences
and presumptions."  *Makaeff*, 2014 WL 688164, at *12.  That is, where facts exist to
support the notion that an advertising campaign is "uniform, highly orchestrated,
concentrated and focused on its intended audience," class certification may be
appropriate, despite the possibility that Plaintiffs relied on different alleged
misrepresentations.  *Id.* at *13; *cf. In re Tobacco II Cases*, 46 Cal. 4th 298, 327, 93 Cal.
Rptr. 3d 559 (2009) ("Nor does a plaintiff need to demonstrate individualized reliance
on specific misrepresentations to satisfy the reliance requirement.").

And here, as expressed above, the Court finds that there is substantial evidence
that the advertising campaign was highly coordinated, and that the high levels of
coordination led to price fluctuations that benefitted Defendants and harmed the
Proposed Class members.  Rechnitz recruited celebrity promoters for the EMAX
tokens, despite his and Kardashian's apparent reservations that the product was a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                         Date:  August 6, 2025
Title:       In re EthereumMax Investor Litigation

"scam."  (Reply to Rechnitz's Opposition (Docket No. 264-4) at 7-8).  Rechnitz
attempted to recruit other individuals into the scheme that he expressly referred to as a
"pump-and-dump" opportunity.  (*Id.* at 8).  Rechnitz apparently timed his EMAX
sales, as did the other Defendants, to coincide with the times when Defendants'
promotions were issued, which would cause a surge in demand for EMAX tokens.
(*Id.*).  In the face of such facts, even if it is likely (even assured) that certain Proposed
Class members relied on advertisements that others did not, the Court cannot help but
find that the scheme was highly organized, coordinated, and designed to defraud retail
investors (if any of these disputed facts are ultimately proven).

        At the hearing, Defendants argued that the evidence raised in support of the
notion that there was a "pump-and-dump" scheme was only presented in Plaintiffs'
Reply brief, creating an issue about whether the Court can properly consider that
theory.  The Court views the factual element of this argument as being inaccurate.
Several pieces of evidence submitted in support of the initial Motion also demonstrate
the potential existence of a pump-and-dump scheme.  (*See, e.g.*, Docket No. 241-4 at
2-3 (displaying a text conversation in which Perone recounts the initial success of the
EMAX coin and Perone's conversational partner, "Diamond," writes "I'm your main
pumper," to which Perone responds "I have about 6 guys like you but you are all
appreciated"); Docket No. 241-6 at 23 (displaying a text from Rechnitz to Perone in
which Rechnitz writes "I mean Kim writes to me don't ever bring something like this
to me again I think it's a scam.").

        It has also been clear to Defendants since the initial iteration of the Complaint
that Plaintiffs alleged the existence of a pump-and-dump scheme.  The evidence
required to support a class certification motion is simply not as rigorous as on a motion
for summary judgment.  *See Lytle v. Nutramax Laby's, Inc.*, 114 F.4th 1011, 1024 (9th
Cir. 2024) ("[C]lass action plaintiffs are not required to actually prove their case
through common proof at the class certification stage.  Rather, plaintiffs must show
that they will be able to prove their case through common proof ***at trial***. . . . [W]e see
no reason why plaintiffs may not, in appropriate circumstances, satisfy this burden
through a proffer of a reliable method of obtaining evidence.") (emphasis in original).

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                        Date:  August 6, 2025

Title:        In re EthereumMax Investor Litigation

As the Court views it, the important point is that Plaintiffs have set forth sufficient
evidence for the Court to find that the alleged pump-and-dump scheme was highly
coordinated.

Moreover, Defendants have not adequately dealt with Plaintiffs' contention that
specific reliance need not be proven because the promotions acted as a fraud on the
market.  "To demonstrate that the presumption of reliance applies" under a fraud on the
market theory, "a plaintiff must prove '(1) the alleged misrepresentations were publicly
known, (2) they were material, (3) the stock traded in an efficient market, and (4) the
plaintiff traded the stock between when the misrepresentations were made and when
the truth was revealed.'"  *Di Donato v. Insys Therapeutics, Inc.*, 333 F.R.D. 427, 437
(D. Ariz. 2019) (quoting *Haliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258,
268 (2014)).  Here, Plaintiffs have consistently argued that the fraud on the market
presumption applies, and Defendants have put forward little evidence challenging
Plaintiff's evidence in support of the above factors.  (*See, e.g.*, Reply to Kardashian
Opposition (Docket No. 264-1) at 13-14).

At the hearing, Defendants argued that the above elements are not met here
because of failures in the third and fourth elements.  Defendants argued that the
proposed classes are too broad for the elements to be met, because they include
individuals who "could not have relied on the same representations" because of the
time at which they purchased the EMAX tokens.

Beginning with the third element, although Defendants purported to raise an
argument with respect to that issue, the Court simply cannot deduce what that
argument was, if any.  As to the fourth element, the argument appears to miss the point
of the fraud on the market theory.  The fraud on the market theory acts as a
***replacement*** for actual reliance—that is, even market participants who were unaware
of the promotions were affected by the market effect of the promotions, under that
theory.  The notion that Plaintiffs need to prove actual reliance to establish a fraud on
the market theory does not align with the theory itself.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  August 6, 2025
Title:      In re EthereumMax Investor Litigation

Therefore, the Court finds that Plaintiffs have shown enough that reliance is present—either because of the degree of coordination in the subject promotional campaign, or else under a fraud on the market presumption of reliance.

At the hearing, Mayweather correctly noted that the fraud on the market theory is unavailable for claims brought under California securities laws.  *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 23 Cal. Rptr. 2d 101 (1993).  However, the Court finds that as to these claims, Plaintiffs have also provided evidence that the alleged scheme was highly targeted and orchestrated, and that reliance may also be demonstrated on a classwide basis under the *Tobacco II* and *Makaeff* lines of cases.

Mayweather also adeptly argued at the hearing that he was unaware of any cases applying a fraud on the market theory to consumer claims.  First, the Court refers the parties to the above discussion regarding the nature of cryptocurrency.  Any paucity in the case law reflects cryptocurrency's novelty—cryptocurrency is sold to retail consumers but is not a traditional consumer good.  Without resolving the question of whether cryptocurrency is a security or not, at the very least (and at a higher level of generality) cryptocurrency is a property interest that is marketed and sold to ordinary investors.  Unlike ordinary shares of stock, cryptocurrencies, with the exception of "stablecoins," are not tied to the underlying market value of some other entity.  *See, e.g.*, Emily Nicolle & Olga Kharif, *What Are Stablecoins?  How Will the US Genius Act Regulate Them?*, Bloomberg (May 20, 2025), https://www.bloomberg.com/explainers/what-are-stablecoins-and-how-do-the-cryptocurrencies-work ("[Stablecoins] are digital assets designed to hold a steady value, in contrast to the price volatility seen in Bitcoin and other popular cryptocurrencies.  Usually pegged to a traditional currency, most commonly the US dollar, stablecoins are not widely used for buying goods and services.").  This is all a way of saying that cryptocurrencies, with important but limited exceptions, function similarly **both** to speculative investments, like shares of stock **and** consumer goods, the success of which are ultimately reflected by share prices, in consumer goods companies.  Much more simply, here, the alleged security **is also the consumer good**.  It is unsurprising that there is little precedent for this aspect of cryptocurrency.  But

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  August 6, 2025

Title:      In re EthereumMax Investor Litigation

Defendants do not point the Court to any reason why, as a theoretical matter, cryptocurrency is incapable of being both the alleged security at issue in the securities claims and the subject of the false advertising and other consumer claims.

At the hearing, Defendants appeared to suggest that the Court should make an initial determination at the class certification stage regarding whether the EMAX tokens are securities, because if they are not, "the consumer claims fall off." Kardashian argued that this inquiry was relevant to the questions of reliance and typicality.

The Court does not view that as being an appropriate issue for resolution at class certification.  Kardashian is correct that if the EMAX token is not found to be a security at trial (or at summary judgment), then the Defendants will not be found liable under the state securities causes of action.  But the argument that the Court should summarily make a determination on the merits of that issue attempts to advance a trial or summary judgment issue to the class certification stage.  "Although we have cautioned that a court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim,' . . . Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  *Amgen Inc. v. Conn. Retirement Plans & Tr. Funds*, 568 U.S. 455, 465-66 (2013) (quoting *Dukes*, 564 U.S. at 351).  Here, making an initial determination that EMAX tokens are not securities would go well beyond an overlapping merits question—it would be a pure merits question.  And in any case, whether EMAX tokens are securities is a question that is eminently capable of class-wide resolution, which is the inquiry actually in front of the Court.  Whether EMAX tokens are securities or not, the answer will be the same for each and every class member.

At the hearing, Kardashian argued that each of Plaintiffs' many claims must be separately analyzed as to each of the several Defendants, that certain claims are inapplicable to Kardashian specifically, and that the Proposed Classes are not limited to those individuals who saw and relied on posts by Kardashian specifically.  As to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  August 6, 2025
Title:       In re EthereumMax Investor Litigation

first two of these points, the Court has already considered the ways in which the claims
at issue apply to Kardashian in particular, and (of course) Kardashian, like the other
Defendants, is free to raise a summary judgment motion to resolve issues unique to
her, if appropriate.  But Kardashian provides no legal authority for the proposition that
each of the many claims must be separately analyzed as to each Defendant, or that
class certification is inappropriate as a general matter because Kardashian is not
subject to certain claims.  Second, the Court finds that the classes need not be defined
as limited to those individuals who saw and relied on Kardashian's posts under the two
rationales explained above.  Plaintiffs have a credible argument that Defendants' posts
operated as a fraud on the market and in addition were part of a highly targeted
promotional campaign.  Kardashian's individual defenses may well be amenable to
resolution on summary judgment, but they do not defeat Plaintiffs' showing regarding
the Rule 23 factors.

       Kardashian also argued at the hearing that Plaintiffs have not proven or even
alleged that they bought the tokens from Kardashian, which is insufficient to prove a
claim under the California False Advertising Law and the Unfair Competition Law.
As an initial matter, these are issues for summary judgment, not class certification.
The same goes for Kardashian's sundry and curt arguments regarding other state law
claims.

       In any case, Kardashian unduly narrows the FAL and UCL requirements.  The
Court interprets Kardashian's argument as a standing argument, and the "UCL and
FAL standing requirement[s] are identical."  *Hawkins v. Kroger Co.*, 906 F.3d 763,
768 (9th Cir. 2018) (citing *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103 (9th Cir.
2013)).  Kardashian focuses on certain language from *Hinojos*, that a plaintiff must
demonstrate "'some form of economic injury' as a result of his transactions **with the
defendant**" to prove a UCL or FAL claim.  *Hinojos*, 718 F.3d at 1104 (quoting *Kwikset
Corp. v. Superior Court*, 51 Cal. 4th 310, 323, 120 Cal. Rptr. 3d 741 (2011) (emphasis
added)).  But in *Kwikset*, the California Supreme Court embraced the position that the
relationship between the plaintiff and defendant is simply one of reliance, "in
accordance with well-settled principles regarding the element of reliance in ordinary

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                          Date:  August 6, 2025

Title:      In re EthereumMax Investor Litigation

fraud actions." *Kwikset*, 51 Cal. 4th at 326-27 (quoting *In re Tobacco II Cases*, 46 Cal.
4th at 306).  As a result, because the Court has found that Plaintiffs have demonstrated
reliance to a sufficient standard for certification, the Court sees no reason to summarily
dismiss these claims as to Kardashian in particular.  The Court again reiterates that
Kardashian may bring these arguments on summary judgment, which is a more
appropriate venue for those arguments to be heard.

Accordingly, the typicality requirement is satisfied.

### 4. Adequacy

Rule 23(a)(4) requires the representative parties to "fairly and adequately protect
the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "In making this determination,
courts must consider two questions: '(1) do the named plaintiffs and their counsel have
any conflicts of interest with other class members and (2) will the named plaintiffs and
their counsel prosecute the action vigorously on behalf of the class?'"  *Evon v. Law
Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (citing *Hanlon v.
Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

Plaintiffs argue that they will adequately represent the interests of the Proposed
Classes because they do not have any conflicts of interest, suffered the same form of
losses as the other putative class members, and have vigorously represented the
interests of the Proposed Classes in this action.  (Motion at 15).  Defendants do not
appear to contest Plaintiffs' adequacy.

"To be adequate, plaintiffs' counsel must be qualified, experienced, and
generally able to conduct the proposed litigation."  *Petersen v. Costco Wholesale Co.*,
312 F.R.D. 565, 578 (C.D. Cal. 2016).  Interim Class Counsel, Scott + Scott Attorneys
at Law, LLP, are adequate counsel for the Proposed Classes.  Interim Class Counsel
has zealously represented the Proposed Classes in opposing Defendants' motions to
dismiss in this action and in preparing the Motion, as just two examples of their skillful
representation.  Defendants do not identify any reason why Interim Class Counsel is
not sufficiently qualified, experienced, or skilled.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                        Date:  August 6, 2025

Title:        In re EthereumMax Investor Litigation

Accordingly, the adequacy requirement is satisfied.

### 5.  Ascertainability

"Although not specifically mentioned in Rule 23, there is an additional prerequisite to certification—that the class be ascertainable." *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 521 (C.D. Cal. 2012).  "A class is sufficiently defined and ascertainable if it is 'administratively feasible for the court to determine whether a particular individual is a member.'" *Id.* (quoting *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998)).

Mayweather, Pierce, and Kardashian argue that the ascertainability requirement is not met because the Proposed Classes are impermissible "fail-safe" classes.  "A court may not . . . create a 'fail safe' class that is defined to include only those individuals who were injured ***by the allegedly unlawful conduct***." *Olean Wholesale*, 31 F.4th at 669 n.14 (emphasis added).  "Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012).

The Court does not believe this poses a serious certification problem.  First, the problems of being over-inclusive on the one hand and creating a fail-safe class on the other, "can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis." *Id.* (collecting cases); *see also Lewis v. First Am. Title Ins. Co.*, 265 F.R.D. 536, 551 (D. Idaho 2010) (amending class definition to avoid fail safe issue).  If the Court were assured that there was a serious fail-safe issue here, it would likely simply amend the Proposed Class definitions to avoid the problem.

In any case, the Court does not believe that the Proposed Class definitions require amendment to avoid the fail-safe issue.  As Plaintiffs argue, the class definitions include the phrase "and were subsequently damaged thereby" to exclude

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                         Date:  August 6, 2025
Title:        In re EthereumMax Investor Litigation

from the class individuals who purchased EMAX tokens and sold them after they
appreciated in value.  That is, it ensures that the class members have suffered economic
injury.  But that phrase ***does not*** mean that the class members will either win on their
claims or else be defined out of the class, which is impermissible.  The jury may still
find, for instance, that there were no misleading representations.  The jury may find
that even if there were misleading representations, the losses suffered by the class
members are not attributable to Defendants.  They may find that Plaintiffs have
provided insufficient proof of the measure of their damages.  Put another way, there
are several ways in which members of the Proposed Classes could fail to prove their
claims without being defined out of the Proposed Classes.  In *Zakinov v. Ripple Labs,
Inc.*, No. 18-cv-06753-PJH, 2023 WL 4303644 (N.D. Cal. June 30, 2023), the court
certified classes comparably defined in a case involving the application of securities
laws to cryptocurrency sales.  *Id.* at *1 (noting proposed class definition of "all persons
or entities who purchased XRP from May 3, 2017 through the present and who have
(a) retained the XRP, and/or (b) sold the XRP at a loss").

        Relating to the fail-safe issue, Defendants attempted at the hearing to place a
higher burden than is actually required under Rule 23.  Defendants argued—without
legal citation—that in order to certify a class, the Court would "have to look at [the]
transaction data person by person" to ensure that all of the proposed class members in
fact had trading losses stemming from the EMAX tokens.  The Court views those
matters as being appropriate for resolution at the Claims Administration phase of these
proceedings, and not at the initial class certification stage.  The Court also believes that
Plaintiffs have put forward sufficient evidence through Dr. Clark that defining the
classes in this manner does not pose a numerosity problem, as Defendants also
suggested, especially in view of the fact that EMAX tokens are now essentially
valueless.  That is, some number of individuals, almost certainly enough to certify a
class, were left holding the bag when the value of the EMAX tokens dropped to
nothing.  However, that those individuals suffered trading losses because of their
EMAX token purchases does not mean as a legal matter that those individuals were
harmed by Defendants in a legally cognizable way.  The Proposed Classes are
therefore not fail-safe classes.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  August 6, 2025
Title:      In re EthereumMax Investor Litigation

Accordingly, the Proposed Classes are ascertainable.

Because all of the requirements imposed by Rule 23(a) are satisfied, the Court next considers whether the additional requirements of Rule 23(b)(3) are met.

## B.    Rule 23(b)(3) Factors

Rule 23(b)(3) allows the Court to certify a class seeking class-wide monetary relief but only if the additional requirements of predominance and superiority are satisfied.  *See* Fed. R. Civ. P. 23(b)(3); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (discussing relevance of "predominance" and "superiority" requirements of Rule 23(b)(3)).  Additionally, because several Defendants argue that the "manageability" requirement of Rule 23(b)(3) is not met, the Court will also briefly address that requirement.

### 1.  Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods*, 521 U.S. at 623.  It involves similar questions as the commonality analysis, but it "is even more demanding than Rule 23(a)."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).  Predominance should be found when "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication."  *Hanlon v. Chrysler Corp*., 150 F.3d at 1022 (internal citation omitted).

Many of Defendants' arguments about the predominance requirement have been addressed and disposed of in the analysis above, which is unsurprising given that "Rule 32(a)'s 'commonality' requirement is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions."  *Amchem Prods.*, 521 U.S. at 609.  Therefore, the analysis above is equally applicable here, and for the same reasons, the Court believes that common questions predominate in this action as to the state classes.  However, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                      Date:  August 6, 2025

Title:        In re EthereumMax Investor Litigation

Court also addresses an issue herein that renders certification of the Nationwide Class
inappropriate.

The Court addresses the unique predominance arguments made by each of the
Defendants.

### a.  Mayweather

In his Opposition, Mayweather presents the intriguing argument that a class
cannot be certified as to the California Unfair Competition Law ("UCL") claim,
because "[t]he test of whether a business practice is unfair [under the UCL] involves an
examination of that practice's impact on its alleged victim, balanced against the
reasons, justifications and motives of the alleged wrongdoer," which necessarily
involves individualized inquiries into the impact on individual Plaintiffs.  (Mayweather
Opposition at 15 (quoting *Menagerie Prods. v. Citysearch*, No. CV 08-04263-CAS
(FMOx), 2009 WL 3770668, at *14 (C.D. Cal. Nov. 9, 2009))).

But this argument, which is broad in scope and would seemingly prevent class
certification as to *any* 23(b)(3) class bringing an "unfair" prong UCL claim, defies the
great weight of case law in this Circuit.  "The UCL is intended to deter unfair business
practices," so "'relief under the UCL is available without individualized proof of
deception, reliance, and injury.'"  *Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 521
(C.D. Cal. 2015) (quoting *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir.
2011), *abrogated on other grounds by Comcast Corp. v. Behrend*, 569 U.S. 27
(2013))).  And, in fact, "district courts in California routinely certify consumer class
actions arising from alleged violations of the CLRA, FAL, and UCL."  *Tait v. BSH
Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012) (collecting cases).  "A
claim under the UCL based on false advertising or promotional practices requires that a
plaintiff only 'show that members of the public are likely to be deceived' by the
defendant's conduct."  *Spann*, 307 F.R.D. at 521 (quoting *In re Tobacco II Cases*, 46
Cal. 4th at 312).  Plaintiffs here intend to litigate such questions, and the common
question of whether the advertisements and general promotional campaign would
likely deceive the Proposed Class members predominates over individual questions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  August 6, 2025
Title:        In re EthereumMax Investor Litigation

Mayweather also argues that, as to the Nationwide Class claims, which are brought under California and Florida securities laws, individual issues will predominate because California choice of law rules require "the class action proponent . . . to show that California has 'significant contact or significant aggregation of contacts' to the claims of each class member." (Mayweather Opposition at 16 (quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012), *overruled on other grounds by Olean Wholesale*, 31 F.4th 651 (9th Cir. 2022))). However, the Court believes that Plaintiffs have sufficiently shown that California and Florida have significant contact with the Proposed Class members' claims, regardless of where the Proposed Class members live. Rechnitz, who allegedly played a crucial role in organizing the promotional scheme, conducted his activities in both Florida and California. (*See, e.g.*, Reply to Perone's Opposition (Docket No. 264-3) at 3). Defendant Perone resided in Florida during the relevant timeframe and Defendant EMAX Holdings, LLC appears to be organized under the laws of Florida. (*Id.* at 9). The misleading promotions largely emanated from California; specifically, those published by Kardashian, Pierce, and Rechnitz. (Motion at 6). Although Mayweather resides in Nevada, the claims of Proposed Class members who relied to their detriment ***only*** on his representations would still be significantly impacted by activities in California and Florida—the two states from which the allegedly concentrated scheme was apparently directed.

Mayweather then argues that even if significant contacts with California and Florida are established, California choice of law rules still prevent California law from being applied on a class-wide basis because Plaintiffs must first show that "the interests of other states [do not] outweigh California's interest in having its law applied." *Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 921, 103 Cal. Rptr. 2d 320 (2001). Mayweather then points to ways in which the securities laws of Florida and California differ. (Mayweather Opposition at 17-18). Broadly speaking, these differences do not pose a real impediment to class certification because as to most of these arguable conflicts, Mayweather has "not shown that that the conflict[s] . . . would bear upon any of the class members' claims in this case." *Zakinov*, 2023 WL 4303644, at *7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  August 6, 2025
Title:      In re EthereumMax Investor Litigation

Mayweather's best argument that a material conflict exists between the relevant
California and Florida securities laws is that a security's purchase or sale must occur in
California to violate California law, and that such sales must occur in Florida to violate
Florida law.  (Mayweather Opposition at 17-18).  Mayweather cites *Diamond
Multimedia Systems, Inc. v. Superior Court*, 19 Cal. 4th 1036, 80 Cal. Rptr. 2d 828
(1999), for the proposition that "[a] security's 'purchase or sale must occur in
California' to violate California law."  (Mayweather Opposition at 17 (quoting
*Diamond Multimedia Sys.*, 19 Cal. 4th at 1053)).  But this selective quoting of
*Diamond Multimedia Systems* does not fully represent the actual holding.

Here, "Plaintiffs are pursuing a nationwide class based only on the California
and Florida state securities laws, not on the laws of the several states."  (Motion at 6).
As to the California securities laws, Plaintiffs bring claims for (1) violations of
California Corporations Code sections 25110 and 25503; (2) violations of California
Corporations Code sections 25400 and 25500; (3) violations of California Corporations
Code sections 25401 and 25501; (4) violations of California Corporations Code section
25402; and (5) violations of California Corporations Code sections 25403(b), 25504,
and 25504.1.  (TAC ¶¶ 402-71).  In *Diamond Multimedia Systems*, the California
Supreme Court expressly held that as to several of these sections, there is no territorial
requirement like the one described by Mayweather.  *Diamond Multimedia Sys.*, 19 Cal.
4th at 1053-54.  The California Supreme Court explicitly found that sections 25400
and 25500 did not have this territorial limitation.  *Id.*  However, Mayweather is correct
that as to section 25401, which outlaws fraudulent or misleading actions in the offer,
sale, or purchase of securities, the Court in *Diamond Multimedia Systems* found that
the sale, buy, or offer to buy must occur "in this state," *i.e.*, California.  (*Id.* at 1053;
*see also* Cal. Corp. Code § 25401).

In apparent recognition of the problem with section 25401's extraterritorial
application, Plaintiffs argue that "both the California Corporate Securities Law and
Florida Securities and Investor Protection Act are fully capable of Class-wide
adjudication on the common issue of whether the EMAX token qualified as a security
requiring government registration prior to a public sale."  (Reply to Mayweather's

CIVIL MINUTES—GENERAL                                                      24

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  August 6, 2025

Title:      In re EthereumMax Investor Litigation

Opposition at 16).  But that, of course, is not what section 25401 concerns.  Bearing in mind that the Defendant company in this action is situated in Florida, it appears to the Court that first-party offers to buy and sell would have occurred in Florida and the state of the purchaser, and that third-party offers to buy and sell are not capable of ready geographic determination.  Accordingly, there is a risk of extraterritorial application of section 25401 to purchases beyond those made "in this state."  Similarly, Florida Statute 517.07, under which Plaintiffs bring their thirteenth cause of action, applies to sales or offers to sell "a security within this state."  Fla. Stat. § 517.07.

The Court finds that this creates a significant predominance and superiority concern as to the Nationwide Class.  Based on the presentations of the parties, the Court can estimate (taking the averages of Dr. Clark's analyses discussed in the numerosity section above) that around 5,911 purchasers exist nationwide, and that around 705 and 384 purchasers reside in California and Florida, respectively.  Even discounting the possibility of international purchasers, and construing the Florida statute broadly, only around 1,100 of 5,911 purchasers would fall *ipso facto* under the California and Florida securities laws that are territorially limited.  To certify a national class as to these causes of action would therefore require very individuated questions of fact as to the substantial majority of purchasers.  If purchasers did not buy from first parties, but rather from fellow consumers, where did those consumers reside?  For those purchasers not residing in California and Florida, proof of Plaintiffs' securities claims would necessarily involve these and similar issues, which are simply not amenable to common proof.  Because the Nationwide Class is brought only under the California and Florida state securities laws (Motion at 6), the Court finds that it cannot certify such a class, where the risk of inappropriate extraterritorial application and individual issues are so high.

Accordingly, the Motion is **DENIED** as to the Nationwide Class.

At the hearing, Plaintiffs argued that the result in *Zakinov*, 2023 WL 4303644, which certified a nationwide class under California securities laws, should govern the Court's analysis here.  The Court does not believe that Plaintiffs provide a compelling explanation for why *Zakinov* supports nationwide class certification in this action:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  August 6, 2025
Title:       In re EthereumMax Investor Litigation

First, in *Zakinov*, the court was also concerned about the extraterritorial
application of California law, and explicitly limited the class such that it did not apply
to individuals outside of the United States.  *Id.* at *8.  Second, the court in *Zakinov*
found that as to the California securities laws, the plaintiffs had demonstrated "that
California has significant contact to the claims of each class member."  *Id.* at *7.  The
Court does not believe the question presented here is the same—it is a matter of
whether the California and Florida state statutes are even capable of application
beyond their borders, not whether there are sufficient contacts, as in *Zakinov*.  *Id.*

As an additional problem, it may well be the case that certain of the California
and Florida securities laws are not subject to the territorial limitations which concern
the Court here.  But in the briefing on the Motion and at the hearing, Plaintiffs
provided no argument that a nationwide class could be certified as to certain claims
and not others, and the Court does not understand Plaintiffs to be seeking that sort of
partial relief.  The complexity of the case, and Plaintiffs' many claims for relief, make
it incumbent upon Plaintiff to delineate with particularity the relief they seek.  Having
performed a "rigorous" analysis of the Rule 23 factors as required by *Dukes*, the Court
cannot find that Plaintiffs have articulated any willingness for nationwide certification
of some claims for relief and not others, nor have Plaintiffs articulated any reason why
the Court would take such action.

Other "nationwide" arguments by Defendants, however, are not persuasive.
More generally, Mayweather argues that Plaintiffs have failed to prove that privity is
demonstrable on a class-wide basis.  The Court is persuaded by Plaintiffs' argument in
response: that they have proffered a method by which the Proposed Class members
will demonstrate privity—by inquiring whether "the putative Class member
purchase[d] EMAX tokens during the relevant time period when the EMAX liquidity
pool was funded by the Executive Defendants."  (Reply to Mayweather's Opposition at
17).

Finally, Mayweather argues that Plaintiffs have failed to show that damages are
capable of class-wide proof because their proposed damages model only applies to
purchases made through Uniswap and because Plaintiffs cannot disaggregate domestic

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  August 6, 2025

Title:      In re EthereumMax Investor Litigation

from international purchasers.  Mayweather attempts to impose upon Plaintiffs a heightened and unrealistic standard that does not find a basis in any case law. Mayweather cites *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017), for the proposition that "plaintiffs must show that 'damages are capable of measurement on a classwide basis,' in the sense that the whole class suffered damages traceable to the same injurious course of conduct underlying the plaintiffs' legal theory." *Id.* (quoting *Comcast*, 569 U.S. at 34).  But as the Ninth Circuit stated in the following sentence, "damage calculations alone cannot defeat certification." *Id.*  "To gain class certification, Plaintiffs need to be able to allege that their damages arise from a course of conduct that impacted the class.  But they need not show that each members' damages from that conduct are identical." *Id.*

Here, Plaintiffs' damages, if any, would all derive from the common scheme described throughout this Order.  If Plaintiffs happen to undercount their damages because they only include purchases made through Uniswap, this is to Mayweather's and the other Defendants' benefit, but does not seriously impact class certification.

Accordingly, the Court concludes that the issue of damages is susceptible to class-wide proof and will not lead to the predominance of individual issues.

**b.  EMAX Holdings, LLC, and Perone**

EMAX Holdings, LLC, and Perone raise arguments that have largely already been addressed throughout this Order.  They argue that because blockchain purchases are pseudonymous, class membership would require individualized trials.  The Court does not agree.  In fact, the same argument could be raised in any class action involving consumer goods—potential class members would be unlikely to keep receipts indicating their purchase of a certain consumer good, and yet this does not create a predominance issue.  The Court finds that these issues are raised prematurely—they are questions that most appropriately are addressed with regard to this action's potential Phase III, wherein a Claims Administrator will determine the veracity of Proposed Class members' claims to compensation, if any.  But these

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  August 6, 2025
Title:      In re EthereumMax Investor Litigation

concerns do not threaten to predominate over the liability and damages issues that can
be resolved in Phases I and II.

At the hearing, counsel for EMAX Holdings, LLC and Perone misinterpreted the
thrust of the Court's finding in this regard.  They argued that because of the technology
involved in this action, it will be difficult to accurately and readily determine whether a
given individual was a purchaser of EMAX during the Class Period.  This argument is
well-understood.  The Court's reasoning by analogy is intended to illustrate that, as
compared to the "bog standard" consumer class action, blockchain technology actually
makes it *easier*, or at least similarly easy, to determine whether an individual was
actually an EMAX purchaser during the Class Period.  Unlike in cases where
consumers must self-identify and there is no corroborating proof, here, blockchain
technology allows for wallet IDs to be tracked.

As compared to the traditional consumer class action, blockchain technology
*opens more defenses* to Defendants, because they may be able to assert that a certain
purported class member cannot actually have been associated with a particular wallet.
Counsel argued that in an ordinary consumer sale, the retailer will have a record of the
purchase on its end.  But as here, those sales often do not have the customer's
identification, particularly where customers pay in cash.  Classes have long been
certified regardless, even when payment in cash was more common.

Otherwise, EMAX Holdings, LLC, and Perone largely reiterate arguments
already addressed.

### c.  Pierce

Pierce first argues that the Proposed Classes are overbroad because they contain
individuals who could not have been injured by Pierce's social media posts.  The Court
interprets this as another species of the reliance argument addressed above and finds it
unpersuasive for the same reasons.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  August 6, 2025
Title:      In re EthereumMax Investor Litigation

Pierce also argues that the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") requires Plaintiffs to show a causal connection between allegedly deceptive acts and their damages.  *Kurimski v. Shell Oil Co.*, No. 21-80727-CV-MIDDLEBROOKS, 2022 WL 2913742, at *10 (S.D. Fla. June 30, 2022).  The Court believes Pierce's citation to Florida law for this proposition is in error.  For instance, in *Carriuolo v. General Motors Co.*, 823 F.3d 977 (11th Cir. 2016), the Eleventh Circuit stated that "FDUTPA recovery depends on whether plaintiffs paid a price premium, not on whether plaintiffs actually relied on the illegal misrepresentation." *Id.* at 986.  And, in fact, the Eleventh Circuit has ***reversed*** district court opinions which seek to enforce an inflated reliance element on FDUTPA plaintiffs.  *See Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1282-83 (11th Cir. 2011) ("[S]hould the class prevail on the liability issue, each putative class member would only need to show that he or she paid a premium . . . to be entitled to damages under the FDUTPA.").  This mirrors the fraud on the market theory of reliance proffered by Plaintiffs here.

Although Pierce frames his argument as being about causation, it is substantively the same as the reliance arguments the Court has addressed throughout this Order.  And because the Eleventh Circuit has stated that the type of reliance Pierce seeks here is unnecessary for FDUTPA claims, the Court will not impose such a restriction for class certification.

### d.  Kardashian

In addition to arguments already addressed above, Kardashian raises certain arguments about Plaintiffs' damages models as they pertain to predominance.  Kardashian criticizes Dr. Clark's damages model because, she argues, it provides no mechanism for calculating the potential damages on a class-wide basis and does not show any price premium caused by Kardashian's posts.  Dr. Clark has in fact explained that the promotions induced new trading, which does not necessarily cause an increase in prices, especially because the promotions were allegedly accompanied by timed selloffs of EMAX, which tends to depress prices.  (Clark Reply Declaration at 13-14).  This is illustrative of Dr. Clark's opinion, which appears well-supported, that there is not necessarily a price premium in the immediate aftermath of a celebrity promotion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  August 6, 2025
Title:        In re EthereumMax Investor Litigation

However, the lack of a price premium does not mean damages are incalculable on a class-wide basis.  While Kardashian is correct that Dr. Clark does not utilize the term "damages," it can be inferred from the data Dr. Clark has presented the aggregate loss in value of EMAX tokens by purchasers who bought tokens during the class period.  Plaintiffs' proposed trial plan accounts for the inevitable follow-on questions that may result from this measure of damages.

Whether a jury will ultimately find such a model credible is a different question, but the Court sees no reason why Dr. Clark's methodology is so deficient that it renders class-wide calculation impossible.  If anything, Dr. Clark's refusal to engage in a damages analysis featuring price premiums caused by purchases made in specific subsections of the class period makes the method more amenable to class-wide proof of damages, not less.  As Plaintiffs argue in their Reply to Kardashian, outside of nominal damages, they have put forward two methods of determining damages on a class-wide basis: (1) overpayment; and (2) profit and loss metrics for all EMAX token transactions during the Class Period.  (Reply to Kardashian's Opposition at 16).  While acknowledging that Kardashian's criticisms of another of Plaintiffs' experts, Dr. Claudiu Dimofte, appear unrebutted, the Court nonetheless believes that damages are capable of class-wide determination based on Dr. Clark's analysis, and there is no genuine predominance issue present.

### e.  Rechnitz

Rechnitz's predominance arguments largely reiterate the arguments of his co-Defendants and are addressed above.

Accordingly, for all of the reasons described above, the Court finds that common issues predominate over individual issues.

## 2.  Superiority

Rule 23(b)(3) also requires that a class action be a superior method for resolving Plaintiffs' claims.  A class action may be superior "[w]here class[-]wide litigation of

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  August 6, 2025

Title:        In re EthereumMax Investor Litigation

common issues will reduce litigation costs and promote greater efficiency." *Valentino
v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).  It is also superior when
"no realistic alternative" to a class action exists.  *Id*. at 1234–35.  In deciding whether a
class action would be a superior method for resolving the controversy, the Court
considers factors including: (1) the class members' interest in individually controlling
the prosecution or defense of separate actions; (2) the extent and nature of any
litigation concerning the controversy already begun by or against class members; (3)
the desirability or undesirability of concentrating the litigation of the claims in the
particular forum; and (4) the likely difficulties in managing a class action.  Fed. R. Civ.
P. 23(b)(3)(A)–(D).

       Pierce and Rechnitz's arguments, though characterized as sounding in
superiority, have already been addressed by the analysis above.  Mayweather, however,
raises a unique argument that the Court has not yet addressed.

       Mayweather argues that a class action is not a superior method for litigating this
controversy because the Securities and Exchange Commission is authorized by
Congress to take enforcement actions relating to the conduct here, and have ***actually
done so***, having settled enforcement actions against two of the Defendants.
(Mayweather Opposition at 22).  Mayweather cites a case from the District of
Minnesota for the proposition that "[w]here Congress has charged an administrative
agency with global oversight and provided attorneys' fees for individual enforcement,
Plaintiffs must climb a steep hill to prove that a class action is superior to another
method of adjudication." *Gardner v. First Am. Title Ins. Co.*, No. 00-2176
(RHK/AJB), 2003 WL 221844, at *8 (D. Minn. Jan. 27, 2003); *see also Lanzarone v.
Guardsmark Holdings, Inc.*, No. CV 06-01136-R (PLAx), 2006 WL 4393465, at *5
(C.D. Cal. Sept. 7, 2006) ("A district court does not abuse its discretion in denying
certification when existing administrative proceedings are superior to a class action.").

       But in Mayweather's cited cases, there were additional facts accompanying the
enforcement actions that ensured that potential class members would have a
meaningful opportunity for recovery.  Similar facts have not been put before the Court
here.  *Gardner* concerned a claim under the Real Estate Settlement Procedures Act

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  August 6, 2025

Title:       In re EthereumMax Investor Litigation

("RESPA").  *Gardner*, 2003 WL 221844, at *1.  In its superiority analysis, the district
court noted that "Congress has 'guaranteed legal representation under RESPA by
permitting attorneys' fees and costs as part of each allowable recovery.'"  *Id.* at *8
(quoting *Glover v. Standard Fed. Bank*, 283 F.3d 953, 965 (8th Cir. 2002)).  The court
in *Gardner* also noted that similar cases were prevalent in the court's docket, and that
the Department of Housing and Urban Development (the executive organ tasked with
regulating the relevant behavior) investigated the conduct and found that corrective
action was unnecessary.  *Id.*  Here, meanwhile, Mayweather has not shown that any of
the statutes under which Plaintiffs bring their causes of action have similar provisions
for attorneys' fees and costs, or that the Court has many similar cases alleging
misconduct in the marketing of EMAX tokens, or that the SEC declined to pursue
enforcement actions.  In combination, those facts assured the court in *Gardner* that its
decision not to certify the class would not substantively deter the putative class
members from pursuing their claims by other means.  The Court is not similarly
confident here.

       In *Lanzarone*, the district court similarly found that administrative proceedings
provided a superior mechanism for Plaintiffs to pursue their claims.  There, the
plaintiff brought claims on behalf of a putative class that his employer failed to provide
him and putative class members with required meal and rest breaks under California
law.  *Lanzarone*, 2006 WL 4393465, at *1.  The court was persuaded that a class
action was not superior because "[a]bsent class members could bring streamlined
individual claims before the California Division of Labor Standards Enforcement . . . ,
which routinely handles small, individual wage claims."  *Id.* at *5.  In this case,
Mayweather has not indicated that absent class members could bring their small claims
to the SEC or any other agency for efficient resolution.  The implication of
Mayweather's argument is that when it comes to securities, the SEC has regulatory
authority that, if exercised, preempts would-be plaintiffs from bringing any claims for
violation of state securities laws.  The Court finds no support for that position.

       Accordingly, the superiority requirement is satisfied.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  August 6, 2025
Title:       In re EthereumMax Investor Litigation

### 3.  Manageability

EMAX Holdings, LLC, Perone, Kardashian, and Rechnitz all raise arguments
that a class action would be unmanageable because of the individual issues which
would need to be litigated.  The Court has addressed these arguments.  Because the
Court does not believe that individual issues predominate as to the state classes, the
Court also does not believe that individual issues render a class action unmanageable.

## IV.  **CONCLUSION**

The Court reiterates, as it has expressed throughout this Order, that certain
merits issues, and particularly those issues specific to the individual Defendants, are
better addressed at the summary judgment stage than at class certification.  Although
the Court believes that Plaintiffs have put forward sufficient evidence for certification
of the state classes, the Court also believes that many of the thornier issues presented at
the hearing on the Motion are better resolved at summary judgment.  Of course, should
the circumstances warrant it, the Court will also entertain a motion to decertify the
class.

Accordingly, the Motion is **GRANTED** *in part*.  The Motion is **DENIED** as to
the Nationwide Class but **GRANTED** as to the other Proposed Classes.  The Court
**CERTIFIES** the following classes:

1. **California Class**: All persons in California who, between May 14, 2021, and
   June 27, 2021, purchased EthereumMax tokens and were subsequently
   damaged thereby.

2. **New York Class**: All persons in New York who, between May 14, 2021, and
   June 27, 2021, purchased EthereumMax tokens and were subsequently
   damaged thereby.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 22-00163-MWF (SKx)                    Date:  August 6, 2025
Title:        In re EthereumMax Investor Litigation

3. **Florida Class**: All persons in Florida who, between May 14, 2021, and June
   27, 2021, purchased EthereumMax tokens and were subsequently damaged
   thereby.

4. **New Jersey Class**: All persons in New Jersey who, between May 14, 2021,
   and June 27, 2021, purchased EthereumMax tokens and were subsequently
   damaged thereby.

IT IS SO ORDERED.